**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217

Counsel for Plaintiff
Admitted *pro hac vice*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| W. CLARK APOSHIAN,<br><br>          Plaintiff,<br><br>v.<br><br>MATTHEW WHITAKER ACTING ATTORNEY GENERAL OF THE UNITED STATES, et al.<br><br>          Defendants. | CIVIL ACTION NO.: 2:19-cv-00037-JNP<br><br>**DECLARATION OF CALEB KRUCKENBERG IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

I, Caleb Kruckenberg, declare under penalty of perjury that the following is true and correct to the best of my present knowledge, information and belief:

1. I am an attorney representing the Plaintiff in this matter.

2. I have been admitted to practice before this Court *pro hac vice*.

3. Attached to this declaration are true and correct copies of the following documents:

    a. Exhibit A: Declaration of W. Clark Aposhian in Support of Plaintiff's Motion for Preliminary Injunction;

    b. Exhibit B: John R. Spencer, Chief, Firearms Technology Branch, *Slide Fire Approval Letter* (June 7, 2010);

c. Exhibit C: *Classification of Devices Exclusively Designed to Increase the Rate of Fire of a Semiautomatic Firearm*, ATF Rul. 2006-2 (Dec. 13, 2006);

d. Exhibit D: Letter from Richard W. Marianos, ATF Assistant Director Public and Governmental Affairs, to Representative Ed Perlmutter (Apr. 16, 2013); and

e. Exhibit E: John R. Spencer, Chief, Firearms Technology Branch, *Approval Letter* (June 18, 2008).

Executed on January 17, 2019

    */s/ Caleb Kruckenberg*
    **Caleb Kruckenberg**
    Litigation Counsel
    New Civil Liberties Alliance
    1225 19th St. NW, Suite 450
    Washington, DC 20036
    caleb.kruckenberg@ncla.legal
    (202) 869-5217
    Counsel for Plaintiff
    Admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

I certify that a copy of the foregoing was also served by registered or certified mail upon to the following:

Matthew G. Whitaker
Acting Attorney General of the U.S.
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Thomas E. Brandon
Acting Director
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, NE
Washington, DC 20226

John W. Huber
United States Attorney for the District of Utah
111 South Main Street
Suite 1800
Salt Lake City, Utah 84111-2176

    Respectfully,

    */s/ Caleb Kruckenberg*
    **Caleb Kruckenberg**
    Litigation Counsel
    New Civil Liberties Alliance
    1225 19th St. NW, Suite 450
    Washington, DC 20036
    caleb.kruckenberg@ncla.legal
    (202) 869-5217
    Counsel for Plaintiff
    Admitted *pro hac vice*

**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217

Counsel for Plaintiff
Admitted *pro hac vice*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| W. CLARK APOSHIAN,<br><br>   Plaintiff,<br><br>v.<br><br>MATTHEW WHITAKER ACTING ATTORNEY GENERAL<br>OF THE UNITED STATES, et al.<br><br>   Defendants. | CIVIL ACTION NO.: 2:19-cv-00037-JNP<br><br>**DECLARATION OF W. CLARK APOSHIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

I, W. Clark Aposhian, declare under penalty of perjury that the following is true and correct to the best of my present knowledge, information and belief:

1. I am a resident of the State of Utah and the Plaintiff in this matter.

2. I am a law-abiding person and have no disqualification that would prevent me from lawfully owning or operating a firearm.

3. I lawfully acquired a Slide Fire bump stock device prior to its classification as a machinegun.

4. At the time I purchased my Slide Fire bump stock it had been approved for sale by the Bureau of Alcohol Tobacco, Firearms and Explosives, for use in recreational shooting and target practice.

5. I purchased my Slide Fire bump stock in reliance on the ATF's approval of the device for sale.

6. I currently own and possess my Slide Fire bump stock device for recreational shooting and target practice.

7. The Slide Fire bump stock has been banned by a final rule issued the Department of Justice and the Bureau of Alcohol Tobacco, Firearms and Explosives, which will become effective on March 26, 2019. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514 (Dec. 26, 2018).

8. I have been directed to either destroy my Slide Fire device or surrender it to the ATF on or before March 26, 2019, or face potential criminal prosecution.

