**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217

Counsel for Plaintiff
Admitted *pro hac vice*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| W. CLARK APOSHIAN,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW WHITAKER, ACTING ATTORNEY GENERAL OF THE UNITED STATES, et al.<br><br>    Defendants. | CIVIL ACTION NO.: 2:19-cv-00037-JNP<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

The Final Rule conflicts with Congress' statutory language and attempts to rewrite a criminal law that does not apply to Mr. Aposhian in a way that threatens to make him into a felon. This attempt to change the law is an affront to Articles I and II of the U.S. Constitution.

Confronted with these facts, Defendants' assert that they have the power to make "rules to fill any gap left" in the National Firearms Act (NFA) and Gun Control Act (GCA), and, exercising that authority, they have "reasonably interpreted" the statutory terms. (Def. Mot. at 2, 21.) But that argument collapses the appropriate analysis, and it wrongly presupposes that: (1) there is a gap left in the statute; and (2) this Court must defer to Defendants' interpretation. Neither of those presuppositions is true in this case, and Defendants do not even bother to argue otherwise. Thus, even if the Final Rule could be deemed a "reasonable" interpretation of the statute—which it cannot—it would still be invalid under well-established law because the statute is not ambiguous.

## I. ARGUMENT

"In determining whether an agency's regulations are valid under a particular statute," a Court must first ask whether "Congress delegated authority to the agency generally to make rules carrying the force of law." *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1221 (10th Cir. 2017) (quoting *Carpio v. Holder*, 592 F.3d 1091, 1096-97 (10th Cir. 2010)).

Only if the agency has authority to issue substantive regulations in the first place, may a court then inquire whether the regulation is consistent with the statute's text and fills in an area of ambiguity. *Id*. This asks whether "Congress has directly spoken to the precise question at issue," and, if so, "that is the end of the matter[.]" *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43 (1984). At *Chevron*'s "step one," an agency has "gap-filling power" only if is resolving "an ambiguity" in the statute. *New Mexico*, 854 F.3d at 1223 (quoting

1

*Lin-Zheng v. Attorney Gen.*, 557 F.3d 147, 156 (3d Cir. 2009) (en banc). If, however, the statute is not ambiguous, an agency may not "rewrite" a statute via regulation, and attempts to do so are "invalid and unenforceable" without considering "*Chevron* step two." *Id*. at 1225, 1231.

*Only* if a statute is ambiguous, may a Court then consider whether the agency construction is entitled to deference. *Id*. Even then, a Court may not defer to an agency interpretation in a variety of circumstances. Deference is improper when agency action constitutes an unexplained change in interpretation, see *Watt v. Alaska*, 451 U.S. 259, 273 (1981), the agency interpretation runs counter to the agency's expertise, *United States v. Ochoa-Colchado*, 521 F.3d 1292, 1298 (10th Cir. 2008), or the interpretation involves alleged ambiguity in a criminal statute. *N.L.R.B. v. Oklahoma Fixture Co.*, 332 F.3d 1284, 1287 (10th Cir. 2003) (en banc).

### A. The Final Rule Fails *Chevron's* Step One

#### 1. The Final Rule Conflicts with the Statutory Text

First, the Final Rule fails at *Chevron's* "step one," because instead of interpreting an ambiguous statute, the rule conflicts with clear statutory text. The Final Rule conflicts with the statutory text because it defines certain devices as machineguns even when they do not initiate an automatic firing cycle from a single function of a trigger. By their own reckoning, Defendants created the Final Rule because according to the language of the statute "bump stocks fell outside the scope of federal firearms regulations." (Def. Mot. at 6.) So that Defendants could prohibit people from "seeking *lawful* substitutes for the high rate of fire provided by machine guns," they have adopted a rule that rewrites the statutory language in a way that radically alters the fundamental definition of a machinegun. (Def. Mot. at 6 (emphasis added).)

