# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| W. CLARK APOSHIAN,<br><br>                Plaintiff,<br>v.<br><br>WILLIAM P. BARR,[1] Attorney General of the United States, *et al.*,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:19-cv-37<br><br>District Judge Jill N. Parrish |

This matter comes before the court on plaintiff W. Clark Aposhian's Motion for Preliminary Injunction filed on January 17, 2019. (ECF No. 10). Defendants filed an opposition on February 6, 2019, (ECF No. 25), to which Mr. Aposhian replied on February 11, 2019, (ECF No. 26). The court heard oral argument for this motion on February 14, 2019. On the basis of that hearing, the parties' memoranda, a review of relevant law, and for the reasons below, plaintiff's Motion for Preliminary Injunction is denied.

## I.    BACKGROUND

### A. REGULATORY FRAMEWORK OF MACHINE GUNS AND BUMP-STOCK-TYPE DEVICES

Congress began regulating machine guns with its passage of the National Firearms Act of 1934 (the "NFA"). That act defined such weapons as follows:

> The term "machinegun"[2] means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without

---

[1] This action was initially commenced against the former Acting Attorney General Matthew Whitaker in his official capacity. By operation of Federal Rule of Civil Procedure 25(d), Mr. Barr was automatically substituted upon his confirmation as Attorney General of the United States.

manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). The Gun Control Act of 1968 (the "GCA") incorporated this definition by reference into the criminal code. *See* 18 U.S.C. § 921(23) ("The term 'machinegun' has the meaning given such term in section 5845(b) of the National Firearms Act . . . ."). Today, with limited exceptions, it is "unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o).

In 2006, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF") ruled that a bump-stock-type device[3] called the Akins Accelerator qualified as a machine gun. The Akins Accelerator employed internal springs to harness the weapon's recoil energy to repeatedly force the rifle forward into the operator's finger. In labeling the Akins Accelerator a machine gun, the ATF interpreted the statutory language "single function of the trigger" to mean "single pull of the trigger." The inventor of the Akins Accelerator subsequently challenged this interpretation in federal court. After the district court rejected the challenge, the Eleventh Circuit

---

[2] The relevant statutes utilize an outmoded, one-word "machinegun" spelling. Except when quoting statutory language, this order uses the more contemporary, two-word "machine gun" spelling.

[3] "Shooters use bump-stock-type devices with semiautomatic firearms to accelerate the firearms' cyclic firing rate to mimic automatic fire. These devices replace a rifle's standard stock [the component of a rifle that rests against the shooter's shoulder] and free the weapon to slide back and forth rapidly, harnessing the energy from the firearm's recoil either through a mechanism like an internal spring or in conjunction with the shooter's maintenance of pressure (typically constant forward pressure with the non-trigger hand on the barrel-shroud or fore-grip of the rifle, and constant rearward pressure on the device's extension ledge with the shooter's trigger finger). . . . [W]hen a bump-stock-type device is affixed to a semiautomatic firearm, the device harnesses and directs the firearm's recoil energy to slide the firearm back and forth so that the trigger automatically re-engages by 'bumping' the shooter's stationary finger without additional physical manipulation of the trigger by the shooter." 83 Fed. Reg. at 66516.

2

Court of Appeals affirmed, concluding that the ATF's interpretation was "consonant with the statute and its legislative history." *See Akins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009).

From 2008 to 2017, the ATF issued ten letter rulings in response to requests to classify bump-stock-type devices. Applying the "single pull of the trigger" interpretation, these rulings found that the devices at issue—including Mr. Aposhian's Slide Fire device—indeed allowed a shooter to fire more than one shot with a single pull of the trigger. However, because the subject devices did not rely on internal springs or other mechanical parts to channel recoil energy like the Akins Accelerator, the ATF concluded that they did not fire "automatically" within the meaning of the statutory definition.

### B. THE FINAL RULE

On October 1, 2017, a lone shooter employing multiple semi-automatic rifles with attached bump-stock-type devices fired several hundred rounds of ammunition into a crowd in Las Vegas, Nevada, killing 58 people and wounding roughly 500 more. Following this event, members of Congress urged the ATF to examine whether devices like the one used in the attack were actually machine guns prohibited by law. On December 26, 2017, the Department of Justice (the "DOJ") published an Advanced Notice of Proposed Rulemaking (ANPRM), soliciting comments and manufacturer/retailer data regarding bump-stock-type devices. *See* Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices, 82 Fed. Reg. 60929 (Dec. 26, 2017). On February 20, 2018, the President issued a memorandum directing the Attorney General "to dedicate all available resources to complete the review of the comments received, and, as expeditiously as possible, to propose for notice and comment a rule banning all devices that turn legal weapons into machineguns." Application of the Definition of

Machinegun to "Bump Fire" Stocks and Other Similar Devices; Memorandum for the Attorney General, 83 Fed. Reg. 7949 (Feb. 23, 2018).

