(b)(1)(A),MAG,APPEAL,JURY,LC3
Email All Attys
Email All Attys and Secondary Emails

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: <u>2:19–cv–00037–JNP–BCW</u>

Aposhian v. Whitaker et al
Assigned to: Judge Jill N. Parrish
Referred to: Magistrate Judge Brooke C. Wells
Cause: 05:0702 Administrative Procedure Act

Date Filed: 01/16/2019
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**W. Clark Aposhian**                    represented by   **Gerald M. Salcido**
SALCIDO LAW FIRM PLLC
43 W 9000 S STE B
SANDY, UT 84070
(801)413–1753
Email: jerry@salcidolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Caleb J. Kruckenberg**
NEW CIVIL LIBERTIES ALLIANCE
1225 19TH ST NW STE 450
WASHINGTON, DC 20036
(202)869–5217
Email: caleb.kruckenberg@ncla.legal
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Matthew Whitaker**                    represented by   **Eric J. Soskin**
*Acting Attorney General of the United*           US DEPT OF JUSTICE
*States*                                           CIVIL DIVISION
1100 L ST NW RM 12002
WASHINGTON, DC 20005
(202)353–0533
Email: eric.soskin@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of Justice**   represented by   **Eric J. Soskin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey E. Nelson**
US ATTORNEY'S OFFICE
SALT LAKE CITY, UT 00000
(801)325–3250
Email: Jeff.Nelson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas E. Brandon**                    represented by   **Eric J. Soskin**
*Acting Director Bureau of Alcohol*                       (See above for address)
*Tobacco Firearms and Explosives*                         *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Bureau of Alcohol Tobacco Firearms**   represented by   **Eric J. Soskin**
**and Explosives**                                        (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/16/2019 | 1 | | Case has been indexed and assigned to Judge Jill N. Parrish. Plaintiff W. Clark Aposhian is directed to E–File the Complaint  and cover sheet (found under Complaints and Other Initiating Documents) and pay the filing fee of $ 400.00 by the end of the business day. <span style="color:red">NOTE: The court will not have jurisdiction until the opening document is electronically filed and the filing fee paid in the CM/ECF system.</span> Civil Summons may be issued electronically. Prepare the summons using the courts PDF version and email it to utdecf_clerk@utd.uscourts.gov for issuance. (tlh) (Entered: 01/16/2019) |
| 01/16/2019 | 2 | | COMPLAINT against All Defendants (Filing fee $ 400, receipt number 1088–3184644) filed by W. Clark Aposhian. (Attachments: # 1 Civil Cover Sheet Civil Rights) Assigned to Judge Jill N. Parrish (Salcido, Gerald) (Entered: 01/16/2019) |
| 01/16/2019 | 3 | | MOTION for Admission Pro Hac Vice of Caleb Kruckenberg , Registration fee $ 250, receipt number 1088–3184712, filed by Plaintiff W. Clark Aposhian. (Attachments: # 1 Affidavit Application for Admission Pro Hac Vice and Electronic Case Filing Registration Form, # 2 Text of Proposed Order Granting Motion for Admission Pro Hac Vice)(Salcido, Gerald) (Entered: 01/16/2019) |
| 01/16/2019 | 4 | | <span style="color:red">ORDER granting 3 Motion for Admission Pro Hac Vice of Caleb Kruckenberg for W. Clark Aposhian.</span> <span style="color:red">*Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov*</span> <span style="color:red">. Signed by Judge Jill N. Parrish on 1/16/2019. (jds) (Entered: 01/16/2019)</span> |
| 01/17/2019 | 5 | | **\*\*RESTRICTED DOCUMENT\*\***Summons Issued Electronically as to Matthew Whitaker. |

| | | | |
|---|---|---|---|
| | | | Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (nl) (Entered: 01/17/2019) |
| 01/17/2019 | 6 | | **RESTRICTED DOCUMENT**Summons Issued Electronically as to United States Department of Justice.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (nl) (Entered: 01/17/2019) |
| 01/17/2019 | 7 | | **RESTRICTED DOCUMENT**Summons Issued Electronically as to Thomas E. Brandon.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (nl) (Entered: 01/17/2019) |
| 01/17/2019 | 8 | | **RESTRICTED DOCUMENT**Summons Issued Electronically as to Bureau of Alcohol Tobacco Firearms and Explosives.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (nl) (Entered: 01/17/2019) |
| 01/17/2019 | 9 | | **RESTRICTED DOCUMENT**Summons Issued Electronically as to United States Attorney for the District of Utah.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (nl) (Entered: 01/17/2019) |
| 01/17/2019 | 10 | 6 | MOTION for Preliminary Injunction and Memorandum in Support filed by Plaintiff W. Clark Aposhian. (Attachments: # 1 Exhibit)(Kruckenberg, Caleb) (Entered: 01/17/2019) |
| 01/17/2019 | 11 | | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by W. Clark Aposhian. Bureau of Alcohol Tobacco Firearms and Explosives served on 1/17/2019, answer due 3/18/2019. (Attachments: # 1 Exhibit Proof of Mailing)(Kruckenberg, Caleb) (Entered: 01/17/2019) |
| 01/17/2019 | 12 | | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by W. Clark Aposhian. Thomas E. Brandon served on 1/17/2019, answer due 3/18/2019. (Attachments: # 1 Exhibit Proof of Mailing)(Kruckenberg, Caleb) (Entered: 01/17/2019) |
| 01/17/2019 | 13 | | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by W. Clark Aposhian. United States Department of Justice served on 1/17/2019, answer due 3/18/2019. (Attachments: # 1 Exhibit Proof of |

| | | | |
|---|---|---|---|
| | | | Mailing)(Kruckenberg, Caleb) (Entered: 01/17/2019) |
| 01/17/2019 | 14 | | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by W. Clark Aposhian. (Attachments: # 1 Exhibit Proof of Mailing)(Kruckenberg, Caleb) (Entered: 01/17/2019) |
| 01/17/2019 | 15 | | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by W. Clark Aposhian. Matthew Whitaker served on 1/17/2019, answer due 3/18/2019. (Attachments: # 1 Exhibit Proof of Mailing)(Kruckenberg, Caleb) (Entered: 01/17/2019) |
| 01/24/2019 | 16 | | MOTION to Stay and Memorandum in Support filed by Defendant United States Department of Justice. (Attachments: # 1 Text of Proposed Order) Attorney Jeffrey E. Nelson added to party United States Department of Justice(pty:dft)(Nelson, Jeffrey) (Entered: 01/24/2019) |
| 01/24/2019 | 17 | | RESPONSE to Motion re 16 MOTION to Stay and Memorandum in Support filed by Plaintiff W. Clark Aposhian. (Kruckenberg, Caleb) (Entered: 01/24/2019) |
| 01/25/2019 | 18 | | RESPONSE to Motion re 16 MOTION to Stay and Memorandum in Support filed by Defendant United States Department of Justice. (Nelson, Jeffrey) (Entered: 01/25/2019) |
| 01/25/2019 | 19 | | DOCKET TEXT ORDER denying 16 Motion to Stay. Based upon the agreement to fund the Government through February 15, 2019, the court sets the following schedule for the motion for a preliminary injunction: the defendants' response brief shall be due on February 6, 2019; the plaintiff's reply brief shall be due on February 12, 2019; and a hearing on the motion shall be held on February 14, 2019 at 10:00 a.m. Signed by Judge Jill N. Parrish on 1/25/19. No attached document. (ksb) (Entered: 01/25/2019) |
| 01/25/2019 | 20 | | **NOTICE OF HEARING ON MOTION** re: 10 Motion for Preliminary Injunction : (Notice generated by ss) Motion Hearing set for 2/14/2019 at 10:00 AM in Rm 8.200 before Judge Jill N. Parrish. (ss) (Entered: 01/25/2019) |
| 02/01/2019 | 21 | | CIVIL STANDING ORDER Signed by Judge Jill N. Parrish on 2/1/19. (ss) (Entered: 02/01/2019) |
| 02/04/2019 | 22 | | NOTICE OF ACKNOWLEDGMENT of Civil Standing Order 21 filed by Plaintiff W. Clark Aposhian (Kruckenberg, Caleb) (Entered: 02/04/2019) |
| 02/04/2019 | 23 | | ORDER REFERRING CASE to Magistrate Judge Brooke C. Wells under 28:636 (b)(1)(A), Magistrate to hear and determine all nondispositive pretrial matters. No attached document. Signed by Judge Jill N. Parrish on 2/4/19. (ss) (Entered: 02/04/2019) |
| 02/04/2019 | 24 | | NOTICE of Appearance by Eric J. Soskin on behalf of Thomas E. Brandon, Bureau of Alcohol Tobacco Firearms and Explosives, United States Department of Justice, Matthew Whitaker (Soskin, Eric) (Entered: 02/04/2019) |
| 02/06/2019 | 25 | | MEMORANDUM in Opposition re 10 MOTION for Preliminary Injunction and Memorandum in Support filed by Defendants Thomas E. Brandon, Bureau of Alcohol Tobacco Firearms and Explosives, United States Department of Justice, Matthew Whitaker. (Soskin, Eric) (Entered: 02/06/2019) |

