**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217

Counsel for Plaintiff
Admitted *pro hac vice*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

---

| | |
|---|---|
| W. CLARK APOSHIAN, | CIVIL ACTION NO.: 2:19-cv-00037-JNP |
| Plaintiff, | **MOTION FOR INJUNCTION PENDING APPEAL** |
| v. | |
| WILLIAM BARR, ATTORNEY GENERAL OF THE UNITED STATES, et al. | |
| Defendants. | |

## I. RELIEF SOUGHT AND THE SPECIFIC GROUNDS FOR THE MOTION

Pursuant to Rule 62(d) of the Federal Rules of Civil Procedure, Plaintiff, W. Clark Aposhian, moves for a stay pending interlocutory appeal of this Court's Order of Friday March 15, 2019 denying Plaintiff's motion for preliminary injunction (Doc. 31). The Final Rule, *Bump-Stock-Type Devices*, 83 Fed. Reg. 66514, 66553-54 (Dec. 26, 2018), promulgated by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) goes into effect on March 26, 2019. At that time, Mr. Aposhian must either destroy or surrender the bump stock he lawfully acquired in reliance on the ATF's previous interpretation of the statute, or he will face criminal prosecution. This Court has already concluded that the Final Order will cause Mr. Aposhian irreparable harm. (Doc. 31 at 5.) As explained more fully below, so long as Plaintiff can show that the balance of equities and public interest favor an injunction—which he can—to warrant an injunction pending appeal, Plaintiff need only show that the existence of a serious legal question concerning the validity of the Final Order, which is a lower standard than the likelihood of success on the merits standard that applies to a typical preliminary injunction. As a result, although this Court has denied Plaintiff's motion for preliminary injunction, it can grant an injunction pending appeal without reconsidering or altering its previous decision.

Plaintiff's appeal of this Court's decision presents a substantial legal question for at least two reasons. First, as the Court in *Guedes v. ATF*, No. 18-cv-2988 (DLF), 2019 WL 922594 at *11 (D.D.C. Feb. 25, 2019), recognized, the statutory interpretation question at the heart of this case is a difficult question. Indeed, whether one concludes that the ATF has the authority to change its mind about the legality of bump stocks, the fact that its experts previously believed the devices were not "machine guns" and the ATF later changed its mind confirms that the court in *Guedes* was correct. If this were not true, the natural conclusion would be that the ATF's

previous interpretation of the statutory definition of "machine gun" has for years been obviously wrong.

Second, and relatedly, this case presents legal serious questions about the authority of the ATF to interpret and enforce the National Firearms Act. For years, courts have held that the definition of "machine gun" is not ambiguous, which carries with it the natural implication that there are no gaps in this definition for the ATF to fill—that is, that Congress's intent is clear and that it left no room for the ATF to issue the Final Rule. Yet the government and this Court have concluded that such gaps exist and that the Final Rule is the best interpretation of the statute. Plaintiff disagrees with this conclusion, but the pertinent point for this motion is that the issue is a substantial legal question.

In stark contrast to Mr. Aposhian's irreparable harm and the serious legal questions the appeal of this Court's order presents, the government will suffer no harm at all if the Final Rule is stayed pending appeal. The fact that the ATF had for years determined that bump stocks were legal establishes that there is no need for immediate action on this issue. Moreover, redressing a constitutional violation is always in the public interest. Accordingly, the other preliminary injunction factors weigh in Plaintiff's favor.

For these and other reasons, this case presents substantial and important legal questions that deserve greater deliberation and consideration by an appellate court. Accordingly, this Court should issue an injunction pending appeal prohibiting the defendants from enforcing the Final Rule against Mr. Aposhian.

## II. FACTS AND PROCEDURAL HISTORY

The core facts concerning the ATF's issuance of the Final Rule and Mr. Aposhian's purchase of a bump stock device are set forth in Plaintiff's Complaint, the parties' briefs in connection with Plaintiff's motion for preliminary injunction, and this Court's Order of March 13, 2019. Those facts are not substantially in dispute. The only point not covered in any of these documents is the fact that Mr. Aposhian filed a notice of interlocutory appeal in the Tenth Circuit on March 18, 2019.

