

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
WASHINGTON, DC 20226

E:CE:F:TE:RLB
3311

JUL 23 1996

 Pruett

Dear Mr. Pruett:

This is in response to your letter of recent date, to the Bureau of Alcohol, Tobacco and Firearms (ATF). In your letter, you request classification of a device which you have designed to work on your semiautomatic firearms. You have also submitted a sample of the device for our examination.

Title 18 United States Code (U.S.C.), Chapter 44, § 922(o), makes it unlawful for any person to possess, transfer or manufacture a machinegun which was not registered in accordance with the provisions of the National Firearms Act (NFA) prior to May 19, 1986.

As defined in Title 26 U.S.C., Chapter 53, § 5845(b), of the NFA, the term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

The submitted sample is a length of shoe string, approximately 14 inches in length, having a loop at each end. As described, the device is specifically designed for one end to be attached to the cocking handle of a semiautomatic rifle. The shoe string is brought down the right side of the firearm, crossed over the top of the stock directly behind the receiver, looped over the original trigger and the end is attached to the shooter's finger.

29369

-2-

█████████ Pruett

When the device is attached to a semiautomatic firearm as described, finger pressure on the rear loop will cause the firearm to discharge. Rearward movement of the bolt will cause the shoe string to slacken. Forward movement of the bolt will cause the weapon to fire again. The weapon will fire repeatedly until finger pressure is released from the shoe string.

ATF has previously examined similar devices and determined that they are auxiliary trigger mechanisms which are designed and intended for use in converting a semiautomatic rifle into a machinegun; therefore, they are machineguns as defined in § 5845(b). Based upon our examination of the submitted device and the information you provided, it is our opinion that the sample device is also an auxiliary trigger mechanism and a "machinegun" as defined in the third paragraph of this letter.

It is unlawful for anyone to make, possess, or transfer a machinegun which is not registered in accordance with the provisions of the NFA. Since we are unable to establish that the submitted sample was manufactured and transferred in accordance the provisions of the NFA and § 922(o), we are unable to return it to you, as submitted. However, we can return your shoe string without the loops.

The shoe string which you submitted (less the loops) is being returned under separate cover.

We regret that we are unable to respond more favorably at the present time. If you have further questions concerning this matter, please contact us.

Sincerely yours,

Edward M. Owen, Jr.
Chief, Firearms Technology Branch

27264

RLB

6-718

To whom it may concern,

Please advise me as to the legality of use of this on my fire arms. I have sent a sample.

Thankyou for your time

████████  Pruett

This end slips onto bolt carrier

Finger is put trough this end

████████  Pruett
████████
████████
████████

mini 14
M1 Carbine
SKS

Shoe String
Cord, Twine
Bolt Carrier

Triger

Pull on shoe string to discharge firearm.

Bolt Carrier

Shoe String, Twine or cord tide to bolt carrier and brought down right side of gun, across the top of Stock and in front of trige

51365

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
**CORRESPONDENCE APPROVAL AND CLEARANCE**

*"would be m/gun*

MAR 28 2003

903050:RLB
3311/2003-131

Schwartz

Dear Mr. Schwartz:

This is in response to your letter of November 15,
2002, to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF). In your letter you ask about the
classification of a certain firearm stock of your
design.

As defined in Title 26, United States Code (U.S.C),
Chapter 53, § 5845(b), of the National Firearms Act
(NFA), the term "machinegun" means any weapon which
shoots, is designed to shoot, or can be readily
restored to shoot automatically more than one shot,
without manual reloading, by a single function of the
trigger. The term shall also include the frame or
receiver of any such weapon, any part designed and
intended solely and exclusively, or combination of
parts designed and intended, for use in converting a
weapon into a machinegun, and any combination of parts
from which a machinegun can be assembled if such parts
are in the possession or under the control of a
person. Title 18, U.S.C., Chapter 44, § 922(o) makes
it unlawful for any person to possess, transfer or
manufacture a machinegun that was not registered in
accordance with the provisions of the NFA prior to
May 19, 1986. Therefore, it is unlawful for anyone to
possess an NFA firearm that is not registered in
accordance with the provisions of the NFA.

| | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|---|---|---|---|---|---|---|---|
| CODE | | 903050 | | | | | |
| SURNAME | | Baur€ | | | | | |
| DATE | | 3/87/03 | | | | | |

ATF F 8310.3A (7-97) (Formerly ATF F 1325.9A, which may still be used)

*U.S. Government Printing Office: 2002 — 491-811/53563

AR000004

57365

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
**CORRESPONDENCE APPROVAL AND CLEARANCE**

Schwartz

You advise in your letter that the subject stock is
designed to accept a Ruger 10/22 type semiautomatic
rifle and is intended to facilitate an accelerated
rate of fire.  You also provide some limited drawings
and technical information regarding the proposed
stock.

Based on the information that you provided and our
research, it is obvious that the stock design utilizes
a supplemental trigger incorporated within the stock
that mechanically extends to the trigger of the
installed weapon.  This results in the trigger
incorporated within the stock effectively replacing
and subsequently becoming the trigger of the weapon
and the trigger of the weapon clearly becomes nothing
more than part of the searing mechanism.  With a
weapon installed in the subject stock and the stock's
trigger pulled and held in its most rearward position,
the weapon would discharge.  Due to the
floating/recoiling function of the weapon inside the
stock and as a result of the design of the stock's
trigger, the weapon would continue to fire
automatically more than one shot by a single function
of the trigger as long as the shooter held the trigger
back.  It is our opinion that any stock manufactured
to operate in such a manner would be a combination of
parts designed and intended for use in converting a
weapon into a machinegun.  Therefore, the subject
stock would constitute a "machinegun" as that term is
defined in the second paragraph of this letter and
would be subject to all the controls and provisions of
the NFA.

| CODE | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|---|---|---|---|---|---|---|---|
| SURNAME | | | | | | | |
| DATE | | | | | | | |

ATF F 9310.3A (7-97) (Formerly ATF F 1325.6A, which may still be used)

*U.S. Government Printing Office: 2002 — 491-811/53563

51365

## DEPARTMENT OF THE TREASURY
### BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## CORRESPONDENCE APPROVAL AND CLEARANCE

████████ Schwartz

We trust that the foregoing has been responsive to
your inquiry. If we may be of any further assistance,
please contact us.

