' 11061

See also:
71814
54689
48297



**U.S. Department of Justice**  ✳ MachineGun

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, WV   25401
www.atf.gov

903050:MRC
3311/2006-1060
**NOV 2 2 2006**

**BY HAND DELIVERY**

▮▮▮▮ Bowers
President
Akins Group, Inc.
▮▮▮▮▮▮▮▮▮▮▮

Dear Mr. Bowers:

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) recently received a request
from an individual to examine a device referred to as an "Akins Accelerator." Because your
company is manufacturing and distributing the device, we are contacting you to advise you of the
results of our examination and classification.

The National Firearms Act (NFA), Title 26 United States Code (U.S.C.) Chapter 53, defines the
term "firearm" to include a machinegun.  Section 5845(b) of the NFA defines the term
"machinegun" as follows:

> *...any weapon which shoots, is designed to shoot, or can be readily restored to shoot,
> automatically more than one shot, without manual reloading, by a single function of the
> trigger. The term shall also include the frame or receiver of any such weapon, any part
> designed and intended solely and exclusively, or combination of parts designed and
> intended, for use in converting a weapon into a machinegun, and any combination of
> parts from which a machinegun can be assembled if such parts are in the possession or
> under the control of a person.*

Machineguns are also regulated under the Gun Control Act of 1968 (GCA). 18 U.S.C. Chapter
44, which defines the term in the same way as in the NFA. 18 U.S.C. § 921(a)(23).  Pursuant to
18 U.S.C. § 922(o), machineguns manufactured on or after May 19, 1986, may only be
manufactured for and distributed to Federal, State, and local government agencies for official
use.

The Firearms Technology Branch (FTB) examination of the submitted item indicates that the
Akins Accelerator is an accessory that is designed and intended to accelerate the rate of fire for
Ruger 10/22 semiautomatic firearms. The Akins Accelerator device, which is patented, consists
of the following metal block components (also see enclosed photos):

*11061*

-2-

[REDACTED] Bowers

- Block 1: A metal block that replaces the original manufacturer's V-Block of the 10/22 rifle. The replacement block has two rods attached that are approximately ¼ inch in diameter and approximately 6 inches in length.
- Block 2: A metal block that is approximately 3 inches long, 1-3/8 inches wide, and ¾ of an inch high that has been machined to allow the two guide rods to pass through. Block 2 serves as a support for the guide rods and as an attachment to the stock.

As received, the Akins Accelerator utilizes the following parts and features to facilitate assembly:

- Assembly of Block 1 to Block 2: These blocks are assembled using ¼ inch rods, metal washers, rubber and metal bushings, two collars with set screws, one coiled spring, C-clamps, and a split ring.
- Apertures for Attachment of Stock: Block 2 is drilled and tapped for two 10-24 NC screws. These threaded holes allow the attachment of the Akins device with Ruger 10/22 barreled receiver to the composite stock that is a component part of the Akins device.

The composite stock is designed for a Ruger 10/22 barrel and receiver. This stock permits the entire firearm (receiver and all its firing components) to recoil a short distance within the stock when fired. Rearward pressure on the trigger causes the firearm to discharge, and as the firearm moves rearward in the composite stock, the shooter's trigger finger contacts the stock. The trigger mechanically resets, and the accelerator, which has a coiled spring located forward of the firearm receiver, is compressed. Energy from this accelerator spring subsequently drives the firearm forward into its normal firing position and, in turn, causes the trigger to contact the shooter's trigger finger, so long as the shooter maintains finger pressure against the stock, making the weapon fire again. The Akins device assembled with a Ruger 10/22 is advertised to fire approximately 650 rounds per minute.



For testing purposes, FTB personnel installed a semiautomatic Ruger 10/22 rifle from the National Firearms Collection into the stock, with the Akins device attached. Live-fire testing of the Akins Accelerator demonstrated that a single pull of the trigger initiates an automatic firing cycle that continues until the finger is released, the weapon malfunctions, or the ammunition supply is exhausted.

In order to be regulated as a "machinegun" under Section 5845(b), conversion parts must be designed and intended to convert a weapon into a machinegun, i.e., a weapon that shoots automatically more than one shot, without manual reloading, by a single function of the trigger. Legislative history for the National Firearms Act indicates that the drafters equated "single function of the trigger" with "single pull of the trigger." National Firearms Act: Hearings Before the Comm., on Ways and Means, House of Representatives, Second Session on H.R. 9066, 73rd Cong., at 40 (1934). Accordingly, it is the position of this agency that conversion parts that are designed and intended to convert a weapon into a machinegun, that is, one that will

AR000076

11061

-3-

███████  Bowers

shoot more than one shot, without manual reloading, by a single pull of the trigger, are regulated as machineguns under the National Firearms Act and the Gun Control Act.

We note that by letters dated November 17, 2003, and January 29, 2004, we previously advised you that we were unable to test-fire a prototype of the Akins device that you sent in for examination. However, both letters state that the theory of operation is clear, and because the device is not a part or parts designed and intended for use in converting a weapon into a machinegun, it is not a machinegun as defined under the National Firearms Act. The previous classification was based on a prototype that fractured when this office attempted to test fire it. Nonetheless, the theory of operation of the prototype and the Akins Accelerator is the same. To the extent the determination in this letter is inconsistent with the letters dated November 17, 2003, and January 29, 2004, they are hereby overruled.

Manufacture and distribution of the Akins Accelerator device must comply with all provisions of the NFA and the GCA. Accordingly, any devices you currently possess must be registered in accordance with 26 U.S.C. § 5822 and regulations in Part 27 Code of Federal Regulations (C.F.R). § 479.103. If you do not wish to register the devices, they should immediately be abandoned to the nearest ATF Office. You may contact the Portland field office at (503) 331-7850 to arrange for abandonment of the weapons. Pursuant to 18 U.S.C. § 922(o), the devices may only be manufactured for and distributed to Federal, State, and local law enforcement agencies. In addition, the devices must be marked in accordance with 18 U.S.C. § 923(i). 26 U.S.C. § 5842, 27 C.F.R. § 478.92, and 27 C.F.R. § 479.102. If you have questions about any of these provisions of law, please contact Acting Assistant Chief Cherie A. Knoblock in the Firearms Programs Division at (202) 927-7770.

