Page 1 of 1

99487



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Not eval. yet

Martinsburg West Vurginia 25401          903050:MRC
www.atf.gov                               3311/2012-726

Mr. William J. Middleton, Jr.
William J. Middleton Company                    SEP 0 4 2012

Dear Mr. Middleton:

This is in response to your correspondence and follow-up fax directed to the Firearms
Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Your
basic inquiry is whether the A-A Springless parts set, when combined with a Ruger 10-22
semiautomatic rifle, would be classified as a machinegun.

As you are aware, National Firearms Act (NFA), 26 U.S.C. Section 5845(b), defines
"machinegun" as—

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot,
automatically more than one shot, without manual reloading, by a single function of the
trigger. The term shall also include the frame or receiver of any such weapon, any part
designed and intended solely and exclusively, or combination of parts designed and intended,
for use in converting a weapon into a machinegun, and any combination of parts from which
a machinegun can be assembled if such parts are in the possession or under the control of a
person.*

You explain in your correspondence that since ATF issued Ruling 2006-2, classifying the Akins
Accelerator as a machinegun, the Akins Accelerator (less) spring has been redesigned as a bump-
fire kit. You further point out that Fostech Outdoors, LLC, is selling a kit identified as the
"Springless AA2 kit" which consists of a stock that incorporates a cylindrical rod-bearing
system, Kidd trigger, and a vertical grip. Because you have purchased one of the AA2 kits and
plan to sell it (in quantity) as part of normal business operations, you are concerned this kit
would be considered a machinegun. Consequently, you want to have an FTB letter finding that
such kits do not constitute machineguns.

Additionally, on June 8, 2012, you faxed FTB Chief John R. Spencer, noting that FTB had
evaluated similar systems for Messrs.           Johnson and    Savage. (However, for your
information, FTB has previously evaluated bump-fire systems only when a physical sample was
submitted.)

AR000188

FOIA   520034

Page 1 of 1

99487

-2-

Mr. William J. Middleton, Jr.

We should inform you that FTB has approved devices that operate as follows:

When a shot is fired, an *intermediate* amount of pressure is applied to the fore-end with the support hand, and the shoulder stock device recoils sufficiently rearward to allow the trigger to mechanically reset.  Continued intermediate pressure applied to the fore-end will then push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing-hand finger, allowing a subsequent shot to be fired.  *In this manner, the shooter pulls the firearm forward to fire each shot so that the action of firing is accomplished by a single trigger function.*  Further, each subsequent shot depends on the shooter applying the appropriate amount of forward pressure to the fore-end and timing it to contact the trigger-finger on the firing hand.



In conclusion, please understand that FTB has not evaluated an AA2 Springless kit and cannot render a classification without performing a physical examination that confirms its actual mode of operation.

We thank you for your inquiries and trust the foregoing has been responsive.  We are ready to examine and evaluate the AA2 kit as soon as you submit an actual sample.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

AR000189

99487

William J. Middleton Company

M R L                                      Phone: ███████

Mr. John R. Spencer, Chief
NFA Firearms Technology Branch
Martinsburg, WV 25405
Phone: 304-616-4300

RECEIVED
APR 2 0 2012
BY: FTB
2012-726-MRC

DATE: 4/14/12

REF: This request for a *written reply* has been suggested by Mr. Edward Saavedra,
Mrs. Dawn Smith, Mr. Ken Mason, & Mr. Adam Galbraith all NFA BRANCH types.

Dear Mr. Spencer,

Attached herewith are copies of my credentials, my FFL, SOT & Texas SALES TAX CERTIFICATE. And I presently conduct a small business endeavor selling firearms both semi-auto as well as full-automatic (Class 3). Accordingly, I have become aware of the *revival* of an item previously known as the Akins Accelerator, which was reclassified as a machinegun under ATF RULING 2006-2. This Ruling effectively removed it from the market and forbid its use and/or sale to non-SOT Dealers or individuals.

**Synopsis:**
On or about October 11, 2006 I purchased an Akins Accelerator as it was first produced with the return spring, believing it to be "acceptable" to the ATF as a NON-NFA WEAPON, when combined with a *semi-auto* Ruger 10-22 rifle. Nevertheless, to my dismay, on December 13, 2006 the *new* ATF RULING #2006-2 was signed by Director Michael J. Sullivan overturning his initial determination that the said combination of parts *was not a machinegun*. Moreover, this new determination then stood as the proper ruling for FFLs to live by. Further, and because of my SOT, I was told by a BATFE I.O.I. that I could still sell the device to the U. S. Government or Police Department, but not an individual; and if I ever dropped my SOT, I should remove the buffer spring. (I never dropped my SOT, but I did remove the return spring.)

