**To:** Epstein, Eric M. [redacted] Gross, Charles R.[Charles.Gross@atf.gov]
**Cc:** Roessner, Joel J [redacted]
**From:** Allen, Joseph J.
**Sent:** Wed 10/4/2017 8:02:07 PM
**Subject:** FW: Emailing: Akins Powerpoint reconsideration
Akins Powerpoint reconsideration.ppt

FYSA. Counsel PPT on Akins reconsideration of MG classification.

-----Original Message-----
From: Vann, James P.
Sent: Wednesday, October 4, 2017 3:32 PM
To: Allen, Joseph J. [redacted]
Subject: Emailing: Akins Powerpoint reconsideration

Your message is ready to be sent with the following file or link attachments:

Akins Powerpoint reconsideration

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# AKINS ACCELERATOR

# Is it a Machinegun?

**August 2, 2007**

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# AKINS ACCELERATOR



**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives



**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

AKINS
ACCELERATOR
PATENTED
www.firefaster.com
AKINS
ACCELERATOR
PATENTED
www.firefaster.com

AR000497





U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives





**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

AR000499



**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives





**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives





**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

AR000502

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Ruger 10/22



**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# AKINS ACCELERATOR

Akins-Movie-2.wmv

Akins-Movie-2.wmv

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Machinegun

- **Machinegun defined in 26 U.S.C. 5845(b) :**
  - Any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot without manual reloading by a **single function of the trigger**;
  - The frame or receiver of any such weapon;
  - Any part designed and intended solely and exclusively or combination of parts designed and intended for use in converting a weapon to a machinegun;
  - Any combination of parts from which a machinegun can be assembled if the parts are under the control of a person.

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Initial FTB Report on Akins Prototype

- The proposed theory of operation of this stock involves the application of the movement of the counter recoiling rifle to initiate a rapid succession of semiautomatic fire. The shooter places his trigger finger behind the two adjustable screws and forward of the weapon's trigger. After the weapon is initially fired and the action is moved to the rear (by the recoiling mechanism, the subsequent forward motion of the action is halted by the shooter's trigger finger being held against the adjustable screws. The trigger is then depressed, and a second firing of the weapon commences. The movements of the action within the stock assembly are used to consecutively fire the weapon in lieu of the traditional method of manually pulling the trigger.

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Conclusion of First Letter

- **Our examination has determined that the submitted stock assembly does not constitute a machinegun as defined in the NFA.**

AR000507

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Second Letter to Akins

- Tom Bowers requested clarification of the initial letter due to the fact that it stated that the prototype broke during testing.
- Second letter sent stating "The theory of operation was clear even though the rifle/stock assembly did not perform as intended."

AR000508



**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# FTB Report on the Akins Third letter to Bowers

- The composite stock is designed for a Ruger 10/22 barrel and receiver. This stock permits the entire firearm (receiver and all its firing components) to recoil a short distance within the stock when fired. Rearward pressure on the trigger causes the firearm to discharge, and as the firearm moves rearward in the composite stock, the shooter's trigger finger contacts the stock. The trigger mechanically resets, and the accelerator, which has a coiled spring located forward of the firearm receiver, is compressed. Energy from this accelerator spring subsequently drives the firearm forward into its normal firing position and, in turn, causes the trigger to contact the shooter's trigger finger, making the weapon fire again. The Akins device assembled with a Ruger 10/22 is advertised to fire approximately 650 rounds per minute.



U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Conclusion

- "Live fire testing of the Akins Accelerator demonstrated that a single pull of the trigger initiates an automatic firing cycle that continues until the finger is released, the weapon malfunctions, or the ammunition supply is exhausted."
- Accordingly, it is the position of this agency that conversion parts that are designed and intended to convert a weapon into a machinegun, that is, one that will shoot more than one shot, without manual reloading, by a single pull of the trigger, are regulated as machineguns under the National Firearms Act and Gun Control Act.

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# History of the Akins

- Akins Accelerator –Classified as a non-firearm on November 17, 2003.
- Another letter confirming this classification was issued on January 29, 2004.
- The Akins was reclassified as a machinegun on November 22, 2006.
- Ruling 2006-2 was issued by the Director on December 13, 2006 confirming that these types of trigger activating devices were machineguns.

AR000511

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Justification for Initial Classification

- The proposed theory of operation of this stock involves the application of the movement of the counter recoiling rifle to initiate a rapid succession of semiautomatic fire.
- Note: the trigger mechanically resets after each shot fired.

AR000512

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Justification for Machinegun Classification

- "Live fire testing of the Akins Accelerator demonstrated that a single pull of the trigger initiates an automatic firing cycle that continues until the finger is released, the weapon malfunctions, or the ammunition supply is exhausted."



AR000513

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Request for Reconsideration by Counsel for Akins

## Arguments

- One shot per function
- Function = movement
- Trigger vs. trigger finger

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# What does "single function of the trigger" mean?



