**To:** PGA - Legislative Affairs[PGA-LegislativeAffairs@atf.gov]
**Sent:** Fri 10/6/2017 4:16:44 PM
**Subject:** Timeline Binder OCT 2017.pdf
Timeline Binder OCT 2017.pdf

Attached is a binder with information, mainly ATF classification letters, gathered from various internet websites pertaining to the evaluation of devices being classified as machineguns, or not. Although the devices mentioned in last two internet articles are not similar to the bump stock device, they have information about how ATF classified the two (shoestring and autoglove). I will upload this to the L drive.

Melissa

**To:** PGA - Legislative Affairs[PGA-LegislativeAffairs@atf.gov]
**From:** Garcia, Melissa M.
**Sent:** Fri 10/6/2017 4:20:10 PM
**Subject:** Timeline Binder OCT 2017.pdf
Timeline Binder OCT 2017.pdf

Attached is a binder with information, mainly ATF classification letters and Earl's bump stock history, gathered from various internet websites pertaining to the evaluation of devices being classified as machineguns, or not. Although the devices mentioned in last two internet articles are not similar to a bump stock device, they have information about how ATF classified the two (shoestring and autoglove). I will upload this to the L drive.

Melissa

| | DATE | RULING/FFL/ INDIVIDUAL | SUBJECT | DETERMINATION | ATF official signature |
|---|---|---|---|---|---|
| 1. | July 28, 2003 | AKINS, | Classification of device intended to facilitate rapid semiautomatic fire 3311/2002-404 | NOT a machinegun | NIXON, Sterling |
| 2. | October 20, 2003 | AKINS, | Request of prototype | | NIXON, Sterling |
| 3. | November 17, 2003 | BOWERS, | Recoiling metal stock assembly | NOT a machinegun | NIXON, Sterling |
| 4. | January 29, 2004 | BOWERS, | Clarification request regarding 3311/2004-096 | NOT a machinegun | NIXON, Sterling |
| 5. | October 13, 2006 | LEE, | Legality of bump fire | | NIXON, Sterling |
| 6. | November 22, 2006 | BOWERS | Akins device reclassification | MACHINEGUN | VASQUEZ, Richard |
| 7. | December 16, 2006 | **ATF Ruling 2006-2** | Classification of Devices Exclusively Designed to Increase the Rate of Fire of a Semiautomatic Firearm | | |
| 8. | September 24, 2007 | HALBROOK, | Reconsideration of Ruling 2006-2 | No change to ruling | RADEN, Lewis |
| 9. | June 18, 2008 | Foeller, | Metal type shoulder stock | NOT a machinegun | SPENCER, John |
| 10. | June 26, 2008 | JOHNSON, | Akins type device WITHOUT spring | NOT a machinegun | SPENCER, John |
| 11. | June 7, 2010 | COMPTON, | Bump fire AR-15 type rifle; "bump stock" | NOT a machinegun | SPENCER, John |
| 12. | March 9, 2011 | Stefan | Device to facilitate "bump firing" a firearm | | |
| 13. | November 23, 2011 | SAVAGE, | Evaluation of "ASFS Stock" and magazine | MACHINEGUN | SPENCER, John |
| 14. | April 2, 2012 | SMITH | Evaluation of stock | NOT a machinegun | SPENCER, John |
| 15. | July 9, 2012 | McELWANEY, | Evaluation of submitted "rapid fire stock" | NOT a machinegun | SPENCER, John |
| 16. | July 13, 2012 | VESLIGAJ | Evaluation of submitted "bump fire" type stock | NOT a machinegun | SPENCER, John |
| 17. | February 11, 2013 | FOSTER, | Evaluation of submitted "bump fire" type stock | NOT a machinegun | SPENCER, John |
| 18. | May 1, 2013 | ERSKINE | Evaluation of submitted "bump fire" type stock | NOT a machinegun | GRIFFITH, Earl |
| 19. | April 10, 2014 | LINDSAY, | | | GRIFFITH, Earl |
| 20. | September 14, 2015 | RUBLE, | Evaluation of 3D prototype rifle stock | NOT a machinegun | KINGERY, Max |
| 21. | September 23, 2016 | BAIR | Classification of bump fire assistance device | | |
| 22. | April 6, 2017 | WOLFF, | Evaluation of Bump fire stock | NOT a machinegun | CURTIS, Michael |

| | | | | | |
|---|---|---|---|---|---|
| 23. | July 13, 2012 | The Honorable William M. Thornberry | ATF Congressional | Bump fire | ALLEN, Joe |
| 24. | 2004/2007 | BLAKELY, [redacted] | Shoestring to increase rate of fire | NOT a machinegun | VASQUEZ, Richard |
| 25. | September 16, 2017 | Autoglove USA, LLC | Autoglove | MACHINEGUN | |



DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
WASHINGTON, DC 20226

JUL 28 [illegible]

903050:RLB
3311/2002-404

Akins

Dear Mr. Akins:

This is in response to your letter dated March 31, 2002, to the Bureau of Alcohol, Tobacco and Firearms (ATF). In your letter you ask about the classification of a device intended to facilitate rapid semiautomatic fire in certain firearms.

