*15718*



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Machine Gun

| | |
|---|---|
| Washington, DC 20226 | 903050:MMK |
| www.atf.gov | 3311/2011-624 |

**NOV 2 3 2011**

███ Savage
Historic Arms, LLC
███

Dear Mr. Savage:

This refers to your correspondence to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco and Firearms (ATF), with an accompanying sample "ASFS Stock" and magazine, requesting an evaluation in accordance 18 U.S.C. 921(a)(3) and 26 U.S.C. 5845(a). As explained below, the evaluation of your submitted ASFS Stock (photo enclosed) finds that it is a combination of parts designed and intended to convert a firearm into a machinegun.

The examination conducted by FTB noted that the stock consisted of a large main outer shell, a rear shoulder pad, a right-side dust cover, two vertical grip assemblies, guide-rail mounting blocks, guide rails, and a retractable trigger cross-pin. The main shell and dust cover encase the firearm (a semiautomatic WASR-10 type) and guide-rail mounting blocks. The shell also incorporates an extension which covers the encased firearm's trigger and provides attachment for the retractable trigger cross-pin. The mounting blocks are attached to the interior of the main shell, and the guide rails are attached, connecting the encased firearm to the outer shell at both the rear and near the firearm's midpoint. One vertical grip is attached to the bottom of the main shell at the shell's forward end, and the other vertical grip is attached to the bottom of the forward end of the firearm's barrel. When assembled onto the firearm, the cross pin engages the enclosed WASR-10 trigger, and the forward vertical grip becomes the *trigger* used to initiate the firing sequence.

The firing sequence is initiated by the shooter pushing forward on the forward-most vertical grip while the shooter's other hand maintains control of the device by holding the rearmost vertical grip. The application of forward pressure forced the encased firearm to move forward against the cross pin; the weapon fired, the recoiling energy pushed the encased firearm rearward inside the stock, the trigger reset and the continuous forward pressure of the shooter drove the encased firearm back onto the cross pin so that the weapon again fired. The firing sequence continued until pressure was removed or the ammunition source was exhausted.

During the test firing, when a magazine of five rounds was inserted, the device fired all five rounds automatically without manual reloading by a single function of the trigger. Additionally, after loading a second magazine with two rounds, the device fired automatically when the device was simply tilted forward at an angle.

-2-

███████ Savage

against the cross pin and initiated the firing sequence, causing both rounds to be fired without manual reloading by a single function of the triggering mechanism.

A noted difference between this submission and your previously submitted ALM Stock, which was not classified as a "firearm," is the length of the area shrouding the trigger and the addition of a cross pin designed to engage an encased firearm's trigger. Thus configured, the ASFS Stock is designed to convert the recoiling forces generated from the action of an explosive to maintain a sequence of events which will continue automatically until the trigger is no longer activated or the ammunition is depleted.

As you know the National Firearms Act (NFA), 26 U.S.C. § 5845(a)(6), defines the term "firearm" to include ...*a machinegun*... . Further, § 5845(b) defines a "machinegun" in part as: ...*any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun*.... Since the Historic Arms, ASFS stock was found to convert a semiautomatic firearm to fire automatically, more than one shot without manual reloading by the single function of the trigger, we determined the ASFS stock to be a "machinegun" as defined.

Because your sample is a "machinegun" as defined in the NFA and you are a licensed special occupational tax-payer, you have by close of business the next business day following receipt of this letter to register your device. As soon as FTB has received verification that the submitted ASFS stock is registered, we will return it to you. Since the device is not yet serialized, you must immediately upon its return apply the assigned serial number clearly and conspicuously and in accordance with the size and depth requirements found in 27 CFR 479.102. To preclude the susceptibility to obliteration, alteration, or removal, we recommend you apply the serial number markings to an externally visible portion of the largest single component of the device.

To facilitate return of your submission after registration is complete, please provide FTB with a prepaid shipping label from FedEx, UPS, or other such appropriate carrier.

As always, we remain available for future written inquiries concerning this or other matters.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure



Savage, 2011-624-mmk 75918 m/civr.

AR000605



Savage 75918



AR000607



Savage 75918

AR000608



ʿ*16ʾ*115*

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*NOT M/GUN*

*Martinsburg . West Virginia 25405*          **903050:MRC**
www.atf.gov                                 **3311/2012-196**



Smith

**APR 0 2 2012**

Dear Mr. Smith

This is in reference to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF), Firearms Technology Branch (FTB), requesting FTB to evaluate an
accompanying stock and determine if its design would violate any Federal statutes.

As background information, the National Firearms Act (NFA), 26 U.S.C. Section 5845(b),
defines **"machinegun"** as—

"...*any weapon which shoots, is designed to shoot, or can be readily restored to shoot,
automatically more than one shot, without manual reloading, by a single function of the trigger.
The term shall also include the frame or receiver of any such weapon, any part designed and
intended solely and exclusively, or combination of parts designed and intended, for use in
converting a weapon into a machinegun, and any combination of parts from which a
machinegun can be assembled if such parts are in the possession or under the control of a
person.*"

The FTB evaluation confirmed that you have submitted a plastic shoulder stock designed to
function on an AR-15 type rifle (see enclosed photos). For your stock to function in the manner
intended, it has to be attached to an AR-15 type platform that is assembled with a collapsible-
stock receiver extension. Along with the shoulder stock, you have submitted what you have
identified as a "receiver module." This module is a plastic block approximately 1-5/16 inches
high, about 1-3/8 inches long, and approximately 7/8-inch wide. Additionally, there are two
extensions, one on each side, that are designed to travel in the two slots configured on the
shoulder stock. The receiver module replaces the AR-15 pistol grip.

Further, the submitted custom shoulder stock incorporates a pistol grip. This grip section has a
cavity for the receiver module to move forward and backward. Additionally, two slots have been
cut for the receiver module extensions to travel in. The upper section of the shoulder stock is
designed to encapsulate the collapsible receiver extension. Further, the custom stock is

AR000609

-2-

███████ Smith

designed with a "lock pin." When the handle on the lock pin is facing in the 3- to 9-o'clock positions, the stock is fixed and will not move; and when the handle on the lock pin is facing in the 12- to 6-o'clock positions, the stock is movable.

The FTB live-fire testing of the submitted device indicates that if, as a shot is fired, an *intermediate* amount of pressure is applied to the fore-end with the support hand, the shoulder stock device will recoil sufficiently rearward to allow the trigger to mechanically reset. Continued intermediate pressure applied to the fore-end will then push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the firearm forward to fire each shot, the firing of each shot being accomplished by a single trigger function. Further, each subsequent shot depends on the shooter applying the appropriate amount of forward pressure to the fore-end and timing it to contact the trigger finger on the firing hand, while maintaining constant pressure on the trigger itself.

