**To:**      Richardson, Marvin G <span style="background:black">      </span>
**Cc:**      Griffith, Earl L <span style="background:black"> </span>
**From:**    Curtis, Michael R.
**Sent:**    Mon 10/30/2017 3:07:54 PM
**Subject:** FW: ATF
LV-2214483 Firearms.pdf

See below from FBI.

Michael R. Curtis
Chief, FTISB
United States Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives
244 Needy Road
Martinsburg, WV 25401
Work 304-616-4300
Fax  304-616-4301



**From:** Pokorak, Eric G. (LD) (FBI)
**Sent:** Monday, October 30, 2017 10:28 AM
**To:** Curtis, Michael R. <span style="background:black">  </span>
**Cc:** Doss, Christopher T. (LD) (FBI) <span style="background:black">  </span>    Isenberg, Alice R. (LD) (FBI) <span style="background:black">  </span>
Richardson, Marvin G. <span style="background:black">  </span>    Mcpeak, Christopher W. (LV) (FBI)
<span style="background:black">  </span>    Sepeck, Dayna B. (LD) (FBI) <span style="background:black"> </span>    ; Seubert, Heather (LD) (FBI)
<span style="background:black">  </span>    Smith, Erich D. (LD) (FBI) <span style="background:black"> </span>
**Subject:** RE: ATF

Chief Curtis,

Thank you for the information. Per my discussion with AD Richardson last Friday, we will have the firearms
from the Mandalay Bay Hotel ready for your visual inspection.

First, a copy of our examinations of the firearms is attached for your review and awareness. We will have
high definition photography of the internal components of the weapons available to look at during your visit.
A CD copy of those photographs with be provided to you as well. Given that the items are evidence in the FBI
Laboratory's possession, we must follow our accreditation and quality assurance requirements during this
visit. That means that after review of the photography, an examiner and/or technician will facilitate any
manipulation or disassembly of the guns you need for your visual exams. Additionally, the FBI case agent
assigned to this matter, SA Chris McPeak of Las Vegas, has asked to attend and will be present tomorrow.

The ammunition continues to be examined as part of the separate investigation involving Mr. <span style="background:black">  </span> Per my
discussion with AD Richardson and our understanding, that evidence is not a part of the visual inspection
tomorrow.

If you need any further information or assistance, please let me know.

Eric Pokorak

Mr. Eric Pokorak
Chief, Scientific Analysis Section
FBI Laboratory
W: 703-632-█████
C: █████

From: Curtis, Michael R. (ATF) █████████████████
Sent: Monday, October 30, 2017 9:48 AM
To: Pokorak, Eric G. (LD) (FBI) ████████████
Subject: ATF

Mr. Pokorak,

The following will be traveling to the FBI Academy (Quantico, VA) tomorrow to examine the evidence from Los Vegas, NV shooting.

Firearms Enforcement Officer Daniel L. Hoffman, DOB - ████████

Firearms Enforcement Officer Michael C. Powell, DOB - ████████

Chief, Max M. Kingery, DOB ████████

If you need anything else please let me know. They will be arriving around 10:30 am.

Michael R. Curtis
Chief, FTISB
United States Department of Justice
Bureau of Alcohol,Tobacco, Firearms and Explosives
244 Needy Road
Martinsburg, WV 25401
Work 304-616-4300
Fax  304-616-4301



7-1 LIMS (Rev 10-2-17)

UNCLASSIFIED



# FBI Laboratory

2501 Investigation Parkway
Quantico, Virginia 22135

4940 Fowler Road
Huntsville, Alabama 35898

## LABORATORY REPORT

To:   Las Vegas

Date: October 8, 2017

Case ID No.: LV-2214483

Lab No.: 2017-02788-9

Communication(s):   October 4, 2017

Agency Reference(s):

Subject(s):

Victim(s):

Discipline(s):   Firearms/Toolmarks

FBI Laboratory Evidence Designator(s):

Item 1    Daniel Defense rifle, Serial Number DD5008362, with scope and bipod from Mandalay Bay Hotel Room 32-135A (Item 19) (1B70, E5585157)

Item 2    FNH rifle, Serial Number FNCR000383, from Mandalay Bay Hotel Room 32-134E (Item 20) (1B71, E5585158)

Item 3    Lewis Machine & Tool rifle, Serial Number LMS18300, with scope and bipod from Mandalay Bay Hotel Room 32-134E (Item 24) (1B75, E5585162)

Item 4    Colt rifle, Serial Number LE564124, from Mandalay Bay Hotel Room 32-135A (Item 14) (1B47, E5585134)

Item 5    LWRC International rifle, Serial Number 24-18648, from Mandalay Bay Hotel Room 32-135A (Item 3) (1B37, E5585124)

Item 6    Daniel Defense rifle, Serial Number DDM4123629, with sight from Mandalay Bay Hotel Room 32-135A (Item 15) (1B48, E5585135)

Item 7    POF USA rifle, Serial Number 03E-1603178, with sight from Mandalay Bay Hotel Room 32-135A (Item 13) (1B46, E5585133)

Item 8    Colt rifle, Serial Number CCR014544, from Mandalay Bay Hotel Room 32-135A (Item 7) (1B41, E5585128)

Item 9    FNH rifle, Serial Number FNB024293, with sight from Mandalay Bay Hotel Room 32-135A (Item 12) (1B45, E5585132)

Item 10   Christensen Arms rifle, Serial Number CA04625, from Mandalay Bay Hotel Room 32-135A (Item 5) (1B39, E5585126)

Page 1 of 8

UNCLASSIFIED

AR000723

UNCLASSIFIED

| Item 11 | POF USA rifle, Serial Number UA-1600204, with scope and bipod from Mandalay Bay Hotel Room 32-135A (Item 4) (1B38, E5585125) |
|---|---|
| Item 12 | Ruger rifle, Serial Number 695-93877, with scope from Mandalay Bay Hotel Room 32-134E (Item 21) (1B72, E5585159) |
| Item 13 | Daniel Defense rifle, Serial Number DDM4078072, with sight from Mandalay Bay Hotel Room 32-135A (Item 17) (1B50, E5585137) |
| Item 14 | Sig Sauer rifle, Serial Number 23D020868, with scope and bipod from Mandalay Bay Hotel Room 32-135A (Item 18) (1B51, E5585138) |
| Item 15 | LWRC International rifle, Serial Number 5P03902, with sight from Mandalay Bay Hotel Room 32-135A (Item 9) (1B69, E5585156) |
| Item 16 | Daniel Defense rifle, Serial Number DD5007426, with scope and bipod from Mandalay Bay Hotel Room 32-135A (Item 11) (1B44, E5585131) |
| Item 17 | S&W revolver, Serial Number CDZ7618, from Mandalay Bay Hotel Room 32-135A (Item 8) (1B42, E5585129) |
| Item 18 | Colt rifle, Serial Number LE451984, from Mandalay Bay Hotel Room 32-135A (Item 1) (1B35, E5585122) |
| Item 19 | Lewis Machine & Tool rifle, Serial Number LMS18321, with scope and bipod from Mandalay Bay Hotel Room 32-134E (Item 22) (1B73, E5585160) |
| Item 20 | Lewis Machine & Tool rifle, Serial Number LMT81745, from Mandalay Bay Hotel Room 32-135A (Item 16) (1B49, E5585136) |
| Item 21 | Noveske Rifleworks rifle, Serial Number B15993, with sight from Mandalay Bay Hotel Room 32-135A (Item 2) (1B36, E5585123) |
| Item 22 | FNH rifle, Serial Number FND000905, with scope and bipod from Mandalay Bay Hotel Room 32-135A (Item 10) (1B43, E5585130) |
| Item 23 | Ruger rifle, Serial Number 562-13026, with scope and bipod from Mandalay Bay Hotel Room 32-134E (Item 23) (1B74, E5585161) |
| Item 24 | POF USA rifle, Serial Number PE-1600179, from Mandalay Bay Hotel Room 32-135A (Item 6) (1B40, E5585127) |
| Item 101 | FTU Secondary Evidence (80 Bullets and 187 Cartridge cases) |

The results of the firearms examinations and national database searches are included in this report.

UNCLASSIFIED

AR000724

UNCLASSIFIED

**Results of Examinations:**

Item 1 is a .308 Winchester caliber Daniel Defense rifle, Model DD5, with Precision AR scope and UTG bipod attached. The Item 1 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory Reference Firearms Collection (RFC).

Item 2 is a 5.56x45mm FNH rifle, Model FN-15, with Slide Fire Solutions (SFS) bump stock and UTG front grip attached. The Item 2 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 2 rifle was able to produce rapid semi-automatic fire.

Item 3 is a 7.62x51mm Lewis Machine & Tool rifle, Model LM308MWS, with Precision AR scope and UTG bipod attached. The Item 3 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 4 is a 5.56x45mm Colt rifle, Model M4 Carbine, with SFS bump stock and MFT front grip attached. The Item 4 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 4 rifle was able to produce rapid semi-automatic fire.

Item 5 is a 5.56x45mm LWRC International rifle, Model M6IC, with SFS bump stock and MFT front grip attached. The Item 5 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 5 rifle was able to produce rapid semi-automatic fire.

Item 6 is a 5.56x45mm Daniel Defense rifle, Model DDM4, with SFS bump stock, EOTech sight and UTG front grip attached. The Item 6 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 6 rifle was able to produce rapid semi-automatic fire.

Item 7 is a .223 Remington caliber Patriot Ordnance Factory (POF USA) rifle, Model P-15 (multi-caliber), with SFS bump stock, EOTech sight and UTG front grip attached. The Item 7 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 7 rifle was able to produce rapid semi-automatic fire.

