3520). The collections of information in 21 CFR part 4, subpart B, regarding postmarketing safety reporting for combination products have been approved under OMB control number 0910–0834; the collections of information in part 803, regarding medical device reporting, have been approved under OMB control number 0910–0437; the collections of information in 21 CFR part 806, regarding corrections and removals, have been approved under OMB control number 0910–0359; the collections of information in 21 CFR part 807, subpart E, regarding premarket notification, have been approved under OMB control number 0910–0120; the collections of information in 21 CFR part 814, subparts A through E, regarding premarket approval, have been approved under OMB control number 0910–0231; the collections of information in 21 CFR part 810, regarding medical device recall authority, have been approved under OMB control number 0910–0432; the collections of information in part 820, regarding quality system regulations, have been approved under OMB control number 0910–0073; the collections of information regarding the MedWatch: The Food and Drug Administration Medical Products Reporting Program have been approved under OMB control number 0910–0291; and the collections of information regarding the Adverse Event Program for Medical Devices (Medical Product Safety Network (MedSun)) have been approved under OMB control number 0910–0471.

## V. References

The following references are on display in the Dockets Management Staff (see **ADDRESSES**) and are available for viewing by interested persons between 9 a.m. and 4 p.m., Monday through Friday; they are also available electronically at *https://www.regulations.gov.* FDA has verified the website addresses, as of the date this document publishes in the **Federal Register**, but websites are subject to change over time.

1. Food and Drug Administration, "Medical Device Reporting—Alternative Summary Reporting (ASR) Program, Guidance for Industry," available at *https://www.fda.gov/downloads/MedicalDevices/DeviceRegulationandGuidance/GuidanceDocuments/ucm072102.pdf.*

2. Food and Drug Administration, Event Problem Codes, available at *https://www.fda.gov/medicaldevices/deviceregulationandguidance/postmarketrequirements/reportingadverseevents/mdrradverseeventcodes/default.htm.*

3. Food and Drug Administration, FDA Form 3500A, available at *https://www.fda.gov/downloads/aboutfda/reportsmanualsforms/forms/ucm048334.pdf.*

4. MDUFA IV Commitment Letter, available at *https://www.fda.gov/downloads/ForIndustry/UserFees/MedicalDeviceUserFee/UCM535548.pdf.*

5. Appendix A, "Case Examples of Summary Malfunction Reporting," available in Docket No. FDA–2017–N–6730.

6. Electronic Medical Device Reporting (eMDR), (manufacturers may obtain information on how to prepare and submit reports in an electronic format that FDA can process, review, and archive), available at: *http://www.fda.gov/ForIndustry/FDAeSubmitter/ucm107903.htm.*

Dated: December 19, 2017.

**Leslie Kux,**

*Associate Commissioner for Policy.*

[FR Doc. 2017–27650 Filed 12–22–17; 8:45 am]

BILLING CODE 4164–01–P

---

## DEPARTMENT OF JUSTICE

## Bureau of Alcohol, Tobacco, Firearms, and Explosives

## 27 CFR Parts 478 and 479

**[Docket No. 2017R–22]**

**RIN 1140–AA52**

# Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices

**AGENCY:** Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).

**ACTION:** Advance notice of proposed rulemaking; request for comments.

**SUMMARY:** The Department of Justice anticipates issuing a Notice of Proposed Rulemaking (NPRM) that would interpret the statutory definition of "machinegun" in the National Firearms Act of 1934 and Gun Control Act of 1968 to clarify whether certain devices, commonly known as "bump fire" stocks, fall within that definition. Before doing so, the Department and ATF need to gather information and comments from the public and industry regarding the nature and scope of the market for these devices.

**DATES:** Written comments must be postmarked and electronic comments must be submitted on or before January 25, 2018. Commenters should be aware that the electronic Federal Docket Management System will not accept comments after Midnight Eastern Standard Time on the last day of the comment period.

**ADDRESSES:** You may submit comments, identified by docket number (2017R–22), by any of the following methods:

- *Federal eRulemaking Portal: http://www.regulations.gov.*
- *Fax:* (202) 648–9741.
- *Mail:* Vivian Chu, Mailstop 6N–518, Office of Regulatory Affairs, Enforcement Programs and Services, Bureau of Alcohol, Tobacco, Firearms, and Explosives, 99 New York Ave. NE, Washington DC 20226. *ATTN: 2017R–22.*

*Instructions:* All submissions received must include the agency name and docket number for this advance notice of proposed rulemaking (ANRPM). All comments received will be posted without change to the Federal eRulemaking portal, *http://www.regulations.gov,* including any personal information provided. For detailed instructions on submitting comments and additional information on the rulemaking process, see the "Public Participation" section of the **SUPPLEMENTARY INFORMATION** section of this document.

