

**International Association of Chiefs of Police**
44 Canal Center Plaza, Suite 200
Alexandria, VA 22314-2357
P: 703-836-6767; 1-800-THE IACP
F: 703-836-4543
www.theIACP.org

February 22, 2018

President Donald J. Trump
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C. 20500

Dear President Trump:

On behalf of the 30,000 members of the International Association of Chiefs of Police, I am writing to thank you for directing the Attorney General to develop regulations to ban the sale and use of bump-fire stocks and similar devices. Your leadership in addressing the threat posed by bump stocks will assist in our efforts to make communities safer and protect the lives of both citizens and law enforcement officers.

The IACP strongly supports the quick implementation of this regulation and believes that it should, at a minimum, prohibit the possession, import, manufacture, transfer and sale of bump-fire devices, trigger cranks, and similar attachments or accessories that are designed to increase or modify semi-automatic firearms to automatic weapons. In addition, the IACP believes that individuals who are currently in possession of a trigger crank, bump-fire device, or similar attachments should be required to register such devices with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

Again, thank you for your leadership in addressing bump stocks. The IACP looks forward to working with you and your administration as we identify and implement additional measures that will reduce the level of firearms violence in the United States.

Sincerely,

Louis M. Dekmar
IACP President

**President**
Chief Louis M. Dekmar
LaGrange, GA, Police Department

**Immediate Past President**
Chief Donald W. De Lucca
Doral, FL, Police Department

**First Vice President**
Chief Paul M. Cell
Montclair State University
NJ, Police Department

**Second Vice President**
Chief Steven R. Casstevens
Buffalo Grove, IL,
Police Department

**Third Vice President**
Chief Cynthia E. Renaud
Folsom, CA, Police Department

**Fourth Vice President**
Chief Dwight E. Henninger
Vail, CO, Police Department

**Vice President at Large**
Chief Richard E. Smith
Wakefield, MA, Police Department

**Vice President at Large**
Chief Wade Carpenter
Park City, UT, Police Department

**International Vice President**
Commissioner of Police
Ellison Greenslade
Royal Bahamas Police Force
Nassau, Bahamas

**Vice President-Treasurer**
Chief Ken A. Walker
West University Place, TX,
Police Department

**General Chair Division of State Associations of Chiefs of Police**
Chief Timothy Lowery
Florissant, MO, Police Department

**General Chair Division of State and Provincial Police**
Colonel Tracy Trott
Tennessee Highway Patrol

**General Chair of the Midsize Agencies Division**
Chief David B. Rausch
Knoxville, TN, Police Department

**Parliamentarian**
Michael A. Caldwell
DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin, LLC
Dunwoody, GA

**Executive Director /
Chief Executive Officer**
Vincent Talucci
Alexandria, VA

**Deputy Executive Director**
Terrence M. Cunningham
Alexandria, VA

AR001004

**To:** Jones, Kevin R (OLP) / JMD) ▮▮▮▮▮▮▮▮ Gormsen, Eric T (OLP)
(JMD ▮▮ Hinchman, Robert (OLP) (JMD) ▮▮▮▮▮▮▮ Crytzer,
Katherine (OLP) (JMD) ▮▮▮▮▮▮ Gross, Charles R.[Charles.Gross@atf.gov]; Allen,
Joseph J. ▮▮▮▮▮▮ Epstein, Eric M.
**Cc:** ▮▮ Richardson, Marvin G. ▮▮▮▮▮▮ Gilbert, Curtis W. ▮▮▮▮▮▮▮ Chu,
Vivian S ▮▮▮▮▮ Lee, Jeana
**From:** Lange, Andrew R.
**Sent:** Fri 2/23/2018 11:51:33 PM
**Subject:** FW: Sample Comment Letters
Letter 026 (Braum & Assoc) rec 1-25-18.pdf
Letter 004 (Gun Owners of America) rec 1.16.18.pdf
Fax 008 (Firearms Policy Coalition) rec 1-25-18.pdf

Good afternoon,

Here are some sample bump stock comments for your review. These are some of the more well-written or informative comments (many others are more harsh in their disagreement with possible regulation).

Thanks,

Andrew

**From:** Chu, Vivian S.
**Sent:** Friday, February 23, 2018 4:56 PM
**To:** Lange, Andrew R. ▮▮▮▮▮▮▮▮▮
**Subject:** Sample Comment Letters

Sample of Comments:

Attached are some letters from commenters such as Scott Braum & Associates, Gun Owners of America (many members of GOA submitted a substantially similar comment to regulations.gov), and the Firearms Policy Coalition.

Commenter responding to consumer questions with other objections
https://www.regulations.gov/document?D=ATF-2018-0001-16900

Commenter responding to consumer questions and is a Class III holder.
https://www.regulations.gov/document?D=ATF-2018-0001-35566

Commenter discussing potential unit cost for a store (see page 2)
https://www.regulations.gov/document?D=ATF-2018-0001-35568

Comment from a manufacturer
https://www.regulations.gov/document?D=ATF-2018-0001-13051

Commenter responding to consumer questions and brings up that it will have low/no impact on reducing crime or public safety.
https://www.regulations.gov/document?D=ATF-2018-0001-35567

Comment on bumps stocks not changing mechanics of firearm, statutory authority, Second

Amendment.
https://www.regulations.gov/document?D=ATF-2018-0001-10723
Comment sent in by Everytown for Gun Safety- you have to click on the PDF.
https://www.regulations.gov/document?D=ATF-2018-0001-35549

AR001006

## SCOTT L. BRAUM & ASSOCIATES, LTD.

Attorneys at Law
812 East Franklin Street
Suite C
Dayton, Ohio 45459
937-396-0089

WRITER'S EMAIL
im@braumlaw.com

WRITER'S FACSIMILE
937-396-1046

January 24, 2018

Vivian Chu
Mailstop 6N-518
Office of Regulatory Affairs
Enforcement Programs and Services
Bureau of Alcohol, Tobacco, Firearms, and Explosives
99 New York Avenue NE
Washington, D.C. 20226
ATTN: 2017R-22

RE:     Bureau of Alcohol, Tobacco, Firearms, and Explosives
        ANPRM Docket # 2017R-22

Dear Ms. Chu:

The attorneys at our firm have for decades advised domestic and international clients
with regard to legal and regulatory matters pertaining to the sale and distribution of firearms.
We have worked extensively in the sectors of business regulated by the Gun Control Act and the
National Firearms Act, and our firm's clientele includes a number of manufacturers, distributors,
and retailers of firearms as well as firearm accessories such as those that are the subject of the
above-referenced advance notice of proposed rulemaking. We are familiar with virtually every
aspect of firearm laws and regulations as well as the practical workings of the industry and its
marketing/distribution channels, etc. In our experience, in response to Question No. 6 of ATF's
ANPRM, bump stocks have been marketed as a safe, legal, and effective means of bump-firing a
semi-automatic firearm without compromising the shooter's aim and accuracy in the way that
such is compromised when bump-firing a firearm without a bump stock.

