**To:**     Chu, Vivian S, ███████████
**From:**   Lange, Andrew R.
**Sent:**    Tue 4/17/2018 5:20:22 PM
**Subject:**   ANPRM Narratives of Comments
Kemp - Summaries.docx
Wade - Comment summary for Doesn't meet def.docx
Jensen - ANPRM Comment Summies - C14 C15 C16 C17.docx
Chester - Comments received ATF lacks statutory authority.docx
Dziki - Obsolete Rulings.Draft 04-13-18.docx
Dailey - Summarizing knee jerk political and other issues.docx
Psetas - Comment Summary ORA Assignment.docx
Hoffpauer - Comment Synopsis C24-C33.docx
Gilbert - ANPRM Summaries.docx
Storm - Support Responses - Dan 4-12-18.docx
Munoz - Comment summary paragraph.docx
Copy of Other Issues WIP 4-16-18.xlsx

Vivian,

Please find attached the narratives completed by the detailees on the comments received in response to the bump stock advance notice of proposed rulemaking (ANPRM). I also attached the "Additional Comments" spreadsheet with the comments completed highlighted in yellow.

From my quick review, it appears that narratives were not prepared for the following:

1) C19 (Vegas shooting investigation not completed)
2) D1 – D18 (Economic Impact questions)
3) E2 (Narrow proposal only to bump stocks)
4) E3 (Propose bill to make further sale of bump stocks unlawful)
5) E4 (Propose mandatory minimum life sentence for using bump stocks in crime)
6) H1 (Remove silencers from NFA)
7) Partially H2 (Repeal/eliminate GCA and Hughes Amendment) – covered NFA

However, narratives were prepared for the following "Additional Comment" topics:

1) NFA processing (Gilbert)
2) Enforcement not practical (Gilbert)
3) National reciprocity (Gilbert)
4) Background Checks (Munoz)
5) ATF Survey is flawed (Munoz)
6) Increase gun control (Munoz)
7) Big money (Dziki)

Thanks.

Andrew

**Andrew Lange**
Division Chief, Office of Regulatory Affairs
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, NE, Room 6N-531
Washington, DC 20226
Direct: 202-648-███
E-mail: ███████████

NOTICE: This e-mail message and any attached files are intended solely for the use of the addressee(s) named above in connection with official business. This communication may contain Sensitive But Unclassified information that may be statutorily or otherwise prohibited from being released without appropriate approval. Any review, use, or dissemination of this e-mail message and any attached file(s) in any form outside of the Bureau of Alcohol, Tobacco, Firearms & Explosives or the Department of Justice without express authorization is strictly prohibited.

AR001314

Kemp

## 2. Opposition to the Entire Rule with Reasons

a. Comments regarding Definitions and/or Past Determinations

The ATF received more than 28,000 comments that opposed the proposed rule, of which 5,575 were two prominent form letters. Of the total number of comments in opposition, over 14,200 addressed the definition of machineguns while more than 8,700 addressed previous determination made by ATF.

Of the more than 14,200 comments that addressed the definition of a machinegun, more than 10,000 specifically referenced the statutory definition of a machinegun. The statutory definition of a machinegun is found in 26 U.S.C. 5845(b) and states:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

A large number of commenters referenced or quoted this definition specifically and argued that "bump-stocks" and similar "rate increasing" devices do not meet that definition and are therefore not machineguns. One organization, the Gun Owners of America, quoted the statute and described the bump-stock in this manner:

> A "bump-stock" uses a semiautomatic's recoil to accelerate the rate of fire by bringing the trigger into contact with the shooter's finger. Thus, in a sense, the trigger pulls the finger, rather than vice versa. That said, every round is discharged as the result of a discrete and independent pull of the trigger -- at the expense of any accuracy. Thus, it is simply untrue that the "bump-stock" facilitates the discharge of more than one round "by a single function of the trigger" -- no matter how fast the gun discharges rounds. One pull, one discharge. This is the classic textbook definition of a SEMI-automatic. (Comment No. 35564 -GOA)."

More than 5,300 commenters used a significant portion of Gun Owners of America's language in their comments arguing against the rule.

"A single function of the trigger" was the standard cited by many commenters when arguing against classifying "bump-stocks" and similar "rate increasing devices" as machineguns. Commenters also pointed out that the definition of a machinegun is specific to the mechanical function of the device; having nothing to do with the firearm's "rate of fire." The remainder of the 14,200 plus commenters that opposed defining the bump-stock as a machinegun did not specifically reference the statute. Rather, they stated in general terms that the bump-stock does not alter the mechanical function of the firearm, the bump-stock is not a machinegun, the bump-stock does not convert a semi-automatic firearm into a machinegun or that a firearm equipped with a bump-stock still fires only once with each pull of the trigger. One commenter stated:

A semiautomatic firearm requires the trigger be activated EACH and EVERY time, if the trigger is held down, ONLY ONE round will be fired. Various add on devices that can be added externally to a semiautomatic firearm will still REQIORE the trigger to be physically activated EACH AND EVERY time. These add on devices DO NOT create a FULLY AUTOMATIC firearm. (Comment No. 12171).

Of the comments in opposition, more than 8,700 commenters remarked that ATF has already made determinations regarding the bump-stock and found that bump-stocks do not to meet the statutory definition of a machinegun. ATF states in the ANPRM that ATF has issued a total of 10 private letters in the past in which it has determined that bump stock devices are not machineguns or machinegun conversion devices. "Bump-stocks" are unregulated accessories. Commenters argued those determinations are correct and do not require reevaluation. Most commenters specifically referenced a 2010 determination made by "The Obama administration." This is presumably the June 7, 2010, letter sent to Slide Fire Solutions by ATF's Firearms Technology Branch regarding Slide Fire Solutions' "bump-stock." That letter has been made available to the public online by Slide Fire Solutions. In that letter, ATF indicates that Slide Fire Solutions submitted for classification:

...a block to replace the pistol grip while providing retention for the selector stop spring; a hollow shoulder stock intended to be installed over the rear of an AR-15 fitting with a sliding-stock type buffer-tube assembly; and a set of assembly instructions.

ATF made the following determination:

The stock has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed. In order to use the installed device, the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand. Accordingly, we find that the "bump-stock" is a firearm part and is not regulated as a firearm under Gun Control Act or the National Firearms Act.

This determination is referenced by ATF in the ANPRM as these specific devices were associated with the October 1, 2017, shooting in Las Vegas, Nevada that precipitated public outcry against bump-stocks and ultimately the submission of the ANPRM. Some commenters also mentioned statements made publicly by former ATF employee and Firearms Technology Branch technical expert Rick Vasquez supporting ATF's determination. Mr. Vasquez was one of the ATF employees involved in making the 2010 Slide Fire determination. Mr. Vasquez has stated in interviews that ATF made the correct statutory and technical determination in 2010 as the device examined does not meet the statutory definition of a machine gun as outlined in current law and rulings.

## 2. Opposition to the Entire Rule with Reasons

b. Comments regarding "rate of fire" and the vagueness or broadness of the rule leading to further bans.

AR001316

Kemp

The ATF received more than 28,000 comments that opposed the proposed rule, of which 5,575 were two prominent form letters. Of the total number of comments in opposition, over 13,100 voiced concerns about the language of the rule and that the rule could lead to additional bans of firearms and accessories. Many commenters used terms like "opening Pandora's box," or "a slippery slope" to describe the ruling. Concerns typically involved classifications utilizing "rate of fire" and the proposed rule being too vague or too broad.

Over 9,100 commenters specifically expressed concerns about the term "rate of fire" relative to reevaluating and reclassifying the bump-stock as a machinegun. One commenter's questions are fairly representative of those posed by many commenters:

> What is a standard rate of fire? What is considered a rate of fire increase?" (Comment No. 12168)

Many commenters argued there is not a standard or defined "rate of fire" for a semi-automatic firearm, nor can there be. Commenters indicated that a semi-automatic firearm's rate of fire is determined solely by the speed at which the shooter can pull the trigger. As such, it is impossible to objectively establish a "standard rate of fire" as "rate of fire" will vary from firearm to firearm and shooter to shooter. Several commenters pointed out that many common modifications or upgrades can lead to an increased rate of fire. "Match triggers" used in shooting competitions were mentioned several times. A few commenters pointed out that simply practicing will increase a shooter's "rate of fire" without any modification to the firearm. One commenter stated:

> Under this blanket statement things such as after market trigger upgrades, standard capacity magazines, trigger springs, muzzle brakes, enhanced buffers and buffer springs can all aid to increase rate of fire by small amounts and it can vary from person to person. (Comment No. 19405)

A large number of commenters made the argument that "rate of fire" is shooter specific. Commenters regularly referenced internet and cable television personality, Jerry Miculek, who can, with no mechanical assistance, fire a semi-automatic firearm at a rate that appears comparable to full-auto. Many asked whether Mr. Miculek's finger would be regulated or banned. Some commenters made more general references to videos on YouTube or the internet where unnamed individuals demonstrated rapid fire techniques.

Of the more than 9,100 commenters who opposed the use of "rate of fire" in reevaluating the bump-stock, more than 7,800 of those commenters specifically expressed concerns that utilizing "rate of fire" to classify bump-stocks as machineguns will allow anything that potentially increases "rate of fire" to be regulated or banned. One commenter stated:

> My understanding is that "any rate increasing device" would be within the scope of this regulation. I, and many in the firearms community, feel that this could leave open for

3

AR001317

Kemp

interpretation for virtually any semi-automatic trigger, which has a lighter or shorter trigger pull than factory, to fall under this regulation. This concern stems from the unknown question of what the standard rate of fire of a semi-automatic is, which could potentially set a precedent to eventually place restrictions on semi-automatic firearms as a whole during a future political administration. (Comment No. 12417)

As indicated previously, many commenters stated that common modifications, adjustments and techniques can allow for an increase in rate of fire.

Using your belt loop to bump fire, having a light weight trigger, softer recoil springs, lightweight bolt, using gun oil to lube your action, all of these things (and many others) could be considered a rate increasing device. (Comment No. 19374)

Most commenters voiced concerns that due to the broad and currently undefined nature of "rate of fire" or "rate increasing device" the door is opened for interpretation and inclusion of devices far beyond the "bump-stock;" potentially all semi-automatic firearms. One commenter stated that he did not necessarily object to banning bump-stocks, but objected to using "rate of fire" to do so because it could lead to bans on other unrelated devices in the future. Another commenter stated:

If you chose to outlaw "bump-fire stocks" the regulation should state unequivocally that rate of fire isn't the standard for making a firearm illegal. I'm worried that a fast shooting semi-automatic firearm will fall under this ruling. (Comment No. 27358)

The remainder of the more than 9,100 commenters voiced similar concerns but did not mention "rate of fire' specifically. These commenters expressed general concerns about the rule being too "vague" or too "broad," and therefore "open for interpretation." Many commenters indicated that the language of the ruling should be exact and measurable; and therefore not open for interpretation. One commenter stated:

The proposed wording of the document is so vague that it can be easily "re-interpreted" as a ban on any semiautomatic weapons (Comment No. 27482)

Another stated:

This broadening of the machinegun definition invites room for interpretation, and almost certainly would lead to a "slippery slope" situation where more and more features and types of firearms are included in the prohibition. This situation is the one of the primary reasons many gun enthusiasts oppose this regulation change. (Comment No. 27487)

A common thread in many comments was a concern that future administrations or lawmakers could reinterpret the ruling and enact further bans of accessories or firearms. This concern was voiced by both commenters who opposed the use of "rate of fire" and those who generally considered the ruling to be too vague. This commenter's concerns reflect those expressed by many commenters:

I have grave concerns that the non specific wording and broad language will undoubtedly open the doors for rampant abuse by our more progressive legislators. There is far to much

4

Kemp

interpretation allowed in the current ATF proposal that will assuidly lead to more over reaching regulation. Regulations that would lead to countless more restriction that go way beyond what the intent of this current ATF proposal was intended to accomplish. (Comment No. 19173)

## 2. Opposition to the Entire Rule with Reasons

c. Comments regarding "bump-firing," the "bump-stock" and its uses.

The ATF received more than 28,000 comments that opposed the proposed rule, of which 5,575 were two prominent form letters. Of the total number of comments in opposition, over 12,200 addressed "bump firing" as well as the nature and uses of the "bump-stock" in arguing against the proposed rule.

Over 9,200 commenters argued against classifying the "bump-stock" as a machinegun based upon the nature of "bump-firing." Many commenters contended that "bump-firing" is a technique, not a mechanical function, and does not require any external device or modification to be accomplished. Commenters argued that bump-firing can be achieved with any firearm if the shooter utilizes the proper grip. One commenter included single action revolvers. Commenters regularly referenced YouTube videos of people bump-firing or rapid firing semi-automatic and manual action firearms. Many commenters mentioned internet and cable television personality, Jerry Miculek, who can, with no mechanical assistance, fire a semi-automatic firearm at a rate that appears comparable to full-auto. Commenters argued that bump-stocks and similar items are only devices designed to assist with the bump-firing technique. One commenter stated:

> Again the bump-stock is a novelty, it sole purpose is to simplify the TECHNIQUE of bump fire. Bump firing does not require a silly sliding stock to be accomplished again it is a technique. (Comment No. 30992)

Many commenters further argued that many items other than a bump-stock can be used to facilitate bump-firing. Items such as sticks, belt loops, strings, rubber bands and fingers can all be used to "bump-fire" a firearm. One commenter stated:

> Bump fire can be achieved by a thumb in a belt loop, Jerry Miculek can fire almost as fast as a machine gun with just the finger god gave him. (Comment No. 19405)

Another commenter stated:

> With practice anyone can bump fire their weapon without a device. (Comment No. 19329)

More than 3,000 commenters focused on the bump-stock itself. Comments about the device included defining it as an unregulated accessory, dismissing it as something not worthy of regulation and defending it as a legitimate and useful item.

5

AR001319

Kemp

Over 1,400 of the 3,000 commenters described the bump-stock as a device that they do not believe rises to the level of a machinegun or a firearm in general and does not merit regulation. Some argued that it is just an accessory. ATF, in the ANPRM, states that it has classified some bump-stock devices as unregulated parts or accessories in the past. Commenters indicated, as an accessory, the bump-stock is not a regulated item. Other commenters sought to dismiss the bump-stock by characterizing it as a "novelty item," "range toy" or "piece of plastic." One commenter stated:

> Its a goofy little doodad, In other words, the devices are add-on accessories that allow a gun owner to briefly mimic automatic fire but they do not convert the gun into an automatic weapon. (Comment No. 19294)

Over 900 of the 3,000 comments were also dismissive of the bump-stock as a legitimate or unique danger to the public. Many argued that it is no more dangerous than any other device that has contributed to people's deaths, such as cars, alcohol, cigarettes, airplanes, etc.... Other commenters contended that the bump-stock is not dangerous because it is prone to failure, not easy to use and inaccurate. Many stated that in utilizing a bump-stock one sacrifices accuracy for the simulated experience of full-auto. Some commenters used the term "pray and spray" to describe using the bump-stock. A number of commenters indicated the bump-stock is only good for wasting ammunition and money. Several commenters argued that the shooter in Las Vegas, who allegedly used bump-stocks, could have killed more people with aimed single shot fire. One commenter stated:

> These devices do not make guns more dangerous or deadly, if anything they make them less dangerous as they reduce they accuracy of any weapon fired using bump action. In deed had the Las Vegas shooter just fired rapid, aimed shots the casualty count would have likely been much higher. Survivors recounted many instances of stray rounds hitting the stage and equipment, this was due to the innaccuracy of bump fire. (Comment No 1642)

Just over 600 of the 3,000 commenters defended the bump-stock as having legitimate uses. One commenter stated:

> Bumpstocks are fun to shoot on the range and enable some disabled persons to participate in the shooting sports. (Comment No. 3225)

About one quarter of the 600 commenters argued that the bump-stock was designed for, or used by, people with disabilities. One commenter specifically mentioned the device being advertised to make shooting easier for individuals with arthritis and hand injuries or ailments. A few commenters argued that banning the bump-stock would violate the Americans with Disabilities Act by depriving people with disabilities the use of firearms. The remaining portion of the 600 commenters expressed various other uses for the device. Most commenters characterized the bump-stock as primarily a recreational devise used "for fun." A few indicated that the bump-stock provides a safer means of accomplishing bump-fire than can be done unassisted. Other commenters stated the bump-stock can be used for animal control. Some commenters specifically mentioned control of feral hogs and coyotes which pose a danger to ranchers, farmers and the general public. Commenters also indicated that the bump-stock can be used for

6

AR001320

Kemp

self-defense. One commenter indicated, due to the limited availability of machineguns to the general public, bump-stocks are needed to defend against criminals who may have machineguns. The limited availability of machineguns to the general public due to the "Hughes Amendment" of the Firearm Owner's Protection Act was mentioned by several commenters as a justification for the bump-stock remaining legal. Commenters argued, due to the "Hughes Amendment" severely limiting civilian ownership of machineguns, the bump-stock is a necessary and legal alternative for defense against foes with machineguns. One commenter's statement covered many of the above mentioned arguments:

> Let us leave those accessories alone - there are legitimate uses for them, including use by some with physical impairments, for sporting purposes and potentially self-defense in certain situations (e.g. swarms of dangerous wildlife). (3941)

### Additional Comments

The ATF received more than 28,000 comments that opposed the proposed rule, of which 5,575 were two prominent form letters. Of the total number of comments in opposition, over 14,200 argued against the rule based upon the definition of a machinegun and over 9,200 argued against the rule based upon the nature of "bump firing" or the "bump-stock" itself.

Many of the more than 14,200 commenters opposed to the rule based upon the definition of a machinegun, argued that the bump-stock does not alter the mechanical function of the firearm and therefore does not convert it into a machinegun. Firearms equipped with a bump-stock still fire only once with each pull of the trigger. One commenter stated that the bump-stock is not a machinegun and misuse of the bump-stock for illegal purposes does not alter its function and make it a machinegun. Another commenter contrasted the bump-stock to the Autoglove, a device that ATF has previously determined to be a machinegun. The Autoglove allowed the shooter to depress a button on the glove which operated a motor, also attached to the glove, which would repeatedly actuate the firearm's trigger. The commenter stated:

> The Autoglove was a device that allowed an operator of a firearm to perform one function of the trigger on the device and continually discharge the firearm without performing any additional functions of the trigger. A bump fire stock on the other hand stick requires the operator of a firearm to perform a single function of the trigger for each round fired. (Comment No. 23122)

Another commenter stated that the bump-stock does not alter the function of a firearm and such items, including silencers, should not be on the NFA registry. That commenter further stated:

> The nfa list should only contain items that can actually cause damage themselves IE fully auto weapons and destructive devices. (Comment No. 23463)

Commenters argued that "rate of fire" does not make a machinegun. Another commenter argued that there is no standard "rate of fire" for "auto loading" firearms and that the rate of fire, with or without a bump-stock, is determined by the shooter and the shooter alone. ATF needed to remind the NRA that the ATF has already determined that the bump-stock does not fall under the restrictions of the NFA. (This is

7

Kemp

more of an "ATF made the correct determination in 2010" and a "Don't bow to political pressure" comment).

Many of the more than 9,200 commenters opposed to the rule based upon the nature of "bump-firing" or the 'bump-stock" argued that "bump-firing" is a technique, not a mechanical function, and does not require any external device or modification to accomplish. Commenters argued that bump firing can be achieved with any firearm, including a double action revolver, if the shooter utilizes the proper grip. "Bump-stocks" and similar items are only devices designed to assist with that technique. One commenter stated:

> Again the "bump stock" is a novelty, it sole purpose is to simplify the TECHNIQUE of bump fire. Bump firing does not require a silly sliding stock to be accomplished again it is a technique. (Comment No. 30992)

Commenters further argued that many things other than a bump-stock can be used to facilitate bump-firing. Items such as sticks, belt loops, strings, rubber bands and fingers can all be used to "bump-fire" a firearm. Another commenter argued that bump-stock type devices have been in existence since the late 1980's. Commenters stated that ATF cannot ban a technique, and therefore cannot ban the bump-stock which only assist with that technique. One commenter stated:

> Bump fire is a technique, if a standard issue stock can be "bump fired" does that not make it a bump fire stock? (Comment No. 31056)

One commenter expressed concerns that, because bump-firing is a technique, a ban of devices facilitating that technique could potential lead to bans of any device that allows a firearm to bump-fire. This could lead to bans of standard trigger systems that allow a firearm to function properly and ultimately bans the firearms themselves. One commenter argued that the bump-stock only simulates full-auto fire; as can many other common items. This commenter argued that trying to classify such devices as machineguns would "dilute" the definition of a machinegun and be impossible to enforce.

At least one commenter argued that, if the bump-stock is banned, people will simply modify it enough to circumvent the law and put it back into circulation. The comment is not clear as to whether the argument is because so many devices can be used to facilitate bump-fire, or just a general statement about people finding ways to circumvent the law. Commenters also stated that banning bump stocks will not prevent mass shootings. (Contextually, this appeared to be more of a general statement than a comment directed specifically at bump-firing or bump-stocks.)

AR001322

Wade

<u>ANPRM for banning bump stocks</u>

1. <u>Doesn't meet the definition under NFA (26 U.S.C. 5845)</u>

The term "machine gun" is defined in 26 U.S.C. 5845(b) as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person". Of the comments received during the 30-day public commenting period, 10,058 stated that bump stocks do not meet that definition. Of that total number, 5,307 were submitted in the form of a form letter, which included points that bump stocks do not fall under that definition.

Many of these 10,058 comments focus specifically on the part of the definition of machine gun that states ..."single function of the trigger". Commenters state that while a machine gun will fire repeatedly with one function of the trigger, a semi-automatic firearm will only fire once per function of the trigger. Commenters assert that the addition of a bump stock to a semi-automatic firearm does not change the fact that only one round is fired per function of the trigger, thus not meeting the current definition of machine gun. One commenter (#35176) stated simply *"the NFA has a very clear and precise definition of a machinegun. One that is clearly not met by a rifle with a bump stock"*. Another commenter (#13147) expanded further to state *"Federal law says, in part, that a machine gun is a weapon that can fire automatically more than one shot ... by a single function of the trigger. The definition includes ...any part designed and intended solely and exclusively ... for use in converting a weapon into a machinegun... (26 U.S.C. 5845(b)). According to this definition, a bump stock does not fall within this definition. With a bump stock, each and every round is discharged as the result of an independent pull of the trigger. So it is simply untrue that the bump stock assists the discharge of more than one round by a single function of the trigger -- no matter how fast the gun discharges rounds"*.

2. <u>Doesn't change function of semi-automatic firearm – mechanically not a machinegun – not a conversion device</u>

Similar to the comments regarding bump stocks not meeting the definition of a machinegun under the National Firearms Act (26 U.S.C. 5845), 4,180 commenters stated that the addition of bump stocks doesn't change the function of a semi-

1

AR001323

automatic firearm and are not mechanically a machinegun or conversion device. Of that total number, 268 were submitted in the form of a form letter, which stated, *"as long as one pull of the trigger fires one shot on a semi-automatic firearm, no accessory can be legitimately classified as a 'machine gun'"*. Using the definition of a semi-automatic firearm, one commenter (#13314) stated, *"Bump fire stocks do not convert semi-automatics to machine guns. The definition of a semiautomatic gun is one firing of one cartridge with one pull of the trigger. A bump fire stock does not change this definition"*. Although the majority of the 4,180 commenters on this particular theme shared the same sentiment, some commenters went more in depth concerning the mechanics of the operations of a bump stock. One commenter (#7132) stated, *"I do not see how a "bump stock" can make a semi-automatic rifle "automatic" because the mechanical operations of a "bump stock" still makes the rifle's trigger to reset, which means that it is not fully automatic as the user cannot hold down the trigger….. Bump stocks do not make the rifle automatic, e.g. a machinegun, because the "bump stock" is still confined to semi-automatic mechanics, which the ATF should not classify it as an NFA item"*. Another commenter (#7208) stated, *"Moreover, the installation of a "bump stock" in no way alters the basic operating characteristics and limitations of the original, legal firearm. It does not increase the action cyclic rate, nor eliminate the need for a distinct and complete trigger pull cycle - from initial break thorough reset, to another sear break - for every shot discharged"*.

3. <u>ATF made correct determination in 2010 – not necessary to reclassify</u>

Of the comments received, 8,728 commenters, of which 5,575 were submitted in two form letters, agreed that ATF has correctly determined that bump stocks are not a conversion device and do not convert semi-automatic firearms into fully automatic firearms. One commenter (#13208) pointed out that ATF has ruled twice already on this same issue. Another commenter (#7124) stated, *"The law review conducted under President Obama determined that "bump stocks" were legal. This device requires the trigger to be pulled for each round fired. Nothing has changed"*.

Other commenters made the observation that the previous determination is coming under scrutiny only because of recent events. Commenter #13284 stated, *"It has already been determined these are good to go, a tragic incident does not change the law"*. Another commenter (#35260) pointed out, *"The ATF opinion on slide fire stocks and similar devices has already been given. The determination that slidefire stocks and similar products are not machine guns is the right decision. With all due respect, the ATF has no authority to write law, and the law hasn't changed. The fact that a "bump stock" was used once, one single time, in a crime, after being used by so many for a decade before the one incident, proves this call for a ban is a knee jerk overreaction"*.

AR001324

Another commenter notes that the related definitions and the operations of related devices has not changed since ATF's Ruling legalizing bump stocks: *"This ANRPM has no basis in the law. BATFE has the responsibility to regulate machine guns, which by definition continue to fire so long as the trigger is held back until the ammunition is exhausted. That is not how a bump fire stock equipped gun operates and it is therefore outside BATFE area of authority. This was demonstrated by the BATFE letter to the Slide Fire manufacturer stating it is a legal product for the general market and does not create a machine gun upon installation. That is still the case and BATFE cannot create law to suit itself by redefinition".*

4. No definition of Rate of Fire – Using Rate of Fire (Can ban anything increasing Rate of Fire)

Looking at the proposed wording included in the ANPRM, which includes *Rate of Fire, Increasing Rate of Fire*, and *Devices that increase Rate of Fire*, 1,290 commenters stated that there is no definition of Rate of Fire in the law and no proposed definition of Rate of Fire in the ANPRM. Several commenters even questioned, *"What is increasing the rate of fire on a semi-automatic firearm? Does it define the amount of cartridges discharged within a given timeframe? Are you trying to regulate how frequently an operator can actuate a trigger?" (#7334). "I am curious as to what the ATFs definition of a rate increasing device even is? Will you please provide me with the definition and examples of such devices?" (#13179).*

Still others commented that there is no way to determine or define what *Rate of Fire* is in the context of the ANPRM. One commenter (#7431) stated simply "Determining what the rate of fire is on a semiautomatic firearm is impossible…..". Another commented (#13301), *"A rate of fire is not defined for a semi-automatic firearm. So there is no way to increase a number that is not defined".*

Many commenters were concerned that by using a defined *Rate of Fire*, anything that increases said *Rate of Fire* could be banned. There were 7,840 comments, of which 5,307 were included in a form letter that made reference to this possibility. Commenters asked, *"What would be next? Banning reactive binary triggers or putting restrictions on how many rounds a second someone can legally fire a gun?"* (#7368). *"What's next match triggers with light pull make a gun fast…"* (#7402). *"If you ban 'bump stocks' because it supposedly increases the rate of fire where will you stop? Competition triggers, magazines, trigger fingers?"* (#13273). One commenter lamented, *"I'm deeply concerned that a change in BATFE regulations will be a jumping off point for the banning of hunting and sporting firearms simply on a capricious and arbitrary number of rounds that can be fired per minute".*

Furthering the discussion about *Rate of Fire*, 9,207 commenters, including 5,575 comments in two form letters, argued that *Rate of Fire* could be increased using things other than a bump stock, e.g. rubber bands, belt loops, sticks, fingers and

3

by just practicing the technique such as Jerry Miculek, renowned professional speed and competition shooter. Many of these comments further expand on the comments concerning that by using *Rate of Fire* anything that increases rate of fire could be banned, including these commonplace items. One commenter (#13590) stated, *"If the ATF were to illegitimately use a standard based on increasing the rate of fire to ban or regulate bump stocks, then what is to stop it from illegitimately holding that other rate-increasing devices -- like belt loops, sticks or fingers -- are machineguns as well? YouTube abounds with examples of people using these items to increase the rate of fire of their semi-autos"*. Another commenter (#13211) communicated the same feeling, *"Bump stock type devices have been around for decades and are easy to make, you can simulate what a bump stock does with just your thumb and your belt loop. What are you going to do ban people's thumbs and belt loops on jeans?"*. Commenter #13234 stated, *"This is preposterous. By this logic, any item that increases muscle strength in my index or shooting finger would qualify as a rate of fire increasing instrument. Yall can't ban my fingers"*.

### 5. Vague/Too Broad/Open Pandora's Box – lead to a ban of FA accessories and/or semi-auto FA

Mirroring much of the points raised by *Rate of Fire* and by *using Rate of Fire* anything could be banned comments, 4,011 commenters contended that the ANPRM was too vague, too broad, and opened Pandora's Box to unknown interpretations and bans of other items in the future. Of the 4,011 commenters, 2,228 indicated that the ANPRM would lead to a ban of all semi-automatic firearms and 1,783 stated that the proposed ruling would lead to a ban of other firearm accessories. A commenter (#7193) expressed *"....the language is so vague that it will be easily misinterpreted later on to include precision triggers and triggers that make a firearm more manageable to people that need help (older shooters, women, weaker people)"*. Another commenter (#35521) states, *"If bump stocks are banned, it will allow the ATF to regulate items without serial numbers, that don't meet the federal definition of "firearm". This would allow for almost anything, especially gun parts, to be banned without legislation"*.

Some commenters expressed the extreme possibilities a vague ruling could be interpreted to mean: *"Will gun lubes and springs kits also be banned as they make a gun run faster. Will gun owners have to take a trigger finger test to show how fast they pull a trigger"* (#7582). Another commenter (#13613) added, *"It will be too broad and difficult to determine what would be appropriate for a rate of fire and how would an average Joe like me know if I were breaking the law. Parts wear and break in, triggers on firearms get lighter. Even if I lawfully use my competition firearm the way it is intended it could fail this new amendment to the "bump fire" stock ruling simply because my friend can shoot faster than me, but I can't get my split times (the time between shots) near his"*.

4

Wade

Commenter #13551 remarked, *"Banning bump-stocks is a step toward banning other accessories and will pave the way toward eventual banning of all firearms",* which was the underlying theme throughout these 4.011 *comments.*

### 6. Bump Stocks are a novelty/accessory/just plastic

Two hundred and sixty-eight comments regarding bump stocks being a novelty item were included in the contents of a form letter. An additional 1,498 commenters mentioned the same thing in their comments. *"It's a piece of plastic...."* (#22212). *"A bump stock is a single chunk of plastic. That's all it is. Think about that. Why would you want to regulation a single piece of plastic. It had no mechanical operation..."* (#13586). Many of these comments stated that the popularity of these items had ceased prior to the ANPRM and that most firearm enthusiasts were not interested in them.

