Richard A. Samp
Senior Litigation Counsel
New Civil Liberties Alliance
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5217
rich.samp@ncla.legal

Counsel for Plaintiff
Limited Appearance, admitted *pro hac vice*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

|  |  |  |
|---|---|---|
| W. CLARK APOSHIAN, | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 2-19-cv-00037-JNP-CMR |
| MERRICK GARLAND, Attorney General | ) | |
| of the United States, *et al.*, | ) | District Judge Jill N. Parrish |
| | ) | Magistrate Judge Cecilia M. Romero |
| Defendants. | ) | |
| | ) | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I.      A NON-MECHANICAL BUMP STOCK IS NOT PROPERLY CLASSIFIED AS A "MACHINEGUN" UNDER 26 U.S.C. § 5845(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.     Unlike the "Akins Accelerator," Non-Mechanical Bump Stocks Contain No Mechanical Parts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        B.     The Final Rule Misconstrues the Requirements of Section 5845(b) by Overlooking the Considerable Human Input Required to Fire More than One Shot from a Bump-Stock-Equipped Semi-Automatic Rifle . . . . . . . . . . . . . . . . 17

        C.     Case Law Broadly Defining the Word "Trigger" Is Irrelevant in Determining Whether a Weapon "Automatically" Fires More Than One Shot with a "Single Function of the Trigger". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        D.     ATF Cannot Explain Why Bump Firing with a Bump Stock Should Be Treated Differently from Bump Firing Without the Assistance of a Bump Stock . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

II.     THE RULE OF LENITY REQUIRES THAT ANY AMBIGUITY IN 26 U.S.C. § 5845(b) BE CONSTRUED AGAINST THE GOVERNMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

III.    SECTION 5845(b) SHOULD BE CONSTRUED AGAINST THE GOVERNMENT TO AVOID RAISING CONSTITUTIONAL PROBLEMS UNDER THE NONDELEGATION DOCTRINE . . . . . . 29

IV.    EARLIER DECISIONS DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION HAVE NO PRECLUSIVE EFFECT ON THE COURT'S CONSIDERATION OF THIS MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*The Adventure*,
  1 F.Cas. 202 (No. 93) (CC Va. 1812) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Akins v. United States*,
  312 Fed. Appx. 197 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

*Aposhian v. Barr*,
  374 F. Supp. 3d 1145 (D. Utah 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 35

*Aposhian v. Barr* ["*Aposhian I*"],
  958 F.3d 969 (10th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 12, 22, 27, 34, 35

*Aposhian v. Barr* ["*Aposhian II*"],
  973 F.3d 1151 (10th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Aposhian v. Wilkinson* ["*Aposhian III*"],
  989 F.3d 890 (10th Cir. 2021), *cert. denied*, 143 S. Ct. 84 (2022) . . . . . . . . . . . . . . . 10, 21, 28

*Arizona v. California*,
  460 U.S. 605 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*,
  515 U.S. 687(1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Cargill v. Garland*,
  20 F.4th 1004 (5th Cir. 2021), *vacated and rehearing en banc granted*,
  37 F.4th 1091 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 21, 26, 27

*Entek GRB, LLC v. Stull Ranches, LLC*,
  840 F.3d 1239 (10th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Fish v. Schwab*,
  957 F.3d 1105 (10th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives* ["*Guedes I*"],
  920 F.3d 1 (D.C. Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22, 35

*Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives* ["*Guedes II*"],
  140 S. Ct. 789 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives* ["*Guedes III*"],
  45 F.4th 305 (D.C. Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21, 22

*Gundy v. United States*,
  139 S. Ct. 2116 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 30, 31

*Gun Owners of America, Inc. v. Garland* ["*Gun Owners I*"],
  992 F.3d 446 (6th Cir. 2021), *vacated*, 4 F.4th 576 (6th Cir. 2021) . . . . . . . . . . . . . . . . . . 3, 20

*Gun Owners of America, Inc. v. Garland* ["*Gun Owners II*"],
  19 F.4th 890 (6th Cir. 2021) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12, 21

Page(s)

*Homans v. City of Albuquerque*,
   366 F.3d 900 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
*Marbury v. Madison*,
   5 U.S. 137 (1804) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
*Mistretta v. United States*,
   488 U.S. 361 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31
*Sherley v. Sebelius*,
   680 F.3d 776 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34
*Skilling v. United States*,
   561 U.S. 358 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 26
*Staples v. United States*,
   511 U.S. 600 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*Stifel, Nicolaus & Co. v. Woolsey & Co.*,
   81 F.3d 1540 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
*United States v. Alkazahg*,
   81 M.J. 764 (U.S. Navy-Marine Corps Ct. Crim. App. 2021) . . . . . . . . . . . . . . . . . . . 12, 21
*United States v. Camp*,
   343 F.3d 743 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23
*United States v. Evans*,
   978 F.2d 1112 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
*United States v. Fleischli*,
   305 F.3d 643 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
*United States v. Jokel*,
   969 F.2d 132 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
*University of Texas v. Camenisch*,
   451 U.S. 390 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
*Wayman v. Southard*,
   23 U.S. (10 Wheat.) 1 (1825) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
*Wooden v. United States*,
   142 S. Ct. 1063 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28


**Statutes and Constitutional Provisions:**

U.S. Const., Art. I, § 1 (Vesting Clause) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 14, 29

U.S. Const., Art. I, § 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14

U.S. Const., Art. II, § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14

Bipartisan Safer Communities Act, Pub. L. 117-159 (enacted June 25, 2022) . . . . . . . . . . . . . . . 3

Page(s)

Gun Control Act of 1968, 18 U.S.C. § 921, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
      18 U.S.C. § 921(a)(23) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      18 U.S.C. § 922(o)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

National Firearms Act of 1934 (NFA),
    Pub. L. No. 73-474, 48 Stat. 1236 (June 26, 1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 31

5 U.S.C. § 706(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14, 35

26 U.S.C. § 5845(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

27 C.F.R. §§ 447.11, 478.11, and 479.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17, 18, 23


**Miscellaneous:**

ATF, *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018)
    ("Bump Stock Rule") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

ATF, Notice of Proposed Rulemaking, *Bump-Stock-Type Devices*, 83 Fed. Reg.
    13,442 (March 29, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1 W. Blackstone, *Commentaries on the Laws of England* 88 (1765) (Blackstone) . . . . . . . . . . 27

Brief for Appellees, *Aposhian v. Barr*, No. 19-4036 (10th Cir., filed Aug. 26, 2019)
    ("ATF 10th Cir. Br."). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22

2 M. Hale, *The History of the Pleas of the Crown* 335 (1736) . . . . . . . . . . . . . . . . . . . . . . . . 27

L. Hall, *Strict or Liberal Construction of Penal Statutes*,
    48 Harv. L. Rev. 748 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Philip Hamburger, *Nondelegation Blues*, Geo. Wash. L. Rev., Vol. 91
    (forthcoming 2023); available at SSRN:
    https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3990247 . . . . . . . . . . . . . . . . . . . . 30

Donald Trump, Memorandum for the Attorney General,
    83 Fed. Reg. 7,949 (Feb. 20, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## <u>MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Fed.R.Civ.P. 56, Plaintiff W. Clark Aposhian hereby moves for entry of summary judgment in his favor, on the ground that there is no genuine dispute as to any material fact, and he is entitled to judgment as a matter of law. This motion is based on the accompanying recitation of relevant facts, supporting authority, and argument; the attached Appendix of Evidence and Declaration of Plaintiff Clark Aposhian; and the Administrative Record submitted by Defendants on November 30, 2022.[1]

Plaintiff requests that the Court enter a declaratory judgment, declaring that the challenged rule adopted by Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives —ATF, *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018) (the "Final Rule")—is contrary to law and thus unenforceable.  Plaintiff further requests that the Court permanently enjoin Defendants from enforcing the Final Rule against Plaintiff and all persons similarly situated to Plaintiff residing within this District, and order Defendants to return to Plaintiff the bump stock they confiscated from him in March 2019.

The Final Rule seeks to ban possession of non-mechanical bump stocks by defining them as "machineguns" within the meaning of 26 U.S.C. § 5845(b).  Properly construed, that statute does not encompass non-mechanical bump stocks.  Accordingly, by issuing the Final Rule, Defendants are acting in excess of their statutory authority, and Plaintiff is entitled to relief under 5 U.S.C. § 706(2)(C) as well as several provisions of the U.S. Constitution, including Art. I, § 1, Art. I, § 7, and Art. II, § 3.

---

[1] This action seeks review of an agency action, and is governed by Local Civil Rule 7.4.  On November 2, 2022, the Court issued an order establishing a briefing schedule and directing the parties to file cross motions for summary judgment.

