Richard A. Samp
Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5210
rich.samp@ncla.legal

Counsel for Plaintiff
Limited Appearance, admitted *pro hac vice*

<hr>

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

<hr>

| | |
|---|---|
| W. CLARK APOSHIAN, ) | **PLAINTIFF'S REPLY IN SUPPORT** |
| ) | **OF MOTION FOR SUMMARY** |
| Plaintiff, ) | **JUDGMENT AND RESPONSE TO** |
| ) | **CROSS MOTION** |
| v. ) | |
| ) | Case No. 2-19-cv-00037-JNP-CMR |
| MERRICK GARLAND, Attorney General ) | |
| of the United States, *et al.*, ) | District Judge Jill N. Parrish |
| ) | Magistrate Judge Cecilia M. Romero |
| Defendants. ) | |
| ) | |

<hr>

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     ATF's FOCUS ON THE "ORDINARY" MEANING OF "SINGLE FUNCTION OF THE
       TRIGGER" AND "AUTOMATICALLY" IGNORES THE MEANING OF SECTION 5845(b)
       WHEN READ AS A WHOLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     A Bump-Stock-Equipped Semi-Automatic Weapon Is Not a "Self-Acting"
              or "Self-Regulating" Mechanism that Allows the Firing of Multiple Rounds
              Through a Single Function of the Trigger . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.     "A Single Function of the Trigger" of a Bump-Stock Equipped Semi-
              Automatic Weapon Will Fire Only a Single Round, Regardless of How
              Broadly ATF Construes that Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       C.     Aposhian's Position Is Fully Consistent with the Views Espoused by the
              Many Federal Judges Who Have Rejected ATF's Construction of 26 U.S.C.
              § 5845(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.    ATF FAILS TO DIFFERENTIATE BUMP FIRING WITH A BUMP STOCK FROM BUMP
       FIRING WITHOUT THE ASSISTANCE OF A BUMP STOCK. . . . . . . . . . . . . . . . . . . . . . . 12

III.   BUMP-STOCK-EQUIPPED WEAPONS ARE DISTINGUISHABLE FROM AUTOMATIC
       WEAPONS THAT CONTINUE TO FIRE IF THE SHOOTER BOTH PULLS AND HOLDS THE
       TRIGGER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.    THE RULE OF LENITY REQUIRES THAT ANY AMBIGUITY IN 26 U.S.C. § 5845(b) BE
       CONSTRUED AGAINST THE GOVERNMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.     HOW RAPIDLY A WEAPON CAN FIRE IS NOT RELEVANT TO WHETHER IT QUALIFIES
       AS A "MACHINEGUN" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Akins v. United States,*
    312 Fed. Appx. 197 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Aposhian v. Barr,*
    374 F. Supp. 3d 1145 (D. Utah 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*Aposhian v. Barr* ["*Aposhian I*"],
    958 F.3d 969 (10th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
*Aposhian v. Wilkinson* ["*Aposhian III*"],
    989 F.3d 890 (10th Cir. 2021), *cert. denied,* 143 S. Ct. 84 (2022) . . . . . . . . . . . . . . . . . . 11, 18
*Cargill v. Garland,*
    57 F.4th 447 (5th Cir. 2023), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 11
*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Connecticut National Bank v. Germain,*
    503 U.S. 249 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*Facebook, Inc. v. Duiguid,*
    141 S. Ct. 1163 (2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives,*
    356 F. Supp. 3d 109 (D.D.C. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives* ["*Guedes I*"],
    920 F.3d 1 (D.C. Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9, 13
*Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives* ["*Guedes III*"],
    45 F.4th 305 (D.C. Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17
*Gundy v. United States,*
    139 S. Ct. 2116 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*Gun Owners of America, Inc. v. Garland* ["*Gun Owners I*"],
    992 F.3d 446 (6th Cir. 2021), *vacated,* 4 F.4th 576 (6th Cir. 2021) . . . . . . . . . . . . . . . . . . . 18
*Gun Owners of America, Inc. v. Garland* ["*Gun Owners II*"],
    19 F.4th 890 (6th Cir. 2021) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 18, 19
*Henson v. Santander Consumer USA Inc.,*
    137 S. Ct. 1718 (2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*Rodkiske v. Klemm,*
    140 S. Ct. 355 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*Staples v. United States,*
    511 U.S. 600 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*United States v. Alkazahg,*
    81 M.J. 764 (U.S. Navy-Marine Corps Ct. Crim. App. 2021). . . . . . . . . . . . . . . . . . . . . . . . 14
*United States v. Ansberry,*
    976 F.3d 1108 (10th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Page(s)**

*United States v. Fleischli,*
  305 F.3d 643 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*United States v. McGee,*
  992 F.3d 1035 (10th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*United States v. Olofson,*
  563 F.3d 652 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
*United States v. Rentz,*
  777 F.3d 1105 (10th Cir. 2015) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
*Western Watersheds Project v. Bureau of Land Management,*
  721 F.3d 1264 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*Wisconsin Central Ltd. v. United States,*
  138 S. Ct. 2067 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


**Statutes, Regulations, and Constitutional Provisions:**

U.S. Const., Art. I, § 1 (Vesting Clause) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Administrative Procedure Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4
  5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  5 U.S.C. § 706(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

National Firearms Act of 1934 (NFA),
  Pub. L. No. 73-474, 48 Stat. 1236 (June 26, 1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26 U.S.C. § 2733(b) (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

26 U.S.C. § 5845(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

27 C.F.R. §§ 447.11, 478.11, and 479.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9


**Miscellaneous:**

ATF, *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018)
  ("Bump Stock Rule") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

