IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| W. CLARK APOSHIAN,<br><br>    Plaintiff,<br><br>  v.<br><br>MERRICK GARLAND, Attorney General of the United States, *et al.*,<br><br>    Defendants. | Case No. 2:19-cv-00037-JNP<br><br><br><br><br>District Judge Jill N. Parrish |

# DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

ALEXANDER V. SVERDLOV
(NY Bar 4918793)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-8550
alexander.v.sverdlov@usdoj.gov

*Counsel for Defendants*

## INTRODUCTION

Plaintiff's response confirms that—unlike plaintiffs in other cases challenging the bump stock rule—he does "no[t] . . . dispute" how the Department of Justice's Bureau of Alcohol, Tobacco, Firearms, and Explosives (the Bureau) interpreted the terms "automatic" and "single function of the trigger" in the statutory definition of machine gun, 26 U.S.C. § 5845(b). Pl. Resp. Br., ECF 65 at 1 (Pl. Resp.); *see Bump-Stock-Type Devices*, *see* 83 Fed. Reg. 66514 (Dec. 26, 2018) (the Rule). Rather, Plaintiff takes the narrow approach of disputing whether the mechanics of a bump stock can be said to satisfy those definitions. *Id.* But these efforts are unavailing.

As numerous courts, including this court, have correctly recognized, a bump stock harnesses a weapon's recoil and converts it into successive shots in a way that "drastically increase a weapon's rate of fire." *See, e.g.*, *Aposhian v. Barr*, 374 F. Supp. 3d 1145 (D. Utah 2019) (*Aposhian I*). Contrary to Plaintiff's claims, bump stocks achieve this effect by automating the back-and-forth movement of the trigger after an initial action by the shooter. Those features make bump stocks machine guns under the Bureau's undisputed interpretation of the statutory language, and dooms Plaintiff's challenge.

Similarly, Plaintiff fails to show that either the rule of lenity or any other doctrine prohibits the Bureau's classification of bump stocks as machine guns. Indeed, Plaintiff's brief fails to engage with the relevant legal framework and does not meaningfully respond to the arguments Defendants set forth in their opening brief, ECF 64 (Defs. Br.). As Defendants explained in support of their cross-motion for summary judgment, Plaintiffs' challenge on these grounds is foreclosed by precedent, and irreconcilable with the structure of the underlying statutes which authorize the Bureau's Rule.

Accordingly, the Court should deny Plaintiff's motion for summary judgment and grant Defendants' cross-motion.

## ARGUMENT

I.   **Bump Stocks are Properly Classified as Machine Guns**

The Rule's definitions, which Plaintiff does not challenge, establish that a machine gun is any "self-acting or self-regulating mechanism that allows the firing of multiple rounds through a . . . single pull of the trigger and analogous motions." 83 Fed. Reg. at 66,553. As courts around the country have found, a bump stock falls squarely within this definition because it "harnesses and directs the firearm's recoil energy" in a way that allows "a single pull of the trigger" to activate a self-sustaining sequence which "propels the trigger against [a] stationary finger and causes the subsequent shots through the force of recoil from firing the first bullet." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 45 F.4th 306, 318 (D.C. Cir. 2022) (*Guedes IV*). And while Plaintiff's response repackages several familiar objections to this analysis, none are persuasive.

*First*, Plaintiff appears to abandon the argument that a bump stock cannot meet the definition merely because the gun's trigger blade rests between each shot.[1] *Compare* Pl. Resp. at 6-10 *with* Defs. Br. at 19-20. Instead, Plaintiff now claims that—because the shooter must both pull the metal trigger and push forward on the barrel—a bump stock requires more than "a *single* 'function' of the triggering mechanism" to discharge multiple rounds. Pl. Resp. at 9-10 (emphasis in original). But this assertion is inaccurate. A rifle equipped with a bump stock can be fired by a single motion: a shooter can initiate the firing sequence by merely "press[ing] forward on the firearm to initially engage the trigger" without any separate pull. *Cargill v. Barr*, 502 F. Supp. 3d 1163, 1175-76 (W.D. Tex. 2020), *rev'd on other grounds sub nom Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023); *see also Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890,

---

[1] Fixation on the movement of the gun's trigger blade was a crucial aspect of the Fifth Circuit's reasoning in *Cargill v. Garland*, 57 F.4th 447, 459-60 (5th Cir. 2023). As Defendants previously explained, that fixation was misguided for numerous reasons, not least of all because a bump stock itself acts as an automated triggering device for successive shots. *See* Defs. Br. at 19-20. Plaintiff is therefore right not to pursue this argument. And without it, his reliance on *Cargill* is hollow. *See* Pls. Br. at 11.