Executed on January 17, 2019

*/s/ W. Clark Aposhian*
**W. Clark Aposhian**



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, West Virginia 25405

www.atf.gov

JUN 0 7 2010

903050:MMK
3311/2010-434

This is in reference to your submission and accompanying letter to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), asking for an evaluation of a replacement shoulder stock for an AR-15 type rifle. Your letter advises that the stock (referenced in this reply as a "bump-stock") is intended to assist persons whose hands have limited mobility to "bump-fire" an AR-15 type rifle. Your submission includes the following: a block to replace the pistol grip while providing retention for the selector stop spring; a hollow shoulder stock intended to be installed over the rear of an AR-15 fitting with a sliding-stock type buffer-tube assembly; and a set of assembly instructions.

The FTB evaluation confirmed that the submitted stock (see enclosed photos) does attach to the rear of an AR-15 type rifle which has been fitted with a sliding shoulder-stock type buffer-tube assembly. The stock has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed. In order to use the installed device, the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand. Accordingly, we find that the "bump-stock" is a firearm part and is not regulated as a firearm under Gun Control Act or the National Firearms Act.

Per your telephoned instructions, we will contact you separately to make return delivery arrangements.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

**18 U.S.C. 922(o): Transfer or possession of machinegun**
**26 U.S.C. 5845(b): Definition of machinegun**
**18 U.S.C. 921(a)(23): Definition of machinegun**

*The definition of machinegun in the National Firearms Act and the Gun Control Act includes a part or parts that are designed and intended for use in converting a weapon into a machinegun. This language includes a device that, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted.*

**ATF Rul. 2006-2**

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has been asked by several members of the firearms industry to classify devices that are exclusively designed to increase the rate of fire of a semiautomatic firearm. These devices, when attached to a firearm, result in the firearm discharging more than one shot with a single function of the trigger. ATF has been asked whether these devices fall within the definition of machinegun under the National Firearms Act (NFA) and Gun Control Act of 1968 (GCA). As explained herein, these devices, once activated by a single pull of the trigger, initiate an automatic firing cycle which continues until either the finger is released or the ammunition supply is exhausted. Accordingly, these devices are properly classified as a part "*designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun*" and therefore machineguns under the NFA and GCA.

The National Firearms Act (NFA), 26 U.S.C. Chapter 53, defines the term "firearm" to include a machinegun. Section 5845(b) of the NFA defines "machinegun" as *"any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."* The Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44, defines machinegun identically to the NFA. 18 U.S.C. 921(a)(23). Pursuant to 18 U.S.C. 922(o), machineguns manufactured on or after May 19, 1986, may only be

Case 2:19-cv-00037-JNP   Document 10-1   Filed 01/17/19   PageID.87   Page 8 of 11

- 2 -

transferred to or possessed by Federal, State, and local government agencies for official use.

ATF has examined several firearms accessory devices that are designed and intended to accelerate the rate of fire for semiautomatic firearms. One such device consists of the following components: two metal blocks; the first block replaces the original manufacturer's V-Block of a Ruger 10/22 rifle and has attached two rods approximately ¼ inch in diameter and approximately 6 inches in length; the second block, approximately 3 inches long, 1 ⅜ inches wide, and ¾ inch high, has been machined to allow the two guide rods of the first block to pass through. The second block supports the guide rods and attaches to the stock. Using ¼ inch rods, metal washers, rubber and metal bushings, two collars with set screws, one coiled spring, C-clamps, and a split ring, the two blocks are assembled together with the composite stock. As attached to the firearm, the device permits the entire firearm (receiver and all its firing components) to recoil a short distance within the stock when fired. A shooter pulls the trigger which causes the firearm to discharge. As the firearm moves rearward in the composite stock, the shooter's trigger finger contacts the stock. The trigger mechanically resets, and the device, which has a coiled spring located forward of the firearm receiver, is compressed. Energy from this spring subsequently drives the firearm forward into its normal firing position and, in turn, causes the trigger to contact the shooter's trigger finger. Provided the shooter maintains finger pressure against the stock, the weapon will fire repeatedly until the ammunition is exhausted or the finger is removed. The assembled device is advertised to fire approximately 650 rounds per minute. Live-fire testing of this device demonstrated that a single pull of the trigger initiates an automatic firing cycle which continues until the finger is released or the ammunition supply is exhausted.