Defendants have replaced the statutory definition, which is based in the mechanical function of a firearm, with a vague and self-contradictory definition that guarantees one particular outcome. The statute focuses on the mechanics of a weapon, and machineguns "shoot, automatically more than one shot" "by a single function of the trigger." 26 U.S.C. § 5845(b). The Final Rule, however, says that some weapons are machineguns even if they fire only once for every operation of the trigger mechanism. *See* Final Rule, 83 Fed. Reg. at 66553-4. Furthermore, the Final Rule redefines "automatic" fire to just mean rapid fire, even if it requires repeated trigger inputs from the shooter. *Id.*

Defendants do not contest that the Final Rule adopts this construction, but they insist, wrongly, that the Final Rule does not "conflict" with the statute. (*See* Def. Mot. at 14.) Focusing first on the phrase "single function of the trigger," Defendants insist that the "best interpretation" of this language only means "a single pull of the trigger" or "analogous motions" with the trigger hand. (Def. Mot. at 8, 11.) This interpretation would mean that anyone who fires a weapon by pushing or bumping the trigger rapidly, will not have caused the trigger to "function," even though that is the only way the firearm can fire. (Def. Mot. at 11.) Defendants even insist that the phrase *cannot* encompass trigger functions caused by "constant forward pressure with the non-trigger hand on the rifle through the barrel-shroud or fore-grip." (Def. Mot. at 8.) Relying on "common parlance," Defendants assert that "what matters is the initiation of firing by a single action of the shooter through a single pull of the trigger." (Def. Mot. at 11, 12.)

Defendants' arguments fail because they disregard the language *actually used* in the statute. In Defendants' own telling, Congress considered the common terminology "single pull of the trigger" when debating the statutory text in 1934 (Def. Mot. at 11), but the statute ultimately referenced only a trigger's "function." Congress' rejection of the term "pull" suggests that the

3

phrase "single function of the trigger" "implies no intent to restrict" the meaning to only encompass "pulling a small lever," and instead means any action that "initiated the firing sequence." *United States v. Camp*, 343 F.3d 743, 745 (5th Cir. 2003) (internal citation and quotation marks omitted). Congress meant to focus on the mechanical operation of a firearm. It is inconsistent for Defendants to now "restrict" this phrase beyond the statutory text. *See id.*

Defendants insist, however, that the Final Rule's limitations are "consistent with past judicial interpretations." (Def. Mot. at 12.) According to them, the courts in *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002) and *United States v. Akins*, 312 F. App'x 197, 200 (11th Cir. 2009), held that "irrespective of the statute's use of 'single function of the trigger,' what matters is the initiation of firing by … a single pull of the trigger." (Def. Mot. at 12.)

But those decisions held no such thing. In *Fleischli* the Court concluded a minigun was a machinegun because the shooter "initiated" an on/off switch instead of pulling a trigger, which "with one application of the trigger, continued to fire until the trigger was released or the ammunition exhausted." 305 F.3d at 655. What mattered was that, however accomplished, Fleischli had mechanically initiated the trigger mechanism only once, resulting in automatic fire. *Id.* The Court dismissed Fleischli's "brazen" and "puerile" "hyper-technical adherence to literalism" in his attempts to restrict a trigger's "function" to only a "pull." *Id. Fleischli* does not support Defendants' statutory limitation.

The unpublished decision in *Akins* also provides little support to Defendants. There the Court classified an earlier version of a spring-loaded bump stock as a machinegun because "[a]fter a single *application* of the trigger by a gunman, the [device] uses its internal spring and the force of recoil to fire continuously the rifle cradled inside until the gunman releases the trigger or the ammunition is exhausted." *Akins v. United States*, 312 Fed. App'x 197, 200 (11th

4

Cir. 2009) (unpublished) (emphasis added). The Final Rule, however, covers devices without such springs, where a shooter must manually "'bump[]' the trigger against his finger" to continue firing. (Def. Mot. at 16.) *Akins* does not suggest that a trigger only "function[s]" if it is "pulled" by a shooter.