On March 29, 2018, the DOJ published a notice of proposed rulemaking (NPRM). *See* Bump-Stock-Type Devices, 83 Fed. Reg. 13442 (Mar. 29, 2018). Following a period of public comment, the DOJ issued a Final Rule on December 26, 2018 that (1) formalizes the ATF's longstanding interpretation of "single function of the trigger" to mean "single pull of the trigger"; (2) interprets "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger"; and (3) concluding that bump-stock-type devices are machine guns proscribed by the statutory scheme as interpreted by the Final Rule. *See* Bump-Stock-Type Devices, 83 Fed. Reg. 66514 (Dec. 26, 2018). The Final Rule directs owners of bump-stock-type devices to either destroy or surrender them to the ATF before the Final Rule goes into effect on March 26, 2019. 83 Fed. Reg. 66515.

Mr. Aposhian lawfully purchased and continues to own a Slide Fire bump-stock-type device. On January 16, 2019, Mr. Aposhian filed suit against the Attorney General of the United States, the DOJ, the Director of the ATF, and the ATF. (ECF No. 2). On January 17, 2019, Mr. Aposhian filed this motion for preliminary injunction seeking to enjoin the Final Rule from going into effect on March 26, 2019. (ECF No. 10).

## II.  PRELIMINARY INJUNCTION STANDARD

To obtain preliminary injunctive relief, a movant must establish: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

## III.     ANALYSIS

The parties do not dispute that Mr. Aposhian will experience irreparable harm if the injunction is denied.[4] And though they offer short arguments related to the third and fourth prongs of the preliminary injunction analysis, the parties devote the lion's share of their memoranda to the merits prong.

As explained below, Mr. Aposhian has not carried his burden of showing a substantial likelihood of success on the merits. As a result, his motion for a preliminary injunction must be denied.

This court's review of the Final Rule is governed by the Administrative Procedure Act (the "APA), 5 U.S.C. § 706(2)(A)–(C).[5] Under this framework, Mr. Aposhian asserts two general

---

[4] They do, however, disagree about what that irreparable harm is. Mr. Aposhian suggests that, absent an injunction, he will be harmed by being forced to comply with a rule that has been promulgated in contravention of constitutional principles of separation-of-powers. Defendants concede only that Mr. Aposhian's harm is the loss of his Slide Fire device, which, they assert, is irreplaceable because no entity presently manufactures such a device. Although it is clearly the case that the threatened infringement of a plaintiff's *individual* constitutional rights will satisfy the irreparable harm prong, the court can find no basis in law for the proposition that a generalized separation-of-powers violation gives rise to an injury on the part of an individual citizen. Regardless, articulating the precise harm becomes necessary only when weighing the threatened injury against the harm caused by the preliminary injunction (*i.e.*, the third prong). Because Mr. Aposhian's motion fails on the first prong—likelihood of success on the merits— the court need not resolve this dispute.

[5] Mr. Aposhian also raises a vague constitutional challenge supported by citations to cases involving the nondelegation doctrine. To the degree that Mr. Aposhian intended to assert a nondelegation challenge, the court can confidently reject any argument that the statutory grant of interpretive authority at issue here is devoid of an intelligible principle upon which the ATF may act. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472–76 (2001). To the extent Mr. Aposhian instead meant to assert a general separation-of-powers challenge to the Final Rule, such a challenge is subsumed by the APA's directive that a reviewing court set aside agency action taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." § 706(2)(C).

arguments. First, that Congress has not empowered the Attorney General[6] to interpret the NFA and the GCA. And second, that the Final Rule's interpretations conflict with the statutory language. The court addresses each challenge in turn.

A. INTERPRETIVE AND RULEMAKING AUTHORITY

Mr. Aposhian argues that the Final Rule was issued in excess of statutory jurisdiction because the NFA does not vest the Attorney General or the ATF with rulemaking authority. In response, the defendants argue, and the court agrees, that the Final Rule does no more than interpret undefined statutory terms.[7] Although the Attorney General and ATF promulgated their interpretations through the more laborious, formal notice-and-comment process, the use of that procedure does not alter the Final Rule's interpretive character. And Mr. Aposhian does not dispute that the ATF, under the direction of the Attorney General, is empowered to interpret and administer both the NFA and the GCA. *See* Pl.'s Mot. for Prelim. Inj. (ECF No. 10 at 6); 18 U.S.C. § 926(a); 26 U.S.C. § 7801(a)(2); *Guedes v. ATF*, No. 18-cv-2988 (DLF), 2019 WL 922594, at *9 n.3 (D.D.C. Feb. 25, 2019) (rejecting challenges to the Final Rule's interpretations

---

[6] The Attorney General has delegated, "[s]ubject to the direction of the Attorney General and Deputy Attorney General," the responsibility for administering and enforcing the NFA and the GCA to the ATF—an agency within the Department of Justice. *See* 28 CFR § 0.130(a)(1)–(3).