| 02/11/2019 | 26 |    | REPLY to Response to Motion re 10 MOTION for Preliminary Injunction and Memorandum in Support filed by Plaintiff W. Clark Aposhian. (Attachments: # 1 Exhibit Attorney Declaration)(Kruckenberg, Caleb) (Entered: 02/11/2019) |
| 02/14/2019 | 28 |    | Minute Entry for proceedings held before Judge Jill N. Parrish: Motion Hearing held on 2/14/2019 re 10 Motion for Preliminary Injunction filed by W. Clark Aposhian. After hearing arguments from counsel, Court took the matter under advisement. Attorney for Plaintiff: Caleb Kruckenberg, Attorney for Defendant: Eric Soskin, Matthew Glover. Court Reporter: Patti Walker.(ss) (Entered: 03/12/2019) |
| 02/27/2019 | 27 |    | NOTICE of SUPPLEMENTAL AUTHORITY by Thomas E. Brandon, Bureau of Alcohol Tobacco Firearms and Explosives, United States Department of Justice, Matthew Whitaker (Soskin, Eric) (Entered: 02/27/2019) |
| 03/14/2019 | 29 |    | Consent MOTION for Extension of Time to File Answer re 2 Complaint *(Or Otherwise Move or Respond to Complaint)* filed by Defendants Thomas E. Brandon, Bureau of Alcohol Tobacco Firearms and Explosives, United States Department of Justice, Matthew Whitaker. (Attachments: # 1 Text of Proposed Order) Motions referred to Brooke C. Wells.(Soskin, Eric) (Entered: 03/14/2019) |
| 03/14/2019 | 30 |    | ORDER granting 29 Defendants Stipulated Motion to Extend Time to Respond to 2 Complaint. IT IS HEREBY ORDERED that Defendants Motion is GRANTED, and Defendants shall answer, move, or otherwise respond to Plaintiffs Complaint no more than 30 days after the lapse of the time to appeal any order of the Court regarding Plaintiffs Motion for Preliminary Injunction or 30 days after final resolution of any appeal of such order. Signed by Magistrate Judge Brooke C. Wells on 3/14/2019. (jds) (Entered: 03/14/2019) |
| 03/15/2019 | 31 | 39 | MEMORANDUM DECISION AND ORDER DENYING 10 MOTION FOR PRELIMINARY INJUNCTION. Signed by Judge Jill N. Parrish on 3/15/19. (ss) (Entered: 03/15/2019) |
| 03/18/2019 | 32 | 51 | NOTICE OF INTERLOCUTORY APPEAL as to 31 Order on Motion for Preliminary Injunction, Memorandum Decision filed by W. Clark Aposhian. Appeals to the USCA for the 10th Circuit. Filing fee $ 505, receipt number 1088–3228271. (Kruckenberg, Caleb) (Entered: 03/18/2019) |

**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217

Counsel for Plaintiff
Admitted *pro hac vice*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| W. CLARK APOSHIAN,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW WHITAKER ACTING ATTORNEY GENERAL OF THE UNITED STATES, et al.<br><br>    Defendants. | CIVIL ACTION NO.: 2:19-cv-00037-JNP<br><br>**MOTION FOR PRELIMINARY INJUNCTION** |

---

## I. Relief Sought and the Specific Grounds for the Motion

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiff, W. Clark Aposhian, moves for a preliminary injunction prohibiting Defendants, Matthew Whitaker, Acting Attorney General of the United States, the United States Department of Justice, Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, from enforcing the Final Rule, *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514, 66553-54 (Dec. 26, 2018), against him pending trial in this matter.

Unless enjoined from enforcing the Final Rule, which becomes effective on March 26, 2019, Mr. Aposhian will be forced to either destroy or surrender his lawfully acquired property to the ATF or face criminal prosecution. The Final Rule was enacted in violation of constitutional limits on the government's authority as well as specific statutory limits on the ATF's authority, and Mr. Aposhian will likely succeed on the merits in this case. Finally, the balance of equities favors the injunction as Mr. Aposhian's interest in his constitutional and statutory rights vastly outweighs the government's interest in enacting the Final Rule without delay.

## II. FACTS

As set out in his Complaint, Plaintiff has been ordered by the Defendants to destroy or surrender a Slide Fire bump-stock device, which he legally purchased, by March 26, 2019, or face criminal prosecution.

Mr. Aposhian purchased his bump stock in reliance on the Bureau of Alcohol, Tobacco, Firearms and Explosive's prior determination that the device "is a firearm part and is not regulated as a firearm under [the] Gun Control Act or the National Firearms Act." Declaration of W. Clark Aposhian in Support of Plaintiff's Motion for Preliminary Injunction (Exhibit A); John R. Spencer, Chief, Firearms Technology Branch, *Slide Fire Approval Letter* (June 7, 2010) (Exhibit B). Mr. Aposhian continues to possess his Slide Fire device for lawful purposes. (Exhibit A.)

Despite the ATF's prior determination, the ATF issued a Final Rule on December 26, 2018, which altered the statutory definition of a prohibited "machinegun" to include the Slide Fire bump stock. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514, 66553-54 (Dec. 26, 2018). The Final Rule directs Mr. Aposhian "to destroy the device[] or abandon [it] at an ATF office prior

to" "March 26, 2019." *Id.* at 66514, 66555. If Mr. Aposhian continues to possess his Slide Fire bump stock after March 26, 2019, he faces potential criminal prosecution and a federal prison sentence of up to 10 years, pursuant to 18 U.S.C. §§ 922(o), 924(a)(2).

## III. ARGUMENT

Mr. Aposhian is entitled to a preliminary injunction if he shows: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). For the reasons that follow, Mr. Aposhian has satisfied all four elements of this test.

### A. Mr. Aposhian Is Likely to Prevail on the Merits

No agency has any inherent power to make law. Article I, § 1 of the U.S. Constitution vests "[a]ll legislative powers" in the Congress, and Article II, § 3 of the Constitution directs that the President "shall take Care that the Law be faithfully executed … ." Under this structure "the lawmaking function belongs to Congress … and may not be conveyed to another branch or entity." *Loving v. United States*, 517 U.S. 748, 758 (1996). Further, "an agency literally has no power to act … unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

The Administrative Procedure Act (APA) separately allows a Court to "hold unlawful and set aside" an agency's rule that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right" or "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(A), (B), (C).

In "review[ing] an agency's construction of [a] statute which it administers," the first question for the court is "whether Congress has directly spoken to the precise question at issue."

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter, for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* Under this analysis, the court "must reject administrative constructions which are contrary to clear congressional intent," because the "judiciary is the final authority on issues of statutory construction." *Id.* at n. 9; *see also Webster v. Luther*, 163 U.S. 331, 342 (1896) ("[T]his court has often said that it will not permit the practice of an executive department to defeat the obvious purpose of a statute."). An agency interpretation is never valid if it is "arbitrary, capricious, or manifestly contrary to the statute." *In re FCC 11-161*, 753 F.3d 1015, 1041 (10th Cir. 2014).

The Final Rule is invalid because it was issued without statutory authorization, conflicts with statutory language, is an unreasonable agency interpretation of statutory language, and constitutes arbitrary and capricious agency activity. The Final Rule therefore constitutes an unconstitutional legislative act under Articles I, § 1 and II, § 3 of the U.S. Constitution and violates statutory limitations established by the Administrative Procedure Act.

### 1. As Set Out in Counts I and V, the Final Rule Was Issued Without Statutory Authority, Violating Article I, § 1 and Article II, § 3 of the U.S. Constitution and 5 U.S.C. § 706(2)(C)

In 1934 Congress passed the National Firearms Act (NFA), which regulated firearms under Congress' power to lay and collect taxes. *See United States v. Dalton*, 960 F.2d 121, 124 (10th Cir. 1992). Under the NFA, Congress criminalized the possession or transfer of an unregistered firearm, while also prohibiting the registration of firearms otherwise banned by law. *See* 26 U.S.C. §§ 5812(a), 5861.

In 1968, Congress passed the Gun Control Act (GCA) criminalizing possession of firearms for certain classes of people. *See* 18 U.S.C. § 921 et seq. Congress later amended the

4

GCA prospectively outlawing most machineguns, and simultaneously making it unlawful for any person to register those machineguns. *Dalton*, 960 F.2d at 122-23. Today, with limited exceptions for governmental actors and machineguns that were in existence and registered prior to the effective date of the statute, May 19, 1986, it is a felony offense, punishable by up to 10 years in federal prison, for any person to "transfer or possess a machinegun." 18 U.S.C. §§ 922(o), 924(a)(2).

Congress set out a definition of "machinegun" in the NFA at 26 U.S.C. § 5845(b). This definition was then incorporated by reference into the GCA at 18 U.S.C. § 921(23).

Congress also attempted to delegate certain administrative powers under the NFA. First, Congress granted the Secretary of the Treasury the authority to "prescribe all needful rules and regulations for the enforcement of [the NFA], including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue." 26 U.S.C. § 7805(a). By contrast, Congress provided the Attorney General only with the authority to administer and enforce the NFA. 26 U.S.C. § 7801(a)(1)(2)(A). Congress also provided the ATF, under the authority of the Attorney General, with the authority to issue certain "rulings and interpretations" related to the NFA's requirements. 26 U.S.C. § 7801(a)(2)(B). Neither the Attorney General nor the ATF has any substantive rulemaking authority under 26 U.S.C. § 7805(a).

Congress attempted to delegate different administrative powers under the GCA. Congress granted the Attorney General the authority to "prescribe only such rules and regulations as are necessary to carry out the provisions of" the GCA. 18 U.S.C. § 926(a). This authority had previously belonged to the Secretary of the Treasury. *See* Pub.L. 107-296, Title XI, § 1112(f)(6), Nov. 25, 2002, 116 Stat. 2276 (transferring Secretary's authority to the Attorney General). The Attorney General has delegated his authority under the GCA to the ATF. 28 C.F.R.

§ 0.130(a)(1).

Even though neither the Attorney General nor the ATF has any substantive rulemaking authority under the NFA, the Final Rule attempts to rewrite the definition of "machinegun" set out in the NFA at 26 U.S.C. § 5845(b). The Final Rule was issued by the ATF and signed by the Acting Attorney General, but it was not approved or promulgated by the Secretary of the Treasury. *Final Rule*, 83 Fed. Reg. at 66514. Instead, the ATF relied on the Attorney General's authority "to promulgate regulations necessary to enforce provisions of the NFA and GCA" under "18 U.S.C. 926(a)" and "26 U.S.C. 7801(a)(2)(A), 7805(a)" as a basis of authority for issuing the Final Rule. *Id.* at 66515.