## III. ARGUMENT

Federal Rule of Civil Procedure 62(d) allows a district court to "grant an injunction" "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction[.]" "This rule does not limit the power of the appellate court or one of its judges or justices … to stay proceedings—or suspend, modify, restore, or grant an injunction—while an appeal is pending." Fed. R. Civ. P. 62(g). Indeed, under Federal Rule of Appellate Procedure 8(a), which governs motions for injunctions pending appeal in circuit court, such motions typically must first be made in the district court. Fed. R. App. P. 8(a).

The standards governing injunctions pending an appeal under both rules are substantially the same. The movant must show (1) a likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) that the issuance of an injunction will not substantially injure the other parties to the proceeding; and (4) that the public interest favors the movant. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) (stating injunction requirements under 10th Cir. R. 8.1).

The purpose of a stay or an injunction pending appeal is to preserve the status quo during the appeal. Thus, if the moving party "can meet the other requirements for a stay pending appeal, they will be deemed to have satisfied the likelihood of success on appeal element if they show 'questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *McClendon*, 79 F.3d at 1020 (internal citation and quotation marks omitted); *see also In re Revel AC, Inc.*, 802 F.3d 558, 568–69 (3d Cir. 2015) (a sufficient degree of success for an injunction pending appeal is "a reasonable chance, or probability, of winning," but "the likelihood of winning on appeal need not be more likely than not") (internal citations and quotation marks omitted).[1] Thus, where serious legal questions are presented, an injunction on appeal can be justified even when an injunction was not required at the trial level. *See, e.g.*, *O Centro Espirita Beneficente Uniao De Vegetal v. Ashcroft*, 314 F.3d 463, 467 (10th Cir. 2002) (staying injunction on appeal without addressing the validity of the underlying injunction); *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 13–14 (D.D.C. 2014) (where decision "presented difficult and substantial legal questions … and was at times, a close one," stay of injunction on appeal was necessary).

For the reasons that follow, Mr. Aposhian can satisfy all four elements of this test, and this Court should therefore grant an injunction pending appeal.

---

[1] The Tenth Circuit previously applied this same relaxed standard in certain circumstances when reviewing a district court's denial of a preliminary injunction under Rule 65. *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). That standard has been abrogated with respect to Rule 65, in reliance on the Supreme Court's decision in in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008). However, because the *Winter* decision did not address the separate standard of whether a *stay pending appeal* is appropriate, the lower standard applies in this context. *See Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37, 37 n.7 (2d Cir. 2010) (noting that the "serious question" standard remains the "standard for granting a stay pending appeal," which need have a likelihood of success that is "better than negligible" but need not be "more likely than not") (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

**A. Mr. Aposhian's Appeal Presents Serious and Difficult Legal Questions That Deserve More Deliberate Investigation Before the Final Rule Takes Effect**

**1. The Validity of the ATF's Interpretation of the Statute Presents a Serious and Difficult Question**

For years, the ATF interpreted the definition of "machinegun" in the National Firearms Act to exclude bump stock devices such as Mr. Aposhian's Slide Fire. *See* 83 Fed. Reg. at 66517. The ATF has long recognized that a machine gun is a firearm that commences firing after the manual activation of a trigger, which then "initiates an automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted." *Classification of Devices Exclusively Designed to Increase the Rate of Fire of a Semiautomatic Firearm*, ATF Rul. 2006-2, at 3 (Dec. 13, 2006). This interpretation was consistent with the Supreme Court's decision in *Staples v. United States*, 511 U.S. 600 (1994), in which it stated that the statutory definition of "machine gun"

> refer[s] to a weapon that fires repeatedly with a single pull of the trigger. That is, once its trigger is depressed, the weapon will automatically continue to fire *until its trigger is released* or the ammunition is exhausted. Such weapons are 'machineguns' within the meaning of the Act. We use the term 'semiautomatic' to designate a weapon that fires only one shot with each pull of the trigger, and which requires no manual manipulation by the operator to place another round in the chamber after each round is fired.