Sincerely yours,

Curtis H.A. Bartlett
Chief, Firearms Technology Branch

| | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|---|---|---|---|---|---|---|---|
| CODE | | | | | | | |
| SURNAME | | | | | | | |
| DATE | | | | | | | |

ATF F 8310.3A (7-97) (Formerly ATF F 1326.6A, which may still be used)    *U.S. Government Printing Office. 2002 — 491 811/52563



**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
WASHINGTON, DC 20226

JUL 28 ⁚⁚

903050:RLB
3311/2002-404


Akins

Dear Mr. Akins:

This is in response to your letter dated March 31, 2002, to the Bureau of Alcohol, Tobacco and Firearms (ATF). In your letter you ask about the classification of a device intended to facilitate rapid semiautomatic fire in certain firearms.

As defined in Title 26, United States Code (U.S.C.), Chapter 53, §5845(b), of the National Firearms Act (NFA), the term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

In addition to your letter of request, you have provided certain patent drawings (patent number 6,101,918) along with supporting text for our review. The information you supplied illustrates an accessory firearm stock that is designed and intended to accelerate the rate of fire on certain semiautomatic firearms. The device depicted consists of a modified stock assembly with a cavity or depression at the rear of the unit where it would normally meet the rear portion of the firearm receiver. This cavity permits the entire firearm (receiver and all its firing components) to recoil a short distance within the

WWW.ATF.TREAS.GOV

Exhibit C Page 1 of 2

AR000007

-2-

█████████████   Akins

stock, when fired. As the firearm moves rearward in
the modified stock, a spring located within the
modified stock is compressed. Energy from this spring
subsequently drives the firearm forward and back into
its normal firing position. After the shooter
initially activates the trigger, the shooter's finger
is held in a fixed position by a stop screw device
embedded into the stock that does not move during the
firing process. The effect of this is that the
trigger mechanism moves rearward and disengages from
the shooter's finger as the firearm recoils in the
modified stock. After the firearm recoils a
sufficient distance, the recoil spring located within
the stock drives the firearm forward and the trigger
again makes contact with the shooter's stationary
finger. This action trips the firearm's trigger and
begins the firing cycle once more.

ATF has previously examined a similar device and
determined that it failed to function as intended by
design. Since this office has not had the opportunity
to examine this specific device, it is suggested that
a sample be submitted for classification. Upon
completion of our examination you will be provided
with a letter of classification and the sample will be
returned. However, if the submitted sample is found
to be a machinegun as defined in Federal law, it
cannot be returned to you.

                    Sincerely yours,

                    Sterling Nixon
              Chief, Firearms Technology Branch

Exhibit C Page 2 of 2

(54689)



See also
71814
71021
48397

**DEPARTMENT OF THE TREASURY**
**BUREAU OF ALCOHOL, TOBACCO AND FIREARMS**

no clevice submitted
no classif. given

OCT 2 0 2003

903050:RLB
3311/2002-404

▮▮▮▮▮▮ Akins
▮▮▮▮▮▮▮▮▮▮▮▮

Dear Mr. Akins:

This is in response to your letter dated March 31,
2002, to the Bureau of Alcohol, Tobacco and Firearms
(ATF).  In your letter you ask about the
classification of a device intended to facilitate
rapid semiautomatic fire in certain firearms.

As defined in Title 26, United States Code (U.S.C.),
Chapter 53, § 5845(b), of the National Firearms Act
(NFA), the term "machinegun" means any weapon which
shoots, is designed to shoot, or can be readily
restored to shoot automatically more than one shot,
without manual reloading, by a single function of the
trigger.  The term shall also include the frame or
receiver of any such weapon, any part or combination
of parts designed and intended solely and exclusively
for use in converting a weapon into a machinegun, and
any combination of parts from which a machinegun can
be assembled if such parts are in the possession or
under the control of a person.

In addition to your letter of request, you have
provided certain patent drawings (patent number
6,101,918), along with supporting text, for our
review.  The information you supplied illustrates an
accessory firearm stock that is designed and intended
to accelerate the rate of fire on certain
semiautomatic firearms.  The device depicted consists
of a modified stock assembly with a cavity or
depression at the rear of the unit where it would
normally meet the rear portion of the firearm
receiver.  This cavity permits the entire firearm
(receiver and all its firing components) to recoil a
short distance within the stock, when fired.

WWW.ATF.TREAS.GOV

- 2 -

████████  Akins

As the firearm moves rearward in the modified stock, a spring located within the modified stock is compressed. Energy from this spring subsequently drives the firearm forward and back into its normal firing position.

In addition, after the shooter initially activates the trigger, the shooter's finger is held in a fixed position by a stop screw device embedded into the stock that does not move during the firing process. As a result, the trigger mechanism moves rearward and disengages from the shooter's finger as the firearm recoils in the modified stock. After the firearm recoils a sufficient distance, the recoil spring located within the stock drives the firearm forward, and the trigger again makes contact with the shooter's stationary finger. This action trips the firearm's trigger and begins the firing cycle once more.

ATF has previously examined a similar device and determined that it failed to function as intended by design. Since this office has not had the opportunity to examine this specific device, it is suggested that a sample be submitted for classification. Upon completion of our examination, you will be provided with a letter of classification, and the sample will be returned. However, if the submitted sample is found to be a *machinegun* as defined in Federal law, it cannot be returned to you.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

391/68



**DEPARTMENT OF THE TREASURY**
**BUREAU OF ALCOHOL, TOBACCO AND FIREARMS**

NOV 1 7 2003          not m/gun

903050:RDC
3311/2004-096

 Bowers

Dear Mr. Bowers:

This refers to your recoiling metal stock assembly,
designed for use on an SKS type semiautomatic rifle, that
was received by the Firearms Technology Branch, Bureau of
Alcohol, Tobacco, Firearms and Explosives (ATF), on
August 21, 2003 for the purposes of examination and
classification.

Our evaluation indicates that the submitted sample stock
assembly measures approximately 36 inches long and
approximately 9-7/8 inches at its widest point.  It is
marked "BOWERS", "CORNELIUS OR", and "AA1".  The
following is a list of its physical characteristics:

- rectangular channel, approximately 22-5/16 inches
  long;
- barrel mounting block/spring actuated recoiling.
  mechanism affixed to the forward end of the
  rectangular channel;
- access cutout in the bottom of the rectangular
  channel for the trigger group and magazine;
- two adjustable screws affixed to the underside of
  the rectangular channel; and
- tubular pistol grip/shoulder stock assembly welded
  to the underside of the rectangular channel.

The proposed theory of operation of this stock involves
the application of the movement of the counter recoiling
rifle to initiate a rapid succession of semiautomatic
fire.  The shooter places his trigger finger behind the
two adjustable screws and forward of the weapon's
trigger.  After the weapon is initially fired and the
action is moved to the rear (by the recoiling mechanism),
the subsequent forward movement of the action is halted

39168

-2-

███████ Bowers

by the shooter's trigger finger being held against the
adjustable screws.  The trigger is then depressed, and a
second firing of the weapon commences.  The movements of
the action within the stock assembly are used to
consecutively fire the weapon in lieu of the traditional
method of manually pulling the trigger.