Sincerely yours,

Richard Vasquez
Assistant Chief, Firearms Technology Branch

cc: SAC, Seattle Field Division
    DIO, Seattle Field Division
    Division Counsel, Seattle
    Assistant Chief Counsel, San Francisco

Enclosures



11061



AR000079

11061



18 U.S.C. 922(o):  Transfer or possession of machinegun
26 U.S.C. 5845(b):  Definition of machinegun
18 U.S.C. 921(a)(23):  Definition of machinegun

*The definition of machinegun in the National Firearms Act and the Gun Control Act includes a part or parts that are designed and intended for use in converting a weapon into a machinegun.  This language includes a device that, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted.*

### ATF Rul. 2006-2

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has been asked by several members of the firearms industry to classify devices that are exclusively designed to increase the rate of fire of a semiautomatic firearm.  These devices, when attached to a firearm, result in the firearm discharging more than one shot with a single function of the trigger.  ATF has been asked whether these devices fall within the definition of machinegun under the National Firearms Act (NFA) and Gun Control Act of 1968 (GCA).  As explained herein, these devices, once activated by a single pull of the trigger, initiate an automatic firing cycle which continues until either the finger is released or the ammunition supply is exhausted.  Accordingly, these devices are properly classified as a part "*designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun*" and therefore machineguns under the NFA and GCA.

The National Firearms Act (NFA), 26 U.S.C. Chapter 53, defines the term "firearm" to include a machinegun.  Section 5845(b) of the NFA defines "machinegun" as "*any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.  The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*"  The Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44, defines machinegun identically to the NFA.  18 U.S.C. 921(a)(23).  Pursuant to 18 U.S.C. 922(o), machineguns manufactured on or after May 19, 1986, may only be

AR000081

- 2 -

transferred to or possessed by Federal, State, and local government agencies for official use.

ATF has examined several firearms accessory devices that are designed and intended to accelerate the rate of fire for semiautomatic firearms. One such device consists of the following components: two metal blocks; the first block replaces the original manufacturer's V-Block of a Ruger 10/22 rifle and has attached two rods approximately ¼ inch in diameter and approximately 6 inches in length; the second block, approximately 3 inches long, 1 ⅜ inches wide, and ¾ inch high, has been machined to allow the two guide rods of the first block to pass through. The second block supports the guide rods and attaches to the stock. Using ¼ inch rods, metal washers, rubber and metal bushings, two collars with set screws, one coiled spring, C-clamps, and a split ring, the two blocks are assembled together with the composite stock. As attached to the firearm, the device permits the entire firearm (receiver and all its firing components) to recoil a short distance within the stock when fired. A shooter pulls the trigger which causes the firearm to discharge. As the firearm moves rearward in the composite stock, the shooter's trigger finger contacts the stock. The trigger mechanically resets, and the device, which has a coiled spring located forward of the firearm receiver, is compressed. Energy from this spring subsequently drives the firearm forward into its normal firing position and, in turn, causes the trigger to contact the shooter's trigger finger. Provided the shooter maintains finger pressure against the stock, the weapon will fire repeatedly until the ammunition is exhausted or the finger is removed. The assembled device is advertised to fire approximately 650 rounds per minute. Live-fire testing of this device demonstrated that a single pull of the trigger initiates an automatic firing cycle which continues until the finger is released or the ammunition supply is exhausted.

As noted above, a part or parts designed and intended to convert a weapon into a machinegun, *i.e.*, a weapon that will shoot automatically more than one shot, without manual reloading, by a single function of the trigger, is a machinegun under the NFA and GCA. ATF has determined that the device constitutes a machinegun under the NFA and GCA. This determination is consistent with the legislative history of the National Firearms Act in which the drafters equated "single function of the trigger" with "single pull of the trigger." *See, e.g., National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066*, 73rd Cong., at 40 (1934). Accordingly, conversion parts that, when installed in a semiautomatic rifle, result in a weapon that shoots more than one shot, without manual reloading, by a single pull of the trigger, are a machinegun as defined in the National Firearms Act and the Gun Control Act.

*Held*, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger 10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches in length; a second block, approximately 3 inches long, 1 ⅜ inches wide, and ¾ inch high, machined to allow the two guide rods of the first block to pass through; the second block supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the two blocks assembled together with the

AR000082

- 3 -

composite stock) that is designed to attach to a firearm and, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, is a machinegun under the National Firearms Act, 26 U.S.C. 5845(b), and the Gun Control Act, 18 U.S.C. 921(a)(23).

*Held further*, manufacture and distribution of any device described in this ruling must comply with all provisions of the NFA and the GCA, including 18 U.S.C. 922(o).

To the extent that previous ATF rulings are inconsistent with this determination, they are hereby overruled.

Date approved:  December 13, 2006

Michael J. Sullivan
Director

AR000083



**U.S. Department of Justice** 12# 71417
ID # 111-4

Bureau of Alcohol, Tobacco,
Firearms and Explosives          71417

|  |  |
|---|---|
| Martinsburg, WV   25401<br>www.atf.gov | 903050:RV<br>3311/2007-261 |

**JAN 1 6 2007**

 Rogers

Dear Mr. Rogers:

Previously, you submitted a design and prototype to the Firearms Technology Branch (FTB),
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), for classification. We responded
on August 23, 2005, stating that the prototype that you submitted was not a machinegun as
defined in 26 U.S.C. § 5845(b).

On December 13, 2006, ATF issued Ruling 2006-2, a copy of which is enclosed for your
convenience. In light of this new ruling, the classification that we issued on August 23, 2005,
may no longer be valid. We are therefore requesting that you resubmit your device for a further
evaluation. As this device may be reclassified as a machinegun, we urge you not to transfer this
or any similar devices before we have had an opportunity to reexamine it.

Should you have any questions, please do not hesitate to contact us.

Sincerely yours,

Richard Vasquez
Deputy Chief, Firearms Technology Branch

Enclosure

'//1 $96$



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives



| Martinsburg, WV  25401 | 903050:AG |
| www.atf.gov | 3311/2007-041 |

**JAN 2 4 2007**



Robinson

Dear Mr. Robinson:

This is in reply to your follow-up correspondence dated October 11, and November 29, 2006, 2006, to the Firearms Technology Branch (FTB), ATF, regarding our classification of your previously submitted device that you designated the *Basic AK47 Semiautomatic Tool And Reciprocating Device* ("B.A.S.T.A.R.D."). Based on our evaluation and our review of applicable provisions of Federal law, FTB concluded that the B.A.S.T.A.R.D, being a combination of parts designed and intended for use in converting a weapon into a machinegun, is a "machinegun" (see FTB# 2006-824).

Your latest correspondence expresses your disagreement with our findings and requests a reclassification and subsequent return of your device.

We regret to inform you that we are unable to comply with your request, since a recent ATF ruling (2006-2), which pertains to devices such as yours, confirms their classification as "machineguns."