**Present state of affairs:**
Now, most of the major AKINS ACCELERATOR components *without the spring* have been repackaged and configured to form a *NON-SPRING ACTIVATED BUMP FIRE PARTS SET*, which when combined with a Ruger 10-22 rifle produce an assembly that is capable of semi-auto fire. It is on the market, being sold as an ATF "approved" A-A SPRING-LESS BUMP FIRE DEVICE. The *producer*, FOSTECH OUTDOORS LLC who is selling the device claims that it is now "LEGAL to combine the A-A SPRING-LESS BUMP FIRE PARTS SET WITH A RUGER 10-22 SEMI-AUTOMATIC RIFLE as long as there is *no use of a return spring* as in the previous Akins Accelerator circa 2006". However, I cannot get a complete authentic unequivocal written copy of an ATF RULING nor an ATF "DETERMINATION" expressing their finding that *such a combination is not a machinegun*. I recently purchased one of these new A-A SPRING-LESS renditions for evaluation. Moreover, I believe it is certainly *not* a machinegun, but rather a bump-fire system similar in function and result to the Slide-Fire Solutions AR15 Stock. This A-A SPRING-LESS PARTS SET combined with a semi-auto Ruger 10-22 is fun to shoot, and it eats low cost ammunition. Moreover, I would like to sell them in my business as nothing more than a quick shooting semi-auto Ruger-10-22 with a "LEGAL" accessory; if and only if they are as the producer claims. Further, I want to know if the NFA Firearms Technology Branch has unequivocally determined that the A-A SPRING-LESS PARTS SET WHEN COMBINED WITH A RUGER 10-22 SEMI-AUTOMATIC RIFLE IS INDEED **NOT** A MACHINEGUN. And I hereby ask for an unredacted written copy of any such previous determination. If that is not possible because of privacy issues, then a prompt written reply to this letter will be fine.

**Request:**
An ATF RULING would be nice, but I am a realist. Consequently, I would greatly appreciate a written reply as soon as possible as to the accuracy of the producer's remarks, and the correctness of my understanding of the issue as I have related herein. I believe the combination of A-A SPRING-LESS PARTS SET and a semi-auto Ruger 10-22 will result in a NON-NFA CONTROLLED BUMP FIRED SEMI-AUTO WEAPON. And as much as I believe that is true, I would feel more comfortable seeing that written determination on your stationery, before investing a lot of money and time to promote this item.

Thank you for your help. In addition, please call if you have questions or require more clarification.

Sincerely,

William J. Middleton, Jr.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*'/ /'*/*8*

*NOT M/n*



www.atf.gov

FEB 1 1 2013

903050:WJS
3311/2013-149

███ Foster
FosTecH Outdoors, LLC
████████████████

Dear Mr. Foster:

This is in reference to your sample, as well as accompanying correspondence, which was submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB). The sample, consisting of a replacement "bump-fire" type stock (or "Bumpski") designed for use with a semiautomatic AK-pattern type rifle, was furnished to FTB for classification under Federal firearms laws.

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term "**machinegun**" as—

*…any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

The submitted device (see enclosed photos) incorporates the following features or characteristics:

- A non-ferrous metal "upper portion" of the stock, designed for insertion into the rear section of a stamped AK-type receiver and, also, for securing the "Bumpski" to the remainder of the weapon utilizing the factory tang of the AKM rifle.
- "Lower portion" to which this "upper portion" is assembled: The "lower" consists of a pistol-gripped assembly which reciprocates within the "upper portion" of the buttstock.
- Four screws used to secure your stock to the AKM rifle.
- A "selector bar" to prevent linear movement of the non-ferrous "lower portion" of the stock.
- Lack of any operating springs, bands, or other parts which would permit automatic firing

-2-

██████ Foster

Your stock is designed to allow the AKM-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically. When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AKM rifle mounted to your stock, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB examination of the submitted device indicates that if, as a shot is fired and a *sufficient* amount of pressure is applied to the handguard/gripping surface with the shooter's support hand, the AKM rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each shot being fired by a single function of the trigger.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is **NOT** a machinegun under the NFA, 26 U.S.C. 5845(b), or the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted. *Any changes to its design features or characteristics will void this classification.* Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a machinegun as defined in the NFA, 5845(b).

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

77918



77918



AR000194

77918



AR000195

77918



77918

77918 – Foster, ▮ – FEB 11, 2013 – "BUMPSKI" - Bump Fire type stock – NOT A MACHINEGUN



AR000197



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Assistant Director*

Washington, DC 20226
www.atf.gov

APR 1 6 2013

The Honorable Ed Perlmutter
U.S. House of Representatives
Washington, DC 20515

Dear Congressman Perlmutter:

This is in response to your letter dated March 5, 2013, to the Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF) to rescind a previous evaluation letter and to classify all bump-
fire stocks (to include specifically the Slide Fire Solutions stock) as machineguns.

As you have indicated, machineguns are defined in the National Firearms Title Act, 26 United
States Code Chapter 53 Section 5845(b). The definition has four distinct parts. The first, as you
point out, states that a machinegun is "any weapon which shoots, is designed to shoot, or can be
readily restored to shoot, automatically more than one shot, without manual reloading, by a
*single function of the trigger.*" The remaining portions of the definition go on to state that: "[t]he
term shall also include the frame or receiver of any such weapon, any part designed and intended
solely and exclusively, or combination of parts *designed and intended for use in converting a
weapon into a machinegun,* and any combination of parts from which a machinegun can be
assembled if such parts are in the possession or under the control of a person."

In the course of examining a number of bump-fire stocks, ATF found that none of these devices
could shoot nor did they constitute firearm frames or receivers; therefore, the first portion of the
machinegun definition can not apply. Those bump-fire stocks which were found to convert a
weapon to shoot automatically were classified as machineguns and regulated accordingly—
most notably, the Akins Accelerator. Other bump-fire stocks (such as the SlideFire Solutions
stock) that ATF determined to be unable to convert a weapon to shoot automatically were not
classified as machineguns.