AR000515

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Statutory Interpretation
## "Plain meaning" vs. Legislative Intent

- If the statute is clear then must give plain meaning.
- If the statute is ambiguous or silent can then look outside the statute.

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Memorandum Dated Sept 1989

- "A single function of the trigger" means "a single movement of the trigger."
- A trigger "functions" by releasing the hammer (or other firing device) which results in expelling the projectile.
- Memorandum written in response to a "two-stage" trigger which fired a round when pulled and again when released – classified as not a machinegun.

AR000517

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# If "single function of the trigger" is ambiguous we can look to legislative history for guidance.

AR000518

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Legislative History

- Testimony before Committee on Ways and Means by Karl T. Frederick, President, NRA, indicates that "single function of a trigger" meant "single pull of a trigger."
- Mr. Frederick proposed this definition changing it from "any weapon designed to shoot automatically or semiautomatically twelve or more shots without reloading."

AR000519



U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

- **The basis of our classification now depends on evaluating the actions of the shooter instead of looking solely at the firearm. A machinegun will be determined by a conscious effort on the part of the shooter.**

AR000520

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Arguments by Akins

- Prior determinations are inconsistent with Akins

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Previous Classifications

| | |
|---|---|
| AW-SIM | Not a machinegun/ machinegun |
| Akins Accelerator | Not a machinegun/machinegun |
| BASTARD | Machinegun |
| AR-16 | Machinegun |
| Hellfire | Not a machinegun |
| Tac Trigger | Not a machinegun |
| Auto Burst | Not a machinegun |
| "Two Stage" Triggers | Not a machinegun |
| Tri Burst | Not a machinegun |
| Howard sample | Machinegun |
| GAT | Not a machinegun |

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Our Classifications have not been consistent

- BASTARD device is similar to the Akins.
- The AR-16 (while of a different design) is of the same basic concept as the others. It has been classified as a machinegun.
- Howard device forces the finger forward until the weapon's action is closed and ready to fire. Hellfire uses a spring that returns the trigger to the firing position more quickly. Howard device is classified as machinegun. Hellfire is not a machinegun.



U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Arguments by Akins

- AA is just a mechanical means of bump firing

AR000524

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# If we look to the shooter and not the machine

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Arguments by Akins

- **ATF reversed initial position = Economic Damage**



AR000526

# Arguments by Akins

- **Rule of Lenity. Where the intention of Congress is not clear from the act itself and reasonable minds might differ as to its intention, the court will adopt the less harsh meaning. Blacks Law Dictionary.**
- **See Thompson Center. After applying the ordinary rules of statutory construction, then, we are left with an ambiguous statute. The key to resolving the ambiguity lies in recognizing that although it is a tax statute that we construe now in a civil setting, the NFA has criminal applications that carry no additional requirement of willfulness. Making a firearm without approval may be subject to criminal sanction, as is possession of an unregistered firearm and failure to pay the tax on one. It is proper, therefore, to apply the rule of lenity and resolve the ambiguity in Thompson/Center's favor.**

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Alternatives to Classification as a Machinegun
## States' Interpretation

**Three States have taken steps to outlaw these types of devices. They all define machinegun using the phrase "single function of the trigger" and yet have addressed these devices separately from machineguns.**

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# IOWA

- **Iowa defines "trigger activating device" within the statute which outlaws it.**
- **I.C.A. § 724.29**
  - A person who sells or offers for sale a manual or power-driven trigger activating device constructed and designed so that when attached to a firearm increases the rate of fire of the firearm is guilty of an aggravated misdemeanor.



U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# MINNESOTA

- Minnesota outlaws "Trigger Activators" and defines them as "a removable manual or power driven trigger activating device constructed and designed so that, when attached to a firearm, the rate at which the trigger may be pulled increases and the rate of fire of the firearm increases to that of a machine gun."

AR000530



**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# CALIFORNIA

- **California outlaws "multiburst trigger activators" and defines them as:**
  - (A) A device designed or redesigned to be attached to a semiautomatic firearm which allows the firearm to discharge two or more shots in a burst by activating the device.
  - (B) A manual or power-driven trigger activating device constructed and designed so that when attached to a semiautomatic firearm it increases the rate of fire of that firearm.

AR000531

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Chief Counsel Recommendation

**To:** Barnett, Gary E. (OAG) (JMD)[redacted]
**Cc:** Frank, Michael (ODAG) (JMD)[redacted] Thiemann, Robyn (OLP) (JMD)[redacted]
**From:** Allen, Joseph J.
**Sent:** Thur 10/5/2017 7:14:44 PM
**Subject:** Legal Anaysis Bump-Fire
Counsel Memo to OAG re 'Bump Fire' Stocks 10-5-17.docx

Gary, Analysis attached. Will forward signed copy on request.