As defined in Title 26, United States Code (U.S.C.), Chapter 53, §5845(b), of the National Firearms Act (NFA), the term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

In addition to your letter of request, you have provided certain patent drawings (patent number 6,101,918) along with supporting text for our review. The information you supplied illustrates an accessory firearm stock that is designed and intended to accelerate the rate of fire on certain semiautomatic firearms. The device depicted consists of a modified stock assembly with a cavity or depression at the rear of the unit where it would normally meet the rear portion of the firearm receiver. This cavity permits the entire firearm (receiver and all its firing components) to recoil a short distance within the

[redacted] Akins

stock, when fired. As the firearm moves rearward in the modified stock, a spring located within the modified stock is compressed. Energy from this spring subsequently drives the firearm forward and back into its normal firing position. After the shooter initially activates the trigger, the shooter's finger is held in a fixed position by a stop screw device embedded into the stock that does not move during the firing process. The effect of this is that the trigger mechanism moves rearward and disengages from the shooter's finger as the firearm recoils in the modified stock. After the firearm recoils a sufficient distance, the recoil spring located within the stock drives the firearm forward and the trigger again makes contact with the shooter's stationary finger. This action trips the firearm's trigger and begins the firing cycle once more.

ATF has previously examined a similar device and determined that it failed to function as intended by design. Since this office has not had the opportunity to examine this specific device, it is suggested that a sample be submitted for classification. Upon completion of our examination you will be provided with a letter of classification and the sample will be returned. However, if the submitted sample is found to be a machinegun as defined in Federal law, it cannot be returned to you.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

OCT 20 2003

903050:RLB
3311/2002-404

Akins

Dear Mr. Akins:

This is in response to your letter dated March 31, 2002, to the Bureau of Alcohol, Tobacco and Firearms (ATF). In your letter you ask about the classification of a device intended to facilitate rapid semiautomatic fire in certain firearms.

As defined in Title 26, United States Code (U.S.C.), Chapter 53, § 5845(b), of the National Firearms Act (NFA), the term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part or combination of parts designed and intended solely and exclusively for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

In addition to your letter of request, you have provided certain patent drawings (patent number 6,101,918), along with supporting text, for our review. The information you supplied illustrates an accessory firearm stock that is designed and intended to accelerate the rate of fire on certain semiautomatic firearms. The device depicted consists of a modified stock assembly with a cavity or depression at the rear of the unit where it would normally meet the rear portion of the firearm receiver. This cavity permits the entire firearm (receiver and all its firing components) to recoil a short distance within the stock, when fired.

[redacted] Akins

As the firearm moves rearward in the modified stock, a spring located within the modified stock is compressed. Energy from this spring subsequently drives the firearm forward and back into its normal firing position.

In addition, after the shooter initially activates the trigger, the shooter's finger is held in a fixed position by a stop screw device embedded into the stock that does not move during the firing process. As a result, the trigger mechanism moves rearward and disengages from the shooter's finger as the firearm recoils in the modified stock. After the firearm recoils a sufficient distance, the recoil spring located within the stock drives the firearm forward, and the trigger again makes contact with the shooter's stationary finger. This action trips the firearm's trigger and begins the firing cycle once more.

ATF has previously examined a similar device and determined that it failed to function as intended by design. Since this office has not had the opportunity to examine this specific device, it is suggested that a sample be submitted for classification. Upon completion of our examination, you will be provided with a letter of classification, and the sample will be returned. However, if the submitted sample is found to be a *machinegun* as defined in Federal law, it cannot be returned to you.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch



DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

NOV 17 2003

903050:RDC
3311/2004-096

Bowers

Dear Mr. Bowers:

This refers to your recoiling metal stock assembly, designed for use on an SKS type semiautomatic rifle, that was received by the Firearms Technology Branch, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), on August 21, 2003 for the purposes of examination and classification.

Our evaluation indicates that the submitted sample stock assembly measures approximately 36 inches long and approximately 9-7/8 inches at its widest point. It is marked "BOWERS", "CORNELIUS OR", and "AA1". The following is a list of its physical characteristics:

- rectangular channel, approximately 22-5/16 inches long;
- barrel mounting block/spring actuated recoiling mechanism affixed to the forward end of the rectangular channel;
- access cutout in the bottom of the rectangular channel for the trigger group and magazine;
- two adjustable screws affixed to the underside of the rectangular channel; and
- tubular pistol grip/shoulder stock assembly welded to the underside of the rectangular channel.