Since your device is incapable of initiating an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, FTB finds that it is not a machinegun as defined under the NFA, 26 U.S.C. 5845(b), or the Gun Control Act, 18 U.S.C. 921(a)(23).

Please be advised that our findings are based on the item as submitted. Any changes to its design features or characteristics **will void** this classification. Further, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described will result in the manufacture of a machinegun as defined in the NFA, 5845(b).

To facilitate the return of your sample, to include the module, please provide FTB with the appropriate FedEx or similar account information within 60 days of receipt of this letter. If their return is not necessary, please fax FTB at 304-616-4301 with authorization to destroy them on your behalf.

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

-3-

Smith

Custom Alternative Stock for AR-15 type rifle



AR000611

-4-

▮▮▮▮▮ Smith

Custom Stock Installed on AR-15 type Rifle



AR000612



2012-196

Smith,

76715

AR000613



2012-196

Smith,

76715

AR000614



**U.S. Department of Justice**   ⌐16600

Bureau of Alcohol, Tobacco,
Firearms and Explosives

ADT   M/zee

www.atf.gov

903050:AG
3311/2012-081

**JUL 0 9 2012**

McElwaney
Saigatechusa/Ramlake, LLC

Dear Mr. McElwaney:

This is in reference to your recent submission and accompanying letter to the Firearms
Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), asking
for an evaluation of a replacement shoulder stock for a Saiga-12 type shotgun. Your letter
advises that the stock (referenced in this reply as a "Rapid Fire Stock") is intended to assist
persons with limited mobility to "bump-fire" an AK-type weapon (such as the Saiga-12
shotgun). The submitted Saiga-12 shotgun has been fitted with an AR-15 stock adapter, as well
as a modified, AR-15 type, collapsible stock assembly. The modified assembly incorporates a
trigger finger stop **and** allows the shotgun to slide back and forth, independently of the shoulder
stock and pistol grip.

The FTB evaluation confirmed that the submitted stock (see enclosed photos) has no
automatically functioning mechanical parts or springs and performs no automatic mechanical
function when installed. In order to use the installed device, the shooter must apply constant
forward pressure with the non-shooting hand and constant rearward pressure with the shooting
hand. Accordingly, we find that the "Rapid Fire Stock" is a firearm part and is not regulated as a
firearm under Gun Control Act or the National Firearms Act.

Please note that this determination pertains to the Rapid Fire Stock as received and evaluated by
our Branch. Any changes to the design features or physical characteristics of the Rapid Fire
Stock will void this classification. We thank you for your inquiry and trust that the foregoing has
been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

-2-

McElwaney

Submitted item:



AR000616

EVAL.

2012-081-AG

**Rapid Fire Stock**

This device assist persons with limited mobility to bumpfire an AK style weapon.

Consist of a sliding buttstock on tube with a finger stop attached to a sliding bearing plate / pistol grip adapter.

There are no springs or automatic function in this design.

The trigger is activated by the finger for each shot and the user must reset the trigger after each shot.

Thank you for your assistance.

Sincerely

██ McElwaney

Saigatechusa / Ramlake LLC

██████████████

██████████        ▲

RECEIVED
OCT 2 8 2011
BY: F.T.B.

SAIGA-12
W/ attached bumpfire stock

AR000617



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Martinsburg, West Virginia 25405*                903050:AG
*www.atf.gov*                                      3311/2012-081

▮▮▮▮ McElwaney
Saigatechusa/Ramlake, LLC
▮▮▮▮▮▮▮▮▮▮

Dear Mr. McElwaney:

This is in reference to your recent submission and accompanying letter to the Firearms
Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), asking
for an evaluation of a replacement shoulder stock for a Saiga-12 type shotgun. Your letter
advises that the stock (referenced in this reply as a "Rapid Fire Stock") is intended to assist
persons with limited mobility to "bump-fire" an AK-type weapon (such as the Saiga-12
shotgun). The submitted Saiga-12 shotgun has been fitted with an AR-15 stock adapter, as well
as a modified, AR-15 type, collapsible stock assembly. The modified assembly incorporates a
trigger finger stop **and** allows the shotgun to slide back and forth, independently of the shoulder
stock and pistol grip.

*oK*

*?* The FTB evaluation confirmed that the submitted stock (see enclosed photos) has no
automatically functioning mechanical parts or springs and performs no automatic mechanical
function when installed. In order to use the installed device, the shooter must apply constant   *→ or pint*
forward pressure with the non-shooting hand and constant rearward pressure with the shooting   *down ?*
hand. Accordingly, we find that the "Rapid Fire Stock" is a firearm part and is not regulated as a
firearm under Gun Control Act or the National Firearms Act.

Please note that this determination pertains to the Rapid Fire Stock as received and evaluated by
our Branch. Any changes to the design features or physical characteristics of the Rapid Fire
Stock will void this classification. We thank you for your inquiry and trust that the foregoing has
been responsive to your evaluation request.

*Will this fire automatically*
*when pointed down?*
*We now know that this is*
*a possibility and we need to*
*be prepared to address this*

Sincerely yours,

*Counsel*

*11-7-11*

John R. Spencer
Chief, Firearms Technology Bran

Enclosure

76600 – JUL 9, 2012 - McElwaney, ▇ – RAPID FIRE STOCK – Bump Fire Type Stock – NOT A MACHINEGUN



AR000619

'11578



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives



*Martinsburg , West Virginia 25405*    903050: MSK
*www.atf.gov*                          3311/2012-079

**JUL 1 3 2012**

Vesligaj
Phoenix Technology, Ltd.

Dear Mr. Vesligaj:

This is in reference to your sample, as well as accompanying correspondence, which was submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). The sample, consisting of a replacement "bump fire" type stock designed for use with a semiautomatic AK-pattern type rifle, was furnished to FTB with a request for classification under Federal firearms laws. (As received, the left-side wall of this stock was cracked.)