Item 8 is a 5.56x45mm Colt rifle, Model Competition, with SFS bump stock and UTG front grip attached. The Item 8 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the

Page 3 of 8

2017-02788-9

AR000725

UNCLASSIFIED

SFS bump stock placed in the engaged position, the Item 8 rifle was able to produce rapid semi-automatic fire.

Item 9 is a .223 Remington (5.56x45mm) FNH rifle, Model FN15, with SFS bump stock, EOTech sight and UTG brand front grip attached. The Item 9 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 9 rifle was able to produce rapid semi-automatic fire.

Item 10 is a .223 Remington caliber (.223 Bill Wylde chamber) Christensen Arms, Model CA-15 (multi-caliber), with SFS bump stock and UTG front grip attached. The Item 10 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 10 rifle was able to produce rapid semi-automatic fire.

Item 11 is a 7.62 NATO (.308 Winchester) Patriot Ordnance Factory (POF USA) rifle, Model P-308 (multi-caliber), with Vortex - Diamondback scope and UTG bipod attached. The Item 11 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 12 is a .308 Winchester caliber Ruger bolt action rifle, Model American, with AR Optics – AR/223 scope attached. The Item 12 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 13 is a 5.56x45mm (.223 Remington) Daniel Defense rifle, Model DDM4 (multi-caliber), with SFS bump stock, EOTech sight and UTG front grip attached. The Item 13 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 13 rifle was able to produce rapid semi-automatic fire.

Item 14 is a 7.62x51mm Sig Sauer rifle, Model 716, with Aim Point - Red Dot sight and UTG bipod attached. The Item 14 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 15 is a 5.56x45mm LWRC International rifle, Model M6IC, with EOTech sight and UTG front grip attached. The Item 15 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 15 rifle was able to produce rapid semi-automatic fire.

Item 16 is a 7.62x51mm Daniel Defense rifle, Model DD5, with Precision AR scope and UTG bipod attached. The Item 16 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

UNCLASSIFIED

AR000726

UNCLASSIFIED

Item 17 is a .38 Special +P caliber Smith & Wesson revolver, Model 342 Airlite Ti. The Item 17 revolver functioned normally when tested in the Laboratory.

Item 18 is a 5.56x45mm Colt rifle, Model M4 Carbine, with SFS bump stock, Magpul hand guard and UTG front grip attached. The Item 18 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 18 rifle was able to produce rapid semi-automatic fire.

Item 19 is a .308 Winchester caliber (7.62x51mm) Lewis Machine and Tool rifle, Model LM308MWS, with Aimpoint - Patrol sight and UTG bipod attached. The Item 19 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 20 is a 5.56x45mm Lewis Machine & Tool rifle, Model Defender 2000, with SFS bump stock and MFT front grip attached. The Item 20 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 20 rifle was able to produce rapid semi-automatic fire.

Item 21 is a 5.56x45mm Noveske Rifleworks rifle, Model N4, with SFS bump stock, EOTech sight and UTG front grip attached. The Item 21 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 21 rifle was able to produce rapid semi-automatic fire.

Item 22 is a 5.56x45mm Fabrique Nationale (FNH) rifle, Model FN-15 (multi-caliber), with Vortex - Crossfire II scope, Magpul pistol grip and UTG bipod attached. The Item 22 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 23 is a .308 Winchester caliber Ruger rifle, Model SR-762, with Vortex - Diamondback scope and UTG bipod attached. The Item 23 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 24 is a 5.56x45mm Patriot Ordnance Factory (POF USA) rifle, Model P-15 (multi-caliber), with SFS bump stock and MFT front grip attached. The Item 24 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 24 rifle was able to produce rapid semi-automatic fire.

Page 5 of 8

2017-02788-9

UNCLASSIFIED

UNCLASSIFIED

Queries of the eTrace database returned results that can be found under the following Trace numbers:

| Item 1 - | Item 13 - |
| Item 2 - | Item 14 - |
| Item 3 - | Item 15 - |
| Item 4 - | Item 16 - |
| Item 5 - | Item 17 - |
| Item 6 - | Item 18 - |
| Item 7 - | Item 19 - |
| Item 8 - | Item 20 - |
| Item 9 - | Item 21 - |
| Item 10 | Item 22 - |
| Item 11 | Item 23 - |
| Item 12 | Item 24 - |

Queries of the National Crime Information Center (NCIC) database were performed and no records were found at this time for the Item 1 through Item 24 firearms.

Images of test-fired specimens from the Item 1 through Item 16 and Item 18 through Item 24 rifles were entered into the National Integrated Ballistic Information Network (NIBIN) at the FBI Laboratory in Quantico, Virginia, and searched nationwide. No associations were found at this time. A NIBIN search was not conducted for the Item 17 due to revolver-type cartridge case images not being entered into the database. Additionally, if future NIBIN searches are requested for this evidence, the NIBIN server containing the FBI Laboratory will need to be selected as part of the search.

**Methods:**

Firearms

The make, model, and caliber of a firearm are normally determined by directly observing manufacturer markings on the firearm in question. When these are not present, published materials and firearms in the Laboratory's Reference Firearms Collection may be used to make determinations.

Unless otherwise noted, submitted firearms are test fired:

1) in the condition they are received in the Firearms/Toolmarks Unit,
2) with ammunition from the Laboratory's Reference Ammunition File,
3) in a manner that allows for testing of available modes of fire such as manual safety engaged, manual safety disengaged, single action, double action, semi-automatic, fully automatic, etc.

Page 6 of 8

2017-02788-9

UNCLASSIFIED

UNCLASSIFIED

## NCIC/eTrace

The serial number from a firearm is queried against the Department of Justice National Crime Information Center (NCIC) stolen gun record and electronic tracing system (eTrace) internet-based databases. These databases contain records on stolen, lost, and recovered firearms and firearms used in the commission of crimes. Additionally, eTrace can provide systematic tracking information for a firearm from its manufacturer or importer to its point of purchase and recovery.

## NIBIN

When a NIBIN entry is performed for a submitted firearm, an image of a test-fired cartridge case from that firearm is entered in the NIBIN database. An image of a representative sample of any submitted cartridge cases that have not been associated with a specific firearm are also entered in the NIBIN system. Entries are searched against the appropriate regional database(s), and correlation results are viewed to determine possible associations.

**Limitations:**

### Firearms

The results of firearms function examinations describe the operating condition of the firearm as it was received in the Firearms/Toolmarks Unit.

### NCIC/eTrace

The NCIC stolen gun record and eTrace databases will only return a record if the serial number queried matches a database entry and the information is available. Additionally, anNCIC and eTrace search may return a record containing information that does not match the description of the firearm being queried.

### NIBIN

Due to a number of variables regarding image capture and data entry, NIBIN searches may not always locate entries that were fired in the same firearm.

**Remarks:**

For questions about the content of this report, please contact Forensic Examiner ███████. For questions about the status of your submission, including any remaining forensic examinations, please contact ████████

The evidence, which includes secondary evidence, will be returned under separate cover. This report contains the opinions and interpretations of the issuing examiner(s) and is supported

Page 7 of 8

2017-02788-9

UNCLASSIFIED

UNCLASSIFIED

by records retained in the FBI files. The work described in this report was conducted at the
Quantico Laboratory.



Firearms/Toolmarks Unit

Page 8 of 8

2017-02788-9

UNCLASSIFIED

AR000730

**To:** Richardson, Marvin G█████████████
**Cc:** Griffith, Earl L█████████     Kingery, Max M██████████████
**From:** Curtis, Michael R.
**Sent:** Tue 10/31/2017 5:28:31 PM
**Subject:** FBI/ATF meeting

Marvin,

Max, Mike Powel and Daniel Hoffman met with the FBI lab this morning at 10:30 am. Max just called me and said they were provided with a CD containing all of the high resolution photos taken, along with a hard copy of photos and the FBI evaluation report of the firearms. They would not discuss their current testing of the ammunition, however, did say we could see the evidence once completed. It will be more than a month since they have over 2000 rounds to examine. Max did say there were three rifles that had target triggers, however, they were not assembled with bump-fire stocks. Max also said the FBI had a binder 3-4 inches thick with all of the FBI lab notes that were not included with the official report. They were allowed to see the binder but did not get a copy.

Have a good day.

Mike

Michael R. Curtis
Chief, FTISB
United States Department of Justice
Bureau of Alcohol,Tobacco, Firearms and Explosives
244 Needy Road
Martinsburg, WV 25401
Work 304-616-4300
Fax  304-616-4301



To:       Allen, Joseph J. ██████████████
Cc:       Shaefer, Christopher C.[Christopher.Shaefer@atf.gov]
From:     Bennett, Megan A.
Sent:     Wed 11/1/2017 2:47:33 PM
Subject:  Fwd: 11-14-17 Bump Stock Regulation Hearing - Invitation to Testify (Brandon)
Brandon Invitation.pdf
ATT00001.htm

FYI

Megan A. Bennett

Begin forwarded message:


        **From:** "Arends, Ross F." <██████████████>
**To:** "Bennett, Megan A." ██████████████, "Shaefer, Christopher C."
        <Christopher.Shaefer@atf.gov>
**Cc:** "Storey, Lisa L." ██████████████
**Subject: FW: 11-14-17 Bump Stock Regulation Hearing - Invitation to Testify (Brandon)**


        Hearing invitation attached.

        **Ross Arends**
        **Special Agent**
        **Chief, Legislative Affairs**
        **Office of Public and Governmental Affairs**
        **Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)**
        U.S. Department of Justice
        99 New York Ave., NE
        Washington, DC 20226
        T: (202) 648-████
        C: ██████████



        **From:** Covey, Jason (Judiciary-Rep) ████████████████████████
**Sent:** Tuesday, October 31, 2017 6:00 PM
**To:** Goldschmidt, Lauren (OLA) (JMD) ██████████████████████ Arends, Ross F.