**FOR FURTHER INFORMATION CONTACT:** Vivian Chu, Office of Regulatory Affairs, Enforcement Programs Services, Bureau of Alcohol, Tobacco, Firearms, and Explosives, U.S. Department of Justice, 99 New York Ave. NE, Washington DC 20226; telephone: (202) 648–7070.

**SUPPLEMENTARY INFORMATION:**

## I. Background

The Attorney General is responsible for enforcing the Gun Control Act of 1968 (GCA), as amended, 18 U.S.C. 921 *et seq.*, and the National Firearms Act of 1934 (NFA), as amended, 26 U.S.C. 5841 *et seq.*[1] The Attorney General has delegated the responsibility for administering and enforcing these laws to the Director of ATF subject to the direction of the Attorney General and the Deputy Attorney General. *See* 28 CFR 0.130. Regulations in 27 CFR parts 478 and 479 implement the GCA and NFA.

The NFA defines "machinegun" as any weapon which: "shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." The term also includes "the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any

[1] NFA provisions still refer to the "Secretary of the Treasury." However, the Homeland Security Act of 2002, Public Law 107–296 (2002), transferred the functions of ATF from the Department of the Treasury to the Department of Justice, under the general authority of the Attorney General. 26 U.S.C. 7801(a)(2); 28 U.S.C. 599A(c)(1). Thus, this document refers to the Attorney General.

combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. 5845(b).

The GCA defines "machinegun" by reference to the NFA definition. The GCA regulates the transfer and possession of machineguns under 18 U.S.C. 922(o). Section 922(o) makes it unlawful for any person to possess a machinegun unless it was lawfully possessed prior to the effective date of the section or is under the authority of the federal government or a state.

Those engaged in the business of manufacturing, importing, or dealing in NFA firearms must be registered with the Attorney General. 26 U.S.C. 5801, 5802. When the NFA was enacted in 1934, only a handful of firearms qualified as machineguns, such as the Thompson submachine gun. Over time, however, as firearms technologies have advanced, manufacturers and the public have attempted to develop firearms, triggers, and other devices that permit shooters to use semiautomatic rifles to replicate automatic fire without converting these rifles into "machineguns" within the meaning of the statute. Consequently, questions have arisen about whether these types of devices should be classified as machineguns (or machinegun conversion devices) pursuant to section 5845(b). *See, e.g.*, Internal Revenue Ruling 55–528 (1955) (considering whether types of "Gatling Guns" constitute machineguns); ATF Ruling 2006–2 (examining a firearms accessory device that, when activated by a single pull of the trigger, initiated an automatic firing cycle that continued until release).

ATF has issued a number of private letters to individuals and manufacturers who voluntarily submitted such devices for classification under the NFA and GCA. In addition, ATF has promulgated a regulation that defines "machinegun." *See* 28 CFR 478.11, but that regulation mirrors the statutory language of the NFA and GCA and provides no further interpretation.

## II. Las Vegas Music Festival Attack and Requests To Regulate Bump Stock-Type Devices

"Bump fire" stocks (bump stocks) are devices used with a semiautomatic firearm to increase the firearm's cyclic firing rate to mimic nearly continuous automatic fire. Since 2008, ATF has issued a total of 10 private letters in which it classified various bump stock devices to be unregulated parts or accessories, and not machineguns or machinegun conversion devices as defined in section 5845(b) of the NFA or section 921(a)(23) of the GCA.

On October 1, 2017, 58 people were killed and several hundred were wounded in Las Vegas, Nevada, by a shooter firing one or more AR-type rifles affixed with a particular bump stock device. In 2010, the manufacturer of this particular device had supplied ATF with a sample of the bump stock, and ATF had examined and classified it as an unregulated firearm part, not subject to either the GCA or NFA.

Following the Las Vegas shooting, a significant amount of public attention has been focused on bump stock-type devices. ATF has received correspondence from the general public and from members of both houses of Congress requesting that ATF re-examine its past classification decisions concerning bump stock devices to determine whether they should be classified as machineguns within the meaning of section 5845(b). This ANPRM is the initial step in a regulatory process to interpret the definition of machinegun to clarify whether certain bump stock devices fall within that definition. If, in a subsequent rulemaking, the definition of machinegun under section 5845(b) is interpreted to include certain bump stock devices, ATF would then have a basis to re-examine its prior classification and rulings. *See Encino Motorcars* v. *Navarro*, 136 S. Ct. 2117, 2125 (2016); *FCC* v. *Fox Television Stations*, 556 U.S. 502, 515 (2009).