Bump-firing is a shooting technique that has been practiced with semi-automatic firearms
for decades and does not require any special device such as those that are the subject of the
ANPRM. A search of youtube.com for bump-firing videos will demonstrate that shooters can
effectively bump-fire semi-automatic firearms both from hip and from the shoulder. The process
involves using the recoil of a semi-automatic firearm to remove the shooter's finger from the
trigger allowing it to naturally reset for a subsequent pull/shot. Shooters have been bump-firing
semi-automatic firearms since long before ATF correctly deemed bump stock devices not to be
"machineguns." Since ATF's prior determination, however, bump stock devices have been
purchased and enjoyed by thousands of shooters around the country.

AR001007

SCOTT L. BRAUM AND ASSOCIATES, LTD
January 24, 2017
Page 2

The marketing of bump stocks as a legal, safe, and effective means to assist the natural reset of a semi-automatic firearm is in keeping with Congress' definition of "machinegun," which is not a matter of interpretation, and is not in any way ambiguous. "A machinegun is a weapon that fires 'automatically more than one shot, without manual reloading, by a single function of the trigger.'" *See, Akins v. United States,* 312 Fed. Apx. 197, 200 (11th Cir. 2009); *citing* 26 U.S.C. § 5845(b). Moreover, the definition of machinegun also includes any "combination of parts designed and intended for use in converting a weapon into a machinegun." *See,* 26 U.S.C. 5845(b). Accordingly, whether ATF -- or anyone else -- wants a firearm or device to be deemed a machinegun is inapposite to the question of whether such actually is a machinegun as that term is defined by the law. The only proper question in analyzing a bump stock or anything else is whether such enables a firearm to fire more than one round with "a single function of the trigger" -- a phrase that has been defined and applied consistently for years. If a device enables a firearm to fire more than one round per a single function of the trigger, then it is a "machinegun." If it does not, then it is not a "machinegun," and it is beyond ATF's administrative authority to add anything to that analysis.

"Single function of the trigger" is clearly defined and objectively provable, relating entirely to the actual functioning of a firearm's mechanisms. For instance, ATF and courts have observed that, at the very least, the pulling of a trigger from its forward position to its backward position constitutes a "function." *See, e.g., Staples v. United States,* 511 U.S. 600 (1994). For purposes of the analysis of bump stocks, there can be no question that each separate pull of a trigger constitutes a separate function of the trigger, and the marketing and operation of bump stocks has been consistent with the statutory definition. That is, a bump stock does not alter the mechanical working of a firearm in the way that, for instance, installation of an auto sear would. Rather, it merely facilitates a shooter's operation of a semi-automatic firearm by separating the shooter's finger from the trigger allowing the trigger to naturally reset without resistance from the shooter.

Determinative of whether a bump stock may be properly deemed a machinegun is whether it enables a firearm to fire more than one round per single function of the trigger: nothing more, nothing less. How many rounds per minute a firearm may be made to fire or whether that number exceeds some imagined maximum is irrelevant to ATF's classification and is not a factor in "interpreting" the statute. That a bump stock operates to assist the shooter in the releasing of a firearm's trigger is of no legal consequence when the clear language of the law is applied. The bump stocks that are the subject of ATF's proposed rulemaking still require a forward movement of the firearm's trigger to accomplish trigger reset in order to fire a subsequent round on a subsequent rearward pull. Bump fire stocks do not provide mechanical assistance relative to the pull of the trigger, and they are not marketed as doing so. Rather, each subsequent shot necessitates a human-powered rearward pull that is entirely unassisted by a bump stock.

AR001008

SCOTT L. BRAUM AND ASSOCIATES, LTD
January 24, 2017
Page 3

"The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is 'the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.'" *See, Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213 (1976). Here, Congress has defined what a machinegun is. Because a semi-automatic firearm with a bump stock attached still fires only one round per single function of the trigger, no interpretation of the clear language of the law can be employed to classify such as a machinegun and any rule promulgated to reach such a result would be improper.

Very truly yours,

Timothy R. Rudd

TRR:sdh

cc:     Scott L. Braum

AR001009



# GUN OWNERS OF AMERICA
8001 Forbes Pl Suite 202, Springfield VA 22151
703-321-8585 / gunowners.org

**Comments**
to the Bureau of Alcohol, Tobacco, Firearms and Explosives

on the Proposed Rulemaking entitled
"Application of the Definition of Machinegun to 'Bump Fire'
Stocks and Other Similar Devices"
27 CFR Parts 478 and 479
[Docket No. 2017R-22, RIN 1140-AA52, December 26, 2017]

filed on January 9, 2018 on behalf of

Gun Owners of America
8001 Forbes Place, Suite 202
Springfield, VA 22151
703-321-8585

www.gunowners.org

Gun Owners of America submits this letter in response to the
advanced notice of proposed rulemaking soliciting comments on
whether devices commonly known as "bump stocks" fall within the
definition of "machine gun" in the National Firearms Act.

In 2010, the Obama administration determined, correctly, that
they did not.  It concluded, again correctly, that "bump stocks"
do not convert semiautomatics into fully automatic weapons.

We believe that conclusion is mandated by the facts and the law.
And we think it is absolutely clear, beyond the shadow of a
doubt, that any effort to administratively regulate or prohibit
"bump stocks" is unlawful -- and would set an incredibly
dangerous precedent which could lead to administrative bans on
virtually any type of firearm.

1.  BUMP STOCKS DO NOT FALL WITHIN THE DEFINITION OF "MACHINE
GUN" UNDER THE NFA.

26 U.S.C. 5845(b) defines "machinegun" as "any weapon which
shoots, is designed to shoot, or can be readily restored to

AR001010

shoot, automatically more than one shot, without manually reloading, by a single function of the trigger..." The definition includes "...any part designed and intended solely and exclusively ... for use in converting a weapon into a machinegun..."

A "bump stock" uses a semiautomatic's recoil to accelerate the rate of fire by bringing the trigger into contact with the shooter's finger. Thus, in a sense, the trigger pulls the finger, rather than vice versa. That said, every round is discharged as the result of a discrete and independent pull of the trigger -- at the expense of any accuracy. Thus, it is simply untrue that the "bump stock" facilitates the discharge of more than one round "by a single function of the trigger" -- no matter how fast the gun discharges rounds. One pull, one discharge. This is the classic textbook definition of a SEMI-automatic.

In sum, to administratively hold that a "bump stock" is a "machinegun" would be fraudulent. Furthermore, it would be a fraud no different in type from administratively holding that an AR-15 is a "machinegun." Or that a high-capacity magazine is a "machinegun." Or that a polished bolt is a "machinegun." Or that a belt loop or stick or finger is a "machinegun."

## 2.   ATF HAS NO GENERALIZED AUTHORITY TO REGULATE FIREARMS OR ACCESSORIES, OUTSIDE THE SPECIFIC LANGUAGE OF THE STATUTE.

Federal law is intentionally structured so that it does NOT give generalized authority to the ATF or to anyone else to regulate firearms and accessories. Rather, it prohibits certain acts and gives ATF (and, on occasion, other agencies) the jurisdiction to enforce those prohibitions.

6 U.S.C. 531 gives ATF the power to (1) investigate "criminal and regulatory violations of the federal firearms ... laws", (2) investigate "violent crime or domestic terrorism," as defined in 18 U.S.C., (3) carry out some of the discrete functions it exercised in the Department of the Treasury, and (4) carry out those functions vested in the Attorney General by statute and delegated to ATF. Thus, ATF's jurisdiction is defined by federal statutory provisions.