### 7. Bump Stocks has uses – for fun, shooting pigs, self-defense

"We enjoy taking out targets it's fun to go out on a Saturday to spend time with friends and see who's a better shot" (#22140). "A bump stock can be used for bod good and bad I would say more good as it can be an option in home defense use" (#13136). These type of comments were made by 458 commenters. The majority of the comments portrayed the use of bump stocks as a fun, enjoyable activity.

### 8. Bump Stocks were created/used by people with disabilities

One hundred and forty-four commenters stated that bump stocks were created for/used by people with disabilities. Comments such as *"They also have utility in aiding disabled shooters"* (#35389), " *Bump stocks were originally designed to help disabled people who have trouble shooting"* (#22514), and *"These devices enable some with handicaps to fire long guns using this accessory"* (#7140) are representative of the 144 comments regarding this issue.

### 9. Bump Stocks are not a dangerous item, not good for accuracy – wastes ammunition

Some commenters focused on the accuracy. *"...they do nothing to increase lethality. If anything they make firearms less accurate"* (#13494). *"They should be left as is as they are near impossible to fire or for that fact with any accuracy"* (#13334). *"Bumpfire stocks do not substantially increase lethality of a weapon and for the most part do the opposite in reducing accuracy and causing more wounding than fatalities"* (#13321). *"...in my personal opinion...are a waste of ammunition and also lend no value marksmanship of any kind"* (#7127)

In addition, other commenters focused on the waste of ammunition with the use of bump stocks. "They are a "toy" and a waste of ammo" (#7314). *"It is fun and will eat your ammo.."* (#22300).

5

Wade

One commenter (#35502) hypothesized that because of the inaccuracy of bump stocks, lives were spared in the Las Vegas tragedy: *"The perceived problem this call for regulation is trying to address, that it allows a mass shooter to do more injury, I believe is a fallacy. Having seen bump stocks and bump firing in use, accuracy and reliability of the firearm goes out the window. I honestly believe more lives were spared due to the Vegas shooters use of bump stocks (I wish I could find a better word than spared). I've read that the Vegas shooters rifles were found to have jammed and that bullet strikes were found in surrounding, unoccupied areas, far from where he was aiming. If this is true, then I think the jams and the wide spread, especially over a long distance, was created by the way bump stocks function and I feel it supports my hypothesis".*

In total, 924 commenters opined that bump stocks are not dangerous, not good for accuracy, and are a waste of ammunition.

AR001328

Jensen

## ANPRM Comment Summary

ISSUE:  Whether "bump fire" stock devices fall within the statutory definition of "machinegun" under the National Firearms Act of 1934.

ANPRM Review Matrix Sections C14 – C17:  Proposed action is unconstitutional and/or it is unlawful for ATF to act.

## SUMMARY OF COMMENTS

## (C14) Rule is against the Second Amendment; is in and of itself unconstitutional, is an infringement of one's rights, and/or ATF should protect freedom by not taking action

At least 10,210 of the commenters who oppose a ruling banning bump stocks, expressed their concerns by arguing that such action would be generally unconstitutional and/or an infringement of their protected right to bear arms under the Second Amendment.  Many of these comments also include statements arguing that ATF personnel have a duty to remember the oath they have taken to uphold and defend the Constitution - a duty they argue includes protecting individual freedoms by taking no action on bump stocks.

A fair number of the comments raising constitutional issues are similar in nature.  They are general statements declaring that any action taken to ban bump stocks would be unconstitutional.  For instance, Commenter 3512 (P1-08) stated only that "the Constitution is clear," while Commenter #26952 (P6-06) said "this is very UNCONSTITUTIONAL."  Despite providing valuable insight into the writers' overall thoughts and emotions on the issue, general comments like these failed to provide any depth or explanation as to why the respective writers feel a ban on bump stocks would be a violation of their constitutionally protected rights.  Specifically, the general comments are unclear as to whether the commenter is implying unconstitutionality under Articles I or II, or if the writer is referring to an issue under the Second, Fourth, Sixth or other amendment.  While these general statements were well represented among the comments received, the vast majority of commenters addressing constitutional concerns focused on the Second Amendment.

By far, most of the comments addressing constitutional concerns, focus or refer to the Second Amendment.  The tone of these comments vary from simple informative statements like that of Commenter 18929 (P4-10), who said "Our Second Amendment is not an opinion.  It is the ultimate line designed by our founding fathers to protect us from this type of tyranny," to more passionate declarations like "The 2nd Amendment protects ALL Americans' right to keep & bear arms.  That right SHALL NOT BE INFRINGED!" - Commenter 26807 (P6-06).  With few exceptions, most commenters referring to the Constitution make a direct correlation between one's right to bear arms (i.e., firearms) and bump stocks.  That sense of conviction abounds as these same commenters simultaneously argue that bump stocks themselves are not firearms - only plastic accessories – which by their nature preclude them from the purview of ATF's authority.  Few if any commenters, however, addressed the incongruence as to how

1

AR001329

bump stocks can be both constitutionally protected by the Second Amendment, while simultaneously not being a firearm.

A final issue raised by commenters with respect to the constitutionally of a proposed ban on bump stocks was that of ATF's responsibility to the public. Many commenters expressed their belief that ATF should work to protect people's rights and freedoms rather than moving to ban any items. Commenter #3965 (P1-08) said, "The President, the congress, the courts and ALL federal agencies have a duty and an obligation to protect the rights of the American people [as] enumerated in our Constitution." Similarly, Commenter #34159 (P8-01) stated that a "ban on 'bump fire' stocks and other devices is an infringement of our rights as Americans, please uphold the position you have and honor the sacred oath to our Constitution."

## (15) Congress needs to change the laws.

At least 4,166 commenters raised the issue that responsibility of taking any action on bump stocks belongs to Congress, not ATF. The majority of these commenters point out that ATF has previously reviewed bump stocks on multiple occasions and repeatedly found them not to meet the definition of a "machine gun," under current law. Therefore, the commenters contend any proposed ban would require a new, contradictory finding by ATF that bump stocks now meet that definition, which would equate to a change in the law itself. As Commenter #3589 (P1-08) succinctly states, "Law making is up to our senators and congressman," which Commenter 19072 (P4-10) supports with his own statement: "Congress is the only way to make any new federal laws per the constitution period. I respect the rights of the ATF or other government agencies to enforce existing laws created by congress. But that is enforcement not legislation." For most of the commenters, their greatest concern on this issue appears to rest on the government's accountably to the people. "It is a function of Congress, to vote on such items, and be reviewed within a system of 'checks and balances'. Congress should not be allowed to sidestep this issue because it is politically expedient and may negatively affect their re-election come midterm elections." Commenter #26740 (P6-07).

## (C16) ATF lacks statutory authority to act. The proposed rule is an overreach of ATF's authority. ATF cannot act by executive fiat.

At least 5,717 commenters expressed their concern that ATF lacks statutory authority to act on bump stocks, arguing that such action would equate to the bureau either overreaching its authority or acting by executive fiat. In addressing ATF's authority with respect to firearms, commenters routinely referred to the National Firearms Act and the Gun Control Act. While some commenters like #18691 (P4-10) and #26953 (P6-06) incorrectly claimed "there is no statutory definition of machinegun in the National Firearms Act of 1934 nor the Gun Control Act of 1968 . . ." (however, see actual definition at 26 U.S.C. § 5845(b)), their message is inferred – that ATF is proposing to change current law. Before ATF may take any action on bump stocks, it must first redefine an item that it determined previously to be an accessory as now being a machine gun. To this point, Commenter #26726 (P6-07) addressed a concern well-represented among all of the commenters in stating "This would set a precedent of the ATF and any

2

Jensen

other regulatory agency being able to pick and choose what is law and to effectively write their own laws." Nearly all commenters raising this issue recognize that ATF is a law enforcement rather than a law making entity.

Many commenters expressed their displeasure with Congress for deferring to ATF on the issue of bump stocks. They recognize that ATF did not choose, but rather was directed to solicit public comments on possible action, as did Commenter #18929 (P4-10) who wrote, "I understand this is being placed in the ATF's hands because our cowardice elected officials are coming to midterms and they are worried about their voting base." Similarly, Commenter #18900 (P4-10) said, "This is just a way to get around congress, so people like me, (a law abiding citizen) [won't have] a chance to be able to vote on it." Perhaps the sentiment of the majority of those commenters addressing ATF's authority can be summarized by Commenter 18737 (P4-10) who said, "The ATF will be acting as a legislative authority if a ban or restriction on bump stocks is put in place by a reclassification of their policy. Not only is this an act of bureaucratic overreach, but it is plainly unconstitutional and a gross misinterpretation and rewriting of the National Firearms Act."

## (C17) ATF has no authority to act under 6 U.S.C. 531

At least 1,181 commenters voiced their opposition by citing 6 U.S.C. § 531, which they claim demonstrates ATF lacks authority to act on bump stocks. These comments were unique from other 'lack of authority' arguments in that they specifically cite a federal statute they believe gives ATF only limited authority. Few if any commenters provided deeper insight or explanation into how or why they believe this statute supports this "narrow" authority claim. Indeed, the majority of commenters citing this statute appear to have borrowed, if not fully copied, the verbiage from a Gun Owners of America form letter. See Commenter #34512 (P8-01). Along with providing the citation, this comment claims ATF has no general authority in law to regulate firearms safety, parts or accessories, which if allowed to happen could lead to an administrative ban on all firearms. Similar arguments have been made by other commenters who did not cite the statute.

3

AR001331

Chester

## ATF lacks statutory authority/overreach/no authority under 6 U.S.C. 531     ATC

**(form items C16 and C17 combined)**

Five thousand seven hundred seventeen commenters, including 25 law enforcement officers, six (6) organizations, and four (4) retailers, objected to the proposed regulations based upon a belief that ATF lacks statutory authority to act, ATF is overreaching, and ATF cannot act by executive fiat. Many comments suggest that ATF is being

One thousand, one hundred and ninety-five commenters (plus ~ 5350 form letters), including three (3) organizations, two (2) law enforcement officers, and one (1) retailer, opposed the proposed regulations based upon an assertion that ATF has no authority to regulate under 6 U.S.C. 531. A form letter submitted by over 5,000 supporters of Gun Owners of America states, "The ATF's statutory authority, contained at 6 U.S.C. 521, is very narrow. Nowhere does federal law give ATF the general authority to regulate the safety of firearms, accessories, or parts."

[ATC Note: I'm going to be honest here, I don't understand what point they are trying to make on the 6 U.S.C. 521 thing in order to consolidate the arguments about it... 521 references TTB, and the sister statute at 28 U.S.C. 599A says ATF can be delegated authority by the AG, which to me is the opposite of the argument they're trying to make, so to quote Princess Bride, "I do not think it means what you think it means." I would totally welcome being educated on it though.]

NRA Freedom Alliance (NFAFA) [comment 30060 A-1] submits, "Congress has only given the BATFE the statutory authority to regulate specifically-defined items, including machineguns – and... has provided a strict, narrow definition of what that particular category of firearm is." Scott L. Braum and Associates, LTD [comment 35990], citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213 (1976), stated, "The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is 'the power to adopt regulations to carry into effect the will of Congress as expressed by the statute." Further, Braum and Associates summarizes, "Congress has defined what a machinegun is... no interpretation of the clear language of the law can be employed to classify [bump stocks] as a machinegun and any rule promulgated to reach such a result would be improper."

Many commenters referred generally to the bad precedent set by a regulatory agency – in this instance, ATF – creating regulations which have the force of law (or "legislation by regulation"), and the effect that would have if other agencies were to effectively create law without action of the Legislative Branch. [Commenter 8107] explained, "If we as a society start interpreting the spirit of the written law, than anyone based on their interpretation can simply change laws at their discretion..It saddens me to see our country go down this road.It can only lead to corruption." [Comment 24041] adds, "To allow such a sweeping sub-legislative regulation to come about is a line that, once crossed, cannot be uncrossed and will likely lead to such administrative regulation in other governmental arenas, including health, education, taxation and welfare. The threat to the Constitution posed by this proposal is simply too great."

One (1) commenter [12363] cited 5 CFR 2635.101 in reference to the view that, "No one in DC or on federal or state level can regulate, misinterpret, ban or other way mislead/misinform our right to be armed." The same commenter also referenced the "Dick Act", or, the Militia Act of 1903 to defend the argument that the unorganized militia has an "Absolute Right" to possess any type of firearm without restriction.

1

AR001332

Chester

## Congress needs to change laws

Four thousand two hundred and twenty-four commenters, including seventeen (17) law enforcement officers, four (4) retailers, and two (2) organizations, commented that ATF may not move forward with the proposed regulation because Congress must change the laws. Many such comments first assert that bump stocks, as identified in the 2010 determination issued by ATF, are accessories which do not fall under the definition of a "machine gun" provided in 26 U.S.C. 5845(b). As a result, the Firearms Policy Coalition [comment 35581] says, "[T]he regulatory definition cannot be expanded to include such devices without prior authorizing legislation similarly expanding the definition of "machinegun" under the statutes."

In addition to statements that the law itself is insufficient to support the proposed regulations, and that Congress must change the law before the regulations may be applied, commenters stated only Congress has the power to impose new policies regarding bump stocks and related devices. [Comment 31338] adds, "Changes that affect the many should not be decided by a few, and regulations should not have the power of a law cithout going through the process of becoming law. Without going through congress and being properly represented, making this rule change is unlawful and un-American."Some commenters identified specifically Article 1 of the Constitution or generally "separation of powers." Most comments on the issue alluded to the separation of powers without using the terminology. [Comment 14268] states, "This is a law enacted by Congress, the sole body vested the power to enact legislation within the United States. The BATFE is not an extension of the United States congress... the BATFE has no Constitutional right to reinterpret or redefine federal law." Commenter [16473] provided the opinion, shared by multiple commenters, that, "The solution to the Bump Stock issue is best introduced as a bill and defined at congress, signed by a president, and upheld as constitutional by the courts." Similarly, [comment 20844] stated (formatting retained), "It is the duty of Congress, the Legislative Body of this Government to create and amend the Laws of the United States and it is the duty of the Supreme Court, the Judicial Body of the Federal Government, to determine if such Laws are legitimate; not the BATFE."

A significant portion of comments indicated that Congress must act through the legislative process because the legislative branch is comprised of representatives elected by the public – and thus, at the will of the public – while the executive branch is not. Summarizing remarks on the issue, [comment 19329] states, "Outlawing bump fire stocks should be done by a law in Congress and the Senate. This allows for the people of the United States to be represented by their congressmen and senators. It allows the public to have a say in what laws are passed. It allows later for the law to be changed or expunged."

## Comments received on Second Amendment issues                                    ATC

Ten thousand, four hundred and thirty-eight commenters (plus ~5700 form letters), including 53 members of law enforcement, eleven (11) organizations, and five (5) retailers, referenced concerns regarding the constitutionality of the proposed regulation, particularly with regard to the Second Amendment. Many commenters argued that the "shall not be infringed" phrasing of the Second Amendment strictly limits or negates the ability of government to impose regulations on firearms, stating that rights are not privileges from the government that can be revoked or regulated at will. Specifically, [commenter 23460] stated, "The 2nd Amendment of the United States Constitution does not contain any qualifiers or disqualifiers of Arms. It was intentionally left vague to include all arms that one may find themselves comfortable using in defense of himself, his property, his neighbors, his state, or even his

2

AR001333

Chester

country." The National Association for Gun Rights [Comment **30060-A1**] offered that the "right to keep and bear arms includes the right to own accessories for those arms."

Some commenters indicated a concern that the proposed regulation, while not directly addressing firearms as defined under current Federal law, would begin a "slippery slope" or open a "Pandora's Box" through which firearm ownership rights guaranteed under the Second Amendment would be open to infringement. Those commenters generally stated that "backdoor lawmaking" would permit regulatory agencies to create rules in violation of the Second Amendment and contrary to codified Federal law, perhaps leading to an outright ban of semi-automatic firearms, without the opportunity for the public to be represented through its elected officials and legislative due process.

A portion of comments referenced the founding fathers' wish to protect citizens from an overzealous government by the inclusion and specificity of the Second Amendment. Those commenters suggested that implementation of this rule would illustrate the type of government activities for which citizens are to be protected by the Constitution. One commenter [**0881**] stated, "The Constitution was conceived of to protect the peoples liberties from the government, not to provide a 'right to safety'…"

Several commenters related the Second Amendment right to bear firearms to the United States Supreme Court findings in *District of Columbia v. Heller,* 554 U.S. 570 (2008) and, to lesser extent, other related cases such as *United States v. Miller*, 307 U.S. 174 (1939) and *McDonald vs. Chicago*, 561 U.S. 742 (2010). Commenters indicated the Court findings that Federal or State restriction of lawful possession and use of firearms is contrary to the Constitution, the founding fathers' intent in establishing the Second Amendment, and subsequent case law. Citing *Heller*, [commenter **28700**] quoted, "[T]he conception of the militia at the time of the Second Amendments ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty…" and stated further, "If M-16 rifles and the like are banned, then the protections provided by the second amendment have been infringed." Additionally, [commenter **16473**] cautioned,

> Having a regulatory body seek to regulate an item like a machine gun will inevitably create the conditions for the gradual erosion of Americans 2nd amendment rights, as the language will be purposefully vague… A perverse interpretation of any regulation seeking to limit the rate of fire is foolish (there is no standard rate of fire of a semi-automatic firearm), and creates an undue burden on an individual (a lighter trigger for elderly or disabled individuals may be interpreted as illegal, creating a climate of ageist and ableist bigotry) and thus violating Heller's standard for regulations to be "reasonable" and possibly violating the 14th Amendment's Equal Protection Clause.

Summarizing the issue, [comment **13901**] states, "reclassification would unconstitutionally imperil semi-automatic firearms commonly owned and used for lawful purposes (which are protected by the Second Amendment, the fact of which is underscored in the majority opinion in District of Columbia v. Heller) by creating a slippery slope in the regulatory framework which is wholly extrajudicial and the [sic] unconstitutional." References to *McDonald* were nonspecific but utilized in conjunction with *Heller* to support a prohibition against government infringement into firearm ownership.

Many commenters referred generally to the Constitution and Second Amendment. A portion of those were U.S. military veterans. Of the 235 veterans who commented in opposition to the proposed regulations [ATC note in case you need it later and because I manually counted: 235 veterans opposed, 20 in support, 1 undetermined], most referred to their oath to uphold the Constitution and urged ATF to make decisions based upon the oath of many within the agency to do the same. Some veterans also

3

AR001334

Chester

commented upon the tyranny and government abuses they have seen in other countries that do not have or protect firearms ownership by the citizenry and they cautioned against regulations that would lead to similar circumstances in the U.S.

Some commenters shared the view that the Second Amendment was intended to provide citizens the ability to own any type of firearms that the government/military/law enforcement owns. Comment **16168** offers, "The Constitution guarantees our right to bear arms, and furthermore states that we are guaranteed the rights to have the same arms that the US military has." "The more the Second Amendment is regulated and infringed upon, the less we remain a distinguished and truly free republic… and the less capable the people are of protecting it. The police have no legal requirement to protect the citizenry… The military and the National Guard cannot be everywhere… I'm a firm believer that we need more qualified and trained armed citizens capable of maintaining the peace whenever circumstances permit" [comment **16536**]. "The second amendment… was intended to insure that united states citizens had the same equipment as the military" [comment **21627**]. "Our Founding Father expected the citizens to have the same weapons as the military, so that we might fight the expansion of tyrannical government, or other enemies foreign or domestic" [comment **18318**]. In defense of a historical precedent, comment **21610** stated, "The Whiskey Rebellion is a perfect illustration of how George Washington had to deal with armed citizens in 1791, but despite the resistance and in order to prevent future insurrections from occurring he could have banned all firearms. Although, he never did, because as our Founding Fathers intended, it was meant for the entire people of the United States."

## Other Constitutional Issues (Not Second Amendment, may cross other categories)     ATC

Commenters referred to additional constitutional issues including separation of powers, the supremacy clause, Article I enumerations, and violation of the Fifth, Ninth, Tenth, and Fourteenth Amendments. Generally summarizing many of those issues, [comment **2152**] stated:

> The Second Amendment (US Constitution) clearly states shall not be infringed, and all legislative power belongs to Congress (Article I US Constitution). Since the ATF, DOJ and President are all part of the Executive branch they are not allowed to redefine laws/rules or propose new ones… If we want to change the law, we need to contact our Senators/Representatives and do it congressionally per the US Constitution. Lastly, the Fifth and Fourteenth Amendment (US Constitution) says, federal or state governments may not deprive anyone of life, liberty or property without the due process of law.

NFA Freedom Alliance (NFAFA) [Comment **30060-A1**] stated that "the courts of this nation have held that laws and regulations may not be overly broad and must be narrowly tailored to fulfil only their intended goals." Citing a lack of legal definition for "rate of fire" for a particular weapon, NFAFA suggested implementation of the regulation of these devices is an unconstitutional government overreach. Additional commenters indicated that the proposed regulations are too broad to be constitutional. One commenter [35712] stated (formatting retained), "WE ARE A NATION OF LAWS. And, in this nation, we apply the law. The legal standard requires that laws are unambiguous, and crystal clear. As such, we apply the law, as written, and there is no room for individuals or agencies to arbitrarily expand beyond the letter of the law…" Supporting this statement, [Comment **34592**], citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), stated "where such a law is not neutral or not of general application, it must undergo the most rigorous of scrutiny: It must be justified by a compelling governmental interest and must be narrowly tailored in advance of that interest…" The commenter then

4

AR001335

Chester

concludes that any attempt to stretch the statutory definition of "machine gun" to include bump stocks and accessories that create rapid fire are thus unconstitutional.

Further, several commenters indicated that the Constitution limits the actions that Congress and ATF may take in creating laws and/or regulations under the Preamble, Article 1, and the supremacy clause (Article VI, Clause 2). [Commenter **23460**] stated that Article I, Section 1 of the U.S. Constitution specifically grants Congress all legislative powers and cannot delegate them to any Executive agency, further stating that the Tenth Amendment grants all powers not specifically granted to the Federal government are delegated to the States or the people. Firearms Policy Coalition [**35581**], citing *Util. Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2445 (2014), stated, "An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms. Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always 'give effect to the unambiguously expressed intent of Congress'"). Multiple commenters stated that regulating bump stocks and other accessories as machine guns would be, "in effect turning this regulation into an ex post facto law," citing Article I, Section 9, Clause 3 and Article 1, Section 10, Clause 1, of the U.S. Constitution for reference. Moreover, [Comment **35712**] states, "Per the preamble to our Constitution, government exists to protect rights.... Per... Article I, Section 8, Clause 3, Congress can regulate interstate Commerce... it can only criminalize acts, i.e. actions, not people, not possessions, nor the ownership of lawfully procured or created private property." Finally, several commenters referenced the Ninth Amendment and/or Article VI, Clause 2 (supremacy clause), remarking that any laws which contradict the Second Amendment are inherently unconstitutional.

Some commenters indicated that imposing bump stock and other device regulations would be a violation of the Takings Clause of the Fifth Amendment. Many commenters drew a conclusion that the government may not ban items that were lawfully purchased and possessed without owing compensation to the affected individuals. [Comment **31490**] states, "With no 'Grandfather Clause,' how do you propose to compensate lawful American Citizens for confiscating their LEGALLY purchased property without violating their rights protected under the 2d, 4th, 5th, and 14th Amendments?" [Commenter **21014**] states further, "[T]he ATF cannot confiscate previously legal to own property without congress' approval and financial backing in order to compensate appropriately for said property guarantied (sp) by the Bill of Rights. Lastly property and liberty cannot be forcibly removed from a citizen without due process..." [Comment **29589**] referred to a current case in the Southern District of California (citation unknown) in which "Judge Roger T. Benitez... issued a preliminary injunction against California law Proposition 63 that similarly contained no 'grandfather clause,' banning previously allowed firearms magazines and thereby making felons overnight, " continuing with a citation from the temporary injunction, "Thus, whatever might be the State's authority to ban the sale or use of magazines over 10 rounds, the Takings Clause prevents it from compelling the physical dispossession of such lawfully-acquired private property without just compensation... Here, California will deprive Plaintiffs not just of the use of their property, but of possession, one of the most essential sticks in the bundle of property rights." The Silencer Shop [**24397**] references *Silveria v. Lockyer*, 312 F.3d at 1092 to support the same point.

Two (2) commenters made reference to *U.S. v. Miller*, 307 U.S. 174 (1939) and its applicability to the current proposed regulations. Referencing the possibility of making bump stocks a registered NFA firearm, [comment **23281**] remarked, "As the justices in United States v. Miller 307 U.S. 174 stated, you can regulate through taxation however you cannot ban." Commenting broadly on the question of redefining semi-automatic firearms vs. machine guns, [comment **2381**] stated, "[I]n the dissertation of United States v. Miller it discusses the firearms in common use and would have efficacy in a Militia. Thus, the same holds true with the AR15 today and thus, is not able to be legislated against and hold out against any Judicial Review due to the precedent set in United States v. Miller."

5

AR001336

6 4

Dziki

# Comment summary from element C18 – "respond based on logic, don't bow to political pressure, as a knee-jerk reaction".

Important to many commentators were that the response to the proposed rulemaking on bumpstocks and rate-of-fire should not be a similar emotional, reactive response, but should be based on something that is reasoned and sound, and worthy of being permanent and the law of the land.

Generally summarizing this were several key comments:

- One person who hoped for levelheadedness, that our response was not "merely a reaction to one suicidal murderer. Please do not respond with rules that do not correct or prevent a problem. It is important that rules are made based on logic, reason, facts, and law, not emotion, political correctness, or politics." (commenter #1510).
- And one emphasizing the steadfastness of the rule of law: "urge against the changing of guidelines to fit public opinion, the law remains the law regardless of public opinion . . . please consider staying faithful to the law and not to the whims of the public." (commenter #1512).
- And warning ATF about the about the push to do something, do anything: "After the massacre in Las Vegas, there was the usual anti-gun push to "do something (i.e.; anything, even if meaningless)". (commenter #1568).
- Against mob rule by a minority: We live in a constitutional republic we are not a democracy, we are not a mob. (commenter #13806).

Politics/Politicians forcing this issue: Several commentators questioned the politics (and politicians) lack of sound reasoning and logic:

- Many noting that ATF had initially approved, and determined that such products did meet the requirements of the current regulations: "The promulgation of regulations should be fact-based, logical and objective. The initial determination by ATF that bump stocks were legal was made using facts. Now, emotion and political pressure has necessitated a review of bump stocks again. (commenter # 1580).
- Several noting that the unsavory political task had been illegally passed off to ATF: "Any consideration is this type of "regulation" is purely and naively political, designed only to make some of the public "feel good" and allow politicians to shirk their responsibility of governing."(commenter #1651).

ATF being pressured reactively by politics/politicians: Several commentators expressed disappointment about pressure on ATF from politicians to change the rules:

- "This is just the ATF bowing to political pressure, brought about by one tragedy perpetrated by one maniac. (commenter # 1652).
- ATF needs to resist this political pressure: "start using real common sense...stop appeasing retard politicians and tell those useless assholes to stop wasting YOUR time with pressure on these issues....just STOP. DON'T BE PAPER PUSHING IDIOTS. (commenter # 14094).

1

Dziki

**Comparing other Instruments of public tragedy:** There were several comments comparing other tragedies that involve instruments of death which are not banned from the public:

- "More people are killed by drunk drivers in a month then what have been harmed by bump stocks. Where's the effort to ban cars and alcohol? Knee-jerk reactions to tragic events by one crazy person that obviously and no care for any laws or morals only makes things worse. Heck, he could have driven a truck into the crowd and done just as much or more carnage so should we should ban trucks too?" (commenter #24772).
- "Anything can be used for illegal activity. A car, a truck, a baseball bat. You can't ban everything just because one person used it improperly". (commenter #1982)
- "The actions of one deranged individual should not dictate what I can and can't own. Murder is already illegal. A motivated individual will find a way regardless of what method is made illegal. 87 individuals died at the happy land night club in 1990 when a person with $1 worth of gasoline started a fire. Gasoline is still for sale on street corners around the country." (commenter #24882).

# Comment summary from elements C20, C21, C22, C23 - ATF should enforce existing laws, or focus on a variety of other issues: mental health, stricter penalties, and other issues.

Important to many commentators were that the response to the proposed rulemaking on "bumpstocks" and "rate-of-fire" should not include additional regulation from ATF, but instead the response should focus and concentrate on existing laws, and certain other issues such as providing better mental healthcare and creating stricter penalties for crimes committed using firearms.

Generally summarizing the "enforcing existing law" and some of these ideas were several key comments:

- We need to enforce exciting gun laws, adding more laws to firearms will not stop the mentally ill from committing violent crime, we should enforce what laws we have to prevent tragedies from happening (commenter #13819).
- Another suggestion was to "increased police and security, mental health care, and enforcing existing laws" (commenter #25065).

**Mental health issues -** Many commenters expressed concern (with the Las Vegas shooting in mind) for the issues of mental health as an ill in society, as an element in firearm crimes, and preventative measures provided by government services.

- One comment summarizing the Las Vegas event was "Las Vegas was a tragedy committed by a person that had mental issues we have seen this over the years and a conversation can be made against people with mental issues having firearms if so determined ...but to strip away rights of the people that obey the laws and live within the moral values of cherishing life is wrong..." (commenter #14101) and "focus on keeping insane people off the streets (commenter #17065).
- A few commenters advocated for spending more money on mental healthcare to help solve certain gun crime problems: "Allocate more dollars and infrastructure for mental health (commenter #1542), and

2

AR001339

Dziki

"Spend your time and money where it's needed, mental health issues and awareness" (commenter #16703).

- In short one commentator summarized the **tension between mental health and our Constitutional Rights to bear arms**: "Let's all use some common sense we need to work with laws that will help people with mental problems and stop trying to infringe on our constitutional right to KEEP and BARE arms" (commenter #13814).

**Stricter penalties for firearms related crimes -** Several commenters noted the need for increasing the penalties or applying them to the maximum for criminals who use firearms in crimes:

- "The agency should concentrate more of their limited resources to locking up, and **keeping locked up,** felons committing firearms related crimes" (commenter #1735).
- "The laws should be **tougher for the criminals** who are committing the crimes with guns, not law abiding citizens" (commenter #25042).
- "I would much rather see a very **severe penalty such as death** to be carried out within 90 days for anyone convicted of killing another person or persons by any mean" (commenter #25140).

**Background check enhancements –** Several commenters made the suggestion that the government increase and enhance their system of background checks:

- "require the Armed Services and all other governmental entities to fulfill their regulations and **forward all legal proceeding information to the NICS**" (commenter #1651).
- "Use and enforce the laws we already have in place, correct the ineptitude of our own government in its **reporting to NICS** of people that are ineligible to purchase or own firearms" (commenter #1773).
- "Invest in actually checking backgrounds/**improving communication between states**" (commenter #16747).