## INTRODUCTION

"Bump stocks" are devices that can be affixed to semi-automatic rifles to assist with more rapid firing, particularly among users with limited hand mobility.  Between 2008 and 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) repeatedly issued classification decisions indicating that non-mechanical bump stocks are not "machinegun[s]" as defined by federal law and thus are not subject to the federal ban on sale and possession of machineguns.  *See* ATF, *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514, 66,514 (Dec. 26, 2018) ("Bump Stock Rule" or "Final Rule"), Administrative Record ("AR") 5764-5804.  The device purchased by Plaintiff W. Clark Aposhian, known as a "Slide Fire SSAK-47 XRS," was among several varieties of non-mechanical bump stocks commercially marketed throughout that period.

A 2017 mass shooting in Las Vegas (involving a shooter using semi-automatic rifles equipped with bump stocks) led senior Executive Branch officials to order ATF to reverse those classification decisions.  ATF complied on December 26, 2018 by issuing the Bump Stock Rule, which declared that non-mechanical bump stocks are, in fact, "machinegun[s]" within the meaning of 26 U.S.C. § 5845(b)[2] and ordered Americans possessing those devices to destroy them or abandon them at an ATF office by March 26, 2019.  *Ibid*.

A federal agency is, of course, entitled (as here) to change its position regarding the meaning of a federal statute and declare that previous Administrations had construed the statute erroneously.  But it is ultimately the duty of federal courts "to say what the law is."  *Marbury v. Madison*, 5 U.S. 137, 177 (1804).  Otherwise, if the Executive Branch is permitted to re-interpret statutes at will, it

---

[2] ATF re-classified all varieties of non-mechanical bump stocks then available for sale as machineguns, reasoning that they all "utilize essentially the same functional design."  *Id.* at 66,516.

in effect supplants Congress as the drafter of our criminal laws.  And the best reading of § 5845(b) is the one espoused by ATF before December 2018: a non-mechanical bump stock is *not* a "machinegun."

This case is not about gun control.  It is instead about who has the constitutional prerogative to change the criminal law if changes are warranted.  The current statute, adopted in 1986, defines "machinegun" in a manner that does not encompass non-mechanical bump stocks.  It is unlawful for a prosecutorial entity like ATF to rewrite existing law without authorization from Congress.  Any change in gun-control laws must emanate from Congress.  Indeed, Congress adopted and President Biden signed major new gun-control legislation in 2022,[3] but the new statute makes no changes in the definition of "machinegun" and does not ban bump stocks.  The Court should enjoin ATF's efforts to enact new legislation on its own and declare the Final Rule invalid.

Nor is this a case in which ATF's statutory construction is entitled to deference from the courts.  ATF has expressly waived any deference claim for the Bump Stock Rule.  Moreover, to the extent that this Court determines that the statutory language is ambiguous regarding whether § 5845(b) applies to non-mechanical bump stocks, the rule of lenity requires that the statute be construed *against* the Government.

### STATEMENT OF THE CASE

In an effort to prevent criminal use of machineguns and other high-powered firearms, Congress passed the National Firearms Act of 1934 (NFA), Pub. L. No. 73-474, 48 Stat. 1236 (June 26, 1934).  The NFA imposed a very steep tax on the purchase of a machinegun.  That tax provision was effectively a criminal statute; Congress concluded that many gangsters would obtain

---

[3] Bipartisan Safer Communities Act, Pub. L. 117-159 (enacted June 25, 2022).

machineguns without paying the tax and then could be prosecuted for tax evasion. *Gun Owners of America, Inc. v. Garland*, 992 F.3d 442, 450 (6th Cir. 2021) ["*Gun Owners I*"], *vacated*, 4 F.4th 576 (6th Cir. 2021).

A federal criminal statute adopted in 1986 banned civilian ownership of any "machinegun" manufactured after 1986. 18 U.S.C. § 922(o)(1). The statutory definition of a "machinegun," which has remained constant since 1986, states:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any combination of parts designed and intended for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). That definition is incorporated into the criminal code by 18 U.S.C. § 921(a)(23).

**"Bump" Firing and Semi-Automatic Weapons.** A gun qualifies as a "semi-automatic" weapon if it will fire only once when the shooter pulls and holds down the trigger; a semi-automatic will fire more than once only if the shooter releases and reengages the trigger between shots. Final Rule, 83 Fed. Reg. at 66,516. But experts can "bump fire" semi-automatic rifles at rates approaching those of automatic weapons. Bump firing is a "technique that any shooter can perform with training or with everyday items such as a rubber band or belt loop." *Id.* at 66,532.[4]

---

[4] Bump firing has been explained as follows:

A shooter who bump fires relies on the recoil energy from the rifle's discharge to push the gun slightly backward from the trigger finger, which remains stationary. The rifle's trigger resets as it separates from the trigger finger. The shooter then uses the non-trigger hand placed on the rifle's fore-end to push the gun (and thus the trigger) slightly forward. The trigger "bumps" into the still-stationary trigger finger,

Attaching a bump stock to a semi-automatic rifle facilitates the bump firing of the rifle and is particularly useful for individuals who, for whatever reason, have not mastered bump firing without a bump stock. A bump stock replaces a semi-automatic rifle's standard stock with a plastic casing that allows the rifle's receiver to slide back and forth within the casing. *Id.* at 66,516, 66,518. A bump stock also includes an extension ledge on which the shooter places his or her trigger finger to keep it stationary while shooting. *Id.* at 66,516. Recoil energy from the rifle's discharge separates the stationary trigger finger from the trigger, allowing the trigger to reset. By applying "forward pressure with the non-trigger hand" on the fore-end of the rifle while "maintaining the trigger finger on the device's ledge *with constant rearward pressure*" (emphasis added), the shooter forces the rifle (and trigger) forward following recoil, thereby "bumping" the trigger into the trigger finger and initiating a second discharge. *Id.* at 66,518. The key to successful bump firing is applying forward pressure with the non-trigger hand while keeping the trigger finger stationary despite the rifle's recoil. A shooter can master that ability through practice or can use a bump stock to assist in the effort.

**ATF Regulation of Bump Stocks.** William Akins obtained a patent in 2000 for the first bump stock, which he named the "Akins Accelerator." In response to a letter from Akins, ATF issued a classification letter in 2002, determining that the Accelerator was not a "machinegun"

---

discharging a second shot. The recoil energy from each additional shot combined with the shooter's forward pressure with the non-trigger hand allows the rifle's backward-forward cycle to repeat itself rapidly. A shooter may also use a belt loop to bump fire by sticking the trigger finger inside the loop and shooting from the waist level to keep the rifle more stable.

*Gun Owners of America, Inc. v. Garland*, 19 F.4th 890, 911 (6th Cir. 2021) (*en banc*) ["*Gun Owners II*"] (Murphy, J., dissenting from affirmance of judgment by equally-divided vote) (citing *id*. at 66,533).

because an Accelerator-equipped semi-automatic rifle "did not fire more than one shot by a single function of the trigger." *Akins v. United States*, 312 Fed. Appx. 197, 198 (11th Cir. 2009).  After conducting further testing, ATF in 2006 overruled its prior determination and concluded that the Accelerator was, indeed, a "machinegun."  Both ATF and the Eleventh Circuit noted that the device contains a mechanical part—an internal spring—that thrusts the rifle forward following recoil, thereby causing the weapon "to fire continuously ... until the gunman releases the trigger or the ammunition is exhausted."  *Id.* at 200.  Based on that analysis, the Eleventh Circuit in 2009 affirmed ATF's determination that the Accelerator met the statutory definition of a "machinegun" because a single act of the shooter—pulling the trigger—causes the weapon to fire "automatically" more than one shot.  *Ibid.*

Upon its reclassification of the Akins Accelerator as a machinegun, ATF announced that "removal of the internal spring would render the device a non-machinegun under the statutory definition" because without the spring the weapon would not "automatically" move forward following recoil.  Final Rule, 83 Fed. Reg. at 66,517.  In ten separate letter rulings issued between 2008 and 2017 (during three separate Administrations), ATF concluded that non-mechanical bump stocks (*i.e.*, bump stocks that lack mechanical parts, such as a spring) were not machineguns because "they did not 'automatically' shoot more than one shot with a single pull of the trigger."  *Ibid.*

Following the 2017 Las Vegas mass shooting, a number of government officials appealed to ATF to reconsider those letter rulings.  *Id.* at 66,516.  In particular, President Trump issued a memorandum concerning bump stocks that directed the Department of Justice "to dedicate all available resources ... to propose ... a rule banning all devices that turn legal weapons into machineguns." AR0790-0791, 83 Fed. Reg. 7,949 (Feb. 20, 2018).