ATF Rul. 2004-5 (Aug. 18, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

iii

**Page(s)**

*Cambridge English Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/ . . . . . . . 5

*Dictionary.com*, https://dictionary.com/browse/. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*MacMillan Dictionary*, https://www.macmillandictionary.com/us/dictionary/american/ . . . . . . . 6

George C. Nonte, Jr., FIREARMS ENCYCLOPEDIA (Harper Rowe 1973) . . . . . . . . . . . . . . . . . . . . 14

*Oxford English Dictionary* (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Oxford Learner's Dictionaries*,
   https://www.oxfordlearnersdictionaries.com/us/definition/english/ . . . . . . . . . . . . . . . . . . . . . 5

John Quick, DICTIONARY OF WEAPONS AND MILITARY TERMS (McGraw-Hill 1973). . . . . . . . . 14

*Webster's New International Dictionary* (2d ed. 1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Webster's New World College Dictionary* (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

## INTRODUCTION

The Government's brief employs a gambit that it has used throughout both this and related bump-stock proceedings.  It begins by construing the meaning of terms that appear in the statutory definition of "machinegun" ("single function of the trigger," "automatically"), and then argues that since its construction of those terms is unobjectionable, the Court should uphold its decision that non-mechanical bump stocks are "machineguns" under 26 U.S.C. § 5845(b).

But that focus on the meaning of individual words and phrases is misguided; there is no serious dispute between the parties about the meaning of statutory terms "single function of the trigger" (construed by the Bureau of Alcohol, Tobacco, Firearms and Explosives to mean "single pull of the trigger and analogous motions") and "automatically" (construed by ATF to mean "functioning as the result of a self-acting or self-regulating mechanism").  Regardless of how those terms are construed, a semi-automatic weapon equipped with a non-mechanical bump stock does not meet the statutory definition of "machinegun" because a single function/pull of the trigger cannot "automatically" (or in a "self-acting" or "self-regulating" manner) cause the weapon to fire more than one shot.

As ATF concedes, the weapon will not fire a second shot unless the shooter, *in addition to* pulling the trigger, also applies "forward pressure with the non-trigger hand on" the fore-end of the rifle while simultaneously "maintaining the trigger finger on the device's ledge *with constant rearward pressure*," ATF, *Bump-Stock Type Devices*, 83 Fed. Reg. 66,514, 66,518 (Dec. 26, 2018) ("Final Rule") (emphasis added), thereby pushing the trigger forward so that it bumps into the trigger finger.  In light of this admitted need for additional shooter actions, pulling the trigger once will not produce a second shot "automatically"—or, expressing the same thought using different words, will not do so as a result of a "self-acting or self-regulating mechanism."

ATF has properly disavowed a right to *Chevron* deference for its construction of 26 U.S.C. § 5845(b).  ATF has thereby implicitly rejected the holdings of the D.C. and Tenth Circuits, which declined to preliminarily enjoin the Final Rule after determining that the statutory definition of "machinegun" is ambiguous with respect to bump stocks and then applying the *Chevron* framework to resolve the ambiguity in ATF's favor.  *See  Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1 (D.C. Cir. 2019) ["*Guedes I*"]; *Aposhian v. Barr*, 958 F.3d 969 (10th Cir. 2020) ["*Aposhian I*"].  Accepting ATF's concession, the rule of lenity is the only remaining canon of statutory construction that can be applied here to resolve any genuine ambiguity that the Court is otherwise unable to resolve.

Indeed, ATF essentially concedes that the rule of lenity should be applied to resolve any ambiguities in § 5845(b).  ATF Br. 22-23.  It opposes application of lenity based solely on its argument that the statute contains no ambiguity "that would justify applying the lenity doctrine." *Id.* at 23.  But ATF neglects to mention that an ideologically diverse group of 12 Fifth Circuit judges concluded earlier this year that the rule of lenity requires rejection of ATF's interpretation of the statute.  *Cargill v. Garland*, 57 F.4th 447, 469-73 (5th Cir. 2023).[1]  Aposhian's motion for summary judgment shows why non-mechanical bump stocks are not properly classified as "machineguns."

---

[1]  In an opinion by Judge Elrod, seven of those 12 judges ruled that the Final Rule is contrary to law because the best interpretation of § 5845(b) is the one espoused herein by Plaintiff Clark Aposhian, but also ruled that the rule of lenity required rejection of ATF's interpretation even "assuming *arguendo* that the relevant statute is ambiguous."  57 F.4th at 469-73.  Chief Judge Richman and Judges Stewart, Southwick, and Ho concurred, fully joining those portions of Judge Elrod's majority opinion that discussed the rule of lenity.  The twelfth judge, Judge Haynes, concurred in the judgment, stating, "The relevant statute is ambiguous such that the rule of lenity favors the citizen in this case."  *Id.* at 473 (Haynes, J., concurring in the judgment).  A thirteenth judge, Judge Oldham, agreed with Judge Elrod that ATF's interpretation of § 5845(b) was contrary to law and elected not to address the rule-of-lenity issue.

2

But even if the Court concludes that § 5845(b) is not clear on that issue, the rule of lenity requires the Court to resolve those ambiguities in Aposhian's favor.

In 2019, the Court denied Aposhian's motion for a preliminary injunction against enforcement of the Final Rule, ruling that he failed to show a likelihood of success on his claims. *Aposhian v. Barr*, 374 F. Supp. 3d 1145, 1153 (D. Utah 2019). As Aposhian's opening brief explains, "likelihood of success" is not a relevant issue with respect to the cross motions for summary judgment, and the law-of-the-case doctrine is inapplicable here. Pltf. Br. 32-35. ATF does not contest that issue and thus has waived any claim that the denial of a preliminary injunction (and the Tenth Circuit's affirmance of that denial) have preclusive effect on the Court's consideration of the summary judgment motions. In addressing those motions, the Court is writing on a clean slate.