908-09 (6th Cir. 2021) (noting that "the trigger is depressed by the operation of the bump stock"). Then, as long as something is present for the trigger to hit as it cycles, the weapon will continue firing, with the forward pressure on the gun stock performing the same task as the shooter's continued pressure on the trigger on other machineguns. *Cargill*, 502 F. Supp. 3d at 1175-76. So, contrary to Plaintiff's contention, a shooter need not take more than one action to begin and sustain a firing sequence. The push of the rifle forward triggers the gun, and keeping the forward pressure is analogous to holding down the trigger, which Plaintiff posits as the defining aspect of machine guns. *See* Pl. Resp. at 14.

Plaintiff protests that the Rule did not articulate this view nor regard "pushing forward on the fore-end of the rifle [as] somehow part of the triggering process." Pl. Resp. at 15. But, in fact, the Rule explains that the Bureau recognized bump stocks to be devices that eliminated the need for a shooter to repeatedly "manipulate the trigger:" as the Bureau observed, "[b]y maintaining constant forward pressure, a shooter relies on the [bump stock] to capture and direct recoil energy for each subsequent round and requires no further manipulation of the trigger itself." 83 Fed. Reg. at 66,532. In other words, the Bureau understood operation of a bump stock to supplant the traditional operation of the trigger. *See* Defs. Br. at 19-20. Further, interpreting the push forward on the rifle barrel as the triggering process comports with how courts understand the basic purpose of a trigger—to "initiate the firing sequence." *United States* v. *Jokel*, 969 F.2d 132, 135 (5th Cir. 1992) (per curiam); accord *United States* v. *Carter*, 465 F.3d 658, 665 (6th Cir. 2006) ("A trigger is generally anything, as an act or event, that serves as a stimulus and initiates or precipitates a reaction." (quotation omitted)); *United States* v. *Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002) (holding that "a trigger is a mechanism used to initiate a firing sequence"). So, as a matter of statutory construction, that action satisfies the requirement that "a single function of the trigger" "set in motion" the automatic firing of more than one shot. *United States v. Olofson,* 563 F.3d 652, 658 (7th Cir. 2009); accord *United States* v. *Evans*, 978 F.2d 1112, 1113 n.2 (9th Cir. 1992).

3

*Second*, and relatedly, a bump stock's automation of the firing sequence defeats Plaintiff's repeated assertion that a bump stock cannot be "self-acting" or "self-regulating" because it requires the shooter to do "something more" than just pull the trigger. Pl. Resp. at 6. Plaintiff's underlying claim seems to be that any process is not automatic if it requires more than one input. As detailed in Defendants' opening brief, however, courts—including this Court—have repeatedly rejected that view. *See Aposhian I*, 374 F. Supp. 3d at 1152 ("[N]either the statute nor the contemporaneous understanding of 'automatic' provides any basis for an interpretation that restricts the degree of shooter involvement in an automatic process."); *see also Olofson,* 563 F.3d at 658 (interpreting the term ''automatically'' as used in the NFA as ''delineat[ing] how the discharge of multiple rounds from a weapon occurs: as the result of a self-acting mechanism . . . set in motion by a single function of the trigger and . . . accomplished without manual reloading."); *see also* 83 Fed. Reg. at 66,519 (noting that "*Olofson* [] requires only that the weapon shoot multiple rounds with a single function of the trigger 'as the result of a self-acting mechanism,' not that the self-acting mechanism produces the firing sequence without any additional action by the shooter."); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 31 (D.C. Cir. 2019) (*Guedes II*) (a definition that "demands a significant degree of autonomy from the weapon without mandating a firing mechanism that is completely autonomous . . . accords with the everyday understanding of the word 'automatic.'"). And for good reason. Under Plaintiff's reasoning, a fully-automatic M16 could escape the statutory definition of machinegun if it were modified to require a shooter to hold down a selector switch with his left hand while pulling the trigger. Plaintiff does not even attempt to justify this result. *See* Pl. Resp. at 13-15. As this Court correctly observed, "any limit on the degree of physical input would invariably be supplied of whole cloth in service of one's desired result." *Aposhian I*, 374 F. Supp. 3d at 1152-53.

Regardless, even accepting Plaintiff's construction of what makes a weapon "automatic," bump stocks still operate as a "self-acting" or "self-regulating" mechanism. Using a bump stock, "[t]he shooter does not have to pull rearward to continue firing as long

4

as he keeps his finger on the trigger ledge;" indeed, "the trigger finger could be replaced by a post and" the firearm "would function the same way." *Cargill*, 502 F. Supp. 3d at 1175-76. In this way, the shooter's positioning of the trigger finger on the bump stock and application of pressure on the front of the rifle with the other hand provide all the necessary conditions. When those conditions are present, a single function of the triggering mechanism—whether accomplished by pulling the trigger or by pushing the trigger forward into the shooter's stationary finger—causes the weapon to fire continuously. The firing process is automatic because it is "[s]elf-acting under conditions fixed for it." 83 Fed. Reg. at 66,519 (quotation omitted); *see also Guedes IV*, 45 F.4th at 318 (explaining that the bump stock permits firing automatically because it "regulates the weapon's back-and-forth movement after a predetermined point in an operation—the shooter's pull of the trigger—and remains self-regulating as long as the shooter maintains pressure on the barrel").