As noted above, a part or parts designed and intended to convert a weapon into a machinegun, *i.e.*, a weapon that will shoot automatically more than one shot, without manual reloading, by a single function of the trigger, is a machinegun under the NFA and GCA. ATF has determined that the device constitutes a machinegun under the NFA and GCA. This determination is consistent with the legislative history of the National Firearms Act in which the drafters equated "single function of the trigger" with "single pull of the trigger." *See, e.g., National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066*, 73rd Cong., at 40 (1934). Accordingly, conversion parts that, when installed in a semiautomatic rifle, result in a weapon that shoots more than one shot, without manual reloading, by a single pull of the trigger, are a machinegun as defined in the National Firearms Act and the Gun Control Act.

    *Held*, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger 10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches in length; a second block, approximately 3 inches long, 1 ⅜ inches wide, and ¾ inch high, machined to allow the two guide rods of the first block to pass through; the second block supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the two blocks assembled together with the

- 3 -

composite stock) that is designed to attach to a firearm and, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, is a machinegun under the National Firearms Act, 26 U.S.C. 5845(b), and the Gun Control Act, 18 U.S.C. 921(a)(23).

*Held further*, manufacture and distribution of any device described in this ruling must comply with all provisions of the NFA and the GCA, including 18 U.S.C. 922(o).

To the extent that previous ATF rulings are inconsistent with this determination, they are hereby overruled.


Date approved:  December 13, 2006



Michael J. Sullivan
Director

U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Assistant Director*

Washington, DC 20226
www.atf.gov

APR 1 6 2013

The Honorable Ed Perlmutter
U.S. House of Representatives
Washington, DC 20515

Dear Congressman Perlmutter:

This is in response to your letter dated March 5, 2013, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to rescind a previous evaluation letter and to classify all bump-fire stocks (to include specifically the Slide Fire Solutions stock) as machineguns.

As you have indicated, machineguns are defined in the National Firearms Title Act, 26 United States Code Chapter 53 Section 5845(b). The definition has four distinct parts. The first, as you point out, states that a machinegun is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a *single function of the trigger*." The remaining portions of the definition go on to state that: "[t]he term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts *designed and intended, for use in converting a weapon into a machinegun*, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

In the course of examining a number of bump-fire stocks, ATF found that none of these devices could shoot nor did they constitute firearm frames or receivers; therefore, the first portion of the machinegun definition can not apply. Those bump-fire stocks which were found to convert a weapon to shoot automatically were classified as machineguns and regulated accordingly— most notably, the Akins Accelerator. Other bump-fire stocks (such as the SlideFire Solutions stock) that ATF determined to be unable to convert a weapon to shoot automatically were not classified as machineguns.

Reviewing findings with respect to the Akins and Slide Solutions, ATF, in Ruling 2006-2, found that the Akins Accelerator incorporated a mechanism to automatically reset and activate the fire-control components of a firearm following the single input of a user. Thus, the Akins Accelerator acted to convert a semiautomatic firearm to shoot automatically. Conversely, the Slide Fire Solutions stock requires continuous multiple inputs by the user for each successive

-2-

The Honorable Ed Perlmutter

shot. Similarly, other devices exist, such as the HellFire Trigger, which attach to and act upon the trigger of a firearm and also work to increase the rate or volume of fire of the firearm. Like the Slide Fire Solutions stock, the HellFire Trigger does not provide an automatic action—requiring instead continuous multiple inputs by the user for each successive shot.

Public safety is always a primary concern of ATF. We remain committed to the security of our Nation and the fight against violent crime. However, bump-fire stocks that do not fall within any of the classifications for firearm contained in Federal law may only be classified as firearms components. Stocks of this type are not subject to the provisions of Federal firearms statutes. Therefore, ATF does not have the authority to restrict their lawful possession, use, or transfer.

We hope this information proves helpful in responding to your constituent. Please let me know if we may be of further assistance.

Sincerely yours,

Richard W. Marianos
Assistant Director
Public and Governmental Affairs