Finally, Defendants try to sidestep this conflict by noting that the Final Rule also applies to "other, analogous types of function," beyond mere "pull[s]." (Def. Mot. at 12-13.) But, simultaneously, Defendants insist that the initiation of a trigger by applying "constant forward pressure with the non-trigger hand" is *not* analogous to pulling a trigger. (Def. Mot. at 8.) They say that if a shooter "'bumps' the trigger against his finger while sliding in the confined space," this is *not* the same as pulling the trigger. (Def. Mot. at 16.) That makes no sense. There is no reason that the initiation of a trigger's "function" should depend on which *hand* a shooter uses. Defendants offer no analysis why pushing a firearm against one's trigger finger is not "analogous" to pulling a trigger. This purported distinction just illustrates the arbitrary nature of the Final Rule's definition of "single function of the trigger."

The Final Rule also conflicts with the statutory language because it rewrites the term "automatically" to mean only that a firearm continues to fire without an additional "'pull' of the trigger, not the shooter's actions on other parts of the firearm." (*See* Def. Mot. at 14.) But the statutory text is clear. The term "automatic" "refer[s] to a weapon that fires repeatedly with a single pull of the trigger. That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." *Staples v. United States*, 511 U.S. 600, 603 n. 1 (1994). A "machinegun" "requires no manual manipulation by the operator to place another round in the chamber after each round is fired." *Id*. Thus, a firearm is

5

not a machinegun if the shooter must manually manipulate the firearm between firing of rounds, regardless of whether the action is directed *only* at the trigger mechanism.

To justify the Final Rule, Defendants say that the language in *Staples* discussing "manual manipulation" was "limited to whether such is needed 'to place another round in the chamber.'" (Def. Mot. at 14 n. 8 (citing 511 U.S. at 603 n. 1).) This observation is accurate but irrelevant. A shooter's manual manipulation of a firearm "to place another round in the chamber," often involves the simple act of "pull[ing] a trigger." *Staples*, 511 U.S. at 603 n. 1. But it can also be flipping an on/off switch. *Fleischli*, 305 F.3d at 655. And, however initiated, fire is only "automatic" under the statute if it "continue[s]" without additional "manual manipulation." *Staples*, 511 U.S. at 603 n. 1.

Confronted with this conflict, Defendants offer a pragmatic argument. They focus on the "simplicity of how a shooter employs a bump stock," and argue that "[n]othing in the term 'automatically' requires that a mechanism like a bump stock function *without shooter involvement*." (Def. Mot. at 16 (emphasis added).) This is a bold pronouncement, considering the Court's conclusions in *Staples* that "the terms 'automatic' and 'fully automatic' refer to a weapon that fires repeatedly … once its trigger is depressed … until its trigger is released or the ammunition is exhausted." 511 U.S. at 603 n. 1. And, as the Seventh Circuit has said, "a leading dictionary from 1934 [the year of the statutory enactment], tells us that … 'automatic,'" means "'having a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation.'" *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009) (Webster's New International Dictionary 187 (2d ed. 1934). While "[a]nother contemporaneous dictionary similarly describes 'automatic' as 'self-acting under conditions fixed for it, going of itself.'" *Id*. (quoting Oxford English Dictionary 574 (1933)). *None* of these

6

authorities leaves room to read the term "automatically" as discounting further shooter input. An act simply cannot, under any rational definition, be considered "self-acting" if it requires "constant" shooter inputs. Yet that is how Defendants define the term.

### 2. The Statutory Text Is Not Ambiguous

Even if Defendants' justifications thus far are accepted, their efforts to defend the Final Rule fail at step one of the *Chevron* analysis, because they make no attempt to argue that the rule resolves any ambiguity in the statutory text. Instead, Defendants skip to step two of the analysis, defending the Final Rule on the basis that they have "acted reasonably in defining 'single function of the trigger' and 'automatically.'" (Def. Mot. at 10.) Defendants do not even use the word *ambiguous* anywhere in their filing. Without making this showing of statutory ambiguity, however, the Final Rule is invalid because "Congress has directly spoken to the precise question at issue." *See Chevron*, 467 U.S. at 842-43.