[7] Although the Final Rule is merely interpretive in nature, it appears, contrary to Mr. Aposhian's argument, that the Attorney General has indeed been granted rulemaking authority under the NFA. Mr. Aposhian is correct that 26 U.S.C. § 7805(a) declares that "the Secretary [of the Treasury] shall prescribe all needful rules and regulations for the enforcement of this title[.]" But he fails to account for the statutory language in § 7801(a)(2)(A), which functionally substitutes "Attorney General" for "Secretary of the Treasury" in § 7805(a) insofar as the rulemaking at issue relates to, among other weapons, machine guns. § 7801(a)(2)(A), (A)(ii) ("[T]he term 'Secretary' or 'Secretary of the Treasury' shall, when applied to [§ 7805, to the extent § 7805 relates to the enforcement and administration of Chapter 53, governing machine guns], mean the Attorney General . . . ."). And the Attorney General's rulemaking authority under the GCA is beyond question. 18 U.S.C. § 926(a) ("The Attorney General may prescribe only such rules and regulations as are necessary to carry out the provisions of this chapter . . . .").

6

and the ATF's interpretive authority, noting the "ATF's clear authority to interpret and administer" the relevant statutes).

In addition to his explicit statutory authority, the Attorney General has been implicitly delegated interpretive authority to define ambiguous words or phrases in the NFA and the GCA. Congress did not define "automatically" or "single function of the trigger," and when Congress leaves terms in a statute undefined, the agency charged with administering that statute has been implicitly delegated the authority to clarify those terms.[8]

## B. FINAL RULE INTERPRETATIONS

The Final Rule interprets "single function of the trigger" to mean "single pull of the trigger" and analogous motions, and it interprets "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger." 83 Fed. Reg. Having supplied those definitions, the Final Rule clarifies that bump-stock-type devices—like the Slide Fire device owned by Mr. Aposhian—are machine guns proscribed by law. The court examines each interpretation in turn.

---

[8] The notion that an undefined or ambiguous term amounts to an implicit delegation of interpretive power is borne, unmistakably, from the administrative law doctrine announced by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). In setting forth this principle in its memorandum in opposition, however, defendants went out of their way to avoid citing *Chevron* and its progeny, and repeatedly stressed that they neither request, nor believe their interpretations are entitled to, any measure of deference. *See* Defs.' Mem. in Opp'n (ECF No. 25 at 29) (citing *United States v. Apel*, 571 U.S. 359, 369 (2014) (remarking that the Supreme Court has never accorded deference to an agency's *internal* reading of a criminal statute)). This opinion is puzzling because it is far from settled that an agency is entitled to no deference when its interpretations implicate criminal liability. *See United States v. White*, 782 F.3d 1118, 1135 n.18 (10th Cir. 2015) (collecting Supreme Court and Tenth Circuit cases applying at least some deference to interpretations that affect criminal penalties). The court need not confront this deference dilemma here because the Final Rule's clarifying definitions reflect the best interpretation of the statute.

1. **"Single Function of the Trigger"**

The statutory language "single function of the trigger" gives rise to the parties' dispute about what "function" means.[9] Mr. Aposhian contends that "function" refers to the mechanical movement of the trigger, while the Final Rule adopts a shooter-focused interpretation. Because bump-stock-type devices operate through multiple movements of the trigger (by rapidly "bumping" the trigger into the operator's finger), a mechanically-focused interpretation would omit bump-stock-type devices from the statute's definition.

The court finds that "single pull of the trigger" is the best interpretation of "single function of the trigger," a conclusion similarly reached by the Eleventh Circuit Court of Appeals. *See Akins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009) ("The interpretation by the [ATF] that the phrase 'single function of the trigger' means a 'single pull of the trigger' is consonant with the statute and its legislative history."); *see also Guedes*, 2019 WL 922594, at *10 ("Tellingly, courts have instinctively reached for the word 'pull' when discussing the statutory definition of 'machinegun.'").

Moreover, it makes little sense that Congress would have zeroed in on the mechanistic movement of the trigger in seeking to regulate automatic weapons. The ill sought to be captured by this definition was the ability to drastically increase a weapon's rate of fire, not the precise mechanism by which that capability is achieved. At oral argument, defendants persuasively argued that the unusual choice of "function" is intentionally more inclusive than "pull." Thus,

---

[9] The court in *Guedes* noted, and this court agrees, that "dictionaries from the time of the NFA's enactment are of little help in defining a 'single function of the trigger.'" *Guedes*, 2019 WL 922594, at *9.