But the Attorney General *has no* substantive rulemaking authority under the NFA. First, the Attorney General has no substantive rulemaking authority under 26 U.S.C. § 7805(a) because that authority was never "expressly given" to him under Title 26. Indeed, the only power expressly given to the Attorney General or the ATF under the NFA was that of "administration and enforcement" of the statute and "interpretation[]" of its terms. 26 U.S.C. §§ 7801(a)(1)(2)(A), (a)(2)(B). Issuing a substantive rule that rewrites a statutory definition and creates half a million new felons is not an act of "administration and enforcement" that the Attorney General is empowered to undertake, nor is it an act of "interpretation[]" authorized to the ATF. The Acting Attorney General and ATF therefore had no power to issue the Final Rule as it relates to the NFA.

The Attorney General's authority under the GCA also cannot support the Final Rule. The GCA allows the Attorney General to "prescribe only such rules and regulations as are necessary to carry out the provisions of" the GCA. 18 U.S.C. § 926(a). But the Final Rule alters the statutory text of the NFA, not just the GCA. Even if the Final Rule was "necessary" to carry out

the criminal statute, the definition of machinegun is not under this title. The Acting Attorney
General's authority under Section 926(a) cannot allow him to rewrite the text of a separate
statute, over which he has *not* been given any rulemaking authority.

None of the sources of authority cited in the Final Rule allow the Acting Attorney
General to alter the definition of a "machinegun" in the NFA, and the Final Rule was therefore
issued without statutory authorization. The Final Rule is unconstitutional under Articles I, § 1
and II, § 3 of the U.S. Constitution and is therefore void. *See La. Pub. Serv. Comm'n*, 476 U.S. at
374.

### 2. As Set Out in Counts II and VI, the Final Rule Conflicts with the Statute, Violating Article I, § 1 and Article II, § 3 of the U.S. Constitution and 5 U.S.C. § 706(2)(C)

Congress' intent is clear, and the Final Rule runs counter to the language set out by
Congress in the National Firearms Act. The Final Rule therefore conflicts with the plain
language of the statute and is invalid under Articles I, § 1 and II, § 3 of the Constitution and
under the APA.

The NFA requires that the weapon at issue be able to "to shoot, *automatically* more than
one shot, without manual reloading, by a *single function of the trigger*." 26 U.S.C. § 5845(b)
(emphasis added).

The Supreme Court has already explained that this language

> refer[s] to a weapon that fires repeatedly with a single pull of the trigger. That is,
> once its trigger is depressed, the weapon will automatically continue to fire *until its
> trigger is released* or the ammunition is exhausted. Such weapons are
> 'machineguns' within the meaning of the Act. We use the term 'semiautomatic' to
> designate a weapon that fires only one shot with each pull of the trigger, and *which
> requires no manual manipulation by the operator to place another round in the
> chamber after each round is fired*.

*Staples v. United States*, 511 U.S. 600, 602 n. 1 (1994) (emphasis added).

7

A weapon functions "automatically" when it "discharge[s] multiple rounds" "as the result of a self-acting mechanism" "that is set in motion by a single function of the trigger and is accomplished without manual reloading." *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009).

The ATF has long recognized that a machinegun is a firearm that commences firing after the manual activation of a trigger, which then "initiates an automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted." *Classification of Devices Exclusively Designed to Increase the Rate of Fire of a Semiautomatic Firearm*, ATF Rul. 2006-2, at 3 (Dec. 13, 2006) (Exhibit C). This does not include a firearm that "require[es] continuous multiple inputs by the user for each successive shot," even if the multiple user inputs are directed at parts of the firearm other than the trigger mechanism. Letter from Richard W. Marianos, ATF Assistant Director Public and Governmental Affairs, to Representative Ed Perlmutter, at 2 (Apr. 16, 2013) (Exhibit D).

The Final Rule changes the statutory terms and defines certain devices as machineguns even when they do not initiate an automatic firing cycle from a single function of a trigger. Machineguns fire more than once after a shooting engages the trigger mechanism once. But the Final Rule now says that machineguns also include firearms that fire only once after a single function of the trigger. To get to this outcome, the Final Rule simply disregards a shooter's manual manipulation of his firearm, even when it engages the trigger function between shots, so long as it is not the precise act of *pulling* the trigger lever. This new definition is invalid.

This new definition conflicts with the statute, first, because it improperly defines the term "automatically" to disregard a shooter's additional manual manipulation of the firearm. Instead of requiring that the firearm continuously operate without additional "manual manipulation by

the operator," *Staples*, 511 U.S. at 602 n. 1, the rule says that additional physical manipulation is irrelevant if it is not the "physical manipulation of the *trigger* by the shooter." *Final Rule*, 83 Fed. Reg. at 66553-54 (emphasis added). Bump stocks, which require the shooter to "maintain[] constant forward pressure with the non-trigger hand on the barrel shroud or fore-grip of the rifle, and maintain[] the trigger finger on the device's extension ledge with constant rearward pressure," are now deemed machineguns by the Final Rule because the "shooter [allegedly] 'pulls' the trigger once." *Final Rule*, 83 Fed. Reg. at 66518, 66533.[1] The ATF now insists that the shooter's manual manipulation by the "the non-trigger hand" is insufficient. *Final Rule*, 83 Fed. Reg. at 66518, 66533.

But this view of what it means to automatically continue fire without additional physical manipulation cannot be reconciled with the statute. The text does not restrict where and how the additional manual manipulation occurs, it simply says that automatic fire occurs "automatically" after a "single function of the trigger." 26 U.S.C. § 5845(b). Limiting the meaning to ignore manual manipulation of any part other than the trigger conflicts with text and with prior court interpretation. Further, the ordinary definition of the term "automatic," refers only to the series of shots "set in motion by a single function of the trigger and [] accomplished without manual reloading." *Olofson*, 563 F.3d 652, 658. If a firearm requires separate physical input, even if not directed to the *trigger mechanism*, this still disrupts the automatic firing of each successive shot. (*See* Exhibit C at 2.) The new rule therefore is invalid for this reason.

Second, the rule improperly defines "single function of the trigger" to disregard mechanical resets of a trigger mechanism. The statute speaks to a series of shots initiated by the

---

[1] Mr. Aposhian does not agree that operating a bump stock involves only manual manipulation by the non-shooting hand. As the ATF recognized, operating a bump stock also requires the shooter to "re-engage [the trigger] by 'bumping' the shooter's stationary finger" into the trigger. *Final Rule*, 83 Fed. Reg. at 66516.

9

"single function of the trigger" and "automatically" continuing from that same physical act. 26 U.S.C. § 5845(b). This means the firearm "automatically continue[s] to fire *until its trigger is released* or the ammunition is exhausted." *Staples*, 511 U.S. at 602 n. 1 (emphasis added). The ATF has recognized that bump stocks are not machineguns, in part, because they allow the trigger to "mechanically reset" between shots. John R. Spencer, Chief, Firearms Technology Branch, *Approval Letter* at 2 (June 18, 2008) (Exhibit E). Each shot cannot therefore be said to arise from a "single function." *Id.* While the ATF still agrees that bump stocks cause a firearm's trigger to lose contact with the shooter's finger and manually reset, the new rule says that "the trigger reset[]" is irrelevant unless the shooter provides "additional physical manipulation of the *trigger*" between shots. *Final Rule*, 83 Fed. Reg. at 66516-17. But the statute's careful and deliberate use of the phrase "single function of the trigger" does not allow the ATF to disregard the mechanical significance of the trigger reset.

Finally, the new rule conflicts with the statutory language because it improperly limits the phrase "single function of a trigger" to mean *only* "a single *pull* of the trigger" accomplished by a single "physical manipulation of the trigger" by the shooter. The ATF's new definition would discount additional functions of the trigger that are not accomplished by the shooter's actual "pull" on the trigger mechanism.

The statute focuses on the trigger's "function," and it expressly encompasses conduct beyond merely pulling a piece of metal. 26 U.S.C. § 5845(b). *Pulling* a trigger lever is certainly one way that a trigger may function, but it is not the only way.

The ATF even noted in the Final Rule that "the courts have made clear that whether a trigger is operated through a 'pull,' 'push,' or some other action such as a [*sic*] flipping a switch, does not change the analysis of the functionality of a firearm." *Final Rule*, 83 Fed. Reg. at 66518

10

n. 5. What matters for the statutory analysis is whether a shooter performs a single act, which in turn causes more than one "function of the trigger." *See United States v. Akins*, 312 F. App'x 197, 200 (11th Cir. 2009) (unpublished) (device was a machinegun because, "[a]fter a single *application* of the trigger by a gunman, the Accelerator uses its internal spring and the force of recoil to fire continuously the rifle cradled inside until the gunman releases the trigger or the ammunition is exhausted") (emphasis added); *United States v. Camp*, 343 F.3d 743, 745 (5th Cir. 2003) (internal citation and quotation marks omitted) ("single function of the trigger" "implies no intent to restrict" the meaning to only encompass "pulling a small lever," and instead means any action that "initiated the firing sequence"); *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002) (minigun was machinegun because it fired automatically following a single activation of an electronic on-off switch).

The new rule, however, does what the ATF claims to have disavowed; it elevates one specific movement—a "pull of the trigger"—to a determinate place. If a shooter pulls only once, or perhaps not at all, but merely *pushes* a firearm with his non-trigger hand in a way that causes the trigger to function more than once, the new rule says he is firing a machinegun. The rule recognizes that bump stocks require the shooter to "re-engage[ the trigger] by 'bumping' the shooter's stationary finger" into the trigger by applying continuous forward pressure, but insists that this is not a "pull of the trigger" because it is not a *backward* action on the trigger lever. *Final Rule*, 83 Fed. Reg. at 66516. But a shooter can operate a firearm's trigger by repeatedly pushing the weapon *into* his stationary finger, whether or not he is using a bump stock. And this rule would absurdly consider such a *person* a machinegun if he did so.

Ultimately, the ATF has obliterated the statutory distinction between automatic and semi-automatic weapons that was set out by Congress. But Congress set out that distinction, and the

ATF cannot unilaterally alter the statute to serve its preferred policy objectives. The Final Rule is therefore invalid.

### 3. As Set Out in Count VI, the Final Rule Adopts an Unreasonable Interpretation of the Statute, Violating 5 U.S.C. § 706(2)

Even if this Court were to conclude that the rule is not in direct conflict with the statute, the ATF's construction of the definition of machinegun must still be set aside. The Court owes no deference to the ATF's construction of the NFA in this case. Further, even if the Court were to defer to the ATF's construction, it is so unreasonable that it still must be rejected.

*Chevron* deference is nothing more than "a rule of thumb, guiding courts in an effort to respect that leeway which Congress intended the agencies to have." *SAS Inst., Inc. v. Iancu*, 138 S.Ct. 1348, 1364 (2018) (Breyer, J., dissent). And this "rule of thumb" gives way in a variety of contexts.

First, courts do not generally defer to an agency's unexplained change in interpretation. *See Watt v. Alaska*, 451 U.S. 259, 273 (1981) ("The Department's current interpretation, being in conflict with its initial position, is entitled to considerably less deference."). This exception is because deference assumes that an agency has operated with a better understanding of the statute it has been tasked with administering than a court. *See Chevron*, 467 U.S. at 865 (deference is premised on assumption that agency "with great expertise and charged with responsibility for administering the provision would be in a better position to do so" than courts). But, "[u]nexplained inconsistency" signals something other than expertise. *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs., Inc.*, 545 U.S. 967, 981 (2005). Further, an agency must provide a "reasoned explanation … for disregarding facts and circumstances that underlay or were engendered by [] prior policy." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009).

The Court owes no deference here because the ATF has not provided adequate justification for its shift in policy. As set out below, the ATF consistently interpreted the statutory language to exclude bump stocks for well over a decade, and did so even after the tragic Las Vegas shooting on October 1, 2017. This consistent history of interpretation across administrations of both political parties was based on the agency's physical examination of these devices and its expertise in the area. Suddenly, the ATF changed course without conducting additional physical examinations, and without providing adequate reasons for disregarding its prior interpretation. The new interpretation is therefore not owed any deference. *See Fox*, 556 U.S. at 516.

Second, the ATF disregarded its own expertise in writing the rule, and thus no deference is warranted for this reason as well. A Court does not owe an agency deference when it interprets a statute "not in [its] area of expertise." *United States v. Ochoa-Colchado*, 521 F.3d 1292, 1298 (10th Cir. 2008). But even after the Las Vegas shooting, ATF Acting Director Thomas E. Brandon consulted with "technical experts," "firearms experts" and "lawyers" within the ATF, and the consensus within the agency was that "bump stocks" "didn't fall within the Gun Control Act and the National Firearms Act." *See Something, Say Something: Oversight of the Parkland Shooting and Legislative Proposals to Improve School Safety: Hearing Before the S. Comm. on the Judiciary*, 115th Cong. (Mar. 14, 2018) (Judiciary Comm. Testimony) (testimony of Acting Director Brandon). Nevertheless, the agency issued the Final Rule at the insistence of the President and the Acting Attorney General, overruling the experts within the agency. *See id.* Because the ATF disavowed its own expertise in crafting the rule, it is not entitled to any deference. *See Ochoa-Colchado*, 521 F.3d at 1298.

Third, the ATF is owed no deference here because to do so would violate the separation of powers. A court owes no deference to a prosecutor's interpretation of a criminal law. *Abramski v. United States*, 134 S.Ct. 2259, 2274 (2014). Instead, "any ambiguity concerning the ambit of criminal statutes" is resolved "in favor of lenity." *Yates v. United States*, 135 S.Ct. 1074, 1088 (2015) (internal citation and quotation marks omitted). "Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparota v. United States*, 471 U.S. 419, 427 (1985).

The Tenth Circuit, sitting *en banc*, has recognized that the rule of lenity limits deference to agency interpretation, and has required that agency interpretation not only be reasonable, but also "not in conflict with interpretive norms regarding criminal statutes." *N.L.R.B. v. Oklahoma Fixture Co.*, 332 F.3d 1284, 1287 (10th Cir. 2003). To defer, in such instances, would "upend ordinary principles of interpretation" and allow "federal administrators [to] in effect create (and uncreate) new crimes at will, so long as they do not roam beyond ambiguities that the laws contain." *Whitman v. United States*, 135 S. Ct. 352, 353 (2014) (Scalia, J., statement regarding denial of certiorari, joined by Thomas, J.). The application of *Chevron* deference in such a setting "threatens a complete undermining of the Constitution's separation of powers, while the application of the rule of lenity preserves them by *maintaining the legislature as the creator of crimes*." *Esquivel-Quintana v. Lynch*, 810 F.3d 1019, 1030 (6th Cir. 2016) (Sutton, J., concurring and dissenting in part) (emphasis added) *reversed on other grounds by* 137 S.Ct. 1562 (2017). As then-judge Gorsuch recognized, these separation of powers concerns are at their peak when a court is "required to overrule [its] own declarations about the meaning of existing law in favor of interpretations directed by executive agencies," pursuant to the doctrine set out in *Nat'l Cable &*

14

*Telecomm. Ass'n v. Brand X Internet Servs., Inc. Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1150 (10th Cir. 2016) (Gorsuch, J., concurring).

Here, *Chevron's* "rule of thumb" cannot empower the ATF to rewrite an ambiguous statute contrary to the rule of lenity, particularly when it would also overrule Supreme Court precedent in the process. A first-time offender faces up to ten years in federal prison for possessing a machinegun, 18 U.S.C. §§ 922(o), 924(a)(2), which reflects Congress' reasoned judgment about what penalties are appropriate for possessing certain types of prohibited weapons. But the Final Rule rejects Congress' view and rewrites the definition of what items are subject to those harsh criminal penalties. The rule of lenity, which this Court must apply, therefore commands that any ambiguity in the definition of machinegun "be construed narrowly" in favor of a potential criminal defendant. *See N.L.R.B.*, 332 F.3d at 1287 n. 5. This is constitutionally necessary to preserve fair notice of the law's reach and to prevent prosecutors from usurping legislative roles. *Esquivel-Quintana*, 810 F.3d at 1030 (Sutton, J., concurring and dissenting in part). Deferring to the ATF based on ambiguity in the definition would upend this rule and do so at the expense of prior court interpretations of the statute. *See Staples*, 511 U.S. at 602 n. 1; *Olofson*, 563 F.3d at 658; *Fleischli*, 305 F.3d at 655. This would allow the ATF and the Acting Attorney General to reinterpret a criminal statute against potential defendants, overruling Supreme Court precedent in the process, in defiance of the rule of lenity. Such an outcome would raise profound due process and separation of powers concerns. *See Gutierrez-Brizuela*, 834 F.3d at 1150 (Gorsuch, J., concurring); *Esquivel-Quintana*, 810 F.3d at 1030 (Sutton, J., concurring and dissenting in part).

The new rule is plainly unreasonable. The Final Rule rejects several criteria previously required for a firearm to have been deemed a machinegun under the most natural reading of the

statute. As described by the Supreme Court, a machinegun is activated "by a single function of the trigger" and continues firing "automatically" until the "ammunition supply is exhausted." *Staples*, 511 U.S. at 602 n. 1. A firearm does not meet this definition if either [1] the shooter is required to provide additional "manual manipulation" between shots; or [2] the trigger "mechanical[ly] reset[s]" between shots. *Id.*; (Exhibit E). Moreover, the requisite manipulation of the trigger can be accomplished in ways other than simply pulling a lever on the underside of a firearm. *Fleischli*, 305 F.3d at 655. Thus, the most natural reading of the statute has been the one adopted by the ATF itself since 2006—a machinegun continuously fires rounds following [1] a single function of the trigger, no matter how initiated, and [2] without additional manual manipulation, until the supply of ammunition is exhausted. (*See* Exhibits B, C, E.)

The new definition alters both conditions. The new rule says that a "single function of the trigger" actually means a "single pull of the trigger" at the exclusion of all other means of causing the trigger to function. *Final Rule*, 83 Fed. Reg. at 66553-54. The new rule also says that additional manual manipulation must be directed only to the act of pulling the trigger and cannot be any other form of physical activity. *Final Rule*, 83 Fed. Reg. at 66518, 66533. These limitations are not found anywhere in the statute and must be rejected.

Even if this court were to defer to the ATF's interpretation under *Chevron*, that interpretation goes so far beyond any rational understanding of the statutory text that it is unreasonable. Courts have not had trouble defining a machinegun under the NFA's terms, and the ATF has previously adopted a consistent and reasonable interpretation that respects the statutory language. The Final Rule, which conflicts with court interpretations and more than a decade of consistent ATF interpretation, is not reasonable.

16

### 4. As Set Out in Count VII, the Final Rule Is Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with Law, Violating 5 U.S.C. § 706(2)(A)

A court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[2] While this review is "necessarily narrow, it is not insubstantial." *Qwest Comms. Int'l, Inc. v. F.C.C.*, 398 F.3d 1222, 1229 (10th Cir. 2005). A Court is required to "engage in … a probing, in-depth review." *Id*. (internal citation and quotation marks omitted). An agency's action is arbitrary and capricious "if the agency has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The ATF's actions here were invalid for three independent reasons. First, the ATF "relied on factors which Congress had not intended it to consider" in promulgating the Final Rule, because the rule was crafted in response to political pressure and not any legitimate interpretive analysis. Prior to the Las Vegas shooting on October 1, 2017, the ATF had consistently insisted that bump fire stocks, "do not fall within any of the classifications for firearm contained in Federal law" and the "ATF does not have the authority to restrict their lawful possession, use, or transfer." (Exhibit D at 1-2.) Immediately after the shooting, Acting Director Brandon consulted with "technical experts," "firearms experts" and "lawyers" within the ATF and the consensus within the agency was that "bump stocks" still "didn't fall within the Gun Control Act and the

---

[2] While courts review agency action for reasonableness using an arbitrary and capricious standard, and also use the same language for review under 5 U.S.C. § 706(2)(A), "the Venn diagram of the two inquiries is not a circle." Humane Society of the United States v. Zinke, 865 F.3d 585, 605 (D.C. Cir. 2017). Each inquiry is distinct, and agency action may be invalid under either form of review. Id.

17

National Firearms Act." Judiciary Comm. Testimony. Congress then tried, but ultimately failed, to pass at least five different bills that would have amended federal statutes to ban or regulate bump stocks during the 115th Congress.

The first time the ATF reconsidered its position came after the President directed it to do so. The ATF even acknowledged in its Notice of Proposed Rulemaking that it had acted on the President's direction to review the issue. 83 Fed. Reg. at 13443, 13446. Further, the President declared in a memorandum that he would accept nothing less than a "rule banning all devices that turn legal weapons into machineguns," which, in his view, included bump stocks. *Presidential Memorandum on the Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices* (Feb. 20, 2018). And Acting Director Brandon acknowledged in his testimony before the Senate Judiciary Committee that the interpretive change had come about at the behest of the Attorney General. Judiciary Comm. Testimony.

But an agency's consistent, reasonable, and textually-correct interpretation of a statute does not become invalid merely because it is unpopular, or because it would be more politically expedient for it to change. Agencies may fill appropriate gaps in statutes, but they cannot supplant Congress. *See Chevron*, 467 U.S. at 843 (an "agency" "must give effect to the unambiguously expressed intent of Congress"). Congress' failure to fix what the President viewed as an existing statutory problem is not a valid basis for an agency to disregard its own expertise and analysis in favor of an improper interpretation. Here, the ATF behaved like a political body, instead of an administrative one.

Next, the ATF's proffered explanation for the Final Rule runs counter to the evidence before the agency. It is telling that the firearms experts, who, in 2010, physically examined the Slide Fire device for approval without any outside or improper political pressure, readily

18

concluded that it was "a firearm part and is not regulated as a firearm under [the] Gun Control Act or the National Firearms Act," because it "has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed." (Exhibit B.) The experts within the FATD said the Slide Fire was not a machinegun because it "has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed," and "[i]n order to use the installed device, the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand." *Id*. The Slide Fire bump stock could not enable a shooter, therefore, to fire automatically and without additional manual manipulation of the firearm following the single function of a trigger. *Id*.

Neither the mechanism of the Slide Fire's operation nor the statutes at issue have changed since the 2010 approval. The only thing that has changed is the President's view that the ATF's prior interpretation is politically undesirable. But politics are not evidence, and the ATF's reconsideration of the Slide Fire was not based in any evidence put before the agency. The Final Rule is invalid for this reason as well.

Finally, the ATF acted improperly because the Final Rule is a repudiation of the agency's expertise. As discussed above, the consensus of the ATF's "technical experts," "firearms experts" and "lawyers" was that "bump stocks" "didn't fall within the Gun Control Act and the National Firearms Act." Judiciary Comm. Testimony. By rejecting its own expertise at the behest of the President and the Acting Attorney General, the ATF acted arbitrarily and capriciously in passing the Final Rule.

### B. Mr. Aposhian Will Suffer Irreparable Harm Without Preliminary Relief

To satisfy the irreparable harm requirement, Mr. Aposhian need only demonstrate that absent a preliminary injunction, he is "likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter*, 555 U.S. at 22 (internal citation and quotation marks omitted). "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (internal citation and quotation marks omitted).

Mr. Aposhian will suffer irreparable harm if the Court does not enjoin the defendants from enforcing the Final Rule. The Final Rule will go into effect on March 26, 2019, but, likely, a decision on the merits cannot be rendered before that date. If the Final Rule goes into effect as scheduled, however, Mr. Aposhian will be required to follow a rule that was issued in violation of constitutional limits set out in Articles I, § 1 and II, § 3 of the U.S. Constitution. Mr. Aposhian will therefore face an irreparable constitutional injury warranting an injunction. *See Kikumura*, 242 F.3d at 963.

### C. The Injunction Is Equitable and in the Public Interest

A party seeking a preliminary injunction must demonstrate both "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (internal citation and quotation marks omitted). Moreover, a government's interest in enforcing regulations "pales in comparison" to either a plaintiff's "constitutional" or even "statutory rights." *Newland v.*

*Sebelius*, 881 F. Supp. 2d 1287, 1295 (D. Colo. 2012) (Kane, J.), *aff'd*, 542 F. App'x 706 (10th Cir. 2013). When an injunction "merely delay[s]" the effective date of a regulation, the government is "not prejudiced by a preliminary injunction," and the balance of equities tips in favor of a plaintiff. *Pennsylvania v. Trump*, 281 F.Supp.3d 553, 585 (E.D. Pa. 2017) (Beetlestone, J.)

The balance of equities tips heavily in favor of this injunction. Mr. Aposhian's interests involve both his constitutional rights to be bound only by laws issued by Congress and statutory limitations on the ATF's actions. If the Final Rule goes into effect as scheduled, he will be forced to abide by a law that is itself unlawful. On the other hand, the government faces only a delay in its Final Rule, which is a concern that "pales in comparison" to Mr. Aposhian's interests. *See Newland*, 881 F. Supp. 2d at 1295. The injunction should therefore be entered.

## IV. CONCLUSION

For the reasons set out above, the Court should preliminarily enjoin Defendants from enforcing the Final Rule against Mr. Aposhian.

January 17, 2019

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Litigation Counsel
**Steve Simpson**
Senior Litigation Counsel
New Civil Liberties Alliance

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

I certify that a copy of the foregoing was also served by registered or certified mail upon to the following:

Matthew G. Whitaker
Acting Attorney General of the U.S.
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Thomas E. Brandon
Acting Director
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, NE
Washington, DC 20226

John W. Huber
United States Attorney for the District of Utah
111 South Main Street
Suite 1800
Salt Lake City, Utah 84111-2176

Respectfully,

_/s/ Caleb Kruckenberg_
**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217
Counsel for Plaintiff
Admitted _pro hac vice_

**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217

Counsel for Plaintiff
Admitted *pro hac vice*

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| W. CLARK APOSHIAN,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW WHITAKER ACTING ATTORNEY GENERAL OF THE UNITED STATES, et al.<br><br>    Defendants. | CIVIL ACTION NO.: 2:19-cv-00037-JNP<br><br>**<u>DECLARATION OF CALEB KRUCKENBERG IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>** |

I, Caleb Kruckenberg, declare under penalty of perjury that the following is true and correct to the best of my present knowledge, information and belief:

1. I am an attorney representing the Plaintiff in this matter.

2. I have been admitted to practice before this Court *pro hac vice*.

3. Attached to this declaration are true and correct copies of the following documents:

    a. Exhibit A: Declaration of W. Clark Aposhian in Support of Plaintiff's Motion for Preliminary Injunction;

    b. Exhibit B: John R. Spencer, Chief, Firearms Technology Branch, *Slide Fire Approval Letter* (June 7, 2010);

    c.   Exhibit C: *Classification of Devices Exclusively Designed to Increase the Rate of Fire of a Semiautomatic Firearm*, ATF Rul. 2006-2 (Dec. 13, 2006);

    d.   Exhibit D: Letter from Richard W. Marianos, ATF Assistant Director Public and Governmental Affairs, to Representative Ed Perlmutter (Apr. 16, 2013); and

    e.   Exhibit E: John R. Spencer, Chief, Firearms Technology Branch, *Approval Letter* (June 18, 2008).

Executed on January 17, 2019

> */s/ Caleb Kruckenberg*
> **Caleb Kruckenberg**
> Litigation Counsel
> New Civil Liberties Alliance
> 1225 19th St. NW, Suite 450
> Washington, DC 20036
> caleb.kruckenberg@ncla.legal
> (202) 869-5217
> Counsel for Plaintiff
> Admitted *pro hac vice*

2

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 17, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

I certify that a copy of the foregoing was also served by registered or certified mail upon to the following:

Matthew G. Whitaker
Acting Attorney General of the U.S.
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Thomas E. Brandon
Acting Director
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, NE
Washington, DC 20226

John W. Huber
United States Attorney for the District of Utah
111 South Main Street
Suite 1800
Salt Lake City, Utah 84111-2176

<div style="margin-left: 50%;">

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217
Counsel for Plaintiff
Admitted *pro hac vice*

</div>

**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217

Counsel for Plaintiff
Admitted *pro hac vice*

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| W. CLARK APOSHIAN,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW WHITAKER ACTING<br>ATTORNEY GENERAL<br>OF THE UNITED STATES, et al.<br><br>    Defendants. | CIVIL ACTION NO.: 2:19-cv-00037-JNP<br><br>**DECLARATION OF W. CLARK<br>APOSHIAN IN SUPPORT OF<br>PLAINTIFF'S MOTION FOR<br>PRELIMINARY INJUNCTION** |

I, W. Clark Aposhian, declare under penalty of perjury that the following is true and correct to

the best of my present knowledge, information and belief:

1. I am a resident of the State of Utah and the Plaintiff in this matter.

2. I am a law-abiding person and have no disqualification that would prevent me from

lawfully owning or operating a firearm.

3. I lawfully acquired a Slide Fire bump stock device prior to its classification as a

machinegun.

4. At the time I purchased my Slide Fire bump stock it had been approved for sale by the

Bureau of Alcohol Tobacco, Firearms and Explosives, for use in recreational shooting and target

practice.

5.   I purchased my Slide Fire bump stock in reliance on the ATF's approval of the device for sale.

6.   I currently own and possess my Slide Fire bump stock device for recreational shooting and target practice.

7.   The Slide Fire bump stock has been banned by a final rule issued the Department of Justice and the Bureau of Alcohol Tobacco, Firearms and Explosives, which will become effective on March 26, 2019. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514 (Dec. 26, 2018).

8.   I have been directed to either destroy my Slide Fire device or surrender it to the ATF on or before March 26, 2019, or face potential criminal prosecution.


Executed on January 17, 2019

<div align="right">

*/s/ W. Clark Aposhian*
**W. Clark Aposhian**

</div>

2



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

Martinsburg, West Virginia 25405

www.atf.gov

JUN 0 7 2010

903050:MMK
3311/2010-434

This is in reference to your submission and accompanying letter to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), asking for an evaluation of a replacement shoulder stock for an AR-15 type rifle. Your letter advises that the stock (referenced in this reply as a "bump-stock") is intended to assist persons whose hands have limited mobility to "bump-fire" an AR-15 type rifle. Your submission includes the following: a block to replace the pistol grip while providing retention for the selector stop spring; a hollow shoulder stock intended to be installed over the rear of an AR-15 fitting with a sliding-stock type buffer-tube assembly; and a set of assembly instructions.

The FTB evaluation confirmed that the submitted stock (see enclosed photos) does attach to the rear of an AR-15 type rifle which has been fitted with a sliding shoulder-stock type buffer-tube assembly. The stock has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed. In order to use the installed device, the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand. Accordingly, we find that the "bump-stock" is a firearm part and is not regulated as a firearm under Gun Control Act or the National Firearms Act.

Per your telephoned instructions, we will contact you separately to make return delivery arrangements.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

**18 U.S.C. 922(o):  Transfer or possession of machinegun**
**26 U.S.C. 5845(b):  Definition of machinegun**
**18 U.S.C. 921(a)(23):  Definition of machinegun**

*The definition of machinegun in the National Firearms Act and the Gun Control Act includes a part or parts that are designed and intended for use in converting a weapon into a machinegun.  This language includes a device that, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted.*

## ATF Rul. 2006-2

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has been asked by several members of the firearms industry to classify devices that are exclusively designed to increase the rate of fire of a semiautomatic firearm.  These devices, when attached to a firearm, result in the firearm discharging more than one shot with a single function of the trigger.  ATF has been asked whether these devices fall within the definition of machinegun under the National Firearms Act (NFA) and Gun Control Act of 1968 (GCA).  As explained herein, these devices, once activated by a single pull of the trigger, initiate an automatic firing cycle which continues until either the finger is released or the ammunition supply is exhausted.  Accordingly, these devices are properly classified as a part "*designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun*" and therefore machineguns under the NFA and GCA.

The National Firearms Act (NFA), 26 U.S.C. Chapter 53, defines the term "firearm" to include a machinegun.  Section 5845(b) of the NFA defines "machinegun" as "*any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.  The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*"  The Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44, defines machinegun identically to the NFA.  18 U.S.C. 921(a)(23).  Pursuant to 18 U.S.C. 922(o), machineguns manufactured on or after May 19, 1986, may only be

- 2 -

transferred to or possessed by Federal, State, and local government agencies for official use.

ATF has examined several firearms accessory devices that are designed and intended to accelerate the rate of fire for semiautomatic firearms.  One such device consists of the following components:  two metal blocks; the first block replaces the original manufacturer's V-Block of a Ruger 10/22 rifle and has attached two rods approximately ¼ inch in diameter and approximately 6 inches in length; the second block, approximately 3 inches long, 1 ⅜ inches wide, and ¾ inch high, has been machined to allow the two guide rods of the first block to pass through.  The second block supports the guide rods and attaches to the stock.  Using ¼ inch rods, metal washers, rubber and metal bushings, two collars with set screws, one coiled spring, C-clamps, and a split ring, the two blocks are assembled together with the composite stock.  As attached to the firearm, the device permits the entire firearm (receiver and all its firing components) to recoil a short distance within the stock when fired.  A shooter pulls the trigger which causes the firearm to discharge.  As the firearm moves rearward in the composite stock, the shooter's trigger finger contacts the stock.  The trigger mechanically resets, and the device, which has a coiled spring located forward of the firearm receiver, is compressed. Energy from this spring subsequently drives the firearm forward into its normal firing position and, in turn, causes the trigger to contact the shooter's trigger finger.  Provided the shooter maintains finger pressure against the stock, the weapon will fire repeatedly until the ammunition is exhausted or the finger is removed.  The assembled device is advertised to fire approximately 650 rounds per minute.  Live-fire testing of this device demonstrated that a single pull of the trigger initiates an automatic firing cycle which continues until the finger is released or the ammunition supply is exhausted.

As noted above, a part or parts designed and intended to convert a weapon into a machinegun, *i.e.*, a weapon that will shoot automatically more than one shot, without manual reloading, by a single function of the trigger, is a machinegun under the NFA and GCA.  ATF has determined that the device constitutes a machinegun under the NFA and GCA.  This determination is consistent with the legislative history of the National Firearms Act in which the drafters equated "single function of the trigger" with "single pull of the trigger."  *See, e.g., National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066*, 73rd Cong., at 40 (1934).  Accordingly, conversion parts that, when installed in a semiautomatic rifle, result in a weapon that shoots more than one shot, without manual reloading, by a single pull of the trigger, are a machinegun as defined in the National Firearms Act and the Gun Control Act.

> *Held*, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger 10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches in length; a second block, approximately 3 inches long, 1 ⅜ inches wide, and ¾ inch high, machined to allow the two guide rods of the first block to pass through; the second block supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the two blocks assembled together with the

Case 2:19-cv-00037-JNP  Document 32-1  Filed 03/18/19  PageID.277  Page 36 of 52
Case 2:19-cv-00037-JNP-BCW  Document 10-1  Filed 03/07/19  Page 9 of 21

- 3 -

composite stock) that is designed to attach to a firearm and, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, is a machinegun under the National Firearms Act, 26 U.S.C. 5845(b), and the Gun Control Act, 18 U.S.C. 921(a)(23).

*Held further*, manufacture and distribution of any device described in this ruling must comply with all provisions of the NFA and the GCA, including 18 U.S.C. 922(o).

To the extent that previous ATF rulings are inconsistent with this determination, they are hereby overruled.

Date approved: December 13, 2006

Michael J. Sullivan
Director

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Assistant Director*

Washington, DC 20226
www.atf.gov

APR 1 6 2013

The Honorable Ed Perlmutter
U.S. House of Representatives
Washington, DC 20515

Dear Congressman Perlmutter:

This is in response to your letter dated March 5, 2013, to the Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF) to rescind a previous evaluation letter and to classify all bump-
fire stocks (to include specifically the Slide Fire Solutions stock) as machineguns.

As you have indicated, machineguns are defined in the National Firearms Title Act, 26 United
States Code Chapter 53 Section 5845(b). The definition has four distinct parts. The first, as you
point out, states that a machinegun is "any weapon which shoots, is designed to shoot, or can be
readily restored to shoot, automatically more than one shot, without manual reloading, by a
*single function of the trigger*." The remaining portions of the definition go on to state that: "[t]he
term shall also include the frame or receiver of any such weapon, any part designed and intended
solely and exclusively, or combination of parts *designed and intended, for use in converting a
weapon into a machinegun*, and any combination of parts from which a machinegun can be
assembled if such parts are in the possession or under the control of a person."

In the course of examining a number of bump-fire stocks, ATF found that none of these devices
could shoot nor did they constitute firearm frames or receivers; therefore, the first portion of the
machinegun definition can not apply. Those bump-fire stocks which were found to convert a
weapon to shoot automatically were classified as machineguns and regulated accordingly—
most notably, the Akins Accelerator. Other bump-fire stocks (such as the SlideFire Solutions
stock) that ATF determined to be unable to convert a weapon to shoot automatically were not
classified as machineguns.

Reviewing findings with respect to the Akins and Slide Solutions, ATF, in Ruling 2006-2, found
that the Akins Accelerator incorporated a mechanism to automatically reset and activate the fire-
control components of a firearm following the single input of a user. Thus, the Akins
Accelerator acted to convert a semiautomatic firearm to shoot automatically. Conversely, the
Slide Fire Solutions stock requires continuous multiple inputs by the user for each successive

-2-

The Honorable Ed Perlmutter

shot.  Similarly, other devices exist, such as the HellFire Trigger, which attach to and act upon the trigger of a firearm and also work to increase the rate or volume of fire of the firearm.  Like the Slide Fire Solutions stock, the HellFire Trigger does not provide an automatic action—requiring instead continuous multiple inputs by the user for each successive shot.

Public safety is always a primary concern of ATF.  We remain committed to the security of our Nation and the fight against violent crime.  However, bump-fire stocks that do not fall within any of the classifications for firearm contained in Federal law may only be classified as firearms components.  Stocks of this type are not subject to the provisions of Federal firearms statutes.  Therefore, ATF does not have the authority to restrict their lawful possession, use, or transfer.

We hope this information proves helpful in responding to your constituent.  Please let me know if we may be of further assistance.

Sincerely yours,

Richard W. Marianos
Assistant Director
Public and Governmental Affairs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| W. CLARK APOSHIAN,<br><br>    Plaintiff,<br>v.<br><br>WILLIAM P. BARR,[1] Attorney General of the United States, *et al.*,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:19-cv-37<br><br>District Judge Jill N. Parrish |

This matter comes before the court on plaintiff W. Clark Aposhian's Motion for Preliminary Injunction filed on January 17, 2019. (ECF No. 10). Defendants filed an opposition on February 6, 2019, (ECF No. 25), to which Mr. Aposhian replied on February 11, 2019, (ECF No. 26). The court heard oral argument for this motion on February 14, 2019. On the basis of that hearing, the parties' memoranda, a review of relevant law, and for the reasons below, plaintiff's Motion for Preliminary Injunction is denied.

## I.    BACKGROUND

### A.    REGULATORY FRAMEWORK OF MACHINE GUNS AND BUMP-STOCK-TYPE DEVICES

Congress began regulating machine guns with its passage of the National Firearms Act of 1934 (the "NFA"). That act defined such weapons as follows:

> The term "machinegun"[2] means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without

---

[1] This action was initially commenced against the former Acting Attorney General Matthew Whitaker in his official capacity. By operation of Federal Rule of Civil Procedure 25(d), Mr. Barr was automatically substituted upon his confirmation as Attorney General of the United States.

manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). The Gun Control Act of 1968 (the "GCA") incorporated this definition by reference into the criminal code. *See* 18 U.S.C. § 921(23) ("The term 'machinegun' has the meaning given such term in section 5845(b) of the National Firearms Act . . . ."). Today, with limited exceptions, it is "unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o).

In 2006, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF") ruled that a bump-stock-type device[3] called the Akins Accelerator qualified as a machine gun. The Akins Accelerator employed internal springs to harness the weapon's recoil energy to repeatedly force the rifle forward into the operator's finger. In labeling the Akins Accelerator a machine gun, the ATF interpreted the statutory language "single function of the trigger" to mean "single pull of the trigger." The inventor of the Akins Accelerator subsequently challenged this interpretation in federal court. After the district court rejected the challenge, the Eleventh Circuit

---

[2] The relevant statutes utilize an outmoded, one-word "machinegun" spelling. Except when quoting statutory language, this order uses the more contemporary, two-word "machine gun" spelling.

[3] "Shooters use bump-stock-type devices with semiautomatic firearms to accelerate the firearms' cyclic firing rate to mimic automatic fire. These devices replace a rifle's standard stock [the component of a rifle that rests against the shooter's shoulder] and free the weapon to slide back and forth rapidly, harnessing the energy from the firearm's recoil either through a mechanism like an internal spring or in conjunction with the shooter's maintenance of pressure (typically constant forward pressure with the non-trigger hand on the barrel-shroud or fore-grip of the rifle, and constant rearward pressure on the device's extension ledge with the shooter's trigger finger). . . . [W]hen a bump-stock-type device is affixed to a semiautomatic firearm, the device harnesses and directs the firearm's recoil energy to slide the firearm back and forth so that the trigger automatically re-engages by 'bumping' the shooter's stationary finger without additional physical manipulation of the trigger by the shooter." 83 Fed. Reg. at 66516.

Court of Appeals affirmed, concluding that the ATF's interpretation was "consonant with the statute and its legislative history." *See Akins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009).

From 2008 to 2017, the ATF issued ten letter rulings in response to requests to classify bump-stock-type devices. Applying the "single pull of the trigger" interpretation, these rulings found that the devices at issue—including Mr. Aposhian's Slide Fire device—indeed allowed a shooter to fire more than one shot with a single pull of the trigger. However, because the subject devices did not rely on internal springs or other mechanical parts to channel recoil energy like the Akins Accelerator, the ATF concluded that they did not fire "automatically" within the meaning of the statutory definition.

### B. THE FINAL RULE

On October 1, 2017, a lone shooter employing multiple semi-automatic rifles with attached bump-stock-type devices fired several hundred rounds of ammunition into a crowd in Las Vegas, Nevada, killing 58 people and wounding roughly 500 more. Following this event, members of Congress urged the ATF to examine whether devices like the one used in the attack were actually machine guns prohibited by law. On December 26, 2017, the Department of Justice (the "DOJ") published an Advanced Notice of Proposed Rulemaking (ANPRM), soliciting comments and manufacturer/retailer data regarding bump-stock-type devices. *See* Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices, 82 Fed. Reg. 60929 (Dec. 26, 2017). On February 20, 2018, the President issued a memorandum directing the Attorney General "to dedicate all available resources to complete the review of the comments received, and, as expeditiously as possible, to propose for notice and comment a rule banning all devices that turn legal weapons into machineguns." Application of the Definition of

Machinegun to "Bump Fire" Stocks and Other Similar Devices; Memorandum for the Attorney General, 83 Fed. Reg. 7949 (Feb. 23, 2018).

On March 29, 2018, the DOJ published a notice of proposed rulemaking (NPRM). *See* Bump-Stock-Type Devices, 83 Fed. Reg. 13442 (Mar. 29, 2018). Following a period of public comment, the DOJ issued a Final Rule on December 26, 2018 that (1) formalizes the ATF's longstanding interpretation of "single function of the trigger" to mean "single pull of the trigger"; (2) interprets "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger"; and (3) concluding that bump-stock-type devices are machine guns proscribed by the statutory scheme as interpreted by the Final Rule. *See* Bump-Stock-Type Devices, 83 Fed. Reg. 66514 (Dec. 26, 2018). The Final Rule directs owners of bump-stock-type devices to either destroy or surrender them to the ATF before the Final Rule goes into effect on March 26, 2019. 83 Fed. Reg. 66515.

Mr. Aposhian lawfully purchased and continues to own a Slide Fire bump-stock-type device. On January 16, 2019, Mr. Aposhian filed suit against the Attorney General of the United States, the DOJ, the Director of the ATF, and the ATF. (ECF No. 2). On January 17, 2019, Mr. Aposhian filed this motion for preliminary injunction seeking to enjoin the Final Rule from going into effect on March 26, 2019. (ECF No. 10).

## II.    PRELIMINARY INJUNCTION STANDARD

To obtain preliminary injunctive relief, a movant must establish: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

# III.    ANALYSIS

The parties do not dispute that Mr. Aposhian will experience irreparable harm if the injunction is denied.[4] And though they offer short arguments related to the third and fourth prongs of the preliminary injunction analysis, the parties devote the lion's share of their memoranda to the merits prong.

As explained below, Mr. Aposhian has not carried his burden of showing a substantial likelihood of success on the merits. As a result, his motion for a preliminary injunction must be denied.

This court's review of the Final Rule is governed by the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706(2)(A)–(C).[5] Under this framework, Mr. Aposhian asserts two general

---

[4] They do, however, disagree about what that irreparable harm is. Mr. Aposhian suggests that, absent an injunction, he will be harmed by being forced to comply with a rule that has been promulgated in contravention of constitutional principles of separation-of-powers. Defendants concede only that Mr. Aposhian's harm is the loss of his Slide Fire device, which, they assert, is irreplaceable because no entity presently manufactures such a device. Although it is clearly the case that the threatened infringement of a plaintiff's *individual* constitutional rights will satisfy the irreparable harm prong, the court can find no basis in law for the proposition that a generalized separation-of-powers violation gives rise to an injury on the part of an individual citizen. Regardless, articulating the precise harm becomes necessary only when weighing the threatened injury against the harm caused by the preliminary injunction (*i.e.*, the third prong). Because Mr. Aposhian's motion fails on the first prong—likelihood of success on the merits— the court need not resolve this dispute.

[5] Mr. Aposhian also raises a vague constitutional challenge supported by citations to cases involving the nondelegation doctrine. To the degree that Mr. Aposhian intended to assert a nondelegation challenge, the court can confidently reject any argument that the statutory grant of interpretive authority at issue here is devoid of an intelligible principle upon which the ATF may act. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472–76 (2001). To the extent Mr. Aposhian instead meant to assert a general separation-of-powers challenge to the Final Rule, such a challenge is subsumed by the APA's directive that a reviewing court set aside agency action taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." § 706(2)(C).

arguments. First, that Congress has not empowered the Attorney General[6] to interpret the NFA and the GCA. And second, that the Final Rule's interpretations conflict with the statutory language. The court addresses each challenge in turn.

## A. INTERPRETIVE AND RULEMAKING AUTHORITY

Mr. Aposhian argues that the Final Rule was issued in excess of statutory jurisdiction because the NFA does not vest the Attorney General or the ATF with rulemaking authority. In response, the defendants argue, and the court agrees, that the Final Rule does no more than interpret undefined statutory terms.[7] Although the Attorney General and ATF promulgated their interpretations through the more laborious, formal notice-and-comment process, the use of that procedure does not alter the Final Rule's interpretive character. And Mr. Aposhian does not dispute that the ATF, under the direction of the Attorney General, is empowered to interpret and administer both the NFA and the GCA. *See* Pl.'s Mot. for Prelim. Inj. (ECF No. 10 at 6); 18 U.S.C. § 926(a); 26 U.S.C. § 7801(a)(2); *Guedes v. ATF*, No. 18-cv-2988 (DLF), 2019 WL 922594, at *9 n.3 (D.D.C. Feb. 25, 2019) (rejecting challenges to the Final Rule's interpretations

---

[6] The Attorney General has delegated, "[s]ubject to the direction of the Attorney General and Deputy Attorney General," the responsibility for administering and enforcing the NFA and the GCA to the ATF—an agency within the Department of Justice. *See* 28 CFR § 0.130(a)(1)–(3).

[7] Although the Final Rule is merely interpretive in nature, it appears, contrary to Mr. Aposhian's argument, that the Attorney General has indeed been granted rulemaking authority under the NFA. Mr. Aposhian is correct that 26 U.S.C. § 7805(a) declares that "the Secretary [of the Treasury] shall prescribe all needful rules and regulations for the enforcement of this title[.]" But he fails to account for the statutory language in § 7801(a)(2)(A), which functionally substitutes "Attorney General" for "Secretary of the Treasury" in § 7805(a) insofar as the rulemaking at issue relates to, among other weapons, machine guns. § 7801(a)(2)(A), (A)(ii) ("[T]he term 'Secretary' or 'Secretary of the Treasury' shall, when applied to [§ 7805, to the extent § 7805 relates to the enforcement and administration of Chapter 53, governing machine guns], mean the Attorney General . . . ."). And the Attorney General's rulemaking authority under the GCA is beyond question. 18 U.S.C. § 926(a) ("The Attorney General may prescribe only such rules and regulations as are necessary to carry out the provisions of this chapter . . . .").

6

and the ATF's interpretive authority, noting the "ATF's clear authority to interpret and administer" the relevant statutes).

In addition to his explicit statutory authority, the Attorney General has been implicitly delegated interpretive authority to define ambiguous words or phrases in the NFA and the GCA. Congress did not define "automatically" or "single function of the trigger," and when Congress leaves terms in a statute undefined, the agency charged with administering that statute has been implicitly delegated the authority to clarify those terms.[8]

## B. FINAL RULE INTERPRETATIONS

The Final Rule interprets "single function of the trigger" to mean "single pull of the trigger" and analogous motions, and it interprets "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger." 83 Fed. Reg. Having supplied those definitions, the Final Rule clarifies that bump-stock-type devices—like the Slide Fire device owned by Mr. Aposhian—are machine guns proscribed by law. The court examines each interpretation in turn.

---

[8] The notion that an undefined or ambiguous term amounts to an implicit delegation of interpretive power is borne, unmistakably, from the administrative law doctrine announced by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). In setting forth this principle in its memorandum in opposition, however, defendants went out of their way to avoid citing *Chevron* and its progeny, and repeatedly stressed that they neither request, nor believe their interpretations are entitled to, any measure of deference. *See* Defs.' Mem. in Opp'n (ECF No. 25 at 29) (citing *United States v. Apel*, 571 U.S. 359, 369 (2014) (remarking that the Supreme Court has never accorded deference to an agency's *internal* reading of a criminal statute)). This opinion is puzzling because it is far from settled that an agency is entitled to no deference when its interpretations implicate criminal liability. *See United States v. White*, 782 F.3d 1118, 1135 n.18 (10th Cir. 2015) (collecting Supreme Court and Tenth Circuit cases applying at least some deference to interpretations that affect criminal penalties). The court need not confront this deference dilemma here because the Final Rule's clarifying definitions reflect the best interpretation of the statute.

7

## 1. "Single Function of the Trigger"

The statutory language "single function of the trigger" gives rise to the parties' dispute about what "function" means.[9] Mr. Aposhian contends that "function" refers to the mechanical movement of the trigger, while the Final Rule adopts a shooter-focused interpretation. Because bump-stock-type devices operate through multiple movements of the trigger (by rapidly "bumping" the trigger into the operator's finger), a mechanically-focused interpretation would omit bump-stock-type devices from the statute's definition.

The court finds that "single pull of the trigger" is the best interpretation of "single function of the trigger," a conclusion similarly reached by the Eleventh Circuit Court of Appeals. *See Akins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009) ("The interpretation by the [ATF] that the phrase 'single function of the trigger' means a 'single pull of the trigger' is consonant with the statute and its legislative history."); *see also Guedes*, 2019 WL 922594, at *10 ("Tellingly, courts have instinctively reached for the word 'pull' when discussing the statutory definition of 'machinegun.'").

Moreover, it makes little sense that Congress would have zeroed in on the mechanistic movement of the trigger in seeking to regulate automatic weapons. The ill sought to be captured by this definition was the ability to drastically increase a weapon's rate of fire, not the precise mechanism by which that capability is achieved. At oral argument, defendants persuasively argued that the unusual choice of "function" is intentionally more inclusive than "pull." Thus,

---

[9] The court in *Guedes* noted, and this court agrees, that "dictionaries from the time of the NFA's enactment are of little help in defining a 'single function of the trigger.'" *Guedes*, 2019 WL 922594, at *9.

"function" was likely intended by Congress to forestall attempts by weapon manufacturers or others to implement triggers that need not be pulled, thereby evading the statute's reach.[10]

## 2. "Automatically"

The Final Rule interprets "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger." This interpretive language is borrowed, nearly word-for-word, from dictionary definitions contemporaneous to the NFA's enactment. *See* 83 Fed. Reg. 66519. The 1934 *Webster's New International Dictionary* defines the adjectival form "automatic" as "[h]aving a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation[.]" 187 (2d ed. 1934); *see also* 1 *Oxford English Dictionary* 574 (1933) (defining "automatic" as "[s]elf-acting under conditions fixed for it, going of itself").

And as with "a single pull of the trigger," the Final Rule's interpretation of "automatically" accords with past judicial interpretation. *See United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009) (relying on the same dictionary definitions to conclude that "the adverb 'automatically,' as it modifies the verb 'shoots,' delineates how the discharge of multiple rounds from a weapon occurs: as the result of a self-acting mechanism . . . that is set in motion by a single function of the trigger and is accomplished without manual reloading.").

Mr. Aposhian's argument in opposing the propriety of this interpretation is difficult to follow, but it appears to relate to the requisite degree of automaticity. Specifically, he suggests that "[i]f a firearm requires separate physical input, even if not directed to the *trigger mechanism*, this still disrupts the automatic firing of each successive shot." (ECF No. 10 at 9)

---

[10] The Final Rule's interpretation does use "pull," but avoids the issue above by interpreting "'single function of the trigger' to mean 'single pull of the trigger' *and analogous motions*[.]" 83 Fed. Reg. at 66515 (emphasis added).

(emphasis in original). Because bump-stock-type devices require constant forward pressure by the shooter's non-trigger hand on the barrel or the shroud of the rifle, Mr. Aposhian argues, it does not fire "automatically."

But even weapons uncontroversially classified as machine guns require at least some ongoing effort by an operator. And Mr. Aposhian does not argue that the constant rearward pressure applied by a shooter's trigger finger in order to *continue* firing a machine gun means that it does not fire "automatically." Under Mr. Aposhian's view, it seems, the statute encompasses machine guns that require some, but not too much, ongoing physical actuation. But neither the statute nor the contemporaneous understanding of "automatic" provides any basis for an interpretation that restricts the degree of shooter involvement in an automatic process. As illustrated by the atextual line urged by Mr. Aposhian, any limit on the degree of physical input would invariably be supplied of whole cloth in service of one's desired result.

The Final Rule's interpretation of "automatically" is consistent with its ordinary meaning at the time of the NFA's enactment and accords with judicial interpretation of that language. Thus, it represents the best interpretation of the statute.

### 3. Classification of Bump-Stock-Type Devices as Machine Guns

Mr. Aposhian does not appear to argue that the interpretations above, if valid, would not permit the classification of his Slide Fire device as a machine gun. He does, however, request more aggressive judicial review of the Final Rule because of its allegedly political impetus, and because it represents a change in the ATF's position (*i.e.*, some devices previously ruled by the ATF to not be machine guns are now brought within the statutory ambit).

But the Supreme Court's modern administrative law jurisprudence expressly rejects both propositions. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 523 (2009) (rejecting argument that heightened scrutiny applies to a "policy change [that] was spurred by significant

10

political pressure from Congress"); *Lockheed Martin Corp. v. Admin. Review Bd., Dep't of Labor*, 717 F.3d 1121, 1131 (10th Cir. 2013) ("The Supreme Court has rejected the notion that an agency's interpretation of a statute it administers is to be regarded with skepticism when its position reflects a change in policy."). Indeed, an agency's change in position need only be accompanied by the agency's acknowledgement that its position has changed, along with an explanation that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *F.C.C.*, 556 U.S. at 515 (emphasis in original).

The ATF's change in policy easily meets this standard. The Final Rule unambiguously acknowledges that the ATF is changing its position with respect to certain bump-stock-type devices, and explains that the ATF's prior rulings excluding those devices from the definition of machine gun "did not provide substantial or consistent legal analysis regarding the meaning of the term 'automatically,' as it is used in the NFA and GCA." 83 Fed. Reg. 66518. And the court has already determined that the definitions leading to the classification changes are permissible under, and in fact represent the best interpretation of, the statute. In sum, neither the alleged political genesis of the Final Rule nor the fact that it reflects a change in agency policy serve to undermine the Final Rule's validity.

Having found that each component of the Final Rule represents the best interpretation of the statute, the court cannot find that Mr. Aposhian is likely to succeed on the merits of his challenge to the Final Rule. Absent such a showing, an injunction may not issue.

## IV.    ORDER

For the reasons articulated, plaintiff's Motion for Preliminary Injunction is **DENIED.**

Signed March 15, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217

Counsel for Plaintiff
Admitted *pro hac vice*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

---

| | |
|---|---|
| W. CLARK APOSHIAN, | CIVIL ACTION NO.: 2:19-cv-00037-JNP |
| Plaintiff, | **PLAINTIFF'S NOTICE OF** |
| | **INTERLOCUTORY APPEAL** |
| v. | |
| WILLIAM BARR, ATTORNEY GENERAL OF THE UNITED STATES, et al. | |
| Defendants. | |

---

Plaintiff, W. Clark Aposhian, through undersigned counsel, hereby appeals, pursuant to 28 U.S.C. § 1292(a)(1), to the United States Court of Appeals for the Tenth Circuit from the memorandum and order of the district court, entered on March 15, 2019, (Doc. 31), denying Plaintiff's motion for a preliminary injunction.

March 18, 2019

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance

1

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217
Counsel for Plaintiff
Admitted *pro hac vice*