*Id*. at 602 n. 1 (emphasis added).

Accordingly, prior to the issuance of the Final Rule, the ATF interpreted the statutory definition to exclude a firearm that "require[es] continuous multiple inputs by the user for each successive shot"[2] and whose trigger mechanically resets between shots.[3] Such a weapon is not a machine gun, according to the ATF's previous interpretation, because it does not "shoot,

---

[2] Letter from Richard W. Marianos, ATF Assistant Director Public and Governmental Affairs, to Representative Ed Perlmutter, at 2 (Apr. 16, 2013).
[3] John R. Spencer, Chief, Firearms Technology Branch, *Approval Letter* at 2 (June 18, 2008) (Exhibit E).

automatically more than one shot … by a single function of the trigger." 26 U.S.C. § 5845(b). Using this interpretation, the ATF concluded that bump stocks such as Mr. Aposhian's Slide Fire were not machine guns. Even after the Las Vegas shooting, ATF Acting Director Thomas E. Brandon consulted with "technical experts," "firearms experts" and "lawyers" within the ATF, and the consensus within the agency was that "bump stocks" "didn't fall within the Gun Control Act and the National Firearms Act." *See Something, Say Something: Oversight of the Parkland Shooting and Legislative Proposals to Improve School Safety: Hearing Before the S. Comm. on the Judiciary*, 115th Cong. (Mar. 14, 2018) (Judiciary Comm. Testimony) (testimony of Acting Director Brandon). The Final Rule essentially reverses that interpretation, with the result that bump stocks which were previously legal are now outlawed.

Plaintiff, of course, disagrees with the ATF and this Court that the Final Rule can be reconciled with the statutory definition of "machine gun." But it is not necessary to agree with Plaintiff's analysis in order to conclude that the question at the heart of this case is a substantial and difficult legal question. That much is clear from the ATF's own change of position. The ATF's experts initially concluded that a bump stock does not come within the definition of machine gun. Now, the agency has changed course. Unless one concludes that the ATF's own experts were always obviously wrong about the meaning of "machine gun," then the question that the Final Rule addresses must be serious and difficult. Indeed, the court in *Guedes v. ATF*, No. 18-cv-2988 (DLF), 2019 WL 922594 at *11 (D.D.C. Feb. 25, 2019), recognized the difficulty of the question when it concluded that the plaintiffs' and the government's competing interpretations of the definition of machine gun were both reasonable. This alone is enough to meet the first requirement for a preliminary injunction pending appeal. *See Akiachak Native Community v. Jewell*, 995 F.Supp.2d 7, 13 (D.D.C. 2014) (concluding that first requirement for

stay pending appeal had been met when issue was a close call and the government's position had changed often).

### 2. Whether the ATF Has the Authority to Issue the Final Rule Is a Serious and Difficult Question

"In determining whether an agency's regulations are valid under a particular statute," a Court must first ask whether "Congress delegated authority to the agency generally to make rules carrying the force of law." *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1221 (10th Cir. 2017) (quoting *Carpio v. Holder*, 592 F.3d 1091, 1096-97 (10th Cir. 2010)). The question is whether Congress left gaps in the statute that an agency is implicitly authorized to fill. *Id*. at 1223. If not—if "Congress has directly spoken to the precise question at issue" and the statutory language is clear—then "that is the end of the matter; for the court as well as the agency must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43 (1984); s*ee also New Mexico*, 854 F.3d at 1223 (stating that an agency has "gap-filling power" only if "the question is in fact a gap—an ambiguity tied up with the provisions of the statute"). That is so "no matter how important, conspicuous, and controversial the issue" for an agency only has the authority to issue regulations interpreting a statute when Congress has granted it the authority to do so. *F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161, (2000) (internal citation and quotation marks omitted).

Here again, Plaintiff disagrees with the Court's and the government's conclusion that Congress left gaps in the definition of "machine gun" to fill. But for purposes of Plaintiff's motion, the question is whether the issue of the ATF's authority to fill gaps is a serious and difficult question. It is for several reasons.

First, in the course of criminally prosecuting people for violating the statute, the DOJ has successfully argued for decades that the precise terms it reinterpreted in the Final Rule are not

ambiguous, and courts have consistently agreed. *See, e.g.*, *United States v. Olofson*, 563 F.3d

652, 660 (7th Cir. 2009) (stating that the "common meaning of 'automatically' is readily known

by laypersons" and "a person of ordinary intelligence would have understood the common

meaning of the term—'as the result of a self-acting mechanism'"); *United States v. TRW Rifle*

*7.62X51mm Caliber, One Model 14 Serial 593006*, 447 F.3d 686, 689 n. 4 (9th Cir. 2006)

(refusing to defer to the "ATF's definition of 'machinegun'" "because the statute is

unambiguous," and the Court need "simply follow the standard course of applying the definition

to the facts"); *United States v. Williams*, 364 F.3d 556, 558 (4th Cir. 2004) (finding the definition

of "machinegun" to be unambiguous); *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir.

2002) (stating that the phrase "a single function of the trigger" is "plain enough" that efforts to

parse it further become "brazen" and "puerile"). Because the ATF's and this Court's conclusion

is, at the very least, in tension with those numerous holdings, this case presents a serious and

difficult question for review.

> Second, this Court held that part of the reason bump stocks are "machine guns" is that

> it makes little sense that Congress would have zeroed in on the mechanistic
> movement of the trigger in seeking to regulate automatic weapons. The ill sought
> to be captured by [the definition of machine gun] was the ability to drastically
> increase a weapon's rate of fire, not the precise mechanism by which that
> capability is achieved.

(Doc. 31 at 8.) But even the ATF disclaimed any reliance on a weapon's rate of fire in

classifying bump stocks as "machine guns" in the Final Rule. *See* 83 Fed. Reg. at 66533 (stating

that it "neither proposed the rate of fire as a factor in classifying machineguns, nor utilized this as

the applicable standard in the proposed rule. The Department disagrees with *any assertion that*

*the rule is based upon the increased rate of fire*.") (emphasis added). And it has always been

understood that weapons like Gatling guns are not considered machine guns despite their ability

to shoot rapidly. *See Fleischli*, 305 F.3d at 655. This conclusion makes sense, as the statutory definition of "machinegun" does not refer to or mention the weapon's rate of fire at all.

This Court's reliance on what it perceived to be Congress's intent is thus in tension with both the ATF's approach to classifying machine guns, which necessarily focuses on the "mechanistic movement of the trigger" among other parts of the weapon,[4] the language of the statute, and the general principle that what matters in statutory interpretation is not the perceived intent of Congress, but the words Congress actually chose. *See Colautti v. Franklin*, 439 U.S. 379, 392–393, n. 10 (1979) (stating that Congress must be held to the words it actually employed, and a "definition which declares what a term 'means' ... excludes any meaning that is not stated."). *See also Chevron*, 467 U.S. at 842-43 (stating that if "Congress has directly spoken to the precise question at issue" then "that is the end of the matter). The Court's reliance on a supposition about Congress' intent that is in tension with the statutory language thus presents a serious and difficult question.

**B. As the Court and the Parties Have Conceded, Mr. Aposhian Will Suffer Irreparable Harm Without Preliminary Relief**

To satisfy the irreparable harm requirement, Mr. Aposhian need only demonstrate that absent a preliminary injunction, he is "likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter*, 555 U.S. at 22 (internal citation and quotation marks omitted). "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)

---

[4] *See, e.g.*, *Classification of Devices Exclusively Designed to Increase the Rate of Fire of a Semiautomatic Firearm*, ATF Rul. 2006-2, at 3 (Dec. 13, 2006) (automatic fire results when a trigger "initiates an automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted"); Letter from Richard W. Marianos, ATF Assistant Director Public and Governmental Affairs, to Representative Ed Perlmutter, at 2 (Apr. 16, 2013) (stating that "machine gun" does not include a firearm that "require[es] continuous multiple inputs by the user for each successive shot").

(internal citation and quotation marks omitted). "What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial. Any deprivation of any constitutional right fits that bill." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792 (10th Cir. 2019). This is so even if a plaintiff fails to cite "a decision analyzing the specific injury asserted[.]" *Id.*

As this Court noted, the "parties do not dispute that Mr. Aposhian will experience irreparable harm if the injunction is denied." (Doc. 31 at 5.) Tenth Circuit precedent mandates this conclusion. The Final Rule will go into effect on March 26, 2019, but, likely, a decision on the merits cannot be rendered before that date. If the Final Rule goes into effect as scheduled, however, Mr. Aposhian will be required to follow a rule that was issued in violation of constitutional limits set out in Articles I, § 1 and II, § 3 of the U.S. Constitution. Mr. Aposhian will therefore face an irreparable constitutional injury warranting an injunction. *See Kikumura*, 242 F.3d at 963.

While this Court accepted the parties' view on this issue, it also questioned the validity of Mr. Aposhian's theory of irreparable injury. This Court apparently accepted the concession by Defendants "that Mr. Aposhian's harm is the loss of his Slide Fire device, which, they assert, is irreplaceable because no entity presently manufactures such a device." (Doc. 31 at 5 n. 4.) This Court then said, "Although it is clearly the case that the threatened infringement of a plaintiff's individual constitutional rights will satisfy the irreparable harm prong, the court can find no basis in law for the proposition that a generalized separation-of-powers violation gives rise to an injury on the part of an *individual* citizen." (Doc. 31 at 5 n. 4.) However, the Tenth Circuit recently held that "Any deprivation of *any* constitutional right" "makes an injury 'irreparable'" even without a prior "decision analyzing the specific injury asserted[.]" *Free the Nipple-Fort Collins*, 916 F.3d

at 792 (10th Cir. 2019) (emphasis added). And the Supreme Court has recognized that individuals have a protectable interest in maintaining the separation of powers. *See Boumediene v. Bush*, 553 U.S. 723, 742 (2008) (stating that the separation of powers "serves not only to make Government accountable but also to secure individual liberty"); *Clinton v. City of New York,* 524 U.S. 417, 450 (1998) (Kennedy, J., concurring) ("Liberty is always at stake when one or more of the branches seek to transgress the separation of powers."). Accordingly, Mr. Aposhian will suffer irreparable harm absent an injunction pending appeal.

### C. The Injunction Is Equitable and in the Public Interest

A party seeking a preliminary injunction must demonstrate both "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (internal citation and quotation marks omitted). Moreover, a government's interest in enforcing regulations "pales in comparison" to either a plaintiff's "constitutional" or even "statutory rights." *Newland v. Sebelius*, 881 F. Supp. 2d 1287, 1295 (D. Colo. 2012) (Kane, J.), *aff'd*, 542 F. App'x 706 (10th Cir. 2013). When an injunction "merely delay[s]" the effective date of a regulation, the government is "not prejudiced by a preliminary injunction," and the balance of equities tips in favor of a plaintiff. *Pennsylvania v. Trump*, 281 F.Supp.3d 553, 585 (E.D. Pa. 2017).

The balance of equities tips heavily in favor of this injunction. Mr. Aposhian's interests involve both his constitutional rights to be bound only by laws issued by Congress and statutory limitations on the ATF's actions. If the Final Rule goes into effect as scheduled, he will be

forced to abide by a law that is itself unlawful. On the other hand, the government faces only a delay in its Final Rule, which is a concern that "pales in comparison" to Mr. Aposhian's interests. *See Newland*, 881 F. Supp. 2d at 1295. The injunction should therefore be entered.

## IV. CONCLUSION

For the reasons set out above, this Court should issue an injunction pending an appeal.

March 19, 2019

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Litigation Counsel
**Steve Simpson**
Senior Litigation Counsel
New Civil Liberties Alliance

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 19, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217
Counsel for Plaintiff
Admitted *pro hac vice*