The action of a semiautomatic SKS-type 7.62x39mm rifle
from our firearms reference collection was placed within
the submitted stock.  The weapon was then test fired.
Both of the adjustable screws fractured, breaking away
from the underside of the stock.  These fractures
occurred on the second test firing.  The weapon did not
fire more than one shot by a single function of the
trigger.

The National Firearms Act (NFA), 26 U.S.C. § 5845(b),
defines the term "machinegun" to include the following:

…any weapon that shoots, is designed to shoot, or can be
readily restored to shoot, automatically more than one shot,
without manual reloading, by a single function of the trigger.
This term shall also include the frame or receiver of any such
weapon, any part designed and intended solely and exclusively,
or combination of parts designed and intended, for use in
converting a weapon into a machinegun, and any combination of
parts from which a machinegun can be assembled if such parts
are in the possession or under the control of a person.

Our examination has determined that the submitted stock
assembly does not constitute a machinegun as defined in
the NFA.  It is not a part or parts designed and intended
for use in converting a weapon into a machinegun.

We thank you for your submitted assembly and trust that
the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

39168



AR000013

39168



AR000014

39168



AR000015



39168



AR000017



**THE BOWERS GROUP OF COMPANIES**

*35805*

Possibly a follow up to: 48297
* No ATF Response
  letter. However,
  this coincides   RDC
       with the
08/08/03   emails sent in 35805.

Bureau of Alcohol Tobacco, Firearms and Explosives
Technical Branch
650 Massachusetts Ave NW
Room 6450
Washington DC 20226

Attention: Ms. Beth Gillis

Dear Ms. Gillis;

Enclosed pursuant your conversation of approximately one week ago with ███ Akins,
is a stock modification for a semi-automatic rifle which permits a high rate of fire by
separate functions of the trigger.
Legal counsel has advised that the assembled firearm does not come within the
definition of "machine gun" in the National Firearms Act.

Out of an abundance of caution I am submitting with the stock a completed Form 2. If,
as I expect, technical branch determines that the assembled item does not constitute a
machine gun, please discard the enclosed form 2. If the determination is otherwise,
please forward the completed form 2 to the NFA branch and advise me accordingly.

Sincerely,

Owner, Bowers

CC: ███



received
08-21-2003

P.O. Box 430 • Cornelius, Oregon 97113
Phone 503/992-8697





**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

**JAN 2 9 2004**     903050:RDC
3311/2004-308   NOT M/Gun

www.atf.gov

 **Bowers**

Dear Mr. Bowers:

This refers to your letter of January 21, 2004, to the
Firearms Technology Branch, ATF, in which you request
clarification of our previous correspondence
(3311/2004-096) regarding the manufacture of a
recoiling metal stock assembly that is designed for
use on an SKS-type semiautomatic rifle.

As noted previously, the proposed theory of operation
of this stock involves the application of the movement
of the counter recoiling rifle to initiate a rapid
succession of semiautomatic fire.  Our examination and
subsequent classification revealed that the stock did
not constitute a "machinegun" as that term is defined
in the National Firearms Act (NFA), 26 U.S.C.
Chapter 53.

As indicated, during the course of our examination and
testing of the item (SKS barreled action installed
into the submitted stock), two set-screws dislodged
from the frame.  The weapon did not fire more than one
shot by a single function of the trigger at any point
throughout the testing.

Our classification of the stock assembly was rendered
despite the fact that the screws dislodged from the
frame.  The theory of operation was clear even though
the rifle/stock assembly did not perform as intended.

 In conclusion, your prototype shoulder stock assembly
does not constitute a "machinegun" as defined in the
NFA.  This evaluation is valid *provided that when the*

303396

-2-

████████ Bowers

stock is assembled with an otherwise unmodified SKS
semiautomatic rifle, the rifle does not discharge more
than one shot by a single function of the trigger.

We trust the foregoing has been responsive to your
follow-up inquiry.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

AR000020

01/21/2004  10:47   5039921298          BOWERS                    PAGE  01

28438



P. O. Box 430
Cornelius OR 97113

2004-308-12PL

BATFE Technology Branch
Washington DC
Attention: Mr. Craze

1/21/04

Request for Letter of Clarification on Prior Examination and Classification # 3311/2004-096

Dear Mr. Craze;
This letter is in response to our earlier phone conversation.
During our conversation, I expressed confusion regarding your letter of November 17,2003,
reference #3311/2004-096.
That letter was issued as an end result in response to a request for classification of a "Method and
apparatus for accelerating the cyclic firing rate of a semi-automatic firearm" as covered by the
Patent documents sent earlier.  Upon viewing the provided patent documentation, Ms. Gillis from
BATFE Technology Branch had requested a physical sample of the proposed apparatus before
making a determination and classification.
A physical sample was manufactured and sent to Technology Branch in response to this request.
It was this crude physical sample which was examined by you and which was referenced in letter
#3311/2004-096.
Due to having no instructions on use, you related in our phone call that the apparatus never
functioned as intended during two test firings and did in fact break upon the second attempt.
However, you related that your examination of the apparatus was sufficient to convey the
proposed theory of operation, as you described in #3311/2004-096, in that the application is
intended to apply the movement of the counter-recoiling firearm, in relation to the shooter's fixed
trigger finger, thereby initiating a rapid succession of semi-automatic shots.
My confusion relating to the above-referenced letter stems from page 2, paragraph 2, sentences 3
and 4, "Both of the adjustable screws fractured, breaking away from the underside of the stock.
These fractures occurred on the second test firing."
The placement of those two sentences referring to the broken screws and second test firing cast
ambiguity on the determination, in that the reader can not be certain if the intent of the letter is to
approve the broken prototype which did not function as intended, or for the principle in general.
In our phone conversation, you informed me that your intent had been to approve the principle in
general.
Therefore, I am requesting a letter that more clearly states that an application of the principle of
operation would not constitute either a machine gun as defined in the NFA, nor constitute a part
or parts designed and intended for use in converting a weapon into a machine gun.



Bowers

Office. (503) 992-8597

FAXED



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

SEP 1 6 2006

www.atf.gov

903050:RV
3311/2004-272

 Blakely

Dear Mr. Blakely:

This refers to your correspondence, including accompanying illustrations and other items, and firearm sample submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). In your inquiry, you requested an evaluation of the design of this new firearm prior to manufacturing it. Specifically, you asked FTB to determine whether this firearm would be classified as a machinegun.

The sample you submitted is an AR 15 clone featuring a new design for the firing mechanism. This design would enable the firing mechanism to operate in the following manner as soon as the trigger is pulled:

- The hammer falls, firing a shot.
- The hammer is recocked when the bolt comes to the rear.
- When the bolt travels forward, it contacts the cam (new design: see illustration).
- The forward pressure of the bolt against the cam forces the trigger forward.
- The continuous steady pressure on the trigger from the trigger pull causes the trigger to travel rearward and releases the cocked hammer, enabling firing to continue.
- The weapon ceases firing when the firing finger is physically removed from the trigger. (If the steady pressure of the trigger pull is not released, the weapon will continue to fire until the magazine is empty or a malfunction occurs.)

As defined in the National Firearms Act (NFA), 26 U.S.C. Section 5845(b), the term "machinegun" designates, in part, "… any weapon which will or is designed or can be readily restored to fire more than one shot automatically without manual reloading by the single function of the trigger."

Based on a careful review of your sample and plans, including the illustrations, FTB has determined that the submitted firearm is a "machinegun," being capable of firing automatically with a single function of the trigger. Our Branch reached this finding because it is evident

AR000022

-2-

71771

█████ Blakely

that from the moment of the application of trigger pressure--and as long as rearward pressure is applied to the trigger--the firearm continues to fire until the firing finger is removed; this firing takes place regardless of the cam's pushing the trigger forward.

With regard to the ATF Form 2 (Notice of Firearms Manufactured or Imported) that was submitted with your sample mechanism, FTB has forwarded it to ATF's NFA Branch.

Also, we are enclosing a copy of a photograph you submitted with your correspondence.

We trust that the foregoing has been responsive to your inquiry. If you have further questions concerning this matter, please contact us.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

Enclosure

7177/



FIG 3

FIG 3

Figures 1, 2, and 3 (attached) illustrate the following points in the firing sequence in the *new firearm:*

Fig. 1   Trigger has been pulled for the first time, the hammer has fallen, but the recoil cycle has not yet begun.

Fig. 2   Bolt carrier has moved nearly fully rearward, actuating the cam, and forcing the trigger to the un-pulled position.

Fig. 3   Bolt carrier has just reached battery and has rotated the cam in the reverse direction thereby removing the impediment to the trigger and allowing the operator to once again pull the trigger.

AR000024



71771 RV

Blakley d/b/a TCS

12-21-2003

2004-273-RV

Sterling Nixon
Chief, Firearms Technology Branch
Bureau of Alcohol, Tobacco, Firearms, and Explosives
650 Massachusetts Avenue, Room 6450
Washington, DC 20226

Chief Nixon:

I am writing to request an opinion regarding the legal status of a new firearm design. The document that follows will describe the design of the proposed firearm and is accompanied by drawings to help clarify the meaning of the description.

I have been advised by competent legal counsel that the firearm design described herein is not a machine gun by any definition under Federal Law. Absent some communication from you to the contrary, or some communication which indicates that a period of time in excess of 90 days is required to review this sample, it would be my intent to manufacture the herein described firearm as a Title I firearm to be sold in the means and channels of commerce customary to such an item.

The proposed firearm is mechanically similar to an AR15 style firearm but is a new design that I will simply refer to as the *new firearm* throughout the remainder of this document. The similarity to an AR15 style firearm is mentioned to help one who is familiar with the AR15 to better understand the drawings.

The *new firearm* incorporates a means whereby the rearward movement of the bolt carrier (as a result of the firearm being discharged) causes the rotation of a cam that forces the rear of the trigger downward, thereby pivoting the trigger about it's axis, effectively moving the external portion of the trigger forward into the un-pulled position against the operator's trigger finger force. The cam is designed in such a way that after being rotated and forcing the trigger forward into the un-pulled position, the trigger is statically held there during the rearward and then forward travel of the bolt carrier. As the bolt carrier returns to battery, the trailing edge of the bolt carrier again engages the cam and rotates the cam in the opposite direction, which ceases the cams engagement with the trigger extension thereby allowing the operator to pull the trigger again. It is important to note that no discharge of the firearm occurs during the displacement of the trigger by the cam. In fact, the cam absolutely precludes discharge of the firearm during its action.

The primary benefit of the *new firearm* is that it is physically impossible to pull the trigger faster than it is mechanically safe to do so. Further, it is possible to pull the trigger as soon as it is mechanically safe to do so affording the operator an increased rate of fire while preserving the principle of "one round discharged per function of the trigger". With the AR15 rifle (from which the *new firearm* evolved) it is mechanically possible to pull the trigger before the point when the bolt carrier has reached battery but after the point when

received
DEC 29 2003

7/77/

the disconnector would prevent the hammer from falling. In the best possible scenario this results in a light primer hit and a stoppage, in the worst-case scenario this could result in an out of battery discharge.

Figures 1, 2, and 3 (attached) illustrate the following points in the firing sequence in the *new firearm*:

| | |
|---|---|
| Fig. 1 | Trigger has been pulled for the first time, the hammer has fallen, but the recoil cycle has not yet begun. |
| Fig. 2 | Bolt carrier has moved nearly fully rearward, actuating the cam, and forcing the trigger to the un-pulled position. |
| Fig. 3 | Bolt carrier has just reached battery and has rotated the cam in the reverse direction thereby removing the impediment to the trigger and allowing the operator to once again pull the trigger. |

Several components of the *new firearm* are essentially identical to an AR15 style firearm. The components that are newly designed are:

Lower receiver, hammer, trigger, disconnector, bolt carrier, trigger extension, and cam.

The principal differences between those components in an AR15 style firearm and those in the *new firearm* are:

| | |
|---|---|
| Lower receiver | Hole provided for pivot pin for cam. Hole is not in the same location as the auto-sear hole in an M16 receiver. It is positioned further forward so as to preclude use of M16 fire control components. It is also larger in diameter than an M16 auto-sear hole. |
| Hammer | The hammer is of a bobbed style similar to those found in some 9mm variants and as seen in "low mass" hammers. The bobbed hammer provides additional room in the rear of the lower receiver for the cam and trigger extension. The notch on the face of the hammer is retained in order to allow binding with the firing pin if the cam and disconnector were removed. |
| Trigger | The trigger has a disconnector spring pocket that is further forward than in an AR15 to accommodate the redesigned disconnector, which provides additional room in the rear of the receiver for the cam and trigger extension. |
| Disconnector | The disconnector has no "tail" at all compared to an AR15 disconnector, and has a spring notch that is further forward corresponding to the pocket in the trigger. The mechanical function of the disconnector is unchanged from the AR15. |
| Bolt Carrier | The bolt carrier possesses a "machined away" area under the firing pin collar as the AR15 does (to preclude a runaway if the disconnector and cam are removed), but has a trailing rear surface that extends further forward than most AR15 carriers, |

AR000026

71771

but not so far forward as an M16. The trailing rear surface of the bolt carrier in the *new firearm* is specifically designed not to be able to trip an M16 auto-sear, and to preserve the safety benefits of an exposed firing pin collar as in the AR15.

Trigger Extension    The trigger extension bridges the gap between the cam and the rear of the internal portion of the trigger. This allows the rotation of the cam to transmit displacing force to the trigger.

Cam    The cam is designed so as to be rotated toward the rear on rearward travel of the bolt carrier and in doing so forces the trigger forward by means of contact with the trigger extension. Subsequently, upon the bolt carrier returning to battery, the cam is rotated forward thereby ceasing its force against the trigger extension allowing the operator to pull the trigger again.

Principle design goals were:

- To ensure that a single function of the trigger results in a single discharge of the firearm.
- Enhancement of the shooting experience and of the safety of the firearm.
- To make the *new firearm* at least as difficult to be illegally converted into a machine gun as it's AR15 predecessor, if not more difficult.

You are requested to confirm cousel's opinion that the *new firearm* is not legally a machine gun under Federal Law. Every effort has been expended in designing the new firearm to ensure that it does not run afoul of any Federal machine gun definitions. In the event that you find the enclosed firearm to be a machine gun, an executed ATF Form 2 is enclosed in a separate envelope for this firearm. If you determine the firearm is not a machine gun, please destroy the Form 2. If you determine the firearm is a machine gun, please forward the Form 2 to the NFA Branch for processing.

Thank you for your time in reviewing this request.

Sincerely,



Blakley

Enclosure:    AR16 firearm serial number ATF0001
Completed ATF 5320.2 (Form 2) in separate envelope
Figures 1 through 3

- "AR16" TM (Trademark)          Blakley
Design of enclosed firearm is Patent Pending

71771



FIG 1



FIG 2

AR000028

71771

FIG 3



AR000029

71771



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

SEP 8 0 2004



903050:RDC
3311/2004-379

www.atf.gov

Blakely

Dear Mr. Blakely:

This refers to your letter of February 6, 2004, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), in which you inquired about the legality of a small section of string intended for use as a means for increasing the cycling rate of a semiautomatic rifle.

As you may be aware, the National Firearms Act, 26 U.S.C. § 5845(b), defines "machinegun" to include the following:

...any weapon that shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. This term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person [bolding added].

In 1996, FTB examined and classified a 14-inch long shoestring with a loop at each end. The string was attached to the cocking handle of a semiautomatic rifle and was looped around the trigger and attached to the shooter's finger. The device caused the weapon to fire repeatedly until finger pressure was released from the string. Because this item was designed and intended to convert a semiautomatic rifle into a machinegun, FTB determined that it was a machinegun as defined in 26 U.S.C. 5845(b).

We thank you for your inquiry, regret the delay in response, and trust the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch



**Blakley**

*Earl*
*7177/*
*2004-379-466*

February 6, 2004

Sterling Nixon
Chief, Firearms Technology Branch
Bureau of Alcohol, Tobacco, Firearms, and Explosives
650 Massachusetts Avenue, Room 6450
Washington, DC 20226

Chief Nixon:

This letter is a follow-up to my original request dated May 16, 2003 regarding various rapid-fire attachments for semi-automatic firearms. Your reply to that letter (dated October 16, 2003, copy attached) covered three (3) of the four (4) devices that I inquired about. Recently, Earl Griffith of your office contacted me via telephone and during our conversation he suggested I send in a follow-up letter more precisely describing the fourth device (the "string trick") so that they might be able to evaluate it. He indicated that a sample would be ideal and that it would not be necessary to submit a "Form 2" with the device if it is not accompanied by a firearm. Should you determine that the enclosed string is a machine gun, I voluntarily abandon it to be used in accordance with the needs of the government.

In the previous letter I described the "string trick":

> The string trick involves a semi-automatic MAK-90 (or similar AK variant) where a string is tied to the bolt carrier handle, looped to the rear through the sling swivel on the buttstock, and then brought forward again and tied to the trigger. The tension on the string is adjusted such that if a loaded magazine is inserted into the gun, upon pulling and releasing the bolt carrier, each time the bolt carrier returns to battery it will pull the string taut thereby pulling the trigger resulting in repeated discharging of the firearm.

In order to explain the use of the enclosed sample I have included a detailed photograph of the proposed arrangement (Figure 1). The end result of the arrangement will be immediately obvious to those familiar with semi-automatic firearms in general.

In detail, the string trick involves tying a string to the trigger (3), passing that string through the sling swivel (2) from the bottom, and then tying the other end of the string to the bolt handle (1). The proposed arrangement of the string is illustrated by the red lines depicted as (4) in the drawing. The arrangement is tensioned such that upon the bolt carrier closing, the bolt handle (1) pulls the string (4), which in turn pulls the trigger (3), causing the gun to fire. The process repeats indefinitely until the ammunition supply is exhausted or the gun malfunctions. The tensioning process appears to be a bit tricky due to the stretch of the string. It seems that the ideal arrangement is to tie the string to the trigger (loop already provided on the enclosed sample), fold the rear sling swivel (2) toward the forward position (see picture), pass the string through the swivel (2) from the bottom, and then bring the string up to the bolt handle. After ensuring the firearm is not loaded, pull the string firmly until the trigger is pulled and the hammer falls. Holding the string taut, pull the bolt handle to the rear so it is approximately a quarter inch (.25") from battery and wrap the free end of the string around the bolt handle repeatedly and then tie it off. When done correctly, if the bolt is drawn fully to the rear and released, the bolt will slam completely closed and pull the trigger, allowing the hammer to fall. It would seem undesirable for the string to have so much tension so as to preclude the bolt remaining closed during discharge. It is necessary to find a tension that will both pull the trigger, and allow the bolt to achieve full battery long enough for a safe discharge.

It bears noting that I have never fired this arrangement but must conclude from Internet banter that the arrangement indeed operates as described. In preparation of the enclosed sample I have attached the

AR000031

71771

enclosed string to a MAK90 in the indicated fashion and found that (unloaded), cycling the bolt indeed pulls the trigger as indicated. The safety and/or efficacy of this arrangement is not known to me.



Figure 1 – MAK90 with selected parts identified

I have these questions regarding the "string trick":

1. Is an appropriate string, tied in the correct manner to be so attached to a semi-automatic MAK90/AK47, a firearm in and of itself?
2. Is an appropriate string, tied in the correct manner to be so attached to a semi-automatic MAK90/AK47, a machine gun?
3. Is the string, so assembled in combination with a semi-automatic MAK90/AK47, effecting the method of operation herein described, a machine gun?
4. Does the fact that the string trick exists affect the semi-automatic classification of MAK90/AK47 firearms in general? I.e. does the fact that a MAK90 can be made to empty its magazine by the addition of a piece of string affect the semi-automatic classification of MAK90's?

Thank you for your time in reviewing this request.

Sincerely,



Blakley

Enclosures:    Copy of ATF letter bearing markings 903000:CHB / 3311/2003-635
               Piece of household twine approximately 45" long



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

AUG **2 3** 2005

903050:RDC
3311/2005-517

 Rogers

Dear Mr. Rogers:

This refers to your letter dated July 11, 2005, to the Firearms Technology Branch (FTB), ATF, regarding the classification of a submitted device designed for increasing the rate of fire of various semiautomatic rifles. The device was submitted to FTB in response to our request in our reply of July 1, 2005 (3311/2005-482).

As you are aware, the **National Firearms Act, 26 U.S.C. § 5845(b)**, defines the term "**machinegun**" as follows:

*... any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. This term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person...*

The device you submitted to FTB measures approximately 27-1/8 inches x 3 inches x 5-1/2 inches. It is comprised of a grip and trigger assembly, two tubular shafts, a metal mounting bracket, and a mounting block with a recoil mechanism. It is apparently designed as a remote firing mechanism for a semiautomatic rifle action. No modifications are intended to be made to a compatible firearm action.

Theoretically, the recoiling action of the firearm will depress the coil spring mounted near the forward end of the firearm. The depressed spring then releases its energy, returning the firearm quickly to a pre-fired and cocked position. Semiautomatic firing would, in turn, continue after the trigger is released and then pulled once again.

During the evaluation by FTB, several semiautomatic rifle actions were placed onto this mechanism as suggested in your previous correspondence. These, however, were found to be incompatible. The firearm actions included those for an M1 Carbine and for SKS and AK firearms.

AR000033

-2-

█████ Rogers

Despite not finding a compatible semiautomatic rifle action, FTB has concluded that your submitted device is not designed and intended for use in converting a weapon into a machinegun. The classification of a semiautomatic firearm action would not be influenced by your device, per se, but only by the fire control components and receiver of the firearm: these must remain as originally designed and not altered in any form or fashion.

We trust the foregoing was responsive. Your device will be returned to you under separate cover. Please provide our Branch with a billable FedEx (or other shipper) account number in order that we may return it.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

 Rogers

2005-517-
RDC

July 11, 2005

Mr. Sterling Nixon
Chief, Firearms Technology Branch
Bureau of Alcohol, Tobacco, Firearms and Explosives
Firearms Technology Branch
244 Needy Road
Martinsburg, WV 25401

Dear Chief Nixon

This refers to your letter dated July 1, 2005 regarding my request for classification of a proposed device designed for increasing the rate of fire of various semiautomatic rifles. Your July 1 letter referenced 903050 RDC and 3311/2005-482. As requested, I am submitting a sample of the device for your further consideration.

I trust the enclosed is sufficient for you to render a decision and thank you for your consideration.

Respectfully,



Rogers



AR000036



AR000037



AR000038





AR000040





AR000042

Page 1 of 1



**U.S. Department of Justice**

**Bureau of Alcohol, Tobacco,
Firearms and Explosives**

OCT 0 6 2005

www.atf.gov

903050 MMK
3311/2005-616

 Locklund

Dear Mr. Locklund:

This refers to your letter dated August 12, 2005, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Chicago Field Division, regarding the manufacture, use, and licensing of a "bump fire device" that you describe as "similar to the hellfire device...." Your letter was referred to the ATF Firearms Technology Branch (FTB), Martinsburg, WV, for reply.

Before FTB can provide a proper assessment of this device, our Branch would need more detailed drawings, along with an accurate description of how the device mounts and operates on a firearm. Additionally, your submission of the actual item to FTB would enable us to make a complete determination with respect to its status under Federal firearms laws.

To ensure proper delivery and return of your device, please send it via FedEx or similar carrier to FTB at the following address:

ATF
Firearms Technology Branch
244 Needy Road
Martinsburg, WV 25401

We thank you for your inquiry, regret the delay in our reply, but trust it has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

AR000043

*10'1'14*



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*not submitted*



Martinsburg, WV 25401       903050:AG
www.atf.gov                 3311/2006-772
                            **JUN 0 7 2006**

**Robinson**

Dear Mr. Robinson:

This is in reply to your correspondence dated May 19, 2006, to the Firearms Technology Branch
(FTB), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), concerning the production
of a device you refer to as a Basic AK47 Semiautomatic Tool And Reciprocating Device
("B.A.S.T.A.R.D."). Your correspondence includes a drawing, diagrams, and a written
description of this device.

Your letter describes the B.A.S.T.A.R.D. as an accessory that is designed and intended to
accelerate the rate of fire on AK-47 type semiautomatic firearms. The device depicted consists
of a receiver housing assembly which can be installed around an AK-47 type firearm receiver.
This housing permits the entire firearm (receiver and all its firing components) to recoil a short
distance within the device, when fired. As the firearm moves rearward in the B.A.S.T.A.R.D.,
an "accelerator" spring located forward of the firearm receiver is compressed. Energy from this
accelerator spring subsequently drives the firearm forward into its normal firing position.

Also, you note that the shooter is responsible for holding the trigger finger in a fixed position
after firing an initial shot, so that after the firearm receiver recoils rearward and then is driven
forward by the accelerator spring, the trigger again makes contact with the shooter's stationary
finger. This action trips the firearm's trigger and begins the firing cycle once more.

Acting on behalf of ATF, our Branch has previously examined devices which are designed to
accelerate the rate of fire of a semiautomatic firearm. Certain devices which allow the shooter's
trigger finger to remain in contact with the firearm trigger have been classified by FTB as
"machineguns." For this reason, your current design could be classified as a machinegun.

Please note that, absent an actual submission of the B.A.S.T.A.R.D., this letter cannot be
construed as a formal classification.



Since FTB has not had the opportunity to examine the B.A.S.T.A.R.D., we advise you to submit
a sample for classification. Upon completion of our examination, FTB will provide you with a
letter of evaluation, along with the returned sample.

-2-

███ Robinson

However, we caution that if the submitted sample is found to be a "machinegun" as defined in Federal law, it cannot be returned.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

W/14

Adam

May 19, 2006

2006-772-AG

MAY 23 2006

BATFE
Firearms Technology Branch
Attn: Adam Galbraith
244 Needy Road
Martinsburg, WV 25401

Adam Galbraith

Please find enclosed drawings of an invention that I am making application for a Utility Patent. The unit is called Basic AK47 Semi-automatic Tool And Reciprocating Device. B.A.S.T.A.R.D.

We spoke on the phone on 4-4-06 and you indicated the Akins Accelerator, Patent #6101918 was a legal auto loading weapon as long as the finger made contact with and activated the trigger for each shot. I was unable to locate an Akins Accelerator to take photos of and send to you...

I have designed a frame unit with accessories which will allow the insertion of most common variants of the AK47 with a few parts removed and some of my design installed. The unit allows the AK47 to reciprocate within the framework. The AK47 that is inserted is an auto loading semi-automatic and the disconnector and all trigger parts are stock semi-auto parts. The reciprocation allows one to hold the trigger finger in a stationary position which engages the trigger as the AK47 barrel, receiver, trigger and stock returns forward. Continuous repeated firing of the weapon is maintained as long as the finger is held in place and the ammunition is supplied.

I would like to have a letter of approval from the BATFE before I start the manufacturing processes.

Thank you,



Robinson

B.A.S.T.A.R.D
Robinson



1



LU114

B.A.S.T.A.R.D

Robinson

2



Fig. 1A                  Fig. 1B



Fig. 1C



Fig. 1D



Fig. 1E



Section II        Fig. 1F        Section I

AR000050

10114

B.A.S.T.A.R.D
Robinson



4



Fig. 1G

B.A.S.T.A.R.D

Robinson

5



Fig. 2A



Fig. 2C



Fig. 2B



Fig. 2D

/ U / IY



6



Fig. 3A



Fig. 3C



Fig. 3B



Fig. 3D



7



Fig. 4A



Fig. 4C



Fig. 4B



Fig. 4D

10114



8



Fig. 6A



Fig. 6C



Fig. 6B



Fig. 6D

AR000055



AR000056

10/14



AR000057



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives



Martinsburg, WV   25401      903050:AG
www.atf.gov                  3311/2006-824
                             JUN 2 8 2006

Robinson

Dear Mr. Robinson:

This is in reply to your follow-up correspondence dated June 12, 2006, to the Firearms Technology Branch (FTB), ATF, accompanying your submission of a device you refer to as a *Basic AK47 Semiautomatic Tool And Reciprocating Device* ("B.A.S.T.A.R.D."). Your correspondence includes written instructions for installing an AK-47 type semiautomatic rifle into the device.

The FTB examination of the submitted item (see Photo Enclosure I) indicates that the B.A.S.T.A.R.D. is an accessory that is designed and intended to accelerate the rate of fire on AK-47 type semiautomatic firearms. The device consists of a receiver housing assembly which can be installed around an AK-47 type firearm receiver. This housing permits the entire firearm (receiver and all its firing components) to recoil a short distance within the device, when fired. As the firearm moves rearward in the B.A.S.T.A.R.D., an "accelerator" spring located forward of the firearm receiver is compressed. Energy from this accelerator spring subsequently drives the firearm forward into its normal firing position.

A semiautomatic AK-type firearm from the FTB National Firearms Collection was installed into the B.A.S.T.A.R.D. for testing purposes (refer to Photo Enclosure II). Live fire testing of the B.A.S.T.A.R.D. confirmed that finger pressure applied to the trigger initiates an automatic firing cycle which continues until the finger is released, the weapon malfunctions, or the ammunition supply is exhausted.

As you are aware, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term **"machinegun"** as follows:

"*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*"

*1 V doo*

-2-

 Robinson

Based on the evaluation and provisions of Federal law, FTB has concluded that the B.A.S.T.A.R.D, being a combination of parts designed and intended for use in converting a weapon into a machinegun, is a "machinegun" as defined in the above-cited § 5845(b).

In order for our Branch to return this item to you, you must obtain the proper manufacturer's Federal Firearms License from the ATF National Licensing Center, Atlanta, Georgia, and make an appropriate Special Occupational Tax (SOT) payment. Finally, you must submit a "Form 2" (notification of firearms manufactured).

Without the aforementioned documentation and license, FTB cannot return this item, as it is currently considered contraband. Please provide proof of licensure and SOT payment to FTB within 60 days.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

Enclosures

AR000059

-3-

 Robinson

**Photo Enclosure I**



**Photo Enclosure II**



*10860*

*2006-824-AG   Adam*

June 12, 2006

BATFE
Firearms Technology Branch
Attn: Sterling Nixon
Chief, Firearms Technology Branch
244 Needy Road
Martinsburg, WV 25401

In response to your letter 903050:AG, 3311/2006-772, dated June 7,
2006, please find enclosed sample of a Basic AK47 Semi-automatic
Tool And Reciprocating Device, "B.A.S.T.A.R.D." for evaluation. Also
included are accessories needed and proposed information sheets,
safety items, and hints.

This sample is designed to work with common AK variants like the
Romanian, with the front trunion rivet pattern being two high and the
rearmost rivet low. The top two rivets will be above the top of the
BASTARD frame, and the rearmost rivet will be engaged in the
internal grooves machined into the sides of the frame. There are
variations in rivet patterns and positions on AK's and the BASTARD
unit will only work with the specified rivet pattern at this time.

Thanks for your quick response and attention; I would like to have a
letter of approval from the BATFE before I start the manufacturing
processes.

Thank you,

██████████████████████

██████  Robinson
████████████████

/ U 8 6 2

**Preparation and Installation of your AK into a BASTARD**

1. Remove magazine and pull bolt back & inspect for empty chamber.

2. Push forward on the takedown latch and remove receiver cover.

3. Push forward again on the takedown latch, and remove recoil spring assembly.

4. Remove bolt carrier, bolt and gas piston.

5. Remove upper hand guard/gas cylinder by rotating the hand guard latch approximately 90 degrees clockwise and pull guard up from rear.

6. Remove lower hand guard by taking out cleaning rod, and turn lock on lower hand guard band 90 degrees clockwise and slide forward. Remove lower hand guard.

7. Remove safety by rotating the lever counterclockwise and pulling away from receiver until the tab of the safety aligns with the slot in receiver. Pull out to the right.

8. Force supplied spring coil over barrel and screw/wind spring completely onto barrel. Wear leather gloves to do this; don't deform the spring too much! This works better if the spring is started on the smaller diameter of the barrel.

9. Slide lower hand guard band back into place and close lock in place.

10. Install spring guide by compressing spring forward and put guide in place.

11. Install safety lever included in kit. Follow included instructions. The lever will end up in a rearward position 180 degrees from original forward position. Check to make sure the tab on the safety lever blocks the trigger.

12. Insert receiver/barrel/rear stock unit into BASTARD frame. Install upper barrel hold down. Install screws to secure frame/ barrel/ barrel block & hold down.

13. Install grip adapter with your rear grip T nut installed. Install rear grip, tighten securely with opening in grip aligned for trigger guard clearance.

14. Reinstall upper hand guard & latch in place.

15. Reinstall gas piston/bolt/bolt carrier back in gas cylinder/receiver.

16. Reinstall recoil spring assembly.

1

AR000062

*/ U860ᴅ*

17. Reinstall receiver cover.

18. Insert threaded rod through front barrel block and screw into spring adjusting guide 8 turns.

19. Cycle bolt to insure hammer is being cocked when bolt carrier is cycled to rear and AK is free to cycle in BASTARD.

20. Load and shoot the BASTARD!


**HINTS**

The BASTARD will not function if you do not have good magazines and ammo that will properly feed & cycle your AK in semi-auto mode. The increased rate of fire requires well-cleaned and functional magazines with good springs.

The BASTARD functions as a normal auto loader when the butt stock is placed against your shoulder, when the butt stock has minimal restriction to movement; the unit reciprocates, resulting in the FUN mode.

You must be able to keep your finger in a stationary position to allow the reciprocating trigger to disengage, allow disconnector to engage and trigger to reengage contact with your finger. We recommend taking a Dremel tool or such to the sharp edged standard trigger to lessen the aggravation to your finger. A piece of surgical tubing is included to put on your trigger. An aftermarket trigger group functions better that most standard AK trigger groups.

It is possible you may have to adjust spring tension on the BASTARD as you move from 20 to 30 and 40 round stick magazines, & 75 round drums. This is a trial and error adjustment to compensate for and bias the reaction for additional mass.

It's your barrel, and you can heat it up all you want, but if you get everything hot enough, you just might get a "cook-off" of a chambered round. Be careful! Never leave a round in the chamber.

Lubrication and cleanliness usually makes for better operation.

A recoil buffer is a good addition to any AK, we suggest using one.

If you have trouble, call, we'll help you if we can...and thanks for buying the BASTARD unit, and we hope you have as much fun as we have.

2

AR000063

7086?

## BASTARD Safety lever fitting guide.

**WARNING:** Improperly installed or adjusted safety levers could cause accidental discharge and could result in serious injury or death. If you are not comfortable with installation and adjustment of the safety lever, you should have a qualified gunsmith perform this for you.

**DESCLAIMER:** All users of our products assume total and all risks, responsibilities, and liability for the installation and use of these products. No warranty is offered, expressed or implied for anything other than the material and workmanship of these products.

Depending on the type of disconnector and trigger in your AK, the BASTARD safety lever may or may not be able to be installed without removing the trigger group. If your disconnector has the rear tab, the safety may hit the disconnector and not rotate down and block the trigger.

You can do one of two things,
1. Grind off the disconnector tab.
2. Grind or file material from the safety tab that is hitting the disconnector and preventing the safety lever from rotating into place.

**CAUTION:** Unless it is absolutely necessary for clearance, do not remove any of the safety tab that stops the trigger movement when safety is ON. Only remove material that interferes with the disconnector. A good clearance is about .060".

Verify the safety lever does stop the trigger from releasing the hammer when the safety is ON, and that lever moves freely up and down.

AR000064





AR000065

108622



AR000066

70862



8



Fig. 6A



Fig. 6C



Fig. 6B



Fig. 6D

AR000067

7.0860



7



Fig. 4A



Fig. 4C



Fig. 4B



Fig. 4D





B.A.S.T.A.R.D
Robinson

1



70862



5



Fig. 2A



Fig. 2C



Fig. 2B



Fig. 2D

7 0 8/6,7


B.A.S.T.A.R.D
Robinson

6



Fig. 3A



Fig. 3C



Fig. 3B



Fig. 3D

46913



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*not my gun*

Martinsburg, WV 25401
www.atf.gov

903050:MSK
3111/2006-1088

**OCT 13 2006**

 Lee

Dear Mr. Lee:

This refers to your correspondence dated September 5, 2006, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Office of Public and Governmental Affairs, in which you ask about the legality of "bump-firing" a firearm and installing aftermarket parts enabling a firearm to more easily "bump-fire." Your letter was forwarded to the ATF Firearms Technology Branch (FTB), Martinsburg, West Virginia, for reply.

For your information, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines a "machinegun" as follows:

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

The term "bump-fire" is a vernacular used in the firearms culture and is not defined in either the Gun Control Act of 1968 or the NFA. For present purposes, FTB will regard the term as meaning rapid manual trigger manipulation to simulate automatic fire. As long as you must consciously pull the trigger for each shot of the "bump-fire" operation, you are simply firing a semiautomatic weapon in a rapid manner and are not violating any Federal firearms laws or regulations.

Regarding the installation of various aftermarket parts; modifying fire-control components; installing Tac, Hellfire, or Hellstorm triggers; or attaching rubber bands to triggers to facilitate easier "bump-fire" operations, you should be aware that any modifications which permit a weapon to fire automatically more than one shot with a single function of the trigger could result

416913

-2-

███████ Lee

in that weapon being defined as a "machinegun" as noted in 5845(b).  Possession of an
unregistered machinegun is a violation of Federal law.

We thank you for your inquiry and trust that the foregoing has been responsive to your request
for information.

Sincerely yours,

For Sterling Nixon
Chief, Firearms Technology Branch

Bureau of Alcohol, Tobacco, Firearms and Explosives
Office of Public and Governmental Affairs
350 Massachusetts Avenue, NW.
Room 8290
Washington, DC 20226

96913

2006 1658 NSK

SEP 2 2 2006

September 5 2006

MK

Dear Sir or Madam

      Hello, my name is ▇▇▇▇ I am an avid target shooter in my state of Indiana. I am in desperate need of some legal clarification on the subject of "Bump-firing" semi automatic rifles, which may have had "internal trigger jobs" performed on the firearm with possible aftermarket parts installed in order to loosen up the <u>semi-automatic</u> operation of the trigger for the purpose of "bump-firing". Which may also require additional external trigger enhancements such as rubber bands, Tac Triggers, or Hell Storm 2000 Triggers to externally enhance the reset of the trigger, thus making it easier to "bump-fire" a semi-automatic rifle? While of course retaining semi-auto only operation of the rifle. (One round fired per trigger pull.)

**Bump firing** is the method of using the recoil of a semi-automatic rifle to operate its trigger. This results in simulated Fully-automatic fire.

      1.  Is the method/Technique of "Bump-firing" a firearm legal?

      2. Can a person install aftermarket parts in their firearm to lighten the semi-automatic functioning of the firearms trigger for the sole purpose of making it easier to "Bump-fire"?

      Any written clarification on this subject would greatly be appreciated!



▇▇▇ Lee

▇▇▇▇▇▇▇▇

1655