This ruling, the complete text of which is enclosed for your reference, states in part:

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has been asked by several members of the firearms industry to classify devices that are exclusively designed to increase the rate of fire of a semiautomatic firearm. These devices, when attached to a firearm, result in the firearm discharging more than one shot with a single function of the trigger. ATF has been asked whether these devices fall within the definition of machinegun under the National Firearms Act (NFA) and Gun Control Act of 1968 (GCA). As explained herein, these devices, once activated by a single pull of the trigger, initiate an automatic firing cycle which continues until either the finger is released or the ammunition supply is exhausted. Accordingly, these devices are properly classified as a part *"designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun"* and therefore machineguns under the NFA and GCA.

AR000085

71196

-2-

███ Robinson

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

Enclosure

71196

2007-041

OCT 16 2006

October 11, 2006

BATFE
Firearms Technology Branch
Attn: Sterling Nixon
Chief, Firearms Technology Branch
244 Needy Road
Martinsburg, WV 25401

A 6

In response to your letter 903050:AG, 3311/2006-824, dated June 28, 2006, regarding my submitting a sample of the Basic AK47 Semiautomatic Tool And Reciprocating Device, (BASTARD), for evaluation and examination, and the negative response for a letter of approval. I have the following responses.

1. The automatic firing cycle is initiated by the pull of the trigger; however, the semi-automatic AK47 is still a semi-automatic firearm with all semi-automatic fire control group parts. This meets the requirement of NFA, 26 U.S.C. 5645(b), by a single function of the trigger, as the trigger is singly functioned each shot.

2. I spoke with Adam Galbraith on, 4-4-06, and he stated that if the finger does not maintain contact with the trigger; i.e.: makes contact with and activates the trigger for each shot, it is not considered a machinegun. The BASTARD unit with an AK-47 installed clearly does not maintain trigger contact with the finger as the rifle reciprocates rearward.

3. Your letter of June 7, 2006 states in paragraph 4 that certain devices which allow the shooter's finger to remain in contact with the firearm trigger have been classified by FTB as "machineguns". Again, the shooter's finger does not stay in contact with the firearm trigger on the BASTARD.

71196

4. I believe that the BASTARD is functionally similar, but mechanically different from the AKINS ACCELERATOR, which is covered by a letter of approval. The Akins Accelerator can be viewed at www.firefaster.com.

5. Since the BASTARD does not meet the conditions as defined by NFA, 26 U.S.C. 5645(b), I request that the sample sent for evaluation be returned.

Thanks for your quick response and attention; I believe my patent pending invention meets requirements of not being a machinegun and I would still like to have a letter of approval from the BATFE, (FTB) so I can start the manufacturing processes.


Thank you,



Robinson


Enclosures: 13 pages

71196
Add to 2007-041-A6

November 29, 2006

BATFE
Firearms Technology Branch
Attn: Sterling Nixon
Chief, Firearms Technology Branch
244 Needy Road
Martinsburg, WV 25401

DEC 0 4 2006

I am writing to inquire about the status of my requests and research findings on the Akins Accelerator presented in my letter of October 11, 2006.

I am looking for your quick response and attention; I believe my patent pending invention meets requirements of not being a machinegun and I would still like to have a letter of approval from the BATFE, (FTB) so I can start the manufacturing processes.

Thank you,



Robinson

Enclosures: 2 pages

AR000089

Page 1 of 1

7 1154



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

✗ Machinegun

Martinsburg, WV  25401
www.atf.gov

903050:MRC
3311/2006-1153
**JAN 3 1 2007**

Larson

Dear Mr. Larson:

This is in reply to your correspondence dated August 23, 2006, to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), accompanying your submission of a device you refer to as an "Akins Accelerator."

You requested that FTB examine the submitted device, which is manufactured by Akins Group, Inc., Cornelius, Oregon, and make a determination regarding whether it would constitute a "firearm" as defined by the National Firearms Act (NFA) if assembled with a Ruger 10/22 barreled action.

As background, the NFA, 26 U.S.C. § 5845(a), defines "firearm" to include "(6) a machinegun" in turn, 26 U.S.C. § 5845(b), defines a "machinegun" as follows:

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

Machineguns are also regulated under the Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44, which defines the term in the same way as in the NFA.  (Please refer to 18 U.S.C. § 921(a)(23)).  Pursuant to 18 U.S.C. § 922(o), machineguns manufactured on or after May 19, 1986, may only be manufactured for and distributed to Federal, State, and local government agencies for official use.

The FTB examination of the submitted item indicates that the Akins Accelerator is an accessory that is designed and intended to accelerate the rate of fire for Ruger 10/22 semiautomatic firearms.

AR000090

Page 1 of 1

71154

-2-

████ Larson

The Akins Accelerator device, which is patented, consists of the following metal block components (also see enclosed photos):

- Block 1: A metal block that replaces the original manufacturer's V-Block of the 10/22 rifle. The replacement block has two rods that are approximately ¼ inch in diameter and approximately 6 inches in length attached.
- Block 2: A metal block that is approximately 3 inches long, 1-3/8 inches wide, and ¾ inches high that has been machined to allow the two guide rods to pass through. Block 2 serves as a support for the guide rods and as an attachment to the stock.

As received, the Accelerator utilizes the following parts and features to facilitate assembly:

- Block 1 to Block 2 Assembly: These blocks are assembled together using ¼-inch rods, metal washers, rubber and metal bushings, two collars with set screws, one coiled spring, C-clamps, and a split ring.
- Apertures for Attachment of Stock: Block 2 is drilled and tapped for two 10-24 NC screws. These threaded holes allow the attachment of the Atkins device with Ruger 10/22 barreled receiver to the composite stock that is a component part of the Akins device.

The composite stock is designed for a Ruger 10/22 barrel and receiver. This stock permits the entire firearm (receiver and all its firing components) to recoil a short distance within the stock when fired. Rearward pressure on the trigger causes the firearm to discharge, and as the firearm moves rearward in the composite stock, the shooter's trigger finger contacts the stock. The trigger mechanically resets, and the accelerator, which has a coiled spring located forward of the firearm receiver, is compressed.

Energy from this accelerator spring subsequently drives the firearm forward into its normal firing position and, in turn, causes the trigger to contact the shooter's trigger finger, making the weapon fire again. The Adkins device assembled with a Ruger 10/22 is advertised to fire approximately 650 rounds per minute.

For testing purposes, FTB personnel installed a semiautomatic Ruger 10/22 rifle from the National Firearms Collection into the stock, with the Akins device attached. Live-fire testing of the Akins Accelerator confirmed that finger pressure applied to the trigger initiates an automatic firing cycle which continues until the finger is released, the weapon malfunctions, or the ammunition supply is exhausted.

In order to be regulated as a "machinegun" under Section 5845(b), conversion parts must be designed and intended to convert a weapon into a machinegun, i.e., a weapon that shoots automatically more than one shot, without manual reloading, by a single function of the trigger

AR000091

Page 1 of 1

71154

-3-

█████ Larson

The legislative history of the NFA indicates that the drafters equated "single function of the trigger" with "single pull of the trigger." (Please refer to National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066, 73rd Cong., at 40 (1934).) Accordingly, it is the position of ATF that conversion parts that are designed and intended to convert a weapon into a machinegun, that is, one that will shoot more than one shot, without manual reloading, by a single pull of the trigger, are regulated as machineguns under the NFA and GCA.

 Based on the evaluation and provisions of Federal law cited above, FTB concludes that the Akin Accelerator device, being a combination of parts designed and intended for use in converting a weapon into a machinegun, is a "machinegun" as defined in the above-cited § 5845(b). For reference, please see the enclosed copy of ATF Rul. 2006-2, which addresses the Akins Accelerator.

Since FTB has classified the Akins Accelerator as a post-1986 machinegun, we cannot return it to you as currently configured. However, because ATF has determined that the removal of the coil spring prevents the device from functioning automatically, thereby removing it from the NFA, we advise that you submit a written authorization for FTB to remove the coil spring from your Akins Accelerator, accompanied by a statement that you are abandoning the spring to ATF After we receive your authorization, we will return the remnant of the Accelerator.

We caution that reinstallation of a coil spring on the Akins Accelerator will constitute the manufacture of a post-1986 machinegun.

Finally, we are returning your personal check of $15.00 (# 2834) for shipping. Please provide u with a FedEx Account number or make arrangements with UPS for a one-time pick-up.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

Enclosure

AR000092

FOIA 300034

Page 1 of 1

71539



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

N/A (not r/l/g)

Martinsburg, WV 25401     903050:AG
www.atf.gov                    3311/2007-383
                                   **MAR 0 6 2007**

 Johnson

Dear Mr. Johnson:

This is in response to your letter dated February 13, 2007, to the Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF), Firearms Technology Branch (FTB).

In your letter, you inquire regarding a modification to an Akins Accelerator device. You state
that you are aware that the Akins Accelerator has been classified as a machinegun by ATF, and
that the linear motion assembly spring must be removed and submitted to FTB per ATF ruling
2006-2 (see "Questions and Answers for the Akins Accelerator"). What you propose is to
modify your Akins Accelerator (without a linear motion assembly spring) to incorporate a
paddle-shaped screw on the forward underside of the stock body. You intend to use this screw to
apply forward pressure to the Akins Accelerator, thereby enabling the device to operate through
the use of manual pressure instead of pressure provided by the linear motion assembly spring.

In order to evaluate these proposed changes, FTB must examine a physical sample of the
modified device. You may submit the sample item to:

Chief, Firearms Technology Branch
244 Needy Road, Suite 1600
Martinsburg, West Virginia 25405

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

For Sterling Nixon
Chief, Firearms Technology Branch

AR000093

71539

2007-383

To:                                                             February 13, 2007
Chief
Firearms Technology Branch
244 Needy Rd
Martinsburg, WV 25405                    2007-383-AG        FEB 20 2007

From:
████████ Johnson ████████████                                A G

Regarding: A request for classification of a firearms accessory.
Sir:
I am writing to request a classification of a *modified* Akins Accelerator type device. I am
sure you are aware of the ruling letter 2006-2 that declared the Akins Accelerator to be a
machine gun. In the letter labeled "2006-2 Q and A," instructions were given to remove
the recoil spring from the Akins device.

My question for you follows: I would like to know if a device of similar construction to
an Akins Accelerator but **without the recoil spring**, and **modified** as follows is a
machinegun. The way my modification works is that the barreled Ruger 10/22 action is
mounted in a stock assembly using an Akins type device. There would be a new block
added that attaches to the sliding linear bearing rods. To this block is attached a
thumbscrew that protrudes through a slot cut through the stock, and sticks out below the
surface of the stock fore end. (See figure 3) When the rifle is fired the recoil forces the
10/22 action reward just as it did with the Akins device. The shooter's trigger-finger is
supported by the finger rest, and the trigger / sear resets. (Here is where my idea is
new...) The shooter then **pushes** forward on the thumbscrew with the hand supporting
the fore end of the rifle, and this force causes the rifle action to slide forward. This
sliding motion causes the trigger to contact the shooters trigger finger, and thus
discharges another bullet. Again, the force from the shooter's forward hand "Pulls" the
trigger. This is the same as "Bump Firing," but the stock helps you keep your point of
aim.
In summary:

- The Akins type device does **NOT** have any springs
- The force required to "Pull" the trigger is provided by the shooter's forward
  support hand.
- If the shooter does not **actively push** on the thumbscrew, the gun will not
  discharge.

If all these criteria are met, would the device constitute a machinegun?

I have enclosed CAD drawings and renderings of what the device would look like. See
figures 1 through 3.

Best regards,

████████████████████
████ Johnson ████
████████████████████

Page 1 of 1

71346



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, WV   25401       903050:MRC
www.atf.gov                  3311/2007-190
                             **APR 0 5 2007**

Rhodes

Dear Mr. Rhodes:

This is in response to your letter dated December 2, 2006, along with accompanying picture, to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). In your correspondence, you ask if a particular design feature, as described below, constitutes a machinegun under the National Firearms Act (NFA).

As background to your inquiry, the National Firearms Act (NFA), 26 U.S.C. Section 5845(b), defines "**machinegun**" as—

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

Describing your design feature, you suggest manufacturing a firearm in which the receiver is fixed to the stock, but in which the trigger group moves to the rear during recoil and returns forward after firing. As the trigger moves forward, if the operator's finger is intentionally held in just the right position, the trigger contacts the operator's finger and the cycle repeats. In this manner, an automatic firing cycle continues until either the finger is released or the ammunition supply is exhausted.

 We caution that FTB <u>cannot</u> make a classification on pictures, diagrams, or theory. We suggest that you submit a prototype for our examination.

You should be aware that if the manufacture of this firearm would result in the assembly of a "machinegun" as defined by the NFA, <u>FTB could neither solicit nor sanction its unlawful production.</u> Finally, you should confirm that the manufacture of the proposed firearm does not violate any State or local laws and ordnances.

AR000095

71346

-2-

Rhodes

Please note that if the FTB evaluation were to determine that the submitted sample is a "machinegun" as defined in the NFA, we would be unable to return it unless you are a licensed manufacturer and have paid the special occupational tax (SOT). Conversely, if FTB determines that the sample is not a "machinegun" as defined, it will be returned to you as soon as our Branch has received a FedEx (or alternate carrier) account number to which the return can be billed.

Finally, you should be aware that ATF has recently reclassified the Akins Accelerator and considers it to be a combination of parts designed and intended to convert a weapon into a machinegun. See enclosure (ATF Rul.2006-2).

We trust the foregoing has been responsive to your request.

Sincerely yours,

Richard Vasquez
Assistant Chief, Firearms Technology Branch

Enclosure

AR000096



AR000097

71479



**U.S. Department of Justice**

**Bureau of Alcohol, Tobacco,
Firearms and Explosives**

Martinsburg, WV  25401          903050:MRC
www.atf.gov                     3311/2007-323

**APR 0 5 2007**

▮▮▮▮▮▮ Rhodes

Dear Mr. Rhodes:

This is in response to your letter dated December 2, 2006, along with accompanying picture, to
the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives
(ATF).  In your correspondence, you ask if a particular assembly, as described below, constitutes
a machinegun under the National Firearms Act (NFA).

As background to your inquiry, the National Firearms Act (NFA), 26 U.S.C. Section 5845(b),
defines "machinegun" as—

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot,
automatically more than one shot, without manual reloading, by a single function of the
trigger. The term shall also include the frame or receiver of any such weapon, any part designed
and intended solely and exclusively, or combination of parts designed and intended, for use in
converting a weapon into a machinegun, and any combination of parts from which a
machinegun can be assembled if such parts are in the possession or under the control of a
person.*

The assembly you describe is based on installing a semiautomatic barreled action with trigger
group into a "MuzzleLite bullpup stock" functioning with a spring in the same manner as the
Akins Accelerator.  Whenever the gun returns to the forward position after firing, the gun's
trigger will impinge the stock's trigger bar, which in turn is held back by operator's finger.

We caution that FTB cannot make a classification on pictures, diagrams, or theory.  We suggest
that you submit a prototype for our examination.

You should be aware that if the manufacture of this firearm would result in the assembly of a
"machinegun" as defined by the NFA, FTB could neither solicit nor sanction its unlawful
production.  Finally, you should confirm that the manufacture of the proposed firearm does not
violate any State or local laws and ordnances.

71479

-2-

████ Rhodes

Please note that if the FTB evaluation were to determine that the submitted sample is a "machinegun" as defined in the NFA, we would be unable to return it unless you are a licensed manufacturer and have paid the special occupational tax (SOT).  Conversely, if FTB determines that the sample is not a "machinegun" as defined, it will be returned to you as soon as our Branch has received a FedEx (or alternate carrier) account number to which the return can be billed.

Finally, you should be aware that ATF has recently reclassified the Akins Accelerator and considers it to be a combination of parts designed and intended to convert a weapon into a machinegun. See enclosure (ATF Rul.2006-2).

We trust the foregoing has been responsive to your request.

Sincerely yours,

Richard Vasquez
Assistant Chief, Firearms Technology Branch

Enclosure



**U.S. Department of Justice**          7/77/

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

Martinsburg, WV  25401   903050:JPV
www.atf.gov                3311/2007-615

**JUN 25 2007**

███████ Blakely
████████████████████

Dear Mr. Blakely:

On February 6, 2004 you wrote to the Firearms Technology Branch (FTB) of the Bureau
of Alcohol, Tobacco, Firearms and Explosives (ATF) inquiring about the legality of a
small section of string intended for use as a means for increasing the cycling rate of a
semiautomatic rifle. We responded on September 30, 2004. In that letter we stated:

> In 1996, FTB examined and classified a 14-inch long shoestring with a loop at
> each end. The string was attached to the cocking handle of a semiautomatic rifle
> and was looped around the trigger and attached to the shooter's finger. The
> device caused the weapon to fire repeatedly until finger pressure was released
> from the string. Because this item was designed and intended to convert a
> semiautomatic rifle into a machinegun, FTB determined that it was a **machinegun**
> as defined in 26 U.S.C. 5845(b). (Emphasis in original).

Upon further review, we have determined that the string by itself is not a machinegun,
whether or not there are loops tied on the ends. However, when the string is added to a
semiautomatic firearm as you proposed in order to increase the cycling rate of that rifle,
the result is a firearm that fires automatically and consequently would be classified as a
machinegun. To the extent that prior ATF classification letters are inconsistent with this
letter, they are hereby overruled.

We hope that this clarifies our position. Should you have any questions, please do not
hesitate to contact us.

Sincerely,

*Richard Vasquez*
Richard Vasquez
Acting Chief, Firearms Technology Branch

AR000100

Page 1 of 1

71539

 **U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

SEP 1 4 2007

Martinsburg, WV   25401
www.atf.gov

903050:AG
3311/2007-676

Johnson

Dear Mr. Johnson:

This is in response to your submitted item, with letter dated June 7, 2007, to the Bureau of
Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB).

Your sample, which you sent in response to our reply of March 6, 2007 (#3311/2007-383),
consists of a Ruger 10/22 stock which has been modified to resemble an Akins Accelerator type
device. You have incorporated a paddle-shaped screw on the forward underside of the stock
body. You state that you intend to use this screw to apply forward pressure to your device,
thereby enabling the device to operate through the use of manual pressure instead of pressure
provided by a linear motion assembly spring.

 We stress that in order to properly evaluate this item, <u>FTB must examine your device in its
entirety, including the 10/22-type receiver/barrel/trigger group and all its ancillary components.</u>
You may submit the item(s) to:

Chief, Firearms Technology Branch
244 Needy Road, Suite 1600
Martinsburg, West Virginia  25405

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

Richard Vasquez
Acting Chief, Firearms Technology Branch

AR000101

See also
71061
54689
48297

71814

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

nothing Submitted

OCT 0 1 2007

Martinsburg  WV   25401
www.atf.gov

903050:MRC
3311/2007-658

Akins

Dear Mr. Akins:

This is in response to your letter, along with accompanying photos, to the Firearms Technology
Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  In your
correspondence, you ask FTB to review the photos depicting the redesign of the Akins
Accelerator rifle stock and to make a classification.

We cannot make a classification from the photos alone and will require the submission of a
sample stock.

We thank you for your inquiry and trust the foregoing will be responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

71814

JUL 0 5 2007

MRC

2007-1658

Akins

Director & Chairman of the board, Akins Group Inc.

To Acting Chief, Firearms Technology Branch,
244 Needy Road,
Martinsburg, WV 25405

I am submitting a redesign for BATFE classification and approval, of the Akins Accelerator rifle stock that was affected by the BATFE 2006-02 ruling.

The primary reason the Akins Accelerator stock was disallowed by BATFE in that ruling was because BATFE claimed that the pistol grip finger stops of the rifle stock allowed the shooter's trigger finger to remain in a supported position on the finger stops (not the trigger) and BATFE claimed that created an automatic sequence of fire.

Accordingly, this stock redesign removes the pistol grip finger stops entirely so that it is impossible for the shooters trigger finger to be supported in any way by finger stops on the pistol grip of the rifle stock. In this redesign the trigger is pulled by the shooter and the action of the firearm recoils within the stationary stock compressing a recoil spring that then decompresses and drives the action forward again. In this redesign there are no finger stops to support the shooters trigger finger and therefore it is up to the shooter's own muscle dexterity as to whether they can hold their finger in the air in such a position that the trigger will function again upon each seperate contact and each seperate function of the trigger. There will be no finger stops on this redesign to aid in supporting the shooters trigger finger in any way.

The specification for the redesign is for there to be no finger stops on a vertical plane extending from the lowest portion of the grip where it previously met the finger stops, up through the top edge of the pistol grip. This renders the stock to being simply a recoil reducing stock with no provision to aid the shooter's trigger finger to be supported upon finger stops.

Included herein are two picture attachments to illustrate.



I am requesting classification as to whether this stock design would be considered a machine gun conversion device.

71814

I am also requesting if you can render that classification upon my description or whether you need a physical example to inspect.

If you do need a physical example, I can send that to you, however since BATFE has determined that on the original stock with finger stops, the accelerator recoil spring may not be installed. Therefore if you request a physical example, I request tech branch install and use one of the many springs for the 22 caliber rifle stock that Akins Group Inc has sent in to BATFE in accordance with ruling 2006-02.

Since I will not be installing the recoil spring, if your classification determines the redesign to still be a machine gun conversion device, I request tech branch then remove the recoil spring tech branch installed, and return the stock back to me.

I await your response.

Sincerely,
█████ Akins
Chairman of the board Akins Group Inc.

*(αΣX)*



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*NOT A m/gun*

Martinsburg, West Virginia 25405
www.atf.gov
**JUN 1 8 2008**

903050(MRC)
3311/2008-371

 Foeller II

Dear Mr. Foeller:

This is in reference to your submitted item, as well as accompanying correspondence, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB). This item, consisting of a metal type shoulder stock, was submitted with a request for classification under the Gun Control Act (GCA) and National Firearms Act (NFA).

As background information, the NFA, 26 U.S.C. Section 5845(b), defines "machinegun" as—

*"...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."*

The device submitted for evaluation consists of the following:

- Two sections of square metal tubing, the exterior tube measuring approximately 10 x 1-1/2 x 1-1/2 inches. Additionally, a flat piece of metal similar in shape to a butt plate is welded to the rear of the exterior tube.
- An interior tube measuring approximately 12-9/16 x 1-1/4 x 1-1/4 inches.
- A flat piece of metal measuring 4-3/4 x 1-3/8 x 3/16 inches attached by means of welding to the bottom and located on the front of the exterior tubing.
- A cylindrically shaped section of pipe that acts as pistol grip and is attached to the previously described flat piece of metal by means of welding. It measures approximately 4-1/8 inches in length and 1-5/16 inches in diameter.
- A support bar attached to the pistol grip and butt plate by means of welding. It measures approximately 11-1/4 x 13/16 x 3/8 inches.
- Interior tubing that has been drilled and tapped for two oval head screws which are located on the left and right side. These screws are used to stop the rearward movement after a short distance of travel. Additionally, two holes have been drilled and tapped into the top of the interior tube which allow attachment of the device to an AK-type rifle.

12350

-2-

██████ Foeller II

- An exterior-tube slot (1-3/16 inches) milled on the bottom, approximately 4-3/16 inches from the front of the tube. The interior tubing has a hole drilled and tapped to accept an oval head screw. This screw supports the two previously mentioned stop screws on the interior tubing. It also stops the forward travel of the interior tubing after a short distance of travel.

To install this shoulder-stock device on an AK-type rifle, the shoulder stock and independent pistol grip has to be removed. Next, the front of the interior tube has to be inserted into the interior cavity of the receiver of the AK-type rifle, and the attachment screws installed.

The FTB live-fire testing of the submitted device indicates that if, as a shot is fired, an *intermediate* amount of pressure is applied to the fore-end with the support hand, the shoulder stock device will recoil rearward far enough to allow the trigger to mechanically reset. Continued intermediate pressure applied to the fore-end will then push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the firearm forward to fire each shot, each shot being fired by a single function of the trigger. Further, every subsequent shot depends on the shooter applying the appropriate amount of forward pressure to the fore-end and timing it to contact the trigger finger on the firing hand.

Since your device is incapable of initiating an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

Please note that this classification is based on the item as submitted. Any changes to its design features or characteristics will void this classification. In addition, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described will result in the manufacture of a machinegun as defined in the NFA, 26 U.S.C. 5845(b).

Please provide our Branch with a FedEx account number so that we may return this item to you.

We thank you for your inquiry and trust the foregoing has been responsive to your request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

72350

72350 – JUNE 18, 2008 – Foeller,  – Bump Fire Stock – NOT A MACHINEGUN.



72350

2008 - 371

72350



AR000108

1235D

2008- 371

72350



72350

72350 – JUNE 18, 2008 – Foeller, ███ – Bump Fire Stock – NOT A MACHINEGUN.



ᴦ∪Ιᴧ ꜱ○ωꜱᴙ

Page 1 of 1

71968



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

. not m/gun

Martinsburg, West Virginia  25405        903050.AG
www.atf.gov                              3311/2007-812
**JUN 2 6 2008**

███████  Johnson

Dear Mr. Johnson:

This is in reference to your submitted item, as well as accompanying correspondence, to the
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch
(FTB). This item, consisting of a Ruger 10/22 rifle and stock which you have modified to
incorporate what you refer to as an Akins Accelerator type device of your own manufacture, was
submitted with a request for classification under the Gun Control Act (GCA) and National
Firearms Act (NFA). This submission was sent in response to our earlier reply to your initial
correspondence (see FTB #3311/2007-383).

As you may be aware, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term
**"machinegun"** as follows:

*"...any weapon which shoots, is designed to shoot, or can be readily restored to shoot,
automatically more than one shot, without manual reloading, by a single function of the trigger.
The term shall also include the frame or receiver of any such weapon, any part designed and
intended solely and exclusively, or combination of parts designed and intended, for use in
converting a weapon into a machinegun, and any combination of parts from which a
machinegun can be assembled if such parts are in the possession or under the control of a
person."*

Further, ATF Ruling 2006-2 describes a device that is designed and intended to accelerate the
rate of fire of a semiautomatic weapon and classifies it as follows:

*Held, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger
10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches
in length; a second block, approximately 3 inches long, 1 ½ inches wide, and ¾ inch high,
machined to allow the two guide rods of the first block to pass through; the second block
supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber
and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the*

AR000111

71968   FOIA 500034

Page 1 of 1

-2-

████ Johnson

*two blocks assembled together with the composite stock) that is designed to attach to a firearm and, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, is a machinegun under the NFA, 26 U.S.C. 5845(b), and the GCA, 18 U.S.C. 921(a)(23).*

The submitted device (also see enclosed photos, pages 4 and 5) incorporates the following features:

- A metal block that replaces the original manufacturer's V-Block from the 10/22 rifle. The replacement block has two rods attached that are approximately ¼ inch in diameter and approximately 6 inches in length.
- A second metal block which has been machined to allow the two guide rods to pass through. This component serves as a support for the guide rods and as an attachment to the modified stock.
- A third rod, threaded into the outside rear of the 10/22 receiver, rides within a bushing inletted into the tang area of the stock immediately behind the receiver.
- Two external finger stops mounted to the stock, adjacent to the rifle's trigger guard, which limit the rearward travel of the shooter's trigger finger.
- The device does not incorporate an operating spring like the original Akins Accelerator, but has been modified to utilize a thumbscrew which protrudes downward through the fore end of the stock, and allows the operator to apply manual forward pressure to the device.



The absence of an accelerator spring in the submitted device prevents the device from operating automatically as described in ATF Ruling 2006-2. Conversely, forward pressure must be applied to the thumb screw with the support hand, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If strong forward pressure is applied to the thumb screw with the support hand, the rifle can be fired in a conventional semiautomatic manner since the reciprocation of the receiver assembly is eliminated. If, upon firing, weak pressure is applied to the thumb screw with the support hand, the receiver assembly will recoil rearward past the finger stops, requiring that the shooter push the receiver assembly forward before a subsequent shot can be fired.

The FTB live-fire testing of the submitted device indicates that if, as a shot is fired, an *intermediate* amount of pressure is applied to the thumb screw with the support hand, the receiver assembly will recoil rearward far enough to allow the trigger to mechanically reset. Continued intermediate pressure applied to the thumb screw will then push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each shot being fired by a single function of the trigger.

AR000112

-3-

████████ Johnson

Since your device does not, when activated by a single function of the trigger, initiate an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

Please note that this classification is based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described in ATF Ruling 2006-2 will result in the manufacture of a machinegun as defined in the NFA, 26 U.S.C. 5845(b).

Please provide our Branch with a FedEx account number so that we may return this item to you.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosures

AR000113

FOIA 30003Y
71968
Page 1 of 1

-4-

████ Johnson

Submitted device before assembly:



View of operating portion of submitted device:



71968  FOIA 300034

Page 1 of 1

-5-

████████ Johnson

Underside view of submitted device- note thumb screw at front of fore end.  This thumb screw is used to provide manual pressure to the device.



AR000115



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

ワ3457

903050:MSK
Martinsburg, West Virginia 25405   3111/2009-588
www.atf.gov

OCT 1 3 2009

 Woodall

Dear Mr. Woodall:

This refers to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in which you asked about the legality of "bump-firing" a firearm. Your letter was forwarded to the ATF Firearms Technology Branch (FTB), Martinsburg, West Virginia, for reply.

For your information, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines a "machinegun" as follows:

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

Additionally, we should point out that "bump-fire" is a vernacular term used in contemporary firearms culture and is not defined in either the Gun Control Act of 1968 or the NFA. For present purposes, FTB will regard the term as meaning <u>rapid manual trigger manipulation to simulate automatic fire</u>. As long as you must consciously pull the trigger for each shot of the "bump-fire" operation, you are simply firing a semiautomatic weapon in a rapid manner and are not violating any Federal firearms laws or regulations.

Regarding the installation of various aftermarket parts; modifying fire-control components; installing Tac, Hellfire, or Hellstorm triggers; or attaching rubber bands to triggers to facilitate easier "bump-fire" operations, we caution that any modifications which permit a weapon to fire <u>automatically more than one shot with a single function of the trigger</u> could result in that weapon being defined as a "machinegun" as noted in § 5845(b). Possession of an unregistered machinegun is a violation of Federal law.

-2-

█████ Woodall

73451

We thank you for your inquiry and trust that the foregoing has been responsive to your concerns.

Sincerely yours,

For John R. Spencer
Chief, Firearms Technology Branch

AR000117

73451
2009-588-KEM

To whom it may concern,

I was wanting to know the legal aspects of bump firing a semi automatic rifle. When bump firing there is absolutely no modifications done to the trigger or gun period. There are no aftermarket parts that you put on the outside of the trigger either. You use the recoil of the gun to simulate automatic fire. Therefore you are pulling the trigger each time a round goes off. Is this legal?

Thank You,

█████ Woodall
███████████
███████████████

588



RECEIVED

MAR 27 2009

Per _____

AR000118



12# **71484**
D# **2118-1**

**71484**

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Machine gun*

Martinsburg, West Virginia  25405
www.atf.gov

903050:RV
3311/2007-328

**OCT 19 2009**

▉▉▉▉▉▉ Rogers
▉▉▉▉▉▉▉▉▉▉▉

Dear Mr. Rogers:

This is in reply to your correspondence to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), requesting classification of a device you have submitted. You refer to this device as an "AW-SIM." Our Branch had previously evaluated a non-functioning prototype of this device and, based upon a theory of its operation, rendered a determination that the item was not a machinegun (refer to #3311/2005-517). Subsequently, ATF issued Ruling 2006-2 and notified you of a potential change to the classification of your submission. We urged you not to transfer the item or a similar device until ATF had an opportunity to re-examine your submission (refer to #3311/2007-261). We apologize for the delay in responding to your inquiry.

The AW-SIM is a mechanical device that is made to accept a semiautomatic version of an M1919 (or copy) firearm (hereinafter, "M1919"). You have also indicated that this device will be made to accept semiautomatic variants of the AK47. The AW-SIM's purpose is to allow the M1919 or other adaptable firearms to fire more than one shot, without manual reloading, by a single function of the trigger.

As background, the National Firearms Act (NFA), 26 U.S.C. § 5845(a), defines "firearm" to include "(6) a machinegun"; in turn, 26 U.S.C. § 5845(b), defines a "machinegun" as follows:

> ...*any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

In Ruling 2006-2, ATF classified a device that utilized several conversion parts added to a Ruger® 10/22 receiver. After the addition of parts, a single pull of the trigger initiated an automatic firing cycle that continued until the finger was released, the firearm malfunctioned, or the ammunition supply was exhausted. Therefore, the device was classified as a machinegun

-2-

████████ Rogers

*71484*

under the National Firearms Act, 26 U.S.C. § 5845(b) and the Gun Control Act of 1968, 18 U.S.C. § 921(a)(23).

Our re-examination of a functioning AW-SIM indicates that the device is an accessory that is designed and intended to accelerate the rate of fire for an M1919 or other adaptable, semiautomatic firearms.    Your submitted AW-SIM is for the M1919. The AW-SIM device, which is patented, consists of the following components and features:

- Cradle assembly, approximately 18 inches in length x 4 inches in width.
- There are two 1-inch square steel sections running parallel to each other. These rods are connected by weld at either ends
- The rear of the device is flat with an elliptically-shaped hole approximately 1-1/2 inches in diameter.  It has two wooden handles on each side.
- There is an upper and lower section of the rear attachment connected by Allen head screws. Mounted to this section is a spring-loaded "trigger" with a hook on the end. The hook connects the device to the trigger of a host weapon.
- On top of the two 1-inch square rods is a square, metal block with an approximately ½-inch hole drilled through it. The purpose of this section is to mount the device and the firearm to the traversing and elevation (T&E) mechanism.
- Between the rear section (which is the handle) and the mounting block, are two springs approximately 2-3/4 inches in length with metal rods through the length. These metal rods are attached to a 1-inch square aluminum block with an approximate ¼-inch hole drilled through it.
- The front section that connects the two parallel bars together has a mounting hole for attachment to an M1919 pintle assembly.

Included with the device are three accessories: (1) a sleeve, approximately 3/8-inch long, with an approximately ¼-inch hole through the center with aluminum retaining bushings; (2) a metal rod approximately 1/2 inch in diameter x 4-3/8 inches in length; and (3) a metal rod approximately ¼ inch diameter x 6 inches in length. For additional, descriptive information, please refer to the enclosed photos.

The firearm is mounted inside of the cradle assembly in the following manner:

- The 3/8-inch sleeve goes through the mounting holes for the T&E mechanism on the bottom plate of the host M1919 firearm.
- The ½-inch diameter rod is inserted into the front of the receiver and replaces the pintle mounting bolt.
- The firearm is then inserted into the cradle.
- When the firearm is inserted into the cradle, the ¼ inch rod is inserted through the cradle into the sleeve in the T&E mounting holes.
- There are cutouts inside the parallel bars. The cutouts slide over the ½-inch rod that is mounted in the pintle mounting holes.

AR000120

-3-

████████ Rogers                                          71484

When the M1919 is fired, the cradle permits the entire M1919 firearm (the receiver and all its firing components) to recoil a short distance within the cradle assembly. Downward pressure on the AW-SIM trigger, which works on a pivot, pulls the trigger of the host firearm. This causes the weapon to discharge and, as the firearm moves rearward in the cradle assembly, the M1919 trigger is reset. Energy from the action spring subsequently drives the firearm forward into its normal firing position and, in turn, causes the AW-SIM "trigger" to automatically pull the trigger of the M1919. As the M1919 travels forward, the "trigger" for the AW-SIM is still held forward and, as the firearm reaches its forward point of travel, the M1919 trigger is automatically pulled, keeping the firing sequence active until either the finger is released, the weapon malfunctions, or the ammunition supply is exhausted.

For testing purposes, FTB personnel installed a semiautomatic M1919 firearm from the National Firearms Collection into the AW-SIM cradle assembly. Live-fire testing of the device confirmed that finger pressure applied to the AW-SIM "trigger" initiates a firing cycle, which continues until the trigger is released, the weapon malfunctions, or the ammunition supply is exhausted.

Based on this evaluation, provisions of Federal law cited herein, and ATF Ruling 2006-2, FTB concludes that the AW-SIM device, being a combination of parts designed and intended for use in converting a weapon into a machinegun, is a "machinegun" as defined in the NFA at 26 U.S.C. § 5845(b) and the Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(23).

Since the firearm is a machinegun it is subject to regulation and restriction of manufacture, transportation, delivery, receipt, transfer and/or possession under the NFA, GCA, and applicable regulations Most notably, 18 U.S.C. § 922(o), and 27 CFR § 479.105 provide restrictions on the transfer or possession of a machinegun manufactured after May 19, 1986. In order for FTB to return this item, you must provide documentation that authorizes you to manufacture and/or possess the firearm. For instance, you may possess the proper Federal firearms license (FFL) from the ATF National Licensing Center, Martinsburg, West Virginia, and make an appropriate Special Occupational Tax (SOT) payment to the NFA Branch also located in Martinsburg, West Virginia.

If you already have the proper FFL and SOT, you must comply with regulations related to the documentation of manufactured firearms such as, among other things, filing an ATF Form 2 within close of the next business day and identification under 27 CFR §§ 478.92 and 479.102. Since you were not aware of the firearm's classification, ATF will authorize you to submit the Form 2 by close of the next business day following your receipt of this classification. Alternatively, you may file an ATF Form 1 and otherwise comply with the NFA, GCA and applicable regulations under Parts 478 and 479 of Title 27 of the Code of Federal Regulations by evidencing that the manufacture, transportation, delivery, receipt, transfer and/or possession of the firearm would not be in violation of local, State or Federal law.

If you or other interested persons are unable to comply with the law this firearm cannot be returned since its possession would be unlawful. You, and any other person with an interest in

-4-

71484

████ Rogers

the firearm, may abandon all interest in the firearm to ATF. Alternatively, ATF may initiate forfeiture proceedings against the firearm pursuant to 26 U.S.C. § 5872. You should immediately, but no later than 30 calendar days from the date of receipt of this classification, provide written proof of compliance with the law or notice ATF in writing of your intent to abandon all interest in the firearm.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosures



Rear of AW-SIM showing trigger spade

AR000122

-5-

71484

Rogers



Bottom of device showing:
- Action springs
- ¼ inch rod through action spring blocks
- ½ inch diameter mounting rod

-6-

███ Rogers

7/484



Bottom of AW-SIM showing the hook that connects the trigger of the M1919 to the AW-SIM.

AR000124

-7-

Rogers

71484



Bushing for mounting the AW-SIM onto an M1919.

AR000125