Reviewing findings with respect to the Akins and Slide Solutions, ATF, in Ruling 2006-2, found
that the Akins Accelerator incorporated a mechanism to automatically reset and activate the fire-
control components of a firearm following the single input of a user. Thus, the Akins
Accelerator acted to convert a semiautomatic firearm to shoot automatically. Conversely, the
Slide Fire Solutions stock requires continuous multiple inputs by the user for each successive

AR000198

-2-

The Honorable Ed Perlmutter

shot.  Similarly, other devices exist, such as the HellFire Trigger, which attach to and act upon the trigger of a firearm and also work to increase the rate or volume of fire of the firearm.  Like the Slide Fire Solutions stock, the HellFire Trigger does not provide an automatic action—requiring instead continuous multiple inputs by the user for each successive shot.

Public safety is always a primary concern of ATF.  We remain committed to the security of our Nation and the fight against violent crime.  However, bump-fire stocks that do not fall within any of the classifications for firearm contained in Federal law may only be classified as firearms components.  Stocks of this type are not subject to the provisions of Federal firearms statutes.  Therefore, ATF does not have the authority to restrict their lawful possession, use, or transfer.

We hope this information proves helpful in responding to your constituent.  Please let me know if we may be of further assistance.

Sincerely yours,

Richard W. Marianos
Assistant Director
Public and Governmental Affairs

**ED PERLMUTTER**
7TH DISTRICT, COLORADO

WASHINGTON OFFICE:
1410 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
PHONE: (202) 225-2645
FAX: (202) 225-5278

DISTRICT OFFICE:
12600 WEST COLFAX AVENUE
SUITE B-400
LAKEWOOD, CO 80215
PHONE: (303) 274-7944
FAX: (303) 274-6455

www.perlmutter.house.gov

COMMITTEES:
FINANCIAL SERVICES
CAPITAL MARKETS AND
GOVERNMENT SPONSORED ENTERPRISES (GSEs)

INTERNATIONAL MONETARY POLICY AND TRADE

## Congress of the United States
### House of Representatives
March 5, 2013

The Honorable B. Todd Jones
Acting Director
Bureau of Alcohol, Tobacco, Firearms, and Explosives
99 New York Avenue, NW
Washington, DC 20226

Dear Acting Director Jones:

I write urging the Bureau of Alcohol, Tobacco, Firearms, and Explosives to rescind approval of gun products which allow for certain semiautomatic assault rifles to function as fully automatic when equipped with permanent "bump fire" accessories.

One company, and perhaps others, manufactures an accessory called a Slide Fire Stock which, when attached to an AR-15 or an AK-47, utilizes recoil inertia to fire continuously. Hundreds of videos displaying shooters using the Slide Fire Stock are available online. In one video, a shooter using a Slide Fire Stock on an AR-15 fires 100 rounds of ammunition in only eight seconds, equating to a rate of fire of 750 rounds per minute. This rate of fire is substantially higher than any rate of fire achievable by traditional semiautomatic means.

The National Firearms Act of 1934 (NFA) intended to "deprive (a criminal) of his most dangerous weapon, the machine gun," which is defined as a firearm which may shoot multiple cartridges with a single function of the trigger. The NFA generally prohibits fully automatic firearms, with the exception of those registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). These types of weapons are considered so dangerous the owner must complete a thorough background check, submit fingerprints, and have the endorsement from the local chief of police.

In a letter dated June 7th, 2010, from ATF to an unmentioned recipient, the ATF states the Slide Fire Stock "is a firearm part and is not regulated as a firearm under the Gun Control Act or the National Firearms Act." A copy of this letter is provided with every Slide Fire Stock, presumably to reassure any individuals who question the legality of the Slide Fire Stock equipped assault rifle.

I believe weapons featuring Slide Fire Stocks or similar permanent accessories employing bump fire mechanics transform an otherwise legal firearm into a weapon the NFA intended to prohibit except when properly registered.

There is no denying 750 rounds per minute is a danger to our communities. Whether the rate of fire is caused by internal mechanical parts or by a permanent external accessory, the lethality is the same. Therefore, the application of the NFA should be the same. I ask the ATF to rescind its June 7, 2010, letter and notify any and all manufacturers of "bump fire" accessories of such rescission, and that the sale of these types of accessories is subject to the National Firearms Act.

Thank you for your attention to this matter. I look forward to your timely response.

Sincerely,

Ed Perlmutter
Member of Congress

AR000200



78025

NOT M/Gun

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives



Martinsburg  WV  25405

www.atf.gov

903050:WJS
3311/78025

May 1, 2013

Erskine

Dear Mr. Erskine,

This is in reference to your sample, as well as accompanying correspondence, which was submitted in December 2012 to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), for classification under Federal firearms laws.  The sample—which you call "the HailStorm"—consists of a replacement "bump-fire" type stock designed for use with a semiautomatic AR-15 type rifle.

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term "machinegun" as—

...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.  The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

The submitted device (see enclosed photos) incorporates the following features or characteristics:

•       A plastic, adjustable AR-type buttstock "anchor tube" that is designed to be installed onto the buffer tube of an AR-type firearm and, also, to house the "stabilizer bar."
•       A "stock adjusting pin" to prevent linear movement of the "anchor tube" while it is installed to the buffer tube.

 Erskine                                                    Page 2

•      Lack of any operating springs, bands, or other parts which would permit automatic firing.

Your stock is designed to allow the AR-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically. When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AR-type rifle mounted to your stock, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional, semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB examination of the submitted device indicates that if as a shot is fired—and a sufficient amount of pressure is applied to the handguard/gripping surface with the shooter's support hand—the AR-type rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger: Re-contacting allows the firing of a subsequent shot. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each succeeding shot firing with a single trigger function.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a "machinegun" as defined in the NFA, 5845(b).

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely yours,

Earl Griffith
Chief, Firearms Technology Branch



Hail Storm Stock, Photograph #1

78025



Hail Storm Stock, Photograph #2

AR000204

78025

78025 — MAY 1, 2013 — Erskine — Bump Fire Stock — NOT A MACHINEGUN





**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

*Martinsburg, WV 25405*

www.atf.gov



**JAN 1 4 2014**

903050: WJS
3311/301592

Erskine

Dear Mr. Erskine,

This is in reference to your sample, as well as accompanying correspondence, which was submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), for a new classification under Federal firearms laws. The sample—which you call "the Hailstorm"—consists of a replacement "bump-fire" type stock designed for use with a semiautomatic AR-15 type rifle.

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term **"machinegun"** as—

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

The submitted device (see enclosed photos) has the following features or characteristics:

- A plastic, adjustable AR-type buttstock "anchor tube" that is designed to be installed onto the buffer tube of an AR-type firearm and, also, to house the "stabilizer bar."
- A "stock adjusting screw" to prevent linear movement of the "anchor tube" while it is installed to the buffer tube.
- Lack of any operating springs, bands, or other parts which would permit automatic firing.

AR000206

 Erskine                                                    Page 2

Your stock is designed to allow the AR-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically. When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AR-type rifle mounted to your stock, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional, semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB examination of your current device indicates that if a shot is fired—and a *sufficient* amount of pressure is simultaneously applied to the handguard/gripping surface with the shooter's support hand—the AR-type rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger: Re-contacting allows the firing of a subsequent shot. In this manner, the shooter pulls the receiver assembly forward to fire each shot, and each succeeding shot fires with a single trigger function.

Since this sample does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a "machinegun" as defined in the NFA, 5845(b).

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request. Your sample will be returned via the accompanying U.S. Postal Service label and postage.

Sincerely yours,

for
Earl Griffith
Chief, Firearms Technology Branch

AR000207



"Hailstorm" Stock submitted by Mr. ███ Erskine; 12/6/2013



"Hailstorm" stock Assembled to an AR-type Firearm



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives



*301754*

*NOT m/Gun*
*+ NOT Submitted*

*Martinsburg, WV 25405*

*www.atf.gov*

APR 1 0 2014

903050:MCP
3311/301754



Lindsay

Lindsay,

This refers to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), which accompanied your submitted sample of a device you describe as a bump-fire adapter. Specifically, you requested an evaluation and classification of this item.

As you may be aware, the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(3), defines the term "firearm" to include *...any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive...[and] ...the frame or receiver of any such weapon....*

Further, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines "machinegun" as follows:

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

In your correspondence, you have requested ATF to modify one of its own rifles in order to evaluate and classify your submitted device; however, ATF divisions, branches, etc., are constrained from doing so. In order for FTB to classify your device, please submit a properly functioning sample that is already installed on a rifle.

██████ Lindsay                              Page 2 301754

We caution that if the manufacture of this item would result in the assembly of a "machinegun" as defined by the NFA, FTB could neither solicit nor sanction its unlawful production. Also, you should confirm that the manufacture of this device does not violate any State or local laws and ordnances.

In conclusion, if the FTB evaluation were to determine that the submitted sample is a "machinegun" as defined in the NFA, we would be unable to return it unless you are a licensed manufacturer and have paid the special occupational tax ("SOT"). Conversely, if FTB finds that the sample is not a "machinegun" as defined, it would be returned to you as soon as our Branch has received either a FedEx (or alternate carrier) account number to which the return can be billed, or a prepaid return label.

We thank you for your inquiry and trust the foregoing has been responsive.

Sincerely yours,

Earl Griffith
Chief, Firearms Technology Branch

301673



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_Martinsburg, WV 25405_

www.atf.gov



903050:RKD
3311/301673

JUN 2 4 2014

Baugh

Dear Mr. Baugh,

This refers to your letter, with accompanying illustrations, to the Bureau of Alcohol,
Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), regarding
the legal status of your project. As indicated, you want to make a device that is described
as a recreational shooting aid to allow a pistol to be "bump fired." This device consists of
metal tubing that incorporates a vertical surface intended to rest against the shooter's
shoulder, a vertical forward gripping surface, and a horizontal tube that extends sideways
from the component; this tube will slide through the pistol's trigger guard without being
attached to the pistol. Overall, you want a response from our Branch providing a definite
answer as to the legality of this device under Federal law.

For your reference in this matter, the amended Gun Control Act of 1968 (GCA),
18 U.S.C. § 921(a)(3), defines the term "firearm" to include _any weapon (including a_
_starter gun) which will or is designed to or may be readily converted to expel a projectile_
_by the action of an explosive...[and]...the frame or receiver of any such weapon...._

Also, with respect to the definitions of "handgun" and "pistol" under Federal statutes and
regulations, you may be aware that the GCA, 18 U.S.C. § 921(a)(29), defines "handgun"
to mean, in part: _...a firearm which has a short stock and is designed to be held and fired_
_by the use of a single hand...._

AR000212

3011673

████████ Baugh                                                    Page 2

Additionally, 27 CFR § 478.11, a regulation implementing the GCA, defines "pistol" as:

...a weapon originally designed, made, and intended to fire a projectile (bullet) from one or more barrels when held in one hand, and having (a) a chamber(s) as an integral part(s) of, or permanently aligned with, the bore(s); and (b) a short stock designed to be gripped by one hand and at an angle to and extending below the line of the bore(s).

Please note also that the GCA, 18 U.S.C. § 921(a)(7), defines the term "rifle" to include a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder....

Finally, the National Firearms Act (NFA), 26 U.S.C. § 5845(a)(3), defines "firearm" to include a rifle having a barrel or barrels of less than 16 inches in length....

Based on our analysis of your project and consideration of the Federal definitions just cited, we should inform you that the installation of this device on a pistol could prove problematic. ATF has long held that a handgun together with a "gun rest" which is not designed to fit a particular gun, but may be attached to a handgun by means of a friction clamp, could result in the making of a short-barreled rifle.

Further, while a shoulder stock which has no means of attaching to a handgun— except when an individual physically holds the two together—may not be considered part of a short-barreled rifle in and of itself, as soon as an individual actually uses such a stock as the shoulder stock for a handgun, the combination of shoulder stock and handgun would be an NFA weapon. In this scenario, the weapon would be subject to all NFA controls.

While you state that this device "will never be attached, temporarily or permanently" to a pistol, FTB cannot classify this device without inspecting a physical sample. Should you wish to submit a sample, the device and classification request should be sent to—

Chief, Firearms Technology Branch
244 Needy Road
Martinsburg, West Virginia 25405

We thank you for your inquiry and are ready to examine an actual sample of your device.

Sincerely yours,

Earl Griffith
Chief, Firearms Technology Branch





Bureau of Alcohol, Tobacco, Firearms and Explosives Firearms
Technology Branch
244 Needy Road
Martinsburg, West Virginia 25405
USA

Subject: Request for clarification regarding "bump fire" invention

To whom it may concern,

I am designing a recreational shooting aid to allow a pistol to be "bump fired". The aid
will be placed on the shoulder of the shooter and is never in any way attached to a
pistol. The aid's main component is a metal tube that extends sideways from the main
pipe of the aid. This tube will be slid through the trigger guard of the pistol and will
never be attached, temporarily or permanently. The reason for placing the aid on the
shooter's shoulder is to keep this tube in one place so that the pistol can bump against
the tube without moving the tube; in other words to keep the tube secure. The pistol
still moves freely from the aid at all times. The recoil is transferred to the hand of the
shooter that is holding the pistol. The pistol is aimed with that same hand. The aid does
nothing but provide a steady platform from which the pistol can bump fire. This aid does
not in any way modify the pistol or the way it is aimed or fired.

Using the shooting aid, one can push the gun forward into the tube that is slid through
the trigger guard, apply steady pressure, causing it to "bump fire" or use the recoil of
the gun to keep resetting the trigger and firing very rapidly.

At any point, the shooter can simply slide the gun off of the tube that acts as the trigger
finger, releasing the pistol from the aid, meaning the aid is never attached to the gun,
whatsoever.

My reason for writing is to ensure that the laws restricting the placement of fore grips or
stocks on pistols do not apply to this shooting aid. I would assume they do not apply
because the shooting aid doesn't attach to the gun at all; the gun is slid over a bar and
never locked in in any way. The gun doesn't even touch the accessory until the shooter
pushes the gun forward into the tube that acts as the trigger finger. This shooting aid is
strictly for recreational shooting.

301673

I have a patent pending for this device but I would like a response from the ATF giving a definite answer as to the legality of this device so that I, or anyone else who may use it, will not have any legal or liability issues.

I have included screenshots of a prototype to help understand what I designed.

Thank you for your time,

███████████████

███ Baugh

30167 3





301673



AR000217



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_Martinsburg WV 25405_

www.atf.gov

JUL 3 1 2014

903050: WJS
3311/302192

 Marcotte

Dear Mr. Marcotte,

This is in reference to your sample, as well as accompanying correspondence and DVD, which was submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). The sample, consisting of a device which hosts a semiautomatic AR-type firearm ; and allows the subject firearm to "bump fire", was furnished to FTB with a request for classification under Federal firearms laws.

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term **"machinegun"** as—

_...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person._

The submitted device (see enclosure photographs) incorporates the following features or characteristics:

- A non-ferrous metal frame; measuring approximately 22-1/2 inches in length, approximately 5 inches in width and approximately 2 inches in height.
- A piece of polymer, measuring approximately 6 inches square and approximately 1 inch thick; attached to the rear of the BAM Simulator frame by two bolts; which has a hole  configured to accept an AR-type buffer tube assembly.

 Marcotte                                                                                     Page 2

- A piece of polymer, measuring approximately 6 inches long, approximately 4 inches in width and 2 inches in height incorporating a linearly centrally located dovetailed groove which is designed to accept a compatible Weaver-type rail attachment.
- The submitted item is devoid of any operating springs, bands, or other devices which would permit automatic firing.

Your item is designed to allow the AR-type semiautomatic rifle mounted to it; to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically.

When operated, forward pressure must be applied to the rear of the buffer tube, bringing the host firearm forward to a point where the trigger can be actuated by a steel cross-bolt. If sufficient forward pressure is not applied to the rear of the subject buffer tube, the firearm can be fired in a conventional semiautomatic manner since the reciprocation of the firearm is eliminated.

The FTB examination of the submitted device indicates that if, as a shot is fired and a *sufficient* amount of pressure is applied to the rear of the buffer tube; the AR rifle assembly will come forward until the trigger re-contacts the steel cross-bolt, allowing a subsequent shot to be fired. In this manner, the shooter pushes the firearm forward to fire each shot, each shot being fired by a single actuation of the trigger.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is **NOT** a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

We caution that our findings are based on the item as submitted. **Any changes to its design features or characteristics will void this classification.** Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically; will result in the manufacture of a machinegun as defined in the NFA, 26 U.S.C. 5845(b).

We thank you for your inquiry and trust that the foregoing has been responsive to your evaluation request.

                              Sincerely yours,


                              Earl Griffith
                    Chief, Firearms Technology Branch

BAMS Simulator, Submitted 4/28/14 by Mr. █████ Marcotte



AR000220



Rear Portion Which Houses the AR-Type Buffer Tube

AR000221

Reciprocating Weaver Style Attachment
Installed in Dovetailed Groove

AR000222



Weaver Style Attachment



BAMS Simulator Cross-Bolt

AR000224

# BAMS Simulator with NFC AR-Type Firearm Installed






NFC Firearm in Pre-Fire Location

AR000226

NFC Firearm Making Contact With Cross-Bolt; With Pressure Applied to the Rear of Buffer Tube




AR000227

301627



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_Martinsburg, WV 25405_

_www.atf.gov_

903050:MRC
3311/301627

AUG 2 4 2014

█████ Smith

Dear Mr. Smith,

This is in response to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), which was forwarded to the ATF Firearms Technology Branch (FTB), Martinsburg, West Virginia, for response. In your correspondence, you inquire about the legality of a bump fire device commonly referred to as a bump stick.

The, National Firearms Act (NFA), 26 U.S.C. Section 5845(b), defines "**machinegun**" as—

> "_...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person._"

In your correspondence, you ask if a dimensional piece of lumber that has a dowel or cylindrical shaped pipe inserted horizontally (protruding through both sides) can be manufactured, used and distributed for profit. The above described device is designed to aid in the rapid firing of a semi-automatic firearm. You state that the device works in the following manner:

The shooter will place the dimensional piece of wood in his/her shoulder; next, the shooter will grasp one side of the horizontal rod with their non- firing hand and then insert the semi-automatic firearm's trigger guard over the opposite side of the dowel rod.

301627

■ Smith

Page 2

By placing forward pressure on the semi-automatic firearm until the trigger contacts the dowel rod causing the firearm to discharge. Next, the firearm recoils sufficiently rearward to allow the trigger to mechanically reset. Continued forward intermediate pressure applied to the firearm will then push the firearm forward until the trigger re-contacts the dowel rod and allowing a subsequent shot to be fired. *In this manner, the shooter pushes the firearm forward to fire each shot so that the action of firing is accomplished by a single trigger function.* Further, each subsequent shot depends on the shooter applying the appropriate amount of forward pressure to the firearm and timing it to contact the dowel rod mounted on the dimensional piece of wood.

Any device that is operated manually and incapable of initiating an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, would not meet the definition of machinegun as defined in NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

In conclusion, please understand that FTB cannot render a classification without performing a physical examination that confirms the devices actual mode of operation.

We trust the foregoing has been responsive to your request.

Sincerely yours,

Michael Griffith
Chief, Firearms Technology Branch

ENVELOPE DATED 10/24/13
LTR FWD TO FTB

301627



October 22, 2013

MRC

**Bureau of Alcohol, Tobacco, Firearms and Explosives**
*Office of Public and Governmental Affairs*
99 New York Avenue, NE, Room 55 144
Washington, DC 20226 USA

Dear Sir or Madam,

I am writing to inquire the legality of a bump fire device commonly referred to as a bump stick. Most simply put, this is a wooden dowel protruding from a piece of dimension lumber. It is held in the non-firearm-wielding hand and pressed against the shoulder while the firearm is held in the other hand. The dowel protrudes into the trigger guard and actuates the trigger of the firearm when the firearm is pushed forward into the dowel. This action results in rapid firing of the semi-automatic firearm. This device does not attach to or modify the firearm in any way; it is a standalone object. The semi-automatic firearm still fires only once per actuation of the trigger.

Is this device legal by current laws to 1. Manufacture, 2. Use, 3. Distribute not for profit, and 4. Distribute for profit?

Thank you for the time to read and respond,

Smith





**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_____

*Martinsburg, WV 25405*

www.atf.gov

907010:MCP
3311/302624

DEC 1 5 2014

Monroe

Dear Mr. Monroe:

This refers to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), regarding so-called "bump stocks". Specifically, you asked about the lawfulness of modifying a bump stock previously approved by our Branch and ultimately attaching the device to a pistol.

As you may be aware, the amended Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), defines the term "firearm" to include ...*any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive...[and] ...the frame or receiver of any such weapon....*

Further, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines "machinegun" as follows:

...*any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

Modifying a previously-approved bump stock would result in the manufacture of a new device.

We should point out that FTISB is unable to classify your proposed device based solely upon photographs and a written description. A physical sample would have to be examined in order to make a formal determination.

302624

████ Monroe                                                              Page 2

Our shipping address is the same as our mailing address—

                    Bureau of Alcohol, Tobacco, Firearms and Explosives
                        Firearms Technology Industry Services Branch
                                      244 Needy Road
                              Martinsburg, West Virginia 25405

We caution that if the manufacture of this item would result in the assembly of a "machinegun" as
defined by the NFA, FTISB could neither solicit nor sanction its unlawful production.  Also, you
should confirm that the manufacture of the proposed item does not violate any Oklahoma State or
local laws or ordnances.

In conclusion, if the FTISB evaluation were to determine that the submitted sample is a
"machinegun" as defined in the NFA, we would be unable to return it unless you are a licensed
manufacturer and have paid the special occupational tax ("SOT").  Conversely, if FTISB determines
that the sample is not a "machinegun" as defined, it would be returned to you as soon as our Branch
has received either a FedEx (or alternate carrier) account number to which the return can be billed, or
a prepaid return label.

We thank you for your inquiry and trust the foregoing has been responsive.

                                        Sincerely yours,

                                        Michael R. Curtis
                  Acting Chief, Firearms Technology Industry Services Branch



505U2I

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

✗ *NO Examination or Classification
given.*

*Martinsburg, WV 25405*

www.atf.gov

907010: RKD
3311/303021

MAR 1 7 2015

Veralrud

Dear Mr. Veralrud,

This refers to your correspondence, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), regarding the legal status of installing a spring between a manual "bump fire stock" and the rear of the buffer tube/receiver extension of an AR-15 type firearm installed in the stock.

You indicate that as the bump fire stock now functions, pressure is required to be manually applied to the front of the rifle for it to function properly and state that "as configured" your hand could slip off the front of the rifle past the muzzle and possibly cause injury.

For your reference in this matter, the amended Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(23), defines the term "machinegun" to have the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b)).

Also, the National Firearms Act (NFA), 26 U.S.C. § 5845(a)(6), defines "firearm" to include *a machinegun....*

Finally, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines "machinegun" as: *any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

AR000233

50 5021

████ Veralrud                                                      Page 2

Based on our analysis of your proposed project and consideration of the Federal
definitions just cited, we should inform you that the combination of a "bump fire stock"
which incorporates a "return spring" and a suitable firearm or such a return spring
equipped bump fire stock alone could be subject to regulation under both the provisions
of the GCA and NFA as a machinegun. Our office notes that previously examined
devices which incorporated similar operating principles have been so classified.

Finally, our branch would not be able to offer an official classification of your proposed
device without examining a functioning prototype similar in both design and materials to
the device that is intended for installation on AR-15 type firearms.

Should you wish to submit a sample for evaluation, it may be sent to:

Chief, Firearms Technology Industry Services Branch
244 Needy Road
Martinsburg, West Virginia 25405

We thank you for your inquiry and trust that the foregoing has been responsive to your
request.

Sincerely yours,

George Rogers

George Rogers
Acting Chief, Firearms Technology Branch

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_Martinsburg, WV 25405_

www.atf.gov

903050: RKD
3311/302077

APR 2 0 2015

 Geers

Dear Mr. Geers,


This refers to your correspondence, along with sample AR-15 pistol-type "Bump Grip,"
to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Firearms
Technology Branch (FTB), posing questions regarding the legality of installing this
device on an AR-15 type pistol; further, you inquire if your device (photos, page 2)would
be subject to the provisions of the amended Gun Control Act of 1968 (GCA) or the
National Firearms Act (NFA).

As background to your inquiry, we should point out that the GCA, 18 U.S.C.
§ 921(a)(29), defines "**handgun**" to include _**a firearm which has a short stock and is
designed to be held and fired by the use of a single hand**_....

Additionally, 27 CFR § 478.11, a regulation implementing the GCA, defines "**pistol**" as
_**a weapon originally designed, made, and intended to fire a projectile (bullet) from one
or more barrels when held in one hand,**_ _and having (a) a chamber(s) as an integral
part(s) of, or permanently aligned with, the bore(s); and (b) a short stock designed to be
gripped by one hand and at an angle to and extending below the line of the bore(s)_....

Also, the GCA, § 921(a)(7), defines "**rifle**" as follows:

_...a weapon designed or redesigned, made or remade, and intended to be fired from the
shoulder and designed or redesigned and made or remade to use the energy of an
explosive to fire only a single projectile through a rifled bore for each single pull of the
trigger._

AR000235

 Geers

Page 2

Further, the NFA, 26 U.S.C. § 5845(a)(5), defines **"firearm"** to include—

*...any other weapon, as defined in subsection (e);*

Finally, **"Any other weapon (AOW)"** is defined under the NFA, § 5845(e), as—

*...any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.*

The FTB evaluation found the following operational instructions included with the device:

1. *Hold AR-15 pistol normally.*
2. *Rest trigger finger securely on finger rest of Bump Grip.*
3. *With left hand, apply light, forward pressure to barrel guard.*
4. *Forward momentum will move pistol until the trigger finger contacts the trigger.*
5. *The pistol will fire and cycle next round of ammunition.*
6. *Continue to apply light, forward pressure to barrel guard to repeat firing sequence.*



You indicate that a letter from FTB (dated June 7, 2010) addressed a similar evaluation request on behalf of the *SlideFire* stock device for AR-15 type rifles. As you recount, FTB determined that that device was an unregulated firearms part; accordingly, you are requesting a similar determination regarding your device, which is designed and intended to be installed on a pistol rather than a rifle. While you are correct that FTB has evaluated devices designed and intended to be installed on AR-15 type <u>rifles</u> that operate on principles similar to your device—and determined that they are not subject to Federal controls—the installation of your "Bump Grip" onto an AR-15 type pistol proves to be problematic when both 18 U.S.C. § 921(a)(29) and 27 CFR § 478.11 are considered.

 Geers                                                    Page 3

These statutes define "**handgun**" and "**pistol**" respectively to include "a *firearm which has a short stock and is designed to be held and fired by the use of a single hand....*"and "...*a weapon originally designed, made, and intended to fire a projectile (bullet) from one or more barrels when held in one hand.*" However, your submitted instructions indicate that your "*Bump Grip,*" when installed on an AR-15 type pistol, is designed and intended to utilize both hands for firing. Consequently, when your "*Bump Grip*" is installed on an AR-15 type pistol, the resulting firearm would no longer be designed to be held and fired by the use of a single hand and, as such, would no longer meet the definition of a "handgun" or "pistol."

In summary, your "*Bump Grip,*" in and of itself, would not be subject to regulation under Federal law. However, if this grip were to be installed on or possessed in conjunction with a compatible AR-15 type pistol, the resulting firearm or combination could be classified as an AOW under the NFA. Should an individual wish to manufacture an NFA firearm upon receipt of an approved ATF Form 1 (5320.1), he or she would be required to mark it in accordance with 26 U.S.C. 5842. Finally, the installation of your "*Bump Grip*" on (or its possession with) an AR-15 type rifle would not be a violation of Federal law as had been noted in our determination regarding the "*SlideFire*" AR-15 rifle stock cited in your correspondence.

Your device will be returned via the U.S. postage stamps you provided (value, $5.20). We thank you for your inquiry and trust the foregoing has been responsive to your concerns. You may contact us at any time if you have any additional questions concerning the matters reviewed in this letter.

Sincerely yours,

*George Rogers*

George Rogers
Acting Chief, Firearms Technology Industry Services Branch

302478



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Martinsburg, WV 25405*

www.atf.gov

903050: MRC
3311/302478

 APR 2 8 2015

Bair

Dear Mr. Bair,

This refers to your correspondence, and sample AR-15 type "Bump Fire Grip Device" to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), in which you pose questions regarding the legality of installing this device on an semiautomtic AR-15 type firearm and inquire if your sample device would be regulated by the provisions of the Gun Control Act of 1968 (GCA) or the National Firearms Act (NFA).

As background to your inquiry, we should point out that the amended Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(29), defines **"handgun"** to include *a firearm which has a short stock and is designed to be held and fired by the use of a single hand*....

Additionally, 27 CFR § 478.11, a regulation implementing the GCA, defines "pistol" as ...*a weapon originally designed, made, and intended to fire a projectile (bullet) from one or more barrels when held in one hand, and having (a) a chamber(s) as an integral part(s) of, or permanently aligned with, the bore(s); and (b) a short stock designed to be gripped by one hand and at an angle to and extending below the line of the bore(s)*....

Also, 18 U.S.C. § 921(a)(7), defines "rifle" as:

*a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger.*

Further, the National Firearms Act (NFA), 26 U.S.C. § 5845(a) (5), defines **"firearm"** to mean:

 Bair



302478

Page 2

*...any other weapon, as defined in subsection (e);*

Finally, **"Any other weapon (AOW)"** is defined under the NFA, 26 U.S.C. § 5845(e), as—

*...any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.*

You explain that your device works in the following manner:

"To bump fire a rifle with this device you simply put your finger on the rest on the plastic slide grip and pull forward on the rifle hand guard with 1-3 pounds more pressure than the weight of the trigger on the rifle. To fire single shots simply bypass the finger rest and just squeeze the trigger as you would firing a standard semiautomatic rifle."

Your bump fire grip device consists of the following:

One non-ferrous metal block. The metal block is machined to fit an AR type receiver pistol grip attachment point and has holes for the selector detent spring and pistol grip screw. It further has a hole tapped 12 X 28 inch to allow for the attachment of the moveable pistol grip.

These statues define **"handgun"** and **"pistol"** respectively to include "a *firearm which has a short stock and is designed to be held and fired by the use of a single hand....",and "...a weapon originally designed, made, and intended to fire a projectile (bullet) from one or more barrels when held in one hand".* We must caution you if your *"Bump fire Grip Device"* is installed on an AR-15 type pistol, the resulting firearm would no longer be designed to be held and fired by the use of a single hand and as such would no longer meet the definition of a "handgun" or "pistol".

 In summary, your *"Bump Fire Grip Device"* in and of <u>itself</u>, would not be subject to regulation under federal law. However, if your *"Bump Fire Grip Device"* were to be <u>installed on</u> or <u>possessed in conjunction with</u> a compatible AR-15 type pistol, the resulting firearm or combination could be classified as an Any Other Weapon (AOW) under the NFA. Should an individual wish to manufacture an NFA firearm upon receipt of an approved ATF Form 1 (5320.1), it would be <u>required</u> to be marked in accordance with Title 26, U.S.C., Chapter 53, section 5842. Finally, the installation of your *"Bump Fire Grip Device"* on or possession with an AR-15 type <u>rifle</u> would not be a violation of Federal law similarly to the *"Slide Fire Device"* AR-15 rifle stock.

 Bair

302478

Page 3

Your device will be returned to you via your provided UPS shipping label. We thank you for your inquiry and trust the foregoing has been responsive to your concerns.

Sincerely yours,

George Rogers
Acting Chief, Firearms Technology Industry Services Branch

Enclosure:

Bair Bump Fire Grip Device (side view)



302478

 Bair

Page 4

**Top View**



**Bottom View**