--Joe



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Office of Chief Counsel*

*Washington, DC 20226*

www.atf.gov

October 5, 2017

200000:EME

MEMORANDUM TO: Office of the Attorney General
United States Department of Justice

FROM: Chief Counsel
Bureau of Alcohol, Tobacco, Firearms and Explosives

SUBJECT: Legality of "Bump-Fire" Rifle Stocks

Since 2008, ATF has issued private letter determinations to nine manufacturers of "bump-fire"-type devices advising the manufacturers that the devices submitted for review were not classified as machineguns for purposes of Federal law. These letters were issued after ATF firearm experts conducted a technical evaluation of a voluntarily submitted prototype[1] of each device to determine whether the device enabled a semi-automatic firearm to discharge more than one shot with a single function of the trigger, and therefore fell within the statutory definition of a machinegun. The key factor in making the determination that these "bump-fire" devices did not fall within the statutory machinegun definition was whether the device artificially enhanced the rate of fire by using a mechanical feature, as opposed to facilitating a shooter's ability to physically pull the trigger at a higher rate than would be possible without the device. In the former case, the device was typically classified as a machinegun. In the latter case, it typically was not.

**Relevant Background**

[1] ATF does not have authority to require manufacturers to submit prototypes of firearm accessories for review to determine if the accessory should be classified as a firearm subject to federal regulation.

As amended by the Firearm Owners Protection Act of 1986, the GCA at 18 U.S.C § 922(o) prohibits the transfer or possession of a "machinegun" except by government agencies and those lawfully possessed before May 19, 1986 and registered in the National Firearms Registration and Transfer Record (NFRTR) in accordance with the NFA, 26 U.S.C. § 5841. Unregistered machineguns are also prohibited from being possessed and transferred under the NFA, 26 U.S.C. 5861(d), (e). A "machinegun" is defined under the NFA and GCA as follows:

> [A]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled, if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b); 18 U.S.C. § 921(a)(23); *see also* 27 C.F.R. § 478.11 (stating same).

In August of 2003, a prototype of a device called the "Akins Accelerator" was submitted to ATF for classification.[2] Initially, ATF classified that device as a non-machinegun, which was consistent with a 1989 evaluation of a firearm with a "two-stage trigger," (*i.e.*, causing a shot to be fired when the trigger was depressed and a shot fired when the trigger was released). ATF had determined such firearms were not machineguns because the phrase "single function of the trigger" meant a single *movement* of the trigger; the two-stage trigger moved twice. However, after a subsequent test fire, ATF determined the Akins device converted a semiautomatic rifle into a weapon capable of firing automatically by a single function of the trigger and was, therefore, a machinegun. ATF's classification letter stated, "it is the position of this agency that conversion parts that are designed and intended to convert a weapon into a machinegun, that is, one that will shoot more than one shot, without manual reloading, by a single *pull* of the trigger, are regulated as machineguns under the National Firearms Act and the Gun Control Act." Simply put, the device was a machinegun because once the trigger was pulled, the firearm continued to shoot until the trigger pressure was removed or the ammunition was exhausted.

Concerned about the public safety implications if these devices were sold without oversight, ATF issued Ruling 2006-2, which holds that trigger activating devices that require only one pull of the trigger to initiate a repeating cycle of fire, such as the Akins Accelerator, are properly classified as machineguns. The Ruling explained that these devices were machineguns because they are parts designed and intended to convert a weapon into a machinegun, *i.e.*, a weapon that will shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The Ruling cited legislative history of the NFA as authority for equating the phrase "single function of the trigger" with "single pull of the trigger.[3]

[2] The Akins Accelerator was an accessory firearm stock that, once attached to a Ruger 10/22 semiautomatic rifle, accelerated the rifle's rate of fire. The shooter pulled the trigger one time, which initiated an automatic firing sequence that causes the rifle to recoil within the stock permitting the trigger to lose contact with the finger and manually reset, springs then force the rifle forward in the stock, forcing the trigger against the finger, causing the weapon to automatically discharge the ammunition until the shooter released the trigger or the ammunition is exhausted. Put another way, the device caused the firearm to cycle back and forth, impacting the trigger finger—which remained stationary—and firing the firearm automatically. The advertised rate of fire for a weapon with the Akins Accelerator was 650 rounds per minute.

[3] Hearings before the Committee on Ways and Means, House of Representatives, 73rd Cong., Second Sess. on H.R. 9066 at

Mr. Akins then sued ATF, and ultimately the Eleventh Circuit upheld ATF's classification of this device, explaining as follows:

> A machinegun is a weapon that fires "automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The interpretation by the Bureau that the phrase "single function of the trigger" means a "single pull of the trigger" is consonant with the statute and its legislative history. After a single application of the trigger by a gunman, the Accelerator uses its internal spring and the force of recoil to fire continuously the rifle cradled inside until the gunman releases the trigger or the ammunition is exhausted. Based on the operation of the Accelerator, the Bureau had authority to "reconsider and rectify" what it considered to be a classification error. That decision was not arbitrary and capricious.

*Akins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009).

In contrast, in 2008, ATF had examined a shoulder-stock device that relied on the shooter to apply forward pressure on the fore-end of the firearm and timed to contact the trigger finger on the firing hand. ATF concluded that this device wasn't a machinegun because it was "incapable of initiating an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted." Similarly, in 2010, ATF examined a replacement shoulder stock for the AR-15 type rifle the stated intent of which was to assist persons whose hands have limited mobility to "bump-fire" an AR-15 rifle. ATF concluded that this device was *not* a machinegun because, unlike the springs in the Akins Accelerator, it had "no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed." The classification further explained that, in order to use the installed device, "the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand."

## Analysis

[redacted]

40 (1934) ("The distinguishing feature of a machine gun is that by a single pull of the trigger the gun continues to fire as long as there is any ammunition in the belt or in the magazine. Other guns require a separate pull of the trigger for every shot fired, and such guns are not properly designated as machine guns."); *see also Staples v. United States*, 511 U.S. 600, 600 (1994) ("The National Firearms Act criminalizes possession of an unregistered 'firearm,' 26 U.S.C. § 5861(d), including a 'machinegun,'§ 5845(a)(6), which is defined as a weapon that automatically fires more than one shot with a single pull of the trigger, § 5845(b).").

[4] *Cf. U.S. v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009) ("Thus defined, in § 5845(b) the adverb "automatically," as it modifies the verb "shoots," delineates how the discharge of multiple rounds from a weapon occurs: as the result of a self-acting mechanism. That mechanism is one that is set in motion by a single function of the trigger and is accomplished without manual reloading.")

- 4 -

Office of the Attorney General

[redacted]

If you have any questions, I can be reached at 202-648-[redacted]

---

[redacted]

PREDECISIONAL - ATTORNEY-CLIENT PRIVILEGED COMMUNICATION

AR000537

- 5 -

Office of the Attorney General

Charles R. Gross

PREDECISIONAL - ATTORNEY-CLIENT PRIVILEGED COMMUNICATION

AR000538

MARK MEADOWS
11TH DISTRICT, NORTH CAROLINA

COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM
CHAIRMAN, SUBCOMMITTEE ON GOVERNMENT OPERATIONS

COMMITTEE ON TRANSPORTATION AND INFRASTRUCTURE

COMMITTEE ON FOREIGN AFFAIRS

# Congress of the United States
## House of Representatives
Washington, DC 20515–3311

1024 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-6401

200 NORTH GROVE STREET, SUITE 90
HENDERSONVILLE, NC 28792
(828) 693-5660

www.house.gov/meadows

October 5, 2017

The Honorable Thomas Brandon
Director
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Ave NE
Washington, DC 20226

Director Brandon,

On at least two occasions, in 2010 and 2012, the Obama Administration's Bureau of Alcohol Tobacco, Firearms, and Explosives (ATF) approved two letters stating that the devices known as "bump stocks" did not warrant regulation under the National Firearms Act. I am writing to inquire if the ATF plans to review whether or not these devices comply with federal law and regulations.

Sincerely,

Mark Meadows
Member of Congress

PRINTED ON RECYCLED PAPER



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

*Assistant Director*

Washington, DC 20226
www.atf.gov

DEC 1 1 2017

The Honorable Mark Meadows
U.S. House of Representatives
Washington, DC 20515-0001

Dear Congressman Meadows:

This responds to your letter to the Acting Director dated October 5, 2017, concerning bump-stock devices. We, like you, your colleagues, and the American public, mourn the loss of life and our thoughts are with those injured and traumatized by the horrific events that took place in Las Vegas on October 1, 2017.

In the aftermath of this tragedy, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Department of Justice undertook a review of the options available relating to certain bump-stock devices. After thorough consideration, ATF has decided to initiate the process of promulgating a Federal regulation interpreting the definition of "machinegun" in the National Firearms Act and the Gun Control Act to clarify whether certain bump-stock devices fall within that definition.

On December 4, 2017, ATF initiated that process by submitting an Advanced Notice of Proposed Rulemaking (ANPRM) to the Office of Management and Budget. Publication of this ANPRM will provide the public and industry the opportunity to submit formal comments to ATF on certain preliminary topics that will help inform ATF's decision regarding further steps in the rulemaking process. As this process progresses, updates can be found at: https://www.reginfo.gov/public.

Please do not hesitate to contact this office if we may be of assistance with this or any other matter.

Sincerely yours,

Margaret Bennett
for Christopher C. Shaefer
Assistant Director
Public and Governmental Affairs

United States Senate
WASHINGTON, DC 20510

October 6, 2017

Mr. Thomas E. Brandon
Acting Director
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, NE
Washington, DC 20226

Dear Acting Director Brandon:

The citizens of Nevada, and of our country as a whole, continue to mourn the brutal and senseless attack on innocent concertgoers in Las Vegas the night of October 1, 2017. We remember and pray for those lost in this tragedy, as well as their family and friends. We honor and applaud the bravery of the first responders, both law enforcement and civilian heroes, medical professionals, and all who came to the aid of those in need.

We recognize that it is impossible to prevent tragedy and acts of "pure evil," in the words of our President. We believe, however, the tragic events in Las Vegas brought to light an issue from this past Administration that we respectfully request that your Bureau swiftly review.

Press reports of the crime scene in Las Vegas, Nevada, indicate that certain devices were used to modify the firearms involved. Specifically, these devices are designed to allow semi-automatic rifles to function like fully-automatic rifles. The sale of these devices, and bump stocks specifically, is permitted under an interpretation of the Gun Control Act (18 U.S.C. § 921(a)(23)) and National Firearms Act (26 U.S.C. § 5845(b)) made by the Obama Administration's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

Given the function and capability of a semi-automatic rifle that is modified by a bump stock, we respectfully request that you review the Obama Administration's interpretation and issue your own interpretation. Unfortunately, we are all now keenly aware of how this device operates and believe that this renewed review and determination will keep our citizens safe and ensure that federal law is enforced.

We appreciate your swift response and action on this important issue.

Sincerely,

Dean Heller
U.S. Senator

John Cornyn
U.S. Senator

Joni Ernst
U.S. Senator

James Inhofe
U.S. Senator

Johnny Isakson
U.S. Senator

James Lankford
U.S. Senator

Lisa Murkowski
U.S. Senator

Tim Scott
U.S. Senator

John Thune
U.S. Senator



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

*Assistant Director*

Washington, DC 20226
www.atf.gov

DEC 1 1 2017

The Honorable Dean Heller
United States Senate
Washington, DC 20510

Dear Senator Heller:

This responds to your letter to the Acting Director dated October 6, 2017, concerning bump-stock devices. We are sending identical responses to the other Senators who joined in your letter. We, like you, your colleagues, and the American public, mourn the loss of life and our thoughts are with those injured and traumatized by the horrific events that took place in Las Vegas on October 1, 2017.

In the aftermath of this tragedy, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Department of Justice undertook a review of the options available relating to certain bump-stock devices. After thorough consideration, ATF has decided to initiate the process of promulgating a Federal regulation interpreting the definition of "machinegun" in the National Firearms Act and the Gun Control Act to clarify whether certain bump-stock devices fall within that definition.

On December 4, 2017, ATF initiated that process by submitting an Advanced Notice of Proposed Rulemaking (ANPRM) to the Office of Management and Budget. Publication of this ANPRM will provide the public and industry the opportunity to submit formal comments to ATF on certain preliminary topics that will help inform ATF's decision regarding further steps in the rulemaking process. As this process progresses, updates can be found at: https://www.reginfo.gov/public.

Please do not hesitate to contact this office if we may be of assistance with this or any other matter.

Sincerely yours,

Megan A. Bennett
for Christopher C. Shaefer
Assistant Director
Public and Governmental Affairs

This letter was also sent to:

The Honorable John Cornyn
United States Senate
Washington, DC  20510

The Honorable Joni Ernst
United States Senate
Washington, DC  20510

The Honorable James Inhofe
United States Senate
Washington, DC  20510

The Honorable Johnny Isakson
United States Senate
Washington, DC  20510

The Honorable James Lankford
United States Senate
Washington, DC  20510

The Honorable Lisa Murkowski
United States Senate
Washington, DC  20510

The Honorable Tim Scott
United States Senate
Washington, DC  20510

The Honorable John Thune
United States Senate
Washington, DC  20510

Congress of the United States
Washington, DC 20515

October 11, 2017

The Honorable Thomas E. Brandon
Acting Director
Bureau of Alcohol, Tobacco, Firearms, and Explosives
99 New York Ave NE
Washington, DC 20226

Dear Acting Director Brandon,

On the morning of October 2, we were shocked and appalled to awaken to news of the horrific events that occurred during the night at a concert in Las Vegas. As a nation, we mourn the loss of life, we condemn the senseless and evil attack on these innocent victims, and we praise the brave actions by our first responders and bystanders alike.

As members of Congress, however, it is our responsibility to examine this situation to determine what actions, if any, may be taken as an appropriate response to this national tragedy. We recognize that it is impossible to prevent tragedy—we cannot stop evil in its many forms, and we cannot gauge the level of hate in someone's heart. But we can come together to find commonsense ways in which to blunt the damage these evildoers are able to inflict upon other citizens while ensuring protection of individuals' civil liberties and rights under our Constitution.

Reports in the aftermath of this tragedy indicate that the perpetrator may have used a commercially available mechanism to modify the rate at which his weapons were able to discharge. Commonly called a "bump stock" or "bump fire stock", this mechanism is designed to replace the weapon's original shoulder stock to allow the rest of the weapon to slide backward and forward, harnessing the kinetic energy of the weapon's recoil to allow for a more rapid trigger pull, thereby dramatically increasing the rate of discharge.

It is also our understanding that this mechanism is technically legal under the National Firearms Act (26 U.S.C. 5845(b)) and the Gun Control Act (18 U.S.C. 921(a)(23)). In fact, we have enclosed two letters from the Firearms Technology Branch (FTB) of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) dated June 7, 2010 and April 2, 2012 which indicate this mechanism is not implicated by the laws that apply to machineguns.

In light of the tragic events in Las Vegas, we respectfully request that FTB-ATF work expeditiously to re-evaluate bump stocks and similar mechanisms to ensure full compliance with federal law. If the re-evaluation shows otherwise, we request that you move swiftly to issue appropriate rulings concerning the manufacture, sale, transfer, and importation of these mechanisms, as well as any other mechanism that is expressly designed to simulate the automatic rate of fire of a machinegun. For our part, we will be studying legislative options to close any loopholes that might exist in current statutes governing the regulation of machineguns.

PRINTED ON RECYCLED PAPER

We trust that you will undertake this request expeditiously and thoroughly, and we thank you for your thoughtful consideration. Should you have any questions or concerns, please do not hesitate to contact us directly.

Sincerely,

Adam Kinzinger
Member of Congress

Mike Gallagher
Member of Congress

Martha McSally
Member of Congress

Cathy McMorris-Rodgers
Member of Congress

Greg Walden
Member of Congress

Edward R. Royce
Member of Congress

Michael T. McCaul
Member of Congress

Steve Stivers
Member of Congress

Fred Upton
Member of Congress

Patrick J. Tiberi
Member of Congress

Rodney P. Frelinghuysen
Member of Congress

Joe Barton
Member of Congress

F. James Sensenbrenner
Member of Congress

Dave Reichert
Member of Congress

Ted Poe
Member of Congress

Mario Diaz-Balart
Member of Congress

Michael C. Burgess, M.D.
Member of Congress

Patrick Meehan
Member of Congress

Tom MacArthur
Member of Congress

Michael K. Simpson
Member of Congress

Barbara Comstock
Member of Congress

Gene Green
Member of Congress

John Shimkus
Member of Congress

Earl Blumenauer
Member of Congress

Ileana Ros-Lehtinen
Member of Congress

Carlos Curbelo
Member of Congress

Pete Olson
Member of Congress

Ed Perlmutter
Member of Congress

Mike Coffman
Member of Congress

André Carson
Member of Congress

Darrell E. Issa
Member of Congress

Jared Polis
Member of Congress

Michael R. Turner
Member of Congress

Donald M. Payne, Jr.
Member of Congress

Scott R. Tipton
Member of Congress

Joyce Beatty
Member of Congress

Erik Paulsen
Member of Congress

Cheri Bustos
Member of Congress

Peter J. Roskam
Member of Congress

Kyrsten Sinema
Member of Congress

Leonard Lance
Member of Congress

Marc Veasey
Member of Congress

Will Hurd
Member of Congress

Filemon Vela
Member of Congress

Andy Barr
Member of Congress

Jacky Rosen
Member of Congress

Jeff Fortenberry
Member of Congress

Ken Calvert
Member of Congress

Rodney Davis
Member of Congress

Brian K. Fitzpatrick
Member of Congress

Elise M. Stefanik
Member of Congress

Jaime Herrera Beutler
Member of Congress

Dennis A. Ross
Member of Congress

Claudia Tenney
Member of Congress

David Young
Member of Congress

Randy Hultgren
Member of Congress

Steve Knight
Member of Congress

Glenn Grothman
Member of Congress

Ryan A. Costello
Member of Congress

John Rutherford
Member of Congress

Gus M. Bilirakis
Member of Congress

Mike Bishop
Member of Congress

Brett Guthrie
Member of Congress

Darin LaHood
Member of Congress

Lloyd Smucker
Member of Congress

Mike Bost
Member of Congress

Dan Newhouse
Member of Congress

Susan W. Brooks
Member of Congress

Kevin Cramer
Member of Congress

Mimi Walters
Member of Congress

Lynn Jenkins, CPA
Member of Congress

Dave Trott
Member of Congress

French Hill
Member of Congress

David P. Joyce
Member of Congress

Chris Collins
Member of Congress

Vicky Hartzler
Member of Congress

Don Bacon
Member of Congress

Madeleine Z. Bordallo
Member of Congress

Michelle Lujan Grisham
Member of Congress



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

*Assistant Director*

Washington, DC 20226
www.atf.gov

DEC 1 1 2017

The Honorable Adam D. Kinzinger
U.S. House of Representatives
Washington, DC 20515-0001

Dear Congressman Kinzinger:

This responds to your letter to the Acting Director dated October 11, 2017, concerning bump-stock devices. We are sending identical responses to the other Members who joined in your letter. We, like you, your colleagues, and the American public, mourn the loss of life and our thoughts are with those injured and traumatized by the horrific events that took place in Las Vegas on October 1, 2017.

In the aftermath of this tragedy, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Department of Justice undertook a review of the options available relating to certain bump-stock devices. After thorough consideration, ATF has decided to initiate the process of promulgating a Federal regulation interpreting the definition of "machinegun" in the National Firearms Act and the Gun Control Act to clarify whether certain bump-stock devices fall within that definition.

On December 4, 2017, ATF initiated that process by submitting an Advanced Notice of Proposed Rulemaking (ANPRM) to the Office of Management and Budget. Publication of this ANPRM will provide the public and industry the opportunity to submit formal comments to ATF on certain preliminary topics that will help inform ATF's decision regarding further steps in the rulemaking process. As this process progresses, updates can be found at: https://www.reginfo.gov/public.

Please do not hesitate to contact this office if we may be of assistance with this or any other matter.

Sincerely yours,

Megan A. Bennett for
Christopher C. Shaefer
Assistant Director
Public and Governmental Affairs

**This letter was also sent to:**

The Honorable Don Bacon
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Andy Barr
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Joe Barton
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Joyce Beatty
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Gus M. Bilirakis
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Mike Bishop
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Earl Blumenauer
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Madeleine Z. Bordallo
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Mike Bost
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Susan W. Brooks
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Michael C. Burgess
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Cheri Bustos
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Ken Calvert
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable André Carson
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Mike Coffman
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Chris Collins
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Barbara Comstock
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Ryan A. Costello
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Kevin Cramer
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Carlos Curbelo
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Rodney Davis
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Mario Diaz-Balart
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Brian K. Fitzpatrick
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Jeff Fortenberry
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Rodney P. Frelinghuysen
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Mike Gallagher
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Gene Green
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Glenn Grothman
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Brett Guthrie
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Vicky Hartzler
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Jaime Herrera Beutler
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable French Hill
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Randy Hultgren
U.S. House of Representatives
Washington, DC  20515-0001

The Honorable Will Hurd
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Darrell E. Issa
U.S. House of Representatives
Washington, DC 20515-0001

HJC

The Honorable Lynn Jenkins
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable David P. Joyce
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Adam Kinzinger
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Steve Knight
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Darin LaHood
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Leonard Lance
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Michelle Lujan Grishman
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Tom MacArthur
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Michael T. McCaul
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Cathy McMorris-Rodgers
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Martha McSally
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Patrick J. Meehan
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Dan Newhouse
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Pete Olson
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Erik Paulsen
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Donald M. Payne, Jr.
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Ed Perlmutter
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Ted Poe
U.S. House of Representatives HJC
Washington, DC 20515-0001

The Honorable Jared Polis
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Dave Reichert
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Peter J. Roskam
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Ileana Ros-Lehtinen
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Jacky Rosen
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Dennis A. Ross
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Edward R. Royce
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable John Rutherford
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable F. James Sensenbrenner
U.S. House of Representatives
Washington, DC 20515-0001 HJC

The Honorable John Shimkus
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Kyrsten Sinema
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Michael K. Simpson
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Lloyd Smucker
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Elise M. Stefanik
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Steve Stivers
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Claudia Tenney
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Patrick J. Tiberi
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Scott R. Tipton
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Dave Trott
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Michael R. Turner
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Fred Upton
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Marc Veasey
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Filemon Vela
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Greg Walden
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable Mimi Walters
U.S. House of Representatives
Washington, DC 20515-0001

The Honorable David Young
U.S. House of Representatives
Washington, DC 20515-0001

# TALKING POINTS FOR LAS VEGAS SHOOTING

## CONVERSION TO MACHINEGUNS:

- In general, firearms parts or accessories are not regulated by the National Firearms Act (NFA) or the Gun Control Act (GCA), and thus are not subject to ATF control.
  If a firearm part or accessory (i.e., not a firearm) converts a firearm to a machinegun, the part or accessory may, itself, be classified as a machinegun, which would then be subject to the GCA and NFA. Whether a part or accessory is, in fact, a machinegun requires an application of statutory terms – the law – to the technical and functional characteristics of the device. This analysis requires both technical and legal expertise.

## SEMIAUTOMATIC vs. "FULLY-AUTOMATIC" ("MACHINEGUN")

- A semiautomatic firearm is one which has a self-loading action. The design is used in rifles, shotguns and pistols. https://www.atf.gov/firearms/firearms-guides-importation-verification-firearms-ammunition-and-implements-war-self. A semi-automatic firearm will shoot one round with each function of the trigger.

- Machineguns are defined by the NFA and GCA as any weapon "which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot without manual reloading, by a single function of the trigger." The definition includes any part or combination of parts designed and intended for use in converting a weapon into a machinegun. https://www.atf.gov/firearms/firearms-guides-importation-verification-firearms-national-firearms-act-definitions-0

## FIREARMS vs. FIREARMS PARTS

- If a firearms part works to allow a firearm to be converted to a machinegun, then the part is also a machinegun under the law. The classification is based upon an evaluation of whether or not the device in question alters the function of the firearm to fire more than one shot without manual reloading, by a single function of the trigger.

## FIREARMS PARTS CLASSIFICATION

- The firearms industry and individuals are allowed to, but not required to, submit items to ATF to make determinations for classification purposes (i.e. is it a part, an accessory, a firearm, a machinegun, a silencer, etc.). ATF encourages these submissions, so that both industry and individuals can avoid inadvertent violations of the governing laws and regulations.

- Classification decisions ordinarily are memorialized in a letter from ATF to the submitter. These letters are not usually made public by ATF because they typically contain proprietary information about the device(s).

- Changes in the law can have an impact on whether a prior classification remains correct. Design changes to a device, even small changes, can also affect the validity of a prior classification decision.

**FIREARMS FOUND AND CONNECTED TO PADDOCK**

- Already released by SAC Snyder:
    - The firearms were purchased in Nevada, Utah, California, and Texas.
    - The firearms consist of rifles, shotguns, and pistols.
    - Twelve (12) bump fire stocks were also found on firearms in the hotel room, on semi-automatic rifles.
    - It is still being determined which firearms were used in the shooting.
    - All firearms were submitted for urgent tracing and all traces have been completed.
    - The firearms are currently at the FBI Crime Lab in Quantico, Va.
    - Paddock began purchasing firearms in 1982.
    - The "ammo clips" (should be called MAGAZINES) included high capacity magazines, including some with 60-100 round capacity.

**MULTIPLE SALES**

- A reportable multiple sale occurs when a licensed dealer or pawnbroker sells or otherwise disposes of, at one time or during any five consecutive business days, more than one semiautomatic rifle capable of accepting a detachable magazine and with a caliber greater than .22 (including .223/5.56 caliber) to the same unlicensed person. https://www.atf.gov/file/61741/download

- The reporting of multiple sales for rifles is only required from licensed dealers and pawnbrokers in Arizona, California, New Mexico and Texas. However, all licensees are obligated to submit reports of multiple sales or other dispositions of handguns when the licensee sells or otherwise disposes of two or more pistols or revolvers or any combination of pistols or revolvers totaling two or more, to the same unlicensed person at one time or during any five consecutive business days. The reporting of multiple sales for pistols and revolvers is a separate requirement from the reporting of multiple sales of certain rifles.

- The multiple sales reporting requirement has no expiration date. The OMB form "Report of Multiple Sale or Other Disposition of Certain Rifles (ATF Form 3310.12) (OMB Number 1140– 0100)" expires on Nov. 30, 2017. The form is expected to be renewed.

**NFA**

- ATF is responsible for regulating and overseeing every person or business entity which intends to sell, manufacture and import firearms.

- The NFA Division maintains the National Firearms Registration and Transfer Record (NFRTR), the central registry of all NFA firearms in the United States.

- Possession of an unregistered machinegun (NFA) is, with few exceptions, a federal crime. Similarly, a device that ATF has classified as a machinegun is subject to NFA regulation.

- ATF conducts background checks on persons who seek to obtain or possess of machineguns. A person is not allowed to take possession of a machinegun until that process has been successfully completed.

- Release of NFRTR Information
    - Information about whether someone does or does not have items registered in the NFRTR can NOT be released to the public, per 26 USC 6103 (tax information)
    - This restriction is applicable whether or not the person is alive.

**GCA FIREARM DISCLOSURE RESTRICTION (Commonly referred to as the Tiahrt Amendment)**

- Applies to information included on records mandated to be kept by FFLs pursuant to 18 USC 923(g)(3) and (7) and/or any information contained in the FTS or otherwise related to the tracing of a firearm.

- Includes 4473s, A&D books, Multiple Sale Forms, etc.

- Example: ATF finds a firearm laying on the ground next to a suspect and a credit card statement at his home with a purchase at Bob's Gun Shop
    - Releasing information about the make and model of the gun you can clearly see laying on the ground does NOT violate the disclosure restriction.
    - Releasing that ATF found a credit card statement for a purchase at Some Unnamed Gun Shop does NOT violate the disclosure restriction.
    - If ATF goes to Bob's Gun Shop and asks if that suspect purchased that gun there, and the shop checks their records to confirm, ATF releasing that confirmation DOES violate the restriction. If ATF traces the firearm and it comes back to Bob's Gun Shop and ATF releases that confirmation, that DOES violate the restriction.
    - Whether a suspect associated with that trace is alive or dead does NOT matter. It would be a violation of the restriction either way as Congress has provided for specific exemptions in the restriction and the fact that a possessor or purchaser is deceased is not one of the specific exemptions.

- The GCA disclosure restriction does not apply to information not required to be maintained by an FFL. For example, ammunition and accessory purchases.

**ADMINISTATION AND EXECUTIVE ACTION**

- ATF is not authorized to comment on pending legislation, legislative proposals, or the possibility of Executive action. Those functions are reserved to the Department of Justice.

**BINARY EXPLOSIVES**

- ATF does not regulate the sale and distribution of binary component chemicals (usually an oxidizer like ammonium nitrate and a fuel like aluminum or another metal) even when sold together in binary "kits." However, when the binary components are combined, the resulting mixture is an explosive material subject to the regulatory requirements, as mixing binary components together constitutes manufacturing explosives.

- Persons manufacturing explosives for their own personal, non-business use only (e.g., personal target practice) are not required to have a federal explosives license or permit. However, individuals or companies must obtain a federal explosives manufacturing license if they intend to engage in the business of manufacturing explosives for sale or distribution, or for their own business use. www.atf.gov/explosives/binary-explosives