The proposed theory of operation of this stock involves the application of the movement of the counter recoiling rifle to initiate a rapid succession of semiautomatic fire. The shooter places his trigger finger behind the two adjustable screws and forward of the weapon's trigger. After the weapon is initially fired and the action is moved to the rear (by the recoiling mechanism), the subsequent forward movement of the action is halted

[redacted] Bowers

by the shooter's trigger finger being held against the adjustable screws. The trigger is then depressed, and a second firing of the weapon commences. The movements of the action within the stock assembly are used to consecutively fire the weapon in lieu of the traditional method of manually pulling the trigger.

The action of a semiautomatic SKS-type 7.62x39mm rifle from our firearms reference collection was placed within the submitted stock. The weapon was then test fired. Both of the adjustable screws fractured, breaking away from the underside of the stock. These fractures occurred on the second test firing. The weapon did not fire more than one shot by a single function of the trigger.

The National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term "machinegun" to include the following:

…any weapon that shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. This term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

Our examination has determined that the submitted stock assembly does not constitute a machinegun as defined in the NFA. It is not a part or parts designed and intended for use in converting a weapon into a machinegun.

We thank you for your submitted assembly and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

Exhibit E Page 2 of 2



Bureau of Alcohol, Tobacco, Firearms and Explosives

JAN 29 2004

903050:RDC
3311/2004-308

www.atf.gov

Bowers

Dear Mr. Bowers:

This refers to your letter of January 21, 2004, to the Firearms Technology Branch, ATF, in which you request clarification of our previous correspondence (3311/2004-096) regarding the manufacture of a recoiling metal stock assembly that is designed for use on an SKS-type semiautomatic rifle.

As noted previously, the proposed theory of operation of this stock involves the application of the movement of the counter recoiling rifle to initiate a rapid succession of semiautomatic fire. Our examination and subsequent classification revealed that the stock did not constitute a "machinegun" as that term is defined in the National Firearms Act (NFA), 26 U.S.C. Chapter 53.

As indicated, during the course of our examination and testing of the item (SKS barreled action installed into the submitted stock), two set-screws dislodged from the frame. The weapon did not fire more than one shot by a single function of the trigger at any point throughout the testing.

Our classification of the stock assembly was rendered despite the fact that the screws dislodged from the frame. The theory of operation was clear even though the rifle/stock assembly did not perform as intended.

In conclusion, your prototype shoulder stock assembly does not constitute a "machinegun" as defined in the NFA. This evaluation is valid *provided that when the*

[redacted] Bowers

stock is assembled with an otherwise unmodified SKS semiautomatic rifle, the rifle does not discharge more than one shot by a single function of the trigger.

We trust the foregoing has been responsive to your follow-up inquiry.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch



U.S. Department of Justice

Bureau of Alcohol, Tobacco, Firearms and Explosives

---

Martinsburg, WV 25401
www.atf.gov

903050:MSK
3311/2006-1085

OCT 19 2006

Mr. Lee

Dear Mr. Lee:

This refers to your correspondence dated September 5, 2006, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Office of Public and Governmental Affairs, in which you ask about the legality of "bump-firing" a firearm and installing aftermarket parts enabling a firearm to more easily "bump-fire." Your letter was forwarded to the ATF Firearms Technology Branch (FTB), Martinsburg, West Virginia, for reply.

For your information, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines a "machinegun" as follows:

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

The term "bump-fire" is a vernacular used in the firearms culture and is not defined in either the Gun Control Act of 1968 or the NFA. For present purposes, FTB will regard the term as meaning rapid manual trigger manipulation to simulate automatic fire. As long as you must consciously pull the trigger for each shot of the "bump-fire" operation, you are simply firing a semiautomatic weapon in a rapid manner and are not violating any Federal firearms laws or regulations.

Regarding the installation of various aftermarket parts; modifying fire-control components; installing Tac, Hellfire, or Hellstorm triggers; or attaching rubber bands to triggers to facilitate easier "bump-fire" operations, you should be aware that any modifications which permit a weapon to fire automatically more than one shot with a single function of the trigger could result in that weapon being defined as a "machinegun" as noted in 5845(b). Possession of an unregistered machinegun is a violation of Federal law.

We thank you for your inquiry and trust that the foregoing has been responsive to your request for information.

Sincerely yours,

for Sterling Nixon
Chief, Firearms Technology Branch

internet find

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

Martinsburg, WV 25401
www.atf.gov

903050:MRC
3311/2006-1060

NOV 22 2006

**BY HAND DELIVERY**

[REDACTED] Bowers
President
Akins Group, Inc.
[REDACTED]

Dear Mr. Bowers:

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) recently received a request from an individual to examine a device referred to as an "Akins Accelerator." Because your company is manufacturing and distributing the device, we are contacting you to advise you of the results of our examination and classification.

The National Firearms Act (NFA), Title 26 United States Code (U.S.C.) Chapter 53, defines the term "firearm" to include a machinegun. Section 5845(b) of the NFA defines the term "machinegun" as follows:

> *...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

Machineguns are also regulated under the Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44, which defines the term in the same way as in the NFA. 18 U.S.C. § 921(a)(23). Pursuant to 18 U.S.C. § 922(o), machineguns manufactured on or after May 19, 1986, may only be manufactured for and distributed to Federal, State, and local government agencies for official use.

The Firearms Technology Branch (FTB) examination of the submitted item indicates that the Akins Accelerator is an accessory that is designed and intended to accelerate the rate of fire for Ruger 10/22 semiautomatic firearms. The Akins Accelerator device, which is patented, consists of the following metal block components (also see enclosed photos):

13.

[REDACTED] Bowers

- Block 1: A metal block that replaces the original manufacturer's V-Block of the 10/22 rifle. The replacement block has two rods attached that are approximately ¼ inch in diameter and approximately 6 inches in length.
- Block 2: A metal block that is approximately 3 inches long, 1-3/8 inches wide, and ¾ of an inch high that has been machined to allow the two guide rods to pass through. Block 2 serves as a support for the guide rods and as an attachment to the stock.

As received, the Akins Accelerator utilizes the following parts and features to facilitate assembly:

- Assembly of Block 1 to Block 2: These blocks are assembled using ¼ inch rods, metal washers, rubber and metal bushings, two collars with set screws, one coiled spring, C-clamps, and a split ring.
- Apertures for Attachment of Stock: Block 2 is drilled and tapped for two 10-24 NC screws. These threaded holes allow the attachment of the Akins device with Ruger 10/22 barreled receiver to the composite stock that is a component part of the Akins device.

The composite stock is designed for a Ruger 10/22 barrel and receiver. This stock permits the entire firearm (receiver and all its firing components) to recoil a short distance within the stock when fired. Rearward pressure on the trigger causes the firearm to discharge, and as the firearm moves rearward in the composite stock, the shooter's trigger finger contacts the stock. The trigger mechanically resets, and the accelerator, which has a coiled spring located forward of the firearm receiver, is compressed. Energy from this accelerator spring subsequently drives the firearm forward into its normal firing position and, in turn, causes the trigger to contact the shooter's trigger finger, so long as the shooter maintains finger pressure against the stock, making the weapon fire again. The Akins device assembled with a Ruger 10/22 is advertised to fire approximately 650 rounds per minute.

For testing purposes, FTB personnel installed a semiautomatic Ruger 10/22 rifle from the National Firearms Collection into the stock, with the Akins device attached. Live-fire testing of the Akins Accelerator demonstrated that a single pull of the trigger initiates an automatic firing cycle that continues until the finger is released, the weapon malfunctions, or the ammunition supply is exhausted.

In order to be regulated as a "machinegun" under Section 5845(b), conversion parts must be designed and intended to convert a weapon into a machinegun, i.e., a weapon that shoots automatically more than one shot, without manual reloading, by a **single function of the trigger**. Legislative history for the National Firearms Act indicates that the drafters equated "single function of the trigger" with "single pull of the trigger." National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066, 73rd Cong., at 40 (1934). Accordingly, it is the position of this agency that conversion parts that are designed and intended to convert a weapon into a machinegun, that is, one that will

14

Bowers

shoot more than one shot, without manual reloading, by a single pull of the trigger, are regulated as machineguns under the National Firearms Act and the Gun Control Act.

We note that by letters dated November 17, 2003, and January 29, 2004, we previously advised you that we were unable to test-fire a prototype of the Akins device that you sent in for examination. However, both letters state that the theory of operation is clear, and because the device is not a part or parts designed and intended for use in converting a weapon into a machinegun, it is not a machinegun as defined under the National Firearms Act. The previous classification was based on a prototype that fractured when this office attempted to test fire it. Nonetheless, the theory of operation of the prototype and the Akins Accelerator is the same. To the extent the determination in this letter is inconsistent with the letters dated November 17, 2003, and January 29, 2004, they are hereby overruled.

Manufacture and distribution of the Akins Accelerator device must comply with all provisions of the NFA and the GCA. Accordingly, any devices you currently possess must be registered in accordance with 26 U.S.C. § 5822 and regulations in Part 27 Code of Federal Regulations (C.F.R). § 479.103. If you do not wish to register the devices, they should immediately be abandoned to the nearest ATF Office. You may contact the Portland field office at (503) 331-7850 to arrange for abandonment of the weapons. Pursuant to 18 U.S.C. § 922(o), the devices may only be manufactured for and distributed to Federal, State, and local law enforcement agencies. In addition, the devices must be marked in accordance with 18 U.S.C. § 923(i), 26 U.S.C. § 5842, 27 C.F.R. § 478.92, and 27 C.F.R. § 479.102. If you have questions about any of these provisions of law, please contact Acting Assistant Chief Cherie A. Knoblock in the Firearms Programs Division at (202) 927-7770.

Sincerely yours,

Richard Vasquez
Assistant Chief, Firearms Technology Branch

cc: SAC, Seattle Field Division
DIO, Seattle Field Division
Division Counsel, Seattle
Assistant Chief Counsel, San Francisco

Enclosures

15

**18 U.S.C. 922(o): Transfer or possession of machinegun**
**26 U.S.C. 5845(b): Definition of machinegun**
**18 U.S.C. 921(a)(23): Definition of machinegun**

*The definition of machinegun in the National Firearms Act and the Gun Control Act includes a part or parts that are designed and intended for use in converting a weapon into a machinegun. This language includes a device that, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted.*

**ATF Rul. 2006-2**

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has been asked by several members of the firearms industry to classify devices that are exclusively designed to increase the rate of fire of a semiautomatic firearm. These devices, when attached to a firearm, result in the firearm discharging more than one shot with a single function of the trigger. ATF has been asked whether these devices fall within the definition of machinegun under the National Firearms Act (NFA) and Gun Control Act of 1968 (GCA). As explained herein, these devices, once activated by a single pull of the trigger, initiate an automatic firing cycle which continues until either the finger is released or the ammunition supply is exhausted. Accordingly, these devices are properly classified as a part "*designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun*" and therefore machineguns under the NFA and GCA.

The National Firearms Act (NFA), 26 U.S.C. Chapter 53, defines the term "firearm" to include a machinegun. Section 5845(b) of the NFA defines "machinegun" as "*any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*" The Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44, defines machinegun identically to the NFA. 18 U.S.C. 921(a)(23). Pursuant to 18 U.S.C. 922(o), machineguns manufactured on or after May 19, 1986, may only be

transferred to or possessed by Federal, State, and local government agencies for official use.

ATF has examined several firearms accessory devices that are designed and intended to accelerate the rate of fire for semiautomatic firearms. One such device consists of the following components: two metal blocks; the first block replaces the original manufacturer's V-Block of a Ruger 10/22 rifle and has attached two rods approximately ¼ inch in diameter and approximately 6 inches in length; the second block, approximately 3 inches long, 1 ⅜ inches wide, and ¾ inch high, has been machined to allow the two guide rods of the first block to pass through. The second block supports the guide rods and attaches to the stock. Using ¼ inch rods, metal washers, rubber and metal bushings, two collars with set screws, one coiled spring, C-clamps, and a split ring, the two blocks are assembled together with the composite stock. As attached to the firearm, the device permits the entire firearm (receiver and all its firing components) to recoil a short distance within the stock when fired. A shooter pulls the trigger which causes the firearm to discharge. As the firearm moves rearward in the composite stock, the shooter's trigger finger contacts the stock. The trigger mechanically resets, and the device, which has a coiled spring located forward of the firearm receiver, is compressed. Energy from this spring subsequently drives the firearm forward into its normal firing position and, in turn, causes the trigger to contact the shooter's trigger finger. Provided the shooter maintains finger pressure against the stock, the weapon will fire repeatedly until the ammunition is exhausted or the finger is removed. The assembled device is advertised to fire approximately 650 rounds per minute. Live-fire testing of this device demonstrated that a single pull of the trigger initiates an automatic firing cycle which continues until the finger is released or the ammunition supply is exhausted.

As noted above, a part or parts designed and intended to convert a weapon into a machinegun, *i.e.*, a weapon that will shoot automatically more than one shot, without manual reloading, by a single function of the trigger, is a machinegun under the NFA and GCA. ATF has determined that the device constitutes a machinegun under the NFA and GCA. This determination is consistent with the legislative history of the National Firearms Act in which the drafters equated "single function of the trigger" with "single pull of the trigger." *See, e.g., National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066*, 73rd Cong., at 40 (1934). Accordingly, conversion parts that, when installed in a semiautomatic rifle, result in a weapon that shoots more than one shot, without manual reloading, by a single pull of the trigger, are a machinegun as defined in the National Firearms Act and the Gun Control Act.

*Held*, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger 10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches in length; a second block, approximately 3 inches long, 1 ⅜ inches wide, and ¾ inch high, machined to allow the two guide rods of the first block to pass through; the second block supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the two blocks assembled together with the

composite stock) that is designed to attach to a firearm and, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, is a machinegun under the National Firearms Act, 26 U.S.C. 5845(b), and the Gun Control Act, 18 U.S.C. 921(a)(23).

*Held further*, manufacture and distribution of any device described in this ruling must comply with all provisions of the NFA and the GCA, including 18 U.S.C. 922(o).

To the extent that previous ATF rulings are inconsistent with this determination, they are hereby overruled.

Date approved: December 13, 2006

Michael J. Sullivan
Director



U.S. Department of Justice

Bureau of Alcohol, Tobacco, Firearms and Explosives

Assistant Director

Washington, DC 20226

24 SEP 2007

[redacted] Halbrook
Attorney at Law
[redacted]

Dear Mr. Halbrook:

This response is in reference to your request for reconsideration of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Ruling 2006-2 issued by the Director on December 13, 2006. As you know, this ruling classified a device called the Akins Accelerator as a machinegun. The ruling explains that the Akins device is designed to attach to a firearm and when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted. ATF classified the device as a machinegun under the National Firearms Act and the Gun Control Act. Under the law, machineguns manufactured on or after May 19, 1986, may only be transferred to or possessed by Federal, State, and local Government agencies for official use.

We have considered your arguments for reconsideration but have determined that the device should remain classified as a machinegun for the reasons stated in the ruling. Should you or your client have any further questions regarding this decision, please do not hesitate to contact us.

Sincerely yours,

Lewis P. Raden
Assistant Director
(Enforcement Programs and Services)

Exhibit K page 1 of 1

'12350

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

NOT A m/fun

903050(MRC)
3311/2008-371

Martinsburg, West Virginia 25405
www.atf.gov

JUN 1 8 2008

Foeller II

Dear Mr. Foeller:

This is in reference to your submitted item, as well as accompanying correspondence, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB). This item, consisting of a metal type shoulder stock, was submitted with a request for classification under the Gun Control Act (GCA) and National Firearms Act (NFA).

As background information, the NFA, 26 U.S.C. Section 5845(b), defines "**machinegun**" as—

"*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, **any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun,** and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*"

The device submitted for evaluation consists of the following:

- Two sections of square metal tubing, the exterior tube measuring approximately 10 x 1-1/2 x 1-1/2 inches. Additionally, a flat piece of metal similar in shape to a butt plate is welded to the rear of the exterior tube.
- An interior tube measuring approximately 12-9/16 x 1-1/4 x 1-1/4 inches.
- A flat piece of metal measuring 4-3/4 x 1-3/8 x 3/16 inches attached by means of welding to the bottom and located on the front of the exterior tubing.
- A cylindrically shaped section of pipe that acts as pistol grip and is attached to the previously described flat piece of metal by means of welding. It measures approximately 4-1/8 inches in length and 1-5/16 inches in diameter.
- A support bar attached to the pistol grip and butt plate by means of welding. It measures approximately 11-1/4 x 13/16 x 3/8 inches.
- Interior tubing that has been drilled and tapped for two oval head screws which are located on the left and right side. These screws are used to stop the rearward movement after a short distance of travel. Additionally, two holes have been drilled and tapped into the top of the interior tube which allow attachment of the device to an AK-type rifle.

-2-

███████ Foeller II

- An exterior-tube slot (1-3/16 inches) milled on the bottom, approximately 4-3/16 inches from the front of the tube. The interior tubing has a hole drilled and tapped to accept an oval head screw. This screw supports the two previously mentioned stop screws on the interior tubing. It also stops the forward travel of the interior tubing after a short distance of travel.

To install this shoulder-stock device on an AK-type rifle, the shoulder stock and independent pistol grip has to be removed. Next, the front of the interior tube has to be inserted into the interior cavity of the receiver of the AK-type rifle, and the attachment screws installed.

The FTB live-fire testing of the submitted device indicates that if, as a shot is fired, an *intermediate* amount of pressure is applied to the fore-end with the support hand, the shoulder stock device will recoil rearward far enough to allow the trigger to mechanically reset. Continued intermediate pressure applied to the fore-end will then push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the firearm forward to fire each shot, each shot being fired by a single function of the trigger. Further, every subsequent shot depends on the shooter applying the appropriate amount of forward pressure to the fore-end and timing it to contact the trigger finger on the firing hand.

Since your device is incapable of initiating an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

Please note that this classification is based on the item as submitted. Any changes to its design features or characteristics **will void** this classification. In addition, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described will result in the manufacture of a machinegun as defined in the NFA, 26 U.S.C. 5845(b).

Please provide our Branch with a FedEx account number so that we may return this item to you.

We thank you for your inquiry and trust the foregoing has been responsive to your request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch



72350 – JUNE 18, 2008 – Foeller, [redacted] – Bump Fire Stock – NOT A MACHINEGUN.

2008 - 3771
72350

AR000588



2008-371

72350

AR000589



U.S. Department of Justice

Bureau of Alcohol, Tobacco, Firearms and Explosives

Martinsburg, West Virginia 25405
www.atf.gov

903050:AG
3311/2007-812

JUN 26 2008

Johnson

Dear Mr. Johnson:

This is in reference to your submitted item, as well as accompanying correspondence, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB). This item, consisting of a Ruger 10/22 rifle and stock which you have modified to incorporate what you refer to as an Akins Accelerator type device of your own manufacture, was submitted with a request for classification under the Gun Control Act (GCA) and National Firearms Act (NFA). This submission was sent in response to our earlier reply to your initial correspondence (see FTB #3311/2007-383).

As you may be aware, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term **"machinegun"** as follows:

"*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*"

Further, **ATF Ruling 2006-2** describes a device that is designed and intended to accelerate the rate of fire of a semiautomatic weapon and classifies it as follows:

*Held, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger 10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches in length; a second block, approximately 3 inches long, 1 ⅞ inches wide, and ¾ inch high, machined to allow the two guide rods of the first block to pass through; the second block supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the*

████████ Johnson

*two blocks assembled together with the composite stock) that is designed to attach to a firearm
and, when activated by a single pull of the trigger, initiates an automatic firing cycle that
continues until either the finger is released or the ammunition supply is exhausted, is a
machinegun under the NFA, 26 U.S.C. 5845(b), and the GCA, 18 U.S.C. 921(a)(23).*

The submitted device (also see enclosed photos, pages 4 and 5) incorporates the following
features:

- A metal block that replaces the original manufacturer's V-Block from the 10/22 rifle. The
  replacement block has two rods attached that are approximately ¼ inch in diameter and
  approximately 6 inches in length.
- A second metal block which has been machined to allow the two guide rods to pass
  through. This component serves as a support for the guide rods and as an attachment to
  the modified stock.
- A third rod, threaded into the outside rear of the 10/22 receiver, rides within a bushing
  inletted into the tang area of the stock immediately behind the receiver.
- Two external finger stops mounted to the stock, adjacent to the rifle's trigger guard,
  which limit the rearward travel of the shooter's trigger finger.
- The device does not incorporate an operating spring like the original Akins Accelerator,
  but has been modified to utilize a thumbscrew which protrudes downward through the
  fore end of the stock, and allows the operator to apply manual forward pressure to the
  device.

The absence of an accelerator spring in the submitted device prevents the device from operating
automatically as described in ATF Ruling 2006-2. Conversely, forward pressure must be applied
to the thumb screw with the support hand, bringing the receiver assembly forward to a point
where the trigger can be pulled by the firing hand. If strong forward pressure is applied to the
thumb screw with the support hand, the rifle can be fired in a conventional semiautomatic
manner since the reciprocation of the receiver assembly is eliminated. If, upon firing, weak
pressure is applied to the thumb screw with the support hand, the receiver assembly will recoil
rearward past the finger stops, requiring that the shooter push the receiver assembly forward
before a subsequent shot can be fired.

The FTB live-fire testing of the submitted device indicates that if, as a shot is fired, an
*intermediate* amount of pressure is applied to the thumb screw with the support hand, the
receiver assembly will recoil rearward far enough to allow the trigger to mechanically reset.
Continued intermediate pressure applied to the thumb screw will then push the receiver assembly
forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a
subsequent shot to be fired. In this manner, the shooter pulls the receiver assembly forward to
fire each shot, each shot being fired by a single function of the trigger.

AR000591

[REDACTED] Johnson

Since your device does not, when activated by a single function of the trigger, initiate an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

Please note that this classification is based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described in ATF Ruling 2006-2 will result in the manufacture of a machinegun as defined in the NFA, 26 U.S.C. 5845(b).

Please provide our Branch with a FedEx account number so that we may return this item to you.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosures

1/4544

U.S. Department of Justice

Bureau of Alcohol, Tobacco, Firearms and Explosives

NOT m/fou

Martinsburg, West Virginia 25405

www.atf.gov

903050:MMK
3311/2010-434

JUN 0 7 2010

Compton

Dear Mr. Compton:

This is in reference to your submission and accompanying letter to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), asking for an evaluation of a replacement shoulder stock for an AR-15 type rifle. Your letter advises that the stock (referenced in this reply as a "bump-stock") is intended to assist persons whose hands have limited mobility to "bump-fire" an AR-15 type rifle. Your submission includes the following: a block to replace the pistol grip while providing retention for the selector stop spring; a hollow shoulder stock intended to be installed over the rear of an AR-15 fitting with a sliding-stock type buffer-tube assembly; and a set of assembly instructions.

The FTB evaluation confirmed that the submitted stock (see enclosed photos) does attach to the rear of an AR-15 type rifle which has been fitted with a sliding shoulder-stock type buffer-tube assembly. The stock has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed. In order to use the installed device, the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand. Accordingly, we find that the "bump-stock" is a firearm part and is not regulated as a firearm under Gun Control Act or the National Firearms Act.

Per your telephoned instructions, we will contact you separately to make return delivery arrangements.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure






AR000594



AR000595



AR000596





U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Correspondence Approval and Clearance**

903050:MMK
3311/2010-434

Compton

Dear Mr. Compton:

This is in reference to your submission and accompanying letter to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), asking for an evaluation of a replacement shoulder stock for an AR-15 type rifle. Your letter advises that the stock (referenced in this reply as a "bump-stock") is intended to assist persons whose hands have limited mobility to "bump-fire" an AR-15 type rifle. Your submission includes the following: a block to replace the pistol grip while providing retention for the selector stop spring; a hollow shoulder stock intended to be installed over the rear of an AR-15 fitting with a sliding-stock type buffer-tube assembly; and a set of assembly instructions.

The FTB evaluation confirmed that the submitted stock (see enclosed photos) does attach to the rear of an AR-15 type rifle which has been fitted with a sliding shoulder-stock type buffer-tube assembly. The stock has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed. In order to use the installed device, the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand. Accordingly, we find that the "bump-stock" is a firearm part and is not regulated as a firearm under Gun Control Act or the National Firearms Act.

Per your telephoned instructions, we will contact you separately to make return delivery arrangements.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

| Code | Initiator | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|---|
| | 903050 | 903050 | 903050 | 903050 | | | |
| Surname | Kingery | [illegible] | [illegible] | [illegible] | | | |
| Date | 5-12-10 | 5-12-10 | [illegible] | [illegible] | | | |

ATF Form 9310.1A

EVAL.
2616-434-MMK

Compton

RECEIVED

BY: ......... .........

ATTN: Chief John Spencer
BATFE Firearm Technology Brach
244 Needy Road
Martinsburg, WV 25405 USA

To Whom It May Concern:

Included in the box is a rifle stock that I had made for my standard AR-15 rifle. I have included an instruction pamphlet explaining how to install the stock on a standard AR-15 rifle. The stock has a finger rest located on the left side of the pistol grip. There is also a two position switch that locks the stock in place or allows the stock to slide a ½" when bump-firing. I have found that this is much safer than just removing the locking pin on my standard rifle stock, and this also allows me to properly hold the rifle when I am shooting. It also has the added benefit of allowing someone with limited mobility in their fingers the ability to use their off-hand to assist them in firing the rifle. This is an alternative to the standard rifle stock, but I wanted to ensure that it was not violating any Federal laws. If you would please review the rifle stock and inform me of your decision I would greatly appreciate it. You may contact me at the above listed address or via email at:

Sincerely,

Compton

74544 – JUN 7, 2010 – Compton, [redacted] – Bump Fire Stock – NOT A MACHINEGUN

Martinsburg, West Virginia 25405
www.atf.gov

903050:MSK
3111/2011-485

MAR 09 2011

Mr. Stefan [redacted]
[redacted]
Santa Cruz, California [redacted]

Dear Mr. [redacted]

This refers to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Firearms Technology Branch (FTB), in which you asked about the legality of designing an electronic device which would allow a person to "pull the trigger" of a firearm faster. Based on your description of the device, it appears that you are designing a device to facilitate "bump-firing" a firearm.

For your information, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines a "machinegun" as follows:

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

Additionally, we should point out that "bump-fire" is a vernacular expression used in contemporary firearms culture and is not defined in either the Gun Control Act of 1968 or the NFA. For present purposes, FTB will regard the term as meaning <u>rapid manual trigger manipulation to simulate automatic fire</u>. As long as you must consciously pull the trigger for each shot of the "bump-fire" operation, you are simply firing a semiautomatic weapon in a rapid manner and are not violating any Federal firearms laws or regulations.

Regarding the installation of your proposed electronic device as well as various aftermarket parts; modifying fire-control components; installing Tac, Hellfire, or Hellstorm triggers; or attaching rubber bands to triggers to facilitate easier "bump-fire" operations, we caution that any modifications which permit a weapon to fire <u>automatically more than one shot with a single function of the trigger</u> could result in that weapon being defined as a "machinegun" as noted in § 5845(b). Possession of an unregistered machinegun is a violation of Federal law.