As you know, the National Firearms Act (NFA), **26 U.S.C. § 5845(b)**, defines the term **"machinegun"** as—

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

Further, **ATF Ruling 2006-2** describes a device that is designed and intended to accelerate the rate of fire of a semiautomatic weapon and classifies it as follows:

*Held, a device (consisting of a block replacing the original manufacturer's V-Block of a Ruger 10/22 rifle with two attached rods approximately ¼ inch in diameter and approximately 6 inches in length; a second block, approximately 3 inches long, 1 ½ inches wide, and ¾ inch high, machined to allow the two guide rods of the first block to pass through; the second block supporting the guide rods and attached to the stock; using ¼ inch rods; metal washers; rubber and metal bushings; two collars with set screws; one coiled spring; C-clamps; a split ring; the*

AR000620

-2-

███████ Vesligaj

*two blocks assembled together with the composite stock) that is designed to attach to a firearm and, when activated by a single pull of the trigger, initiates an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, is a machinegun under the NFA, 26 U.S.C. 5845(b), and the ...[Gun Control Act: GCA]... 18 U.S.C. 921(a)(23).*

The submitted device (also see enclosure) incorporates the following features or characteristics:

- A plastic block which is designed to be inserted into the rear section of a stamped AK-type receiver and secures the "burst stock" to the remainder of the weapon utilizing the factory tang of the AKM rifle. This block is attached to a pistol-like assembly which reciprocates within a hollow metal buffer-style tube attached to the rear section of your stock.
- A collapsible AR-15 style shoulder stock.
- An attached pistol grip assembly.
- Two screws used to secure your stock to the AKM rifle.
- The stock's lack of any operating springs, bands, or other devices which would permit automatic firing.

Your stock is designed to allow the AKM-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically as described in ATF Ruling 2006-2. When operated, forward pressure must be applied to the handguard/fore-end of the AKM rifle mounted to your stock with the support hand, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB examination of the submitted device indicates that if, as a shot is fired and a *sufficient* amount of pressure is applied to the handguard/gripping surface with the shooter's support hand, the AKM rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each shot being fired by a single function of the trigger.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23).

-3-

█████  Vesligaj

We caution that our findings are based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described in Ruling 2006-2 will result in the manufacture of a machinegun as defined in the NFA, 26 U.S.C. 5845(b).

Please provide our Branch with a FedEx account number so that we may return this item.

We thank you for your inquiry and trust that the foregoing has been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

⚠ **MAKE SURE WEAPON IS UNLOADED BEFORE STARTING!!**

Remove existing factory stock from AK.

Remove the two top screws from Phoenix replacement stock.

Insert the stock snuggly into back of stamped receiver.

Install wood screw in front of replacement stock first. Ensure it is snug but not tight.

Install 10-24 screw with included allen wrench and tighten securely

Tighten wood screw.

Adjust length of pull to shooter's comfort.



Wood screw
10-24 machine screw.

e stock is ready to be fired in semi-automatic when initially installed. The thumb screw
2hind the pistol grip) is engaged into mounting housing.

bump-fire, unscrew the thumb screw to the stop (it will not fall out). Stock is now
1dy for bump-fire capability.

bump-fire, apply forward pressure to forend with non-shooting hand. Apply
2ssure towards shoulder with shooting hand.



Thumb screw



# Phoenix Technology, Ltd.

RECEIVED
OCT 27 2011
BY: F.T.B.

OCT 2 7 2011
F.T.B.

**ATTN: Chief John Spencer**
**BATFE Firearm Technology Branch**
**244 Needy Road**
**Martinsburg, WV 25405**

October 24, 2011

EVAL.

2012-079- MSK

To Whom It May Concern:

Included in the box is a prototype sample of a bump firing stock we have designed for an AK-47 with an AR-15 type tube and stock (not the original AK stock). Our stock is designed for use on AK-47 models with the stamped receivers. A similar design would accommodate the Ruger Mini 14, the Saiga .308, or other firearms that have gas reloading capabilities.

This particular stock will not accommodate the AR-15 rifle due to the fact that the commercial tube is used to reload/return the bolt back to firing position.

Our prototype stock has a 5-position adjustment on buttstock to allow for different lengths of pull. There is a screw located behind the trigger housing which locks the stock firmly together with the rifle for conventional firing operation. Alternatively, the screw can be unscrewed to allow the stock to become a sliding pistol grip to allow bump fire, with the grip sliding in a ½ inch range. The finger rest can be mounted on either side of the trigger housing to accommodate left or right handed shooters.

In order to bump fire, you need to apply pressure to push forend forward, while your shooting hand (holding pistol grip) is pulling against your shoulder.

Detailed instructions on how to assemble onto an AK-47 are on next page. Please find enclosed shipping label to return stock after your review.

We feel this is a nice functional replacement stock, but want to be sure we are not in violation of any federal laws before we pursue it any further. This is a hand-made sample. We appreciate you time and consideration, and look forward to your response. If you have any questions, you may contact me at the address/phone number below, or e-mail me at                              .

Sincerely,



Vesligaj

210 Progress Drive • P.O. Box 249 • Burgaw, NC 28425
Telephone 910-259-6804 • Fax 910-259-6805

AR000624



AR000625

76598 – JULY 13, 2012 – Vesliagaj, – Bump Fire Stock (for AK) – NOT A MACHINEGUN







**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*1'1418*

*NOT M/n*

*Martinsburg, West Virginia 25405*

*www.atf.gov*

FEB 1 1 2013

903050:WJS
3311/2013-149


Foster
FosTecH Outdoors, LLC

Dear Mr. Foster:

This is in reference to your sample, as well as accompanying correspondence, which was submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB). The sample, consisting of a replacement "bump-fire" type stock (or "Bumpski") designed for use with a semiautomatic AK-pattern type rifle, was furnished to FTB for classification under Federal firearms laws.

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term "**machinegun**" as—

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

The submitted device (see enclosed photos) incorporates the following features or characteristics:

- A non-ferrous metal "upper portion" of the stock, designed for insertion into the rear section of a stamped AK-type receiver and, also, for securing the "Bumpski" to the remainder of the weapon utilizing the factory tang of the AKM rifle.
- "Lower portion" to which this "upper portion" is assembled: The "lower" consists of a pistol-gripped assembly which reciprocates within the "upper portion" of the buttstock.
- Four screws used to secure your stock to the AKM rifle.
- A "selector bar" to prevent linear movement of the non-ferrous "lower portion" of the stock.
- Lack of any operating springs, bands, or other parts which would permit automatic firing.

AR000627

-2-

 Foster

Your stock is designed to allow the AKM-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically. When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AKM rifle mounted to your stock, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB examination of the submitted device indicates that if, as a shot is fired and a *sufficient* amount of pressure is applied to the handguard/gripping surface with the shooter's support hand, the AKM rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each shot being fired by a single function of the trigger.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted. *Any changes to its design features or characteristics will void this classification.* Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a machinegun as defined in the NFA, 5845(b).

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure



Fostech Outdoors "BUMPSKI"
Submitted 11/6/2012

AR000629



AR000630



AR000631



AR000632



77918 – Foster, ▮ – FEB 11, 2013 – "BUMPSKI" - Bump Fire type stock – NOT A MACHINEGUN

AR000633

78025



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,   NOT M/Gun
Firearms and Explosives

*Martinsburg, WV 25405*

www.atf.gov

903050:WJS
3311/78025

May 1, 2013

███████ Erskine
█████████████████████

Dear Mr. Erskine,

This is in reference to your sample, as well as accompanying correspondence, which was submitted in December 2012 to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), for classification under Federal firearms laws. The sample—which you call "the HailStorm"—consists of a replacement "bump-fire" type stock designed for use with a semiautomatic AR-15 type rifle.

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term "machinegun" as—

...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

The submitted device (see enclosed photos) incorporates the following features or characteristics:

•       A plastic, adjustable AR-type buttstock "anchor tube" that is designed to be installed onto the buffer tube of an AR-type firearm and, also, to house the "stabilizer bar."
•       A "stock adjusting pin" to prevent linear movement of the "anchor tube" while it is installed to the buffer tube.

 Erskine                                               Page 2

•       Lack of any operating springs, bands, or other parts which would permit automatic firing.

Your stock is designed to allow the AR-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion.  The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically. When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AR-type rifle mounted to your stock, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand.  If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional, semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTB examination of the submitted device indicates that if as a shot is fired—and a sufficient amount of pressure is applied to the handguard/gripping surface with the shooter's support hand—the AR-type rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger: Re-contacting allows the firing of a subsequent shot.  In this manner, the shooter pulls the receiver assembly forward to fire each shot, each succeeding shot firing with a single trigger function.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted.  Any changes to its design features or characteristics will void this classification.  Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a "machinegun" as defined in the NFA, 5845(b).

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely yours,

Earl Griffith
Chief, Firearms Technology Branch



Hail Storm Stock, Photograph #1

AR000636



Hail Storm Stock, Photograph #2

AR000637

78025 – MAY 1, 2013 – Erskine, ▮ – Bump Fire Stock – NOT A MACHINEGUN



AR000638



**U.S. Department of Justice**

301754

Bureau of Alcohol, Tobacco,
Firearms and Explosives

NOT m/Gun
+NOT Submitted

*Martinsburg, WV 25405*

www.atf.gov

903050:MCP
3311/301754

**APR 1 0 2014**



Lindsay

Lindsay,

This refers to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), which accompanied your submitted sample of a device you describe as a bump-fire adapter. Specifically, you requested an evaluation and classification of this item.

As you may be aware, the amended Gun Control Act of 1968, 18 U.S.C. § 921(a)(3), defines the term "firearm" to include *...any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive...[and] ...the frame or receiver of any such weapon....*

Further, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines "machinegun" as follows:

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

In your correspondence, you have requested ATF to modify one of its own rifles in order to evaluate and classify your submitted device; however, ATF divisions, branches, etc., are constrained from doing so. In order for FTB to classify your device, please submit a properly functioning sample that is already installed on a rifle.

 Lindsay                                                    Page 2

We caution that if the manufacture of this item would result in the assembly of a "machinegun" as defined by the NFA, FTB could neither solicit nor sanction its unlawful production. Also, you should confirm that the manufacture of this device does not violate any State or local laws and ordnances.

In conclusion, if the FTB evaluation were to determine that the submitted sample is a "machinegun" as defined in the NFA, we would be unable to return it unless you are a licensed manufacturer and have paid the special occupational tax ("SOT"). Conversely, if FTB finds that the sample is not a "machinegun" as defined, it would be returned to you as soon as our Branch has received either a FedEx (or alternate carrier) account number to which the return can be billed, or a prepaid return label.

We thank you for your inquiry and trust the foregoing has been responsive.

Sincerely yours,

Earl Griffith
Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives



*Martinsburg, WV 25405*

www.atf.gov

**SEP 1 4 2015**

907020:MRC
3311/303826

 Ruble

Dear Mr. Ruble:

This refers to your recent correspondence and submission of a physical sample to the Bureau of
Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch
(FTISB), Martinsburg, West Virginia. Specifically, you ask FTISB to evaluate your prototype design
and determine its classification under Federal law.

The Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), defines the term "firearm" as follows:
"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted
to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C)
any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an
antique firearm."

Additionally, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines "machinegun" as—

"…any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically
more than one shot, without manual reloading, by a single function of the trigger. The term shall also
include the frame or receiver of any such weapon, any part designed and intended solely and
exclusively, or combination of parts designed and intended, for use in converting a weapon into a
machinegun, and any combination of parts from which a machinegun can be assembled if such parts
are in the possession or under the control of a person."

You have submitted to FTISB a prototype 3D printed 10/22-style rifle stock. This is a follow-up
design from a previous submission (907020:MRC 3311/302558) that FTISB classified as a
machinegun.

Your submission consists of the following components:

- 2 -

███ Ruble

- Rifle stock/Gun support
- Pivot toggle
- Shuttle link
- Shuttle
- Forward actuator

You provided the prototype shown below:



Side view



Top view

AR000642

- 3 -

Ruble

**Assembled with Ruger 10/22 barreled action**



Your prototype is designed in a manner that for firing requires the shooter (if right handed) to grip the forward pistol style grip with their left hand. The right hand will grip the rearward pistol grip requiring that the shooter place his/her trigger finger on the extension incorporated into the grip. The left forefinger will pull the forward actuator rearward causing the 10/22 barreled action to move forward until the Ruger 10/22 trigger contacts the shooters trigger finger and a projectile is expelled from the firearm barrel.

When a shot is fired, an intermediate amount of pressure is applied to the forward actuator with the left hand forefinger, and the barreled action via the shuttle recoils sufficiently rearward to allow the trigger to mechanically reset. Continued intermediate pressure applied to the forward actuator will then pull the receiver assembly forward until the trigger re-contacts the shooter's stationary firing-hand finger, allowing a subsequent shot to be fired. In this manner, the shooter pulls the firearm forward to fire each shot so that the action of firing is accomplished by a single trigger function. Further, each subsequent shot depends on the shooter applying the appropriate amount of forward pressure to the forward actuator and timing it to contact the trigger-finger on the firing hand.

As stated above, the NFA defines machinegun, in relevant part, as "any weapon which shoots...automatically more than one shot, without manual reloading, by a single function of the trigger." ATF has long held that a "single function of the trigger" is a single "pull" or a single "release" of the trigger. Therefore, a firearm that fires a single projectile upon a pull of the trigger and then fires another single projectile upon the release of that trigger would not be classified as a "machinegun" under Federal law.

- 4 -

███ Ruble

Since your device is incapable of initiating an automatic firing cycle that continues until either the finger is released or the ammunition supply is exhausted, FTISB finds that it is not a machinegun as defined under the NFA, 26 U.S.C. § 5845(b), or the Gun Control Act, 18 U.S.C. § 921(a)(23).

Please be advised that our findings are based on the item as submitted. Any changes to its design features or characteristics will void this classification. Further, we caution that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically as described will result in the manufacture of a machinegun as defined in the NFA, § 5845(b).

To facilitate the return of your sample, please provide FTB with the appropriate FedEx or similar account information within 60 days of receipt of this letter. If their return is not necessary, please fax FTB at (304) 616-4300 with authorization to destroy them on your behalf.

We thank you for your inquiry and trust the foregoing has been responsive to your evaluation request.

Sincerely yours,

Max M. Kingery
Acting Chief, Firearms Technology Industry Services Branch



303826, SEPT 14, 2015 - Ruble, █ - Bump Fire Stock – NOT A MACHINEGUN

AR000645



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives



Martinsburg, WV 25402

www.atf.gov

907010.BAH
3311/304581

**SEP 2 3 2015**

Bair

Dear Mr. Bair:

This is in reference to your correspondence, with enclosed samples, to the Bureau of Alcohol,
Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch
(FTISB). In your letter, you asked for a classification of a "Bump Fire Assistance Device" as
depicted in the accompanying photos. Specifically, you requested a determination if the devices
would be regulated by the provisions of the Gun Control Act of 1968 (GCA) or the National
Firearms Act (NFA).

As you may be aware, the amended Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3),
defines the term "firearm" to include: *any weapon (including a starter gun) which will or is
designed to or may be readily converted to expel a projectile by the action of an
explosive ... [and] ...the frame or receiver of any such weapon....*

Also, 27 CFR § 478.11, a regulation implementing the GCA, defines "pistol" as: *...a weapon
originally designed, made, and intended to fire a projectile (bullet) from one or more barrels
when held in one hand, ...*

Also, 18 U.S.C, § 921 (a)(7), defines a "rifle" as: *a weapon designed or redesigned, made or
remade, and intended to be fired from the shoulder and designed or redesigned, made or
remade to use the energy of an explosive to fire only a single projectile through a rifled barrel
for each single pull of the trigger.*

The NFA defines "firearm" to include ... *(5) any other weapon, as defined in subsection (e),
...[and](6)a machinegun.* (See Title 26 U.S.C. § 5845(a)(5) and (6).)

Additionally, the NFA, 26 U.S.C, § 5845(b), defines "machinegun" to include, *Any weapon
which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than
one shot, without manual reloading, by a single function of the trigger."*



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*Martinsburg, WV*

www.atf.gov

**APR 0 6 2017**

304609

NOT IN/COWS

907010:CJT
3311/304609

Wolff

Dear Mr. Wolff:

This refers to your correspondence, and sample AR15-type "Bump Fire Stock" to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), in which you ask for a review of your sample device and if it would be regulated by the provisions of the Gun Control Act of 1968 (GCA) or the National Firearms Act (NFA).

As background to our evaluation, the amended Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), defines the term "firearm" to include *any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive...[and] ...the frame or receiver of any such weapon....*

Further, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines "machinegun" to mean–

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

Your bump fire grip device consists of the following:

One AR-style pistol grip that it attached to and adjustable buttstock by a flat metal bar bent to contour to the buttstock. The pistol grip has two plastic pieces attached by small screws, one is the extension for resting your finger on while firing and the other is a shield to prevent the pistol grip from pinching the grip fingers of the firing hand.

AR000647

-2-

████████ Wolff

Your stock is designed to allow an AR-type semiautomatic rifle mounted to it to reciprocate back and forth in a linear motion. The absence of an accelerator spring or similar component in the submitted device prevents it from operating automatically. When operated, forward pressure must be applied with the support hand to the forward handguard/fore-end of the AR-type rifle mounted to your stock, bringing the receiver assembly forward to a point where the trigger can be pulled by the firing hand. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can be fired in a conventional, semiautomatic manner since the reciprocation of the receiver assembly is eliminated.

The FTISB examination of the submitted device indicates that if as a shot is fired—and a *sufficient* amount of pressure is applied to the handguard/gripping surface with the shooter's support hand—the AR-type rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger: Re-contacting allows the firing of a subsequent shot. In this manner, the shooter pulls the receiver assembly forward to fire each shot, each succeeding shot firing with a single trigger function.

Since your device does not initiate an automatic firing cycle by a single function of the trigger, FTISB finds that it is NOT a machinegun under the NFA, 26 U.S.C. § 5845(b), or the amended GCA, 18 U.S.C. § 921(a)(23).

We caution that our findings are based on the item as submitted. Any changes to its design features or characteristics will void this classification. Moreover, we should point out that the addition of an accelerator spring or any other non-manual source of energy which allows this device to operate automatically will result in the manufacture of a "machinegun" as defined in the NFA, 5845(b).



Submitted device

 Wolff



Your device will be returned to you via your provided UPS shipping label.

We thank you for your inquiry and trust the foregoing is responsive to your request.

Sincerely yours,

Michael R. Curtis
Chief, Firearms Technology Industry Services Branch

304609 – APR 6, 2017 – Wolff, ▮ / Bump Fire Stock – NOT A MACHINEGUN



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Assistant Director*

Washington, DC 20226
www.atf.gov

JUL 1 3 2012

The Honorable William M. Thornberry
Member of Congress
905 South Fillmore Street, Suite 520
Amarillo, Texas 79101

Dear Congressman Thornberry:

This is in response to your letter dated May 14, 2012, to the Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF) on behalf of your constituent, Mr. ████ Janes. Your letter states
that Mr. Janes wishes to know the basis for ATF's classification of a device known as a "bump
fire stock." Additionally, he holds the view that the device causes a weapon to shoot
automatically and thus should be regulated as a machinegun. We apologize for the delay in our
response.

The Gun Control Act (GCA) of 1968, 18 U.S.C. Chapter 44, prohibits the transfer and
possession of any machinegun, with exceptions for law enforcement and the military. The term
"machinegun" is defined in the GCA as in Section 5845(b) of the National Firearms Act (NFA).

Additionally, the NFA, 26 U.S.C. Chapter 53, defines the term "firearm" to include a
"machinegun" and defines the term "machinegun" as: "… any weapon which shoots, is designed
to shoot, or can be readily restored to shoot, automatically more than one shot, without manual
reloading, by a single function of the trigger. The term shall also include the frame or receiver of
any such weapon, any part designed and intended solely and exclusively, or combination of parts
designed and intended, for use in converting a weapon into a machinegun, and any combination
of parts from which a machinegun can be assembled if such parts are in the possession or under
the control of a person."

"Bump fire" is not a specific brand or model name of device, but is a general term encompassing
a method of operating a firearm and a number of devices intended to facilitate this method of
operation. This method of operation allows a user to actuate the trigger of a semiautomatic
firearm at an increased speed, so that the firearm seems to replicate the rate of fire associated
with a machinegun.

-2-

The Honorable William M. Thornberry

As indicated in the statutes above, a machinegun is regulated by both the GCA and the NFA. In order to be a machinegun, a weapon or device must be one of the following: 1) a weapon that shoots automatically, i.e., a weapon that shoots more than one shot without manual reloading by a single function of the trigger; 2) a weapon that is designed to shoot automatically; 3) the frame or receiver of any weapon described in item 1; 4) a part or parts designed to convert a weapon to shoot automatically; or 5) a combination of parts from which a machinegun can be assembled.

"Bump stocks" or other bump firing devices would be regulated as machineguns only if they are a part or parts designed to convert a weapon to shoot automatically. Devices that merely assist the user in increasing their rate of fire would generally not be regulated as machineguns. However, devices that require only a single pull of the trigger to initiate an automatic firing sequence would generally be regulated as machineguns. ATF cannot classify a particular device without obtaining a sample and conducting testing. Samples and requests for classification should be submitted to:

> Bureau of Alcohol, Tobacco, Firearms and Explosives
> Firearms Technology Branch
> 244 Needy Road
> Martinsburg, West Virginia 25401

We hope this information proves helpful in responding to your constituent. Please let me know if we can be of further assistance.

Sincerely yours,

Joe Allen
Acting Assistant Director
Public and Governmental Affairs

AR000652

# In September 2004 the ATF decided that a 14 inch long shoestring was considered a machine gun:



**Here is an official letter stating the facts:**

AR000653







**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives



SEP 3 0 2004

903050:RDC
3311/2004-379

www.atf.gov

Mr. ████ Blakely

Dear Mr. Blakely:

This refers to your letter of February 6, 2004, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), in which you inquired about the legality of a small section of string intended for use as a means for increasing the cycling rate of a semiautomatic rifle.

As you may be aware, the National Firearms Act, 26 U.S.C. § 5845(b), defines "machinegun" to include the following:

...any weapon that shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. This term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person [bolding added].

In 1996, FTB examined and classified a 14-inch long shoestring with a loop at each end. The string was attached to the cocking handle of a semiautomatic rifle and was looped around the trigger and attached to the shooter's finger. The device caused the weapon to fire repeatedly until finger pressure was released from the string. Because this item was designed and intended to convert a semiautomatic rifle into a machinegun, FTB determined that it was a machinegun as defined in 26 U.S.C. 5845(b).

We thank you for your inquiry, regret the delay in response, and trust the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

In 2007 the ATF decided the shoestring alone was not a machine gun.  It was only considered one when added to a semi automatic rifle in order to increase its rate of fire:

AR000655



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, WV  25401   903050:JPV
www.atf.gov                        3311/2007-615
**JUN 25 2007**

Blakely

Dear Mr. Blakely:

On February 6, 2004 you wrote to the Firearms Technology Branch (FTB) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) inquiring about the legality of a small section of string intended for use as a means for increasing the cycling rate of a semiautomatic rifle. We responded on September 30, 2004. In that letter we stated:

> In 1996, FTB examined and classified a 14-inch long shoestring with a loop at each end. The string was attached to the cocking handle of a semiautomatic rifle and was looped around the trigger and attached to the shooter's finger. The device caused the weapon to fire repeatedly until finger pressure was released from the string. Because this item was designed and intended to convert a semiautomatic rifle into a machinegun, FTB determined that it was a **machinegun** as defined in 26 U.S.C. 5845(b). (Emphasis in original).

Upon further review, we have determined that the string by itself is not a machinegun, whether or not there are loops tied on the ends. However, when the string is added to a semiautomatic firearm as you proposed in order to increase the cycling rate of that rifle, the result is a firearm that fires automatically and consequently would be classified as a machinegun. To the extent that prior ATF classification letters are inconsistent with this letter, they are hereby overruled.

We hope that this clarifies our position. Should you have any questions, please do not hesitate to contact us.

Sincerely,

Richard Vasquez
Acting Chief, Firearms Technology Branch

AR000656

**Thank god they reversed their 2004 ruling. It would have been pretty difficult to prosecute the entire shoe wearing population of the United States for constructive possession of a machine gun.** :lol:

The first picture in this post is allegedly a "registered" shoe string, that the owner paid to be able to use legally. That metallic tag apparently has a serial # on it.

## This raises a couple of questions in my mind...

1. Why is the ATF so specific of the type of string used?
2. Why is the ATF so specific with the length of the shoestring?

I wonder what would happen if someone was caught using a 13 inch piece of fishing line? I suppose since it still would increase the rate of fire, it would be deemed a machine gun no matter what type of string or length.

AR000657

# ATF Determines AutoGlove To Be A Machine Gun

785
Shares



Posted 6 days ago in Companies, Daily News, Other Gear & Gadgets, Pistols, Rifles by Pete with 89 Comments
Tags: atf, AutoGlove, machine gun



"Curse your sudden but inevitable betrayal" is what the makers of the AutoGlove must have said last week when they received their rejection letter from the ATF. Even though I was never interested in the device that simulated fully automatic fire, I was impressed by the innovation. And although we all had a feeling this rejection was coming, it does highlight an important point – technology will continue to advance to the point where anyone will be able to manufacture any type of firearm with simple means. Then we will find out that regulating inanimate objects is not a successful method to control criminal actions.

ADVERTISING

Full details below.

## Nope To AutoGlove

On 9/16/2017, we received some disappointing news from the ATF. The ATF tested the AutoGlove and responded with an unfavorable determination. The bottom line is, the ATF determined the AutoGlove may not be used or possessed by individuals and for this reason, we have issued 100% refunds to every person that ordered an AutoGlove.

As of 9/18/2017, refunds were "processed" for 100% of the customers – Customers can expect a refund check to arrive on or about 9/22/2017 (only those customers that paid with a credit card after 8/17/2017 will receive a credit on the credit card within the next 7 business days, everyone else will receive a paper check).

While we respectfully disagree with the ATFs determination, as the AutoGlove was not tested in accordance with our design criteria or provided instructions/limitations, we will NOT appeal the ATFs determination. As we have always stated, it was never our intention to thumb our nose at the ATF or NFA regulations, we were simply trying to develop a device that could work within the existing construct of the laws to create a device that could assist a person with pulling the trigger rapidly, whether it be a paintball gun, nail gun, or firearm. (The AutoGlove had many uses!) We still are still a bit shocked to understand how one can attach a sliding stock or modify a trigger to achieve simulated full automatic rates of fire but a stand-alone glove worn on the shooters hand is somehow considered modifying a firearm.

While our instructions and limitations specifically require the AutoGlove to ONLY be used on firearms that allow for specific clearances between the trigger when the Trigger Assist Device (TAD) is placed inside the trigger guard (in order to allow sufficient space for the actuation of the TAD "without" engaging the trigger, and therefore requiring the individual to make micro trigger pulls as the TAD takes up the slack in the trigger as shown in the instruction video), the AutoGlove was not tested by the ATF with these same restrictions and for this reason, we believe this maybe partially why we received the unfavorable determination. Second, the ATF cited several past interpretations that included key words and phrases that were not defined anywhere in the laws and could easily be misinterpreted if the generic meanings as outlined in the dictionary are used. For example, the ATF cited a letter from 1982 that stated, in part, that if an electric motor is "attached"… (our belief is the glove is not attached to the firearm and the motor is only attached to the glove). The ATF cited a letter from 1988 that states that the ATF previously determined a semiautomatic firearm having an electronic solenoid attached to the trigger… (our belief is that the AutoGlove is not "attached" to the firearm, the TAD is only attached to the glove). The ATF also stated that an electrically powered trigger actuator would fall within the purview of the NFA… A weapon on which a device such as you describe has been affixed… (again, our belief is the the glove is not affixed to the firearm just as a finger is not affixed or attached to the trigger). And the ATF cites section 5845(b), Title 26, USC that states that a machinegun shall also include "any part" "designed and intended solely and exclusively," or combination of parts designed and intended for use in converting a weapon into machinegun [emphasis added](our understanding of this passage is that the AutoGlove is not a "part." A part attaches to something to make it whole. The firearm is never modified and the AutoGlove does

AR000659

not replace any of the manufactures parts on the gun. Although we could not find the definition for gun "part" we do not believe the glove is a "part" and we believe the Glove is designed to be worn, affixed, attached to a persons hand. Furthermore, the AutoGlove is not a part "designed and intended solely and exclusively for converting a weapon into a machinegun. (The AutoGlove works great on semiautomatic paintball guns and nail guns as noted in the patent and therefore was never made "solely" for converting firearms into machineguns. The AutoGlove could be used on a variety of equipment with a trigger such as a firearm, paintball gun, nail gun, or any light equipment with a trigger.

While we are still confused as to how the AutoGlove violates the plain language of the laws cited by the ATF, we are a small company and do not have the resources to appeal the ATFs decision and will cancel the AutoGlove project effective immediately, and will immediately issue full refunds to everyone that placed an order with us.

We would however, ask that the ATF publish definitions of the following terms so someone else does not waste thousands of dollars developing something that appears to meet the "plain language" of the law. In the past few years, more and more regulatory agencies have been writing their laws and policies in plain language to eliminate such confusion. I would respectfully request that the ATF define these words that appear to have different meanings from the dictionary to avoid similar issues in the future. Words such as:

1. Affixed
2. Worn
3. Attached (does a person attach their finger to the trigger?)
4. Part (e.g. gun part)
5. Converting (eg. Converting a Weapon)
6. "Intended solely and exclusively" (The TAD can also be used on paintball guns and nail guns)

This is not the current ATF administrations fault. This language was incorporated into their policy over the past 30-years and I would just ask that the current ATF help better define these words.
We wish to thank all our supporters, and the hundreds of thousands of people that visited our website and watched our videos, but unfortunately we will no longer be able to accept any orders for the AutoGlove. The site will be removed once we issue the refunds early next week and have ensured everyone has received a full refund.

Thank you again to all our supporters , and please support (or continue to support) the NRA and/or their affiliates so we can continue to enjoy our second amendment freedoms long into the future!

AR000660



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

*Martinsburg, WV*
www.atf.gov

**SEP 1 1 2017**                    907010:DLH
                                    3311/307367



AutoGlove USA, LLC

This refers to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives
(ATF), Firearms Technology Industry Services Branch (FTISB), which accompanied your
submitted sample of an "AutoGlove" device. Specifically, you requested an examination and
classification of this sample with regard to the amended Gun Control Act of 1968 (GCA) and the
National Firearms Act (NFA).

As background, the GCA, 18 U.S.C. § 921(a)(23), defines the term **"machinegun"** as…

*"The term "machinegun" has the meaning given such term in section 5845(b) of the National
Firearms Act (26 U.S.C. 5845(b))."*

Further, the NFA, 26 U.S.C. § 5845(a), defines the term **"firearm"** to include *"(6) a
machinegun."*

Additionally, the NFA, 26 U.S.C. § 5845(b), defines **"machinegun"** to mean:

*…any weapon which shoots, is designed to shoot, or can be readily restored to shoot,
automatically more than one shot, without manual reloading, by a single function of the trigger.
The term shall also include the frame or receiver of any such weapon, <u>any part designed and
intended solely and exclusively, or combination of parts designed and intended, for use in
converting a weapon into a machinegun,</u> and any combination of parts from which a
machinegun can be assembled if such parts are in the possession or under the control of a
person.*

AR000661

-2-

The physical characteristics and identity of the submitted sample are provided below:

**Submitted Sample:**



The submitted sample is a right-handed glove containing a "braced" pointer finger with an attached solenoid, and an "activation plunger" located on the middle finger. Included with the sample is a "simplified" battery control pack, which has only an ON/OFF setting.

**Solenoid with Actuator Arm:**



**Activator Plunger:**

 

The basic premise of your submitted design is what you label a patent pending "Trigger Assist Device (TAD)." The TAD uses an "activator plunger" to turn on a solenoid which pushes an "actuator arm" in and out engaging a firearm trigger.

AR000662

-3-

The term *"trigger"* is a term generally applied by a manufacturer to that part of a firing mechanism which is manually operated to cause the firearm to discharge a projectile, usually by the release of a sear, hammer, firing pin, or striker. However, the "trigger" of a firearm under the GCA and NFA is defined in a context-specific manner. U.S. Courts of Appeals have defined the term "trigger" as *"anything that...cause[s] the weapon to fire. A trigger may be either a traditional small projecting tongue in the firearm that, when pressed by the finger, actuates the mechanism that discharges the weapon, any mechanism used to initiate a firing sequence, or anything that serves as a stimulus and initiates or precipitates a reaction or series of reactions."* U.S. v Carter, 465 F.3d 658 (6th Cir 2006). In both practical and legal terms, the "trigger" of a firearm is whatever is used to initiate the firing sequence.[1]

When used in conjunction with a firearm, the AutoGlove replaces the traditional "trigger" of that weapon.

 

This shows the device in position and ready to fire. To fire, the shooter will move the selector to "fire," then press and hold the white activator plunger with his thumb. The firearm will fire until the thumb is released.

This shows the back side of the device when it is in position and ready to fire. Note that the traditional "trigger finger" is used merely to hold the device in place.

---

[1] See also United States v. Evans, 978 F.2d 1112 (9th Cir. 1992) (As used in § 5845(a)..."by a single function of the trigger" describes the action that enables the weapon to "shoot . . . automatically . . . without manual reloading," not the "trigger" mechanism. The argument that the plain meaning of trigger in 28 U.S.C. § 5845(a)(6) is a curved metal trigger is out of context and without merit. It would lead to the absurd result of enabling persons to avoid the NFA simply by using weapons that employ a button or switch mechanism for firing.); United States v. Jokel, 969 F.2d 132 (5th Cir. 1992) (defined a trigger, as used in 26 U.S.C. § 5845(d) (shotguns), as any "mechanism . . . used to initiate the firing sequence"); United States v. Fleischli, 305 F.3d 643 (7th Cir. 2002) (concerning machine gun, approving of Jokel's definition).

AR000663

-4-

The AutoGlove changes the shooter's interaction with the firearm's traditional trigger in that it incorporates the traditional trigger as a part of the firing sequence, but removes it as the part that initiates firing. Instead, the activator plunger acts as the actual trigger.



2. The Activator Plunger starts the motor, which continues to spin until the plunger is released.

3. The Motor Pushes the actuator out, and then releases, allowing the firearm to cycle

1. Thumb Presses and Holds the Activator Plunger—here serving as the "trigger"

The below pictures show the functioning of the Actuator Arm.

 

Here the actuator arm is shown fully retracted.

AR000664

-5-




Here the actuator arm is shown fully extended.

ATF has held a consistent position with regard to electrically-driven trigger devices, going back more than 30 years.

An excerpt from a 1982 letter reads:

> *"An electric motor attached to a firearm, in such a manner that turning the motor on causes the weapon to fire repeatedly until the motor is switched off, would be a machinegun as defined."*

Additionally, a 1988 letter reads:

> *"The Bureau of Alcohol, Tobacco and Firearms has previously determined a semiautomatic firearm having an electronic solenoid attached to the trigger and fired by means of a switch meets the definition of a machinegun as contained in the National Firearms Act (NFA)."*

A separate 1988 letter reads:

> *"Your device, an electrically powered trigger actuator would fall within the purview of the NFA....A weapon on which a device such as you describe has been affixed would fire more than one shot, without manual reloading, by a single function of the electrical switch(trigger) and therefore meets the definition of a machinegun as defined. Further, section 5845(b), Title 26, U.S.C. also states the term "machinegun" shall also included...any part designed and intended solely and exclusively, or combination of parts*

AR000665

-6-



*designed and intended for use in converting a weapon into a machinegun. Therefore, a device such as you describe would meet that definition even if it were not attached to any firearm."*

Electrically-driven trigger devices are considered **"machineguns"** because they are a "combination of parts designed and intended, for use in converting a weapon into a machinegun." Because these electric devices use a switch/button to activate the drive motor to initiate the firing sequence, that switch/button is the firearm's trigger. Since the weapon fires more than one round for each single function of its trigger (a single press on the AutoGlove's Activator Plunger), it would be a **"machinegun"** as defined.

In your correspondence, you highlight two "major differences" in your AutoGlove device, which you claim should cause the device to not be classified as a **"machinegun."** First, your primary argument is that the AutoGlove does not permanently attach to a firearm, even while being utilized. Second, you claim that the actuator arm on the solenoid does not actually engage a firearms trigger on its own because a "micro-trigger" pull is required.

FTISB will discuss this second claim first. Your correspondence states:

*"Second, although the AutoGlove has an activation plunger/switch to begin activation of the Trigger Activation Device (TAD), the TAD does not activate the trigger without additional human interaction. The person's trigger finger must still pull the TAD rearward and must use the TAD to take up slack/slop in the trigger. Then when the trigger is ready to break, and fire the gun, the person must begin making "micro-trigger pulls even with the TAD activated. Without such actions on the person's behalf, the TAD will only vibrate inside the trigger guard and possibly not even come into contact with the trigger."*

FTISB personnel test-fired a semiautomatic AR-type firearm from the National Firearms Collection (NFC), utilizing the AutoGlove, to test the validity of this statement. Trigger pull on the NFC firearm was measured before the test-fire, and found to consistently break between 2-1/2 and 2-3/4 pounds of pressure. FTISB used commercially available, Federal brand, 55-grain .223 caliber ammunition for the test-fire.

Instead of making the "micro-trigger" pulls, which you claim are necessary, the solenoid was held against the front trigger guard with *forward* pressure (away from the traditional firearm trigger) applied during the test. When the activator plunger was pressed and held, the firearm fired automatically and continuously until the ammunition supply was exhausted. The test was repeated two additional times, with the same results.

The result of the test-fire leads FTISB to conclude that your claim of needing "micro-trigger" pulls to fire a firearm using the AutoGlove is not accurate. In fact, a shooter need not move his finger at all, but only hold the AutoGlove in place because the actuator arm provides all of the movement necessary to fire the weapon.

-7-

Your primary basis for reasoning that the AutoGlove should not be classified as a "**machinegun**" appears to be predicated on the belief that being "not permanently attached" excludes it from such classification. Unfortunately, the requirement that a device be "permanently attached" is found nowhere in the definition of a machinegun, and is thus not a requirement. As we stated in 1988, any part designed and intended solely and exclusively, or combination of parts designed and intended for use in converting a weapon into a machinegun <u>would meet that definition even if it were not attached to any firearm</u>." Therefore, this argument is immaterial to a final classification.

Consequently, the submitted device is a "**machinegun**" as defined in the NFA. It is also a "**firearm**" as defined in the NFA, and is subject to all NFA provisions.

Further, since May 19, 1986, the GCA permits only properly licensed manufacturers and importers to register new machineguns; private, unlicensed individuals may not do so.

An unregistered machinegun is a contraband firearm, and possession of such a weapon is unlawful. The submitted firearm is not registered in accordance with the provisions of the NFA and it cannot be returned to you.

Instead, FTISB is obliged to request forfeiture of the unregistered AutoGlove sample you have submitted.

We trust that the foregoing has been responsive to your request. If we can be of any further assistance, you may contact us at any time.

Sincerely yours,

Michael R. Curtis
Chief, Firearms Technology Industry Services Branch