**Cc:** Cummings, Aaron (Judiciary-Rep) ██████████████████████
**Subject:** 11-14-17 Bump Stock Regulation Hearing - Invitation to Testify (Brandon)

        Attached please find an invitation to Mr. Thomas E. Brandon to appear and testify at the
        November 14, 2017 Senate Judiciary Committee hearing regarding the regulation of bump
        stocks.

Please let me know of anyone you wish to save seats for.

Thank you.

Jason A. Covey
Hearing Clerk | Senate Judiciary Committee
http://judiciary.senate.gov

CHARLES E. GRASSLEY (IOWA), CHAIRMAN

ORRIN G. HATCH, UTAH
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
BEN SASSE, NEBRASKA
JEFF FLAKE, ARIZONA
MIKE CRAPO, IDAHO
THOM TILLIS, NORTH CAROLINA
JOHN KENNEDY, LOUISIANA

DIANNE FEINSTEIN, CALIFORNIA
PATRICK J. LEAHY, VERMONT
RICHARD J. DURBIN, ILLINOIS
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
AL FRANKEN, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT
MAZIE K. HIRONO, HAWAII

KOLAN L. DAVIS, Chief Counsel and Staff Director
JENNIFER DUCK, Democratic Staff Director

# United States Senate

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510-6275

October 31, 2017

Thomas E. Brandon
Acting Director
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, NE
Washington, DC 20226

Dear Mr. Brandon:

I invite you to testify on Tuesday, November 14, 2017 at the Senate Committee on the Judiciary hearing regarding the regulation of Bump Stocks. The hearing is scheduled to begin at 10:00 a.m. in Room 226 of the Dirksen Senate Office Building.

Committee rules require that you provide your testimony and a short biography for distribution to members of the Committee and the press at least 24 hours before the hearing is scheduled to begin. Please send an electronic copy of your testimony and biography to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Please contact Jason Covey at ▮▮▮▮▮▮▮▮ with any questions. We look forward to your testimony.

Sincerely,

*Chuck Grassley*

Charles E. Grassley
Chairman

AR000734

**To:**        Turk, Ronald B.[Ronald.Turk@atf.gov]
**From:**      Brandon, Thomas E.
**Sent:**      Fri 11/3/2017 5:07:43 PM
**Subject:**   Re: FBI Lab Report

Thanks, Ron

Sent from my iPad

On Nov 3, 2017, at 12:59 PM, Turk, Ronald B. <Ronald.Turk@atf.gov> wrote:

> SA sir
>
> **From:** Richardson, Marvin G.
> **Sent:** Friday, November 3, 2017 12:45 PM
> **To:** Turk, Ronald B. <Ronald.Turk@atf.gov>; Gleysteen, Michael <Mike.P.Gleysteen@atf.gov>
> **Subject:** FBI Lab Report
>
> > Ron and Michael,
> >       FYI. Attached is the FBI Lab report from the Vegas Shooting Firearms. I will have a copy
> > of the rest of the information on Monday and will make it available to you. Let me know if you
> > have any questons.
> >
> > Thanks.
> >
> > Marvin G. Richardson
> > Assistant Director
> > Bureau of ATF, Enforcement Programs & Services
> > Office (202) 648-████
> > Cell ████████████
> > **"Leaders don't do what they want to do, they do what is
> > right".**
> >
> > <FBI Lab Report - Las Vegas Shooting Firearms.pdf>

7-1 LJMS (Rev. 10-2-17)

UNCLASSIFIED



# FBI Laboratory

2501 Investigation Parkway
Quantico, Virginia 22135

4940 Fowler Road
Huntsville, Alabama 35898

## LABORATORY REPORT

To:  Las Vegas

Date: October 8, 2017

Case ID No. LV-2214483

Lab No. 2017-02788-9

Communication(s):   October 4, 2017

Agency Reference(s):

Subject(s):

Victim(s):

Discipline(s):     Firearms/Toolmarks

FBI Laboratory Evidence Designator(s):

Item 1      Daniel Defense rifle, Serial Number DD5008362, with scope and bipod from Mandalay Bay Hotel Room 32-135A (Item 19) (1B70, E5585157)

Item 2      FNH rifle, Serial Number FNCR000383, from Mandalay Bay Hotel Room 32-134E (Item 20) (1B71, E5585158)

Item 3      Lewis Machine & Tool rifle, Serial Number LMS18300, with scope and bipod from Mandalay Bay Hotel Room 32-134E (Item 24) (1B75, E5585162)

Item 4      Colt rifle, Serial Number LE564124, from Mandalay Bay Hotel Room 32-135A (Item 4) (1B47, E5585134)

Item 5      LWRC International rifle, Serial Number 24-18648, from Mandalay Bay Hotel Room 32-135A (Item 3) (1B37, E5585124)

Item 6      Daniel Defense rifle, Serial Number DDM4123629, with sight from Mandalay Bay Hotel Room 32-135A (Item 15) (1B48, E5585135)

Item 7      POF USA rifle, Serial Number 03E-1603178, with sight from Mandalay Bay Hotel Room 32-135A (Item 13) (1B46, E5585133)

Item 8      Colt rifle, Serial Number CCR014544, from Mandalay Bay Hotel Room 32-135A (Item 7) (1B41, E5585128)

Item 9      FNH rifle, Serial Number FNB024293, with sight from Mandalay Bay Hotel Room 32-135A (Item 12) (1B45, E5585132)

Item 10     Christensen Arms rifle, Serial Number CA04625, from Mandalay Bay Hotel Room 32-135A (Item 5) (1B39, E5585126)

Page 1 of 8

UNCLASSIFIED

AR000736

UNCLASSIFIED

Item 11    POF USA rifle, Serial Number UA-1600204, with scope and bipod from Mandalay Bay Hotel Room 32-135A (Item 4) (1B38, E5585125)

Item 12    Ruger rifle, Serial Number 695-93877, with scope from Mandalay Bay Hotel Room 32-134E (Item 21) (1B72, E5585159)

Item 13    Daniel Defense rifle, Serial Number DDM4078072, with sight from Mandalay Bay Hotel Room 32-135A (Item 17) (1B50, E5585137)

Item 14    Sig Sauer rifle, Serial Number 23D020868, with scope and bipod from Mandalay Bay Hotel Room 32-135A (Item 18) (1B51, E5585138)

Item 15    LWRC International rifle, Serial Number 5P03902, with sight from Mandalay Bay Hotel Room 32-135A (Item 9) (1B69, E5585156)

Item 16    Daniel Defense rifle, Serial Number DD5007426, with scope and bipod from Mandalay Bay Hotel Room 32-135A (Item 11) (1B44, E5585131)

Item 17    S&W revolver, Serial Number CDZ7618, from Mandalay Bay Hotel Room 32-135A (Item 8) (1B42, E5585129)

Item 18    Colt rifle, Serial Number LE451984, from Mandalay Bay Hotel Room 32-135A (Item 1) (1B35, E5585122)

Item 19    Lewis Machine & Tool rifle, Serial Number LMS18321, with scope and bipod from Mandalay Bay Hotel Room 32-134E (Item 22) (1B73, E5585160)

Item 20    Lewis Machine & Tool rifle, Serial Number LMT81745, from Mandalay Bay Hotel Room 32-135A (Item 16) (1B49, E5585136)

Item 21    Noveske Rifleworks rifle, Serial Number B15993, with sight from Mandalay Bay Hotel Room 32-135A (Item 2) (1B36, E5585123)

Item 22    FNH rifle, Serial Number FND000905, with scope and bipod from Mandalay Bay Hotel Room 32-135A (Item 10) (1B43, E5585130)

Item 23    Ruger rifle, Serial Number 562-13026, with scope and bipod from Mandalay Bay Hotel Room 32-134E (Item 23) (1B74, E5585161)

Item 24    POF USA rifle, Serial Number PE-1600179, from Mandalay Bay Hotel Room 32-135A (Item 6) (1B40, E5585127)

Item 101    FTU Secondary Evidence (80 Bullets and 187 Cartridge cases)

The results of the firearms examinations and national database searches are included in this report.

Page 2 of 8

2017-02788-9

AR000737

UNCLASSIFIED

**Results of Examinations:**

Item 1 is a .308 Winchester caliber Daniel Defense rifle, Model DD5, with Precision AR scope and UTG bipod attached. The Item 1 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory Reference Firearms Collection (RFC).

Item 2 is a 5.56x45mm FNH rifle, Model FN-15, with Slide Fire Solutions (SFS) bump stock and UTG front grip attached. The Item 2 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 2 rifle was able to produce rapid semi-automatic fire.

Item 3 is a 7.62x51mm Lewis Machine & Tool rifle, Model LM308MWS, with Precision AR scope and UTG bipod attached. The Item 3 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 4 is a 5.56x45mm Colt rifle, Model M4 Carbine, with SFS bump stock and MFT front grip attached. The Item 4 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 4 rifle was able to produce rapid semi-automatic fire.

Item 5 is a 5.56x45mm LWRC International rifle, Model M6IC, with SFS bump stock and MFT front grip attached. The Item 5 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 5 rifle was able to produce rapid semi-automatic fire.

Item 6 is a 5.56x45mm Daniel Defense rifle, Model DDM4, with SFS bump stock, EOTech sight and UTG front grip attached. The Item 6 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 6 rifle was able to produce rapid semi-automatic fire.

Item 7 is a .223 Remington caliber Patriot Ordnance Factory (POF USA) rifle, Model P-15 (multi-caliber), with SFS bump stock, EOTech sight and UTG front grip attached. The Item 7 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 7 rifle was able to produce rapid semi-automatic fire.

Item 8 is a 5.56x45mm Colt rifle, Model Competition, with SFS bump stock and UTG front grip attached. The Item 8 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the

2017-02788-9

UNCLASSIFIED

AR000738

SFS bump stock placed in the engaged position, the Item 8 rifle was able to produce rapid semi-automatic fire.

Item 9 is a .223 Remington (5.56x45mm) FNH rifle, Model FN15, with SFS bump stock, EOTech sight and UTG brand front grip attached. The Item 9 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 9 rifle was able to produce rapid semi-automatic fire.

Item 10 is a .223 Remington caliber (.223 Bill Wylde chamber) Christensen Arms, Model CA-15 (multi-caliber), with SFS bump stock and UTG front grip attached. The Item 10 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 10 rifle was able to produce rapid semi-automatic fire.

Item 11 is a 7.62 NATO (.308 Winchester) Patriot Ordnance Factory (POF USA) rifle, Model P-308 (multi-caliber), with Vortex - Diamondback scope and UTG bipod attached. The Item 11 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 12 is a .308 Winchester caliber Ruger bolt action rifle, Model American, with AR Optics – AR/223 scope attached. The Item 12 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 13 is a 5.56x45mm (.223 Remington) Daniel Defense rifle, Model DDM4 (multi-caliber), with SFS bump stock, EOTech sight and UTG front grip attached. The Item 13 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 13 rifle was able to produce rapid semi-automatic fire.

Item 14 is a 7.62x51mm Sig Sauer rifle, Model 716, with Aim Point - Red Dot sight and UTG bipod attached. The Item 14 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 15 is a 5.56x45mm LWRC International rifle, Model M6IC, with EOTech sight and UTG front grip attached. The Item 15 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 15 rifle was able to produce rapid semi-automatic fire.

Item 16 is a 7.62x51mm Daniel Defense rifle, Model DD5, with Precision AR scope and UTG bipod attached. The Item 16 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

AR000739

UNCLASSIFIED

Item 17 is a .38 Special +P caliber Smith & Wesson revolver, Model 342 Airlite Ti. The Item 17 revolver functioned normally when tested in the Laboratory.

Item 18 is a 5.56x45mm Colt rifle, Model M4 Carbine, with SFS bump stock, Magpul hand guard and UTG front grip attached. The Item 18 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 18 rifle was able to produce rapid semi-automatic fire.

Item 19 is a .308 Winchester caliber (7.62x51mm) Lewis Machine and Tool rifle, Model LM308MWS, with Aimpoint - Patrol sight and UTG bipod attached. The Item 19 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 20 is a 5.56x45mm Lewis Machine & Tool rifle, Model Defender 2000, with SFS bump stock and MFT front grip attached. The Item 20 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 20 rifle was able to produce rapid semi-automatic fire.

Item 21 is a 5.56x45mm Noveske Rifleworks rifle, Model N4, with SFS bump stock, EOTech sight and UTG front grip attached. The Item 21 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 21 rifle was able to produce rapid semi-automatic fire.

Item 22 is a 5.56x45mm Fabrique Nationale (FNH) rifle, Model FN-15 (multi-caliber), with Vortex - Crossfire II scope, Magpul pistol grip and UTG bipod attached. The Item 22 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 23 is a .308 Winchester caliber Ruger rifle, Model SR-762, with Vortex - Diamondback scope and UTG bipod attached. The Item 23 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC.

Item 24 is a 5.56x45mm Patriot Ordnance Factory (POF USA) rifle, Model P-15 (multi-caliber), with SFS bump stock and MFT front grip attached. The Item 24 rifle functioned normally in the semi-automatic mode when tested in the Laboratory with a magazine from the FBI Laboratory RFC. In addition, when using the SFS bump stock placed in the engaged position, the Item 24 rifle was able to produce rapid semi-automatic fire.

Page 5 of 8

2017-02788-9

UNCLASSIFIED

UNCLASSIFIED

Queries of the eTrace database returned results that can be found under the following Trace numbers:

| Item 1 - | | Item 13 - | |
|----------|--|-----------|--|
| Item 2 - | | Item 14 - | |
| Item 3 - | | Item 15 - | |
| Item 4 - | | Item 16 - | |
| Item 5 - | | Item 17 - | |
| Item 6 - | | Item 18 - | |
| Item 7 - | | Item 19 - | |
| Item 8 - | | Item 20 - | |
| Item 9 - | | Item 21 - | |
| Item 10 | | Item 22 - | |
| Item 11 | | Item 23 - | |
| Item 12 | | Item 24 - | |

Queries of the National Crime Information Center (NCIC) database were performed and no records were found at this time for the Item 1 through Item 24 firearms.

Images of test-fired specimens from the Item 1 through Item 16 and Item 18 through Item 24 rifles were entered into the National Integrated Ballistic Information Network (NIBIN) at the FBI Laboratory in Quantico, Virginia, and searched nationwide. No associations were found at this time. A NIBIN search was not conducted for the Item 17 due to revolver-type cartridge case images not being entered into the database. Additionally, if future NIBIN searches are requested for this evidence, the NIBIN server containing the FBI Laboratory will need to be selected as part of the search.

**Methods:**

Firearms

The make, model, and caliber of a firearm are normally determined by directly observing manufacturer markings on the firearm in question. When these are not present, published materials and firearms in the Laboratory's Reference Firearms Collection may be used to make determinations.

Unless otherwise noted, submitted firearms are test fired:

1) in the condition they are received in the Firearms/Toolmarks Unit.
2) with ammunition from the Laboratory's Reference Ammunition File.
3) in a manner that allows for testing of available modes of fire such as manual safety engaged, manual safety disengaged, single action, double action, semi-automatic, fully automatic, etc.

Page 6 of 8

2017-02788-9

UNCLASSIFIED

UNCLASSIFIED

## NCIC/eTrace

The serial number from a firearm is queried against the Department of Justice National Crime Information Center (NCIC) stolen gun record and electronic tracing system (eTrace) internet-based databases. These databases contain records on stolen, lost, and recovered firearms and firearms used in the commission of crimes. Additionally, eTrace can provide systematic tracking information for a firearm from its manufacturer or importer to its point of purchase and recovery.

## NIBIN

When a NIBIN entry is performed for a submitted firearm, an image of a test-fired cartridge case from that firearm is entered in the NIBIN database. An image of a representative sample of any submitted cartridge cases that have not been associated with a specific firearm are also entered in the NIBIN system. Entries are searched against the appropriate regional database(s), and correlation results are viewed to determine possible associations.

**Limitations:**

## Firearms

The results of firearms function examinations describe the operating condition of the firearm as it was received in the Firearms/Toolmarks Unit.

## NCIC/eTrace

The NCIC stolen gun record and eTrace databases will only return a record if the serial number queried matches a database entry and the information is available. Additionally, anNCIC and eTrace search may return a record containing information that does not match the description of the firearm being queried.

## NIBIN

Due to a number of variables regarding image capture and data entry, NIBIN searches may not always locate entries that were fired in the same firearm.

**Remarks:**

For questions about the content of this report, please contact Forensic Examiner ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For questions about the status of your submission, including any remaining forensic examinations, please contact ▮▮▮▮▮▮▮▮▮▮▮▮▮

The evidence, which includes secondary evidence, will be returned under separate cover. This report contains the opinions and interpretations of the issuing examiner(s) and is supported

Page 7 of 8

2017-02788-9

UNCLASSIFIED

UNCLASSIFIED

by records retained in the FBI files. The work described in this report was conducted at the
Quantico Laboratory.

████████

Firearms/Toolmarks Unit

UNCLASSIFIED

AR000743

**To:** Allen, Joseph J██████████
**From:** Ryan, William J.
**Sent:** Thur 11/2/2017 4:58:53 PM
**Subject:** Bump Stock
Bump-Fire Summary (ryan 11-2-2017.docx

Joe,

Draft attached. One page is tough but I wanted to get this to you as soon as possible. I went on to the second page a bit in case you want to include that explanation. I was not serious on footnote 2. Figure there will be a lot of editing anyway. I am headed to a Dr. Appt but I will bring my computer. Cell is ████████

By the way, I don't see her point in Olofson but included it for obvious reasons.

Bill

**William J. Ryan** | Senior Counsel (Firearms)
**U.S. Department of Justice | Bureau of Alcohol, Tobacco, Firearms and Explosives**

Law and Policy Division
Office of Chief Counsel
Bureau of Alcohol, Tobacco, Firearms and Explosives
244 Needy Road, Room 1225
Martinsburg, WV 25405-9431
ofc:  304-260-███

WARNING: *This email is covered by the Electronic Communications Privacy Act, Title 18, United States Code, Sections 2510-2521. This electronic transmission is intended only for the person(s) named above. It may contain information that is confidential and protected from disclosure by the attorney-client privilege and/or work product doctrine, or exempt from disclosure under other applicable laws. Any use, distribution, copying or other disclosure by any other person is strictly prohibited.* **Do not forward or re-transmit without the permission of sender, the United States Department of Justice, or ATF Chief Counsel's Office.** *If you have received this transmission in error, please notify the sender at the number or e-mail above.*
**ATTORNEY WORK PRODUCT PRIVILEGED DOCUMENT**
**ATTORNEY-CLIENT PRIVILEGED COMMUNICATION**

**\*\*\*\*\*\*\* NOTICE: This electronic transmission is confidential and intended only for the person(s) to whom it is addressed. If you have received this transmission in error, please notify the sender by return e-mail and destroy this message in its entirety (including all attachments).**

The National Firearms Act (NFA) defines machineguns as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." This statutory definition also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun." 26 U.S.C. § 5845(b).

In 1955, the Internal Revenue Service applied this definition in Revenue Ruling 55-528, opining that Gatling guns requiring constant turning of a handle to fire were not machineguns. However, it also held that "any Gatling Gun designed or redesigned to employ the hand crank only to sear off the first round of ammunition, thence becoming a gas-operated fully automatic machinegun…is held to be a firearm within the purview of the NFA." The single function of the trigger (single turn of the handle) initiated an automatic sequence that continued without further shooter input.

ATF and its predecessors have applied this analysis since that time, and in ATF Ruling 2006-2 held that the pulling or the release of a trigger is a "single function" of that trigger. As explained in, that Ruling this "determination is consistent with the legislative history of the National Firearms Act in which the drafters equated 'single function of the trigger' with 'single pull of the trigger.'" *See, e.g., National Firearms Act: Hearings Before the Comm. On Ways and Means, House of Representatives, Second Session on H.R. 9066*, 73rd Cong., at 40 (1934). This Ruling addressed a device known as the "Akins Accelerator." Using that device, a shooter could pull the trigger and the firearm would recoil inside of a stock, removing the finger from the trigger so that it could reset for another round. Integral springs would then pull the firearm forward, pushing the trigger against the finger, causing the firing of a second projectile. This process would repeat until the shooter relaxed his pull on the trigger.

Pursuant to the plain language of the statutory definition, a "single function of the trigger" is a necessary element in classifying a machinegun, but it is not the only element. If this were the case, any pump-action firearm capable of "slam firing"[1] would properly be classified a machinegun. Instead, the statutory definition requires that a machinegun "shoots…automatically more than one shot." The definition continues that it must do this "by a single function of the trigger." This means that the single function of the trigger is only the method by which



---

[1] A technique in which a shooter holds constant pressure on the trigger (single function) and the pump-action is cycled, allowing a round to be fired each time a cartridge is loaded.



AR000746

| From: | Griffith, Earl L. |
| To: | Allen, Joseph J. |
| Subject: | Bump stock |
| Date: | Tuesday, November 7, 2017 9:31:40 AM |

The Akins bump device is designed to sustain forward pressure on the firearm with two mechanical springs providing sufficient forward resistance to allow the trigger to reset and continue to fire ammunition as long as the finger continues to apply pressure to the trigger.

In order for a Bump stock device to operate properly an individual is required provide sufficient stabilization of the device to counter the recoil and allow the firearm to cycle additional rounds of ammunition. This can be done by shouldering, bracing or strong handing the firearm.

**Cc:**      Allen, Joseph J ███████████████
**To:**      Brandon, Thomas E.[Thomas Brandon@atf.gov]
**From:**    Griffith, Earl L
**Sent:**    Wed 11/8/2017 11:08:38 PM
**Subject:** High Profile Shootings.pdf
High Profile Shootings.pdf
ATT00001.txt

Sir,

This is an updated version.

Earl

AR000748

HIGH PROFILE SHOOTINGS

| Location | Date | Weapon(s) Used | Ammunition |
|---|---|---|---|
| Virginia Tech | 16-Apr-07 | Glock 19, pistol, 9x19mm | Unknown |
| 32 dead / 17 injured | | Walther, P22, pistol, .22 LR | |
| | | | |
| Lakewood, WA | 29-Nov-09 | Glock 17, pistol, 9mm | Unknown |
| Police shooting | | | |
| 4 officers killed | | | |
| | | | |
| Aurora, CO | 20-Jul-12 | Smith & Wesson, M&P 15, rifle, .223/5.56 | 5.56, M855, Green Tip (APA, exempted) |
| 12 dead / 58 injured | | Glock 22, pistol, .40 S&W | |
| | | Remington 870, shotgun, 12 gauge | |
| New Town, CT | 14-Dec-12 | Bushmaster, XM15E2S, .223 caliber rifle | Unknown |
| 27 dead / 2 injured | | Glock 20, pistol, 10mm | |
| | | SIG, P226, pistol, 9x19mm | |
| Santa Monica, CA | 7-Jun-13 | AR15-type rifle, "80%" receiver, 5.56 cal | Unknown |
| College - 5 dead / 2 inj | | | |
| | | | |
| LAX, Los Angeles, CA | 1-Nov-13 | Smith & Wesson, M&P 15, rifle, .223/5.56 | Lake City, 5.56, M855, APA (exempted) |
| 1 dead / 4 injured | | | |
| | | | |
| Chattanooga, TN | 16-Jul-15 | Molot, VEPR, rifle, 5.45x39 | Unknown (not examined by ATF) |
| Military centers | | Izhmash, Saiga, shotgun, 12 gauge | (Chattanooga PD has ammo) |
| 5 dead / 2 injured | | Glock 19, pistol, 9x19mm | |
| | | Smith & Wesson, M&P 9, pistol, 9x19mm | |
| Umpqua, OR | 1-Oct-15 | Del-Ton, model DTI 15, rifle, 5.56mm | Unknown (not examined by ATF) |
| Comm. college shooting | | Smith & Wesson, SW40VE, pistol, .40 S&W | (Assumed to be with local police) |
| 10 dead / 8 injured | | Taurus, PT24/7G2, pistol, .40 S&W | |
| | | Glock 19, pistol, 9x19mm | |
| | | | |
| | | | |
| | | | |

AR000749

| Location | Date | Weapon(s) Used | Ammunition |
|---|---|---|---|
| Colorado Springs, CO | 27-Nov-15 | Norinco, SKS, rifle, 7.62x39mm | "Had 5 gallon buckets of 7.62x39 that he brought |
| Planned Parenthood | | Norinco, SKS, rifle, 7.62x39mm | into the Planned Parenthood building from his truck" |
| 3 dead / 9 injured | | Norinco, SKS, rifle, 7.62x39mm | None believed to be APA |
| | | Norinco, SKS, rifle, 7.62x39mm | |
| | | HK, P7M13, pistol, 9x19mm | (Shooter wore homemade bullet proof vest made |
| | | SIG, P226, pistol, 9x19mm | from silver dollars taped together) |
| | | Beretta, 21A, pistol, .22 LR | |
| San Bernadino, CA | 2-Dec-15 | Smith & Wesson, M&P 15, rifle, .223/5.56 | TulAmmo, .223, 62 grain |
| 14 dead / 24 injured | | DPMS, A-15, rifle, 5.56mm | American Eagle, .223, FMJ, 55 grain |
| | | Springfield Armory, XD, pistol, 9x19mm | *BVAC, .223, FMJ, 55 grain |
| | | Llama, model Government, pistol, 9x19mm | Fiocchi, 223, 45 grain |
| | | | MaxXTech, 9x19mm, 115 grain |
| | | | TulAmmo, 9x19mm, 115 grain |
| | | | * Bitterroot Valley Ammunition & Components, MT |
| Tampa, FL | 6-Feb-16 | Glock pistol, model unknown | Unknown (not examined by ATF) |
| Strip club shooting | | | (Local police) |
| 2 dead / 6 injured | | | |
| Orlando, FL | 12-Jun-16 | Sig Sauer, Model MCX, rifle, 5.56mm | Prvi Partizan, 5.56, 55 grain, M193 (Not APA) |
| Night club shooting | | Glock 17, pistol, 9x19mm | Fiocchi, 9x19mm |
| 49 dead / 53 injured | | | |
| Dallas, TX | 7-Jul-16 | Saiga, AK74-type, rifle, 5.45x39 | 5.45x39mm, 7N6 (APA) |
| Police shooting | | Glock 19, pistol, 9x19mm | (FATD examined ammo in FBI custody) |
| 5 dead / 11 injured | | Fraser, model unknown, pistol, .25 ACP | |
| Baton Rouge, LA | 17-Jul-16 | Stag Arms, Stag 15, rifle, .223/5.56 | Federal (made by IWI), 5.56, 55 grain, XM193 (Not APA) |
| Police shooting | | Springfield Armory, XD9, pistol, 9x19mm | Lake City, 5.56, 55 grain, XM193 (Not APA) |
| 3 dead / 3 injured | | | (FATD examined ammo in LA State Police custody) |

AR000750

# HIGH PROFILE SHOOTINGS

| Location | Date | Weapon(s) Used | Ammunition |
|---|---|---|---|
| Fort Myers, FL | 25-Jul-16 | Glock 23, pistol, .40 S&W | Unknown (not examined by ATF) |
| Teen nightclub shooting | | MasterPiece Arms, MPA57SST, pistol, 5.7x28mm | (Local police) |
| 2 dead / 12 injured | | | |
| Burlington, WA | 23-Sep-16 | Ruger, Model 10/22, rifle, .22 LR caliber | Unknown |
| Mall shooting | | | |
| 5 dead | | | |
| Palm Springs, CA | 8-Oct-16 | Smith & Wesson, M&P 15, rifle, .223/5.56 | Unknown |
| 2 police officers killed | | | |
| Las Vegas, NV | 1-Oct-17 | Daniel Defense, DDM4, 5.56 rifle (w/ bump stk) | Federal, .223, 55 grain |
| Concert shooting | | Daniel Defense, DDM4, 5.56 rifle (w/ bump stk) | Reloaded .308 AP, misc headstamps |
| 58 dead / 500+ injured | | Daniel Defense, Model DD5, .308 caliber rifle | Reloaded .308 API, misc headstamps |
| | | Daniel Defense, Model DD5, .308 caliber rifle | |
| | | Colt, M4 Carbine, 5.56 rifle (with bump stock) | |
| | | Colt, M4 Carbine, 5.56 rifle (with bump stock) | |
| | | Colt, Competition model, 5.56 rifle (w/ bump stk) | |
| | | FNH, FN-15, 5.56 rifle (with bump stock) | |
| | | FNH, FN-15, 5.56 rifle (with bump stock) | |
| | | FNH, FN-15, 5.56 caliber rifle | |
| | | LMT, Defender 2000, 5.56 rifle (w/ bump stock) | |
| | | LMT, Model LM308MWS, .308 caliber rifle | |
| | | LMT, Model LM308MWS, .308 caliber rifle | |
| | | POF, Model P-15, .223 rifle (with bump stock) | |
| | | POF, Model P-15, .223 rifle (with bump stock) | |
| | | POF, Model P-308, .308 caliber rifle | |
| | | LWRC, M61C, 5.56 rifle, (with bump stock) | |
| | | LWRC, M61C, 5.56 rifle, (with bump stock) | |
| | | Ruger, Model SR-762, 7.62x51 caliber rifle | |
| | | Ruger, American, .308 rifle, bolt-action | |
| | | Christensen Arms, CA-15, .223 rifle (w/ bump stk) | |
| | | Noveske, N4, 5.56 rifle (w/ bump stock) | |

AR000751

HIGH PROFILE SHOOTINGS

| | | |
|---|---|---|
| Las Vegas, NV (cont'd) | 1-Oct-17 | SIG Sauer, Model 716, 7.62x51 caliber rifle |
| Sutherland Springs, TX Church shooting 26 dead / 20 injured | 5-Nov-17 | Ruger, Model AR-556, 5.56 caliber rifle |

Page 4

**To:**      Allen, Joseph J. ▮
**Cc:**      Gross, Charles R [Charles Gross@atf.gov]
**From:**    Brandon, Thomas E.
**Sent:**    Fri 11/10/2017 12:51:16 AM
**Subject:** Re: moving ahead on bump stocks

10-4, Joe

Sent from my iPad

On Nov 9, 2017, at 7:43 PM, Allen, Joseph J. ▮             wrote:

No response yet.

**From:** Allen, Joseph J.
**Sent:** Thursday, November 9, 2017 6:23 PM
**To:** Barnett, Gary E. (OAG) (JMD) ▮
**Subject:** FW: moving ahead on bump stocks

Gary, Per our discussions today, Acting Director Brandon has directed ATF staff to develop a
proposed rule for the regulation bump-stocks. On the advice of Chief Counsel as outlined in the
attached emails, he is requesting that the Department provide an informal written summary to
assist in the development of that rule.

I am available to discuss at your convenience.

Thank you, Joe

**From:** Brandon, Thomas E.
**Sent:** Thursday, November 9, 2017 6:11 PM
**To:** Gross, Charles R. <Charles.Gross@atf.gov>; Allen, Joseph J. ▮              >
**Subject:** Fwd: moving ahead on bump stocks

Chuck,

Thank you for your evaluation and recommendation. I concur.

Joe,

As discussed, I have advised Chief Counsel Gross and other senior executives that the
Department has reached a decision that ATF is to move forward with the issuance of a
regulation on bump-stocks. At my direction, you have consulted with the Deputy Attorney
General's Office as to implementation of this decision. As a result of that consultation, you have
advised me that ATF is to execute the decision ASAP.

Please communicate to OAG by forwarding this email that I have directed ATF personnel to
expeditiously execute that decision. To allow ATF to efficiently, effectively, and timely
accomplish this objective, please also request that the Department provide me with an informal
written summary outlining the basis for OLC's conclusion that the statue allows for further

AR000753

regulation.

ATF is totally committed to public safety and this undertaking is being executed under that umbrella.

Thanks,

Tom

Sent from my iPad
Begin forwarded message:

**From:** "Gross, Charles R." <Charles.Gross@atf.gov>
**Date:** November 9, 2017 at 5:18:03 PM EST
**To:** "Brandon, Thomas E." <Thomas.Brandon@atf.gov>
**Subject: moving ahead on bump stocks**

Sir:

I understand that we are expected to move forward with the regulation of bump stock devices, relying upon the legal analysis performed by OLC that concluded there was a path forward under the applicable law. I also understand that we will not be getting either a formal or informal opinion from OLC articulating its analysis of the relevant statutory language.



we ask OLC for a statement of its conclusion that a path forward exists, and a written summary of it's analytical framework.

V/r

Chuck

**To:**      Gross, Charles R.[Charles.Gross@atf.gov]; Allen, Joseph J. ███████████
**From:**    Thomas.Brandon@atf.gov
**Sent:**    Thur 11/9/2017 10:23:39 PM
**Subject:** Re: moving ahead on bump stocks

Chuck,

Much thanks for your email and I agree with you.

Joe,

Please ask: "OLC for a statement of its conclusion that a path forward exists, and a written summary of it's analytical framework."

Thanks,

Tom

Sent from my iPad

On Nov 9, 2017, at 5:18 PM, Gross, Charles R. <Charles.Gross@atf.gov> wrote:

> Sir:
>
> I understand that we are expected to move forward with the regulation of bump stock devices, relying upon the legal analysis performed by OLC that concluded there was a path forward under the applicable law. I also understand that we will not be getting either a formal or informal opinion from OLC articulating its analysis of the relevant statutory language. ████
>
> ████████████████████████████████████████████
>
> ████ we ask OLC for a statement of its conclusion that a path forward exists, and a written summary of it's analytical framework.
>
> V/r
>
> Chuck

**To:**     Allen, Joseph J███████████ Griffith, Earl L.███████████
**Cc:**     Ryan, William J███████████ Storey, Lisa L███████████
**From:**  Arends, Ross F.
**Sent:**  Thur 11/16/2017 5:24:27 PM
**Subject:** FW: Summary of Senator Cortez Masto briefing
Summary of Bump stock briefing for Sen Cortez Masto 11-2017.docx

Hi guys.  Fyi.  Summary of briefing attached.  Bill, just fyi for you too.

**Ross Arends**
Special Agent
Chief, Legislative Affairs
Office of Public and Governmental Affairs
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)
U.S. Department of Justice
99 New York Ave., NE
Washington, DC 20226
T: (202) 648-███
C: ███████████

 Protecting the Public
Serving Our Nation

From: Arends, Ross F.
Sent: Thursday, November 16, 2017 11:33 AM
To: Shaefer, Christopher C. <Christopher.Shaefer@atf.gov>; Bennett, Megan A. ███████████
Cc: Storey, Lisa L. <███████████
Subject: Summary of Senator Cortez Masto briefing

Attached is a summary of the briefing—good work by Melissa.

**Ross Arends** 
Special Agent
Chief, Legislative Affairs
Office of Public and Governmental Affairs
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)
U.S. Department of Justice
99 New York Ave., NE
Washington, DC 20226
T: (202) 648-███
C: ███████

 Protecting the Public
Serving Our Nation

**ATF Briefing: US Senator Catherine Cortez Masto**

November 14, 2017; 4:30 pm

204 Russell Senate Office Building

Washington, DC 20510

ATF Attendees:

Joe Allen, Chief of Staff

Lauren Goldschmidt, OLA

Earl Griffith, Chief, FATD

Ross Arends, Chief, LAD

Melissa Garcia, LAD

Matt Beccio, LAD

Senate Attendees:

Senator Catherine Cortez Masto, D-Nev

Joleen C. Rivera, staff

Laura Hatalsky, staff

Jordan Warner, staff

Prior to the commencement of the briefing and arrival of Senator Cortez Masto, two staffers had a chance to ask a couple of questions with regards to bump stocks. These questions included the definition of a high capacity

AR000757

magazine, reporting requirements of multiple firearm purchases, and a regulation in which bump stocks would be regulated without a change in legislation.

LAD Chief, Ross Arends introduced the ATF speakers which included Joe Allen and Earl Griffith. Both Joe and Earl followed with a brief introduction of themselves.

Joe began the briefing by explaining ATF's primary function and role which is to interpret and apply statute. Joe explained ATF's regulatory authority which includes The Gun Control Act and the National Firearms Act. He went on to explain ATF's process for classification and emphasized that submitting devices for classification is not required. He covered machine gun conversion devices and Title 26. He mentioned letters of classification are kept private by ATF as they contain proprietary information but that these classification letters often go public because producers use these classification letters to market their devices to retailers as being "legal/approved" by ATF.

Earl followed by describing the mechanics of both semi-automatic and machine guns. A graphic that displayed the internal firing mechanics for semi-auto and machine guns was shown to the Senator and her staff. Earl then explained the process that FATD goes through when a device is received for classification.

After, Joe went through a timeline of classification letters and mentioned that bump stocks first started appearing in 2006. He discussed a 2003 patent, the Akins Accelerator and the classifications and law suit that resulted from that device. Joe emphasized that bump firing is a shooting technique, not necessarily a device. He discussed the technique of bump firing, including the use of re-coil energy which results in an increase rate of fire. He also explained a single function of the trigger.

Earl demonstrated various versions of the technique throughout the briefing. Earl discussed the Akins platform, and the mechanical spring which makes it a machine gun, as previously classified by ATF. Senator Cortez Masto acknowledged bump firing as a technique and expressed her belief that all of bump firing devices should be outlawed. Senator Cortez Masto also expressed her appreciation of ATF and the work in which has gone in to this issue. She mentioned it was Congress' burden to clarify this issue, and not solely that of ATF.

Questions from Senator Cortez Masto included:

1. Has this briefing been given to the Senate Judiciary Members?
    a. No. This briefing has only been presented to House of Representatives staff on October 13, 2017 and the House Judiciary Committee on November 8, 2017.

2. Are all machine guns that existed prior to 1986 registered in a database?
    a. Joe Allen provided a brief history of the Firearms Owners' Protection Act in which Congress passed in 1986 to prohibit possession of machine guns that were not legally possessed prior to its enactment. Joe Allen also stated that all machine guns that were manufactured on or before 1986 should be registered in the National Firearms Registration and Transfer Record (NFRTR) system; however, there are some exceptions in which some have been left unregistered.

3. As far as the registration process is concerned with regards to NFA weapons, is it a onetime registration process or does the registration occur every time the NFA weapon changes hands or owners?
    a. Joe Allen explained the requirements in which NFA arms and their possessors must be registered in NFRTR, and whenever possession is transferred, the registration must be updated. A possessor is required to retain the approved NFA weapons application form as proof of a

weapon's registration and make it available to ATF upon request (26 U.S.C. § 5841 [e]). Manufacturers, importers, and makers of NFA weapons also are required to register each newly made, manufactured or imported arm.

4. The gunman purchased a significant amount of firearms in multiple states; are there tracking methods in which law enforcement can communicate with each other in order to flag a purchaser that is purchasing a significant amount of firearms?

   a. No, there aren't any type of tracking methods or red flags that law enforcement agencies are required to use to track someone who purchases multiple firearms within a specific time period other than multiple sales reporting requirements.

5. Are there any federal or state reporting requirements with regards to purchasing multiple firearms?

   a. Joe Allen explained the GCA requirement which requires federal firearms licensees (FFLs) to report the sale or disposition of two or more handguns to the same purchaser [18 U.S.C. § 923(g)(3)] if they occur at the same time, or within five consecutive business days of each other.

      He also explained the report of multiple sales requirement with regards to long guns in which ATF was authorized by the Office of Management and Budget (OMB) under information collection 1140-0100 to initiate similar reporting requirements on the multiple sale or other disposition of certain rifles from licensed firearms dealers in the four border states of Arizona, California, New Mexico and Texas. In November 2014, it was submitted for renewal without change and approved by OMB. The expiration date is Nov. 30, 2017.

6. Have you responded to the letter my colleagues sent to ATF? Do you intend to answer these questions at the hearing?

   On October 6, 2017, Senate Majority Whip John Cornyn of Texas, Conference Chairman John Thune of South Dakota, Joni Ernst of Iowa, James Inhofe and James Lankford of Oklahoma, Johnny Isakson of Georgia, Lisa Murkowski of Alaska, and Tim Scott of South Carolina requested that ATF "review the Obama Administration's interpretation and issue your own [an agency] interpretation.

   a. Joe Allen explained that ATF is diligently working to answer the subject questions and mentioned that they would be answered as soon as possible but that the process does take time and if the answers are available by the time of the hearing, they would be answered; but there was no guarantee of that happening.

7. For purposes of taking action as fast as possible in order to fix this issue, is there a regulatory fix as opposed to a legislative one for this issue?

   a. Joe Allen stated that a legislative fix is straight forward and direct whereas an attempt to fix this in a regulatory manner, would be challenging given that the definition of automatic would have to be reinterpreted. Joe mentioned that a Notice of Proposed Rule Making (NPRM) could be one way in which ATF goes about the regulatory fix although it can be a very lengthy process.

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
JOSEPH LOMBARDO, Sheriff

*Partners with the Community*

November 28, 2017

The Honorable Chuck Grassley
Chairman
Committee of the Judiciary
U.S. Senate
Washington, D.C. 20510

The Honorable Dianne Feinstein
Ranking Member
Committee of the Judiciary
U.S. Senate
Washington, D.C. 20510

Dear Chairman Grassley and Ranking Member Feinstein:

In the aftermath of the October 1, mass shooting in Las Vegas, there has been much discussion regarding "bump stock" devices which are designed to allow a semi-automatic weapon to simulate the rate of fire of a fully automatic weapon. The use of these devices played a key role in the killer's ability to fire over a thousand rounds into the crowd in just a matter of minutes.

While we can speculate on whether or not new legislation would prevent these types of horrific acts in the future, we must continue to evaluate and consider how to keep firearms out of the hands of criminals and those adjudicated mentally ill. In addition, we must hold individuals who commit crimes with firearms accountable to the full extent of the law.

In an effort to strengthen the current checks and balances that are in place, I along with the Major County Sheriffs of America (MCSA) support Senate bill 2135 (The Fix NICS Act of 2017) sponsored by Senator Cornyn. If enacted, this bill would strengthen and provide accountability for reporting to the NICS system.

At a recent meeting of the Major Cities Chiefs Association, the Director of the Bureau of Alcohol, Tobacco and Firearms (ATF) reported that current legislative authority did not extend to "bump stock" devices. I support giving the ATF the ability and resources needed to perform their duties to include the evaluation, regulation and potential restriction of these types of devices.

While I cannot attend the planned hearing, I look forward to further discussion and efforts to address the growing issues of violence we currently face in our communities.

Respectfully,

Joseph Lombardo, Sheriff
Clark County Nevada

Case 2:19-cv-00037-JNP Document 59-14 Filed 11/30/22 PageID.1229 Page 41 of 52



**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General           Washington, D.C. 20530

DEC 05 2017

The Honorable Charles E. Grassley
Chairman
Committee on the Judiciary
United States Senate
Washington, DC 20510

Dear Mr. Chairman:

In the aftermath of the tragedy that took place in Las Vegas on October 1, 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Department of Justice undertook a review of the options available relating to certain bump-stock devices. After thorough consideration, ATF has decided to initiate the process of promulgating a federal regulation interpreting the definition of "machinegun" in the National Firearms Act and Gun Control Act to clarify whether certain bump-stock devices fall within that definition.

On December 4, 2017, ATF initiated that process by submitting an Advanced Notice of Proposed Rulemaking (ANPRM) to the Office of Management and Budget. Publication of this ANPRM will provide the public and industry the opportunity to submit formal comments to ATF on certain preliminary topics that will help inform ATF's decision regarding further steps in the rulemaking process. As this process progresses, updates can be found at:
https://www.reginfo.gov/public/do/eoDetails?rrid=127759.

We fully appreciate the Committee's desire for the regulatory process to move as quickly as possible, and will provide additional information when it becomes available.

Sincerely,



Stephen E. Boyd
Assistant Attorney General

cc:     The Honorable Dianne Feinstein
        Ranking Member

AR000761



**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General                    Washington, D.C. 20530

**DEC 05 2017**

The Honorable Robert W. Goodlatte
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515

Dear Mr. Chairman:

In the aftermath of the tragedy that took place in Las Vegas on October 1, 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Department of Justice undertook a review of the options available relating to certain bump-stock devices. After thorough consideration, ATF has decided to initiate the process of promulgating a federal regulation interpreting the definition of "machinegun" in the National Firearms Act and Gun Control Act to clarify whether certain bump-stock devices fall within that definition.

On December 4, 2017, ATF initiated that process by submitting an Advanced Notice of Proposed Rulemaking (ANPRM) to the Office of Management and Budget. Publication of this ANPRM will provide the public and industry the opportunity to submit formal comments to ATF on certain preliminary topics that will help inform ATF's decision regarding further steps in the rulemaking process. As this process progresses, updates can be found at: https://www.reginfo.gov/public/do/eoDetails?rrid=127759.

We fully appreciate the Committee's desire for the regulatory process to move as quickly as possible, and will provide additional information when it becomes available.

Sincerely,

Stephen E. Boyd
Assistant Attorney General

cc:     The Honorable Jerrold Nadler
        Ranking Member



**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General          Washington, D.C. 20530

**DEC 05 2017**

The Honorable Richard Shelby
Chairman
Committee on Commerce, Justice,
  And Related Agencies
Committee on Appropriations
United States Senate
Washington, DC 20510

Dear Mr. Chairman:

In the aftermath of the tragedy that took place in Las Vegas on October 1, 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Department of Justice undertook a review of the options available relating to certain bump-stock devices. After thorough consideration, ATF has decided to initiate the process of promulgating a federal regulation interpreting the definition of "machinegun" in the National Firearms Act and Gun Control Act to clarify whether certain bump-stock devices fall within that definition.

On December 4, 2017, ATF initiated that process by submitting an Advanced Notice of Proposed Rulemaking (ANPRM) to the Office of Management and Budget. Publication of this ANPRM will provide the public and industry the opportunity to submit formal comments to ATF on certain preliminary topics that will help inform ATF's decision regarding further steps in the rulemaking process. As this process progresses, updates can be found at: https://www.reginfo.gov/public/do/eoDetails?rrid=127759.

We fully appreciate the Committee's desire for the regulatory process to move as quickly as possible, and will provide additional information when it becomes available.

Sincerely,

Stephen E. Boyd
Assistant Attorney General

cc:    The Honorable Jeanne Shaheen
       Ranking Member

AR000763



U.S. Department of Justice

Office of Legislative Affairs

Office of the Assistant Attorney General                     Washington, D.C. 20530

**DEC 05 2017**

The Honorable John Culberson
Chairman
Committee on Commerce, Justice,
 And Related Agencies
Committee on Appropriations
U.S. House of Representatives
Washington, DC 20515

Dear Mr. Chairman:

In the aftermath of the tragedy that took place in Las Vegas on October 1, 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Department of Justice undertook a review of the options available relating to certain bump-stock devices. After thorough consideration, ATF has decided to initiate the process of promulgating a federal regulation interpreting the definition of "machinegun" in the National Firearms Act and Gun Control Act to clarify whether certain bump-stock devices fall within that definition.

On December 4, 2017, ATF initiated that process by submitting an Advanced Notice of Proposed Rulemaking (ANPRM) to the Office of Management and Budget. Publication of this ANPRM will provide the public and industry the opportunity to submit formal comments to ATF on certain preliminary topics that will help inform ATF's decision regarding further steps in the rulemaking process. As this process progresses, updates can be found at:
https://www.reginfo.gov/public/do/eoDetails?rrid=127759.

We fully appreciate the Committee's desire for the regulatory process to move as quickly as possible, and will provide additional information when it becomes available.

Sincerely,

Stephen E. Boyd
Assistant Attorney General

cc:    The Honorable Jose Serrano
       Ranking Member

AR000764

 **Department of Justice**

STATEMENT OF

**THOMAS E. BRANDON
ACTING DIRECTOR
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
EXPLOSIVES
U.S. DEPARTMENT OF JUSTICE**

BEFORE THE

**COMMITTEE ON THE JUDICIARY
UNITED STATES SENATE**

FOR A HEARING ON

**"FIREARM ACCESSORY REGULATION AND ENFORCING
FEDERAL AND STATE REPORTING TO THE NATIONAL
INSTANT CRIMINAL BACKGROUND CHECK SYSTEM (NICS)
"**

PRESENTED

**DECEMBER 6, 2017**

AR000765

**Statement of**
**Thomas E. Brandon**
**Acting Director**
**Bureau of Alcohol, Tobacco, Firearms and Explosives**
**U.S. Department of Justice**

**Before the**
**Committee on the Judiciary**
**United States Senate**

**For a Hearing Entitled**
**"Firearm Accessory Regulation and Enforcing Federal and State Reporting to the National**
**Instant Criminal Background Check System (NICS)"**

**December 6, 2017**

Chairman Grassley, Ranking Member Feinstein, and Members of the Committee,

thank you for the opportunity to appear before you today to discuss firearm accessory

regulation, particularly as it relates to devices commonly known as "bump-stocks."

On behalf of all the men and women of the Bureau of Alcohol, Tobacco,

Firearms and Explosives (ATF), I extend heartfelt condolences to the family, friends,

and loved ones of those who were killed and injured in, as well as the survivors of,

the awful attacks in Las Vegas and, more recently, Sutherland Springs, Texas. The

ATF family knows all too well the horror of losing friends and family to gun

violence. The scope of these tragedies is yet another reminder to all at ATF of the

need for constant vigilance in fulfilling our mission to combat violent crime.

ATF's role in the Las Vegas investigation has been in support of the Las

Vegas Police Metro Department and other investigating agencies, with a focus on the

recovered firearms and ammunition. Because the investigation is ongoing, however, I

will be unable to answer specific questions about the case.

1

While carnage inflicted in Las Vegas is staggering, the support we are providing to the Las Vegas investigators is similar to the contributions ATF provides to local and state agencies every day to help solve and prevent crimes involving firearms violence. We are a small agency, but we embrace the challenge of our mission, and strive to be the best partner possible to our colleagues -- delivering investigative and technical expertise that drive results.

In addition to our crucial law enforcement mission, ATF is also the federal agency primarily responsible for enforcing the regulatory provisions of the federal firearms laws, particularly the National Firearms Act of 1934 (NFA) and the Gun Control Act of 1968 (GCA). ATF's authority to regulate firearms is, of course, limited by the terms of those statutes, and they do not empower ATF to regulate parts or accessories designed to be used with firearms. For ATF to regulate under these statutes, the device in question must fit within the GCA's definition of a firearm, or must fall within one of the specific categories of weapons defined in the NFA, such as machineguns.

The process of determining whether a device is a firearm or an NFA weapon is known as a "classification" determination. ATF encourages manufacturers and inventors to voluntarily submit devices to us for classification determinations to facilitate compliance with the law, including licensing requirements, and to provide certainty in the lawful firearms market. In making a classification, ATF determines only whether the device is a firearm, an NFA weapon, or a part or accessory that is *not* subject to ATF's regulatory authority. ATF does not have the authority to require any manufacturer or inventor to submit a product for classification under the GCA or

2

NFA, and it does *not* "approve" firearms, NFA weapons, or other items for manufacture or sale.

The horrible Las Vegas massacre has focused Congressional and public attention on specific type of firearm accessory - so-called "bump stocks." Bump-stocks are devices that are designed to facilitate a shooting technique known as "bump firing." Bump-firing is a technique in which the shooter uses the recoil energy of a semi-automatic firearm to accelerate the rate of fire by "bumping" the gun's stock off the shooter's shoulder or other item to re-engage the trigger more quickly, with the goal of mimicking automatic fire. Belt loops, slings, rubber-bands and other everyday items can be used to facilitate bump-firing, and some shooters are able to accomplish the technique without using any device or accessory.

ATF has, in the past, described 'bump stocks' as 'devices that are exclusively designed to increase the rate of fire of a semiautomatic firearm'. ATF began receiving requests to classify bump-stock type devices in 2003. The classification issue for these devices was whether the manner in, which they facilitated bump-firing functioned as a machinegun under the NFA. In 2006, ATF made determinations regarding certain bump-stock devices that were exclusively designed to increase the rate of fire of a semiautomatic firearm. For instance, one device utilized springs to mechanically capture the recoil energy and re-engage the trigger. ATF determined that such devices would constitute machineguns if those devices, once activated by a single pull of the trigger, would initiate an automatic firing cycle, which continued until either the finger is released or the ammunition supply is exhausted.

In the ensuing years, industry innovated and developed bump-stock devices

3

that did not include springs or similar components. Beginning in 2008, ATF received a series of classification requests for such bump-stock devices. We have classified most of these to be firearm accessories that are not subject to NFA regulation, either because the devices shot only one bullet per pull of the trigger, or because the devices did not appear to initiate a fully automatic firing cycle.

In the aftermath of the tragedy in Las Vegas, Members of Congress, including many on this Committee, and the general-public have asked ATF to re-examine its past decisions on bump-stocks to determine whether existing federal law can be interpreted to include these types of devices within the definition of machinegun. Under federal law, machineguns, with very limited exception, are prohibited. After a thorough review of the options available, we decided to begin the process of promulgating a federal regulation interpreting the definition of "machinegun" under the Gun Control Act and National Firearms Act to clarify whether certain bump-stock devices fall within that definition. I am pleased to advise the Committee that ATF initiated that regulatory process by submitting an Advanced Notice of Proposed Rulemaking (ANPRM) to the Office of Management and Budget for publication approval. Publication of this ANPRM will provide the public and industry the opportunity to provide formal comments to ATF on certain preliminary topics that will help inform ATF's decision regarding further steps in the rulemaking process. We fully appreciate the desire of the public and Congress that this process move as quickly as possible, and will continue to update this Committee as we progress.

With respect to the second aspect of this hearing, the crucial role that the National Instant Criminal Background Check System (NICS) serves in protecting the

4

AR000769

public from firearms-related violence, ATF works closely with our partners at the Federal Bureau of Investigation (FBI) to support its oversight and operation of that system. I am honored to participate in this panel with Douglas E. Lindquist, the FBI Assistant Director for the Criminal Justice Information Services Division (CJIS), the FBI division that runs the NICS. The Attorney General recently directed ATF and FBI to identify ways to improve reporting of federal data into the NICS, and we look forward to continuing our excellent working relationship with AD Lindquist and his team in completing this important task. Mr. Chairman and Members of the Committee, thank you again for the opportunity to discuss this matter with you today. I am happy to answer any questions you may have.

AR000770

Dec 2017

### Topline Points

- The Department of Justice announced today that the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has begun the process to promulgate a regulation that will interpret the definition of "machinegun" in the federal firearms laws to clarify whether so-called "bump-stock" devices fall within that definition.

- The initial step in this regulatory process is the publication of an Advanced Notice of Proposed Rulemaking (ANPRM) by ATF.

- ATF has submitted the ANPRM to the Office of Management and Budget for publication, and the Department anticipates it will be published in the near future.

- This ANPRM is intended to gather relevant information that is otherwise not readily available to ATF regarding the scope and nature of the market for bump-stock type devices.

- The federal rulemaking process follows procedures required by the Administrative Procedure Act. ATF and the Department will proceed in accordance with this process as quickly as feasible. The rulemaking process will provide the public and industry with the opportunity to submit formal comments to ATF about bump-stocks to inform any potential future steps and decisions.

### Background

- The National Firearms Act of 1934 (NFA) and Gun Control Act of 1968 (GCA), in relevant part, define "machineguns" to be:

  o "any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include . . . any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." See 26 U.S.C. 5845(b).

- The GCA regulates the possession and transfer of machineguns, making it unlawful for any person to possess a machinegun that was not lawfully possessed prior to the statute's effective date. See 18 U.S. C. 922(o).

- When the NFA was enacted in 1934, very few firearms, such as the "Thompson sub-machinegun," qualified as machineguns. Over time, however, as technology and innovation have advanced, manufacturers and inventors have developed devices that permit shooters to use semi-automatic rifles to replicate automatic fire.

- Manufacturers and inventors may voluntarily submit devices to ATF for a "classification," that is, a determination as to whether the device is considered a firearm or machinegun under federal law. If a device is not classified as a firearm or machinegun, it is deemed to be a part or accessory that is not subject to regulation by ATF.

  o An ATF "classification" is not an approval or authorization to manufacture a device; it only provides the submitter with ATF's determination as to whether the device as submitted meets the definition of firearm or machinegun under federal law.

- Since 2008, ATF has issued a number of private letters in which it has classified various bump-stock types devices to be unregulated parts and accessories, and not machinegun or machinegun conversion devices under existing federal law. One of these private letter classifications was issued to a manufacturer in 2010. The bump-stock device involved in that classification letter (the "Slide-Fire') has received intense public scrutiny after it was determined that one or more of those devices was used by the shooter in the horrific October 1, 2017, attack in Las Vegas.