## III. Requests for Public Input

This ANPRM is intended to gather relevant information that is otherwise not readily available to ATF regarding the scope and nature of the market for bump stock type devices. Because ATF does not have the authority to regulate firearm parts and accessories, ATF does not know, with the exception of one well-known manufacturer, how many of the individuals or companies that received classification letters from ATF ever engaged in commercial production and distribution of these devices. Similarly, ATF does not know how many companies or individuals who did not submit bump stock type devices to ATF for voluntary classification determinations are now engaging or have previously been engaged in this business. Further, the individuals and companies who submitted bump stock type devices to ATF for voluntary classification determinations identified some specific target markets for such devices, such as individuals with disabilities, but ATF does not have any information about whether those markets or other markets ultimately materialized for the devices. Consequently, ATF seeks the following information:

### *Manufacturers*

Are you, or have you been, involved in the manufacturing of bump stock devices? If so:

1. In what part(s) of the manufacturing process, are/were you involved?
2. In what calendar years are/were you involved in the manufacturing process?
3. What is the wholesale price of the bump stock devices produced by the manufacturing process with which you are involved?
4. In each calendar year in which you have operated, how many bump stock devices were produced by the manufacturing process with which you are/were involved? Of this number, how many devices were sold to (a) retailers/resellers, and (b) directly to consumers?
5. What were your approximate gross receipts for the sale of these bump stock devices in each calendar year (from 2014—present)?
6. For what use or uses have you marketed bump stock devices?
7. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, what would you expect to be the impact on your gross receipts for calendar year 2018?
8. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, what other economic impact would you expect (*e.g.*, storage, unsellable inventory)?
9. What costs do you expect to be associated with the disposition of existing bump stock device inventory?
10. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, do you believe that there would be a viable (profitable) law-enforcement and/or military market for these devices? If so, please describe that market and your reasons for believing such a viable market exists.

### *Retailers*

Are you, or have you been, involved in the retail sale of bump stock devices? If so:

11. In what calendar years are/were you involved?
12. In each calendar year, how many bump stock devices did you sell?
13. In each calendar year, what was the average retail price of the bump stock devices you sold?

14. In each calendar year (from 2014—present) what were your approximate gross receipts derived from the retail sale of bump stock devices?

15. For what use or uses have you marketed bump stock devices?

16. In the 2018 calendar year, how many bump stock devices do you anticipate you will sell, assuming that such devices remain classified by ATF as an unregulated firearm part? What do you expect will be the average price at which those bump stock devices will be sold?

17. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, what would you expect to be the impact on your costs/expenses, gross receipts for calendar year 2018?

18. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, what other economic impact would you expect (*e.g.*, storage, unsellable inventory)?

19. What costs do you expect to be associated with the disposition of existing bump stock device inventory?

20. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, do you believe that there would be a viable (profitable) law-enforcement and/or military market for these devices? If so, please describe that market and your reasons for believing such a viable market exists.

*Consumers*

21. In your experience, where have you seen these devices for sale and which of these has been the most common outlet from which consumers have purchased these devices (*e.g.*, brick and mortar retail stores; online vendors; gun shows or similar events; or private sales between individuals)?

22. Based on your experience or observations, what is (or has been) the price range for these devices?

23. For what purposes are the bump stock devices used or advertised?

## IV. Statutory and Executive Order Review

This ANPRM has been drafted and reviewed in accordance with Executive Order 12866, "Regulatory Planning and Review," section 1(b), The Principles of Regulation, in accordance with Executive Order 13563, "Improving Regulation and Regulatory Review," section 1(b), General Principles of Regulation, and in accordance with Executive Order 13771, "Reducing Regulation and Controlling Regulatory Costs."

The Department has determined that this ANPRM is a significant regulatory action under Executive Order 12866, section 3(f), and accordingly this ANPRM has been reviewed by the Office of Management and Budget. However, this action does not propose or impose any requirements. The ANPRM is being published to seek information from the public about the practical impacts of interpreting the statutory definition of "machinegun" such that certain bump stock type devices may fall under that definition.

Furthermore, the requirements of the Regulatory Flexibility Act (RFA) do not apply to this action because, at this stage, it is an ANPRM and not a "rule" as defined in 5 U.S.C. 601. Following review of the comments received in response to this ANPRM, if ATF proceeds with a notice or notices of proposed rulemaking regarding this matter, ATF will conduct all relevant analyses as required by statute or Executive Order.

## V. Public Participation

### *A. Comments Sought*

ATF requests comments on this ANPRM from all interested persons with information about the enumerated questions. ATF specifically requests comments on the questions listed above, on the costs or benefits of the proposal in this ANPRM, and on the appropriate methodology and data for calculating those costs and benefits. Each commenter or commenting party should include the identifying number of the specific question(s) to which it is responding. ATF does not expect commenters to respond to every question; please feel free to respond only to those questions you feel you are able to answer.

All comments must reference the docket number 2017R–22, be legible, and include the commenter's complete first and last name and full mailing address. ATF will not consider, or respond to, comments that do not meet these requirements or comments containing profanity. In addition, if ATF cannot read your comment due to technical difficulties and cannot contact you for clarification, ATF may not be able to consider your comment.

ATF will take into account, as appropriate, the comments received on or before the closing date, and will give comments received after that date the same consideration if it is practical to do so, but assurance of consideration cannot be given except as to comments received on or before the closing date. ATF will not acknowledge receipt of comments.

### *B. Confidentiality*

ATF will make all comments meeting the requirements of this section available for public viewing at ATF and on the internet as part of the eRulemaking initiative, and subject to the Freedom of Information Act. ATF will not redact personal identifying information that appears within the comment and it will appear on the internet.

### *C. Proprietary or Confidential Business Information*

A commenter may submit to ATF information identified as proprietary or confidential business information. The commenter shall place any portion of a comment that is proprietary or confidential business information under law on pages separate from the balance of the comment with each page prominently marked "PROPRIETARY OR CONFIDENTIAL BUSINESS INFORMATION" at the top of the page.

ATF will not make proprietary or confidential business information submitted in compliance with these instructions available when disclosing the comments that it received, but will disclose that the commenter provided proprietary or confidential business information that ATF is holding in a separate file to which the public does not have access. If ATF receives a request to examine or copy this information, it will treat it as any other request under the Freedom of Information Act (5 U.S.C. 552). In addition, ATF will disclose such proprietary or confidential business information to the extent required by other legal process.

### *D. Submitting Comments*

Submit comments in any of three ways (but do not submit the same comments multiple times or by more than one method).

• *Federal eRulemaking Portal:* We strongly recommend that you submit your comments to ATF via the Federal eRulemaking portal. Visit *http://www.regulations.gov* and follow the instructions for submitting comments. Comments will be posted within a few days of being submitted. However, if large volumes of comments are being processed simultaneously, your comment may not be viewable for up to several weeks. Please keep the comment tracking number that *regulations.gov* provides after you have successfully uploaded your comment.

• *Mail:* Send written comments to the address listed in the **ADDRESSES** section

of this document. Written comments must appear in minimum 12 point font size (.17 inches), include the commenter's complete first and last name and full mailing address, be signed, and may be of any length.

• *Facsimile:* Submit comments by facsimile transmission to (202) 648–9741. Faxed comments must (1) Be legible and appear in minimum 12-point font size (.17 inches); (2) Be on 8½" x 11" paper; and (3) Be signed and contain the commenter's complete first and last name and full mailing address.

Disclosure

Copies of this advance notice, and the comments received will be available at *http://www.regulations.gov* (search for Docket No. 2017R–22) and for public inspection by appointment during normal business hours at: ATF Reading Room, Room 1E–063, 99 New York Avenue NE, Washington, DC 20226; telephone: (202) 648–8740.

**List of Subjects**

*27 CFR Part 478*

Administrative practice and procedure, Arms and munitions, Customs duties and inspection, Exports, Imports, Intergovernmental relations, Law enforcement officers, Military personnel, Penalties, Reporting and recordkeeping requirements, Research, Seizures and forfeitures, Transportation.

*27 CFR Part 479*

Administrative practice and procedure, Arms and munitions, Excise taxes, Exports, Imports, Military personnel, Penalties, Reporting and recordkeeping requirements, Seizures and forfeitures, and Transportation.

**Authority and Issuance**

This document is issued under the authority of 5 U.S.C. 552(a); 18 U.S.C. 921 *et seq.*; 26 U.S.C. 5841 *et seq.*

Dated: December 19, 2017.

**Thomas E. Brandon,**

*Deputy Director.*

[FR Doc. 2017–27898 Filed 12–21–17; 4:15 pm]

BILLING CODE 4410–FY–P

**DEPARTMENT OF JUSTICE**

**28 CFR Parts 35 and 36**

**[CRT Docket No. 138]**

**RIN 1190–AA61; RIN 1190–AA62; RIN 1190–AA64; RIN 1190–AA65**

## Nondiscrimination on the Basis of Disability; Notice of Withdrawal of Four Previously Announced Rulemaking Actions

**AGENCY:** Civil Rights Division, Department of Justice.

**ACTION:** Notice of withdrawal.

**SUMMARY:** The Department of Justice is announcing the withdrawal of four previously announced Advance Notices of Proposed Rulemaking (ANPRMs), pertaining to title II and title III of the Americans with Disabilities Act (ADA), for further review.

**DATES:** As of December 26, 2017, these four previously announced ANPRMs are formally withdrawn.

**ADDRESSES:** Disability Rights Section, Civil Rights Division, U.S. Department of Justice, P.O. Box 2885, Fairfax, VA 22031–0885.

**FOR FURTHER INFORMATION CONTACT:** Anne Raish, Acting Chief, Disability Rights Section, Civil Rights Division, U.S. Department of Justice, at (202) 307–0663 (voice or TTY) (not a toll-free number). Information may also be obtained from the Department's toll-free ADA Information Line at (800) 514–0301 (voice), or (800) 514–0383 (TTY).

You may obtain copies of this document in an alternative format by calling the ADA Information Line at (800) 514–0301 (voice), or (800) 514–0383 (TTY).

**SUPPLEMENTARY INFORMATION:** The Department of Justice is formally announcing the withdrawal of four previously announced Advance Notices of Proposed Rulemaking (ANPRMs) pertaining to title II and title III of the Americans with Disabilities Act (ADA): (1) Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of Public Accommodations (RIN 1190–AA61); (2) Nondiscrimination on the Basis of Disability in State and Local Government Services; Next Generation 9–1–1 (RIN 1190–AA62); (3) Nondiscrimination on the Basis of Disability by State and Local Governments and Places of Public Accommodation; Equipment and Furniture (RIN 1190–AA64); and (4) Nondiscrimination on the Basis of Disability: Accessibility of Web Information and Services of State and Local Government (RIN 1190–AA65).

**Reasons for Withdrawal**

*A. Accessibility of Web Information*

On July 26, 2010, the Department published an ANPRM regarding the accessibility of Web information and services of state and local government entities (title II) and public accommodations (title III). 75 FR 43460. The Department subsequently bifurcated the rulemaking to deal separately with state and local government entities subject to title II (RIN 1190–AA65) and public accommodations subject to title III (RIN 1190–AA61), and proceeded first with the title II rulemaking. On May 9, 2016, the Department published a Supplemental Advance Notice of Proposed Rulemaking (SANPRM) regarding title II Web accessibility to seek additional public input regarding a wide range of issues pertaining to the accessibility of Web information and services of state and local governments. 81 FR 28658. The Department has not published any rulemaking document regarding title III Web accessibility since the 2010 ANPRM.

The Department is evaluating whether promulgating regulations about the accessibility of Web information and services is necessary and appropriate. Such an evaluation will be informed by additional review of data and further analysis. The Department will continue to assess whether specific technical standards are necessary and appropriate to assist covered entities with complying with the ADA. Accordingly, the Department is withdrawing the two previously announced ANPRMs related to the accessibility of Web information and services, "Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations" (RIN 1190–AA61) (75 FR 43460), and "Nondiscrimination on the Basis of Disability: Accessibility of Web Information and Services of State and Local Government" (RIN 1190–AA65) (81 FR 28658).

*B. Accessibility of Equipment and Furniture*

The Department initiated a review of accessibility of equipment and furniture on July 26, 2010, with the publication of an ANPRM to consider possible changes to requirements under titles II and III of the ADA to ensure that non-fixed equipment and furniture provided by covered entities are accessible to individuals with disabilities. 75 FR 43452. While some types of fixed equipment and furniture are explicitly covered by the ADA Standards for Accessible Design, *see, e.g.*, 28 CFR

(Billing Code: 4410-FY-P)

**DEPARTMENT OF JUSTICE**

**Bureau of Alcohol, Tobacco, Firearms, and Explosives**

**27 CFR Parts 478 and 479**

**[Docket No. 2017R-22]**

**RIN 1140-AA52**

**Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices**

**AGENCY:** Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).

**ACTION:** Advance notice of proposed rulemaking; request for comments.

**SUMMARY:** The Department of Justice anticipates issuing a Notice of Proposed Rulemaking (NPRM) that would interpret the statutory definition of "machinegun" in the National Firearms Act of 1934 and Gun Control Act of 1968 to clarify whether certain devices, commonly known as "bump fire" stocks, fall within that definition. Before doing so, the Department and ATF need to gather information and comments from the public and industry regarding the nature and scope of the market for these devices.

**DATES:** Written comments must be postmarked and electronic comments must be submitted on or before [INSERT DATE 30 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER]. Commenters should be aware that the electronic Federal Docket Management System will not accept comments after Midnight Eastern Standard Time on the last day of the comment period.

**ADDRESSES:** You may submit comments, identified by docket number (2017R-22), by any of the following methods:

- Federal eRulemaking Portal: *http://www.regulations.gov.*
- Fax: (202) 648-9741
- Mail: Vivian Chu, Mailstop 6N-518, Office of Regulatory Affairs, Enforcement Programs and Services, Bureau of Alcohol, Tobacco, Firearms, and Explosives, 99 New York Ave. NE, Washington D.C. 20226. *ATTN: 2017R-22.*

**Instructions:** All submissions received must include the agency name and docket number for this advance notice of proposed rulemaking (ANRPM). All comments received will be posted without change to the Federal eRulemaking portal, *http://www.regulations.gov*, including any personal information provided. For detailed instructions on submitting comments and additional information on the rulemaking process, see the "Public Participation" section of the **SUPPLEMENTARY INFORMATION** section of this document.

**FOR FURTHER INFORMATION CONTACT:** Vivian Chu, Office of Regulatory Affairs, Enforcement Programs Services, Bureau of Alcohol, Tobacco, Firearms, and Explosives, U.S. Department of Justice, 99 New York Ave, NE, Washington D.C. 20226; telephone: (202) 648-7070.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

The Attorney General is responsible for enforcing the Gun Control Act of 1968 (GCA), as amended, 18 U.S.C. 921 et. seq., and the National Firearms Act of 1934

(NFA), as amended, 26 U.S.C. 5841 et. seq.[1] The Attorney General has delegated the responsibility for administering and enforcing these laws to the Director of ATF subject to the direction of the Attorney General and the Deputy Attorney General. *See* 28 CFR 0.130. Regulations in 27 CFR Parts 478 and 479 implement the GCA and NFA.

The NFA defines "machinegun" as any weapon which: "shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." The term also includes "the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. 5845(b).

The GCA defines "machinegun" by reference to the NFA definition. The GCA regulates the transfer and possession of machineguns under 18 U.S.C. 922(o). Section 922(o) makes it unlawful for any person to possess a machinegun unless it was lawfully possessed prior to the effective date of the section or is under the authority of the federal government or a state.

Those engaged in the business of manufacturing, importing, or dealing in NFA firearms must be registered with the Attorney General. 26 U.S.C. 5801, 5802. When the NFA was enacted in 1934, only a handful of firearms qualified as machineguns, such as

[1] NFA provisions still refer to the "Secretary of the Treasury." However, the Homeland Security Act of 2002, Pub. L. 107-296 (2002), transferred the functions of ATF from the Department of the Treasury to the Department of Justice, under the general authority of the Attorney General. 26 U.S.C. 7801(a)(2); 28 U.S.C. 599A(c)(1). Thus, this document refers to the Attorney General.

the Thompson submachine gun. Over time, however, as firearms technologies have advanced, manufacturers and the public have attempted to develop firearms, triggers, and other devices that permit shooters to use semiautomatic rifles to replicate automatic fire without converting these rifles into "machineguns" within the meaning of the statute. Consequently, questions have arisen about whether these types of devices should be classified as machineguns (or machinegun conversion devices) pursuant to section 5845(b). *See, e.g.*, Internal Revenue Ruling 55-528 (1955) (considering whether types of "Gatling Guns" constitute machineguns); ATF Ruling 2006-2 (examining a firearms accessory device that, when activated by a single pull of the trigger, initiated an automatic firing cycle that continued until release).

ATF has issued a number of private letters to individuals and manufacturers who voluntarily submitted such devices for classification under the NFA and GCA. In addition, ATF has promulgated a regulation that defines "machinegun," *See* 28 CFR 478.11, but that regulation mirrors the statutory language of the NFA and GCA and provides no further interpretation.

**II. Las Vegas Music Festival Attack and Requests to Regulate Bump Stock-type Devices**

"Bump fire" stocks (bump stocks) are devices used with a semiautomatic firearm to increase the firearm's cyclic firing rate to mimic nearly continuous automatic fire. Since 2008, ATF has issued a total of 10 private letters in which it classified various bump stock devices to be unregulated parts or accessories, and not machineguns or machinegun conversion devices as defined in section 5845(b) of the NFA or section 921(a)(23) of the GCA.

On October 1, 2017, 58 people were killed and several hundred were wounded in Las Vegas, Nevada, by a shooter firing one or more AR-type rifles affixed with a particular bump stock device. In 2010, the manufacturer of this particular device had supplied ATF with a sample of the bump stock, and ATF had examined and classified it as an unregulated firearm part, not subject to either the GCA or NFA.

Following the Las Vegas shooting, a significant amount of public attention has been focused on bump stock-type devices. ATF has received correspondence from the general public and from members of both houses of Congress requesting that ATF re-examine its past classification decisions concerning bump stock devices to determine whether they should be classified as machineguns within the meaning of section 5845(b). This ANPRM is the initial step in a regulatory process to interpret the definition of machinegun to clarify whether certain bump stock devices fall within that definition. If, in a subsequent rulemaking, the definition of machinegun under section 5845(b) is interpreted to include certain bump stock devices, ATF would then have a basis to re-examine its prior classification and rulings. *See Encino Motorcars v. Navarro*, 136 S. Ct. 2117, 2125 (2016); *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009).

**III. Requests for Public Input**

This ANPRM is intended to gather relevant information that is otherwise not readily available to ATF regarding the scope and nature of the market for bump stock type devices. Because ATF does not have the authority to regulate firearm parts and accessories, ATF does not know, with the exception of one well-known manufacturer, how many of the individuals or companies that received classification letters from ATF ever engaged in commercial production and distribution of these devices. Similarly, ATF

does not know how many companies or individuals who did not submit bump stock type devices to ATF for voluntary classification determinations are now engaging or have previously been engaged in this business. Further, the individuals and companies who submitted bump stock type devices to ATF for voluntary classification determinations identified some specific target markets for such devices, such as individuals with disabilities, but ATF does not have any information about whether those markets or other markets ultimately materialized for the devices. Consequently, ATF seeks the following information:

MANUFACTURERS:

Are you, or have you been, involved in the manufacturing of bump stock devices? If so:

1. In what part(s) of the manufacturing process, are/were you involved?

2. In what calendar years are/were you involved in the manufacturing process?

3. What is the wholesale price of the bump stock devices produced by the manufacturing process with which you are involved?

4. In each calendar year in which you have operated, how many bump stock devices were produced by the manufacturing process with which you are/were involved? Of this number, how many devices were sold to (a) retailers/resellers, and (b) directly to consumers?

5. What were your approximate gross receipts for the sale of these bump stock devices in each calendar year (from 2014 – present)?

6. For what use or uses have you marketed bump stock devices?

7. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, what would you expect to be the impact on your gross receipts for calendar year 2018?

8. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, what other economic impact would you expect (*e.g.*, storage, unsellable inventory)?

9. What costs do you expect to be associated with the disposition of existing bump stock device inventory?

10. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, do you believe that there would be a viable (profitable) law-enforcement and/or military market for these devices? If so, please describe that market and your reasons for believing such a viable market exists.

RETAILERS:

Are you, or have you been, involved in the retail sale of bump stock devices? If so:

11. In what calendar years are/were you involved?

12. In each calendar year, how many bump stock devices did you sell?

13. In each calendar year, what was the average retail price of the bump stock devices you sold?

14. In each calendar year (from 2014 – present) what were your approximate gross receipts derived from the retail sale of bump stock devices?

15. For what use or uses have you marketed bump stock devices?

16. In the 2018 calendar year, how many bump stock devices do you anticipate you will sell, assuming that such devices remain classified by ATF as an unregulated

firearm part? What do you expect will be the average price at which those bump stock devices will be sold?

17. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, what would you expect to be the impact on your costs/expenses, gross receipts for calendar year 2018?

18. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, what other economic impact would you expect (*e.g.*, storage, unsellable inventory)?

19. What costs do you expect to be associated with the disposition of existing bump stock device inventory?

20. If ATF classified bump stock devices as "machineguns" under the Gun Control Act of 1968, as amended, and the National Firearms Act of 1934, as amended, do you believe that there would be a viable (profitable) law-enforcement and/or military market for these devices? If so, please describe that market and your reasons for believing such a viable market exists.

CONSUMERS:

21. In your experience, where have you seen these devices for sale and which of these has been the most common outlet from which consumers have purchased these devices (e.g., brick and mortar retail stores; online vendors; gun shows or similar events; or private sales between individuals)?

22. Based on your experience or observations, what is (or has been) the price range for these devices?

23. For what purposes are the bump stock devices used or advertised?

**IV. Statutory and Executive Order Review**

This ANPRM has been drafted and reviewed in accordance with Executive Order 12866, "Regulatory Planning and Review," section 1(b), The Principles of Regulation, in

accordance with Executive Order 13563, "Improving Regulation and Regulatory Review," section 1(b), General Principles of Regulation, and in accordance with Executive Order 13771, "Reducing Regulation and Controlling Regulatory Costs."

The Department has determined that this ANPRM is a significant regulatory action under Executive Order 12866, section 3(f), and accordingly this ANPRM has been reviewed by the Office of Management and Budget. However, this action does not propose or impose any requirements. The ANPRM is being published to seek information from the public about the practical impacts of interpreting the statutory definition of "machinegun" such that certain bump stock type devices may fall under that definition.

Furthermore, the requirements of the Regulatory Flexibility Act (RFA) do not apply to this action because, at this stage, it is an ANPRM and not a "rule" as defined in 5 U.S.C. 601. Following review of the comments received in response to this ANPRM, if ATF proceeds with a notice or notices of proposed rulemaking regarding this matter, ATF will conduct all relevant analyses as required by statute or Executive Order.

**V. Public Participation**

A. *Comments Sought*

ATF requests comments on this ANPRM from all interested persons with information about the enumerated questions. ATF specifically requests comments on the questions listed above, on the costs or benefits of the proposal in this ANPRM, and on the appropriate methodology and data for calculating those costs and benefits. Each commenter or commenting party should include the identifying number of the specific question(s) to which it is responding. ATF does not expect commenters to respond to

every question; please feel free to respond only to those questions you feel you are able to answer.

All comments must reference the docket number 2017R-22, be legible, and include the commenter's complete first and last name and full mailing address. ATF will not consider, or respond to, comments that do not meet these requirements or comments containing profanity. In addition, if ATF cannot read your comment due to technical difficulties and cannot contact you for clarification, ATF may not be able to consider your comment.

ATF will take into account, as appropriate, the comments received on or before the closing date, and will give comments received after that date the same consideration if it is practical to do so, but assurance of consideration cannot be given except as to comments received on or before the closing date. ATF will not acknowledge receipt of comments.

*B. Confidentiality*

ATF will make all comments meeting the requirements of this section available for public viewing at ATF and on the Internet as part of the eRulemaking initiative, and subject to the Freedom of Information Act. ATF will not redact personal identifying information that appears within the comment and it will appear on the Internet.

*C. Proprietary or Confidential Business Information*

A commenter may submit to ATF information identified as proprietary or confidential business information. The commenter shall place any portion of a comment that is proprietary or confidential business information under law on pages separate from

the balance of the comment with each page prominently marked "PROPRIETARY OR CONFIDENTIAL BUSINESS INFORMATION" at the top of the page.

ATF will not make proprietary or confidential business information submitted in compliance with these instructions available when disclosing the comments that it received, but will disclose that the commenter provided proprietary or confidential business information that ATF is holding in a separate file to which the public does not have access. If ATF receives a request to examine or copy this information, it will treat it as any other request under the Freedom of Information Act (5 U.S.C. 552). In addition, ATF will disclose such proprietary or confidential business information to the extent required by other legal process.

*D. Submitting Comments*

Submit comments in any of three ways (but do not submit the same comments multiple times or by more than one method).

- *Federal eRulemaking Portal:* We strongly recommend that you submit your comments to ATF via the Federal eRulemaking portal. Visit http://www.regulations.gov and follow the instructions for submitting comments. Comments will be posted within a few days of being submitted. However, if large volumes of comments are being processed simultaneously, your comment may not be viewable for up to several weeks. Please keep the comment tracking number that regulations.gov provides after you have successfully uploaded your comment.

- *Mail:* Send written comments to the address listed in the **ADDRESSES** section of this document. Written comments must appear in minimum 12

point font size (.17 inches), include the commenter's complete first and last name and full mailing address, be signed, and may be of any length.

- *Facsimile:* Submit comments by facsimile transmission to (202) 648-9741. Faxed comments must (1) Be legible and appear in minimum 12-point font size (.17 inches); (2) Be on 8½" x 11" paper; and (3) Be signed and contain the commenter's complete first and last name and full mailing address.

**Disclosure**

Copies of this advance notice, and the comments received will be available at http://www.regulations.gov (search for Docket No. 2017R-22) and for public inspection by appointment during normal business hours at: ATF Reading Room, Room 1E-063, 99 New York Avenue, NE., Washington, DC 20226; telephone: (202) 648-8740.

**List of Subjects**

**27 CFR Part 478**

Administrative practice and procedure, Arms and munitions, Customs duties and inspection, Exports, Imports, Intergovernmental relations, Law enforcement officers, Military personnel, Penalties, Reporting and recordkeeping requirements, Research, Seizures and forfeitures, Transportation.

**27 CFR Part 479**

Administrative practice and procedure, Arms and munitions, Excise taxes, Exports, Imports, Military personnel, Penalties, Reporting and recordkeeping requirements, Seizures and forfeitures, and Transportation.

**Authority and Issuance**

This document is issued under the authority of 5 U.S.C. 552(a); 18 U.S.C. 921 *et seq.*; 26 U.S.C. 5841 *et seq.*

Dated: December 19, 2017.

Thomas E. Brandon,
Deputy Director.



Federal Register
Vol. 83, No. 37
Friday, February 23, 2018

# Presidential Documents

Title 3—

The President

Memorandum of February 20, 2018

## Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices

**Memorandum for the Attorney General**

After the deadly mass murder in Las Vegas, Nevada, on October 1, 2017, I asked my Administration to fully review how the Bureau of Alcohol, Tobacco, Firearms and Explosives regulates bump fire stocks and similar devices.

Although the Obama Administration repeatedly concluded that particular bump stock type devices were lawful to purchase and possess, I sought further clarification of the law restricting fully automatic machineguns.

Accordingly, following established legal protocols, the Department of Justice started the process of promulgating a Federal regulation interpreting the definition of "machinegun" under Federal law to clarify whether certain bump stock type devices should be illegal. The Advanced Notice of Proposed Rulemaking was published in the Federal Register on December 26, 2017. Public comment concluded on January 25, 2018, with the Department of Justice receiving over 100,000 comments.

Today, I am directing the Department of Justice to dedicate all available resources to complete the review of the comments received, and, as expeditiously as possible, to propose for notice and comment a rule banning all devices that turn legal weapons into machineguns.

Although I desire swift and decisive action, I remain committed to the rule of law and to the procedures the law prescribes. Doing this the right way will ensure that the resulting regulation is workable and effective and leaves no loopholes for criminals to exploit. I would ask that you keep me regularly apprised of your progress.

You are authorized and directed to publish this memorandum in the *Federal Register.*

THE WHITE HOUSE,
*Washington, February 20, 2018*

[FR Doc. 2018-03868
Filed 2-22-18; 8:45 am]
Billing code 4410-19-P