Similarly, with few exceptions, each of the subsections in the core of federal firearms law (18 U.S.C. 922) begins with the

words "It shall be unlawful" and then proceeds to proscribe a specific discrete act.

Thus, unlike other agencies, ATF does not have open-ended regulatory authority.

This is intentional. By way of contrast, the Consumer Product Safety Commission (CPSC) has authority to ban certain unsafe products, or require they be modified to make them safer. If ATF had similar authority to ban or regulate firearms, parts and accessories, it could use that authority to ban any or all firearms. Clearly, this would **not** be an acceptable outcome under the Second Amendment.

Therefore, since ATF does not have the authority to classify a "bump stock" as a machinegun, it does not have the authority to regulate "bump stocks" at all.

Any other result would be a concession that ATF has the inherent authority to regulate or ban large categories of firearms -- or all firearms.

Respectfully submitted,

Michael Hammond
Legislative Counsel
Gun Owners of America

*Gun Owners of America is a grassroots lobby representing more than 1.5 million gun owners.*

To:Comments re 2017R-22 (12026489741)                           14:41 01/25/18 GMT-08 Pg 1-7

VIA FAX (202-648-9741) & FEDERAL eRULEMAKING PORTAL

Pages: 7 including cover€œ

From: Firearms Policy Coalition

To: Vivian Chu - Mailstop 6N-518, Office of Regulatory Affairs,
Enforcement Programs and Services, Bureau of Alcohol, Tobacco,
Firearms, and Explosives ("BATFE€)
99 New York Ave. NE, Washington, D.C. 20226

Docket No. 2017R-22

Docket ID ATF-2018-0001

Regarding: Advance notice of proposed rulemaking; request for comments
re "Application of the Definition of Machinegun to Bump Fire Stocks
and Other Similar Devices€

Position: STRONGLY OPPOSED

Message: Please see our letter under this cover and do not hesitate to
contact us at policy@fpchq.org or 4212 North Freeway Boulevard, Suite
6, Sacramento, California, 95834, if we can be of any further
assistance, or if any part of this message is not received or is
unclear.

AR001013



Thursday, January 25, 2018

### VIA FAX (202-648-9741) & FEDERAL eRULEMAKING PORTAL (http://www.regulations.gov)

Vivian Chu
Mailstop 6N-518
Office of Regulatory Affairs
Enforcement Programs and Services
Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE")
99 New York Ave. NE
Washington, D.C. 20226

Docket No.: 2017R-22

Docket ID: ATF-2018-0001

Regarding: Advance notice of proposed rulemaking; request for comments re "Application of the Definition of Machinegun to Bump Fire Stocks and Other Similar Devices"

Position: STRONGLY OPPOSED

Dear Ms. Chu:

I write you today on behalf of Firearms Policy Coalition ("FPC")—a grassroots, non-partisan, 501(c)4 public benefit organization—and our law-abiding members and supporters across the United States. The purposes and objectives of FPC are to protect and defend the Constitution of the United States and the People's rights, privileges and immunities deeply rooted in this Nation's history and tradition, especially the inalienable, fundamental, and individual right to keep and bear arms; to protect, defend, and advance the means and methods by which the People of the United States may exercise those rights, including, but not limited to, the acquisition, collection, transportation, exhibition, carry, care, use, and disposition of arms for all lawful purposes, including, but not limited to, self-defense, hunting, and

AR001014

| To: | Vivian Chu, Bureau of Alcohol, Tobacco, Firearms, and Explosives |
|---|---|
| Regarding: | Docket 2017R-22 (ANPRM re "Application of the Definition of Machinegun to Bump Fire Stocks and Other Similar Devices") |
| Position: | STRONGLY OPPOSED |
| Page: | 2 of 6 |

service in the appropriate militia for the common defense of the Republic and the individual liberty of its citizens; to foster and promote the shooting sports and all lawful uses of arms; and to foster and promote awareness of, and public engagement in, all of the above.

Specifically, we write you to express our concerns about and strong opposition to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (hereinafter "BATFE", the Bureau)'s advance notice of proposed rulemaking ("ANPRM") regarding the "Application of the Definition of Machinegun to Bump Fire Stocks and Other Similar Devices" (no. 2017R-22, online at https://www.federalregister.gov/d/2017-27898). Some FPC members and supporters currently own, or plan to own, devices that would be subject to the proposed rulemaking. Unless otherwise specified, the following comments are responsive to multiple questions presented in the BATFE's ANPRM.

This troubling ANPRM raises serious constitutional concerns, including the violation of the separation of powers, abdication or improper delegation of authority, violation of fundamental rights guaranteeing citizens due process, protection against discriminatory and arbitrary enforcement of vague laws, and violation of the Takings Clause—not to mention an affront to the fundamental, individual Second Amendment right to keep and bear arms. Should the Department of Justice ("DOJ") and BATFE pursue this attempt to unlawfully and unconstitutionally exceed their statutory authority through regulatory efforts like this targeting these non-firearm devices, FPC (and almost certainly many others) will be forced to seek judicial relief.

The DOJ and BATFE clearly lack the statutory authority to re-define the targeted devices as "machineguns." Indeed, as Mr. John R. Spencer (then-Chief of the BATFE's Firearms Technology Branch) admitted in his letter dated June 7, 2010, "bump-fire" stocks have "no automatically functioning mechanical parts or springs and performs no automatic mechanical function

AR001015

| | |
|---|---|
| To: | Vivian Chu, Bureau of Alcohol, Tobacco, Firearms, and Explosives |
| Regarding: | Docket 2017R-22 (ANPRM re "Application of the Definition of Machinegun to Bump Fire Stocks and Other Similar Devices") |
| Position: | STRONGLY OPPOSED |
| Page: | 3 of 6 |

when installed....Accordingly, we find that the 'bump-stock' is a firearm part and is not regulated as a firearm under Gun Control Act or the National Firearms Act." (See BATFE letter 903050:MMK, 3311/2010-434, available online at http://bit.ly/atf-re-bumpfire-stock.) BATFE even expressly concedes in the "Requests for Public Input" of this very ANPRM that: The "[BATFE] does not have the authority to regulate firearm parts and accessories..." (See "SUPPLEMENTARY INFORMATION" subsection III, "Requests for Public Input", online at http://bit.ly/batfe-anprm-bumpfire-stocks.)

The Congress, through its enacted legislation, has specifically defined the term "machinegun" to mean a "weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). (While the term also includes "the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person," those provisions are not relevant here.) And BATFE has adopted a definition of "machine gun" (at 27 C F R. § 178.11) that, appropriately, mirrors the statutory definition.

"Bump fire" stocks and similar subject devices are not "firearms" or "machineguns" under the law. And the regulatory definition cannot be expanded to include such devices without prior authorizing legislation similarly expanding the definition of "machinegun" under the statutes. *Util. Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2445 (2014) (quoting *National Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665 (2007) ("An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms. Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always 'give effect to the unambiguously expressed intent of Congress."); *Wyeth v.*

AR001016

| To: | Vivian Chu, Bureau of Alcohol, Tobacco, Firearms, and Explosives |
|---|---|
| Regarding: | Docket 2017R-22 (ANPRM re "Application of the Definition of Machinegun to Bump Fire Stocks and Other Similar Devices") |
| Position: | STRONGLY OPPOSED |
| Page: | 4 of 6 |

*Levine*, 555 U.S. 555, 588 (2009) (conc. opn. of Breyer, J.) (citations omitted)("[A] federal agency may pre-empt state law only when and if it is acting within the scope of its congressionally delegated authority . . . [for] an agency literally has no power to act, let alone pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it.").

That is the end of the analysis, and this proposed rulemaking (no. 2017R-22) should be abandoned or withdrawn accordingly.

However, we also address some of the questions in the ANPRM. Specifically, as to question 21 ("In your experience, where have you seen these devices for sale and which of these has been the most common outlet from which consumers have purchased these devices (e.g., brick and mortar retail stores; online vendors; gun shows or similar events; or private sales between individuals)?"), we comment as follows:

FPC has knowledge of "bump stock" devices being sold or offered for sale at "brick and mortar" licensed firearm retailers, gun shows, by private sellers, and on the Internet. On information and belief, FPC believes that Internet sales are the primary channel for sales of subject devices.

Regarding question 22 ("Based on your experience or observations, what is (or has been) the price range for these devices?"), we comment as follows:

FPC has knowledge of subject devices having a price range of $150-350 per device. However, due to recent market conditions (i.e. demand exceeding supply), FPC has seen and received recent reports of subject devices being offered for sale and/or fetching over $1,000 per device.

AR001017

To:          Vivian Chu, Bureau of Alcohol, Tobacco, Firearms, and Explosives
Regarding:   Docket 2017R-22 (ANPRM re "Application of the Definition of Machinegun to
             Bump Fire Stocks and Other Similar Devices")
Position:    STRONGLY OPPOSED
Page:        5 of 6

Regarding question 23 ("For what purposes are the bump stock devices used or advertised?"), we comment as follows:

FPC has knowledge of subject devices being used and advertised for lawful purposes throughout the United States, including self-defense, except where they may be prohibited under state or local laws.

\* \* \*

This proposed rulemaking would provide no public benefit (indeed, the proposed rulemaking articulates none), and yet it would certainly come at great societal and individual costs.

These costs would necessarily include likely millions of dollars in BATFE implementation and enforcement costs, in addition to potentially millions of dollars in fending off the inevitable litigation arising from the serious constitutional and statutory violations engendered by this regulatory process. Moreover, American taxpayers would also likely be stuck with the bill for the plaintiffs' attorneys fees and costs should the government fail in attempting to defend this illegal and unconstitutional action.

And the extraordinary costs to American fundamental principles – stemming from the illegal aggrandizement of the executive branch by regulatory fiat that would deprive untold citizens of essential constitutional protections – is impossible to completely measure.

But, perhaps as a silver lining, an illegal rulemaking (such as is proposed here) would provide an excellent vehicle for the Supreme Court to revisit and eliminate the made-up judicial construct of agency deference under *Auer, Chevron,* and *Encino Motorcars. See Auer v. Robbins,* 519 U.S. 452 (1997); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467

AR001018

| To: | Vivian Chu, Bureau of Alcohol, Tobacco, Firearms and Explosives |
|---|---|
| Regarding: | Docket 2017R-22 (ANPRM re "Application of the Definition of Machinegun to Bump Fire Stocks and Other Similar Devices") |
| Position: | STRONGLY OPPOSED |
| Page: | 6 of 6 |

U.S. 837 (1984); *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) ("As in other areas of our jurisprudence concerning administrative agencies, [ ] we seem to be straying further and further from the Constitution without so much as pausing to ask why. We should stop to consider that document before blithely giving the force of law to any other agency 'interpretations' of federal statutes." *Michigan v. Environmental Protection Agency*, 576 U.S. ___ (2015) (Thomas, J., concurring) (internal citation omitted)).

If the Congress wishes to re-define "machineguns" to include the targeted devices, it may attempt to do so through legislation—but not without incurring political and financial costs. And some members' cynical efforts to lay these costs at the feet of the BATFE (and law-abiding people) for their own political convenience should be rejected.

For these and other reasons too numerous to list here, we urge the DOJ and BATFE to immediately abandon the proposed rulemaking on "bump fire" stocks and similar devices.

Please do not hesitate to contact us at policy@fpchq.org or 4212 North Freeway Boulevard, Suite 6, Sacramento, California, 95834, if we can be of any further assistance.

Sincerely,

Brandon Combs
President

AR001019

**To:**      Gross, Charles R.[Charles.Gross@atf.gov]; Allen, Joseph J ██████████
**From:**    Brandon, Thomas E.
**Sent:**    Sun 2/25/2018 1:50:15 PM
**Subject:** FYSA

ATF has already said it doesn   t have authority    to ban bump stocks under current law, Blumenthal said.    I think ATF could have been more aggressive and proactive and reached different conclusion, but they chose the safer but less-safety minded route. So ATF will be hard-pressed to reverse itself.

If done with the proper push-and-pull, the weapon convulses into a paroxysm of fire. Although technically there is a single trigger-pull per shot, the recoil presses the trigger to the finger at speeds exceeding a finger   s natural ability to pull.

Sent from my iPad

To:       Allen, Joseph J. ▊▊▊▊▊▊▊▊ Ryan, William J. ▊▊▊▊▊▊▊▊
From:     Griffith, Earl L.
Sent:     Mon 2/26/2018 11:03:32 PM
Subject:  Earl

Here is a list of devices that we found in our research:

Bump type stock: Slide Fire Solutions (TX), Bump Fire Systems, Fostech (Indiana), Bump Master (AK type), Bair Arms Bump Grip not yet on the market.

Trigger devices such as Binary types: TAC CON (AZ), DiGi trigger, GAT Hyper trigger, ERAD trigger Freedom Ordinance (IN), Auto Burst like TAS Con, Auto Glove never went to market, GAT crank.

Most of what ATF evaluated are listed on the index of the two binders in Joe's office.

Let me know what else you need.

Earl

**From:** Allen, Joseph J.
**Sent:** Monday, February 26, 2018 4:16 PM
**To:** Griffith, Earl L. ◄▊▊▊▊▊▊▊ Ryan, William J. ◄▊▊▊▊▊▊▊
**Subject:**

Mass. General Laws chapter 140, sections 121 and 131

The law defines a "bump stock" as follows:
"any device for a weapon that increases the rate of fire achievable with such weapon by using energy from the recoil of such weapon to generate a reciprocating action that facilitates repeated activation of the trigger."

The law defines "trigger crank" as follows:
"any device to be attached to a weapon that repeatedly activates the trigger of the weapon through the use of a lever or other part that is turned in a circular motion; provided, however, that "trigger crank" shall not include any weapon initially designed or manufactured to fire through the use of a crank or lever."

**Davalos, Jeana**

| | |
|---|---|
| **From:** | Kropke, Edward A. |
| **Sent:** | Tuesday, February 27, 2018 5:33 PM |
| **To:** | Lee, Jeana |
| **Cc:** | Muniz, Marco A. |
| **Subject:** | Conversation with IOI Marco Muniz |

Jeana,

I just spoke with my IOI Program Manager Marco Muniz (cc'd). He said that we should not assume that all 64,359 Type 1 and Type 2 dealers are selling bump stocks.

He ruled out using Type 2 dealers (pawnbroker) since they are more likely selling firearms, not firearms parts.

Also, from his experience, many dealers do not have bump stocks in inventory unless a customer has specifically ordered one. They are more likely selling bump stocks through online sales.

Therefore, tomorrow morning, Marco will run a query in our Federal Licensing System (FLS) for Type 1 (Dealer), Type 7 (Manufacturer of firearms) and Type 8 (Importer of firearms) to see which ones have websites (Type 7 and Type 8 are also licensed dealers).

Marco believes that those dealers with identified websites are most likely conducting business online. Once we identify how many FFLs have websites, we can conduct a random sampling of those businesses to see which ones are actually selling bump stocks online.

As I stated earlier, I will be out of the office for the next 3 days.

If you have any questions, please contact Marco, my supervisor Katherine Castaneda, or me (cell phone listed below).

V/r,

Ed


SSA Edward A. Kropke III
Chief, Field Intelligence Support Branch
Office of Strategic Intelligence and Information
Work: 202-648-
Mobile:
SECURE:
UNCLAS
SIPRnet
JWICS

1

**To:**      Allen, Joseph J. ▆▆▆▆▆▆▆▆
**Cc:**      Richardson, Marvin G ▆▆▆▆▆▆▆▆▆▆▆▆    Gilbert, Curtis W ▆▆▆▆▆▆▆▆▆▆
Lange, Andrew R ▆▆▆▆▆▆▆▆▆▆▆▆
**From:**    Carlson, Krissy Y.
**Sent:**    Wed 2/28/2018 5:15:15 PM
**Subject:** Bump Stock Information From Industry

Hi!  I have spoken to the following dealers regarding their sale of bump stocks;

1) Walmart – they currently do not sell bump stocks of any kind and have no plans to do so in the future.
2) Bass Pro – they currently do not sell bump stocks of any kind and have no plans to do so in the future.
3) Caballas – (they are now owned by Bass Pro, and have the same policy as Bass Pro with regards to bump stocks of any kind).
4) GunBroker – they do not have the authority to speak with regards to bump stocks.

As of 2/26/2018, Gun Broker had 86 bump stock type accessories for sale on their website ranging from $135 to $5000.

I have also talked to industry representatives and they stated that they do not believe anyone in the industry is still selling these devices, nor do they "really care" if they are banned.

*Krissy Y. Carlson*
Division Chief, Firearms and Explosives Industry Division
6.N-648
Direct:  (202) 648-▆▆▆▆▆
Cell: ▆▆▆▆▆▆▆▆

**To:**       Allen, Joseph J▮▮▮▮▮
**Cc:**       Richardson, Marvin G▮▮▮▮▮        Gilbert, Curtis W▮▮▮▮▮
Lange, Andrew R▮▮▮▮
**From:**     Carlson, Krissy Y.
**Sent:**     Wed 2/28/2018 6:40:07 PM
**Subject:**  Bump Stocks

In my search, other than the two manufacturers (Slide Fire Solutions and Bumpfire Systems), I was only able to find bump stocks (and any of their variants) being sold on the following additional websites;

1) OpticsPlanet.com
2) Craigslist.com
3) Armslist.com

*Krissy Y. Carlson*
Division Chief, Firearms and Explosives Industry Division
6.N-648
Direct: (202) 648▮▮▮
Cell: ▮▮▮▮▮

AR001024

## 4.  MAJOR RETAILERS OF BUMP STOCKS

**Retailers Sell to Consumers**

Retailers consist of small and large for-profit businesses that sell products directly to consumers. To realize a profit, retailers search for products that coincide with their business objectives and find suppliers with the most competitive pricing. Generally, a retailer can buy small quantities of an item from a distributor or a wholesaler. For instance, a retail merchant who wanted to purchase a dozen lamps could contact lighting distributors to inquire about pricing.

*Brick and Mortar and Online Retailers*

Cabela's – Outdoor Retailer

Bass Pro

Walmart

GUNBROKER.COM

CHEAPERTHANDIRT.COM

https://www.cbsnews.com/news/bump-stock-prices-soar-ahead-of-potential-federal-ban/

Auctions listed on the site Gun Broker.com show bump stocks being offered for as high as $1,000, with bids at the $500 level. The devices, which many gun enthusiasts consider to be a useless novelty, retail for under $200.

**http://www.atlanticfirearms.com/bump-fire-stocks.html**

We are a federally licensed firearms dealer and distributor for several manufacturers.

AR001025

**To:**      Griffith, Earl L ███████████        Ryan, William J ███████████
**From:**    Allen, Joseph J.
**Sent:**    Thur 3/1/2018 3:53:16 PM
**Subject:** RE: Slide fire stocks

10-4. Thank you for verifying.

**From:** Griffith, Earl L.
**Sent:** Thursday, March 1, 2018 10:52 AM
**To:** Allen, Joseph J. ███████████        Ryan, William J. ███████████
**Subject:** Slide fire stocks

Joe all stock from Vegas were Slide Fire models.

14 Firearms equipped with "bump-fire" stocks

•7 -Slide FireSSAR-15® OGR

•7 -Slide Fire SSAR-15® SBS

**To:**     Allen, Joseph J. ████████████    Ryan, William J ████████████
**From:**   Griffith, Earl L.
**Sent:**    Thur 3/1/2018 3:51:41 PM
**Subject:** Slide fire stocks
<u>VEGAS - Bumpfire Stocks.pdf</u>

Joe all stock from Vegas were Slide Fire models.

14 Firearms equipped with "bump-fire" stocks

•7 -Slide FireSSAR-15® OGR

•7 -Slide Fire SSAR-15® SBS



# Las Vegas - Paddock

# Identification of "bump-fire" devices used in Mandalay Bay shooting.

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only



1



# FBI Exhibit #1 - Slide Fire SSAR-15® OGR

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only

# Las Vegas - Paddock



2

AR001029

# FBI Exhibit #2 - Slide Fire SSAR-15® OGR

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only



# Las Vegas - Paddock



3

AR001030

# FBI Exhibit #3 - Slide Fire SSAR-15® SBS

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only

4





Las Vegas - Paddock

# FBI Exhibit #5 - Slide Fire SSAR-15® SBS

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only





Las Vegas - Paddock



5

# FBI Exhibit #6 - Slide Fire SSAR-15® OGR

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only

6



# Las Vegas - Paddock





AR001033

# FBI Exhibit #7 - Slide Fire SSAR-15® OGR

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only





Las Vegas - Paddock

PROTECTING THE PUBLIC
SERVING OUR NATION

7

# FBI Exhibit #9 - Slide Fire SSAR-15® SBS

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only



## Las Vegas - Paddock



8

AR001035



# FBI Exhibit #12 - Slide Fire SSAR-15® SBS

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only



Las Vegas - Paddock



9

AR001036

# FBI Exhibit #13 - Slide Fire SSAR-15® SBS

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only

10



Las Vegas - Paddock



AR001037

# FBI Exhibit #14 - Slide Fire SSAR-15® OGR

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only

11



## Las Vegas - Paddock



# FBI Exhibit #15 - Slide Fire SSAR-15® OGR

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only

12



# Las Vegas - Paddock



# FBI Exhibit #16 - Slide Fire SSAR-15® OGR

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only

13



Las Vegas - Paddock





# FBI Exhibit #17 - Slide Fire SSAR-15® SBS

# Las Vegas - Paddock

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only



14

AR001041

# FBI Exhibit #20 - Slide Fire SSAR-15® SBS

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only

15



# Las Vegas - Paddock

# Las Vegas - Paddock

## Conclusions:

- 14 Firearms equipped with "bump-fire" stocks

- 7 - Slide Fire SSAR-15® OGR

- 7 - Slide Fire SSAR-15® SBS

FEO Daniel Hoffman

Law Enforcement Sensitive / Internal ATF Only

16

**Davalos, Jeana**

| | |
|---|---|
| **From:** | Lange, Andrew R. |
| **Sent:** | Tuesday, March 6, 2018 10:46 AM |
| **To:** | Lee, Jeana |
| **Subject:** | FW: Bump Stocks Map |
| **Attachments:** | BumpStocks.ppt |

Jeana,

Please find attached the map of states that ban bump stocks.

Thanks.

Andrew

**From:** Carlson, Krissy Y.
**Sent:** Wednesday, February 28, 2018 3:40 PM
**To:** Lange, Andrew R
**Cc:** Gilbert, Curtis W.
**Subject:** FW: Bump Stocks Map

Please find attached.

*Krissy Y. Carlson*
Division Chief, Firearms and Explosives Industry Division
6.N-648
Direct: (202) 648-
Cell:

**From:** McCormick, Daryl S.
**Sent:** Wednesday, February 28, 2018 2:25 PM
**To:** Carlson, Krissy Y.
**Subject:** FW: Bump Stocks Map

Krissy,
Here's the map from VCAB. Let us know if you need any changes.
Daryl

**From:** Scott, Dawn C.
**Sent:** Wednesday, February 28, 2018 1:55 PM
**To:** McCormick, Daryl S.
**Cc:** Robertson, John N.
**Subject:** Bump Stocks Map

Attached is the requested map based on information provided by EPS. In the interest of time, we didn't include all the
bells and whistles (graphics) that we normally do. Also, we left the attachment **unlocked** so changes can be made by the

1

recipient. Of note, the information in the blow outs with the individual state information was taken directly from the attachment they provided (cut and paste).

I spoke to Krissy briefly and she told me not to include information on the map for Denver and Columbia. If that changes, let me know and we can add those cities to the map.

*Dawn Scott*
Chief/Special Agent
Violent Crime Analysis Branch
Office of Strategic Intelligence and Information (OSII)
Bureau of Alcohol, Tobacco, Firearms and Explosives
(304) 616-█████

2

AR001045

# States that Outlaw Bump Stocks



Bureau of Alcohol, Tobacco, Firearms and Explosives
Office of Strategic Intelligence and Information

**Washington** – As of 2/27/2018 passed a bill to ban trigger devices that allow semi-automatic rifles to fire more rapidly (begins 7/1/2019).

**California** – Restricts the sale of bump-fire devices. The statute bans "multiburst trigger activator", defined as a device attached to a semi-automatic rifle that "allows the firearm to discharge two or more shots in a burst by activating the device."

**New York** – Restricts weapons that simulate machine guns (legal to sell or manufacture but illegal to attach to a rifle).

**New Jersey** – As of 1/15/2018, outlawed the sale and possession of bump-fire stocks (a device that is designed to attach to a semi-automatic firearm in order to fire shots in rapid succession in a manner that simulates an automatic firearm).

**Massachusetts** – Specifically ban bump stocks and any accessories known as trigger cranks, which it defines as any device that "repeatedly activates the trigger of the weapon through the use of a lever or other part that is turned in a circular motion."

AR001046

**Davalos, Jeana**

| | |
|---|---|
| **From:** | Muniz, Marco A. |
| **Sent:** | Tuesday, March 6, 2018 2:19 PM |
| **To:** | Lee, Jeana; Kropke, Edward A. |
| **Subject:** | FW: Copy of OSSI FLS Internet Query 02282018 Selected FFLs.xlsx |
| **Attachments:** | Copy of OSSI FLS Internet Query 02282018 Duplicates Removed.xlsx; FFL identified having their our websites.xlsx |

Good afternoon Jeana:

Hope you are doing well. I have attached the list received from the Federal Firearms Licensing Center (Copy of OSII FLS Internet Query) with duplicates Federal Firearms License Numbers Removed and I have included a new list of all Federal Firearms Licensees (FFL) that have their own business website for internet sales.

- A) OSII FLS Internet Query
  1) Sheet Number 1 – FFL with internet comments: 2,270 records. 1,599 FFL report using commercial websites to conduct internet sales (gunbrokers, gunactions, armslist, gunsusa, internationalguns, etc) and 671 FFL report having their own business website to conduct internet sales (See FFL identified having their own websites).
  2) Sheet Number 2 - FFL with WWW comments: 624 records.
  3) Sheet Number 3 – FFL with websites comments: 316 records
  4) Sheet Number 4 – FFL with .COM comments: 9,672 records.
- B) FFL Identified having their own websites
  1) Sheet Number 1 – FFL with their own websites: 671 records.

Hope this information assist you in your research. Please do not hesitate to contact me to discuss, if you have any questions.

*Marco Antonio Muniz*
Bureau of Alcohol, Tobacco, Firearms and Explosives
Program Manager
Office of Strategic Intelligence and Information
Criminal Intelligence Division
Analysis Production Branch
99 New York Avenue Northeast
8 S. 138
Washington, DC 20226
████████ Cell
(202) 648-███ Desk
(202) 648-9682 Fax

**From:** Lee, Jeana
**Sent:** Monday, March 5, 2018 2:38 PM
**To:** Muniz, Marco A.

i

**Cc:** Kropke, Edward A. ▮
**Subject:** RE: Copy of OSSI FLS Internet Query 02282018 Selected FFLs.xlsx

Hi,

Can you please give me the number of individual retailers with separate internet websites? I can't use duplicate websites and I seem to only have a read-only copy for some reason. I also don't know which tab I'm supposed to be looking at.

Thank you,

Jeana

**From:** Muniz, Marco A.
**Sent:** Monday, March 5, 2018 2:24 PM
**To:** Lee, Jeana ▮
**Cc:** Kropke, Edward A. ▮
**Subject:** Copy of OSSI FLS Internet Query 02282018 Selected FFLs.xlsx

Good afternoon Jeana:

I received the list of Federal Firearms Licensees (FFLs) that have websites. In this list, I highlighted the FFL that have their own website. The other FFLs use websites as gunbroker, Auctionarms, Gunamerica, Armslist, etc.. I will be sending you another email, with all the information that was queried by the Licensing Center.

*Marco Antonio Muñiz*
Bureau of Alcohol, Tobacco, Firearms and Explosives
Program Manager
Office of Strategic Intelligence and Information
Criminal Intelligence Division
Analysis Production Branch
99 New York Avenue Northeast
8 S. 138
Washington, DC 20226
▮ Cell
(202) 648-▮ Desk
(202) 648-9682 Fax

2

**Davalos, Jeana**

| | |
|---|---|
| **From:** | Griffith, Earl L. |
| **Sent:** | Tuesday, March 13, 2018 10:05 AM |
| **To:** | Lange, Andrew R.; Ryan, William J.; Kingery, Max M.; Curtis, Michael R. |
| **Cc:** | Chu, Vivian S.; Lee, Jeana |
| **Subject:** | RE: advertising for bump stocks |

Non that I know of advertises as such.

**From:** Lange, Andrew R.
**Sent:** Tuesday, March 13, 2018 9:57 AM
**To:** Griffith, Earl L. ██████████ Ryan, William J. ██████████ Kingery, Max M.
██████████ ; Curtis, Michael R. ██████████
**Cc:** Chu, Vivian S.██████████ Lee, Jeana ██████████
**Subject:** FW: advertising for bump stocks

Good morning,

Have the bump stocks been advertised to persons with mobility issues?

Thanks.

Andrew

**From:** Lee, Jeana
**Sent:** Tuesday, March 13, 2018 9:54 AM
**To:** Lange, Andrew R. ██████████ ; Chu, Vivian S.██████████
**Subject:** advertising for bump stocks

What do we know about the advertisement of bump stocks? I have a question that relates more to policy than economics:

Have the devices been advertised to persons with mobility issues? We read an article that suggested that they have not.

Thank you,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-████
Mobile: ██████████

1

AR001049

**Davalos, Jeana**

| | |
|---|---|
| **From:** | Kingery, Max M. |
| **Sent:** | Tuesday, March 13, 2018 10:31 AM |
| **To:** | Griffith, Earl L.; Lange, Andrew R.; Ryan, William J.; Curtis, Michael R. |
| **Cc:** | Chu, Vivian S.; Lee, Jeana |
| **Subject:** | RE: advertising for bump stocks |

I don't recall any claim of use for persons with mobility issues in writing or verbal conversations – there were claims to the extent of being intended for disabled veterans not having sufficient strength or capability to hold a handgun without the brace.

Max

Max M. Kingery, Chief
Firearms Technology Criminal Branch
244 Needy Rd.
Martinsburg, WV  25405
Ph # 304.616█
FAX  304.616.4301

**From:** Griffith, Earl L.
**Sent:** Tuesday, March 13, 2018 10:05 AM
**To:** Lange, Andrew R. █████████ ; Ryan, William J. ███████████ Kingery, Max M.
████████ Curtis, Michael R. ██████████
**Cc:** Chu, Vivian S. █████████ Lee, Jeana ████████
**Subject:** RE: advertising for bump stocks

Non that I know of advertises as such.

**From:** Lange, Andrew R.
**Sent:** Tuesday, March 13, 2018 9:57 AM
**To:** Griffith, Earl L. █████████ ; Ryan, William J. ███████████ ; Kingery, Max M.
████████ Curtis, Michael R. ██████████
**Cc:** Chu, Vivian S. █████████ Lee, Jeana ████████
**Subject:** FW: advertising for bump stocks

Good morning,

Have the bump stocks been advertised to persons with mobility issues?

Thanks.

Andrew

**From:** Lee, Jeana
**Sent:** Tuesday, March 13, 2018 9:54 AM
**To:** Lange, Andrew R. █████████████; Chu, Vivian S. ███████████████
**Subject:** advertising for bump stocks

What do we know about the advertisement of bump stocks? I have a question that relates more to policy than economics:

Have the devices been advertised to persons with mobility issues? We read an article that suggested that they have not.

Thank you,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-████
Mobile: ███████████

1



# Bump stocks were supposedly made for disabled people. That's not how they're actually being used.

By Alison Durkee | Oct. 4, 2017

"Bump stocks," an add-on accessory for semi-automatic weapons, are being thrust into the national spotlight after they were used in Sunday's deadly shooting in Las Vegas.

The tool enables a semi-automatic weapon to mimic the speed of an automatic one, which are largely restricted to the general public. Bump

AR001052

Case 2:19-cv-00037-JNP   Document 59-19   Filed 11/30/22   PageID.1521   Page 50 of 76

Bump stocks were supposedly made for disabled people. That's not how they're actually ...   Page 2 of 8

stocks replace a gun's stock with a sliding stock and trigger guard, NBC News reported. The shooter's finger comes in contact with the trigger by holding the pistol grip with one hand and pushing forward on the gun's barrel with the other, according to the *Associated Press*, which allows the recoil action after the gun is fired to move the gun back and forth, "bumping" the shooter's finger against the trigger at a high speed.

Following the Las Vegas shooting, 12 of these bump stocks were discovered on firearms in the hotel room of Stephen Paddock, the suspected shooter, CNN reported.



Paid by Innocent Man

7 days ago

How false confessions became an American criminal justice phenomenon

By John Surico

Understanding the motivations and tactics that lead innocent

But why were these deadly tools made in the first place? Supposedly, the devices were invented in 2010 to better enable those with disabilities to shoot a gun, according to the *AP*.

In a 2010 letter from the Bureau of Alcohol, Tobacco, Firearms and Explosives to leading bump stock manufacturer Slide Fire Solutions, ATF noted that according to Slide Fire, the device "is intended to assist persons whose hands have limited mobility to 'bump-fire' an AR-15 type rifle."

AR001053

A similar claim was made by another manufacturer, Bump Fire Systems, according to the *Los Angeles Times*.



Bump Fire Stocks - AR15 - SSAR-15 - Slide Fire - Freedom...

A demonstration of the bump stock released by Slide Fire Solutions Slide Fire Solutions/YouTube

## Accessibility may not have been the real intent behind the bump stock's creation

Though manufacturers may cite accessibility as the reason behind the device to the government, the bump stock wasn't necessarily created with a disabled demographic in mind — even by the admission of its inventor.

In a 2016 interview with *Ammoland*, Slide Fire inventor Jeremiah Cottle said he developed the Slide Fire stock "to make bump firing safer and more controlled," and that the product was geared not to a disabled population, but rather to "people, like me, [who] love full auto."

AR001054

Case 2:19-cv-00037-JNP   Document 59-19   Filed 11/30/22   PageID.1523   Page 52 of 76

Bump stocks were supposedly made for disabled people. That's not how they're actually ...   Page 4 of 8

Similarly, in an interview with *Guns America* in 2011, Cottle said the product's speed, not accessibility, when discussing what the bump stock could accomplish.

"The Slide Fire simply allows you to shoot as fast as you want to," Cottle said. "It just helps you fire the gun in semi-automatic very fast. You don't need an auto-sear. You can fire the gun yourself as fast as you want."

These able-bodied gun owners seeking speed — and the feel of an automatic weapon — are apparently the device's primary market. North Carolina gun store manager Dorothy Royal told the *AP* in 2013 that while she does sell bump stocks to wounded veterans, an estimated 70% of her buyers have no visible disability.

"In the last 25 years that I've been working with [machine guns] there hasn't been anything that really gave you something you would think was close to a full auto. Until now," YouTube user BigShooterist said about the bump stock in a video quoted by the *Trace*.



AR001055

Bump stocks were supposedly made for disabled people. That's not how they're actually ...    Page 5 of 8



Shooting instructor Frankie McRae aims an AR-15 rifle fitted with a "bump stock" at his 37
PSR Gun Club in Bunnlevel, North Carolina. Allen G. Breed/AP

## Bump stocks remain legal through a subtle loophole

Though it's illegal to modify internal components of semi-automatic
weapons to make them automatic, the BBC noted, adding attachments
to fire more quickly is allowed.

"The stock has no automatically functioning mechanical parts or springs
and performs no automatic mechanical function when installed," the
ATF's letter to Slide Fire Solutions noted in declaring the device's
legality. "Accordingly, we find that the 'bump-stock' is a firearm part and
is not regulated as a firearm."

The functionality of the bump stock, which requires the shooter's finger
to repeatedly hit the trigger to fire multiple shots, also differs from the
legal definition of a machine gun, which is a gun that can fire multiple
shots "by a single function of the trigger," the *LA Times* reported.

"A lot of discussion was made over it, and there was a lot of thought put
into it," Richard Vasquez, the former acting chief of the Firearms
Technology Branch of the ATF, told the *Times* about the decision to
allow bump stocks. "When we looked at it ... we could not fit it into the
definition [of a machine gun].

"That's all a government agency can do, because Congress writes the
laws," Vasquez said.

## Bump stocks are now under increased scrutiny

AR001056

Case 2:19-cv-00037-JNP   Document 59-19   Filed 11/30/22   PageID.1525   Page 54 of 76

Bump stocks were supposedly made for disabled people. That's not how they're actually ...   Page 6 of 8

'n the wake of the attachment's use in the Las Vegas shooting, however,
that legality could soon change. Sen. Dianne Feinstein (D-Calif.)
introduced a bill Wednesday that would ban the sale and usage of bump
stocks and other devices that allow semi-automatic weapons to mimic
automatic ones.

 **Sen Dianne Feinstein**
@SenFeinstein

Automatic weapons are illegal, but devices like bump stocks that
modify a gun to fire at fully-automatic rates ARE legal. That
makes no sense. We introduced a bill today to close that
loophole. feinstein.senate.gov/public/index.c...

3,818   12:39 PM - Oct 4, 2017

> **Feinstein, Colleagues Introduce Bill to Clos...**
> Washington—Senate Judiciary Committee
> Ranking Member Dianne Feinstein (D-Calif.) and
> a number of Democrats today introduced the
> feinstein.senate.gov

1,728 people are talking about this

Though Feinstein introduced a similar measure in 2013, which ABC
News reported failed in a Senate vote of 40-60, there are signs that her
renewed effort could potentially garner bipartisan support.

"I think it'd be a good time to have a hearing," Sen. Lindsey Graham
(R-S.C.), told NBC News about bump stocks and similar devices. "Just
find out, 'How does the technology work?' and is there a legislative
solution."

AR001057

Case 2:19-cv-00037-JNP  Document 59-19  Filed 11/30/22  PageID.1526  Page 55 of 76

Bump stocks were supposedly made for disabled people. That's not how they're actually ...  Page 7 of 8

Sen. Dean Heller (R-Nev.) also said it may be worth looking into how these now-legal attachments can be outlawed in the wake of the deadly Las Vegas attack.

"One of the concerns that I have is the ability to manipulate a semi-automatic rifle and turn it into a fully automatic rifle," Heller said, according to NBC News. "There has to be a way to be able to stop this."

Share:       Share              Tweet              Email              Copy link

By
Alison
Durkee
Contributor,
Navigating
Trump's
America

Email      Follow

AR001058

Bump stocks were supposedly made for disabled people. That's not how they're actually ...   Page 8 of 8

CONNECT WITH MIC

COMPANY

About   Archive   Careers   Company News   Contact   Editorial Standards   Legal
Style Guide   Tips   Topics

© 2018 Mic Network Inc. All rights reserved.

AR001059

**To:** Allen, Joseph J█████████████ ; Richardson, Marvin G█████████████ , Ryan, William J█████████████ Gilbert, Curtis W█████████████ Lange, Andrew R.█████
**From:** Griffith, Earl L.
**Sent:** Tue 3/13/2018 8:21:13 PM
**Subject:** BUMP FIRE Stocks and Devices Destruction Diagram 03 02 18.pptx
BUMP FIRE Stocks and Devices Destruction Diagram 03 02 18.pptx

FYI



# Bump Stock Destruction Instructions

- For destruction, regardless of manufacture or model, a Bump Stock must be completely crushed, melted or shredded where the Bump Stock is incapable of being readily restored.

- If the abovementioned means are not available, torch cutting is the alternate means of destruction. When utilizing torch-cutting, a Bump Stock must be completely severed with a cutting torch in the areas destroying critical design features denoted by the red lines in the specific model of Bump Stock destruction diagram.

- The Bump Stock must be completely severed in each area indicated by the red line. Those areas must be cut in a manner that removes at least ¾ inch of material at each cut location. Destruction by any other means not described above is not authorized by ATF.

AR001061





Slide Fire Solutions Bump Stock

AR001062





Slide Fire Solutions Bump-Stock

With Interface Block Installed

AR001063





Bump Fire Systems AR Bump Fire Stock



AR001064





Bump Fire Systems AK Bump Fire Stock

AR001065



Wolff Bump Stock IQ #304609

AR001066

Phoenix Technologies Bump Stock IQ#76598



AR001067



Troncoso Bump Fire Device
IQ#302683





Smith Bump Stock IQ#76715

AR001069









Ruble 10/22 Bump Fire Stock IQ#303826

AR001070

# Slide Fire Solutions, AR Pistol Bump Fire Device IQ#304071

AR001071



JT Grip Solutions, Bump Fire Grips IQ# 303318



**AR-Type**



**AK-Type**

AR001072





Saigatechusa/Ramlake, LLC, AK Bump Stock

Device IQ#76600

AR001073



FosTech Outdoors Bumpski AK Bump Stock

IQ#77918



AR001074



Foeller AK Bump Stock IQ#72350







Erskine Hailstorm Bump Stock

IQ#78025



Compton Bump Fire Stock IQ# 74544

AR001077



DeWitt Chuckbuster Bump Fire Grip

IQ#303195

AR001078

**Davalos, Jeana**

| | |
|---|---|
| **From:** | Kropke, Edward A. |
| **Sent:** | Friday, March 16, 2018 2:00 PM |
| **To:** | Lee, Jeana; Muniz, Marco A.; McCormick, Daryl S. |
| **Subject:** | RE: bump stocks: website/online presence |

Jeana,

I've gone online numerous times to look for sites that sell bump stocks. According to information obtained during open source searches, many retailers have been unable to re-stock their inventory due to a shortage of bump stocks. Marco also raised the possibility that dealers may have the bump stocks in inventory but are not advertising them at this time. In other words, the customer would have to inquire directly about purchasing one.

V/r,

Ed

**From:** Lee, Jeana
**Sent:** Friday, March 16, 2018 9:05 AM
**To:** Muniz, Marco A. ▮▮▮▮▮▮▮ ; Kropke, Edward A. ▮▮▮▮▮▮▮   McCormick, Daryl S.

**Subject:** bump stocks: website/online presence

Hi everyone,

Did anyone perform a quick online search for sellers of only firearm accessories? If so, did we find any?

Thank you,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-▮
Mobile: ▮▮▮▮▮

1