**Various other issues for focus -** Commenters had other various issues for which ATF should focus instead of pursuing more regulation of firearms:

- **Terrorists and radical groups:** "1) Investigate and prosecute groups that seek to undermine Democracy by promoting radicalism, hatred and violence (such as ISIS, Al-Qaeda, ANTIFA and others), 2) Create a better plan to keep an eye on US citizens that take trips to countries where radicalism is promoted (commenter #1609).
- **Gun free zones/armed citizens:** "We need to end gun free zones, make private entities responsible for their negligence in enforcing 'No Gun' policies, and enforce the laws already on the books, and incorporate lawfully armed citizens to defend themselves and others, in light of the laws regarding justifiable homicide" (commenter #1891).
- **Violent movies and video games:** "Movies, video games, music all have contributing factors that play into this. Don't hear cries to ban violent movies, maybe games I've heard peeps about it" (commenter #13850).
- **Border security:** "64k people died in 2016 because of opioids. Secure our border!!!!!" (commenter #246480.

3

AR001340

Dziki

- **Pharmaceuticals/good parenting/removal of God:** "I believe the problem is the pharmaceuticals prescribed to people is causing some mental illness and the lack of discipline and good parenting growing up and the removal of God from our schools and our life is the larger problem" (commenter #16860).
- **Polarization/race baiting:** "We as a nation need to change our evil ways and treat each other with love and respect. If we did that you wouldn't be worried about this product. To the government, quit dividing us and bring us together. We don't need new regulations or laws we just need you to leave us alone and quit race baiting" (commenter #16885).

# Comment summary for the other issue – "big money and/or politics".

Important to many commentators in response to the proposed rulemaking on bumpstocks and rate-of-fire, was an "other issue" regarding the influence of "big money" and/or "politics" that is driving the push for these proposed regulations.

**Political gun control lobby** - Most of the commenter had the opinion that this regulatory proposal was instigated by the "gun control" lobby, in that this is "Just a political game. Most gun owners don't own" a bumpstock (commenter #04305):

- "Ban driven by gun control groups" (commenter #04389)
- "The proposal is nothing but a political game orchestrated by politicians like Nancy Pelosi. Most gun owners don't even own bump stocks, but Pelosi knows that the second Republicans give her an inch, she'll take a yard and stab them in the back" (commenter #06523).

**Lobby and manufacturing money** – driving the regulatory efforts can be summarized by one commenter, "Get rid of the "deadwood" in DC lining their pocket at the expense of taxpayers" (commenter #12387). Such concern is found in these observations:

- "I am fundraising to build a national memorial for victims of gun/domestic violence please help share our cause and help us crowdfund. I am tired of political negligence and the NRA buying legislation. I want to acknowledge the lives we have lost and their families (commenter #06326).
- "Only reason to allow the sale of bump stocks is to fill the coffers of the gun manufacturers" (commenter #13815).
- "Like prohibition - harder to track & makes bad guys richer and more powerful" (commenter #08533).

**Political agenda** – Certain individuals made it clear that this rule making was facilitating the promotion of and agenda, either by an ulterior motive in "supporting the President and help move his agenda" (commenter #12589) of by providing "false information provided to push political narrative" for gun control (commenter #27300).

4

AR001341

Dailey

**Summarizing knee-jerk response issues:** Many commenters asked ATF not to bow to political pressure and ban the bump stocks. Due to the fact that the ATF previously ruled the bump stocks to not meet the definition of machine gun, it appears the ATF is reconsidering the proposal due to political pressure from politicians. The commenters also feel that politicians are using ATF to ban bump stocks so they will not have to have a public vote that would allow their constituents to see the voting record. It is implied that the ATF is being bullied into reconsidering banning the bump stocks.

Another issue often brought up by the commenters is the "emotional reaction" to an "isolated incident". It is often mentioned this is the only incident on record that has been committed by using a bump stock. The commenters state that most people had no idea what a bump stock was until the shooting in Las Vegas. The concern is that if the bump stock ban is allowed to go forward, a precedent would be set to ban any weapon that a politician feels is dangerous, basically setting into motion a "political gun grab" that would affect many law abiding gun owners.

For example, commenter #33199 stated "To my best estimate, this pressure is being applied to you by politicians. Please, do not allow the bad intentions of a few effect the many. This has the potential to set a dangerous precedent in regards to federal gun laws and enforcement. If the ATF is to reverse their prior position on ANY prior statements, that would mean that the agency is not a blind arm of lady justice. It would mean that they are a pawn in partisan politics". Another commenter # 33386, stated "These actions are clearly politically motivated and demonstrates a lack of respect for the rule of law, the legislative process, and the American voters on the part of the DOJ and BATFE".

**Summarizing "focus on other matters":** The comments in regards to the ATF needing to "focus on other matters" fall into three categories. The first category is the prevailing thought that ATF should focus on felons in possession of weapons and "vetting gun ownership". The belief is that many crimes are committed by individuals, mainly felons, who should not be in possession of firearms in the first place. The commenters feel that most crimes, especially high profile crimes, are committed by felons who should not have been in possession of those firearms. From reading the comments, several individuals commenters feel crimes that are being committed by felons get front page, and headline, news from the news media. This gives a perception to the public that "gun owners" commit the acts, when it is really people who shouldn't be able to possess firearms in the first place. The commenters feel because of this, law abiding citizens gun rights are slowly being taken away. For example, commenter #13061 states "If you want to do something useful, advocate that "Felon in possession of a firearm" laws have strong penalties". Also, commenter # 24283 states "While the pain is real and the need to act is important, the real issue is ATF should focus on ensuring firearms law compliance, namely the national instant criminal background check system, aka NICS". Another comment, submitted by commenter# 12697, states "There are more important things

1

AR001342

Dailey

this country needs than more gun legislation. Focus on those and leave the law abiding gun owner alone". Two final comments that highlights this point was submitted by commenter #24547 and it states "The ATF and politicians need to figure something that will get firearms out of criminals hands instead of banning firearms, or accessories, for all law abiding citizens". Finally, commenter #12980 writes "None of the laws that any agency has, or ever will impose, affects the issue of gun violence. Instead what it does is create an easier target for criminals and erodes our most fundamental rights".

Other commenters agree with the need to focus on the National Instant Criminal Background Check System (NICS). The commenters feel the NICS system should be solidified and that there are individuals who should not have firearms that are slipping through the cracks via NICS. One incident that was brought up consistently was the Sutherlands Springs, TX shooter. The thought was if the Air Force had reported the shooter's alleged domestic violence charges, he would have been prohibited, and therefore denied by NICS when attempting to purchase the firearms that were used in the shooting. For example, commenter #12956 states "Do something about the Air Force not sending criminal activity reports to the NICS background database, instead".

Finally, the comment most often mentioned is that the ATF should focus more efforts on crime in major cities and on "murderers" and "gang bangers". For example, commenter #12736 states "It is my considered opinion that the ATF should focus more on keeping guns of any kind out of the hands of those who habitually abuse them (murderers, gang bangers, thieves, and bad guys in general), than to spend so much time and money trying to strip constitutional rights from responsible gun owners". Also, commenter#24369 states "The ATF should focus it's resources on the illegal gun trade in cities like Chicago or Detroit to curb the amount of life lost in those cities, and allow law abiding citizens to keep our rights intact". These comments suggest that the majority of gun crime is committed in major cities, with Detroit and Chicago specifically mentioned. The comments suggest that ATF and the Department of Justice (DOJ) resources would be better served tackling crime, and criminals, in major cities. For example, commenter #1162 wrote" I recommend that BATFA re-assign all resources currently devoted to the "bump-fire" stock issue to enforcement of existing firearms laws and regulations in the nation's highest risk cities, starting with Chicago".

2

AR001343

Psetas - Comment Summary C24-C33

C24 Low/no impact on crime/safety – no evidence will reduce crime or improve safety - 1282
C25 No evidence used in crime (other than Vegas) – AFT lacks statistical evidence - 683
C26 Accomplishes nothing - 815
C27 Criminal02s are bad people don't follow laws, will still do bad things - 2012
C28 Can't regulate evil or morality - 1158

C29 Punishes law abiding citizens – imposes criminal penalties – Taking (of personal property) - 2963
C30 Increase distrust of Gov't or DOJ or ATF – Strongly dislike ATF - 304
C31 Decreases innovation in accessories market – 82
C32 Burden on manufacturers/loss of jobs - 338
C33 Waste of money to do this or to enforce – (How will ATF enforce?) – 522

## C24

In 1282 instances, commenters felt that the proposed regulation would have low or no impact on crime or safety if passed. Commenter 28616 stated, "In my opinion, regulating bump stocks serves zero purpose and accomplishes absolutely nothing. It will not make anyone safer. It will not save lives. Period." Similarly, Commenter 5643 stated, "It will not help crime in anyway just like all anti-gun legislation." The idea that gun legislation as a whole does very little to impact crime or safety seemed to be a common tone amongst the commenters.

The idea that this regulation would not only be useless in regards to preventing crime or improving safety, but also yield other negative results for law-abiding citizens was also seen. Commenter 21117 stated, "Doing so will have very little effect on crime rates and will actually increase the number of people living outside the law."

In addition to having no impact on crime or safety if passed, some commenters felt that the proposed regulation also took away the rights of the American people. Commenter 5651 stated, "…YET ANOTHER silly, vaguely worded restriction does NOTHING for our collective or individual security, and demonstrably will not deter crime, but it does constitute yet another chipping away at the rights of law-abiding US citizens." Another example of this sentiment comes from Commenter 14411 who stated, "It saves no lives, and it prevents no crimes. It only removes freedoms from the people."

## C25

In 683 instances, commenters felt that aside from the Las Vegas incident, there was no evidence that bump stocks were used in crimes, or that the ATF lacked statistical evidence to justify the proposed regulation. Commenter 28692 stated, "There is no legal precedence that this follows as there is no basis for a ban or change to the regulation of them based on statistics of their use over a long period of time." Similarly, Commenter 14581 stated, "Also please look at research, bump stocks are not used in everyday gun crimes." Commenter 6046 stated, "Also most people don't use bump stock or fire enchanting triggers to kill people."

In addition to bump stocks, some felt that rate of fire in general had not been statistically proven to influence crimes. Commenter 14507 remarked, "There are no statistics that even suggest that rate of fire in a firearm leads to more criminal acts committed."

AR001344

Psetas - Comment Summary C24-C33

Another seemingly common thought was that gun control in general has not statistically shown to prevent violent crimes. Commenter 20862 stated, "No gun control measure to date has been statistically proven to prevent violent crime."

## C26

In 815 instances, commenters felt that this new regulation would accomplish nothing. Commenter 28616 stated, "In my opinion, regulating bump stocks serves zero purpose and accomplishes absolutely nothing." Commenter 6008 felt the proposed change was, "Another regulation that would do nothing to change possible mass shootings or minimize the number of shootings should that happen."

A number of proponents to the regulation felt that it is pointless because the shooter is ultimately the only one with the input necessary to facilitate a higher rate of fire. Commenter 14383 stated, "Banning a firearm accessory such as the 'bump stock' is pointless since that device is still dependent on user input to make a firearm 'shoot faster.'"

Some commenters expressed the opinion that this was just an attempt by the government to make citizens feel as if something is being done to combat future mass shootings. Commenter 28631 felt that, "I think it is a feel good, do something that will not accomplish anything." Others felt that this proposed regulation was little more than further regulation. Commenter 20675 stated, "The proposed ban on bump stocks or other rate of fire altering devices is not only useless but just more unneeded regulation." For the majority of the comments associated with type C26, the idea of this proposal accomplishing nothing seems to be a standalone statement amongst other separate concerns.

## C27

In 2012 instances, commenters felt that despite the proposed regulation, those who are criminals, by definition, would continue to break the law. Commenter 6072 noted, "Criminals do not obey laws." Commenter 5977 stated, "Criminals are called that, because THEY DONT FOLLOW THE LAW!" The idea that criminals will continue to break the law regardless of the potential passing of the proposed regulation was common. Commenter 14411 stated, "People that choose to harm will do it in violation of this ruling no matter what the ruling says, or intended to say."

When referring to the incident in Las Vegas, commenter 20661 stated, "Legal restrictions rarely do anything to deter or prevent people with this mindset from their deadly obsessions." Commenter 28617 felt that the proposed regulation presents a further erosion on the Second Amendment and, "...does nothing to stop violent criminals from carrying out their evil intentions." Commenter 5660 (LEO) stated, "The issue is more about intent, if someone is intent on killing people there are many ways to do it. Big trucks, buses, fire, smoke, explosives (chemical mixtures), and so on." One current law enforcement professional stated, "I can attest that this will not stop or deter crime, as criminals have no regard for the law in the first place, until they are caught and want to assert any, all, and some made up in order to get out of the justice system and not be held responsible for their actions."

## C28

AR001345

Psetas - Comment Summary C24-C33

In 1158 instances, commenters felt that evil or morality is unable to be regulated. Commenter 5910 stated, "Banning a bump stock will not prevent evil man from performing evil tasks." Commenter 14507's closing statement was, "Where there is a will to do evil that will prevail." The overall feeling of this type was that regardless of any new regulations, evil will always exist. Commenter 28632 felt that, "All the laws and regulations in world cannot stop evil people from committing evil acts."

The idea that it is not firearms that kills people, but evil individuals bent on committing heinous acts, is a common tone amongst the comments associated within this type. Commenter 20705 stated, "Bump stocks and gun parts don't kill people...people kill people and this is absolutely why gun laws don't solve the problem."

## C29

In 2963 instances, commenters stressed that the proposed regulation would unfairly punish law-abiding citizens. Commenter 5946 stated, "It's a proven fact that your rules and regulations do nothing but hurt us law abiding citizens." Similarly, Commenter 6016 stated, "This would only result in more and more restrictions on law abiding citizens."

Other commenters were more concerned that new regulations would punish law-abiding citizens by imposing criminal penalties. Commenter 14160 noted, "Since the effect can be replicated without special tools of any sort, banning these stocks would create criminals out of every law-abiding citizen who owns a semi-automatic rifle." Tying in with the idea that one instance ruined the rights of many, Commenter 20649 felt that, "The shooting in Las Vegas, while very tragic, does NOT represent the honest everyday gun owner, and the everyday law abiding citizen should not be made to suffer for the actions of a few evil people."

In regards to the feeling of being punished, it appeared that some commenters felt that the punishment would affect them on a larger scale. More specifically, the taking of their second amendment rights. Commenter 28622 stated, "At what point will they stop trying to restrict the 2A rights of law abiding US citizens that soon enough it will not exist?"

## C30

In 304 instances, the idea of the proposed regulation resulted in an increased distrust of the government or a general feeling of dislike towards the ATF. Commenter 20822 stated, "If the ATF does the easy and safe thing, people lose jobs, taxpayers lose money, and the ATF loses credibly and trust of both sides of the issue." Commenter 20889 plead for the ATF to take the side of the American people by stating, "It's time to quit being a problem and a pain in American people's side and be our ally." Commenter 28663 felt that further regulation, "...only further an immensely egregious 'vote' of 'no-confidence' in the Federal government & its failure to uphold the foundations of this great nation."

Some commenters feel that the federal government as whole is not accomplishing its duties and show a dislike for all government agencies. Commenter 6053 seemed to feel very strongly by stating, "Keep your hands OFF OF MY RIGHTS! FROM OPERATION FAST AND FURIOUS TO TARGETING OF CONSERVATIVES BY THE IRS TO LOOKING THE OTHER WAY ON HEZBOLLAH DRUG TRAFFICKING, THE FEDERAL GOVERNMENT HAS SHOWN THAT IT HAS NO ABILITY TO DO THE RIGHT THING. STAY AWAY FROM OUR RIGHTS - WE DON'T LIKE YOU, WANT YOU OR NEED YOU." Similarly, Commenter 5684 stated, "I am 100% opposed to the ATF and ANY and ALL departments of the United States government, including the White House, Congress and SCOTUS infringing on

Page 3 of 6

my 2nd Amendment rights, my Constitutional rights, my God-given rights." Commenter 14491 stated, "Hello ATF it is I a libertarian that disagrees with the entire existence of all government agencies and especially yours ever since you split off from the IRS. Anyways I disagree with ALL gun control and all laws or rules on property. I view everything you do as a violation of liberty and property rights."

## C31

In 82 instances, commenters felt that the proposed regulation decreases innovation in the firearms accessories market. Commenter 28741 stated, "In addition, reclassifying firearms accessories would also lead to a decrease in innovation in the marketplace and a resultant loss of American jobs and manufacturing." Commenter 20965 stated, "Innovation should not be banned due to some individual's criminal activity. This is the reverse of progress and fairness. Why ban an inanimate object...prosecute the operator."

It may be argued that innovation has come out of necessity to combat already existing limitations. Commenter 5806 felt that, "The extraordinary cost of a select-fire weapon has created an environment where workarounds are encouraged, by consumers and through large financial opportunity to manufacturers. The limitation of the NFA creates a demand in the market for devices that simulate select fire weaponry."

In several comments, individuals voiced their concern that the right to bear arms should not be limited to outdated technology. They feel that the people should be able to possess the same modern weaponry that the government possesses in the event of protecting themselves from a tyrannical government. Commenter 14161 stated, "We gun owners have given too much when the 2nd amendment clearly says shall not be infringed, all because technology advances and innovation occurs it doesn't change the meaning of our god given rights." Sarcastically, more than one commenter made remarks insinuating that the government would prefer American citizens still be limited to protecting themselves with muskets, similar to what was available at the time the second amendment was passed.

## C32

In 338 instances, commenters voiced concerns of the proposed regulation being a burden on manufacturers and resulting in a loss of jobs for those who make a living manufacturing bump stocks. Commenter 5839 stated, "One jerk used this, so now we've got to ban them from all the millions of law-abiding Americans and hurt the businesses who manufacture this gadget, thus putting Americans out of jobs?"

Despite some commenter's personal dislike of the bump stock, they still felt strongly about their place in the market. Commenter 6096 stated, "I am not a fan of the slide fire stock. I see no purpose other than it is fun. That said, just because one person did a bad thing doesn't mean we should shut down an entire industry. Many business would close..."

Some concerned commenters felt that the regulation would affect economies nationwide on both large and small-scale businesses. Commenter 14530 stated, "The regulation will kill the firearms accessories industry for both large and small business and would be catastrophic for local economies nationwide." Similar thoughts were felt by Commenter 20702 who expressed, "In addition, it would put Americans out of work, cost business owners their businesses, require an inordinate amount of government resources to implement and enforce and, in the end, will probably do more harm to the freedom of the citizens of our country than it does prevent tragedies like the Las Vegas shooting." Yet another example of this line of thought can be seen through

Psetas - Comment Summary C24-C33

Commenter 29085 who felt that, "The firearm industry contributes greatly to the American economy through invention of goods and provision of jobs. Reclassifying a bump stock or rate increasing device would negatively impact the lives of upstanding hard working citizens that produce these goods."

C33

In 522 instances, commenters felt that the proposed regulation would be a waste of money to enact or enforce. Further, some inquired as to how it would be enforced.

In regards to creating, enacting, and enforcing the proposed regulation, Commenter 20797 asked, "How much will it cost the taxpayer to enact and enforce proposed regulation?" Commenter 14206 felt that the mere proposal was a waste of both time and money. He stated, "This investigation is a waste of your time and the taxpayers money." Commenter 28659 felt that the negative financial effect would be felt by both the firearms industry and the public. He stated, "...the inevitable cost that would be incurred by the firearms industry and the public, should this new regulation be implemented, would be wasteful and an unnecessary burden."

Commenter 27898 felt that the proposed regulation, "...will draw resources away from crimes that have victims. Instead of using resources for actual investigations into murders, gangs, or even mass shooters, the ATF and other law enforcement will be searching for only objects."

Some commenters felt that the waste of money would stem from the legal battles that could ensue should the proposed regulation pass. Commenter 21048 stated, "Again, manipulating these rules to change this would result in legal challenges, a further waste of taxpayer dollars."

A theme that was present in several comments in various batches was the idea that rate-increasing devices were abundant and further limitations could lead to wasteful endeavors. Commenter 5960 stated, "And what about the millions and million items out there the increase rate of fire? Are you going to waste taxpayer's dollars trying to confiscate all of them? This is another waste of time and taxpayer's dollars." Similarly, Commenter 28888 feels that the slippery slope that the banning of rate increasing devices creates will lead to further bans and, "... create enforcement difficulties in later years."

AR001348

Hoffpauer

**Lack of Benefits**

ATF received thousands of comments on how the proposed regulation would lack benefits.

*C24*

ATF received one thousand two hundred and eighty-two (1282) comments indicating that by regulating bump stocks, the regulation would have little or no impact on the current rate of crime or enhance public safety in any way. Commenters stated that there is currently no empirical evidence that further firearms regulations under the National Firearms Act of 1934 or Gun Control Act of 1968 would have any impact in reducing crime or safeguarding America any more than it already is.

Some examples of what commenters are saying about the proposal having little impact on crime rate include but are not limited to; (Comment #26225) stated, "I do not believe banning this type of device will stop violent crimes or injuries from felonies involving firearms." (Comment #29169) stated, "This sort of unjust regulation is frivolous and has proven to be completely ineffective in reducing the violence being perpetrated on us by criminals and the mentally unstable." Several commenters go on to further state that they believe that there are enough firearm regulations and laws already in place and they do not make and have an impact on reducing crimes involving firearms. Ten percent (10%) of all law enforcement comments also believe that any further regulation would not have an impact in reducing crime or improving safety of the citizens.

*C25*

ATF received six hundred and eighty-three (683) comments stating that other than the Las Vegas shooting, there is no evidence that bump stocks have been used in a crime and that ATF lacks statistical evidence of such. Commenters generally stated that they believe that other than this "lone wolf" there are no other incidents to reflect on in order to prove that evidence exists of trends using a bump fire stock to commit a crime and inflict mass casualty. Commenters are stating that the Las Vegas shooting was a scam, a governmental cover up and a means to begin enacting further firearms laws and regulations. Commenter's further state that they believe the Las Vegas shooting was not the act of one shooter, but rather multiple shooters from various vantage points, all part of a government conspiracy for the sole purpose of a smooth path toward more firearms restrictions.

*C26*

ATF received eight hundred and fifteen (815) comments stating that the proposed regulations would accomplish absolutely nothing. Commenters stick with a theme, stating that a ban on bump fire stocks or any other similar device will not have an impact of safety, reduce crime, deter criminals from obtaining and using them or prevent violent acts and mass shootings. Some examples of what commenters are saying about the proposal accomplishing nothing include but are not limited to; (Commenter #3045) stated, "A ban on this item would have done nothing to prevent the shooting in Las Vegas and will do nothing as far as making Americans safer." (Commenter #3346) stated, "The banning of bump stock will do absolutely nothing to stop further mass shootings and I believe you guys know as well." Furthermore, responses from law enforcement officers comment on 10% of all forms stating that this proposal with accomplish nothing.

*C27*

ATF received two thousand and twelve (2012) comments stating that criminals don't follow the laws and they will continue to violate the law regardless of any new laws or regulations enacted. Comments range from issues of criminals ability to obtain firearms from other illicit sources, criminals don't obey any laws and they are only

1

AR001349

Hoffpauer

followed by law abiding citizens. Further, comments also state that punishing honest law abiding Americans for the actions of a relatively small number of criminals is contrary to due process, and unconstitutional. Criminals have a plain disregard for the law and will do what they will to circumvent the law and obtain weapons in order to commit crimes. (Comment #11661) stated, "Criminals intent on doing wrong, killing innocent people will always find a way to do so no matter what gun or gun accessory is made illegal. Further restricting the rights of the law abiding does nothing to stop criminals from committing their acts of crime or murder."

Comments also talk about the other tools criminals will employ to carry out their personal or deranged beliefs. Most commonly, commenters detailed the use of automobiles, toxic substances, knives and homemade explosives just to name a few, that further prove that criminals will do whatever they can to evade the laws to commit crimes. (Comment #11787) stated, "History has proven that further government regulations will not prevent the unlawful use of any weapon. Those determined to use any weapon in an unlawful manner will do so regardless of laws or regulations on the books. Criminals are just that...criminals, and have no regard for laws and regulations...just look at places like Chicago and Baltimore."

Lastly, commenters overwhelmingly believe that the reality is that regulations only control the law abiding that those with a disregard for the law let alone fellow human beings will not be prevented from committing crimes let alone mass murder despite the laws. One law enforcement officer commented, (LE Comment #18499) stated, "Normally it's the same 2% of any population in any state or town. The other 98% of all people are not the problem, yet we keep enacting laws that will affect the law abiding citizens. THE CRIMINALS DONT CARE."

### C28

ATF received one thousand one hundred and fifty-eight (1158) comments stating that evil or morality cannot be regulated. Commenters articulate that banning objects and changing laws will do nothing to stop someone who is determined to do harm, that you cannot legislate morality. The morals people are raised with and taught are somehow false and evil somehow get warped through mental illness or by other means and become evil thoughts and actions. They further state that you cannot regulate evil people. Evil people will always find a means to their end and only the law abiding are thus regulated. (Comment #29255) stated, "The evil is in people, and it's not right to punish others for individuals decisions for violence." (Comment #29319) stated, "You can't punish the good people for the deeds of the evil!"

Commenters state that evil will always find a way to cause harm to the innocent people of the world, and do not believe that banning or regulating a firearm accessory to stop the actions of a the few evil individuals is the way. Lastly, commenters are relaying that what we do have is a problem with evil people who are not met with sufficient force. More people need to be enabled to fight evil should it present itself. Taking away tools for us good people to fight evil is only playing into the hands of the enemy.

### Costs (General)

ATF received thousands of comments on how the proposed regulation would have personal or economic costs.

### C29

ATF received two thousand nine hundred and sixty-three (2963) comments stating that the proposed regulations would only punish law abiding citizens. Commenters overwhelmingly claim that only law abiding citizens follow the law and thus only they will really be subject to new regulations since criminals don't obey the laws and regulations. They go on to say that they are being punished for the acts of one evil person. That the innocent are being turned into the guilty. Law abiding gun owners state that they would be turned into criminals for owning a device and have to surrender it after having spent their hard earned money on it. (Comment

2

AR001350

Hoffpauer

#26252) stated, "It's not the law abiding that are the problem. It's the demented, sick minded, and hate driven." (Comment #18231) from a law enforcement officer stated, "You will make my job harder and more dangerous by converting thousands of law-abiding citizens into criminals." Commenters further state that criminals will have an easier time knowing that their victims will not be armed and cannot defend themselves.

Once final comment really sums up how commenters feel about law abiding citizens being punished. (Comment #26536) stated, "We do not feel that the actions of one person should restrict the hobbies and recreation of the vast majority of gun owners that are law abiding. All a law like this will do is punish the law abiding citizens of this great country! The despicable people will never abide by the law, and the law abiding will be the ones to pay the price for the crazy people that are in need of mental health help and are restricted from having and or purchasing firearms of any type. Please do not punish the law abiding for the actions of criminals!"

## C30

ATF received three hundred and four (304) comments indicating a distrust in the government, DOJ, ATF or a strong dislike for ATF. There appears to be a low level amount of distrust for government and especially ATF by commenters citing such events as Ruby Ridge, Waco and Fast & Furious as examples of a lawless and unaccountable agency. Many believe ATF should be disbanded because they cannot be trusted, continue to break laws and are a worthless agency continuing to make another mistake. (Comment #18313) stated, "The BATFE must cease updating its regulations immediately and disband completely, as the Constitutional authority for its existence does not exist."

Some commenters state that they believe the Las Vegas shooting was a master plan orchestrated by the government in order to clear a path for tighter firearms laws and regulations. (Comment #11970) stated, "I'll bet my paycheck ATF was somehow involved with the fake narrative of the Las Vegas shooting, just like Fast and Furious." Commenters go on to claim that the government is becoming a socialist and corrupt state attempting to strip Americans of their rights to life, liberty and the pursuit of happiness.

## C31

ATF received eighty-two (82) comments stating that the proposed regulation will decrease innovation in the accessories market. The prevailing them in the comments provided suggest that the advancement of firearms technology and innovation would be severely at risk should the proposed rulemaking be enacted. Commenters go on to state that the decision will retard the advancement of innovative technologies that are being made by those companies willing to risk thinking outside of the box from developing new equipment that would further advance the way that civilian, Law Enforcement, and military engage both tactical and sporting events. (Comment #29267) stated, "We should have the freedom to do anything with our firearms including modifying them to our needs. It's not just our freedom but also our way to keep improving technology and engineering new products. If you think about how Steve Jobs and Bill Gates got started? Some of the most incredible minds of the world started building things from their garage. Who are we to stop our youth from growing humanities technology and advancing our World? I understand everything comes with a consequence. But a smart man once said you must take a leap of faith and take chances."

## C32

3

Hoffpauer

ATF received three hundred and thirty-eight (338) comments citing that the proposed regulation will place a burden on manufacturers and create a loss of jobs. The basic underlying tone of these comments speaks to how this could hurt our economy by shutting down businesses that manufacture these articles as well as the dealers who specialize in their sales thus resulting in a significant amount of people losing their jobs. The sentiment can be clearly exemplified by (Comment #3006) who stated, "This will only put companies producing these products out of business..." "...and cost the private industry and individual a tremendous loss of revenue."

## C33

ATF received five hundred and twenty-two (522) comments claiming that this proposed regulation will be a waste of government spending both in process and in enforcement and questions ATF's ability to actually enforce. These commenters, overwhelmingly claim that any such new regulation would be an enormous waste of time and money both through the resources used to vet it out, discuss it, draft and write it and ultimately enforcement of it. Commenters see this as adding even more backlog to the already backlogged NFA overload. (Comment #2998) stated, "I also fear that the determination against the legality of bump-stocks would result in lawsuits which would cost the US government a lot of time, money, and resources to combat-- and that ultimately, the decision would not stand up in court." The Firearms Policy Coalition, in their comment, (#35587) concurred that this would lead to an enormous waste of government time, resources and money and would inevitably lead to litigation.

AR001352

Gilbert

**ANPRM -** Application of the Definition of Machinegun to Bump Fire Stocks and Other Similar Devices

### (F1) General Support for the Entire Rule

Six hundred eleven commenters expressed support for the entire rule, typically with a single sentence or two such as 1) support a ban, 2) ban now, 3) Our country needs more effective gun control, 4) bump stocks should be outlawed, 5) No one needs a machine gun, 6) If there were no bump stocks then the massacre in Las Vegas would not have happened, 7) Please ban bump stocks. Why are we allowing them to enable mass killings on a grand scale? and 8) My husband and I are counting on your agency to better protect us from machinegun-like devices that make killing people way too easy.

Many commenters stated that 80% of the American Public supports the banning of bump stocks and repeatedly referred to the "bump stock loop hole". A short submission by a commenter (Comment #35013) urged, "Keep our cities safe, our children safe, and all of us safe. No one needs a bump stock to make a gun shoot more bullets faster. This is crucial and imperative!"

Another commenter (Comment #2500) stated, "I am begging you to outlaw bump stocks. How many more deaths does this United Stated need to suffer from any gun violence? The idea that it can be made easier to kill many more people at one time, is heinous. I am sure that common sense can prevail if all involved stop listening to powerful lobbies and vote their conscience."

Some commenters expressed their general support for the entire rule by asking, for instance, "How many more people will have to die before we as a nation enact sensible gun laws, such as the bump stock regulation?" (Comment #2503)

Some commenters believed that the proposal would be a "common sense" action that would help prevent future deaths from gun violence. For example, one commenter (Comment #2505) noted, "This extraordinarily modest regulation of bump stocks should of course be passed. It should be only the first step in a systematic program to stem the epidemic of deaths due to gun violence. This sort of regulation is long past due."

Many commenters offered their opinion that bump stocks serve no purpose for sporting or hunting use and are simply a means to circumvent costly machine gun registration and ownership. Three commenters indicated support for the rule indicating they were personally impacted by gun violence.

### (G1) Particular Support for Portions of the Rule

### (G2) Threat to public safety

Over 4,000 commenters addressed not only the current danger of allowing rate increasing devices to be readily available but stressed the likelihood of future mass shootings if action is not taken to regulate or ban. Commenters argued that these inexpensive devices can be purchased from a variety of sources with no background check required.

1

Commenters also pointed out that while often marketed as a novelty item for recreational shooters, bump stocks and similar devices that accelerate the rate of fire of a semiautomatic firearm, are extremely dangerous and pose a substantial risk to public safety. Commenters added that these devices are intended to circumvent the restrictions on possession of fully automatic firearms in the Gun Control Act of 1968 and the National Firearms Act of 1934 by allowing an individual to modify a semiautomatic rifle in such a manner that it operates with a similar rate of fire as a machine gun.

Some commenters noted that not only should bump stocks be banned due to public safety concerns but also because there are substantial economic costs due to gun violence. For instance, The Brady Campaign To Prevent Gun Violence (Comment #35563) organization wrote to say, "...Brady strongly urges the agency to focus on the importance of public safety -- the lives and safety of men, women and children in America -- rather than only the financial consequences on companies that choose to make and sell these dangerous accessories. To the extent economic issues are considered, Brady urges ATF to also consider the economic costs of public access to such accessories. To that end, Brady refers the agency to its 2017 report, *Shooting Costs*, which analyzes hospital and other medical costs for victims and survivors of gun violence in the United States. Taxpayers bore much of these costs through Medicare, Medicaid and other means."

Given their capability to greatly increase a weapon's firing rate, many commenters compared bump stocks to "weapons of mass destruction" that enable mass killings. Physicians for the Prevention of Gun Violence (Comment #27550), a gun violence prevention organization, commented, "The danger posed by devices like "bump fire stocks," or bump stocks is real and serious, and has been known for some time. Bump stocks are one of many accessories to firearms that increase their rate of fire and enable otherwise lawful weapons to be converted into the functional equivalent of fully automatic weapons or machineguns. On October 1, 2017, our nation saw how destructive these devices can be."

### (G3) Danger to law enforcement

Forty-four commenters expressed concerns that rate of fire devices not only pose a danger to the public but also to law enforcement personnel. CeaseFire Pennsylvania (Comment #23247), a gun violence prevention organization, pointed out that, "Pennsylvania suffers more than 1,400 gun deaths a year, and the problem is not limited to our large urban centers. Almost 50% of the law enforcement officers killed in the line of duty in Pennsylvania in recent years have been killed with long guns, often with semiautomatic rifles. This is higher than the national average. We are concerned that bump stocks, which make semi-automatic rifles even more lethal, are legal and easily accessible. While legislation to regulate bump stocks is pending in the Pennsylvania legislature, a pragmatic, effective, and nation-wide solution is needed from Congress and ATF."

Many commenters remarked that we must not forget the danger bump stocks pose to law enforcement personnel. A commenter (Comment #2510) noted, "Our police officers need your support so that they are not outgunned at every turn and the citizens have a right to feel like the government is at least trying to look out for them." Another commenter (Comment #11420) addressed concerns about the risk to law enforcement by requesting, "Please ban bump stocks. No one needs them to hunt with and they put everyone - from the public, to our brave police offers - at greatly increased risk of being shot without being able to respond during active shooter situations. Please do the right thing to

AR001354

help curtail unnecessary carnage during these already heart-rending, but sadly all too common, events."

A commenter (Comment #2510) also spoke on behalf of police officers by pleading, "I find it inconceivable that bump stocks were not outlawed immediately following the LV massacre. It is illegal to convert a semi-automatic rifle to fully automatic. That is, essentially, what a bump stock does. Why would we question outlawing their use? They have one purpose only and that is to fire as many rounds as possible in the shortest amount of time. The only reason I know of for that is combat. Please outlaw bump stocks and make possession of them illegal regardless of when they were purchased. Our police officers need your support so that they are not outgunned at every turn and the citizens have a right to feel like the government is at least trying to look out for them."

### (G4) No place in civilian commerce or society

Eight hundred twenty one commenters took the position that these devices should be banned for civilian use believing that rate-increasing devices have no place in civilian commerce or society. Most took the position that rate-increasing devices should be categorized for military use only as their primary intent is to inflict mass carnage of the type that one experiences in war. Comparing the US to other civilized nations, a commenter (Comment #11185) pointed out that, "All guns or modifications to guns, which allow for multiple shots such as automatic or semi-automatic, should be illegal except for use by military. This certainly includes bump stocks. No other civilized nation allows such things."

A commenter (Comment #2511) offered a suggestion that, "If someone wants to serve our country and operate assault weapons, they can join the military. They'll learn pretty quickly that they belong on the battlefield, not in the home." Continuing the theme that bump stocks are a better fit for the military, a commenter (Comment #2522) adds, "There is no earthly reason for anyone not on an actual military killing mission to own one of these devices."

Many commenters agreed that bump stocks should be banned because of the amount of damage they can inflict in a short amount of time. For instance, a commenter (Comment #2533) notes, "Bump stocks are a risk to public safety and should be banned. There is no reason any sane law abiding person needs to be able to fire 300 shots in 30 seconds. Statistics show that owning any kind of gun for personal protection actually results in more cases of harm to innocent people rather than protection from criminals. The ability to turn a weapon into an automatic weapon with a bump stock just makes the cases of harm via gunshots happen more rapidly and with more lethality."

Many commenters pointed out that essentially, bump stocks and machine guns are one and the same. A commenter (Comment #2541) addressed the mass murder capability by saying they, "Strongly oppose allowing the possession of "bump stocks". This dangerous accessory turns assault weapons into machine guns. It is without question, that machine guns are weapons of mass destruction, and have no place in a civilized society. It should be remembered that a "bump stock" enabled the Las Vegas shooter to fire nearly 300 rounds in 30 seconds, killing and injuring more than 500 concertgoers. This sounds like something that would take place in Syria, yet it happened in the USA."

3

Gilbert

"In summary, "bump stocks" are a substantial risk to public safety and should be banned outright. On one has the right to be able to carry out mass murder."

Numerous commenters expanded their ban bump stocks request to include banning additional firearms/accessories to include machine guns, trigger cranks, AutoGloves, silencers, assault rifles and high capacity magazines. Additionally, several commenters support registration of all firearms as well as universal background checks.

**(G5) Congress should act, but ATF should if Congress will not act**

Commenters stressed that Congress should address rate-increasing devices by law making activity but in the absence of action on their part, the criticality of the issue and time constraints demand that ATF step into the void and create regulations to address. One commenter (Comment #11193) asked that, "The ATF Bureau should issue a new rule clarifying that the definition of machinegun in the National Firearms Act of 1934 includes any and all current and future conversion devices like bump fire stocks that convert a semi-automatic rifle into the functional equivalent of a fully automatic rifle. The continued presence of these dangerous devices poses a continuing threat to all of our communities and both Congress and ATF must take action quickly to address this threat to public safety."

Another commenter (Comment #2516) expressed dissatisfaction with the divisions in Congress on the issue, opining, "It is outrageous that the GOP Congressional allies of the gun lobby abdicated their responsibility to keep Americans safe from gun violence by sitting back and hoping the ATF will do something about bump stocks. But now that it's in your lap, you should do everything within your regulatory power to put the tightest regulations possible on bump stocks -- banning them if you can."

"The risk they pose to innocent Americans far outweighs the fun they offer hardcore gun enthusiasts. The worst mass shooting in America, in Las Vegas, is testament to that. People don't need bump stocks to protect themselves."

Over 2,000 commenters expanded upon simple requests for government action by requesting that to protect communities from other mass shootings using rate-increasing devices, Congress must act to ban bump stocks and other similar firearm devices or accessories. In the absence of action by Congress, ATF should issue a new rule clarifying that the definition of machinegun in the National Firearms Act of 1934 includes conversion devices like bump fire stocks that convert a semi-automatic rifle into the functional equivalent of a fully automatic rifle. In creating this rule, commenters recommended that ATF take into account the toll of gun violence on communities like Las Vegas, in terms of injuries, loss of life, and the financial loss to businesses in the communities that are affected. The continued presence of these dangerous devices poses a continuing threat to all of our communities and both Congress and ATF must take action quickly to address this threat to public safety.

**(G6) Do not bow to political pressure**

Many commenters mentioned the National Rifle Association (NRA) and congressional GOP members as the primary parties blocking legislative action with the NRA subverting members of congress by the power of their donations. In addressing the profit motive, one commenter (Comment #2521) stated,

4

Gilbert

"This is an insane idea that further corrupts the American ideal of freedom and happiness. It turns our country into a killing ground for the profits of a few and for the false idea that somehow we are more secure when we have the ability to shoot at a perceived threat."

Another commenter (Comment #11388) added, "Too many lives are lost every day to gun violence, and our Republican representatives have made it clear that they have been bought by the gun lobby and the NRA. We are living through a deeply shameful period and there is no reason for it. The GOP values white men and guns over the lives of everyone else in this country. This must stop."

One commenter, (Comment #2628) who pledged his/their support for the Second Amendment, thought that there is also room for "reasonable limitations on guns" similar to those placed on drivers who are required to have a license and register their cars. The commenter pointed out that whenever "reasonable restrictions are suggested for guns, a product that is designed specifically to kill, the gun manufacturer's lobby opposes these regulations." The commenter encouraged a reasonable restriction, like banning bump stocks, in lieu of allowing gun manufactures to "have unrestricted profits."

Equating the gun lobby with greed, a commenter (Comment #2515) asserted, "The majority of Americans support common sense regulations on firearms, including banning bump stocks. However most Americans who are not extremists do not have time to be continuously involved with the details of legislating firearms. They expect their legislators to ensure the public's safety by enacting laws that value public health and safety over extremism and the greed of the gun lobby. Please help protect our children from senseless firearm violence, and ban bump stocks."

Criticizing political pandering by lobbyist, a commenter (Comment #33654) concludes, "It is totally unacceptable, and it is constitutionally correct to ban these weapons. They are used for homegrown terrorism and most often domestic violence. There are mass shootings daily from domestic and anger. They have no sporting value. They are also used for political pandering by lobbyists. Again no sports value. This needs to be fixed not again put aside. Prayers for victims need to be redirected to where they are truly needed for legislators to do the right thing and remove all these weapons of destruction."

Believing that manufacturers of rate increasing devices are part of the problem, a commenter (Comment #13815) pitches in with, "only reason to allow the sale of bump stocks is to fill the coffers of the gun manufacturers."

**(G7) Need to take into account cost of gun violence on communities, injuries, deaths, impact on business**

Commenters stressed that gun violence has a far ranging cost beyond the initial casualties. Many of the injured require long periods of rehabilitation that can result in the loss of their careers and financial ruin. Those that perish from gun violence leave a shattered family and not only lose a cherished family member but part of the family support team as well. All these losses directly impact family, friends and the community as a whole. A commenter, (Comment #2513) affirmed that, "We are in the midst of an epidemic of gun violence in this country. Approximately 35,000 people every year lose their lives in gun-related deaths, a rate far greater than every other "first world" country in the world."

5

Gilbert

The commenter continued by quoting former Supreme Court Justice Antonin Scalia, "There are so many things that your Bureau, and Congress, could do to stem the tide of this horrifying malady and yet almost nothing is done, which is a tragedy. The LEAST you could do is to define so called "bump stocks" as machine guns and therefore outlaw them. What possible justification could there be for such devices to be allowed in civilian society??? The answer is clearly "None." As Antonin Scalia himself stated in his opinion on Heller, the ownership of guns is not without limitation. The words of that amendment themselves lead to that conclusion: "A WELL REGULATED militia....." Please do what is clearly the right thing and outlaw these horrible devices."

The Giffords Law Center To Prevent Gun Violation organization (Comment #27330) declared, "That mass shootings generate a series of economic costs that begin to amass as soon as the trigger is pulled. The healthcare expenses and lost wages associated with mass shootings are particularly significant. According to cost estimates developed by the Pacific Institute for Research and Evaluation (PIRE) and relied on by the Centers for Disease Control and Prevention (CDC), each fatal shooting entails an average of $49,164 in medical expenses. Medical care and treatment costs are even higher for non-fatal shootings, with an average cost of at least $63,289. These injuries often require extensive post-release treatment, including physical therapy, mental health treatment, and prescription medications that generate tens of thousands of dollars in additional expenses."

One Commenter (Comment #2521) expanding on the tidal wave of gun violence cost proclaimed, "Non gun owners, gun victims, and gun victims' families bear the burden in terms of cost, heartbreak, increased insurance premiums, medical costs ALL because of poor decisions made by legislators and poor behavior exhibited by gun owners and gun holders."

**(G8) Support licensing or registration**

Two hundred ninety commenters stated they supported licensing or registration of rate increasing devices. In support of the idea to allow bump stock to remain legal but regulated, commenters noted that there needs to be a balance of interests. One commenter (Comment #2489) articulated as part of their submission that, "The swap off of a few recreational users losing the privilege of firing off the thing because they love the sound effect or have too much money and don't know what else to do with it, is worth it. Yes I believe people have the right to have arms, and yes I believe the government has the right to reduce the risk of mass killings."

Offering the concept that ATF has a balancing act between possible contradictory positions, a commenter (Comment #2506) as part of their submission established that, "The Alcohol, Tobacco, Firearms and Explosives Bureau, like all government agencies, has to find the right balance in its regulations, as it attempts to manage the commerce in and use of certain substances and devices that may harm individuals, even the public interest."

"There has been an increasing number of mass shootings and hostage incidents, which shows that the current restrictions, such as they are, are not working. The balance should now shift towards greater protection of the general public, who often do not have or carry arms, from those that do."

6

Gilbert

## (G9) Suggests definition of rate of fire

Seven commenters suggested regulation by establishing a quantitative rate of fire. Devices that exceed this set rate of fire would be regulated as a machine gun and those that do not meet the set rate would not be impacted. Explaining this concept a commenter (Comment #11203) stated, "Any firearm that can shoot 100's of rounds a minute should be classified as a machine gun and banned, and any equipment that modifies a firearm to accomplish this should likewise be banned, as New Jersey just did. Rather than defining machine guns by how they are built and designed, the rule should be based on performance - if it meets the criteria of shooting x number of rounds per second or minute, it is by definition a machine gun. Any rifle or pistol that is modified to enable it to shoot that number of rounds or more is by definition a machine gun."

Another variation on this approach was offered by a commenter (Comment #25854) adding, "I just recently watched a video about the changes that are trying to be made about bump stocks. I do not own one or care to own one. My problem is that law-abiding citizens are not the problem, criminals will do what they want no matter what the law says and the government somehow does not understand that. I purpose that you measure how many rounds per second a machine gun fires and use that as a standard so unless you are matching that speed with a device with one pull of a trigger than it is legal for devices that allow you to shoot faster as long as it's not rated faster than a machine gun rating. You could make things easy and just use the original definition but add into the rating of a common machine gun that was produced at the time when the original definition/ law was made. Thank you for all your hard work!"

## (G10) Is like Akins Accelerator

Two hundred thirty four commentators did not see a practical or legal difference between previous rate increasing devices that ATF choose to regulate. While understanding that a bump stock lacks springs, electronics and other complex parts, the commenters agreed that if it is a device that appreciably accelerates a semi-automatic firearm, it should meet the definition of a machine gun, regardless of its composition. As part of their submitted comment (Comment #35549), organization Everytown for Gun Safety expanded on this position, "Bump-fire stocks and positive reset triggers currently on the market are not meaningfully distinct from devices already classified by ATF as "machineguns"—and ATF should clarify that these devices generally qualify as NFA "machineguns" under current federal law. "

"In prior rulings classifying devices as "machineguns," ATF has already set a standard that can and should be used to classify bump stocks and positive reset triggers in the same fashion In reclassifying the Akins Accelerator device in 2006—declaring it an NFA weapon—ATF found that a weapon will fire "repeatedly" whenever a shooter "maintains finger pressure against the stock." And in litigation stemming from the classification of another device as a "machinegun" (Freedom Ordinance Manufacturing's ERAD device), the Bureau argued that an operator using that device need only physically "resist forward pressure" in order to fire continuously—and therefore that the device requires only a "single function of the trigger." This critical language about the operator needing only to "maintain" or "resist...pressure" should be the core principle defining the "machinegun" standard."

7

Gilbert

**(G11) Ban okay under Second Amendment**

While many commenters see the Second Amendment as absolute, one hundred twenty three commenters did not see a Second Amendment conflict with regulating rate-increasing devices with many quoting Heller vs. DC. One commenter (Comment #2516) offered a single sentence, "Heller v. DC was clear; common-sense regulation of firearms doesn't violate the Second Amendment."

Another commenter (Comment #2516) supports the argument that Heller vs, DC allows for common sense regulation by declaring, "It is outrageous that the GOP Congressional allies of the gun lobby abdicated their responsibility to keep Americans safe from gun violence by sitting back and hoping the ATF will do something about bump stocks. But now that it's in your lap, you should do everything within your regulatory power to put the tightest regulations possible on bump stocks -- banning them if you can."

"The risk they pose to innocent Americans far outweighs the fun they offer hardcore gun enthusiasts. The worst mass shooting in America, in Las Vegas, is testament to that. People don't need bump stocks to protect themselves."

"Heller v. DC was clear, common-sense regulation of firearms doesn't violate the Second Amendment."

**(G12) Ban consistent with legislative history of NFA and intent of Congress**

Two hundred thirty four commenters did not see a conflict with the regulation of rate-increasing devices and the past history of ATF regulations of NFA firearms/devices or the intent of the legislature.

A commenter (Comment #12859) extensively reviewed previous legislative and judicial history and notes that the National Firearms Act was enacted in 1934 in response to seven Chicago mobsters murdering rivals with machine guns and other dangerous weapons. The commenter argued that the NFA was "designed to limit the ability of a single civilian to inflict mass casualties' machine guns and bombs being the most dangerous weapons available at the time. An attempt to minimize the damage any one person could cause."

The Supreme Court, the commenter stated, ruled in favor of the government when the NFA was challenged and that a "legal precedent was set: the Second Amendment was not absolute and could be restricted." The commenter went on to point out that the Supreme Court, almost 70 years later, confirmed as much in D.C. v. Heller, even though the Court struck down the District of Columbia's handgun law. The commenter highlighted the court's statement: "Like most rights, the Second Amendment right is not unlimited. It is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."

"It is pretty clear that the Supreme Court was referencing the National Firearms Act when they wrote that decision. Handguns are clearly a protected firearm. But the Court didn't want to open the door to civilian ownership of machine guns, short barreled shotguns, machine guns and other dangerous weapons."

8

AR001360

Gilbert

"The compelling government interest in this case: the preservation of life and the prevention of further mass murders. The same reason, which prompted the Supreme Court-approved National Firearms Act. For the same reason that the government is permitted to restrict ownership and use of fireworks products with no practical purpose the government would be within its rights to ban bump fire stocks. The potential for harm to the general public is evident, and the potential impact to the everyday life of American citizens if these items were no longer available would be small."

The commenter concluded with, "Let's face it: bump fire stocks are a clear circumvention of the National Firearms Act, allowing functionally identical firearms to heavily regulated machine guns with none of the associated protections. Banning bump fire stocks would simply be an extension of existing policy, closing a loophole to a nearly century old gun law that worked as intended."

Continuing with support for regulation, a commenter (Comment #11186) contributed, "I support restricting the sale of bump stocks that transform legal semi-automatic weapons into illegal machine guns. Under laws already in place, the sale and manufacture of new machine guns for civilian use is banned and those already in circulation are tightly regulated This is a common sense gun safety restriction that can help protect citizens from massacres such as occurred in Las Vegas."

### (E1) Amnesty Period

Over two dozen commenters suggested that individuals should have the right to retain and a registration amnesty period under a grandfather clause, if it is determined that rate of fire devices are to be regulated under the National Firearms Act (NFA). One commenter (Comment #22165) stated, "If done, a machine gun amnesty period would have to take place".

Several commenters questioned the applicability of the 5th Amendment if an amnesty period is not allowed. One commenter (Comment #22929) posed the question, "Without a grandfather clause wouldn't this violate the 5th Amendment?" Another commenter (Comment #27538) added, "Without grandfathering, violates the "Takings Clause" of the Fifth Amendment."

Several other commenters were concerned about the potential criminal liability of current rate of fire device owners if amnesty registration is not offered, with one commenter (Comment #20249) saying, "Recommend grandfather clause to avoid making many gun owners felons if regulation passed."

Several commenters also asked about, or requested compensation, if an amnesty period is not allowed. A commenter (Comment #31490) offered, "Need Grandfather Clause or compensate Citizens for confiscating legally purchased property." Another commenter (Comment #29883) added, "If something must be done, request a grandfather clause to preserve investments, even if it means a registry requirement."

Continuing with a question on compensation, a commenter (Comment #34939) posed the question, "What will happen with these items already in circulation? It is not right, nor constitutional, that a person whom purchased a legal item be subject to seizure or abandonment of said item without compensation." Another commenter (Comment #34026) makes a statement but ends with a question, "The Ruling also forces lawfully owning people of such items to abandon their property without compensation or is it "right" to just take something from American people?"

9

Gilbert

## (Other) NFA – Processing already too slow

Several commenters, addressing the involvement of ATF's National Firearms Act Division as outlined in the proposed rule, expressed concerned over current lengthy processing times for Forms 1 and Forms 4. A commenter (Comment #20700) suggested, "Resources should instead be allocated to the approval of NFA forms with the goal of decreasing wait times as much as possible."

Additional commenters (Comment #00207) contributed, "If amnesty & registration occur it would slow down paperwork for other lawful NFA transactions", (Comment #00234) "Please consider how backlogged ATF has been post 41F" and (Comment #00896) "Registration would overwhelm already limited ATF resources with NFA backlog".

Other commenters added, (Comment #02046) "Alleviate wait times for those awaiting approval on (NFA) Form 1 and/or Form 4", (Comment #06069) "Please reduce Form 1 and 4 transfer times to something reasonable (1-2 weeks)" and (Comment #07209) "Focus on NFA processing times."

## (Other) NFA – Weaken or Rescind

Several commenters took issue with the existence of the National Firearms Act (NFA). A commenter (Comment #17890) stridently stated, "The NFA in itself should be banned.... REPEAL the NFA in its entirety and STOP this obsession that's being driven by the rights-hating left. ENOUGH IS ENOUGH."

Some commenters believing the NFA to be unconstitutional, offered their opinion, (Comment #06237), "The unconstitutional NFA should be repealed, not have items added to it. We should not continue to venture onto the slippery slope of regulations & bans" and (Commenter #23062), "In my opinion the NFA & Hughes Amendment are both unconstitutional".

Several short comments were received suggesting rescinding all or portions of the NFA, (Comment #17523) "Abolish NFA Registry", (Comment #17524), "Repeal NFA", (Comment #17540) and "Abolish Hughes Act."

A commenter (Comment #17555), opined that Bump Stocks were created due to the Hughes Amendment making machine guns being too expensive for the average person to own by saying, "Without Hughes Amendment, Bump Stocks would never exist". Another commenter agreed (Comment #30720) with, "Bump stocks would never existed if full auto firearms were not such a regulated item."

Offering a proposal to revamp the NFA and make it for machine guns only, a commenter (Comment #30135) suggested, "Remove SBRs, SBS, silencers, and AOWs from registry requirements. Add more fully automatic weapons and bump-stocks to standard registration process."

## (Other) Enforcement Not Practical

Many commenters struggled to understand how enforcement would be practical, stressing the vagueness in defining rate of fire, the availability of 3D printers and the likeliness of a lively Black Market. A commenter (Comment #17715) questions the "how" with, "This is insane. Let us start with the obvious: "shall not be infringed." Secondly, how exactly is this supposed to be enforced? Are you planning to ban pieces of string and fast fingers, too?"

10

Continuing on the practicality concern, a commenter (Comment #26095) stated, "Lastly, such a law would be unenforceable and would only create crime rather than stop violence. The law would be unenforceable because baring a door-to-door search of America; law enforcement would be unable to recover any of these bump fire stocks, or similar accessories, unless it was recovered in the aftermath of a major crime."

A commenter (Comment #35048) adds a concern about the waste of money and resources and asks two questions, "The time and effort it will take to go about this ban would be a waste of money and resources, how will you track down the already on circulation stocks? How will you enforce this ban when the stocks can be made out of everyday items easily and quickly?

Additional commenters added their thoughts (Comment #22893), "Any ban or restriction would be ignored by the public & price to be completely ineffectual" and (Comment #31957), "Unenforceable – Unknown quantity in circulation without serial numbers or purchaser history".

Several commenters addressed the growth of 3D printing as an example of the difficulty of enforcement. A commenter (Comment #2645) pointed out that, "this proposed rule change is ineffectual in its implementation and enforcement, and is rendered instantly obsolete by means of ordinary materials and affordable 3D printers by where any average person can easily manufacture a bump fire device themselves with very little investment in time and/or money."

A commenter (Comment #30808) matched 3D printers with a Black Market saying, "Futile rule - Black Market Arms Dealers would use 3-D printers to build & sell their own bump-fire stocks."

Other commenters added concerns that any bans would fuel an active Black Market. A commenter (Comment #07940) offered, "Too many items like these are already out in the public & available on the black market to ever control effectively with a ruling." Another commenter added (Comment #21084), "Ban will create a black market for bump stocks and the like."

### (Other) National Reciprocity

Several commenters used the ANPRM comment opportunity to lobby for National Concealed Carry Reciprocity. The House of Representatives has passed a bill allowing national reciprocity however, the Senate version has yet to be acted upon. A commenter (Comment #33734) offered, "We do not need more gun legislation. We need less rules on firearms and their accessories and we definitely need National Concealed carry reciprocity!"

Another commenter (Comment #13932) added, "the problem is we have bad men with guns and no fears of the good men and women who own them but can't carry them in gun free zones or can't travel with them do to not having nationwide reciprocity."

Other commenters offered their support for national reciprocity, (Comment #00693, "Pass National Reciprocity", (Comment #00717), "Pass "Reciprocity Act"", (Comment #05703), "Enact constitutional carry in every state", (Comment #09795), "Pass National CCW reciprocity" and (Comment #15765), "Reciprocal Carry Should be Nationwide".

11

AR001363

Storm

A total of 5,074 comments provided support for the proposed rule. 4,419 comments provided support and cited specific reasons for their support while 655 comments provided general support for the entire rule. Of the comments providing specific reasons for their support, 2,236 comments were submitted as a form letter. The supporting comments provide various specific reasons for support as summarized below.

G2 – Of the total comments providing support to the proposed rule, 1,322 (3,558 with form letters) comments stated such devices are a threat to public safety. Many commenters included opinions that human life and safety is paramount and that the financial impact on the firearms industry should not supersede human life and public safety. For instance, the Brady Campaign to Prevent Gun Violence (Comment 35563, page 3) and Physicians for the Prevention of Gun Violence (Comment 27550) each stated, "...focus on the importance of public safety -- the lives and safety of men, women and children in America -- rather than only the financial consequences on companies that choose to make and sell these dangerous accessories." Several commenters opined such devices were developed to inflict death and injury on as many people as possible. For example, one commenter #10343 stated, "There is absolutely NO reason to sell bump stocks or any other similar device to the public. There is only one use for them – to increase rapid fire. Rapid fire is ONLY needed in situations for killing a lot of humans. These devices are a clear and present danger to the health and welfare of our society." Another commenter #29791 expressed, "The use of 'bump stocks' is clearly [as] an accessory that is meant to harm as many people as possible. They are not meant for hunting. They are not meant for recreational use. They are meant for killing." Commenters argued that failing to ban such devices allows for future mass shootings and continues to pose public safety dangers to innocent individuals. Commenters opined that permitting bump stocks to continue to be available allows one individual to devastate families and communities within moments. Commenters stated such devices should be banned quickly as delays in implementation increase the risk that such a device will be used in another mass shooting. For instance, the Giffords Law Center to Prevent Gun Violence (Comment 27330, page 6) stated, "The more time that passes before the final regulation is issued, the more bump stocks may be in civilian hands. As these devices potentially proliferate, the risk that one will become available to another mass shooter, who may use it in another horrific massacre, also increases. Consequently, any unnecessary delay is unacceptable." Commenters maintained that too many lives have already been lost to gun violence and we cannot afford to lose anymore. Commenters asked how long do we have to wait or how many people have to die before action is taken. For instance, one commenter #29740 stated, "I am not opposed to lawful, responsible gun ownership, but I must ask how many more Americans must die? This is terror inside our borders perpetrated by Americans." Commenters opined that individuals should be able to live their lives without fear of gun violence with one commenter #10482 stating, "In the light of the risk to public safety, there is no justification for the use of bump fire stocks to increase the rate of gunfire to the level of an automatic rifle. I want my children and grand children [sic] to grow up in a country where they enjoy the right to life, liberty and the pursuit of happiness. They cannot do that in a country where they must live in constant fear of gun violence..." Another commenter #10357 stated, "We the people, including those of us who do not want to shoot others, need the ATF to guarantee our Constitutional rights to life, domestic tranquillity [sic], and freedom to peaceably assemble, by banning bumpstocks..." Commenters stated people should not have to be fearful of attending public events due to the possibilities of gun violence and mass casualties. For instance, one commenter #10414 stated, "It should be unquestionably safe to attend houses of worship, movie theaters, music clubs, and outdoor concerts without worrying if dozens of people are going to get shot within moments [sic] time." Commenters believed this regulation can improve public safety. For instance, many commenters, including commenters 7481 and 34917, included a statement asserting the proposed rule "is a common sense gun safety restriction that can help protect citizens from massacres such as occurred in Las Vegas."

1

AR001364

Storm

G3 – Of the total comments offering support for the proposed rule, 45 stated such devices are a danger to law enforcement. Commenters included opinions that these devices pose a threat to law enforcement officers with the Giffords Law Center to Prevent Gun Violence (Comment 27330, page 9) stating law enforcement officers "police our communities under the assumption that dangerous people possess bump stocks and similar devices." Another commenter #10559 stated, "They [Devices such as bump stocks] place law enforcement and citizens at additional and needless risk by turning a semi-automatic gun into a continuous fire...weapon that has no valid purpose and meets no defensible public need." One commenter #30088 expressed, "these [sic] devices pose a lethal threat to those who enforce the law as well as innocent civilians." Additionally, after the ANPRM comment period closed, the International Association of Chiefs of Police expressed support for President Trump's request to the Attorney General to "develop regulations to ban the sale and use of bump-fire stocks and similar devices. Your [President Trump's] leadership in addressing the threat posed by bump stocks will assist in our [law enforcement's] efforts to make communities safer and protect the lives of both citizens and law enforcement officers."

G4 – Of the total comments expressing support with reasons, 882 noted that such devices have no place in a civilian society or commerce. Many of these commenters stated such devices are unnecessary for hunting, recreational, self-defense or any other lawful purposes. Also, several commenters believe such devices pose dangers to our society with one commenter #20454, a former federal career officer within the U.S. Department of Justice, stating, "These devastatingly murderous, military weapons should be BANNED from civil society & should not be in the hands of private citizens." Additional commenters opined that devices enabling automatic fire should only be available to the military and law enforcement. While one commenter #10488 stated there is no reason to sell bump stock devices to anyone other than the military, another commenter #10356 also opined, "I would feel unsafe knowing someone in my neighborhood owned a bump stock." Many commenters argued there is no reason individuals should have access to weapons that create or simulate fully automatic fire. Additionally, commenters stated the addition of a bump stock causes the firearm to lose accuracy with one commenter #6887 stating, "Bump stocks can't be used safely for self defense [sic] or hunting purposes and make the firearm they are attached to inaccurate and less safe."

G5 – Of the total comments supporting the proposed rule, 428 (2,664 with form letters) offer support on the grounds that ATF should take further action due to the absence of Congress passing a law that would ban such devices. While many commenters wished to see Congress take action, they believe that something must be done regarding such devices and now the responsibility rests with ATF. For instance, Pennsylvania State Representative Ed Gainey (Comment 31989) indicated, "Federal and state lawmakers proposed various bills...to ban the sale of bump stock devices." His comment continued, "Measures in Congress stalled, however, after the NRA voiced its opposition to new legislation." Representative Gainey also stated, "The ATF alone has the authority to take direct, immediate action that will prevent criminals from circumventing the intent of federal law." Many commenters, including the Coalition to Stop Gun Violence (Comment 34572) opined the following:

> Thus, Congress should immediately pass meaningful legislation to ban these devices, which serve no purpose for self-defense or sport. Congress has an obligation to address this issue, which has broad bipartisan consensus, and act quickly in the interest of public safety, by banning bump stocks and similar devices.

2

AR001365

Storm

In the absence of a simple legislative solution, the ATF should use the full extent of their regulatory power to regulate these devices through the National Firearms Act, which has been largely successful in keeping automatic weapons off the streets.

Commenters stated that Congress has failed to act as members of Congress do not want to lose votes in upcoming elections. Commenters urged Congress and ATF to act promptly to impose the restrictions. For instance, the Bucks County Women's Advocacy Coalition (Comment 35167) wrote, "Both Congress and ATF must take action quickly to address this dangerous threat to public safety. "

G6 – Of the comments providing support for the proposed rule, 229 stated ATF should not bow to political pressure or the gun lobby. Commenters opined the government should not allow gun lobbyists to control the direction of policy that protects the public with one commenter #11496 stating, "The American people are tired of the NRA dictating national policy." Commenters also stated that gun violence has increased due to the influence of gun lobbyists. One commenter #12383 stated, "The gun lobby must be stopped. Their money is blood money. They must be held accountable for every gun related death in the country." Commenters also argued that although gun lobbyists may have a lot of money and may be very vocal, they are in the minority when it comes to public opinion of such devices. One commenter #9097 stated, "The silent majority of Americans oppose them [bump stocks and large capacity magazines] but the well funded [sic] and fear-mongering industry has been overly seen as speaking for all of us. Please finally ban these outrageous adapters to guns." Ceasefire Pennsylvania (Comment 23247, page 2) cites an October 2017 survey by Ipsos (https://www.ipsos.com/en/node/329256) stating, "...82% of Americans supported banning bump stocks and similar firearm attachments." Ceasefire Pennsylvania also cites an online survey conducted by Morning Consult National Tracking Poll (https://www.thetrace.org/rounds/majority-gun-owners-support-banning-bump-stocks-post-vegas-poll-shows/) stating, "...nearly three-fourths of registered voters in gun-owning households support banning bump stocks." Many commenters believe the banning of bump stocks has bipartisan support. For instance, The Coalition to Stop Gun Violence (Comment 34572) wrote, "Banning bump stocks should not be a divisive issue. Creating strong laws limiting civilian use of automatic weapons has long been supported by both the gun lobby and gun violence prevention advocates."

G7 – Of the total comments supporting the proposed rule, 330 (2,566 with form letters) stated the costs of gun violence need to be considered in the decision-making process. Commenters opined that gun violence and the presence of such devices leads to death and injuries that impact families and communities. Commenters argued that the pain and suffering endured by the victims of gun violence, their families and communities must be considered. Pennsylvania State Representative Chris Rabb (Comment 31909) stated, "We need to cut through this bureaucratic red tape and no longer allow the gun industry to financially benefit from our heartbreak." Commenters noted that gun violence also leads to additional healthcare costs and costs incurred by taxpayers. One commenter #17976 stated the following:

It is only a matter of time before more innocent lives are lost and families needlessly put into tragic circumstances. It is only a matter of time that law enforcement is faced with needless added danger to their lives as they try to protect the public. It is only a matter of time before senseless violence, for which you can provide a remedy, occurs again and costs taxpayers money through emergency uninsured medical care, increased, non-budgeted local government costs, and unintended costs to private businesses because of the violence occurring in their venues.

3

Storm

The Giffords Law Center to Prevent Gun Violence (Giffords) (Comment 27330, page 8) wrote, "Mass shootings generate a series of economic costs that begin to amass as soon as the trigger is pulled. The healthcare expenses and lost wages associated with mass shootings are particularly significant." Giffords provided medical care estimates acquired from the Pacific Institute for Research and Evaluation for each fatal shooting ($49,164) and non-fatal shooting ($63,289). Giffords also stated, "These [Non-fatal shooting] injuries often require extensive post-release treatment, including physical therapy, mental health treatment, and prescription medications that generate tens of thousands of dollars in additional expenses."

The Brady Campaign to Prevent Gun Violence (Brady) (Comment 35563, page 3) indicated the following:

> To the extent economic issues are considered, Brady urges ATF to also consider the economic costs of public access to such accessories [bump stocks and other devices]. To that end, Brady refers the agency to its 2017 report, *Shooting Costs [Shooting Costs: GOP Healthcare Plan Would Shift Costs to Taxpayers and Gun Violence Victims*, available at http://www.bradycampaign.org/sites/default/files/BradyReport--Shooting-and-GV-Healthcare-Costs.pdf.], which analyzes hospital and other medical costs for victims and survivors of gun violence in the United States. Taxpayers bore much of these costs through Medicare, Medicaid and other means.

The following is an excerpt from the comment provided by Catholic Health Initiatives who stated it is the nation's third-largest nonprofit health system (Comment 28256, page 2):

> ATF asks for comments on "the costs or benefits" of the bump stock device. As you consider the costs, we ask that you consider both the human and financial tolls on the country, such as the loss of life, physical impairment, and pain, such as that associated with the Las Vegas attack. We believe the recreational benefit of the "novelty" bump stock is entirely undermined by the grave danger it poses to fully automate an already deadly weapon.

Commenters stated there is significant cost to businesses impacted by the gun violence. Commenters opined such devices are responsible for higher numbers of victims in an incident and the economic impact increases as the numbers of victims increase. Commenters believed the death count in Las Vegas would have been lower if this regulation had been in effect. Commenters stated the impact of lost wages by victims of gun violence must be considered.

G8 – Of the supporting comments, 302 believed such devices should be registered or possessed only by individuals with a license to own such devices. Commenters stated such devices should be added as additional items in the NFA registry. For instance, multiple commenters stated a licensing and registration process should be implemented, to include the NFA paperwork and obtaining a tax stamp. One commenter #12686 stated, "Regulate Bump Stocks [sic] like machine guns. Make them registered." Many commenters recognized that this would require allowing an amnesty period as such devices would be considered a post-86 machine gun. For instance, one commenter #7868 stated, "Those that own them [bump stocks] would have a 1 or 2 year amnesty period to register them as a machine gun."

G9 – Of the total comments supporting the proposed rule, 7 support defining 'rate of fire' or creating a firing rate. One commenter #16736 argued individuals will circumvent the regulations if a specific mechanism is regulated rather than the rate-of-fire, and thus this same issue will arise again in the future. Another

4

commenter #7742 stated , "Rapid fire...should be defined by the end result, IE [*sic*], high rate of fire rather than word smithing [*sic*] the legal definition of full auto. Make this item subject to NFA regulations!" An additional commenter #12691 believes the bump stock circumvents existing laws and opined, "We therefore need a new law that bans bumpstocks [*sic*] or puts an upper limit on the number of rounds that can be fired in a specified time."

G10 – Of the comments offering support for the proposed rule, 272 stated such devices meet the definition of a machinegun or are a conversion device. Many commenters opined such devices convert semi-automatic firearms into fully automatic firearms or illegal firearms. For instance, one commenter #27111 stated, "Semi-automatic guns + bump fire stocks = machine guns. Any other conclusion is absurd." Several commenters stated a single pull of the trigger of a firearm equipped with such a device expels more than one round of ammunition and should therefore be considered a machinegun. For example, one commenter #28281, a law enforcement officer, expressed, "I believe any device that enables a weapon to fire multiple round [*sic*] without having to continually pull and release the trigger puts that weapon in the same category as an automatic firearm." Commenters stated such devices create continuous fire or automatic fire and should be classified as a machinegun. Everytown For Gun Safety (Comment 35549, pages 2-3) offered the following position and statements of support for such position:

> Many conversion devices currently on the market, including the bump stock devices used in Las Vegas, are "machineguns" under the NFA—and are illegal to possess.
> - The NFA was written broadly to regulate automatic firearms, and its term "machinegun" was intended to apply widely to devices that enable semi-automatic rifles to mimic automatic fire.
> - Bump-fire stocks and positive reset triggers currently on the market are not meaningfully distinct from devices already classified by ATF as "machineguns"—and ATF should clarify that these devices generally qualify as NFA "machineguns" under current federal law.

G11 – Of the comments providing support for the proposed rule, 124 stated the banning of such devices is acceptable under the Second Amendment. Many commenters stated the Second Amendment includes the words "well-regulated militia" and this allows for regulating or banning such devices. Commenters opined that such devices do not fall under the right guaranteed by the Second Amendment. One commenter 10337 stated, "Clearly, this device is not protected by the Second Amendment. Our Founding Fathers wrote the Second Amendment in a different time in history with a different society and a vastly different availability Of [*sic*] firearm technologies. One can easily imagine that if the Second Amendment was being considered in today's climate it would be very different from the one left to us over 200 years ago." Another commenter #4973 expressed, "The laws of the United States must reflect the technology of the time we live in. The Founding Fathers of the United States designed the constitution (*sic*) as a living document because they understood that the problems facing each time are varied and complex." Several comments stated the right to firearms is not boundless with commenter #12327 expressing, "While the right to bear arms is...granted by the Constitution, the right to bear weapons of mass destruction, as constituted by weapon modifications such as bump stocks, is not." Another commenter #12859 stated, "Like most rights, the Second Amendment right is not unlimited. It is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose[.]"

5

AR001368

Storm

G12 – Of the comments supporting the proposed rule, 217 stated banning such devices is consistent with the intent of previous laws and the intent of Congress. Commenters stated the GCA, NFA, FOPA and Hughes Amendment restrict fully automatic firearms and action should be taken to uphold that intent. For instance, one commenter #33713 offered the following statements:

> The ATF MUST...issue a new rule clarifying that the definition of machine gun in the National Firearms Act of 1934 includes conversion devices like bump fire stocks, binary triggers systems and trigger cranks that convert a semi-automatic rifle into the functional equivalent of a fully automatic rifle.

> The whole INTENT of the Act is to ban the USE of ANY fully automatic gun, even if that is done by conversion, which is a newer technology that MUST be specifically addressed, and all current and FUTURE (as far as possible) technologies must be included.

> It should have been obvious that ANY device that would convert ANY gun to fully automatic would violate that Act, but apparently it has to be there in black and white, so it MUST be done. This should be considered a NECESSARY HOUSEKEEPING action to keep the ACT up to date, that was LONG OVERDUE, rather than a NEW ban.

Several commenters opined such devices are outside of the purpose and objective of current laws. Pennsylvania State Representative Michael Schlossberg (Comment 35574) stated, "Bump fire stocks circumvent the spirit and intent of current law and regulations by modifying a semi-automatic weapon so that they effectively operate with consequences as devastating as a 'machine gun' as defined by the National Firearms Act of 1934." Additionally, Everytown for Gun Safety (Comment 35549, page 3) wrote, "The intent of the law [NFA] was clearly to cover rapid-fire devices broadly, including those that accelerate the rate of fire beyond what an operator can otherwise reach pulling a trigger manually without assistance." Several commenters stated such devices represent loopholes discovered in current laws that should be closed. One commenter #12859 expressed, "The NFA was designed to limit the ability of a single civilian to inflict mass casualties..." The comment continues, "...a government bump fire ban would be an attempt to provide protection for its citizens, outlawing a device it deems unreasonably dangerous. Its [sic] the same concept underpinning the ban on post-1986 machine guns." The comment concludes stating, "Banning bumpfire [sic] stocks would simply be an extension of existing policy, closing a loophole to a nearly century old gun law that worked as intended."

AR001369

Munoz

**Comment summary paragraph from Application of the Definition of Machinegun to "Bump-fire" Stocks and Other Similar Devices**

<u>Comments received on background checks (NICS)</u>

Thirty-six commenters expressed concern regarding the banning of bump stocks and other similar devices. Many commenters opposed the banning of bump stocks and other similar devices, however, agreed that a better option would be to regulate such items and have background checks conducted in order to purchase. The following excerpt represents the views of most commenters:

> In favor of regulation of trigger cranks, auto glove, bump stocks, or any other rate increasing devices, and should require a background check prior to purchase (Comment No. 02222 (P1-05)). Many commenters suggested serializing "bump-fire" items for tracking purposes. Other suggestions included having to take gun classes, passing a test, and obtain firearm insurance similar to car insurance.

> One commenter (Comment No. 31460 (P7-05)) stated "ensure states and local governments are tied together and use e-checks. Need the ability to background check potential customer without an ATF 4473, if information comes back with issues, the individual could try to correct problem and FFL would not have to maintain a denied ATF 4473."

Another concern was raised regarding the firearms background check. Twenty-eight commenters were in favor of regulation of any "Rate of Increasing" device but suggested improvements be made to the background checks. All commenters agreed for a more thorough background check. Of the twenty-eight commenters, one commenter (Comment No. 00258 (P1-01)) stated to allow NICS access to medical history information. The commenter's focus was to increase NICS access to individual's medical history. Commenters also suggested the following:

- Quicker reporting time for mental health and military service record issues.
- Quicker reporting for felonies and domestic disputes.
- Deny those with restraining orders and domestic disputes.

One commenter (Comment No. 04116(P1-09)) was in complete favor of eliminating background checks all together.

1

AR001370

Munoz

**#2 Another comment summary paragraph from Application of the Definition of Machinegun to "Bump-fire" Stocks and Other Similar Devices**

**Comments Received on Flawed ATF Survey**

A few commenters argued that under the ATF comment submission form, Request for Public Input (Section III) contained flaws in questions posed to manufacturers, retailers, and consumers. One commenter (Comment No. 20672 (P5-04)) stated the questions were limited to manufacturers, retailers, and consumers – survey flawed. Another commenter (Comment No. 27432 (P6-07)) stated that they chose not to answer questions 21 and 22 because ATF has methods to more accurately answer those questions.

According to the Gun Owners Foundation (GOF) (Comment No. 12942), "ATF's request for law-abiding manufacturers, dealers, and owners to publicly self-report is as transparent as it is nefarious." GOF stated that as part of the ANPRM, ATF has requested what it terms "public input" from manufacturers, retailers, and consumers via a series of questions. According to GOF:

> Not one of these questions has anything to do with whether ATF has the authority to regulate bump fire stocks – the text of the statute makes it perfectly clear that bump fire stocks are not machineguns. There is a real risk that ATF's questions could set the stage for its eventual illegal regulation of bump fire stocks, and subsequent attempts to track down innocent manufacturers, retailers, and consumers – threatening them with legal action (or felony prosecution) if they do not help ATF round up any bump fire stocks that have been sold to date. Perhaps that may not happen during this administration, but is surely could happen in a subsequent one.

> Although couched in terms of "help us better understand the market," ATF's "requests" for voluntary submission of information will be understood by many to ask "please let us know where to execute our SWAT team raid." The danger of an escalating attack on the United States gun marketplace is palpable.

**#3- Another comment summary paragraph from Application of the Definition of Machinegun to "Bump-fire" Stocks and Other Similar Devices**

**Comments Received on Increase Gun Control**

AR001371

Munoz

Approximately fifty-four commenters asserted the need for an increase in gun control. All commenters are in favor of banning or strict regulations of bump stocks and any other "Rate of Increasing" devices. One commenter (Comment No. 08313 (P2-09)) stated any modification that comprises controllability of the firearm including bump stocks should be illegal. Additional suggestions were provided to increase gun control. Of the fifty-four commenters, thirteen suggested banning all assault weapons, six commenters suggested banning all semi-automatic weapons, three commenters suggested banning all silencers, eleven commenters suggested banning all hi-capacity magazines, and two commenters suggested banning all conceal and open carry permits.

A few commenters recommended registering and tracking every firearm and ammunition sold, in addition to conducting background checks. Three of the fifty-four commenters suggested limiting access of semi-automatic and assault weapons to police and military forces. One commenter (Comment No. 20610 (P5-03)) stated "Not allowing individuals to be armed at all," while another commenter (Comment No. 09801 (P3-02)) stated "Only one gun per person."

One commenter ((Co No. 07122(P2-06)) expressed concern as to what steps have been taken to prevent further massacres by the government, while few other commenters suggested "close gun show loopholes," "Deny domestic abusers," "Focus on making it harder for felons to obtain guns illegally," and "Require purchasers to obtain a license, firearm insurance, and pass a test." A commenter (Comment No. 11084 (P3-04)) suggested requiring a notarized signature from a psychiatrist clearing the applicant to be mentally competent, free of psychotic or paranoid symptoms and cannot be under antidepressant or other inhibiting prescription drugs. The following commenters stated the following:

Prohibit gun ownership for anyone convicted of a felony, domestic or child abuser, DWIs, any proven history of mental illness, and those suffering from PTSD (Comment No. 08172 (P2-09)). "2nd amendment states, "A well-regulated militia…" so further regulations are acceptable. Anyone who refuses to pass reasonable gun control regulations is complicit in every murder committed by a gun" (Comment No. 29791 (P7-02)).

The International Association of Chiefs of Police (IACP) (Comment No. N/A) "Strongly supports the quick implementation of this regulation and believes that it should, at a minimum, prohibit the possession, import, manufacture, transfer, and sale of bump-fire devices, trigger cranks, and similar attachments or accessories that are designed to increase or modify semi-automatic firearms to automatic weapons. In addition, the IACP believes that individuals who are currently in possession of a trigger crank, bump-fire device, or similar attachments should be required to register such devices with the Bureau of Alcohol, Tobacco, Firearms and Explosives."

The Coalition to Stop Gun Violence (Comment No. 34572) expressed a deep concern stating, "No person should be able to fire 90 rounds of ammunition in 10 seconds. No American should have to live in fear of being murdered while attending a concert, let alone fear that a single individual could kill 58 people and shoot another 422."

3

**From:**        Anderson, Melissa A.
**To:**          Lee, Jeana; Ryan, William J.; Epstein, Eric M.
**Subject:**     RE: pistol Grip Bump stocks manufacturing
**Date:**        Friday, April 20, 2018 12:02:00 PM

More than you want to know about the NFA and registration, i.e., no way to register retroactively.

*Before* an NFA weapon may be made or manufactured, the maker must meet certain requirements. Section 5822 provides that "[n]o person shall make a firearm *unless* he has (a) filed with the Secretary [now Attorney General], a written application, in duplicate, to make and register the firearm on the form prescribed … (b) paid any tax payable … (c) identified the firearm to be made in the application form …; (d) identified himself in the application form …; (e) and obtained the approval of the [Attorney General] to make and register the firearm and the firearm application form shows such approval." (emphasis added).

As to transfers of an NFA weapon, a firearm "*shall not be transferred unless* (1) the transferor of the firearm has filed with the [Attorney General] a written application, in duplicate, for the transfer and registration of the firearm to the transferee on the application form prescribed …; (2) any tax payable on the transfer is paid …; (3) the transferee is identified on the application form …; (4) the transferor of the firearm is identified …; (5) the firearm is identified …; and (6) the application form shows that the [Attorney General] has approved the transfer and registration of the firearm to the transferee." 26 U.S.C. § 5812(a) (emphasis added). In addition, the transferee of a firearm "*shall not take possession of the firearm unless* the [Attorney General] has approved the transfer and registration of the firearm to the transferee." 26 U.S.C. § 5812(b) (emphasis added==). There is no provision in the NFA that allows transfers under any other circumstances, i.e., after the transferee has taken possession.==

The NFA also requires that the Attorney General "shall maintain a central registry of all firearms in the United States which are not in the possession of or under the control of the United States" in the National Firearms Registration and Transfer Record (NFRTR). 26 U.S.C. § 5841(a). "Each manufacturer, importer, and maker shall register each firearm he manufactures, imports or makes" in the NFRTR. 26 U.S.C. § 5841(b). Moreover, each maker "of a firearm shall, *prior to* … making … a firearm obtain authorization in such manner as required by this chapter." 26 U.S.C. § 5841(c) (emphasis added). As with the making of an NFA weapon, each firearm transferred "shall be registered to the transferee by the transferor" in the NFRTR and each "transferor of a firearm shall, *prior to* … transferring a firearm, obtain authorization in such manner as required by this chapter." 26 U.S.C. § 5841(b), (c) (emphasis added). Pursuant to 26 U.S.C. 5861(d), it is unlawful for "any person" to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

---

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:58 AM
**To:** Ryan, William J. <███████████████; Anderson, Melissa A. ████████████████;
Epstein, Eric M. ████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Ah, thank you!

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-████
Mobile: ██████████

---

**From:** Ryan, William J.
**Sent:** Friday, April 20, 2018 10:50 AM
**To:** Lee, Jeana ██████████ >; Anderson, Melissa A. ██████████ ; Epstein, Eric M. <██████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Jeana,
Melissa will be able to provide the best documents, but to get you started.  In a recent case:

As the Supreme Court explained in Roth, to have a protected property interest, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577. But no legitimate entitlement can arise when possession of the property at issue is expressly forbidden. Despite Watson's assertion of certain property rights, such as his ability to use the machine gun and exclude others from using it, the most basic right -- to possess the machine gun -- remains illegal.

United States v. One Palmetto State Armory Pa-15 Machinegun, 115 F. Supp. 3d 544, 573 (E.D. Pa. 2015)

This was a case in which we approved his application to make the machinegun and then voided that form when we realized it was a machinegun.

Bill

---

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:47 AM
**To:** Anderson, Melissa A. ██████████ ; Ryan, William J. ██████████ ; Epstein, Eric M. ██████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Yes, that'd be great. Thank you!

Jeana Lee
Economist
Office of Regulatory Affairs

Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-█████
Mobile: █████████████

**From:** Anderson, Melissa A.
**Sent:** Friday, April 20, 2018 10:46 AM
**To:** Lee, Jeana <████████████████; Ryan, William J. ████████████████; Epstein, Eric M.
████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Short answer:  there is no retroactive way to register, I can send more on that.  We also don't
believe there would be a valid takings claim, I can send more on that as well but I need a bit of time.

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:39 AM
**To:** Ryan, William J. <████████████████   Epstein, Eric M. ████████████████   Anderson,
Melissa A. ████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Yes, but would that law supersede the 5th Amendment? Bump stocks were deemed legal for 8
years...

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-█████
Mobile: █████████████

**From:** Ryan, William J.
**Sent:** Friday, April 20, 2018 10:34 AM
**To:** Lee, Jeana <████████████████   Epstein, Eric M. ████████████████; Anderson, Melissa A.
████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Grandfathering these in would not be possible because we are classifying them as machineguns.  18
U.S.C. 922(o) provides 2 exceptions to the prohibition on machineguns.  The first is government, the
second is for those lawfully possessed prior to May 19, 1986.  Following the passage of 922(o) the
Office of Chief Counsel provided some analysis that this section forever prohibits any amnesty for
machineguns because they could not have been possessed lawfully before May 19, 1986.  I think ████

The payment issue I'll have to leave to Melissa!

Bill

---

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:11 AM
**To:** Epstein, Eric M. ███████████████; Anderson, Melissa A. ██████████████
Ryan, William J. █████████████
**Subject:** FW: pistol Grip Bump stocks manufacturing

Hi everyone,

I've been working to address all economic comments for the Bump Stocks rule. Most of the comments request alternatives to our proposed rule, including NFA registration or payment for the destruction of bump stocks under the 5th amendment rights. What would be our argument as to why we are outright destroying bump stocks rather than allowing Grandfathering or payments for the bump stocks?

Thank you in advance for your help,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-███
Mobile: ████████

---

**From:** Kingery, Max M.
**Sent:** Thursday, April 19, 2018 5:58 PM
**To:** Lee, Jeana ████████████
**Subject:** Re: pistol Grip Bump stocks manufacturing

Sorry. That would be a legal argument beyond my understanding. Can we get input from counsel?

Max M Kingery
Chief FTCB
244 Needy Rd
Martinsburg, WV. 25405

On Apr 19, 2018, at 4:51 PM, Lee, Jeana ██████████████ wrote:

Hi Max,

Thank you for the information. I understand that's in effect for current machine guns, but public commenters are suggesting that this rule is a violation of the 5th Amendment, which is a takings without just compensation. I guess it's problematic because this was deemed legal for 8 years and is now going to be considered illegal. Attached is one example of the public comments that needs to be addressed in the Final Rule. I'm not entirely sold that the response below fully corresponds with the public comments. Is there anything else that I can add to this discussion?

Thank you,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-█
Mobile: ███████

---

**From:** Kingery, Max M.
**Sent:** Thursday, April 19, 2018 4:25 PM
**To:** Lee, Jeana ████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

██████ ████████████████████████████ I don't know anything about the company.

Public Law 90-618 which created the Gun Control Act, also made several amendments to the National Firearms Act. One of those was to require registration of all firearms required to be registered under the Act into a central registry called the *National Firearms Registration and Transfer Record*. The Law required these firearms be registered by the effective date of the GCA. This requirement was seen as a statutory fix to the findings of the 1968 Haynes case which found the NFA violated the protection against self-incrimination. The resulting "amnesty period" between the posting of the GCA and the date the Act took effect was a statutorily imposed one; not an actual amnesty and certainly not an amnesty granted by the Department of Treasury (under which ATF fell at the time). No Department or Agency of the United States is presently empowered to grant an amnesty to the provisions of the registration requirements of the NFA. Further, Section 922(o) of the GCA makes it unlawful generally, for a person to possess a machinegun that was not registered prior to May 19, 1986. Accordingly, it would be outside the statutory authority of ATF or DOJ to act upon requests for amnesty registration of machineguns manufactured after that date. Also, because the manufacture, transfer or possession of such firearms is unlawful; requests for compensation due to the civil forfeiture of said contraband would be improper.

Hope this helps,
max

Max M. Kingery, Chief
Firearms Technology Criminal Branch
244 Needy Rd.
Martinsburg, WV  25405
Ph.# 304.616 █████
FAX  304.616.4301

Notice:  This e-mail message and any attached files are intended solely for the use of the addressee(s) named above in connection with official business.  This communication may contain sensitive but unclassified information that may be statutorily or otherwise prohibited from being released without appropriate approval. Any review, use, or dissemination of this e-mail message and any attached file(s) in any form outside of the Bureau of Alcohol, Tobacco, Firearms & Explosives or the Department of Justice without express authorization is strictly prohibited.

**From:** Lee, Jeana
**Sent:** Thursday, April 19, 2018 3:40 PM
**To:** Kingery, Max M. <█████████████████>
**Subject:** FW: pistol Grip Bump stocks manufacturing

Hi Max,

I have an economically significant comment from a MR. Josh McRoberts. I believe he's the founder of a company called, JT Grip.

http://www.thefirearmblog.com/blog/2016/10/17/new-bump-fire-grip-jt-grip-coming-soon-maybe/

is this pistol grip going fall under the regulations of our bump stocks rule? If so, what do you know about the company?

Also, the NPRM public comments are getting a lot of requests to not outright ban/dispose bump stocks, but rather, provide compensation or allow them to be registered as an NFA weapon. We would need to provide a response for these as alternatives to our policy. Do you have a response for these?

Thank you,

Jeana


Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-█████
Mobile: ██████████

---

**From:** Lee, Jeana
**Sent:** Monday, April 16, 2018 5:20 PM
**To:** Griffith, Earl L. ████████████████
**Cc:** Lange, Andrew R. ████████████████ ; Chu, Vivian S. ████████████
**Subject:** pistol Grip Bump stocks manufacturing

Hi Earl,

I have an economically significant comment from a MR. Josh McRoberts. I believe he's the founder of a company called, JT Grip.

http://www.thefirearmblog.com/blog/2016/10/17/new-bump-fire-grip-jt-grip-coming-soon-maybe/

is this pistol grip going fall under the regulations of our bump stocks rule? If so, what do you know about the company?

Very respectfully,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-█████
Mobile: ██████████

<mime-attachment>

| From: | Anderson, Melissa A. |
|---|---|
| To: | Lee, Jeana; Ryan, William J.; Epstein, Eric M. |
| Subject: | RE: pistol Grip Bump stocks manufacturing |
| Date: | Friday, April 20, 2018 12:17:00 PM |

More on property interests, or lack thereof:  (This is borrowed from an old case where the manufacturer sued us, for bump stocks it would presumably be purchaser possessers, but much of the same reasoning applies, especially highlighted sentences.)

"The chief and one of the most valuable characteristics of the bundle of rights commonly called 'property' is the right to sole and exclusive possession—the right to *exclude* strangers, or for that matter friends, but especially the Government."  Mitchell Arms, Inc. v. United States, 7 F.3d 212, 215 (Fed. Cir. 1993).  In Mitchell Arms, ATF granted the plaintiff permits in 1987 and 1988 to import assault rifles from Yugoslavia into the United States.  However, in 1989, ATF generally banned importation of assault rifles and refused to make an exception for plaintiff's rifles previously approved.  Plaintiff filed suit, alleging a Fifth Amendment taking.  Plaintiff argued that his contractual relationship with his Yugoslavian suppliers, which was entered into in reliance of the ATF permits, created a "reasonable investment-backed expectation" protected by the Fifth Amendment.  Id.  The Court of Appeals for the Federal Circuit disagreed; finding that "enforceable rights sufficient to support a taking claim against the United States cannot arise in an area voluntarily entered into and one which, from the start, is subject to pervasive Government control."  Id. at 216.  "The reason 'enforceable rights sufficient to support a taking claim' cannot arise in such an area is that when a citizen voluntarily enters into such an area, the citizen cannot be said to possess 'the right to exclude' [because] the citizen is in an area subject to government control."  Id. (internal citation omitted).

Like the plaintiff in Mitchell Arms, Akins voluntarily entered into the firearms industry, an industry closely regulated by the Government.  See United States v. Herrera, 444 F.3d 1238, 1244 (10th Cir. 2006) (The firearms industry has "a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware."), citing Marshall v. Barlow's, Inc., 436 U.S. 307, 313 (1978).  Indeed, Akins contacted FTB to seek a classification, and "voluntarily entered into" an area of pervasive government regulation.  Thus, he possesses no "right to exclude," and no attendant compensable property interest.

However, "[m]ere participation in a heavily regulated environment does not bar a plaintiff from any possibility of showing that it has a property interest compensable under the Fifth Amendment."  Page, 51 Fed. Cl. at 339.  "Rather, courts must consider whether the affected "right of use" is dependent upon the regulatory scheme or whether "an independent or preexisting right of use under common law applies."  Id. (finding the anticipated profit under plaintiffs' business plan to import ostrich eggs and sell them in the United States did "not exist independently of the government's regulatory scheme").  As in Page, plaintiff's anticipated profit from the sale of the Akins Accelerator was dependent on ATF's machinegun classification and "did not exist independently."

Even if plaintiff's property interests were deemed compensable, his claim still fails under the three-prong government action analysis.  See Page, 51 Fed. Cl. at 336.  First, the challenged governmental

action is a ruling intended to protect public safety. "Such regulation is a traditional exercise of the government's police power and militates against finding a taking." Id. at 339, n.14. Second, ATF's classification does not deprive the plaintiff of all chance of economic benefit; the Akins Accelerator could be sold to law enforcement agencies as permitted by 18 U.S.C. § 922(o). Finally, the fact that his property interest involved reliance of an ATF determination in a pervasively regulated industry undermines his claim of reasonable investment-backed expectations. See Connolly v. Pension Benefit Guarantee Corp., 475 U.S. 211, 227 (1986) (stating that "those who do business in [a] regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end").

---

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:58 AM
**To:** Ryan, William J. ███████████████  Anderson, Melissa A. ███████████████████
Epstein, Eric M. ███████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Ah, thank you!

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-███
Mobile: ████████████

---

**From:** Ryan, William J.
**Sent:** Friday, April 20, 2018 10:50 AM
**To:** Lee, Jeana ██████████████ >; Anderson, Melissa A. ██████████████████ >; Epstein,
Eric M. ██████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Jeana,
Melissa will be able to provide the best documents, but to get you started.  In a recent case:

As the Supreme Court explained in Roth, to have a protected property interest, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577. But no legitimate entitlement can arise when possession of the property at issue is expressly forbidden. Despite Watson's assertion of certain property rights, such as his ability to use the machine gun and exclude others from using it, the most basic right -- to possess the machine gun -- remains illegal.

United States v. One Palmetto State Armory Pa-15 Machinegun, 115 F. Supp. 3d 544, 573 (E.D. Pa. 2015)

This was a case in which we approved his application to make the machinegun and then voided that form when we realized it was a machinegun.

Bill

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:47 AM
**To:** Anderson, Melissa A. ████████████████████████ ; Ryan, William J. ████████████████ >;
Epstein, Eric M. ████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Yes, that'd be great. Thank you!

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-████
Mobile: ████████

**From:** Anderson, Melissa A.
**Sent:** Friday, April 20, 2018 10:46 AM
**To:** Lee, Jeana < ████████████ >; Ryan, William J. ████████████████ >; Epstein, Eric M.
████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Short answer:  there is no retroactive way to register, I can send more on that.  We also don't believe there would be a valid takings claim, I can send more on that as well but I need a bit of time.

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:39 AM
**To:** Ryan, William J. ████████████████ >; Epstein, Eric M. < ████████████ >; Anderson,
Melissa A. < ████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Yes, but would that law supersede the 5th Amendment? Bump stocks were deemed legal for 8 years…

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-████
Mobile: ████████

**From:** Ryan, William J.
**Sent:** Friday, April 20, 2018 10:34 AM
**To:** Lee, Jeana <​​​​​​​​​>; Epstein, Eric M. <​​​​​​​​​​​​>; Anderson, Melissa A.
**Subject:** RE: pistol Grip Bump stocks manufacturing

Grandfathering these in would not be possible because we are classifying them as machineguns. 18 U.S.C. 922(o) provides 2 exceptions to the prohibition on machineguns. The first is government, the second is for those lawfully possessed prior to May 19, 1986. Following the passage of 922(o) the Office of Chief Counsel provided some analysis that this section forever prohibits any amnesty for machineguns because they could not have been possessed lawfully before May 19, 1986. I think

The payment issue I'll have to leave to Melissa!

Bill

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:11 AM
**To:** Epstein, Eric M. <​​​​​​​​​​​>; Anderson, Melissa A. <​​​​​​​​​​​​>;
Ryan, William J. <​​​​​​​​>
**Subject:** FW: pistol Grip Bump stocks manufacturing

Hi everyone,

I've been working to address all economic comments for the Bump Stocks rule. Most of the comments request alternatives to our proposed rule, including NFA registration or payment for the destruction of bump stocks under the 5th amendment rights. What would be our argument as to why we are outright destroying bump stocks rather than allowing Grandfathering or payments for the bump stocks?

Thank you in advance for your help,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-
Mobile:

**From:** Kingery, Max M.
**Sent:** Thursday, April 19, 2018 5:58 PM
**To:** Lee, Jeana <█████████████>
**Subject:** Re: pistol Grip Bump stocks manufacturing

Sorry. That would be a legal argument beyond my understanding. Can we get input from counsel?

Max M Kingery
Chief FTCB
244 Needy Rd
Martinsburg, WV. 25405

On Apr 19, 2018, at 4:51 PM, Lee, Jeana <████████████████> wrote:

> Hi Max,
>
> Thank you for the information. I understand that's in effect for current machine guns, but public commenters are suggesting that this rule is a violation of the 5th Amendment, which is a takings without just compensation. I guess it's problematic because this was deemed legal for 8 years and is now going to be considered illegal. Attached is one example of the public comments that needs to be addressed in the Final Rule. I'm not entirely sold that the response below fully corresponds with the public comments. Is there anything else that I can add to this discussion?
>
> Thank you,
>
> Jeana
>
> Jeana Lee
> Economist
> Office of Regulatory Affairs
> Enforcement Programs
> Bureau of Alcohol, Tobacco, Firearms and Explosives
> Phone: 202-648-████
> Mobile: 2███████████

---

**From:** Kingery, Max M.
**Sent:** Thursday, April 19, 2018 4:25 PM
**To:** Lee, Jeana ██████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

████████████████████████████████ I don't know anything about the company.

Public Law 90-618 which created the Gun Control Act, also made several amendments to the National Firearms Act. One of those was to require registration of all firearms

required to be registered under the Act into a central registry called the *National Firearms Registration and Transfer Record*. The Law required these firearms be registered by the effective date of the GCA. This requirement was seen as a statutory fix to the findings of the 1968 Haynes case which found the NFA violated the protection against self-incrimination. The resulting "amnesty period" between the posting of the GCA and the date the Act took effect was a statutorily imposed one; not an actual amnesty and certainly not an amnesty granted by the Department of Treasury (under which ATF fell at the time). No Department or Agency of the United States is presently empowered to grant an amnesty to the provisions of the registration requirements of the NFA. Further, Section 922(o) of the GCA makes it unlawful generally, for a person to possess a machinegun that was not registered prior to May 19, 1986. Accordingly, it would be outside the statutory authority of ATF or DOJ to act upon requests for amnesty registration of machineguns manufactured after that date. Also, because the manufacture, transfer or possession of such firearms is unlawful; requests for compensation due to the civil forfeiture of said contraband would be improper.

Hope this helps,
max

Max M. Kingery, Chief
Firearms Technology Criminal Branch
244 Needy Rd.
Martinsburg, WV  25405
Ph.# 304.616 ███
FAX  304.616.4301

Notice:  This e-mail message and any attached files are intended solely for the use of the addressee(s) named above in connection with official business.  This communication may contain sensitive but unclassified information that may be statutorily or otherwise prohibited from being released without appropriate approval.  Any review, use, or dissemination of this e-mail message and any attached file(s) in any form outside of the Bureau of Alcohol, Tobacco, Firearms & Explosives or the Department of Justice without express authorization is strictly prohibited.

**From:** Lee, Jeana
**Sent:** Thursday, April 19, 2018 3:40 PM
**To:** Kingery, Max M. ████████████ >
**Subject:** FW: pistol Grip Bump stocks manufacturing

Hi Max,

I have an economically significant comment from a MR. Josh McRoberts. I believe he's the founder of a company called, JT Grip.

http://www.thefirearmblog.com/blog/2016/10/17/new-bump-fire-grip-jt-grip-coming-soon-maybe/

is this pistol grip going fall under the regulations of our bump stocks rule? If so, what do you know about the company?

Also, the NPRM public comments are getting a lot of requests to not outright ban/dispose bump stocks, but rather, provide compensation or allow them to be registered as an NFA weapon. We would need to provide a response for these as alternatives to our policy. Do you have a response for these?

Thank you,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-█
Mobile: █████████

---

**From:** Lee, Jeana
**Sent:** Monday, April 16, 2018 5:20 PM
**To:** Griffith, Earl L. <████████████████>
**Cc:** Lange, Andrew R. <███████████████████>; Chu, Vivian S. ███████████████████>
**Subject:** pistol Grip Bump stocks manufacturing

Hi Earl,

I have an economically significant comment from a MR. Josh McRoberts. I believe he's the founder of a company called, JT Grip.

http://www.thefirearmblog.com/blog/2016/10/17/new-bump-fire-grip-jt-grip-coming-soon-maybe/

is this pistol grip going fall under the regulations of our bump stocks rule? If so, what do you know about the company?

Very respectfully,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-████
Mobile: ████████

<mime-attachment>

| | |
|---|---|
| **From:** | Anderson, Melissa A. |
| **To:** | Davalos, Jeana; Ryan, William J.; Epstein, Eric M. |
| **Subject:** | RE: pistol Grip Bump stocks manufacturing |
| **Date:** | Friday, April 20, 2018 12:31:59 PM |

One more....to counter the argument that bump stocks used to be legal:

"it is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions." *Macktal v. Chao*, 286 F.3d 822, 825–26 (5th Cir.2002) (collecting cases). An "agency, like a court, can undo what is wrongfully done by virtue of its order." *United Gas Improvement Co. v. Callery Properties*, 382 U.S. 223, 229, 86 S.Ct. 360, 15 L.Ed.2d 284 (1965).
From *Hollis v. Lynch*, 121 F. Supp. 3d 617, 642 (N.D. Tex. 2015).

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:58 AM
**To:** Ryan, William J. ███████████████████; Anderson, Melissa A. ████████████████;
Epstein, Eric M. ████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Ah, thank you!
Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-████
Mobile: ████████████

**From:** Ryan, William J.
**Sent:** Friday, April 20, 2018 10:50 AM
**To:** Lee, Jeana ███████████████>; Anderson, Melissa A. ███████████████>; Epstein,
Eric M. < ████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Jeana,
Melissa will be able to provide the best documents, but to get you started. In a recent case:

As the Supreme Court explained in Roth, to have a protected property interest, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577. But no legitimate entitlement can arise when possession of the property at issue is expressly forbidden. Despite Watson's assertion of certain property rights, such as his ability to use the machine gun and exclude others from using it, the most basic right -- to possess the machine gun -- remains illegal.

United States v. One Palmetto State Armory Pa-15 Machinegun, 115 F. Supp. 3d 544, 573 (E.D. Pa. 2015)
This was a case in which we approved his application to make the machinegun and then voided that form when we realized it was a machinegun.
Bill

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:47 AM
**To:** Anderson, Melissa A. < ███████████████>; Ryan, William J. ███████████████;

Epstein, Eric M. ███████████████

**Subject:** RE: pistol Grip Bump stocks manufacturing

Yes, that'd be great. Thank you!

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-███
Mobile: ████████████

---

**From:** Anderson, Melissa A.
**Sent:** Friday, April 20, 2018 10:46 AM
**To:** Lee, Jeana <███████████████>; Ryan, William J. <████████████████; Epstein, Eric M.
<████████████████>
**Subject:** RE: pistol Grip Bump stocks manufacturing

Short answer: there is no retroactive way to register, I can send more on that. We also don't believe there would be a valid takings claim, I can send more on that as well but I need a bit of time.

---

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:39 AM
**To:** Ryan, William J. <████████████████>; Epstein, Eric M. <████████████████>; Anderson, Melissa A. <████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Yes, but would that law supersede the 5th Amendment? Bump stocks were deemed legal for 8 years…

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-███
Mobile: ████████████

---

**From:** Ryan, William J.
**Sent:** Friday, April 20, 2018 10:34 AM
**To:** Lee, Jeana <████████████████; Epstein, Eric M. <████████████████>; Anderson, Melissa A.
<████████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

Grandfathering these in would not be possible because we are classifying them as machineguns. 18 U.S.C. 922(o) provides 2 exceptions to the prohibition on machineguns. The first is government, the second is for those lawfully possessed prior to May 19, 1986. Following the passage of 922(o) the Office of Chief Counsel provided some analysis that this section forever prohibits any amnesty for machineguns because they could not have been possessed lawfully before May 19, 1986. I think███

████████████████████████████████████████████████
████████████████████████████████████████████████

The payment issue I'll have to leave to Melissa!
Bill

**From:** Lee, Jeana
**Sent:** Friday, April 20, 2018 10:11 AM
**To:** Epstein, Eric M. <​███████████████​>; Anderson, Melissa A. <​███████████████​>;
Ryan, William J. <​███████████​>
**Subject:** FW: pistol Grip Bump stocks manufacturing

Hi everyone,

I've been working to address all economic comments for the Bump Stocks rule. Most of the
comments request alternatives to our proposed rule, including NFA registration or payment for the
destruction of bump stocks under the 5th amendment rights. What would be our argument as to
why we are outright destroying bump stocks rather than allowing Grandfathering or payments for
the bump stocks?

Thank you in advance for your help,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-███
Mobile: ██████████

**From:** Kingery, Max M.
**Sent:** Thursday, April 19, 2018 5:58 PM
**To:** Lee, Jeana <​████████████​>
**Subject:** Re: pistol Grip Bump stocks manufacturing

Sorry. That would be a legal argument beyond my understanding. Can we get input from counsel?

Max M Kingery
Chief FTCB
244 Needy Rd
Martinsburg, WV. 25405

On Apr 19, 2018, at 4:51 PM, Lee, Jeana <​████████████████​> wrote:

> Hi Max,
>
> Thank you for the information. I understand that's in effect for current machine guns,
> but public commenters are suggesting that this rule is a violation of the 5th
> Amendment, which is a takings without just compensation. I guess it's problematic
> because this was deemed legal for 8 years and is now going to be considered illegal.
> Attached is one example of the public comments that needs to be addressed in the
> Final Rule. I'm not entirely sold that the response below fully corresponds with the
> public comments. Is there anything else that I can add to this discussion?
> Thank you,
>
> Jeana
> Jeana Lee
> Economist

Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-███
Mobile: 2█████████

**From:** Kingery, Max M.
**Sent:** Thursday, April 19, 2018 4:25 PM
**To:** Lee, Jeana <█████████████
**Subject:** RE: pistol Grip Bump stocks manufacturing

█████████████████████████████████████ I don't know anything about
the company.

Public Law 90-618 which created the Gun Control Act, also made several amendments
to the National Firearms Act. One of those was to require registration of all firearms
required to be registered under the Act into a central registry called the *National
Firearms Registration and Transfer Record*. The Law required these firearms be
registered by the effective date of the GCA. This requirement was seen as a statutory
fix to the findings of the 1968 Haynes case which found the NFA violated the protection
against self-incrimination. The resulting "amnesty period" between the posting of the
GCA and the date the Act took effect was a statutorily imposed one; not an actual
amnesty and certainly not an amnesty granted by the Department of Treasury (under
which ATF fell at the time). No Department or Agency of the United States is presently
empowered to grant an amnesty to the provisions of the registration requirements of
the NFA. Further, Section 922(o) of the GCA makes it unlawful generally, for a person to
possess a machinegun that was not registered prior to May 19, 1986. Accordingly, it
would be outside the statutory authority of ATF or DOJ to act upon requests for
amnesty registration of machineguns manufactured after that date. Also, because the
manufacture, transfer or possession of such firearms is unlawful; requests for
compensation due to the civil forfeiture of said contraband would be improper.
Hope this helps,
max

Max M. Kingery, Chief
Firearms Technology Criminal Branch
244 Needy Rd.
Martinsburg, WV 25405
Ph.# 304.616.████
FAX 304.616.4301

Notice: This e-mail message and any attached files are intended solely for the use of
the addressee(s) named above in connection with official business. This communication
may contain sensitive but unclassified information that may be statutorily or otherwise
prohibited from being released without appropriate approval. Any review, use, or
dissemination of this e-mail message and any attached file(s) in any form outside of the
Bureau of Alcohol, Tobacco, Firearms & Explosives or the Department of Justice
without express authorization is strictly prohibited.

**From:** Lee, Jeana
**Sent:** Thursday, April 19, 2018 3:40 PM

**To:** Kingery, Max M. ▮▮▮▮▮▮▮▮▮▮▮▮▮

**Subject:** FW: pistol Grip Bump stocks manufacturing

Hi Max,

I have an economically significant comment from a MR. Josh McRoberts. I believe he's the founder of a company called, JT Grip.

http://www.thefirearmblog.com/blog/2016/10/17/new-bump-fire-grip-jt-grip-coming-soon-maybe/

is this pistol grip going fall under the regulations of our bump stocks rule? If so, what do you know about the company?

Also, the NPRM public comments are getting a lot of requests to not outright ban/dispose bump stocks, but rather, provide compensation or allow them to be registered as an NFA weapon. We would need to provide a response for these as alternatives to our policy. Do you have a response for these?

Thank you,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-▮▮
Mobile: ▮▮▮▮▮▮▮▮

---

**From:** Lee, Jeana
**Sent:** Monday, April 16, 2018 5:20 PM
**To:** Griffith, Earl L. ▮▮▮▮▮▮▮▮▮▮▮▮▮ >
**Cc:** Lange, Andrew R. ▮▮▮▮▮▮▮▮▮▮▮▮▮ >; Chu, Vivian S. ▮▮▮▮▮▮▮▮▮▮▮▮▮
**Subject:** pistol Grip Bump stocks manufacturing

Hi Earl,

I have an economically significant comment from a MR. Josh McRoberts. I believe he's the founder of a company called, JT Grip.

http://www.thefirearmblog.com/blog/2016/10/17/new-bump-fire-grip-jt-grip-coming-soon-maybe/

is this pistol grip going fall under the regulations of our bump stocks rule? If so, what do you know about the company?

Very respectfully,

Jeana

Jeana Lee
Economist
Office of Regulatory Affairs
Enforcement Programs
Bureau of Alcohol, Tobacco, Firearms and Explosives
Phone: 202-648-▮▮
Mobile: ▮▮▮▮▮▮

<mime-attachment>

# West Source, Distributors

**C. Michael Shyne, Owner**                              **FFL Type 1**

**CLASS III**

---

December 2, 1996

> **VIA FAX**
> **(202) 927-7488**

Gary Schaible
National Firearms Act Branch
Bureau of Alcohol, Tobacco and Firearms
650 Massachusetts Avenue, N.W.
Washington DC  20226

RE:  Future Amnesties for Unregistered NFA Weapons

Dear Mr. Schaible:

Last year I met with five employees of the National Firearms Act Branch in your office to discuss the possibility of Amnesties being created for firearms listed on the BATF "Curio and Relic Listing".  In the consideration of such Amnesties, a legal question may arise concerning the 1986 law.

The 1986 law states that NFA weapons which were required to be previously registered, but were not so-registered, can not thereafter be registered.

I believe this seeming handicap to the allowance of Amnesty registration is invalid in the case of Amnesties since the law allowing Amnesties preceded the 1986 law.

I would appreciate General Counsel with BATF reviewing this point and responding.

Respectfully submitted,

Michael Shyne

MS:rc

AR001393

2/12

MAR 1 0 1997

E:RE:FN:GS
179.101/97-201

Mr. C. Michael Shyne
West Source, Distributors

Dear Mr. Shyne:

This is in response to your letter of December 2, 1996,
regarding your previous request for an amnesty
registration period for National Firearms Act (NFA)
firearms classified as curios or relics.

In our letter of July 16, 1996, we advised that
18 U.S.C. § 922(o) would preclude the registration of
machineguns during an amnesty period.  Section 922(o)
prohibits possession of machineguns which were not
lawfully possessed prior to its effective date of
May 19, 1986.  Since the law allowing amnesty
registrations was enacted in 1968, you state your
belief that it prevails over the 1986 amendments.

Since 922(o) is the later enactment, its provisions
would prevail over any earlier enactment in conflict.
This means that any future amnesty period could not
permit the lawful possession and registration of
machineguns prohibited by section 922(o).

We regret our response could not be more favorable.
Should any additional information be needed, please
contact us at (202) 927-8330.

Sincerely yours,

/s/

Nereida W. Levine
Chief, National Firearms Act Branch

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives
*Office of Enforcement Programs and Services*



# ATF
# National Firearms
# Act Handbook



ATF E-Publication 5320.8
Revised: April 2009

AR001395

# CHAPTER 3.  REGISTRATION OF NFA FIREARMS

**Section 3.1  The National Firearm Registration and Transfer Record (NFRTR)**

The NFRTR is the central registry of all NFA firearms in the U.S. which are not in the possession or under the control of the U.S. Government. The registry includes (1) the identification of the firearm, (2) date of registration, and (3) identification and address of the person entitled to possession of the firearm (the person to whom the firearm is registered).[30]

**Section 3.2  Who may register NFA firearms**

**3.2.1  Amnesty registration.** When the NFA was amended in 1968, a 30-day amnesty period immediately following the law's effective date was established during which persons possessing unregistered firearms could register them in the NFRTR.[31]

The 1968 amendments also provided for the establishment of additional amnesty periods not exceeding 90 days per period.[32] To date, no additional amnesty periods have been declared. Requests for further amnesty periods have been denied, principally because additional periods could jeopardize pending ATF investigations and prosecutions of NFA violations.

**3.2.2  Registration by State and local agencies.** To be lawfully possessed by States and political subdivisions of the States (for example, local police departments), NFA firearms must be registered in the NFRTR. The regulations permit State and local police organizations acquiring unregistered NFA firearms for official use, by seizure, forfeiture, or abandonment, to register them in the NFRTR by filing ATF Forms 10. Appendix C contains a copy of the form. Firearms registered on Forms 10 are for official use only and subsequent transfers will be approved only to other government agencies for official use.[33] For example, they may not be traded to an FFL/SOT in exchange for other firearms or police equipment.

**3.2.3  Registration by makers.** Persons other than FFLs and SOTs desiring to make an NFA firearm are required to first register the firearm by filing Form 1 with ATF and obtaining approval of the form and registration of the firearm. Appendix C contains a copy of the form. ATF will approve a making application on Form 1 if the maker pays the $200 making tax required by the NFA, identifies the firearm as the form requires, includes his/her fingerprints and photographs if the maker is an individual, and if the making and the maker's possession of the firearm would not place the maker in violation of any Federal, State or local law.[34] A law enforcement certification is also required if the maker is an individual. Note also that ATF will not approve the making of a machinegun it determines would violate 18 U.S.C. 922(o). Section 922(o) generally prohibits the possession of machineguns manufactured on or after May 19, 1986.

---

[30] 26 U.S.C. 5841(a)
[31] Section 207(b) of the Gun Control Act of 1968, Public Law 90-618, approved October 22, 1968
[32] Section 207(d), ibid
[33] 27 CFR 479.104
[34] 26 U.S.C 5822; 27 CFR 479.62, 479.63, 479.64

24

AR001396

**3.2.4 Registration by importers.** FFLs/SOTs qualified as importers must register imported firearms by filing ATF Forms 2, Notice of Firearms Manufactured or Imported, no later than 15 days from the date the imported firearms were released by Customs. Upon timely receipt by ATF of a Form 2 and a copy of Form 6A showing Customs' release of an imported firearm, ATF will register the firearm to the importer.[35] Appendix C contains copies of Forms 2 and 6A. Note that the NFA prohibits importation of NFA firearms unless they are being imported for the use of the United States or a State agency, for scientific or research purposes, or for testing or use as a model by a registered importer or solely for use as a sales sample by a registered importer or registered dealer.[36] In the case of an imported machinegun, Section 922(o) of the GCA would also apply.

**3.2.5 Registration by manufacturers.** FFLs/SOTs qualified as manufacturers must register manufactured firearms by filing ATF Form 2, Notice of Firearms Manufactured or Imported. All firearms manufactured during a single day must be listed on one Form 2. The form must be filed no later than the close of the next business day. Receipt of the form by ATF will serve to register the listed firearms to the manufacturer.[37] Appendix C contains a copy of Form 2.

**3.2.6 Registration to transferees.** Registered firearms may be transferred by their registered owners/possessors to transferees. Other than Form 10 registration, there is no mechanism in the NFA to lawfully transfer unregistered NFA firearms.

**3.2.6.1 Transfers by persons other than FFLs/SOTs to other such persons.** Transferors of registered firearms must file ATF Forms 4, Application for Tax Paid Transfer and Registration of a Firearm, to register the firearm to the transferee and pay the applicable transfer tax.[38] Appendix C contains a copy of the form. The form must be approved by ATF before the transfer may be made.[39] ATF will not approve the form if the transfer, receipt, or possession of the firearm would place the transferee in violation of any Federal, State, or local law.[40] A law enforcement certification is also required on ATF Form 4.

**3.2.6.2 Transfers by FFLs/SOTs to persons other than FFLs/SOTs.** Transferors of registered firearms must file ATF Forms 4, Application for Tax Paid Transfer and Registration of a Firearm, to register the firearm to the transferee and pay the applicable transfer tax. Appendix C contains a copy of the form. The form must be approved by ATF before the transfer may bemade.[41] ATF will not approve the form if the transfer, receipt, or possession of the firearm would place the transferee in violation of any Federal, State, or local law.[42]

**3.2.6.3 Transfers by non-FFLs/SOTs to FFLs/SOTs.** Transferors of registered firearms must file ATF Forms 4, Application for Tax Paid Transfer and Registration of a Firearm, to register the firearm to

---

[35] 27 CFR 479.112
[36] 26 U.S.C. 5844
[37] 27 CFR 479.103
[38] 26 U.S.C. 5812(a); 27 CFR 479.84
[39] 26 U.S.C. 5812(b); 27 CFR 479.86
[40] 26 U.S.C. 5812(a); 27 CFR 479.85
[41] 26 U.S.C. 5812(b); 27 CFR 479.86
[42] 26 U.S.C. 5812(a); 27 CFR 479.85

AR001397

the transferee and pay the applicable transfer tax.[43]   Appendix C contains a copy of the form.  The form must be approved by ATF before the transfer may be made.[44]   ATF will not approve the form if the transfer, receipt, or possession of the firearm would place the transferee in violation of any Federal, State, or local law.

**3.2.6.4  Transfers by FFLs/SOTs to other FFLs/SOTs.**  Transferors must file ATF Forms 3, Application for Tax-Exempt Transfer of Firearm and Registration to Special Occupational Taxpayer, to register the firearm to the transferee.[45]  Appendix C contains a copy of the form.  In these transactions, the transferor has no liability for the transfer tax.  The form must be approved by ATF before the transfer may be made.[46]  ATF will not approve the form if the transfer, receipt, or possession of the firearm would place the transferee in violation of any Federal, State, or local law.

**3.2.6.5  Transfers to State and local government agencies.**  Transferors must file ATF Forms 5, Application for Tax Exempt Transfer and Registration of a Firearm, to register the firearm to such agency.[47]  Appendix C contains a copy of the form.  In these transactions, the transferor has no liability for the transfer tax.  The Form must be approved by ATF before the transfer may be made.[48]

### Section 3.3  Status of unregistered firearms

Firearms not lawfully registered as required by the NFA may not be registered and legitimized by their possessors.  They are contraband and unlawful to possess.[49]  However, see Section 2.4 for information on removing NFA firearms from the scope of the NFA because of their status as collectors' items, modification, or elimination of certain component parts.

### Section 3.4  ATF disclosure of NFA registration information

**3.4.1  Restrictive use of information.**  The NFA provides that no information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person (individual) in order to comply with the NFA or the NFA regulations shall be used directly or indirectly as evidence against the person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration.[50]  Filing false information is an exception to this prohibition.[51]

**3.4.2  Prohibition on ATF's disclosure of tax returns or tax return information.**  NFA forms are treated as tax returns and registration information in the NFRTR is considered to be tax return

---

[43] 26 U.S.C. 5812(a); 27 CFR 479.84
[44] 26 U.S.C. 5812(b); 27 CFR 479.86
[45] 26 U.S.C. 5812(a); 27 CFR 479.88
[46] 26 U.S.C. 5812(b); 27 CFR 479.88(b)
[47] 26 U.S.C. 5812(a); 27 CFR 479.90
[48] 26 U.S.C. 5812(b); 27 CFR 479.90(b)
[49] U.S. v. Freed, 401 U.S. 601 (1971)
[50] 26 U.S.C. 5848(a)
[51] 26 U.S.C. 5848(b)

AR001398

information. ATF is generally prohibited from disclosing tax returns and tax return information.[52] However, firearms registration information may be disclosed to registered owners/possessors of the firearms.

**3.4.3  Determining the registration status of an NFA firearm.** The situation may arise when a person finds in his or her possession an NFA firearm and is uncertain whether the firearm is lawfully registered. Naturally, the person will want to query the NFA Branch to determine the registration status of the firearm. Because of the restriction on disclosure of NFA registration information discussed in section 3.4.2, ATF will not respond to the person's telephone request for the registration status of the firearm. To communicate with the person, the NFA Branch will respond to the request if the person verifies his or her identity to the Branch in writing. If the firearm is registered to the person in the NFRTR, the Branch will so advise the person and, if the circumstances warrant, provide the person with a copy of the registration. See also Section 3.5 on lost or stolen registration documents.

**Section 3.5  Lost or stolen registration documents.** A person possessing a firearm registered as required by the NFA must retain proof of registration, that is, the registration form showing registration of the firearm to the person, which must be made available to ATF upon request.[53] If a registrant discovers that a Form 1, 2, 3, 4, 5, 6A, or 10 is stolen, lost or destroyed, the registrant must immediately report the theft, loss, or destruction in writing to the NFABranch.[54] The report must contain the details of the situation. ATF will issue a duplicate copy of the registration document as the circumstances warrant.

**Section 3.6  Correcting incorrect registration documents.** Occasionally, the registered possessor of an NFA firearm may notice that the registered firearm does not match the registration document. Perhaps the serial number is slightly different. In this situation, the registrant should take a photograph of the markings on the firearm (or a rubbing) and send it to the NFA Branch with a written request to correct the serial number as documented on the NFRTR. ATF will respond to the request by letter stating that the NFRTR has been corrected and advising the registrant to keep the letter with the registration document as evidence of proper registration.

**Section 3.7 Maintaining registration documents.** A person possessing an NFA firearm registered as required by law must retain proof of registration, that is, the document showing the person's registration, which must be made available to ATF upon request.[55]

---

[52] 26 U.S.C. 6103
[53] 26 U.S.C. 5841(e)
[54] 27 CFR 479.142
[55] 26 U.S.C. 5841(e)

AR001399

To:         Orlow, Barry S. ▬▬▬▬▬▬▬     Suettinger, Mary H ▬▬▬▬▬▬
From:       Ryan, William J.
Sent:       Mon 5/21/2018 3:50:39 PM
Subject:    FW: Bump Stock Legal Issues

Barry, Mary:

Per your voicemail message last week (Chuck wants us to come up with the main questions we expect to see in the bumpstock comments), I've compiled the following with Viv's help.

Here are the two form letters:

I oppose the proposed legislation to classify bumpstock and similar accessories as machine guns for the following reasons: 1. The bumpstock and similar accessories do not alter the original mechanisms of a semi-automatic firearm, the trigger system still remains one bullet fire per one manipulation of the trigger. 2. Reclassification of an accessory based on its rate of fire because it mimics or is similar to a fully automatic mechanism is an infringement on the 2nd Amendment because similar results can be achieved when proficient individuals effectively manipulate semi-automatic and even single action firearms with their hands, finger, and everyday objects such as beltloops and rubber bands 3. This legislation will have a profound negative effect on current and future development of firearm accessories the companies that produce them as well as potentially inhibit the development of more efficient, effective, and safer technologies that may be used to the benefit law abiding citizens 4. This legislation will be completely ineffective in the prevention of crimes specifically outlined in this proposal. No government entity can legislate morality and/or character, those who are determined to do harm will do so regardless of any law or potential consequence. 4. This legislation is another infraction on the 2nd Amendment rights of law abiding citizens and provides an avenue to further regulations and restriction of potentially all firearms and their accessories .
----------

I am opposed to any regulation on bump stocks.

These proposed regulations would declare a "bump stock" to be a machinegun because it allows the gun to fire more than one shot "by a single PULL of the trigger" — that is, by a single volitional function of the finger.

But federal law, at 26 U.S.C. 5845(b), defines a part as a "machinegun" ONLY if it is designed solely and exclusively to allow the gun to "fire more than one shot ... by a single FUNCTION of the trigger."

To state the obvious, a finger is not the same thing as a trigger. And, while a bump stock is in operation, the trigger functions separately every time a round is discharged.

So these regulations are proposing a radical change -- as they effectively define a gun as a machinegun even if the trigger resets for every round that is fired, so long as the finger only pulls the trigger once.

While bump stock devices will now be treated as machineguns under these regulations, they also raise serious questions in regard to AR-15s and other semi-automatic rifles — as they are now on the brink of being designated as machineguns by the next anti-gun administration.

In the past, one had to fundamentally change the firing mechanism of a semi-automatic firearm to convert it into a fully automatic firearm.

But now according to these regulations, a bump stock is a machinegun -- and it can "readily restore" a semi-auto into a machinegun, simply because the gun owner can effectively fire the weapon continuously with a "single pull" of the trigger. This would involve the statutory definition for a rifle, which is classified as a machinegun (26 USC 5845(b)).

It won't matter that a gun which is being bump fired has not been fundamentally altered. AR-15s will be on the brink of extinction once these regulations go into force.

These regulations dismiss Second Amendment protections, by appealing to the Heller court decision. But the Constitution trumps the Supreme Court -- so when the Second Amendment says that the right to keep and bear arms "shall not be infringed," any limitation of the right for law-abiding citizen should be treated as unconstitutional.

Per Viv, the following are the legal issues we've received so far. This is what we expected. ▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

1.  Banning is against the Second Amendment

    --the arguments seem to be the classic "shall not be infringed." We can cite Heller for the proposition that the 2nd Amendment doesn't protect NFA and unusual weapons. This is a MG, so this is not protected.

2.  Requiring destruction or confiscation of devices that are legally owned without compensation is a taking under the 5th Amendment (and therefore unconstitutional)

    --We've done a lot of work in this area previously. For example: As the Supreme Court explained in Roth, to have a

        protected property interest, "a person clearly must have more than an abstract need or desire for it. He must have more

        than a unilateral expectation of it. He must, instead, have a claim of entitlement to it." 408 U.S. at 577. But no legitimate

entitlement can arise when possession of the property at issue is expressly forbidden. Despite Watson's assertion of
certain property rights, such as his ability to use the machine gun and exclude others from using it, the most basic right –
to possess the machine gun – remains illegal. United States v. One Palmetto State Armory Pa-15 Machinegun, 115 F.
Supp. 3d 544, 573 (E.D. Pa. 2015).

3. ATF does not have the authority to amend a definition that is set in statute; in other words Congress should be doing this change. (not that we don't have statutory authority in general to engage in rulemaking)
   --The argument is that a "pull" is not a "function" of the trigger. There may be one pull, but the trigger resets and there is therefore not a single "function." While we cannot amend a statutory definition, we are specifically tasked with applying the statute. Congress did not state what "function" or "automatically" means. This is exactly the purpose of regulatory agencies—to carry out the law. Interpretation is necessary.

4. ATF is going against its own 2010 letter determinations as well as arguments it made in lawsuits (will attach that one)
   --Yes. This is correct. The answer to this is included within the rulemaking: we reevaluated our prior opinion and are reversing.

5. The change in definition will/could have the effect of also capturing AR-15s and other semi-auto firearms or trigger devices etc...
   --The argument is that any AR-15 can be bump-fired even without a bumpstock—i.e. belt loop. Therefore, any AR-15 can now be banned. Slippery slope. However, our response is that the bumpstock is specifically a conversion device. It is not "made to shoot faster" like a binary trigger, but is a device designed and intended to allow the firing of more than one round when the trigger is pulled a single time and held. AR-15s, unmodified, are not so designed.

6. Disagree with ATF characterization of how bump stocks operate -- "harnessing recoil energy" "self acting" etc...; bump stock not a machinegun under NFA definition.

   ▓▓▓▓▓▓▓▓▓▓▓ For example: *"Because this process is powered by the user, at least in part, it cannot be considered automatic. If it were automatic, the user would not have to exert force with his other hand to pull the gun repeatedly forward. The ATF states that the bump stock harnesses the recoil energy of the firearm, providing the primary impetus for automatic fire. To say that the bump stock harnesses energy, means that it is converting, storing, or redirecting energy in some way. However, none of that is occurring. It merely moves back and forth, and this back-and-forth motion does not absorb or release energy. The user, not the bump stock, is harnessing the recoil. The purposes of the bump stock are 1) to allow the user to better stabilize the gun while firing and 2) to support the trigger finger. The ATF calls the bump stock a self-acting device, which means acting or capable of acting by itself (Merriam-Webster). The bump stock is not acting, or capable of acting, by itself."*

   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

   "automatically" refers to that part of the operation when the bump stock slides back in the stock. That is *"the device harnesses the recoil energy to slide the firearm back and forth so that the weapon automatically re-engages by "bumping" the shooter's stationary trigger finger without additional physical manipulation of the trigger by the shooter. The bump-stock-type device functions as a self-acting and self-regulating force that channels the firearm's recoil energy in a continuous back-and-forth cycle that allows the shooter to attain continuous firing after a single pull of the trigger so long as the trigger finger remains stationary on the device's extension ledge (as designed). No further physical manipulation of the trigger by the shooter is required."*

7. Alternatives—Registration under NFA of bump stocks or amnesty period for BS currently in possession (we'd have to address why this isn't feasible)
   Comments such as "I suggest re-opening and relabeling the machine gun registry for anyone that still owns one of these devices for a period of 6 months."

But we have already done a lot of work and have a good opinion on why 922(o) prohibits us from reopening the registry for MGs.

AR001402

# Firearms Commerce

# in the

# United States

## Annual Statistical Update

## 2018

**United States Department of Justice**

**Bureau of Alcohol, Tobacco, Firearms**

**and Explosives**

AR001403

# Exhibit 1.  Firearms Manufactured (1986-2016)

| Calendar Year | Pistols | Revolvers | Rifles | Shotguns | Misc. Firearms[1] | Total Firearms |
|---|---|---|---|---|---|---|
| 1986 | 662,973 | 761,414 | 970,507 | 641,482 | 4,558 | 3,040,934 |
| 1987 | 964,561 | 722,512 | 1,007,661 | 857,949 | 6,980 | 3,559,663 |
| 1988 | 1,101,011 | 754,744 | 1,144,707 | 928,070 | 35,345 | 3,963,877 |
| 1989 | 1,404,753 | 628,573 | 1,407,400 | 935,541 | 42,126 | 4,418,393 |
| 1990 | 1,371,427 | 470,495 | 1,211,664 | 848,948 | 57,434 | 3,959,968 |
| 1991 | 1,378,252 | 456,966 | 883,482 | 828,426 | 15,980 | 3,563,106 |
| 1992 | 1,669,537 | 469,413 | 1,001,833 | 1,018,204 | 16,849 | 4,175,836 |
| 1993 | 2,093,362 | 562,292 | 1,173,694 | 1,144,940 | 81,349 | 5,055,637 |
| 1994 | 2,004,298 | 586,450 | 1,316,607 | 1,254,926 | 10,936 | 5,173,217 |
| 1995 | 1,195,284 | 527,664 | 1,411,120 | 1,173,645 | 8,629 | 4,316,342 |
| 1996 | 987,528 | 498,944 | 1,424,315 | 925,732 | 17,920 | 3,854,439 |
| 1997 | 1,036,077 | 370,428 | 1,251,341 | 915,978 | 19,680 | 3,593,504 |
| 1998 | 960,365 | 324,390 | 1,535,690 | 868,639 | 24,506 | 3,713,590 |
| 1999 | 995,446 | 335,784 | 1,569,685 | 1,106,995 | 39,837 | 4,047,747 |
| 2000 | 962,901 | 318,960 | 1,583,042 | 898,442 | 30,196 | 3,793,541 |
| 2001 | 626,836 | 320,143 | 1,284,554 | 679,813 | 21,309 | 2,932,655 |
| 2002 | 741,514 | 347,070 | 1,515,286 | 741,325 | 21,700 | 3,366,895 |
| 2003 | 811,660 | 309,364 | 1,430,324 | 726,078 | 30,978 | 3,308,404 |
| 2004 | 728,511 | 294,099 | 1,325,138 | 731,769 | 19,508 | 3,099,025 |
| 2005 | 803,425 | 274,205 | 1,431,372 | 709,313 | 23,179 | 3,241,494 |
| 2006 | 1,021,260 | 385,069 | 1,496,505 | 714,618 | 35,872 | 3,653,324 |
| 2007 | 1,219,664 | 391,334 | 1,610,923 | 645,231 | 55,461 | 3,922,613 |
| 2008 | 1,609,381 | 431,753 | 1,734,536 | 630,710 | 92,564 | 4,498,944 |
| 2009 | 1,868,258 | 547,195 | 2,248,851 | 752,699 | 138,815 | 5,555,818 |
| 2010 | 2,258,450 | 558,927 | 1,830,556 | 743,378 | 67,929 | 5,459,240 |
| 2011 | 2,598,133 | 572,857 | 2,318,088 | 862,401 | 190,407 | 6,541,886 |
| 2012 | 3,487,883 | 667,357 | 3,168,206 | 949,010 | 306,154 | 8,578,610 |
| 2013 | 4,441,726 | 725,282 | 3,979,570 | 1,203,072 | 495,142 | 10,844,792 |
| 2014 | 3,633,454 | 744,047 | 3,379,549 | 935,411 | 358,165 | 9,050,626 |
| 2015 | 3,557,199 | 885,259 | 3,691,799 | 777,273 | 447,131 | 9,358,661 |
| 2016 | 4,720,075 | 856,291 | 4,239,335 | 848,617 | 833,123 | 11,497,441 |

Source: ATF's Annual Firearms Manufacturing and Exportation Report (AFMER).

[1]Miscellaneous firearms are any firearms not specifically categorized in any of the firearms categories defined on the ATF Form 5300.11 Annual Firearms Manufacturing and Exportation Report. (Examples of miscellaneous firearms would include pistol grip firearms, starter guns, and firearm frames and receivers.)

The AFMER report excludes production for the U.S. military but includes firearms purchased by domestic law enforcement agencies.  The report also includes firearms manufactured for export.

AFMER data is not published until one year after the close of the calendar year reporting period because the proprietary data furnished by filers is protected from immediate disclosure by the Trade Secrets Act.  For example, calendar year 2012 data was due to ATF by April 1, 2013, but not published until January 2014.

AR001404



Exhibit 1a. Firearms Manufactured (1986-2016)

2

AR001405

# Exhibit 2.  Firearms Manufacturers' Exports (1986 - 2016)

| Calendar Year | Pistols | Revolvers | Rifles | Shotguns | Misc. Firearms[1] | Total Firearms |
|---|---|---|---|---|---|---|
| 1986 | 16,511 | 104,571 | 37,224 | 58,943 | 199 | 217,448 |
| 1987 | 24,941 | 134,611 | 42,161 | 76,337 | 9,995 | 288,045 |
| 1988 | 32,570 | 99,289 | 53,896 | 68,699 | 2,728 | 257,182 |
| 1989 | 41,970 | 76,494 | 73,247 | 67,559 | 2,012 | 261,282 |
| 1990 | 73,398 | 106,820 | 71,834 | 104,250 | 5,323 | 361,625 |
| 1991 | 79,275 | 110,058 | 91,067 | 117,801 | 2,964 | 401,165 |
| 1992 | 76,824 | 113,178 | 90,015 | 119,127 | 4,647 | 403,791 |
| 1993 | 59,234 | 91,460 | 94,272 | 171,475 | 14,763 | 431,204 |
| 1994 | 93,959 | 78,935 | 81,835 | 146,524 | 3,220 | 404,473 |
| 1995 | 97,969 | 131,634 | 90,834 | 101,301 | 2,483 | 424,221 |
| 1996 | 64,126 | 90,068 | 74,557 | 97,191 | 6,055 | 331,997 |
| 1997 | 44,182 | 63,656 | 76,626 | 86,263 | 4,354 | 275,081 |
| 1998 | 29,537 | 15,788 | 65,807 | 89,699 | 2,513 | 203,344 |
| 1999 | 34,663 | 48,616 | 65,669 | 67,342 | 4,028 | 220,318 |
| 2000 | 28,636 | 48,130 | 49,642 | 35,087 | 11,132 | 172,627 |
| 2001 | 32,151 | 32,662 | 50,685 | 46,174 | 10,939 | 172,611 |
| 2002 | 22,555 | 34,187 | 60,644 | 31,897 | 1,473 | 150,756 |
| 2003 | 16,340 | 26,524 | 62,522 | 29,537 | 6,989 | 141,912 |
| 2004 | 14,959 | 24,122 | 62,403 | 31,025 | 7,411 | 139,920 |
| 2005 | 19,196 | 29,271 | 92,098 | 46,129 | 7,988 | 194,682 |
| 2006 | 144,779 | 28,120 | 102,829 | 57,771 | 34,022 | 367,521 |
| 2007 | 45,053 | 34,662 | 80,594 | 26,949 | 17,524 | 204,782 |
| 2008 | 54,030 | 28,205 | 104,544 | 41,186 | 523 | 228,488 |
| 2009 | 56,402 | 32,377 | 61,072 | 36,455 | 8,438 | 194,744 |
| 2010 | 80,041 | 25,286 | 76,518 | 43,361 | 16,771 | 241,977 |
| 2011 | 121,035 | 23,221 | 79,256 | 54,878 | 18,498 | 296,888 |
| 2012 | 128,313 | 19,643 | 81,355 | 42,858 | 15,385 | 287,554 |
| 2013 | 167,653 | 21,236 | 131,718 | 49,766 | 22,748 | 393,121 |
| 2014 | 126,316 | 25,521 | 207,934 | 60,377 | 784 | 420,932 |
| 2015 | 140,787 | 22,666 | 159,707 | 18,797 | 1,499 | 343,456 |
| 2016 | 172,408 | 24,587 | 147,044 | 24,668 | 8,111 | 376,818 |

Source:  ATF Annual Firearms Manufacturing and Exportation Report (AFMER).

[1]Miscellaneous firearms are any firearms not specifically categorized in any of the firearms categories defined on the ATF Form 5300.11 Annual Firearms Manufacturing and Exportation Report. (Examples of miscellaneous firearms would include pistol grip firearms, starter guns, and firearm frames and receivers.)

The AFMER report excludes production for the U.S. military but includes firearms purchased by domestic law enforcement agencies.

This exhibit does not include statistics related to the National Firearms Act (NFA).

AR001406



4

AR001407

# Exhibit 3.  Firearms Imports (1986 - 2017)

| Calendar Year | Shotguns | Rifles | Handguns | Total |
|---|---|---|---|---|
| 1986 | 201,000 | 269,000 | 231,000 | 701,000 |
| 1987 | 307,620 | 413,780 | 342,113 | 1,063,513 |
| 1988 | 372,008 | 282,640 | 621,620 | 1,276,268 |
| 1989 | 274,497 | 293,152 | 440,132 | 1,007,781 |
| 1990 | 191,787 | 203,505 | 448,517 | 843,809 |
| 1991 | 116,141 | 311,285 | 293,231 | 720,657 |
| 1992 | 441,933 | 1,423,189 | 981,588 | 2,846,710 |
| 1993 | 246,114 | 1,592,522 | 1,204,685 | 3,043,321 |
| 1994 | 117,866 | 847,868 | 915,168 | 1,880,902 |
| 1995 | 136,126 | 261,185 | 706,093 | 1,103,404 |
| 1996 | 128,456 | 262,568 | 490,554 | 881,578 |
| 1997 | 106,296 | 358,937 | 474,182 | 939,415 |
| 1998 | 219,387 | 248,742 | 531,681 | 999,810 |
| 1999 | 385,556 | 198,191 | 308,052 | 891,799 |
| 2000 | 331,985 | 298,894 | 465,903 | 1,096,782 |
| 2001 | 428,330 | 227,608 | 710,958 | 1,366,896 |
| 2002 | 379,755 | 507,637 | 741,845 | 1,629,237 |
| 2003 | 407,402 | 428,837 | 630,263 | 1,466,502 |
| 2004 | 507,050 | 564,953 | 838,856 | 1,910,859 |
| 2005 | 546,403 | 682,100 | 878,172 | 2,106,675 |
| 2006 | 606,820 | 659,393 | 1,166,309 | 2,432,522 |
| 2007 | 725,752 | 631,781 | 1,386,460 | 2,743,993 |
| 2008 | 535,960 | 602,364 | 1,468,062 | 2,606,386 |
| 2009 | 558,679 | 864,010 | 2,184,417 | 3,607,106 |
| 2010 | 509,913 | 547,449 | 1,782,585 | 2,839,947 |
| 2011 | 529,056 | 998,072 | 1,725,276 | 3,252,404 |
| 2012 | 973,465 | 1,243,924 | 2,627,201 | 4,844,590 |
| 2013 | 936,235 | 1,507,776 | 3,095,528 | 5,539,539 |
| 2014 | 648,339 | 791,892 | 2,185,037 | 3,625,268 |
| 2015 | 644,293 | 815,817 | 2,470,101 | 3,930,211 |
| 2016 | 736,482 | 729,452 | 3,671,837 | 5,137,771 |
| 2017 | 632,105 | 572,309 | 3,287,842 | 4,492,256 |

Source: ATF and United States International Trade Commission.

Statistics prior to 1992 are for fiscal years; 1992 is a transition year with five quarters.

5

AR001408



Exhibit 3a. Firearms Imports (1986 - 2017)

AR001409

# Exhibit 4.  Importation Applications (1986 - 2017)

| Fiscal Year | Licensed Importer | Military* | Other | Total |
|---|---|---|---|---|
| 1986 | 7,728 | 9,434 | 2,631 | 19,793 |
| 1987 | 7,833 | 8,059 | 2,130 | 18,022 |
| 1988 | 7,711 | 7,680 | 2,122 | 17,513 |
| 1989 | 7,950 | 8,293 | 2,194 | 18,437 |
| 1990 | 8,292 | 8,696 | 2,260 | 19,248 |
| 1991 | 8,098 | 10,973 | 2,412 | 21,483 |
| 1992 | 7,960 | 9,222 | 2,623 | 19,805 |
| 1993 | 7,591 | 6,282 | 2,585 | 16,458 |
| 1994 | 6,704 | 4,570 | 3,024 | 14,298 |
| 1995 | 5,267 | 2,834 | 2,548 | 10,649 |
| 1996 | 6,340 | 2,792 | 2,395 | 11,527 |
| 1997 | 8,288 | 2,069 | 1,395 | 11,752 |
| 1998 | 8,767 | 2,715 | 1,536 | 13,019 |
| 1999 | 9,505 | 2,235 | 1,036 | 12,776 |
| 2000 | 7,834 | 2,885 | 1,416 | 12,135 |
| 2001 | 9,639 | 3,984 | 1,569 | 15,192 |
| 2002 | 9,646 | 6,321 | 3,199 | 19,166 |
| 2003 | 8,160 | 2,264 | 2,081 | 12,505 |
| 2004 | 7,539 | 1,392 | 1,819 | 10,750 |
| 2005 | 7,539 | 1,320 | 1,746 | 10,605 |
| 2006 | 8,537 | 1,180 | 1,505 | 11,222 |
| 2007 | 8,004 | 1,081 | 1,236 | 10,321 |
| 2008 | 7,610 | 718 | 980 | 9,308 |
| 2009 | 7,967 | 504 | 970 | 9,441 |
| 2010 | 7,367 | 823 | 1,088 | 9,278 |
| 2011 | 7,647 | 641 | 959 | 9,247 |
| 2012 | 8,408 | 420 | 895 | 9,723 |
| 2013 | 9,964 | 319 | 597 | 10,880 |
| 2014 | 8,529 | 255 | 429 | 9,213 |
| 2015 | 6,078 | 318 | 897 | 7,293 |
| 2016 | 6,154 | 220 | 814 | 7,188 |
| 2017 | 5,859 | 309 | 685 | 6,853 |

Source: ATF Firearms and Explosives Import System (FEIS)

Import data excludes temporary permits issued to nonimmigrant aliens.

*Depicts ATF Form 6A Part 2 (5330.3C)

Effective April 8, 2014 Import permits are valid for two years.

AR001410



Exhibit 4a. Importation Applications
(1986 - 2017)

AR001411

## Exhibit 5.  Firearms Imported into the United States by Country 2017

| | Handguns | Rifles | Shotguns | Total Firearms |
|---|---|---|---|---|
| Austria | 1,198,740 | 3,390 | 19 | 1,202,149 |
| Brazil | 703,753 | 19,317 | 36,947 | 760,017 |
| Germany | 381,210 | 10,955 | 2,284 | 394,449 |
| Turkey | 90,122 | 1,332 | 295,382 | 386,836 |
| Croatia | 326,653 | 0 | 0 | 326,653 |
| Italy | 188,652 | 14,701 | 138,400 | 341,753 |
| Canada | 1,591 | 234,831 | 0 | 236,422 |
| Czech Republic | 151,965 | 37,586 | 15 | 189,566 |
| China | 0 | 0 | 140,171 | 140,171 |
| Philippines | 87,788 | 3,725 | 3,100 | 94,613 |
| Japan | 0 | 76,676 | 733 | 77,409 |
| Spain | 22,793 | 39,633 | 4,191 | 66,617 |
| Belgium | 21,691 | 40,269 | 130 | 62,090 |
| Finland | 3 | 35,285 | 0 | 35,288 |
| Argentina | 33,676 | 0 | 0 | 33,676 |
| Serbia | 16,470 | 11,823 | 0 | 28,293 |
| United Kingdom | 17,523 | 4,857 | 2,847 | 25,227 |
| Israel | 15,174 | 6,615 | 0 | 21,789 |
| Russia | 17 | 8,430 | 7,410 | 15,857 |
| Romania | 10,311 | 6,005 | 0 | 16,316 |
| Switzerland | 7,010 | 1,840 | 0 | 8,850 |
| Portugal | 230 | 8,037 | 10 | 8,277 |
| Slovenia | 6,014 | 0 | 0 | 6,014 |
| Bulgaria | 1,174 | 2,438 | 0 | 3,612 |
| Slovak Republic | 2,196 | 0 | 0 | 2,196 |
| France | 522 | 739 | 116 | 1,377 |
| Australia | 0 | 1,359 | 0 | 1,359 |
| Taiwan | 1,250 | 0 | 0 | 1,250 |
| Other[2] | 1,314 | 2,466 | 350 | 4,130 |
| Total | 3,287,842 | 572,309 | 632,105 | 4,492,256 |

[1]On May 26, 1994, the United States instituted a firearms imports embargo against China. Sporting shotguns, however, are exempt from the embargo.

[2]Imports of fewer than 1,000 per country.

Imports from Afghanistan, Belarus, Burma, China, Cuba, Democratic Republic of Congo, Haiti, Iran, Iraq, L bya, Mongolia, North Korea, Rwanda, Somalia Sudan, Syria, Unita (Angola), Vietnam, may include surplus military curio and relic firearms that were manufactured in these countries prior to becoming proscribed or embargoed and had been outside those proscribed countries for the preceding five years prior to import. Imports may also include those that obtained a waiver from the U.S. State Department.

Imports from Georgia, Kazakstan, Kyrgyzstan, Moldova, Russian Federation, Turkmenistan, Ukraine, and Uzbekistan are limited to firearms enumerated on the Voluntary Restraint Agreement (VRA).

AR001412



AR001413

# Exhibit 6.  National Firearms Act Tax Revenues and Related Activities (1984 - 2017)

| Fiscal Year[1] | Occupational Tax Paid[2] | Transfer and Making Tax Paid | Enforcement Support[3] | |
|---|---|---|---|---|
| | | | Certifications | Records Checks |
| 1984 | $596,000 | $666,000 | 1,196 | 2,771 |
| 1985 | $606,000 | $594,000 | 921 | 3,682 |
| 1986 | $667,000 | $1,372,000 | 690 | 3,376 |
| 1987 | $869,000 | $1,576,000 | 575 | 4,135 |
| 1988 | $2,095,000 | $1,481,000 | 701 | 3,738 |
| 1989 | $1,560,000 | $1,527,000 | 1,196 | 6,128 |
| 1990 | $1,442,000 | $1,308,000 | 666 | 7,981 |
| 1991 | $1,556,000 | $1,210,000 | 764 | 7,857 |
| 1992 | $1,499,000 | $1,237,000 | 1,257 | 8,582 |
| 1993 | $1,493,000 | $1,264,000 | 1,024 | 7,230 |
| 1994 | $1,444,000 | $1,596,000 | 586 | 6,283 |
| 1995 | $1,007,000 | $1,311,000 | 882 | 5,677 |
| 1996 | $1,143,000 | $1,402,000 | 529 | 5,215 |
| 1997 | $1,284,000 | $1,630,000 | 488 | 4,395 |
| 1998 | $1,299,000 | $1,969,000 | 353 | 3,824 |
| 1999 | $1,330,000 | $2,422,000 | 345 | 3,994 |
| 2000 | $1,399,000 | $2,301,000 | 144 | 2,159 |
| 2001 | $1,456,000 | $2,800,000 | 402 | 5,156 |
| 2002 | $1,492,000 | $1,510,000 | 441 | 6,381 |
| 2003 | $1,758,000 | $2,699,000 | 401 | 6,597 |
| 2004 | $1,640,000 | $3,052,000 | 435 | 6,191 |
| 2005 | $1,659,000 | $2,810,000 | 447 | 6,218 |
| 2006 | $1,709,000 | $3,951,000 | 327 | 6,331 |
| 2007 | $1,815,000 | $4,890,000 | 530 | 7,468 |
| 2008 | $1,950,000 | $5,742,000 | 375 | 5,872 |
| 2009 | $2,125,000 | $7,971,000 | 418 | 5,736 |
| 2010 | $2,530,000 | $7,184,000 | 267 | 5,883 |
| 2011 | $2,952,000 | $9,576,000 | 287 | 6,313 |
| 2012 | $3,628,000 | $12,814,000 | 390 | 7,103 |
| 2013 | $4,294,000 | $18,182,000 | 501 | 7,138 |
| 2014 | $4,837,000 | $22,678,000 | 367 | 6,172 |
| 2015 | $5,417,000 | $32,462,000 | 338 | 5,650 |
| 2016 | $6,018,000 | $62,596,000 | 397 | 6,547 |
| 2017 | $6,371,000 | $22.972,000 | 469 | 6,749 |

Source:  ATF's National Firearms Registration and Transfer Record (NFRTR).

[1]Data from 1997 - 2000 were based on calendar year data.

[2]Special occupational tax revenues for FY 1990 - 1996 include collections made during the fiscal year for prior tax years. Importers, manufacturers, or dealers in NFA firearms are subject to a yearly occupational tax.

[3]ATF searches the NFRTR in support of criminal investigations and regulatory inspections in order to determine whether persons are legally in possession of NFA weapons and whether transfers are made lawfully.

Data from 2000-2010 for Certifications and Records Checks was corrected in the 2012 update.

11

AR001414

## Exhibit 7. National Firearms Act Firearms Processed by Form Type (1990 - 2017)

| Calendar Year[1] | Application to Make NFA Firearms (ATF Form 1) | Manufactured and Imported (ATF Form 2) | Application for Tax Exempt Transfer Between Licensees (ATF Form 3) | Application for Taxpaid Transfer (ATF Form 4) | Application for Tax-Exempt Transfer[2] (ATF Form 5) | Exported (ATF Form 9) | Total[3] |
|---|---|---|---|---|---|---|---|
| 1990 | 399 | 66,084 | 23,149 | 7,024 | 54,959 | 21,725 | 173,340 |
| 1991 | 524 | 80,619 | 19,507 | 5,395 | 44,146 | 40,387 | 190,578 |
| 1992 | 351 | 107,313 | 26,352 | 6,541 | 45,390 | 22,120 | 208,067 |
| 1993 | 310 | 70,342 | 22,071 | 7,388 | 60,193 | 24,041 | 184,345 |
| 1994 | 1,076 | 97,665 | 27,950 | 7,600 | 67,580 | 34,242 | 236,113 |
| 1995 | 1,226 | 95,061 | 18,593 | 8,263 | 60,055 | 31,258 | 214,456 |
| 1996 | 1,174 | 103,511 | 16,931 | 6,418 | 72,395 | 40,439 | 240,868 |
| 1997 | 855 | 110,423 | 18,371 | 7,873 | 70,690 | 36,284 | 244,496 |
| 1998 | 1,093 | 141,101 | 27,921 | 10,181 | 93,135 | 40,221 | 313,652 |
| 1999 | 1,071 | 137,373 | 28,288 | 11,768 | 95,554 | 28,128 | 302,182 |
| 2000 | 1,334 | 141,763 | 23,335 | 11,246 | 96,234 | 28,672 | 302,584 |
| 2001 | 2,522 | 145,112 | 25,745 | 10,799 | 101,955 | 25,759 | 311,892 |
| 2002 | 1,173 | 162,321 | 25,042 | 10,686 | 92,986 | 47,597 | 339,805 |
| 2003 | 1,003 | 156,620 | 21,936 | 13,501 | 107,108 | 43,668 | 343,836 |
| 2004 | 980 | 83,483 | 20,026 | 14,635 | 54,675 | 19,425 | 193,224 |
| 2005 | 1,902 | 65,865 | 26,603 | 14,606 | 26,210 | 20,951 | 156,137 |
| 2006 | 2,610 | 188,134 | 51,290 | 20,534 | 100,458 | 42,175 | 405,201 |
| 2007 | 3,553 | 296,267 | 51,217 | 22,260 | 194,794 | 76,467 | 644,558 |
| 2008 | 4,583 | 424,743 | 71,404 | 26,917 | 183,271 | 206,411 | 917,329 |
| 2009 | 5,345 | 371,920 | 56,947 | 31,551 | 201,267 | 163,951 | 830,981 |
| 2010 | 5,169 | 296,375 | 58,875 | 33,059 | 189,449 | 136,335 | 719,262 |
| 2011 | 5,477 | 530,953 | 107,066 | 33,816 | 147,341 | 311,214 | 1,135,867 |
| 2012 | 7,886 | 484,928 | 149,762 | 52,490 | 170,561 | 219,700 | 1,085,327 |
| 2013 | 9,347 | 477,567 | 206,389 | 57,294 | 110,637 | 224,515 | 1,085,749 |
| 2014 | 22,380 | 591,388 | 262,342 | 107,921 | 138,204 | 248,109 | 1,370,344 |
| 2015 | 32,558 | 583,499 | 365,791 | 130,017 | 127,945 | 306,037 | 1,545,847 |
| 2016 | 49,985 | 1,066,812 | 571,840 | 133,911 | 152,264 | 555,397 | 2,530,209 |
| 2017 | 40,444 | 497,329 | 344,197 | 184,312 | 180,850 | 224,389 | 1,471,521 |

Source:  ATF's National Firearms Registration and Transfer Record (NFRTR).

[1]Data from 1990 - 1996 represent fiscal year.

[2]Firearms may be transferred to the U.S., State or local governments without the payment of a transfer tax. Further transfers of NFA firearms between licensees registered as importers, manufacturers, or dealers who have paid the special occupational tax are likewise exempt from transfer tax.

[3]Totals do not include ATF Form 5320.20 or ATF Form 10 because these do not relate to commercial transactions.

12

AR001415



AR001416



Exhibit 7b. National Firearms Act Forms Processed by Fiscal Year (2002 - 2017)

14

AR001417

## Exhibit 8. National Firearms Act Registered Weapons by State (Feb 2018)

| State | Any Other Weapon[1] | Destructive Device[2] | Machinegun[3] | Silencer[4] | Short Barreled Rifle[5] | Short Barreled Shotgun[6] | Total |
|---|---|---|---|---|---|---|---|
| Alabama | 1,218 | 79,282 | 26,687 | 47,574 | 6,289 | 2,348 | 163,398 |
| Alaska | 328 | 5,032 | 1,650 | 7,107 | 2,131 | 1,324 | 17,572 |
| Arkansas | 637 | 50,465 | 5,469 | 22,554 | 3,742 | 1,178 | 84,045 |
| Arizona | 1,312 | 103,787 | 17,192 | 45,023 | 15,969 | 2,493 | 185,776 |
| California | 3,980 | 282,787 | 29,800 | 16,128 | 11,723 | 13,805 | 358,223 |
| Colorado | 1,023 | 48,481 | 7,385 | 33,538 | 7,904 | 1,831 | 100,162 |
| Connecticut | 948 | 13,508 | 37,311 | 11,919 | 3,588 | 1,023 | 68,297 |
| District of Columbia | 69 | 44,813 | 5,188 | 505 | 931 | 1,104 | 52,610 |
| Delaware | 33 | 3,088 | 588 | 333 | 297 | 645 | 4,984 |
| Florida | 3,645 | 190,060 | 44,484 | 98,972 | 31,162 | 8,884 | 377,207 |
| Georgia | 2,022 | 73,632 | 29,318 | 72,734 | 14,194 | 11,496 | 203,396 |
| Hawaii | 34 | 7,231 | 431 | 199 | 61 | 62 | 8,018 |
| Iowa | 886 | 16,532 | 3,588 | 8,720 | 830 | 1,031 | 31,587 |
| Idaho | 645 | 21,422 | 4,196 | 22,359 | 3,406 | 499 | 52,527 |
| Illinois | 989 | 105,360 | 31,058 | 2,288 | 3,023 | 1,710 | 144,428 |
| Indiana | 1,683 | 44,036 | 19,496 | 38,097 | 7,378 | 9,080 | 119,770 |
| Kansas | 720 | 23,594 | 3,700 | 24,083 | 3,828 | 1,103 | 57,028 |
| Kentucky | 1,125 | 32,743 | 16,404 | 29,160 | 4,458 | 1,873 | 85,763 |
| Louisiana | 606 | 54,707 | 6,942 | 46,978 | 6,299 | 1,824 | 117,356 |
| Massachusetts | 850 | 17,024 | 6,776 | 10,912 | 3,480 | 988 | 40,030 |
| Maryland | 1,044 | 54,104 | 32,453 | 18,325 | 5,654 | 3,883 | 115,463 |
| Maine | 605 | 3,557 | 5,393 | 3,933 | 3,146 | 487 | 17,121 |
| Michigan | 1,195 | 26,527 | 15,557 | 21,874 | 5,090 | 1,435 | 71,678 |
| Minnesota | 2,703 | 48,484 | 8,403 | 21,615 | 4,674 | 1,140 | 87,019 |
| Missouri | 1,425 | 33,379 | 9,784 | 24,515 | 6,865 | 2,692 | 78,660 |
| Mississippi | 442 | 10,527 | 4,528 | 19,689 | 3,235 | 910 | 39,331 |
| Montana | 457 | 3,973 | 2,327 | 11,337 | 1,723 | 509 | 20,326 |
| North Carolina | 975 | 93,448 | 15,513 | 41,178 | 10,848 | 3,208 | 165,170 |
| North Dakota | 203 | 2,972 | 1,605 | 9,225 | 1,143 | 292 | 15,440 |
| Nebraska | 769 | 7,015 | 2,267 | 11,878 | 2,321 | 842 | 25,092 |
| New Hampshire | 450 | 4,905 | 16,011 | 32,093 | 5,143 | 538 | 59,140 |
| New Jersey | 429 | 44,439 | 8,404 | 1,629 | 2,144 | 2,584 | 59,629 |
| New Mexico | 318 | 82,408 | 4,025 | 10,561 | 3,122 | 748 | 101,182 |
| Nevada | 904 | 38,612 | 15,073 | 20,999 | 8,628 | 2,932 | 87,148 |
| New York | 1,714 | 46,103 | 12,779 | 3,554 | 6,466 | 7,525 | 78,141 |
| Ohio | 2,107 | 84,047 | 21,869 | 49,099 | 10,086 | 6,107 | 173,315 |
| Oklahoma | 1,206 | 17,294 | 9,466 | 39,060 | 5,780 | 1,809 | 74,615 |
| Oregon | 1,585 | 23,479 | 6,579 | 27,108 | 6,046 | 1,549 | 66,346 |
| Pennsylvania | 2,233 | 168,961 | 18,910 | 45,702 | 12,694 | 13,265 | 261,765 |
| Rhode Island | 41 | 3,467 | 628 | 58 | 232 | 109 | 4,535 |
| South Carolina | 719 | 36,783 | 10,042 | 42,990 | 6,517 | 4,065 | 101,116 |
| South Dakota | 368 | 4,107 | 1,915 | 15,341 | 903 | 213 | 22,847 |
| Tennessee | 1,700 | 45,077 | 14,144 | 32,111 | 8,491 | 6,111 | 107,634 |
| Texas | 7,192 | 267,963 | 37,701 | 265,597 | 50,518 | 8,641 | 637,612 |
| Utah | 483 | 17,267 | 7,169 | 51,760 | 5,865 | 1,418 | 83,962 |
| Virginia | 2,958 | 212,240 | 35,211 | 50,100 | 18,996 | 8,505 | 328,010 |
| Vermont | 227 | 2,802 | 1,365 | 1,558 | 519 | 152 | 6,623 |
| Washington | 1,936 | 48,272 | 4,391 | 36,798 | 9,128 | 1,009 | 101,534 |
| Wisconsin | 776 | 32,573 | 8,060 | 25,148 | 5,389 | 1,304 | 73,250 |
| West Virginia | 466 | 19,265 | 7,006 | 7,986 | 2,029 | 1,087 | 37,839 |
| Wyoming | 317 | 116,571 | 1,804 | 7,769 | 1,223 | 399 | 128,083 |
| Other US Territories | 6 | 323 | 215 | 18 | 12 | 97 | 671 |
| Total | 60,706 | 2,818,528 | 638,260 | 1,489,791 | 345,323 | 149,866 | 5,502,474 |

15

Source:  ATF National Firearms Registration and Transfer Record (NFRTR).

[1] The term "any other weapon" means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or a revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.

[2] Destructive device generally is defined as (a) Any explosive, incendiary, or poison gas (1) bomb, (2) grenade, (3) rocket having a propellant charge of more than 4 ounces, (4) missile having an explosive or incendiary charge of more than one-quarter ounce, (5) mine, or (6) device similar to any of the devices described in the preceding paragraphs of this definition; (b) any type of weapon (other than a shotgun or a shotgun shell which the Director finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and (c) any combination of parts either designed or intended for use in converting any device into any destructive device described in paragraph (a) or (b) of this section and from which a destructive device may be readily assembled. The term shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10, United States Code; or any other device which the Director finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational, or cultural purposes.

[3] Machinegun is defined as any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

[4] Silencer is defined as any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for the use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

[5] Short-barreled rifle is defined as a rifle having one or more barrels less than 16 inches in length, and any weapon made from a rifle, whether by alteration, modification, or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

[6] Short-barreled shotgun is defined as a shotgun having one or more barrels less than 18 inches in length, and any weapon made from a shotgun, whether by alteration, modification, or otherwise, if such weapon as modified has an overall length of less than 26 inches.

16

AR001419

# Exhibit 9. National Firearms Act Special Occupational Taxpayers by State
## Tax Year 2017

| State | Importers | Manufacturers | Dealers | Total |
|---|---|---|---|---|
| Alabama | 24 | 106 | 123 | 253 |
| Alaska | 0 | 24 | 53 | 77 |
| Arizona | 28 | 334 | 221 | 583 |
| Arkansas | 14 | 89 | 108 | 211 |
| California | 14 | 118 | 95 | 227 |
| Colorado | 3 | 123 | 164 | 290 |
| Connecticut | 6 | 74 | 45 | 125 |
| Delaware | 0 | 1 | 3 | 4 |
| District of Columbia | 0 | 0 | 1 | 1 |
| Florida | 58 | 411 | 423 | 892 |
| Georgia | 10 | 172 | 244 | 426 |
| Hawaii | 0 | 0 | 1 | 1 |
| Idaho | 2 | 94 | 90 | 186 |
| Illinois | 9 | 78 | 51 | 138 |
| Indiana | 1 | 98 | 170 | 269 |
| Iowa | 1 | 46 | 82 | 129 |
| Kansas | 3 | 53 | 113 | 169 |
| Kentucky | 15 | 80 | 128 | 223 |
| Louisiana | 2 | 68 | 159 | 229 |
| Maine | 4 | 35 | 42 | 81 |
| Maryland | 9 | 66 | 79 | 154 |
| Massachusetts | 4 | 86 | 23 | 113 |
| Michigan | 7 | 85 | 160 | 252 |
| Minnesota | 12 | 99 | 109 | 220 |
| Mississippi | 7 | 59 | 89 | 155 |
| Missouri | 15 | 127 | 177 | 319 |
| Montana | 3 | 44 | 86 | 133 |
| Nebraska | 0 | 36 | 62 | 98 |
| Nevada | 12 | 144 | 79 | 235 |
| New Hampshire | 7 | 79 | 57 | 143 |
| New Jersey | 2 | 4 | 21 | 27 |
| New Mexico | 9 | 60 | 72 | 141 |
| New York | 4 | 52 | 24 | 80 |
| North Carolina | 2 | 167 | 255 | 424 |
| North Dakota | 0 | 7 | 48 | 55 |
| Ohio | 4 | 174 | 225 | 403 |
| Oklahoma | 2 | 123 | 136 | 261 |
| Oregon | 2 | 102 | 134 | 238 |
| Pennsylvania | 20 | 174 | 263 | 457 |
| Rhode Island | 1 | 0 | 1 | 2 |
| South Carolina | 7 | 93 | 92 | 192 |
| South Dakota | 1 | 25 | 64 | 90 |
| Tennessee | 5 | 107 | 177 | 289 |
| Texas | 38 | 604 | 858 | 1500 |
| Utah | 3 | 104 | 92 | 199 |
| Vermont | 5 | 17 | 20 | 42 |
| Virginia | 41 | 159 | 215 | 415 |
| Washington | 5 | 104 | 105 | 214 |
| West Virginia | 7 | 40 | 61 | 108 |
| Wisconsin | 9 | 104 | 101 | 214 |
| Wyoming | 2 | 29 | 51 | 82 |
| Total | 439 | 5,078 | 6,252 | 11,769 |

Source: ATF's National Firearms Act Special Occupational Tax Database (NSOT)

Numbers represent qualified premises locations.

17

AR001420

## Exhibit 10. Federal Firearms Licensees Total (1975-2017)

| Fiscal Year | Dealer | Pawn-broker | Collector | Manufacturer of | | Importer | Destructive Device | | | Total |
| | | | | Ammunition | Firearms | | Dealer | Manufacturer | Importer | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1975 | 146,429 | 2,813 | 5,211 | 6,668 | 364 | 403 | 9 | 23 | 7 | 161,927 |
| 1976 | 150,767 | 2,882 | 4,036 | 7,181 | 397 | 403 | 4 | 19 | 8 | 165,697 |
| 1977 | 157,463 | 2,943 | 4,446 | 7,761 | 408 | 419 | 6 | 28 | 10 | 173,484 |
| 1978 | 152,681 | 3,113 | 4,629 | 7,735 | 422 | 417 | 6 | 35 | 14 | 169,052 |
| 1979 | 153,861 | 3,388 | 4,975 | 8,055 | 459 | 426 | 7 | 33 | 12 | 171,216 |
| 1980 | 155,690 | 3,608 | 5,481 | 8,856 | 496 | 430 | 7 | 40 | 11 | 174,619 |
| 1981 | 168,301 | 4,308 | 6,490 | 10,067 | 540 | 519 | 7 | 44 | 20 | 190,296 |
| 1982 | 184,840 | 5,002 | 8,602 | 12,033 | 675 | 676 | 12 | 54 | 24 | 211,918 |
| 1983 | 200,342 | 5,388 | 9,859 | 13,318 | 788 | 795 | 16 | 71 | 36 | 230,613 |
| 1984 | 195,847 | 5,140 | 8,643 | 11,270 | 710 | 704 | 15 | 74 | 40 | 222,443 |
| 1985 | 219,366 | 6,207 | 9,599 | 11,818 | 778 | 881 | 15 | 85 | 45 | 248,794 |
| 1986 | 235,393 | 6,998 | 10,639 | 12,095 | 843 | 1,035 | 16 | 95 | 52 | 267,166 |
| 1987 | 230,888 | 7,316 | 11,094 | 10,613 | 852 | 1,084 | 16 | 101 | 58 | 262,022 |
| 1988 | 239,637 | 8,261 | 12,638 | 10,169 | 926 | 1,123 | 18 | 112 | 69 | 272,953 |
| 1989 | 231,442 | 8,626 | 13,536 | 8,345 | 922 | 989 | 21 | 110 | 72 | 264,063 |
| 1990 | 235,684 | 9,029 | 14,287 | 7,945 | 978 | 946 | 20 | 117 | 73 | 269,079 |
| 1991 | 241,706 | 9,625 | 15,143 | 7,470 | 1,059 | 901 | 17 | 120 | 75 | 276,116 |
| 1992 | 248,155 | 10,452 | 15,820 | 7,412 | 1,165 | 894 | 15 | 127 | 77 | 284,117 |
| 1993 | 246,984 | 10,958 | 16,635 | 6,947 | 1,256 | 924 | 15 | 128 | 78 | 283,925 |
| 1994 | 213,734 | 10,872 | 17,690 | 6,068 | 1,302 | 963 | 12 | 122 | 70 | 250,833 |
| 1995 | 158,240 | 10,155 | 16,354 | 4,459 | 1,242 | 842 | 14 | 118 | 71 | 191,495 |
| 1996 | 105,398 | 9,974 | 14,966 | 3,144 | 1,327 | 786 | 12 | 117 | 70 | 135,794 |
| 1997 | 79,285 | 9,956 | 13,512 | 2,451 | 1,414 | 733 | 13 | 118 | 72 | 107,554 |
| 1998 | 75,619 | 10,176 | 14,875 | 2,374 | 1,546 | 741 | 12 | 125 | 68 | 105,536 |
| 1999 | 71,290 | 10,035 | 17,763 | 2,247 | 1,639 | 755 | 11 | 127 | 75 | 103,942 |
| 2000 | 67,479 | 9,737 | 21,100 | 2,112 | 1,773 | 748 | 12 | 125 | 71 | 103,157 |
| 2001 | 63,845 | 9,199 | 25,145 | 1,950 | 1,841 | 730 | 14 | 117 | 72 | 102,913 |
| 2002 | 59,829 | 8,770 | 30,157 | 1,763 | 1,941 | 735 | 16 | 126 | 74 | 103,411 |
| 2003 | 57,492 | 8,521 | 33,406 | 1,693 | 2,046 | 719 | 16 | 130 | 82 | 104,105 |
| 2004 | 56,103 | 8,180 | 37,206 | 1,625 | 2,144 | 720 | 16 | 136 | 84 | 106,214 |
| 2005 | 53,833 | 7,809 | 40,073 | 1,502 | 2,272 | 696 | 15 | 145 | 87 | 106,432 |
| 2006 | 51,462 | 7,386 | 43,650 | 1,431 | 2,411 | 690 | 17 | 170 | 99 | 107,316 |
| 2007 | 49,221 | 6,966 | 47,690 | 1,399 | 2,668 | 686 | 23 | 174 | 106 | 108,933 |
| 2008 | 48,261 | 6,687 | 52,597 | 1,420 | 2,959 | 688 | 29 | 189 | 113 | 112,943 |
| 2009 | 47,509 | 6,675 | 55,046 | 1,511 | 3,543 | 735 | 34 | 215 | 127 | 115,395 |
| 2010 | 47,664 | 6,895 | 56,680 | 1,759 | 4,293 | 768 | 40 | 243 | 145 | 118,487 |
| 2011 | 48,676 | 7,075 | 59,227 | 1,895 | 5,441 | 811 | 42 | 259 | 161 | 123,587 |
| 2012 | 50,848 | 7,426 | 61,885 | 2,044 | 7,423 | 848 | 52 | 261 | 169 | 130,956 |
| 2013 | 54,026 | 7,810 | 64,449 | 2,353 | 9,094 | 998 | 57 | 273 | 184 | 139,244 |
| 2014 | 55,431 | 8,132 | 63,301 | 2,596 | 9,970 | 1,133 | 66 | 287 | 200 | 141,116 |
| 2015 | 56,181 | 8,152 | 60,652 | 2,603 | 10,498 | 1,152 | 66 | 315 | 221 | 139,840 |
| 2016 | 56,754 | 8,076 | 57,345 | 2,481 | 11,083 | 1,105 | 71 | 332 | 217 | 137,464 |
| 2017 | 56,638 | 7,871 | 55,588 | 2,259 | 11,946 | 1,110 | 78 | 357 | 234 | 136,081 |

Source: ATF Federal Firearms Licensing Center, Federal Licensing System (FLS). Data is based on active firearms licenses and related statistics the end of each fiscal year.

AR001421

## Exhibit 11.  Federal Firearms Licensees by State 2017

| State | FFL Population |
|---|---:|
| Alabama | 2,327 |
| Alaska | 912 |
| Arizona | 3,256 |
| Arkansas | 1,950 |
| California | 7,631 |
| Colorado | 3,005 |
| Connecticut | 1,803 |
| Delaware | 315 |
| District of Columbia | 29 |
| Florida | 7,298 |
| Georgia | 3,653 |
| Hawaii | 246 |
| Idaho | 1,448 |
| Illinois | 5,411 |
| Indiana | 2,878 |
| Iowa | 2,097 |
| Kansas | 1,881 |
| Kentucky | 2,410 |
| Louisiana | 2,102 |
| Maine | 961 |
| Maryland | 3,205 |
| Massachusetts | 4,105 |
| Michigan | 4,125 |
| Minnesota | 2,584 |
| Mississippi | 1,527 |
| Missouri | 4,767 |
| Montana | 1,547 |
| Nebraska | 1,173 |
| Nevada | 1,333 |
| New Hampshire | 1,193 |
| New Jersey | 523 |
| New Mexico | 1,112 |
| New York | 3,960 |
| North Carolina | 4,690 |
| North Dakota | 684 |
| Ohio | 4,792 |
| Oklahoma | 2,434 |
| Oregon | 2,358 |
| Pennsylvania | 6,298 |
| Rhode Island | 631 |
| South Carolina | 2,168 |
| South Dakota | 772 |
| Tennessee | 3,305 |
| Texas | 10,920 |
| Utah | 1,424 |
| Vermont | 538 |
| Virginia | 4,137 |
| Washington | 2,755 |
| West Virginia | 1,434 |
| Wisconsin | 2,991 |
| Wyoming | 865 |
| Other Territories | 118 |
| Total | 136,081 |

Source:  ATF, Federal Firearms Licensing Center, Firearms Licensing System.  Data is based on active firearms licenses and related statistics as of the end of the fiscal year.

19

AR001422

# Exhibit 12.  Actions on Federal Firearms License Applications
## (1975 - 2017)

| Fiscal Year | Original Application Processed | Denied | Withdrawn[1] | Abandoned[2] |
|---|---|---|---|---|
| 1975 | 29,183 | 150 | 1,651 | … |
| 1976 | 29,511 | 209 | 2,077 | … |
| 1977 | 32,560 | 216 | 1,645 | … |
| 1978 | 29,531 | 151 | 1,015 | 414 |
| 1979 | 32,678 | 124 | 432 | 433 |
| 1980 | 36,052 | 96 | 601 | 661 |
| 1981 | 41,798 | 85 | 742 | 329 |
| 1982 | 44,745 | 52 | 580 | 370 |
| 1983 | 49,669 | 151 | 916 | 649 |
| 1984 | 39,321 | 98 | 706 | 833 |
| 1985 | 37,385 | 103 | 666 | 598 |
| 1986 | 42,842 | 299 | 698 | 452 |
| 1987 | 36,835 | 121 | 874 | 458 |
| 1988 | 32,724 | 30 | 506 | 315 |
| 1989 | 34,318 | 34 | 561 | 360 |
| 1990 | 34,336 | 46 | 893 | 404 |
| 1991 | 34,567 | 37 | 1,059 | 685 |
| 1992 | 37,085 | 57 | 1,337 | 611 |
| 1993 | 41,545 | 343 | 6,030 | 1,844 |
| 1994 | 25,393 | 136 | 4,480 | 3,917 |
| 1995 | 7,777 | 49 | 1,046 | 1,180 |
| 1996 | 8,461 | 58 | 1,061 | 629 |
| 1997 | 7,039 | 24 | 692 | 366 |
| 1998 | 7,090 | 19 | 621 | 352 |
| 1999 | 8,581 | 23 | 48 | 298 |
| 2000 | 10,698 | 6 | 447 | 91 |
| 2001 | 11,161 | 3 | 403 | 114 |
| 2002 | 16,100 | 13 | 468 | 175 |
| 2003 | 13,884 | 30 | 729 | 289 |
| 2004 | 12,953 | 18 | 572 | 235 |
| 2005 | 13,326 | 33 | 943 | 300 |
| 2006 | 13,757 | 35 | 898 | 234 |
| 2007 | 14,123 | 32 | 953 | 402 |
| 2008 | 15,434 | 21 | 1,030 | 291 |
| 2009 | 16,105 | 20 | 1,415 | 724 |
| 2010 | 16,930 | 32 | 1,467 | 380 |
| 2011 | 19,923 | 22 | 1,744 | 369 |
| 2012 | 20,977 | 28 | 2,252 | 358 |
| 2013 | 23,242 | 30 | 2,901 | 385 |
| 2014 | 17,816 | 27 | 2,192 | 444 |
| 2015 | 15,219 | 34 | 1,953 | 387 |
| 2016 | 15,853 | 16 | 2,165 | 307 |
| 2017 | 14,546 | 17 | 2,038 | 366 |

Source:  ATF

[1]An application can be withdrawn by an applicant at any time prior to the issuance of a license.

[2]If ATF cannot locate an applicant during an attempted application inspection or cannot obtain needed verification data, then the application will be abandoned.

AR001423

# Exhibit 13. Federal Firearms Licensees and Compliance Inspections (FY 1975-2017)

| Fiscal Year | Inspections | Total Licensees | Percent Inspected | Licensed Business Entities[1] | Percent Inspected |
|---|---|---|---|---|---|
| 1975 | 10,944 | 161,927 | 6.7% | 156,716 | 7.0% |
| 1976 | 15,171 | 165,697 | 9.1% | 161,661 | 9.4% |
| 1977 | 19,741 | 173,484 | 11.3% | 169,038 | 11.7% |
| 1978 | 22,130 | 169,052 | 13.1% | 164,423 | 13.5% |
| 1979 | 14,744 | 171,216 | 8.6% | 166,241 | 8.9% |
| 1980 | 11,515 | 174,619 | 6.5% | 169,138 | 6.8% |
| 1981 | 11,035 | 190,296 | 5.7% | 183,806 | 6.0% |
| 1982 | 1,829 | 211,918 | 0.8% | 203,316 | 0.9% |
| 1983 | 2,662 | 230,613 | 1.1% | 220,754 | 1.2% |
| 1984 | 8,861 | 222,443 | 3.9% | 213,800 | 4.1% |
| 1985 | 9,527 | 248,794 | 3.8% | 239,195 | 4.0% |
| 1986 | 8,605 | 267,166 | 3.2% | 256,527 | 3.4% |
| 1987 | 8,049 | 262,022 | 3.1% | 250,928 | 3.2% |
| 1988 | 9,283 | 272,953 | 3.4% | 260,315 | 3.6% |
| 1989 | 7,142 | 264,063 | 2.7% | 250,527 | 2.9% |
| 1990 | 8,471 | 269,079 | 3.1% | 254,792 | 3.3% |
| 1991 | 8,258 | 276,116 | 3.0% | 260,973 | 3.2% |
| 1992 | 16,328 | 284,117 | 5.7% | 268,297 | 6.1% |
| 1993 | 22,330 | 283,925 | 7.9% | 267,290 | 8.4% |
| 1994 | 20,067 | 250,833 | 8.0% | 233,143 | 8.6% |
| 1995 | 13,141 | 191,495 | 7.0% | 171,577 | 7.7% |
| 1996 | 10,051 | 135,794 | 7.4% | 120,828 | 8.3% |
| 1997 | 5,925 | 107,554 | 5.5% | 94,042 | 6.3% |
| 1998 | 5,043 | 105,536 | 4.8% | 90,661 | 5.6% |
| 1999 | 9,004 | 103,942 | 8.7% | 86,179 | 10.4% |
| 2000 | 3,640 | 103,157 | 3.5% | 82,558 | 4.4% |
| 2001 | 3,677 | 102,913 | 3.6% | 77,768 | 4.7% |
| 2002 | 5,467 | 103,411 | 5.2% | 73,254 | 7.5% |
| 2003 | 5,170 | 104,105 | 4.9% | 70,699 | 7.3% |
| 2004 | 4,509 | 106,214 | 4.2% | 69,008 | 6.5% |
| 2005 | 5,189 | 106,432 | 4.9% | 66,359 | 7.8% |
| 2006 | 7,294 | 107,316 | 6.8% | 63,666 | 11.5% |
| 2007 | 10,141 | 108,933 | 9.3% | 61,243 | 16.6% |
| 2008 | 11,100 | 112,943 | 9.8% | 60,346 | 18.4% |
| 2009 | 11,375 | 115,395 | 9.9% | 60,349 | 18.8% |
| 2010 | 10,538 | 118,487 | 8.9% | 61,807 | 17.0% |
| 2011 | 13,159 | 123,587 | 10.6% | 64,360 | 20.4% |
| 2012 | 11,420 | 130,956 | 8.7% | 69,071 | 16.5% |
| 2013 | 10,516 | 139,244 | 7.6% | 74,795 | 14.1% |
| 2014 | 10,437 | 141,116 | 7.4% | 77,815 | 13.4% |
| 2015 | 8,696 | 139,840 | 6.3% | 79,188 | 11.0% |
| 2016 | 9,790 | 137,464 | 7.1% | 80,119 | 12.2% |
| 2017 | 11,009 | 136,081 | 8.1% | 80,493 | 13.7% |

Source: ATF

[1] Does not include Collector of Curio and Relics (Type 03)

AR001424