The next month, ATF formally proposed issuing a regulation to "clarify" that non-mechanical bump stocks are machineguns within the meaning of 26 U.S.C. § 5845(b). AR1297-1312, 83 Fed. Reg. 13,442 (March 29, 2018). The Final Rule, issued on December 26, 2018, amended regulations at 27 C.F.R. §§ 447.11, 478.11, and 479.11 to change ATF's interpretation of the statutory definition of a machinegun. The statute states that a weapon is a "machinegun" if it "automatically" fires more than one shot "by a single function of the trigger." 26 U.S.C. § 5845(b); 83 Fed. Reg. at 66,553-54. The Final Rule amended the pertinent regulations to construe "single function of the trigger" as meaning "a single pull of the trigger and analogous motions" and to construe "automatically" (as it modifies "shoots, is designed to shoot, or can be readily restored to shoot") as meaning "functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger[.]" *See* 27 C.F.R. § 447.11. Reversing ATF's 2008-2017 letter rulings, the new regulations explicitly state that § 5845(b)'s definition of "machinegun" includes non-mechanical bump stocks of the sort that ATF previously declared were not machineguns. *Ibid.* The regulations assert that such devices "allow[] a semi-automatic firearm to shoot more than one shot with a single pull of the trigger," *ibid.*, notwithstanding that the trigger resets for each shot and that no second shot will fire unless the shooter takes steps beyond the initial pull of the trigger.

The Final Rule required those possessing bump stocks "to destroy them or abandon them at an ATF office" by March 26, 2019. 83 Fed. Reg. at 66,514. When the Final Rule was adopted, Plaintiff Aposhian lawfully owned a bump stock manufactured by Slide Fire. Aposhian Declaration ¶ 3. He is a law-abiding Utah resident and has no disqualifications that would prevent him from lawfully owning or operating a firearm and related accessories. *Id.* ¶ 5. In response to the Final

Rule, Aposhian surrendered his Slide Fire device to ATF, but ATF has agreed to preserve it pending the outcome of this lawsuit. *Id.* ¶ 7.

**Prior Proceedings.**  On January 16, 2019, before the Final Rule was scheduled to take effect, Aposhian filed his claim seeking an injunction against enforcement of the Final Rule. ECF-1.  The complaint alleges, *inter alia*, that the Final Rule's determination that non-mechanical bump stocks are "machineguns" violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(C), because it conflicts with the statutory definition of that term and thus exceeds ATF's statutory authority.

On March 15, 2019, this Court denied Aposhian's motion for a preliminary injunction, ruling that he had not demonstrated a likelihood of success on the merits.  ECF-31.  The Court concluded that ATF's constructions of two key statutory terms—"single function of the trigger" and "automatically"—were "the best interpretation[s]" of those terms.  *Aposhian v. Barr*, 374 F. Supp. 3d 1145, 1151-52 (D. Utah 2019).  The Court held, "Having found that each component of the Final Rule represents the best interpretation of the statute, the court cannot find that Mr. Aposhian is likely to succeed on the merits of his challenge to the Final Rule.  Absent such a showing, an injunction may not issue." *Id.* at 1153.

On appeal, the Tenth Circuit panel disagreed with this Court's "best interpretation" finding but nonetheless affirmed (by a 2-1 vote) denial of the preliminary injunction.  *Aposhian v. Barr*, 958 F.3d 969 (10th Cir. 2020) ["*Aposhian I*"].  The majority held that the statutory definition of "machinegun," 26 U.S.C. § 5845(b), does not have a single "best interpretation."   Rather, it concluded, the definition is "ambiguous with respect to the phrase 'single function of the trigger[,]'" and "[s]imilarly, the statutory term 'automatically' is ambiguous when applied to bump stocks." *Id.* at 986.

The panel stated that ATF's interpretation of the ambiguous statute was "reasonable" and "a permissible reading of the statute" and thus was entitled to deference from the courts.  *Id.* at 988-89 (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). While recognizing that ATF explicitly waived *Chevron* and argued that its interpretation of the statute was *not* entitled to deference, the majority held that the Court's invocation of *Chevron* deference was nonetheless justified because Aposhian "invited" the Court "to apply the *Chevron* framework" by repeatedly raising arguments against *Chevron*'s applicability. *Id*. at 982 (stating that "[b]ecause Mr. Aposhian has invoked *Chevron* throughout the course of this litigation, his objection to *Chevron* deference based on the *government*'s waiver is unlikely to succeed") (emphasis in original).

In affirming this Court's decision, the panel majority held that Aposhian had satisfied none of the four prerequisites for a preliminary injunction.  It held that Aposhian failed to demonstrate irreparable harm if the injunction were denied—despite recognizing that ATF expressly conceded in the district court that denial would cause him irreparable harm.  *Id.* at 989-990.  It held further that he "failed to demonstrate that the threatened injury to him outweighs the harm that the preliminary injunction may cause to the government or that the preliminary injunction will not adversely affect the public interest."  *Id.* at 991.

Judge Carson dissented.  *Id.* at 991-1001.  He stated that a semi-automatic firearm equipped with a bump stock satisfies neither of the conditions a firearm must satisfy to qualify as a machinegun: "(1) the *trigger itself* must 'function' only once to fire more than one shot, and (2) the *mechanism that allows the trigger* to 'function' only once must be 'self-acting or self-regulating.'" *Id.* at 992 (emphasis in original).  He termed the majority's decision to apply *Chevron* deference

"misguided," both because "ATF disavowed that doctrine in its briefing," and because the statutory definition of machinegun "carries criminal consequences." *Id.* at 993.

The Tenth Circuit later granted Aposhian's petition for rehearing *en banc* and vacated the panel decision. *Aposhian v. Barr*, 973 F.3d 1151 (10th Cir. 2020) ("*Aposhian II*"). But six months later, after full briefing and oral argument, the appeals court voted 6-5 to vacate the order granting rehearing en banc as improvidently granted and to reinstate the panel opinion. *Aposhian v. Wilkinson*, 989 F.3d 890 (10th Cir. 2021) ["*Aposhian III*"]. Four of the five dissenting judges filed opinions dissenting from the decision to vacate, and all five (Chief Judge Tymkovich and Judges Hartz, Holmes, Eid, and Carson) joined each of the four opinions. *Id.* at 891-908.

Aposhian then sought review in the U.S. Supreme Court. After rescheduling its consideration of Aposhian's certiorari petition on 21 separate occasions, the Court denied the petition in October 2022. *Aposhian v. Garland*, 143 S. Ct. 84 (2022).

Pursuant to Local Rule 7-4(b)(2), Defendants filed their initial response to the Complaint on November 30, 2022 and simultaneously filed their Administrative Record (AR). Aposhian has not sought to supplement the record, but he is submitting a declaration that sets forth facts establishing his standing to sue.

### STATEMENT OF UNDISPUTED FACTS

There are no disputed facts. Defendants' Final Rule declared that bump stocks are "machine-guns" within the meaning of 26 U.S.C. § 5845(b). The Final Rule required those possessing bump stocks to destroy them or abandon them at an ATF office by March 26, 2019. In response to the Final Rule, Aposhian surrendered his lawfully owned bump stock to ATF. ATF has agreed to preserve it pending the outcome of this lawsuit. Aposhian Declaration ¶¶ 3, 7.

10

## SUMMARY OF ARGUMENT

The Administrative Record, which was unavailable when the Court ruled on the preliminary injunction motion, demonstrates conclusively that a semi-automatic rifle equipped with a non-mechanical bump stock is not a weapon that "shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot ... by a single function of the trigger." 26 U.S.C. § 5845(b). It is uncontested that if the shooter of a bump-stock-equipped weapon pulls the trigger once and does nothing more, it will fire only one bullet. Something more than a "single function of the trigger" is thus required to effectuate repeat firing—and that "something more" is a shooter using his non-trigger hand to push forward on the rifle's fore-end, while simultaneously applying rearward pressure with the trigger hand. And if the initiation of a "single function of the trigger" does not suffice *by itself* to cause repeat firing, then that single function cannot plausibly be described as causing the weapon to fire "automatically." Because a single function of the trigger does not suffice to initiate automatic firing of semi-automatic rifles equipped with non-mechanical bump stocks, they do not meet the statutory definition of machineguns.

The need to apply rearward pressure (while simultaneously pushing forward with the non-trigger hand) explains why it is impossible to bump fire a semi-automatic rifle equipped with a non-mechanical bump stock using only one hand. That feature distinguishes bump-stock-equipped semi-automatic rifles from fully automatic weapons (*i.e.*, machineguns), which require nothing more than a finger pulling and holding the trigger to fire continuously.

Moreover, it is impossible to square the Final Rule's conclusion that non-mechanical bump stocks are machineguns with the uncontested evidence that every shot fired by a bump-stock-equipped semi-automatic rifle requires a separate "function" of the trigger. Such weapons are

11

incapable of firing a second time unless the trigger finger separates from the trigger and allows the trigger to reset by moving forward.  There is nothing "automatic" about that separation; it occurs only because the bump shooter holds his finger in place (whether on his own or with the assistance of a belt loop or an extension ledge) while the trigger (in conjunction with the rifle's frame) recoils.

ATF's construction of § 5485(b) has been met with considerable skepticism by the federal appeals courts.  Two appeals courts have issued final opinions on ATF's Bump Stock Rule; one (the D.C. Circuit) has upheld the rule, while the other (the U.S. Navy-Marine Corps Court of Criminal Appeals) has struck down the rule as inconsistent with the statutory definition of "machinegun."  *See Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 45 F.4th 305 (D.C. Cir. 2022) ["*Guedes III*"]; *United States v. Alkazahg*, 81 M.J. 764 (U.S. Navy-Marine Corps Ct. Crim. App. 2021).  There is reason to surmise that the Fifth Circuit may soon join the Navy-Marine Corps court in striking down the Final Rule.[5]  Moreover, a majority of appellate judges who have addressed the issue has rejected ATF's argument that its construction of 26 U.S.C. § 5485(b) represents the "best reading" of the statute.

---

[5]  A Fifth Circuit panel initially upheld the Final Rule, but the Fifth Circuit later vacated the panel decision, granted rehearing *en banc*, and held oral argument in September 2022—actions suggesting that some Fifth Circuit judges are prepared to strike down the rule.  *Cargill v. Garland*, 20 F.4th 1004 (5th Cir. 2021), *vacated and rehearing en banc granted*, 37 F.4th 1091 (5th Cir. 2022).

Two other circuits (the Tenth and Sixth) have addressed the Final Rule only at the preliminary injunction stage.  As noted above, a closely divided Tenth Circuit affirmed the denial of a preliminary injunction against the Final Rule and opined that the plaintiff failed to demonstrate any of the four prerequisites for a preliminary injunction, including a likelihood of ultimate success on his challenge.  *Aposhian I.*  The *en banc* Sixth Circuit was equally divided on the issue and thus unable to issue a majority opinion.  *Gun Owners II*, 19 F.4th 890.

Section 5845(b) defines a "machinegun" in a manner that unambiguously excludes non-mechanical bump stocks. But even if one concludes that the statute is somewhat ambiguous, the result should be the same—the rule of lenity requires that any ambiguity should be resolved in Aposhian's favor. The rule of lenity is a centuries-old canon of statutory construction holding that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Skilling v. United States*, 561 U.S. 358, 410 (2010). Section 5845(b) is properly classified as a criminal statute; virtually all of its applications (including its potential application to Aposhian) are criminal in nature. Under the rule of lenity, any ambiguity regarding whether non-mechanical bump stocks are machineguns should be resolved by concluding they are not.

The nondelegation doctrine also counsels adopting a narrowed definition of machineguns. ATF's decision to classify non-mechanical bump stocks as machineguns can only be justified by interpreting 26 U.S.C. § 5845(b) as authorizing the agency to so classify *any* weapon that ATF determines to be too dangerous. But if so broadly construed, the statute would constitute an unconstitutional delegation of legislative power; it would not provide ATF with an "intelligible principle" to guide ATF in executing the statute. *See Gundy v. United States*, 139 U.S. 2116, 2123 (2019) (plurality). To avoid that constitutional problem, the Court should interpret the words of § 5845(b) in accord with their ordinary meaning—an approach that plainly prevents non-mechanical bump stocks from being classified as machineguns. If, on the other hand, the Court construes § 5845(b) as permitting ATF to establish its own "too dangerous" criteria and to decide for itself whether bump stocks satisfy those criteria, then the statute violates Article I, § 1's Vesting Clause, and its enforcement should be enjoined.

In addressing summary judgment, the Court is writing on a clean slate. Although this Court and the Tenth Circuit ruled that Aposhian was not entitled to a preliminary injunction, those rulings on a preliminary matter do not bind the Court going forward. That is, the law-of-the-case doctrine is inapplicable. The Tenth Circuit found that Aposhian failed in 2019-20 to demonstrate that he was likely to succeed on the merits of his claims, but that finding did not determine whether his claims were, in fact, meritorious.

Moreover, the Tenth Circuit's affirmance of denial of a preliminary injunction can equally well be attributed to its findings on the other three preliminary injunction requirements: Aposhian failed to demonstrate that he would suffer irreparable harm, that the threatened injury outweighed harm to the government, and that a preliminary injunction would not adversely affect the public interest. Those other three findings have no role to play in the ultimate resolution of this case.

As outlined in the Complaint, Plaintiff is entitled to judgment under the APA, 5 U.S.C. § 706(2)(C), because ATF's issuance of the Final Rule is in excess of its statutory authority. By acting without statutory authority, ATF is also violating multiple provisions of the U.S. Constitution, including Art. I, § 1; Art. I, § 7; and Art. II, § 3.

## ARGUMENT

## I. A NON-MECHANICAL BUMP STOCK IS NOT PROPERLY CLASSIFIED AS A "MACHINEGUN" UNDER 26 U.S.C. § 5845(b)

For many years before 2018, ATF held that non-mechanical bump stocks were not "machineguns" within the meaning of 26 U.S.C. § 5845(b). After carefully examining how such devices worked, ATF issued a series of ten separate letter rulings from 2008 to 2017, each concluding that non-mechanical bump stocks (*i.e.*, bump stocks with no mechanical parts) should

14

not be classified as "machineguns" because a semi-automatic weapon equipped with a non-mechanical bump-stock cannot "automatically" shoot more than one shot "by a single function of the trigger."  Final Rule, 83 Fed. Reg. at 66,514.

ATF reversed that position in December 2018 after being ordered to do so by senior Executive Branch officials and without undertaking any new field examination of how bump-stock-equipped semi-automatic weapons operate.  The Final Rule held that federal law has unambiguously prohibited possession of bump stocks since 1986—notwithstanding that until December 2018, ATF was telling Americans that possession of bump stocks was perfectly legal.  ATF announced that Aposhian and others would not be prosecuted if they destroyed or surrendered their bump stocks by March 26, 2019.  *Ibid*.  But ATF asserts that its new interpretation is simply a belated recognition of the proper scope of the machinegun statute.  In other words, ATF considers Aposhian to be a criminal, and its decision thus far not to prosecute him (and the hundreds of thousands of others who purchased bump stocks during the years when ATF said they were legal) is solely a matter of prosecutorial discretion.

ATF's 2008-17 explanation regarding why bump stocks are not machineguns is far more persuasive than the contrived explanation it now provides for its sudden reversal of course.  A brief discussion of the history of ATF's classification of bump stocks is helpful in understanding ATF's pre-2018 interpretation.

### A. Unlike the "Akins Accelerator," Non-Mechanical Bump Stocks Contain No Mechanical Parts

As noted *supra* at 6, the Eleventh Circuit agreed with ATF that the Akins Accelerator met the statutory definition of a "machinegun."  *Akins*, 312 Fed. Appx. at 200.  Both ATF and the

Eleventh Circuit determined that the Accelerator's internal spring automatically thrusts the rifle forward following recoil and thus can "automatically" produce multiple shots by a single function of the trigger. *Ibid.*

ATF's later determination that non-mechanical bump stocks were *not* machineguns followed logically from its analysis of the Akins Accelerator. The presence of a spring in the Akins Accelerator meant that all the shooter had to do was pull the trigger to produce continuous firing. There was no need for the shooter to take the additional step of pushing the rifle's fore-end forward with his non-shooting hand following recoil because the spring performed that task for him. While it was true that the rifle's trigger continued to reset after each shot, the continued firing could legitimately be deemed the "automatic" result of one pull of the trigger because it required no additional effort by the shooter beyond pulling the trigger.

ATF's 2008-2017 letter rulings recognized that the firing sequence is considerably different when a shooter uses a non-mechanical bump stock. A bump stock lacking a spring or other mechanical parts cannot replicate the Akins Accelerator's automatic-firing sequence. A non-mechanical bump stock is nothing more than several pieces of plastic and rubber. ATF acknowledges that if one pulls the trigger of a bump-stock-equipped semi-automatic rifle and does nothing more, the weapon will fire only once. Final Rule, 83 Fed. Reg. at 66,518. ATF further acknowledges that while a shooter needs only one hand to fire an Akins Accelerator-equipped weapon continuously, AR0075-0083, it requires two hands to bump fire a semi-automatic rifle equipped with a non-mechanical bump stock: one hand (the non-trigger hand) to push forward on the rifle's fore-end while simultaneously applying constant rearward pressure on the bump stock's extension ledge with the other hand. 83 Fed. Reg. at 66,518.

16

**B.     The Final Rule Misconstrues the Requirements of Section 5845(b) by Overlooking the Considerable Human Input Required to Fire More than One Shot from a Bump-Stock-Equipped Semi-Automatic Rifle**

The Final Rule reversed ATF's longstanding position and held that non-mechanical bump stocks are, in fact, "machineguns" as defined by federal law.  ATF's reversal was not based on any new insight regarding the manner in which bump stocks operate.  Rather, the agency simply adopted a new reading of 26 U.S.C. § 5845(b) and declared that its old reading was "erroneous."

The Final Rule is the subject of at least four on-going federal-court challenges.  ATF's defense of the Final Rule has been largely an exercise in misdirection.  ATF has repeatedly asserted that it has adopted the "best reading" of § 5845(b) because it has interpreted two of the statute's key terms—"automatically" and "single function of the trigger"[6]—in a manner that accords with their ordinary meaning.  *See, e.g.*, ECF-25 at 11-15 (stating that the Final Rule's determination that a bump stock is a machinegun "logically" flows from the Rule's interpretation of the statutory terms "in a manner consistent with their ordinary, accepted meaning.").

But the fatal flaw in the Final Rule is not the words it uses to paraphrase "automatically" and "single function of the trigger," statutory constructions that Aposhian finds unobjectionable.  Rather, ATF went astray by applying its new verbal formulations (particularly the phrase "self-acting or self-regulating mechanism") in a manner wholly inconsistent with the common understanding of those words.  ATF's new regulations state explicitly that non-mechanical bump stocks are machineguns,

---

[6] *See* 27 C.F.R. § 447.11 ("For purposes of this definition, the term 'automatically' as it modifies 'shoots, is designed to shoot, or can be readily restored to shoot,' means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and 'single function of the trigger' means a single pull of the trigger and analogous motions.").

but they do so by employing a rationale wholly divorced from the statutory definition of a machinegun:

> The term "machinegun" includes a bump-stock-type device, *i.e.*, a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.

27 C.F.R. §§ 447.11, 478.11 & 479.11.

The final clause of the regulations is a complete *non sequitur*. The definition of "machinegun" says nothing about whether a weapon continues firing "without additional physical manipulation of the trigger by the shooter." Rather, a weapon is defined as a "machinegun" if but only if "a single function of the trigger" can cause the weapon to shoot "automatically." 26 U.S.C. § 5845(b). The plain meaning of that sentence is that a weapon is not a "machinegun" if something more is required of the shooter than a single function/pull of the trigger to produce more than one shot. That "something more" is the forward pressure the shooter must apply to the fore-end with his non-trigger hand *and* the rearward pressure he must maintain on the extension ledge. Whether a weapon can continue to fire "without additional physical manipulation of the trigger by the shooter"—the Final Rule's justification for declaring that a non-mechanical bump stock is a machinegun—is simply irrelevant to the statutory analysis.[7]

Judge Karen LeCraft Henderson of the D.C. Circuit has cogently explained why the Final Rule is a misinterpretation of § 5845(b):

---

[7] Besides which, ATF's factual premise is incorrect: there *is* "additional physical manipulation of the trigger." Each additional shot requires that the trigger move backward as a result of its contact with the trigger finger, and the distance it moves must precisely equal the distance it moved on the first shot.

"Automatically" cannot be read in isolation.  On the contrary, it is modified—that is, limited—by the clause "by a single function of the trigger." ... "Automatically ... by a single function of the trigger" is the sum total of the *action necessary* to constitute a firearm a "machinegun."  26 U.S.C. § 5845(b).  A "machinegun," then, is a firearm that shoots more than one round by a single trigger pull without manual reloading. The statutory definition of "machinegun" does not include a firearm that shoots more than one round "automatically" by a single pull of the trigger **AND THEN SOME** (that is, by "constant forward pressure with the non-trigger hand").  [Final Rule], 83 Fed. Reg. at 66,532.  By including more action than a single trigger pull, the Rule invalidly expands section 5845(b).

*Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosive*, 920 F.3d 1, 43-44 (D.C. Cir. 2020) ("*Guedes I*") (Henderson, J., concurring in part and dissenting in part) (emphasis in original).[8]

ATF disagrees with Judge Henderson's analysis, asserting, "A rifle equipped with a bump stock plainly fits within the ordinary meaning of 'automatically.' The bump stock ... ensur[es] that the rifle moves in a 'constrained linear rearward and forward path[]' to enable continuous fire." Brief for Appellees at 28-29, *Aposhian v. Barr*, No. 19-4036 (10th Cir., filed Aug. 26, 2019) ("ATF 10th Cir. Br.") (quoting 83 Fed. Reg. at 66,532).  That response misses Judge Henderson's point. The "rearward and forward" movement of the weapon cannot be said to have been caused "automatically ... by a single function of the trigger" unless there are no additional forces, extraneous to the "single function of the trigger," that are necessary to create that movement.  And it is undisputed that the weapon's frame will not move forward following recoil unless the shooter pushes forward on the fore-end *and* applies rearward pressure on the extension ledge.

As Judge Henderson stated, her reading of the statute "comports with the common sense meaning of the language used."  *Id.* at 44.  She explained:

_____

[8] Judge Henderson was right, although she could have added that rearward pressure on the extension ledge is an additional "AND THEN SOME" input.

19

> Suppose an advertisement declares that a device performs a task "automatically by a push of a button."  I would understand the phrase to mean pushing the button activates whatever function the device performs.  It would come as a surprise, I submit, if the device does not operate until the button is pushed *and* some other action is taken—a pedal pressed, a dial turned and so on.

*Ibid*.  So too, when § 5845(b) states that a weapon is a machinegun if it fires multiple rounds "automatically" based on "a single function of the trigger," that provision is properly read as excluding weapons that will fire multiple rounds only if the shooter undertakes a task *in addition to* effecting a single function of the trigger.

ATF attaches significance to the fact that some automatic weapons long classified as "machineguns" will not continue firing unless the shooter not only pulls the trigger but continues to hold it down.  It argues that if an automatic weapon is a machinegun even though the shooter must take an action following pulling the trigger (that is, he must also hold it down), then a bump-stock-equipped semi-automatic weapon can also be classified as a machinegun even though the shooter seeking to fire a second shot must push forward with his non-trigger hand (and pull rearward with his trigger hand) after pulling the trigger.  ATF 10th Cir. Br. at 29-30.  That argument-by-analogy is unpersuasive.  The Supreme Court has equated "single pull of the trigger" with both pulling the trigger *and* holding it down.  For example, in *Staples v. United States*, 511 U.S. 600, 602 n.1 (1994) (emphasis added), the Court said:

> As used here, the terms "automatic" and "fully automatic" refer to a weapon that fires repeatedly with a single pull of the trigger.  That is, once its trigger is depressed, the weapon will automatically continue to fire *until its trigger is released* or the ammunition is exhausted.

Moreover, as Sixth Circuit Judge Murphy has concluded, "a typical machine gun qualifies [under § 5845(b)] even though the shooter pulls the trigger *and* keeps it pressed down because that

20

combined external influence still does no more than result in one action of the trigger." *Gun Owners II*, 19 F.4th at 915 (Murphy, J., dissenting). In contrast, ATF has pointed to no instances in which courts have interpreted the phrase "single pull of the trigger" (or "single function of the trigger") as incorporating other actions (such as pushing forward with the non-trigger hand) not directly related to the trigger pull.

ATF's assertion that the Final Rule constitutes the "best reading" of § 5845(b) has been rejected by a majority of federal appellate judges (17 of 27) who have addressed the issue. Twelve judges have agreed with ATF's construction. *See Gun Owners II*, 19 F.4th at 908-09 (White, J., opinion in support of affirmance, joined by five other judges); [9] *Guedes III*, 45 F.4th 306 (three-judge panel); *Cargill v. Garland*, 20 F.4th 1004 (5th Cir. 2021) (three-judge panel), *vacated and rehearing en banc granted*, 37 F.4th 1091 (2022). But 17 appellate judges have endorsed ATF's pre-2018 construction of § 5845(b) and have concluded that ATF's current construction is wrong. *See Gun Owners II*, 19 F.4th at 912-15 (Murphy, J., joined by seven other judges, dissenting); *Guedes I*, 920 F.3d at 35-48 (Henderson, J., dissenting); *Alkazahg*, 81 M.J. at 779-84 (three-judge panel of Navy-Marine Corps Court of Criminal Appeals finds unanimously that the statutory definition of "machinegun" does not include non-mechanical bump stocks); *Aposhian III*, 989 F.3d at 891-903 (Tymkovich, C.J., joined by four other judges, dissenting from decision to vacate the grant of rehearing *en banc* as improvidently granted). Three additional appellate judges disagree with ATF

---

[9] A Sixth Circuit panel enjoined enforcement of the Bump Stock Rule, holding that "a bump stock does not fall within the statutory definition of a machine gun." *Gun Owners I*, 992 F.3d at 469. The court later vacated the panel decision and granted rehearing *en banc*. The *en banc* court split 8-8 and thus could not render a majority opinion; the result was affirmance of the district court's order denying a preliminary injunction. *Gun Owners II*, 19 F.4th at 896. Judge White's concurring opinion endorsing ATF's reading of the statute was joined by five other judges.

that the Final Rule constitutes the "best reading" of § 5845(b); they have concluded that the statute is ambiguous with respect to non-mechanical bump stocks and, applying *Chevron* deference, affirmed denial of a preliminary injunction after concluding that ATF was likely to prevail on its claims that the Final Rule is a "reasonable" interpretation of the statute. *Guedes I*, 920 F.3d at 169 (*per curiam* D.C. Circuit decision joined by Judge Millett, who did not participate in *Guedes III* ); *Aposhian I*, 958 F.3d at 984-88 (Tenth Circuit decision by Judge Briscoe, joined by Judge Moritz).

### C.   Case Law Broadly Defining the Word "Trigger" Is Irrelevant in Determining Whether a Weapon "Automatically" Fires More Than One Shot with a "Single Function of the Trigger"

Throughout these proceedings, counsel for ATF have repeatedly cited case law indicating that the word "trigger" should be broadly construed to include any process or device that triggers a weapon's firing sequence. *See, e.g.,* ATF 10th Cir. Brief at 26-27 (citing *United States v. Camp*, 343 F.3d 743 (5th Cir. 2003), for the proposition that an electric switch can constitute a "trigger"). But counsel have failed to explain how that case law advances ATF's argument that a "single function of the trigger" of a bump-stock-equipped semi-automatic weapon can "automatically" produce multiple shots.

*Camp* is irrelevant. That case involved a criminal defendant who added an electric switch to his rifle; flipping the switch activated a motor that in turn caused the traditional lever trigger on his weapon to automatically move forward and backward repeatedly—thereby causing the weapon to fire repeatedly. The Fifth Circuit had no difficulty rejecting the defendant's argument that his weapon was not a machinegun simply because multiple shots were accompanied by multiple movements of the traditional lever trigger. 343 F.3d at 745. The Court broadly construed § 5845(b)'s use of the word "trigger"; it held that the weapon's actual trigger was the defendant's

22

switch and that his weapon was a "machinegun" because flipping the switch initiated an automatic firing sequence.  *Ibid.*[10]  *Camp* does not suggest that a weapon "automatically" fires more than one shot "by a single function of the trigger" when (as here) firing a second shot requires additional human intervention.

In connection with its 2006 Akins Accelerator ruling, ATF interpreted the statutory phrase "single function of the trigger" to mean "single pull of the trigger."  As the Final Rule recognized, that interpretation arguably narrowed the scope of the statute, because the word "function" could be interpreted more broadly than the word "pull."  Final Rule, 83 Fed. Reg. at 66,534.  In the Final Rule, ATF changed its interpretation of the phrase; it now interprets "single function of the trigger" to mean "single pull of the trigger *and analogous motions.*"  27 C.F.R. §§ 447.11, 478.11, & 479.11 (emphasis added).  ATF adopted the change to emphasize its view that the words "function" and "trigger" should be interpreted broadly enough to encompass unorthodox firing mechanisms.  ATF acknowledged that the former interpretation (which ATF espoused between 2006 and 2018) might "lead to confusion" by suggesting that "*only* a single *pull* of the trigger will qualify as a single function."  Final Rule, 83 Fed. Reg. at 66,534.  ATF adopted its new language to clarify that "a push or other method of initiating the firing cycle must also be considered a 'single function of the trigger.' ... The term 'single function' is reasonably interpreted to also include other analogous methods of trigger activation."  *Id.* at 66,534-35.

---

[10] To support its broad reading of "trigger," *Camp* cited *United States v. Jokel*, 969 F.2d 132, 135 (5th Cir. 1992); *United States v. Evans*, 978 F.2d 1112, 1113 (9th Cir. 1992); and *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002).  Counsel for ATF have relied on those decisions as well, but each is similarly inapposite here.  Each simply stands for the unremarkable propositions that the word "trigger" can apply to other types of triggering mechanisms besides a traditional lever trigger and that it makes no difference whether a lever trigger must be pulled or pushed.

Aposhian agrees with ATF that the word "trigger," as used in § 5845(b), refers to any device that initiates a weapon's firing sequence.  But the meaning of "trigger" is not in dispute here—all parties agree that the "trigger" on a bump-stock equipped semi-automatic weapon is a traditional lever trigger.  The issue here is whether a "single pull or analogous motion" of that trigger suffices to cause the weapon to fire more than one shot "automatically."  The answer here is clearly no—every shot fired by a bump-stock-equipped semi-automatic rifle requires a separate "function" of the trigger.  Such weapons are incapable of firing a second time unless the trigger finger separates from the trigger, allows the trigger to reset by moving forward, and then contacts the trigger again.  There is nothing "automatic" about that separation; it occurs only because the bump shooter holds his finger in place (whether on his own or with the assistance of a belt loop or an extension ledge) while the trigger (in conjunction with the rifle's frame) recoils.  And re-contact with the trigger to bump fire a second shot only occurs because the bump shooter exerts forward pressure on the fore-end *and* rearward pressure on the extension ledge.

### D.   ATF Cannot Explain Why Bump Firing with a Bump Stock Should Be Treated Differently from Bump Firing Without the Assistance of a Bump Stock

A gun qualifies as a "semi-automatic" weapon if it will fire only once when the shooter pulls and holds down the trigger; a semi-automatic will fire more than once only if the shooter releases and re-engages the trigger between shots. Final Rule, 83 Fed. Reg. at 66,516.  But as explained in more detail above (at 4) experts can "bump fire" semi-automatic rifles at rates approaching those of automatic weapons.  Bump firing is a "technique that any shooter can perform with training or with everyday items such as a rubber band or belt loop." *Id.* at 66,532.  The key to bump firing is holding one's trigger finger in place rather than allowing the finger to recoil along with the trigger.  If one

holds the finger in place (thereby creating separation between the finger and the recoiling trigger), the trigger resets and can initiate another shot if the shooter thrusts the rifle forward following recoil, thereby "bumping" the trigger into the stationary finger.

Some shooters employ a belt loop to assist with keeping their trigger finger stationary. Others use a non-mechanical bump stock; the bump stock's plastic casing and extension ledge are designed to remain stationary while the weapon's main frame recoils, thereby assisting in keeping the trigger finger stationary. But all bump firing of semi-automatic weapons occurs in precisely the same manner, regardless of what accessories the shooter may employ.

ATF concedes that one who bump fires a semi-automatic weapon without a bump stock, even if using a belt loop, is not using a "machinegun." ATF cannot adequately explain why bump firing with bump-stock assistance should be treated differently. The absence of such an explanation is fatal to ATF's interpretation of § 5845(b).

ATF seeks to distinguish bump firing using a belt loop by asserting that it is "more difficult than using a bump-stock style device." *Id.* at 66,533. That may be true (one using a belt loop faces greater difficulty controlling recoil), but it does not serve to distinguish the manner in which a semi-automatic weapon operates in those two scenarios. ATF also asserts that a non-mechanical bump stock is a "self-acting or self-regulating mechanism," while a belt loop is not—because "no device is present to capture and direct the recoil energy; rather, the shooter must do so." *Ibid.* That conclusory statement provides no explanation of what constitutes a "self-acting or self-regulating mechanism" or why a bump-stock-equipped semi-automatic rifle should be deemed to meet that description. In fact, a non-mechanical bump stock does *not* meet that description because (unlike in an Akins Accelerator) no mechanical device "is present to capture and direct the recoil energy."

25

It is the non-trigger hand (not a spring) that supplies the force to thrust the rifle frame forward, thereby causing the trigger to bump into the trigger finger.

In sum, ATF's inability to articulate a plausible rationale for the distinction it draws between bump stocks (prohibited as machineguns) and belt loops and semi-automatic weapons capable of being bump fired (not prohibited) indicates that the Final Rule is not the "best reading" of 26 U.S.C. § 5845(b).

## II.   THE RULE OF LENITY REQUIRES THAT ANY AMBIGUITY IN 26 U.S.C. § 5845(b) BE CONSTRUED AGAINST THE GOVERNMENT

For all the reasons explained above, the best reading of 26 U.S.C. § 5845(b) is that a non-mechanical bump stock does not meet the statutory definition of a "machinegun." But even if one concludes that the statute is somewhat ambiguous, the result should be the same—the rule of lenity requires that any ambiguity should be resolved in Aposhian's favor. The rule of lenity is a centuries-old canon of statutory construction holding that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Skilling v. United States*, 561 U.S. 358, 410 (2010).

The Tenth Circuit concluded that Aposhian "failed to demonstrate a likelihood of success" on his claim that the rule of lenity requires that any statutory ambiguities be resolved in his favor rather than in favor of ATF. *Aposhian I*, 958 F.3d at 982. Importantly, however, its conclusion regarding the rule of lenity's inapplicability was premised on the appeals court's finding that it should grant deference to ATF's construction of 26 U.S.C. § 5845(b)—it concluded that *Chevron v. NRDC* required it to defer to ATF's construction.

The factual underpinnings for the Tenth Circuit's deference finding no longer exist. ATF has repeatedly stated that its construction of the statute is not entitled to deference and that it does not

want the courts to defer to the construction it set out in the Final Rule.  The Tenth Circuit applied the *Chevron* doctrine despite ATF's waiver of its applicability, reasoning that *Aposhian himself* had "invit[ed]" the appeals court to apply the doctrine by repeatedly arguing in his briefs that he should prevail under the two-step framework outlined in *Chevron*.[11]  To avoid any further findings that he is inviting courts to analyze this case under the *Chevron* framework, Aposhian hereby states unequivocally that he is *not* taking any position regarding *Chevron*'s applicability or how the case should be resolved if analyzed under the *Chevron* framework—other than to note that ATF has repeatedly waived any right to deference to its construction of § 5845(b).  Accordingly, in the absence of any "invitation" from Aposhian to consider applying the *Chevron* doctrine, any plausible basis for granting ATF's construction the deference it has expressly waived has disappeared, and the Tenth Circuit's rationale for discounting the rule of lenity no longer apply.

In the absence of a competing canon of statutory construction governing resolution of ambiguous statutes, the rule of lenity should apply.  The "rule of lenity" is a new name for an old idea—the notion that "penal laws should be construed strictly."  *The Adventure*, 1 F.Cas. 202, 204 (No. 93) (CC Va. 1812) (Marshall, C. J.).  The rule first appeared in English courts, justified in part on the assumption that when Parliament intended to inflict severe punishments it would do so clearly.  1 W. Blackstone, *Commentaries on the Laws of England* 88 (1765) (Blackstone); 2 M. Hale, *The History of the Pleas of the Crown* 335 (1736); *see also* L. Hall, *Strict or Liberal Construction of Penal Statutes*, 48 Harv. L. Rev. 748, 749–751 (1935).  As Justice Gorsuch has explained, the rule of lenity as adopted by American courts "came to serve distinctively American functions—a means

---

[11] The appeals court held, "Because Mr. Aposhian has invoked *Chevron* throughout the course of this litigation, his objection to *Chevron* deference based on the *government's* waiver is unlikely to succeed."  *Aposhian I*, 958 F.3d at 982 (emphasis in original).

for upholding the Constitution's commitments to due process and the separation of powers" and "became a widely recognized rule of statutory construction in the Republic's early years." *Wooden v. United States*, 142 S. Ct. 1063, 1082 (2022) (Gorsuch, J., concurring in the judgment).

The Supreme Court has stated that the rule of lenity is "premised on two ideas":

> First, a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed; second, legislatures and not courts should define criminal activity.

*Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 704 n.18 (1995) (citations omitted).

Both of those concerns are implicated here. If § 5845(b) is ambiguous, then permitting ATF to determine that the statute criminalizes possession of bump stocks risks permitting the executive branch to usurp Congress's role. More importantly, contrary to ATF's claim, the Final Rule does *not* provide "fair warning" of the line that may not be crossed. As Tenth Circuit Chief Judge Timothy Tymkovich explained in his dissent from the order vacating the grant of rehearing *en banc* as improvidently granted, "The government expects an uncommon level of acuity from average citizens to know that they must conform their conduct not to the statutory language, but to the interpretive gap-filling of an agency which may or may not be upheld by a court." *Aposhian III*, 989 F.3d at 899-900 (Tymkovich, C.J., dissenting). And Justice Gorsuch has concluded that citizens should not be "forced to guess whether the [machinegun] statute will be declared ambiguous; to guess again whether the agency's initial interpretation of the law will be declared 'reasonable'; *and* to guess again whether a later and opposing agency interpretation will also be held 'reasonable[.]'" *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 140 S. Ct. 789, 790 (2020) ("*Guedes II*") (statement of Gorsuch, J., respecting denial of certiorari).

In sum, to the extent that the Court finds any ambiguity in § 5845(b) with respect to whether non-mechanical bump stocks are "machinegun[s]" (as did the Tenth Circuit when considering this case at the preliminary injunction stage), that ambiguity should be resolved by applying the rule of lenity and ruling that they fall outside the definition.

### III.   SECTION 5845(b) SHOULD BE CONSTRUED AGAINST THE GOVERNMENT TO AVOID RAISING CONSTITUTIONAL PROBLEMS UNDER THE NONDELEGATION DOCTRINE

The nondelegation doctrine "is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989). The Constitution mandates that only the people's elected representatives may adopt new federal laws restricting individual liberty. U.S. Const., Art. I, § 1 ("*All* legislative Powers herein granted shall be vested in a Congress of the United States[.]") (emphasis added). The grant of "[a]ll legislative Powers" to Congress means that Congress may not transfer to others "powers which are strictly and exclusively legislative." *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825). Interpreting 26 U.S.C. § 5845(b) to permit ATF to classify non-mechanical bump stocks as machineguns would constitute divestment of Congress's exclusive legislative power to create crimes. At a minimum, it would raise serious questions regarding whether the statute violates Art. I, § 1's Vesting Clause.

Some have questioned whether the Vesting Clause imposes any limits on Congress's authority to divest itself of legislative powers by assigning them to an administrative agency. But the Constitution does not say simply that legislative powers are "vested" in Congress; it states that they "shall be vested" in Congress, thereby indicating that legislative powers are Congress's alone to exercise. Whatever the word "vested" might mean when considered in isolation, the Constitution's use of the phrase "shall be vested" in conjunction with its strict separation of powers

among three distinct branches of government can only be construed as expressing an intent that vested powers must continue to be vested where the Constitution has placed them.  *See* Philip Hamburger, *Nondelegation Blues*, Geo. Wash. L. Rev., Vol. 91 (forthcoming 2023); available at SSRN: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3990247.  Importantly, the Supreme Court has never wavered from its understanding that the Vesting Clause's "assignment of power to Congress is a bar on its further delegation." *Gundy v. United States*, 139 S. Ct. at 2123 (plurality opinion).

As explained at length in Section I above, if the words of 26 U.S.C. § 5845(b) are interpreted in a manner consistent with their ordinary meaning, non-mechanical bump stocks are not encompassed within the statute's definition of "machinegun[s]."  That was ATF's position until December 2018.  Indeed, even in the face of public outcry that arose in the aftermath of the October 1, 2017 Las Vegas shooting, ATF's Chief Counsel sent a memorandum to the Attorney General that defended ATF's longstanding position.  AR0534-0538.

ATF has stated publicly that its sudden reversal was based on a newly acquired understanding of § 5845(b)'s true meaning.  But a logical inference from the available evidence is that political pressure from senior Executive Branch officials and Members of Congress caused the reversal—pressure from individuals who likely had no knowledge of § 5845(b)'s language but harbored public safety concerns over use of bump stocks by criminals. *See, e.g.*, AR0200, 0541-0551.  Such individuals undoubtedly viewed their policy goal (immediate elimination of bump stocks) as far more important than the underlying legal issue (whether ATF possessed statutory authority to prohibit possession or transportation of bump stocks).

30

Those who support banning non-mechanical bump stocks would likely be happy with a court decision upholding the Final Rule based on the following line of reasoning: "Congress adopted the NFA and the Gun Control Act for the purpose of granting the Attorney General and ATF broad authority to regulate dangerous weapons. That authority includes the power to ban any weapon that ATF determines to be unreasonably dangerous. The Final Rule, which prohibits possession of non-mechanical bump stocks, is a valid exercise of that authority." That reasoning—whether or not openly acknowledged in a court opinion—is the only coherent basis for a decision upholding the Final Rule, given that § 5845(b)'s statutory language cuts so strongly against ATF.

But any decision upholding the Final Rule based on a general sense of legislative purpose rather than the statutory language actually adopted by Congress would raise serious constitutional concerns. A congressional delegation of power to an executive agency can pass constitutional muster under the Vesting Clause only if Congress "lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Gundy*, 139 S. Ct. at 2123 (plurality) (quoting *Mistretta*, 488 U.S. at 372) (cleaned up). A statute that does no more than instruct ATF to ban any weapon it deems too dangerous—without defining "dangerous" or explaining when a lethal weapon should be deemed too dangerous—would flunk that test because it fails to provide any "intelligible principle" to guide ATF in determining which weapons to ban. The NFA and the Gun Control Act contain no language even suggesting that Congress authorized ATF to criminalize possession of bump stocks; it is therefore impossible to discern from those statutes an "intelligible principle" to guide ATF in determining whether to criminalize possession.

Rather than face that constitutional dilemma, the Court should issue a decision based solely on the plain meaning of § 5845(b)'s statutory language. Adopting that approach will lead the Court to conclude that a non-mechanical bump stock is not properly classified as a "machinegun." And if public safety concerns dictate that bump stocks should be banned, Congress is the appropriate body to make that determination—a determination of the sort its recently adopted gun-control legislation demonstrates it is quite capable of making. If the Court concludes that § 5845(b) does, in fact, delegate to Executive Branch officials broad authority to criminalize possession of any lethal weapon they deem too dangerous, then it should declare the statute unconstitutional.

**IV.  EARLIER DECISIONS DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION HAVE NO PRECLUSIVE EFFECT ON THE COURT'S CONSIDERATION OF THIS MOTION FOR SUMMARY JUDGMENT**

In connection with Aposhian's motion for a preliminary injunction, both this Court and the Tenth Circuit held that Aposhian failed to demonstrate a likelihood of success on his claim that the Final Rule is invalid because it conflicts with Congress's definition of a "machinegun." But "likelihood of success" is not a relevant issue with respect to this motion for summary judgment; the only relevant issue is whether the Final Rule does, in fact, conflict with that definition. Accordingly, the law-of-the-case doctrine has no role to play in deciding this motion.[12]

The Tenth Circuit and the Supreme Court have held that the law-of-the-case doctrine is inapplicable to rulings issued in connection with motions for preliminary injunction or injunction pending appeal. *See, e.g., Homans v. City of Albuquerque*, 366 F.3d 900, 904-05 (10th Cir. 2004) (holding that the appeals court's first ruling was not law of the case because it "constituted an

---

[12] Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1981).

interlocutory ruling, and its holding was limited to the conclusion that [the plaintiff] had shown a likelihood of success on the merits of his claim"); *Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1543-44 (10th Cir. 1996); *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (stating that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits").

The decision whether to apply law-of-the-case doctrine "remains a matter of judicial discretion." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1242 (10th Cir. 2016). Some courts have on occasion applied the doctrine to findings entered in connection with a ruling on a preliminary injunction motion, reasoning:

> Where the earlier ruling, though on preliminary-injunction review, was established in a definitive, fully considered legal decision based on a fully developed factual record and a decisionmaking process that included full briefing and argument without unusual time constraints, why should we not follow the usual law-of-the-case jurisprudence?

*Sherley v. Sebelius*, 680 F.3d 776, 782 (D.C. Cir. 2012); *accord*, *Fish v. Schwab*, 957 F.3d 1105 (10th Cir. 2020).

But the factors that led those courts to apply the law-of-the-case doctrine are absent here. Aposhian notes, for example, that this Court considered the preliminary injunction motion under severe time constraints. On December 26, 2018, ATF issued the Final Rule and established a March 26, 2019 deadline for Aposhian to surrender his bump stock or face criminal prosecution. Aposhian filed suit in January 2019, the parties did not complete their briefing on the preliminary injunction motion until the latter half of February, and the Court issued its order denying the motion on March 15, 2019—less than two weeks before ATF's deadline. Given those time constraints, both this Court and the Tenth Circuit were forced to decide the motion on the basis of a very truncated record. ATF

did not file its Administrative Record until November 30, 2022, more than three-and-one-half years after this Court ruled on the preliminary injunction motion.

Moreover, the Tenth Circuit panel stated repeatedly that it affirmed denial of the motion on the ground that Plaintiff failed to establish a likelihood of success on the merits, not based on a definitive conclusion that the Final Rule properly construed 26 U.S.C. § 5845(b). *Aposhian I*, 958 F.3d at 974 ("[W]e agree with the outcome reached by the district court that Mr. Aposhian has failed to establish a likelihood of success on the merits of his challenge to the Final Rule"); *id.* at 979 (same); *id.* at 984 ("Mr. Aposhian has failed to demonstrate a likelihood of success in establishing a rule against deference to agency interpretations with criminal law implications."); *id.* at 989 ("Mr. Aposhian has not demonstrated a likelihood of success on the merits of his challenge to the Final Rule.").[13]

*Sherley* could not have been clearer that a ruling issued in connection with a preliminary injunction motion does not establish the law of the case when, as here, the ruling is couched in likelihood-of-success language: "To the extent an appellate court predicts, without making a definitive legal conclusion, that the plaintiffs *probably* or *likely* will or will not succeed on the merits, it cannot be said that the court 'affirmatively decided' the issue such that it would bind an appellate court at a later stage of the litigation." *Sherley*, 689 F.3d at 782 (emphasis in original).[14]

---

[13] The appeals court also affirmed on the basis that Plaintiff failed to satisfy the other three prerequisites for a preliminary injunction: a showing of irreparable harm if the injunction were denied, a showing that the threatened injury outweighed the harm that a preliminary injunction might cause the government, and a showing that the preliminary injunction would not adversely affect the public interest. *Id.* 991. Those three additional findings make it even more unlikely that the Tenth Circuit intended its likelihood-of-success findings to constitute definitive rulings on issues of law.

[14] This Court's ruling on the preliminary injunction motion is not the law of the case for the additional reason that the Tenth Circuit rejected the Court's rationale for concluding that Plaintiff

The Court now has before it for the first time the Administrative Record—an account of ATF's decision to reverse its prior statutory construction and to announce that non-mechanical bump stocks are, and have always been, included within the definition of "machinegun[s]." The Court should base its summary judgment decision on evidence contained in the Administrative Record, not based on preliminary rulings issued in 2019 and 2020 without the benefit of that record.

## CONCLUSION

Plaintiff respectfully requests that the Court grant his motion for summary judgment. As Judge Henderson of the D.C. Circuit has explained, the Final Rule violates 5 U.S.C. § 706(2)(C) because it "invalidly expands § 5845(b)." *Guedes I*, 920 F.3d at 44 (Henderson, J., concurring in part and dissenting in part). The Court should: enter judgment declaring that the Final Rule is invalid and contrary to law because it conflicts with the definition of "machinegun" set out in 26 U.S.C. § 5845(b); permanently enjoin Defendants from enforcing the Final Rule against Plaintiff and all persons similarly situated to Plaintiff residing within this District; and order Defendants to return to Plaintiff the bump stock they confiscated from him in March 2019.

Respectfully submitted,

/s/ Richard A. Samp
Richard Samp
Senior Litigation Counsel
New Civil Liberties Alliance
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5217
rich.samp@ncla.legal

---

failed to demonstrate a likelihood of success. This Court ruled that the Final Rule's construction of 26 U.S.C. § 5845(b) constituted the "best interpretation" of the statute. 374 F. Supp. 3d at 1153. The Tenth Circuit disagreed, finding that the key statutory terms were "ambiguous." *Aposhian I*, 958 F.3d at 986.

<u>/s/ Gerald M. Salcido</u>
Gerald M. Salcido
Salcido Law Firm PLLC
43 W 9000 S, Suite B
Sandy, UT 84070
801-413-1753
jerry@salcidolaw.com

January 5, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

I am an attorney for Plaintiff W. Clark Aposhian.  Pursuant to DUCivR 10-1, I hereby certify that the foregoing brief is in 12-point, proportionately spaced Times New Roman type.  The brief complies with the requirements of DUCivR 7-4(d)(4)(B), DUCivR 7-1(a)(4), and Fed.R.App.P. 32(a)(7)(C) in that, according to the word processing system used to prepare this brief (WordPerfect X8), the word count of the brief is 10,972, not including the caption, table of contents, table of authorities, signature block, certificate of service, and this certificate of compliance.

/s/ Richard A. Samp
Richard A. Samp

Dated: January 5, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of January, 2023, I electronically filed Plaintiff's motion for summary judgment with the Clerk of the Court for the U.S. District Court for the District of Utah by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


<u>/s/ Richard A. Samp</u>
Richard A. Samp