## STANDARD OF REVIEW

Aposhian's motion for summary judgment and ATF's cross-motion for summary judgment raise a purely legal issue: what is the proper construction of 26 U.S.C. § 5845(b), the statute that defines "machinegun?" A *de novo* standard of review applies to issues of statutory construction. *United States v. McGee*, 992 F.3d 1035, 1041 (10th Cir. 2021); *United States v. Ansberry*, 976 F.3d 1108, 1126 (10th Cir. 2020).

Aposhian's motion asserts claims under the Administrative Procedure Act (APA), alleging that ATF, by issuing the Final Rule, has engaged in agency action that is "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A) & 706(2)(C). *See* Counts V and VI. ATF contends that all APA claims are subject to a standard of review that is "very deferential to the agency" and that "deference is most pronounced in cases where, as here, the challenged decision involves technical or scientific matters within the agency's

3

area of expertise." ATF Br. at 11 (quoting *Western Watersheds Project v. Bureau of Land Management*, 721 F.3d 1264, 1273 (10th Cir. 2013)). ATF is mistaken. Although a deferential standard of review can apply in certain APA cases, it is inapplicable when, as here, the claims raised in a summary judgment motion focus solely on a purely legal issue. The motion raises no "technical or scientific matters"; there is no technical dispute, for example, regarding the manner of operation of a semi-automatic rifle equipped with a non-mechanical bump stock.

## ARGUMENT

**I.    ATF'S FOCUS ON THE "ORDINARY" MEANING OF "SINGLE FUNCTION OF THE TRIGGER" AND "AUTOMATICALLY" IGNORES THE MEANING OF SECTION 5845(b) WHEN READ AS A WHOLE**

Federal law defines a "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The definition also encompasses parts that can be used to convert a weapon into a machinegun.

Aposhian's motion for summary judgment explains at length why bump-stock-equipped semi-automatic weapons are not included within that definition. *See, e.g.,* Pltf. Br. 14-26. As we explain, a weapon is not a "machinegun" as defined by § 5845(b) if "[s]omething more than a 'single function of the trigger' is required to effectuate repeat firing." *Id.* at 11. For bump-stock-equipped semi-automatic weapons, that "something more" is the shooter using his non-trigger hand to push forward on the rifle's fore-end while simultaneously applying rearward pressure with the trigger hand. *Ibid.* ATF seeks to overcome the plain import of the statutory language when read as a whole, by focusing instead on ATF's construction of the individual terms "automatically" and "single function of the trigger." That effort is unavailing.

### A. A Bump-Stock-Equipped Semi-Automatic Weapon Is Not a "Self-Acting" or "Self-Regulating" Mechanism that Allows the Firing of Multiple Rounds Through a Single Function of the Trigger

ATF has construed the term "'automatically' as it modifies 'shoots, is designed to shoot, or can be readily restored to shoot,'" to mean "functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger." 27 C.F.R. §§ 447.11, 478.11, & 479.11. In support of that definition, it quotes this Court's 2019 preliminary injunction ruling:

> [T]he Bureau's construction [of "automatically"] "is borrowed, nearly word-for-word, from dictionary definitions contemporaneous to the NFA's enactment" [in 1934]. *Aposhian* [*v. Barr*], 374 F. Supp. 3d [1145], 115[2] [(D. Utah 2019)] (citing 83 Fed. Reg. at 66,519); *see also* "automatic," Webster's New International Dictionary 157 (193[4]); "automatic," 1 Oxford English Dictionary 574 (1933).

ATF Br. at 13. ATF argues that its definition of automatically "best reflect[s] the word['s] 'ordinary meaning ... at the time Congress enacted the statute.'" *Ibid.* (quoting *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018)).

ATF's fixation on its construction of "automatically" might be meaningful if that construction cast some new light on § 5845(b)'s use of the word. But it does not. "Self-acting" and "self-regulating" are roughly synonymous with "automatic." *See, e.g.*, *Webster's New World College Dictionary* 1300, 1302 (2007) (defining "self-acting" as "acting without outside influence or stimulus; working by itself; automatic," and defining "self-regulating" as "regulating oneself or itself, so as to function automatically or without outside control").[2]

---

[2] *See also Cambridge English Dictionary* (defining "self-regulating" as "self-correcting" and "used to describe a system, machine, etc. that is able to correct itself when things begin to go wrong, without outside help"; and defining "automatically" as "without human control," "independently," and "If a machine or device does something automatically, it does it independently, without human control.") (https://dictionary.cambridge.org/us/dictionary/english/self-regulating and https://

After setting out its undisputed construction of "automatically," ATF asserts without meaningful explanation that a bump stock permits a semi-automatic weapon to fire "automatically" because pulling the trigger a single time allegedly permits the weapon to discharge "continuously by means of a self-regulating mechanism." ATF Br. 16. But for the same reasons (explained above) that a single function/pull of the trigger does cause the weapon to fire more than one shot "automatically," it also does not activate some "self-acting" or "self-regulating" mechanism that can cause the weapon to fire more than once. A non-mechanical bump stock may assist a shooter in managing the weapon's recoil, but it is not "a mechanism that performs a required act" (*i.e.*, the firing of a second shot). *Webster's New International Dictionary* 187 ("automatic") (2d ed. 1934). Under either verbal formulation, the weapon cannot fire more than once unless the shooter does "something more" after pulling the trigger—and the provision of that additional human input is what prevents the firing from being labeled either "automatic" or the result of some "self-acting" or "self-regulating" mechanism.

Although ATF argues that a process can be deemed "self-regulating" even when the process requires some additional human input to continue to operate, ATF Br. 13, it cites no dictionary

---

dictionary.cambridge.org/us/dictionary/english/automatically) (accessed Feb. 28, 2023); *Dictionary.com* (defining "self-regulating" as "functioning automatically," as in a "self-regulating machine" and defining "automatically" as "by a device or process requiring no human intervention" and "(of a firearm) repeatedly for as long as the trigger is pulled") (https://dictionary.com/browse/self-regulating and https://dictionary.com/browse/automatically) (accessed Feb. 28, 2023); *Merriam-Webster.com* (defining "self-regulate" as "to regulate oneself or itself" and defining "automatic" as "having a self-acting or self-regulating mechanism") (https://www.merriam.webster.com/dictionary/self-regulate and https://www.merriam.webster.com/dictionary/automatic) (accessed Feb. 28, 2023); *Oxford Learner's Dictionaries* (stating that "something that is self-regulating controls itself") (https://www.oxfordlearnersdictionaries.com/us/definition/english/self-regulating) accessed Feb. 28, 2023); *MacMillan Dictionary* (defining "automatically" as "by a machine, without people doing anything") (https://www.macmillandictionary.com/us/dictionary/american/automatically) (accessed Feb. 28, 2023).

definitions to support that reading.[3]  ATF's expansive definition of "self-regulating" is inconsistent

with the many definitions of that term cited by Aposhian.  *See, e.g., Dictionary.com, supra* (defining

"self-regulating" as "functioning automatically," as in a "self-regulating machine"); *Webster's New*

*World College Dictionary, supra* (defining "self-regulating" as "regulating oneself or itself, so as

to function automatically or without outside control").  And even if ATF were correct that "self-

regulating" can encompass a process that requires additional human input to continue to operate (and

it is not correct), that would only show that ATF has misconstrued the word "automatically," whose

plain meaning is "by a device or process requiring no human intervention."  *Dictionary.com, supra*.

ATF cites *United States v. Olofson*, 563 F.3d 652 (7th Cir. 2009), as support for its

interpretation of "automatically."  ATF has misread that decision.  It reads *Olofson* as stating that

a weapon can qualify as a "machinegun" even though the firing sequence initiated by pulling the

trigger does not produce a second shot without "additional action by the shooter."  ATF Br. 18

(quoting Final Rule, 83 Fed. Reg. at 66,519).  *Olofson* includes no such statement.  The Seventh

Circuit held that a weapon is capable of shooting multiple rounds "automatically" if the discharges

occur "as a result of a self-acting mechanism" that "is set in motion by a single function of the

trigger."  563 F.3d at 658.  Pulling the trigger of the unique weapon at issue in *Olofson* would

routinely result in the automatic discharge of several rounds before the weapon jammed; the appeals

court held that the weapon could not avoid qualifying as a "machinegun" merely because it did not

---

[3] Instead, ATF relies on language from a D.C. Circuit decision, *Guedes v. Bureau of Alcohol,*
*Tobacco, Firearms and Explosives*, 45 F.4th 306, 316 (D.C. Cir. 2022) ("*Guedes III*").  But *Guedes*
*III* itself cites no dictionary that defines either "automatically," "self-acting," or "self-regulating" as
encompassing a process in which continuing human input plays a role.

keep shooting indefinitely. *Ibid.* But the court never suggested that the "self-acting mechanism" necessary to meet the "automatically" requirement could encompass human input.

The sole real-life example ATF cites to support its idiosyncratic definition of "automatically"—an "automatic" sewing machine—cuts against its argument. ATF cites the *Guedes* district court decision, *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 356 F. Supp. 3d 109, 131 (D.D.C. 2019), for the proposition that a sewing machine may fairly be described as "automatic" even though it "still requires the user to press a pedal and direct the fabric." ATF Br. 18. But electric sewing machines began being advertised as "automatic" because a single, initiating human input (pressing the pedal that activates the electric current) suffices to cause the needle to continue moving up and down "automatically" until the operator deactivates the pedal; *no other human input is required*.[4] In sharp contrast, a bump-stock equipped semi-automatic weapon fires only once after the shooter pulls the trigger, unless substantial additional human input is provided—and thus cannot be deemed to shoot "automatically" more than one shot by a single pull of the trigger.

As Judge Henderson of the D.C. Circuit has explained, "By including more action than a single trigger pull, the [Final] Rule invalidly expands section 5845(b)." *Guedes I*, 920 F.3d at 44 (Henderson, J., concurring in part and dissenting in part). She also noted that, from 1934 until 1968, the NFA defined "machinegun" as including "a firearm that shoots more than one round 'automatically or semiautomatically.'" *Id.* at 45 (quoting 26 U.S.C. § 2733(b) (1940)). She

---

[4] Before the advent of "automatic" sewing machines, moving the machine's needle up and down necessitated continuous human input: the operator provided manual power to the machine by using his/her foot to push a treadle back and forth.

concluded that because Congress deleted "semiautomatically" in 1968, "ATF is without authority to resurrect it by regulation." *Ibid.*

As described in detail in Aposhian's opening brief, Judge Henderson's opinion also explains why ATF's construction of "automatically" as encompassing the operation of a bump-stock-equipped semi-automatic rifle cannot be squared with everyday understandings of that word. Pltf. Br. 19-20 (citing *Guedes I*, 920 F.3d at 43-44) (Henderson, J., concurring in part and dissenting in part). ATF has no response to that compelling analysis.

**B.**     **"A Single Function of the Trigger" of a Bump-Stock Equipped Semi-Automatic Weapon Will Fire Only a Single Round, Regardless of How Broadly ATF Construes that Term**

Similarly misguided is ATF's focus on its construction of the phrase "single function of the trigger." ATF notes that from 2006 to 2018 it construed that phrase to mean "single pull of the trigger." ATF Br. 5. ATF's brief argues that that construction is consistent with the 1934 legislative history of the NFA. *Id.* at 14. Yet ATF (in connection with its 2018 Final Rule) abandoned its position that "single function" is synonymous with "single pull." Expanding its interpretation of "single function of the trigger," ATF now construes the phrase to mean "single pull of the trigger and analogous motions." 27 C.F.R. §§ 447.11, 478.11, & 479.11.[5]

But Aposhian does not take serious issue with ATF's evolving definitions of what constitutes a "function" of the trigger. Under any of those definitions, the central issue remains: what happens

---

[5] ATF adopted the 2018 change to emphasize its view that the words "function" and "trigger" should be interpreted broadly enough to encompass unorthodox firing mechanisms. ATF acknowledged that the former interpretation might "lead to confusion" by suggesting that "*only* a single *pull* of the trigger will qualify as a single function." Final Rule, 83 Fed. Reg. at 66,534. ATF adopted new language to clarify that "a push or other method of initiating the firing cycle must also be considered a 'single function of the trigger.' ... The term 'single function' is reasonably interpreted to also include other analogous methods of trigger activation." *Id*. at 66,534-35.

"automatically" when there is a *single* "function" of the triggering mechanism? And the uncontested evidence is that a bump-stock equipped semi-automatic weapon will fire only once when the shooter limits his actions to a single function/pull of the trigger. To discharge a second round, the shooter—after he pulls/functions the trigger—must then push forward with his non-shooting hand on the fore-end of the rifle while simultaneously applying rearward pressure with the trigger hand. Final Rule, 83 Fed. Reg. at 66,518. By pushing forward with his non-shooting hand, the shooter *manually* pushes the trigger forward and into contact with the trigger finger, thereby causing the trigger to "function" a second time.[6]

### C. Aposhian's Position Is Fully Consistent with the Views Espoused by the Many Federal Judges Who Have Rejected ATF's Construction of 26 U.S.C. § 5845(b)

Aposhian's opening brief tallied the many federal appellate judges who have addressed the Final Rule; it noted that a majority of appeals-court judges who have considered the issue have rejected ATF's assertion that the Final Rule constitutes the "best reading" of § 5845(b). Aposhian Br. 21-22. That tally became even more lopsided the day after Aposhian filed his opening brief, when the Fifth Circuit voted 13-3 to strike down the Final Rule. *Cargill v. Garland*, 57 F.4th 1091 (5th Cir. 2023) (*en banc*).

---

[6] It is this manual forward movement of the trigger that distinguishes the non-mechanical bump stocks at issue here from the Akins Accelerator. The Akins Accelerator uses a mechanical spring to thrust the trigger forward; any second movement of the trigger in an Akins Accelerator occurs "automatically" as a result of that spring action, not from any human input, and that spring action in turn is the automatic result of the shooter pulling and holding the trigger. *Akins v. United States*, 312 Fed. Appx. 197 (11th Cir. 2009). ATF contends that non-mechanical bump stocks are functionally indistinguishable from the Akins Accelerator, asserting that "both devices achieve rapid fire by bumping the gun's trigger blade against the shooter's finger." ATF Br. 20. That assertion is incorrect. A non-mechanical bump stock plays no role in bumping the trigger against the shooter's finger. It is the shooter himself who bumps the trigger against his finger by pushing forward the rifle's receiver with his non-trigger hand.

In an effort to undercut the significance of 30 appellate judges rejecting its "best reading" argument, ATF contends that the rationale of those judges is at odds with the arguments advanced by Aposhian in this case.  ATF Br. 22 (stating that "[g]iven that Plaintiff 'finds' the Bureau's 'statutory construction ... unobjectionable," his efforts to tally up the judges who have rejected the Bureau's interpretation is for naught.").

That argument is misleading; while the 30 judges have expressed a variety of reasons for rejecting ATF's "best reading" claim, there is little discrepancy between most of the 30 judges' opinions and the claims advanced by Aposhian.  Like Aposhian, the 30 judges take no exception to ATF's conclusion that "automatically" is roughly equivalent to "functioning as the result of a self-acting or self-regulating mechanism."   But they join Aposhian in taking exception to ATF's construing "shoot automatically more than one shot ... by a single function of the trigger" as applying to weapons that will fire more than one shot when the shooter pulls the trigger and later is required to take additional manual steps.  *See, e.g., Cargill*, 57 F.4th at 463 (eight-judge plurality opinion) (agreeing that "automatically" as used in § 5845(b) means "self-acting" but concluding that "the firing process enabled by a non-mechanical bump stock is [not] self-acting"); *Gun Owners of America, Inc. v. Garland*, 19 F.4th 890, 912-15 (6th Cir. 2021) ["*Gun Owners II*"] (Murphy, J., dissenting on behalf of eight judges from affirmance of judgment by equally divided vote) (a firearm fires more than one shot "automatically" if it does so "in a self-acting or self-regulating manner," but a bump-stock-equipped semi-automatic rifle does not meet that definition); *Aposhian v. Wilkinson*, 989 F.3d 890, 895-96 (10th Cir. 2021) ["*Aposhian III*"] (Tymkovich, C.J., dissenting on behalf of five judges from decision to vacate *en banc* order as improvidently granted) (accepting ATF's construction of "automatic" as meaning "having a self-acting or self-regulating mechanism that

11

performs a required act at a predetermined point in the operation" but rejecting ATF's application of that definition to non-mechanical bump stocks).

## II.     ATF FAILS TO DIFFERENTIATE BUMP FIRING WITH A BUMP STOCK FROM BUMP FIRING WITHOUT THE ASSISTANCE OF A BUMP STOCK

Semi-automatic weapons will fire more than once only if the shooter releases and reengages the trigger between shots. Final Rule, 83 Fed. Reg. at 66,516. But experts can "bump fire" semi-automatic weapons at rates approaching those of automatic weapons. Bump firing is a "technique that any shooter can perform with training or with everyday items such as a rubber band or belt loop." *Id.* at 66,532. The shooter can bump fire a semi-automatic weapon with or without a bump stock, and the bump firing occurs in precisely the same manner in each instance.

ATF concedes that one who bump fires a semi-automatic weapon without a bump stock, even if using a belt loop, is not using a "machinegun." Aposhian's motion for summary judgment demonstrates that ATF's inability to adequately explain why bump firing with bump-stock assistance should be treated differently is fatal to its interpretation of § 5845(b). Pltf. Br. 24-26.

ATF's latest efforts to explain that disparate treatment is unconvincing. ATF states that use of a non-mechanical bump stock permits a shooter who is bump-firing his weapon to control the direction of the weapon's recoil more easily. ATF Br. 21. But improving control over recoil does not make the firing of multiple rounds any more "automatic." Whether or not a shooter attaches a bump stock to his weapon, after pulling the trigger he must still push forward with his non-shooting hand while simultaneously applying rearward pressure with his shooting hand in order to cause his weapon to discharge more than one round.

12

ATF also cites the D.C. Circuit for the proposition that "belt loops, unlike bump stocks, do not transform semiautomatic weapons into statutory 'machineguns[,]' [o]r so the Bureau reasonably concluded in the Rule." ATF Br. 22 (quoting *Guedes I*, 920 F.3d at 32). But the D.C. Circuit made that statement only after concluding that § 5845(b) is ambiguous and determining that any "reasonable" ATF interpretation of the statute was entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Guedes I*, 920 F.3d at 29-31. ATF has waived any reliance on *Chevron* deference in this case and has repeatedly stated that its construction of § 5485(b) is not entitled to deference under *Chevron.* Pltf. Br. 26-27.

## III.   BUMP-STOCK-EQUIPPED WEAPONS ARE DISTINGUISHABLE FROM AUTOMATIC WEAPONS THAT CONTINUE TO FIRE IF THE SHOOTER BOTH PULLS AND HOLDS THE TRIGGER

ATF attempts to attach significance to the fact that some automatic weapons long classified as "machinegun[s]" will not continue firing unless the shooter not only pulls the trigger but continues to hold it down. It asserts that "there is nothing remarkable about a shooter having to exert some continuous force to maintain automatic fire: numerous guns require a shooter to keep applying pressure during the firing sequence, yet do not evade the statutory definition." ATF Br. 18.

ATF's assertion is unpersuasive. There are significant differences between the pull-and-hold of a trigger and the human intervention required to bump fire a weapon after the initial pull of the trigger. Perhaps most importantly, movement of the trigger is the one human interaction explicitly contemplated by § 5845(b), a strong textual clue that a weapon should not be determined to fire more than one shot "automatically" if it will not do so in the absence of human intervention not directly connected to the trigger. It was on that basis that one federal appeals court—the Navy-Marine Corps Court of Criminal Appeals—explicitly rejected the federal government's indistinguishable-from-

automatic-weapons argument.  *United States v. Alkazahg*, 81 M.J. 764, 782-83 (U.S. Navy-Marine Corps Ct. Crim. App. 2021).

Moreover, as Aposhian's opening brief pointed out (at 20), the Supreme Court in *Staples v. United States*, 511 U.S. 600, 602 n.1 (1994), equated "single pull of the trigger" with both pulling the trigger *and* holding it down.  That is the most natural way to read the language of § 5845(b); it is the pulling of the trigger with one's finger followed by *retraction* of the finger that is more naturally thought of as constituting two separate actions.[7]  ATF has no response to Aposhian's reading of *Staples*.  As Sixth Circuit Judge Murphy concluded, "a typical machine gun qualifies [under § 5845(b)] even though the shooter pulls the trigger *and* keeps it pressed down because that combined external influence still does no more than result in one action of the trigger."  *Gun Owners II*, 19 F.4th at 915 (Murphy, J., dissenting).

_____

[7]  Both ATF and leading treatises have long understood an automatic weapon to be any weapon that fires repeatedly if the shooter depresses the trigger and holds it down but does nothing more.  For example, in a 2004 formal opinion classifying a "Minigun" as a "machinegun," ATF stated:

> Critically, the Minigun shoots more than one shot, without manual reloading, by a single function of the trigger, as prescribed by 26 U.S.C. 5845(b).  *See United States v. Fleischli*, 305 F.3d 643, 655-656 (7th Cir. 2002).  *See also Staples v. United States*, 511 U.S. 600, 603 (1994) (automatic refers to a weapon that "once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted"); GEORGE C. NONTE, JR., FIREARMS ENCYCLOPEDIA 13 (Harper Rowe 1973) (the term "automatic" is defined to include "any firearm in which a single pull and continuous pressure upon the trigger (or other firing device) will produce rapid discharge of successive shots so long as ammunition remains in the magazine or feed device - in other words, a machinegun"); ... JOHN QUICK, PH.D., DICTIONARY OF WEAPONS AND MILITARY TERMS 40 (McGraw-Hill 1973) (defining automatic fire as "continuous fire from an automatic gun, lasting until pressure on the trigger is released").

ATF Rul. 2004-5 (Aug. 18, 2004).

14

In the Final Rule, ATF made clear that it deems the "trigger" of a standard semi-automatic weapon equipped with a bump stock to be the traditional lever trigger. *See, e.g.*, 83 Fed. Reg. at 66,518, 66,519, 66,527, 66,532. In its brief, ATF does not disavow that position, but it leaves open the possibility of recognizing a second triggering mechanism. ATF Br. 19-20 (asserting that "a bump stock is specifically designed to supplant the operation of the gun's traditional trigger blade. ... To wit, the bump stock requires only a *single* action—the initial pull of the trigger blade and coordinated push of the rifle forward—to begin the shooting sequence."). By suggesting (contrary to the Final Rule) that a shooter pushing forward on the fore-end of the rifle is somehow part of the triggering process, ATF apparently seeks to analogize that forward push *and* the maintenance of forward pressure to the shooter of an automatic weapon who pulls the trigger and holds it down.

That line of argument is unavailing. Even accepting the possibility that forward pressure on the rifle's fore-end could be deemed the triggering mechanism (a highly questionable notion, given ATF's longstanding contrary position), it still makes no difference to the weapon's proper classification. Pushing forward on the rifle's fore-end will still produce only one shot (even if the shooter maintains that pressure by pushing forward again after recoil) unless the shooter also applies "constant rearward pressure" with his trigger finger/hand. Final Rule, 83 Fed. Reg. at 66,158. That rearward pressure is yet another human intervention—thereby demonstrating that the weapon is not "automatically" firing more than one shot based on a single function of the trigger.

More fundamentally, a bump-stock equipped semi-automatic weapon bears virtually no resemblance to a fully automatic weapon. A mounted automatic weapon will shoot continuously even though the shooter does nothing more than apply a finger to the trigger and pull; he need not handle the weapon in any manner. In contrast, bump firing a semi-automatic weapon requires a

shooter not only to pull the trigger but also to engage in constant manipulation of the weapon *with both hands*.  Final Rule, 83 Fed. Reg. at 66,518.

## IV.   THE RULE OF LENITY REQUIRES THAT ANY AMBIGUITY IN 26 U.S.C. § 5845(b) BE CONSTRUED AGAINST THE GOVERNMENT

ATF essentially concedes that the rule of lenity should be applied to resolve any ambiguities in § 5845(b).  ATF Br. 22-23.  It makes no argument that ambiguities ought to be resolved in its favor by applying *Chevron* deference.  It opposes application of lenity based solely on its argument that the statute contains no ambiguity "that would justify applying the lenity doctrine."  *Id.* at 23.

Aposhian agrees with ATF that § 5845(b) contains no ambiguities that cannot be resolved by applying standard canons of statutory interpretation.  He contends that federal law *unambiguously* supports his view (also the view espoused by ATF between 2006 and 2018) that a non-mechanical bump stock is not a "machinegun" under § 5845(b).  In the absence of a statutory ambiguity, there is no call for the Court to apply any sort of deference doctrine in resolving this matter.

But if, after applying other canons of statutory construction, the Court concludes that § 5845(b) is genuinely ambiguous with respect to whether the statute applies to non-mechanical bump stocks, it should apply the rule of lenity to resolve the ambiguity in Aposhian's favor.  As the Tenth Circuit has explained:

> Our job is always in the first instance to follow Congress's directions. But if those directions are unclear, the tie goes to the presumptively free citizen and not the prosecutor. ... The rule of lenity seeks to ensure legislatures, not prosecutors, decide the circumstances when people may be sent to prison. It seeks to ensure, too, that if a legislature wishes to attach criminal consequences to certain conduct—to deprive persons of their property, liberty, or even lives—it provides fair warning.

*United States v. Rentz*, 777 F.3d 1105, 1114 (10th Cir. 2015) (*en banc*).

16

In the absence of clear statutory evidence that Congress intended to criminalize possession of a non-mechanical bump stock, the rule of lenity requires a finding that Congress harbored no such intent.  The fact that 30 federal appellate judges have concluded that 26 U.S.C. § 5845(b) does not unambiguously support ATF's position is a strong indication that, at the very least, Aposhian should prevail under the rule of lenity.

## V.   HOW RAPIDLY A WEAPON CAN FIRE IS NOT RELEVANT TO WHETHER IT QUALIFIES AS A "MACHINEGUN"

Some courts have suggested that ATF should be permitted to ban non-mechanical bump stocks under 26 U.S.C. § 5845(b) because they facilitate more rapid fire of semi-automatic weapons and thereby increase their lethality.  *See, e.g., Guedes III*, 45 F.4th at 316 (noting Congress's concern over the dangerousness of machineguns and concluding that construing § 5845(b) as encompassing bump stocks is therefore "consistent with congressional purpose").[8]

Aposhian urges the Court to reject that non-textualist mode of statutory interpretation.  The Supreme Court has repeatedly instructed that any analysis of a statute's meaning must "begin with the text."  *Facebook, Inc. v. Duiguid*, 141 S. Ct. 1163, 1169 (2021).  In construing a statute, courts "must presume that Congress 'says in a statute what it means and means in a statute what it says there.'"  *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).  Section 5845(b) includes no language suggesting that weapons should

---

[8] Aposhian notes that the D.C. Circuit's conclusion is based on a factually inaccurate premise: that bump stocks increase the rapidity with which a semi-automatic weapon can be fired.  *Ibid.* (stating that bump-stock-equipped semi-automatic weapons "are estimated to fire between 400 and 800 bullets per minute, as compared to a semiautomatic weapon's 180 bullets per minute").  In fact, any semi-automatic weapon can be bump fired with or without a bump stock; the presence of a bump stock makes bump firing somewhat easier for less-skilled shooters, but it does not increase the rate of fire versus bump firing without a bump stock.

be classified as machineguns based on the rapidity with which they are capable of firing.[9]  Rather, the statutory definition of machinegun focuses exclusively on the weapon's mechanism.  A weapon capable of firing more than one shot "automatically" based on a "single function of the trigger" is a "machinegun"; a weapon that lacks such capability is not.

Tenth Circuit judges have explicitly recognized that the statutory definition of machinegun is unrelated to how rapidly a weapon can fire.  *See, e.g.*, *Aposhian III*, 989 F.3d at 903  (Tymkovich, C.J., joined by four other judges, dissenting from decision to vacate the grant of rehearing *en banc* as improvidently granted) ("Congress did not define 'machinegun' based upon the speed at which a firearm shoots or the firearm's potential for mass carnage.  Section § 5845(b) defined 'machinegun' based on its mechanical operation.  The language of that statute and that statute alone is what we must apply."); *id*. at 906 (Carson, J., dissenting) ("The NFA speaks in terms of how a firearm functions, not its capability of firing rapidly or causing harm.").

It is the job of legislatures, not courts, to decide what gun control measures are necessary for public safety purposes.  Indeed, at least 12 state legislatures have banned possession of bump stocks, *Gun Owners of America, Inc. v. Garland*, 992 F.3d 446, 472 (6th Cir.) ["*Gun Owners I*"], *vacated*, 4 F.4th 576 (6th Cir. 2021), but Congress has not chosen to adopt a nationwide ban.  As Judge Murphy explained:

> [N]o doubt many people believe that rifles equipped with bump stocks share the same dangerous traits that led Congress to ban machine guns.  Bump Stock Rule, 83 Fed. Reg. at 66,520.  So even though these newer devices might not fall "within the letter" of the statutory "machinegun" ban, courts may be tempted to treat them as covered anyway because they fall within its underlying "spirit." ... In our country,

---

[9] Indeed, ATF concedes that the machinegun ban is inapplicable to Gatling guns, despite the rapid-fire capability of those weapons.  *See* ATF Rul. 2004-5 (Aug. 18, 2004).

18

however, the judiciary has long had a narrower duty: "to apply, not amend, the work of the People's representatives."

*Gun Owners II*, 19 F.4th at 928 (Murphy, J., dissenting) (quoting *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017)).

Aposhian explained in his opening brief why ignoring the text of § 5845(b) and instead interpreting it based on its underlying "spirit" would raise serious constitutional concerns under the nondelegation doctrine.  Pltf. Br. 29-32.  The actual text of § 5845(b) sets out an "intelligible principle" to guide ATF in determining which weapons should be classified as "machineguns."  But if § 5845(b) were interpreted as specifying nothing more than that ATF should use its best judgment in determining what weapons should be banned as a means of ensuring public safety, the statute would run afoul of Article I, Section 1 of the Constitution, which prohibits Congress from divesting itself of its legislative powers.  *See Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019).  As so interpreted, the statute would supply no intelligible principle to guide ATF and would simply empower ATF to enact its own legislation.[10]  Rather than foment that constitutional dilemma, the Court should issue a decision based on the plain meaning of § 5845(b)'s statutory language.

---

[10] That ATF is acting on its own and not at the behest of Congress is evident from the history of bump-stock regulation.  For more than a decade, ATF consistently and categorically ruled that non-mechanical bump stocks do not meet the statutory definition of a machinegun.  ATF reversed its position in 2018 despite the absence of any statutory amendment, despite its failure to cite any new evidence warranting its reversal, and despite warnings from Senator Dianne Feinstein and others that a ban on bump stocks required new litigation.  Under those circumstances, it is difficult to conceive that ATF's reversal was prompted by some "intelligible principle" contained within § 5845(b).

**CONCLUSION**

Plaintiff respectfully requests that the Court grant his motion for summary judgment and deny Defendants' cross motion for summary judgment. The Court should: enter judgment declaring that the Final Rule is invalid and contrary to law because it conflicts with the definition of "machinegun" set out in 26 U.S.C. § 5845(b); permanently enjoin Defendants from enforcing the Final Rule against Plaintiff and all persons similarly situated to Plaintiff residing within this District; and order Defendants to return to Plaintiff the bump stock they confiscated from him in March 2019.

Respectfully submitted,

/s/ Richard A. Samp
Richard Samp
Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5210
rich.samp@ncla.legal

/s/ Gerald M. Salcido
Gerald M. Salcido
Salcido Law Firm PLLC
43 W 9000 S, Suite B
Sandy, UT 84070
801-413-1753
jerry@salcidolaw.com

March 6, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

I am an attorney for Plaintiff W. Clark Aposhian.  Pursuant to DUCivR 10-1, I hereby certify that the foregoing brief is in 12-point, proportionately spaced Times New Roman type.  The brief complies with the requirements of DUCivR 7-4(d)(4)(B), DUCivR 7-1(a)(4), and Fed.R.App.P. 32(a)(7)(C)  in that, according to the word processing system used to prepare this brief (WordPerfect X8), the word count of the brief is 6,408, not including the caption, table of contents, table of authorities, signature block, certificate of service, and this certificate of compliance.

/s/ Richard A. Samp
Richard A. Samp

Dated: March 6, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of March, 2023, I electronically filed the foregoing brief of Plaintiff with the Clerk of the Court for the U.S. District Court for the District of Utah by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Richard A. Samp</u>
Richard A. Samp