Plaintiff's efforts to find a legal distinction between non-mechanical bump stocks and their mechanical counterparts like the Akins Accelerator, long classified as machine guns, fail for the same reasons. Pl. Resp. at 10 n.6. As Defendants explained, both operate on the same principle of using recoil energy to automate repeat firing: the presence of the spring in the latter only facilitates the kind of action that a non-mechanical bump stock already performs. *See* Defs. Br. at 20-21. A non-mechanical stock may require more pressure on the barrel. Pl. Resp. at 10 n.6. But it can still be made to fire multiple shots by a single initiating action—making it a machine gun under the law.

**II.     The Rule Properly Distinguishes Bump Stocks from Other Methods of Bump Firing**

Plaintiff's repeated assertion that the Rule does not properly distinguish bump stocks from other methods of bump firing fares no better. Pl. Resp. at 12. As Defendants' previously noted, Defs. Br. at 21, the Bureau explained that belt loops and rubber bands are not "self-acting or self-regulating mechanism[s]" because they do not "capture and direct the recoil energy; rather, the shooter must do so," 83 Fed. Reg. 66,533. And, contrary to Plaintiff's

5

protestation, Pl. Resp. at 12, harnessing recoil does indeed make the firing of multiple rounds with a bump stock automatic—for all the reasons articulated above.

Indeed, as Defendants observed in their opening brief, courts have invariably rejected similar objections in other cases. *Guedes IV*, 45 F.4th at 321; *Guedes II*, 920 F.3d at 32 ("belt loops, unlike bump stocks, do not transform semiautomatic weapons into statutory 'machineguns[,]' [o]r so [Defendants] reasonably concluded in the Rule"). That some of those courts reached that conclusion after applying *Chevron* is irrelevant. Pl. Resp. at 13. Whether an agency considered the relevant factors, and properly explained its analysis, is analytically distinct from whether a statutory construction is entitled to deference. *See, e.g.*, *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 135 (D.D.C.) (explaining that although plaintiffs "'attack the merits of [ATF's] responses, [ATF] clearly thought about [their] objections and provided reasoned replies,' which is 'all the APA requires.'" (quoting City of Portland v. EPA, 507 F.3d 706, 714 (D.C. Cir. 2007)).

**III.   The Rule of Lenity and Separation of Power Doctrines Are Inapplicable**

Finally, Plaintiff's response invokes the rule of lenity and the non-delegation doctrine. But his arguments on these points are cursory and fail to grapple with the applicable legal standards. Pl. Resp. at 16, 19.

As Defendants detailed in their opening brief, the "rule of lenity 'is a rule of last resort [and] the mere assertion of an alternative interpretation is not sufficient to bring the rule into play.'" *United States v. Gay*, 240 F.3d 1222, 1232 (10th Cir. 2001) (quoting *United States v. Blake*, 59 F.3d 138, 140 (10th Cir. 1995)). It is only where the Court has exhausted "everything from which aid can be derived" that lenity plays a role. *Muscarello v. United States*, 524 U.S. 125, 138 (1998) (internal quotation marks and citations omitted). Thus, contrary to Plaintiff's claims, the rule would not apply even if the Court "concludes that [26 U.S.C.] § 5845(b) is genuinely ambiguous." Pl. Resp. at 16. And, for all the reasons explained above, the Court should not reach that point "given the array of tools at [its] disposal, including the

statute's plain language, prior case law, contemporaneous understandings, and congressional purpose." *Guedes IV*, 45 F.4th at 321–22.

Likewise, Plaintiff makes no effort to grapple with the standard for a non-delegation analysis. Pl. Resp. at 19. As Defendants explained at length, Defs. Br. at 23-26, the standard for non-delegation is so deferential that even a statute directing the Bureau to "use its best judgment" to define "weapons [that] should be banned as a means of ensuring public safety," Pl. Resp. at 19, would not run afoul of Supreme Court precedent. *See, e.g.*, *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (listing analogous statutes upheld against non-delegation challenges). And the actual version of the statute, for which the Rule provides the "best" interpretation, raises no similar concerns.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for summary judgment and enter judgment for Defendants.

Dated: March 27, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV
(NY Bar 4918793)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-8550
alexander.v.sverdlov@usdoj.gov

*Counsel for Defendants*

7

**CERTIFICATE OF SERVICE**

      I hereby certify under penalty of perjury that on this 27th day of March, 2023, a copy of the foregoing was filed electronically. This filing was served electronically to all parties by operation of the Court's electronic filing system.

      /s/ Alexander V. Sverdlov