The only passing nod Defendants give to the concept of *Chevron*'s step one is the perfunctory statement that "Congress has left undefined" certain terms in the statutory definition of a machinegun. (Def. Mot. at 10.) But an agency cannot "inject ambiguity into [] otherwise unambiguous text." *New Mexico*, 854 F.3d at 1223, 1228 (internal citation and quotation marks omitted). "A statute's silence on a given issue does not confer gap-filling power on an agency unless the question is in fact a gap—an ambiguity tied up with the provisions of the statute." *Id.* (quoting *Lin-Zheng v. Attorney Gen.*, 557 F.3d 147, 156 (3d Cir. 2009) (en banc)).

Even if Defendants' aside about undefined terms in the statute were to be construed as a genuine argument about ambiguity, it would fail. Courts have repeatedly declared this statute's terms "unambiguous" even without additional definitions. *See, e.g.*, *United States v. TRW Rifle 7.62X51mm Caliber, One Model 14 Serial 593006*, 447 F.3d 686, 689 n. 4 (9th Cir. 2006)

7

(refusing to defer to the "ATF's definition of 'machinegun'" "because the statute is unambiguous," and the Court need "simply follow the standard course of applying the definition to the facts"); *United States v. Williams*, 364 F.3d 556, 558 (4th Cir. 2004) (finding the definition of "machinegun" and phrase "a frame or receiver" to be unambiguous). In fact, Courts have declared the precise terms at issue here unambiguous. The "common meaning of 'automatically' is readily known by laypersons" and "a person of ordinary intelligence would have understood the common meaning of the term—'as the result of a self-acting mechanism.'" *Olofson*, 563 F.3d at 660. Furthermore, the phrase "a single function of the trigger" is "plain enough" that efforts to parse it further become "brazen" and "puerile." *Fleischli*, 305 F.3d at 655. Defendants cannot "manufacture[] an ambiguity from Congress' failure to specifically foreclose each exception that could possibly be conjured or imagined," and thus, the Final Rule fails at step one of the analysis. *See Prestol Espinal v. Attorney Gen.*, 653 F.3d 213, 220-21 (3d Cir. 2011). Regardless of whether the Final Rule is reasonable, it is "invalid and unenforceable" without even considering "*Chevron* step two." *See New Mexico*, 854 F.3d at 1231.

### B. The Final Rule Also Fails *Chevron*'s Step Two

Even if this Court could overlook the fatal defects in the Final Rule that have been pointed out, the Final Rule fails at *Chevron*'s step two, because any ambiguity in the statute must be resolved *against* Defendants' reading. While insisting that the Final Rule is "reasonable" (Def. Mot. at 14), Defendants never assert that this Court should, or even may, defer to their new interpretation. In fact, Defendants concede that their "interpretation of criminal statutes," such as the Final Rule, would generally not be "entitled to deference." (Def. Mot. at 21.) This concession is correct. Furthermore, this Court must resolve "any ambiguity concerning the ambit of [this]

8

criminal statute[]" "in favor of lenity" and thus against Defendants. *Yates v. United States*, 135 S.Ct. 1074, 1088 (2015). Hence, the Final Rule *must* be rejected by this Court.

Even if the statute were ambiguous, this Court would still not defer to Defendants' interpretation because it constitutes an unexplained change in interpretation that runs counter to the Defendants' own expertise. *See Watt*, 451 U.S. at 273; *Ochoa-Colchado*, 521 F.3d at 1298. Moreover, the Tenth Circuit has held that this Court is required to construe the statute, which involves criminal punishment, "narrowly" and resolve ambiguities *against* Defendants. *Oklahoma Fixture Co.*, 332 F.3d at 1287 n. 5. Because the Final Rule repudiates longstanding statutory interpretation and threatens to imprison law-abiding citizens this Court must reject it, regardless of whether it is otherwise "reasonable."

Rather than seeking deference, Defendants only assert that their change of position is not "arbitrary and capricious" because they now "believe[ the Final Rule] to be better, which [a] conscious change of course adequately indicates.'" (Def. Mot. at 16 (quoting *F.C.C. v. Fox Television Stations*, 556 U.S. 502, 515 (2009)).) But Defendants have confused the issues. The analysis of whether agency action is arbitrary and capricious is distinct from the analysis of whether a court should defer to an agency interpretation. *Humane Society of the United States v. Zinke*, 865 F.3d 585, 605 (D.C. Cir. 2017).[1] And an unexplained change in interpretation affords an agency "considerably less deference." *Watt*, 451 U.S. at 273. Defendants' new position, in contravention of more than a decade of bipartisan agency interpretation, is not entitled to respect.

Moreover, Defendants do not contest that the Final Rule is not owed deference because it has repudiated the agency's expertise. Defendants acknowledge that "ATF Acting Director Thomas E. Brandon [testified] that, in the past, 'technical experts,' 'firearms experts' and

---

[1] Mr. Aposhian's motion argues that the Final Rule is *also* arbitrary and capricious, in part because of the change in agency position. While he does not address that argument further in this Reply, he continues to rely on it.

9

'lawyers' within ATF believed that bump stocks did not constitute machine guns," but insist that the agency is allowed to change its mind. (Def. Mot. at 20.) Defendants *do not* claim that such altered views are entitled to deference, however. (*See* Def. Mot. at 20.) And as the Tenth Circuit has concluded, this Court does not owe the ATF deference when it interprets a statute counter to its expertise. *Ochoa-Colchado*, 521 F.3d at 1298.

Finally, this Court *must* resolve any ambiguity in favor of Mr. Aposhian under the rule of lenity. *See N.L.R.B.*, 332 F.3d at 1287 n. 5. Defendants acknowledge that the Final Rule would not ordinarily be "entitled to deference" because it involves "the interpretation of criminal statutes." (Def. Mot. at 21.) But the rule of lenity goes farther, construing "any ambiguity" "in favor of lenity," *Yates*, 135 S.Ct. at 1088, which dooms the Final Rule.

Defendants assert that the "rule of lenity" does not protect Mr. Aposhian because "*Staples* held that the mens rea requirements associated with the [statute] requires that 'a defendant must know' that a firearm has been 'brought … within the scope of the" prohibition. (Def. Mot. at 17 (quoting 511 U.S. at 618-19).) This argument actually reinforces Mr. Aposhian's position. *Staples* rejected a vagueness challenge to the *statute* because the language concerning the mens rea requirement was not ambiguous. 511 U.S. at 618-19. This means, as discussed above, that there is no ambiguity for Defendants to resolve through the Final Rule. But if the statute *were* ambiguous, the rule of lenity requires resolving that ambiguity in Mr. Aposhian's favor.

## II. CONCLUSION

The Final Rule is plainly invalid. The Final Rule redefines what it means for a weapon to fire "automatically" from a "single function of the trigger." These limitations are not found anywhere in the statute and must be rejected.

February 11, 2019

                                                         Respectfully,
                                                       */s/ Caleb Kruckenberg*
                                                       **Caleb Kruckenberg**
                                                       Litigation Counsel
                                                       **Steve Simpson**
                                                       Senior Litigation Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

    Respectfully,

    */s/ Caleb Kruckenberg*
    **Caleb Kruckenberg**
    Litigation Counsel
    New Civil Liberties Alliance
    1225 19th St. NW, Suite 450
    Washington, DC 20036
    caleb.kruckenberg@ncla.legal
    (202) 869-5217
    Counsel for Plaintiff
    Admitted *pro hac vice*