"function" was likely intended by Congress to forestall attempts by weapon manufacturers or others to implement triggers that need not be pulled, thereby evading the statute's reach.[10]

### 2. "Automatically"

The Final Rule interprets "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger." This interpretive language is borrowed, nearly word-for-word, from dictionary definitions contemporaneous to the NFA's enactment. *See* 83 Fed. Reg. 66519. The 1934 *Webster's New International Dictionary* defines the adjectival form "automatic" as "[h]aving a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation[.]" 187 (2d ed. 1934); *see also* 1 *Oxford English Dictionary* 574 (1933) (defining "automatic" as "[s]elf-acting under conditions fixed for it, going of itself").

And as with "a single pull of the trigger," the Final Rule's interpretation of "automatically" accords with past judicial interpretation. *See United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009) (relying on the same dictionary definitions to conclude that "the adverb 'automatically,' as it modifies the verb 'shoots,' delineates how the discharge of multiple rounds from a weapon occurs: as the result of a self-acting mechanism . . . that is set in motion by a single function of the trigger and is accomplished without manual reloading.").

Mr. Aposhian's argument in opposing the propriety of this interpretation is difficult to follow, but it appears to relate to the requisite degree of automaticity. Specifically, he suggests that "[i]f a firearm requires separate physical input, even if not directed to the *trigger mechanism*, this still disrupts the automatic firing of each successive shot." (ECF No. 10 at 9)

---

[10] The Final Rule's interpretation does use "pull," but avoids the issue above by interpreting "'single function of the trigger' to mean 'single pull of the trigger' *and analogous motions*[.]" 83 Fed. Reg. at 66515 (emphasis added).

(emphasis in original). Because bump-stock-type devices require constant forward pressure by the shooter's non-trigger hand on the barrel or the shroud of the rifle, Mr. Aposhian argues, it does not fire "automatically."

But even weapons uncontroversially classified as machine guns require at least some ongoing effort by an operator. And Mr. Aposhian does not argue that the constant rearward pressure applied by a shooter's trigger finger in order to *continue* firing a machine gun means that it does not fire "automatically." Under Mr. Aposhian's view, it seems, the statute encompasses machine guns that require some, but not too much, ongoing physical actuation. But neither the statute nor the contemporaneous understanding of "automatic" provides any basis for an interpretation that restricts the degree of shooter involvement in an automatic process. As illustrated by the atextual line urged by Mr. Aposhian, any limit on the degree of physical input would invariably be supplied of whole cloth in service of one's desired result.

The Final Rule's interpretation of "automatically" is consistent with its ordinary meaning at the time of the NFA's enactment and accords with judicial interpretation of that language. Thus, it represents the best interpretation of the statute.

### 3. Classification of Bump-Stock-Type Devices as Machine Guns

Mr. Aposhian does not appear to argue that the interpretations above, if valid, would not permit the classification of his Slide Fire device as a machine gun. He does, however, request more aggressive judicial review of the Final Rule because of its allegedly political impetus, and because it represents a change in the ATF's position (*i.e.*, some devices previously ruled by the ATF to not be machine guns are now brought within the statutory ambit).

But the Supreme Court's modern administrative law jurisprudence expressly rejects both propositions. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 523 (2009) (rejecting argument that heightened scrutiny applies to a "policy change [that] was spurred by significant

political pressure from Congress"); *Lockheed Martin Corp. v. Admin. Review Bd., Dep't of Labor*, 717 F.3d 1121, 1131 (10th Cir. 2013) ("The Supreme Court has rejected the notion that an agency's interpretation of a statute it administers is to be regarded with skepticism when its position reflects a change in policy."). Indeed, an agency's change in position need only be accompanied by the agency's acknowledgement that its position has changed, along with an explanation that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *F.C.C.*, 556 U.S. at 515 (emphasis in original).

The ATF's change in policy easily meets this standard. The Final Rule unambiguously acknowledges that the ATF is changing its position with respect to certain bump-stock-type devices, and explains that the ATF's prior rulings excluding those devices from the definition of machine gun "did not provide substantial or consistent legal analysis regarding the meaning of the term 'automatically,' as it is used in the NFA and GCA." 83 Fed. Reg. 66518. And the court has already determined that the definitions leading to the classification changes are permissible under, and in fact represent the best interpretation of, the statute. In sum, neither the alleged political genesis of the Final Rule nor the fact that it reflects a change in agency policy serve to undermine the Final Rule's validity.

Having found that each component of the Final Rule represents the best interpretation of the statute, the court cannot find that Mr. Aposhian is likely to succeed on the merits of his challenge to the Final Rule. Absent such a showing, an injunction may not issue.

### IV. ORDER

For the reasons articulated, plaintiff's Motion for Preliminary Injunction is **DENIED.**

Signed March 15, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge